UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,<br><br>　　　　　　Defendants. | Case No. 2:25-cv-220 |

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT
CHRISTOPHER COOPRIDER'S COUNTERCLAIMS**

## TABLE OF CONTENTS

Table of contents ............................................................................................. i

Table of authorities ........................................................................................ ii

    I.  Cooprider has failed to state a claim for malicious prosecution .................... 1

    II. Cooprider has failed to state a claim for intentional infliction of emotional distress ................................................................................ 2

        A.  Cooprider has not identified the conduct of Ms. Davis that qualifies as "extreme and outrageous" ................................................................ 2

        B.  Cooprider has not properly alleged that Ms. Davis's actions inflicted "emotional distress" upon him ........................................................... 3

        C.  Cooprider has not properly alleged that the emotional distress that Ms. Davis inflicted was "severe" .......................................................... 4

        D.  The act of filing a lawsuit does not qualify as "extreme and outrageous" conduct, even if the person filing the lawsuit knows that it is groundless ................................................................................ 4

    III. Cooprider has failed to state a claim for fraud ............................................... 6

    IV. There is no cause of action or tort for "malice" under Texas law ................. 9

    V.  Cooprider's remaining counterclaims are requested remedies rather than causes of action ................................................................................ 10

Conclusion .................................................................................................... 10

Certificate of service..................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
 297 S.W.3d 768 (Tex. 2009) ................................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................3, 4, 9

*Beecy v. Pucciarelli*, 387 Mass. 589, 441 N.E.2d 1035 (1982) ...............................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................3

*Kroger Texas Limited Partnership v. Suberu*,
 216 S.W.3d 788 (Tex. 2006) ................................................................................2

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996) ..................................1

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) ...........................................2, 3, 5

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
 125 F.3d 899 (5th Cir. 1997) .............................................................................6, 8

*Walch v. Adjutant General's Dep't of Texas*,
 533 F.3d 289 (5th Cir. 2008) ...............................................................................8

**Rules**

Fed. R. Civ. P. 8(a)(2) ..............................................................................................4

Fed. R. Civ. P. 9(b) ..................................................................................................6

Fed. R. Civ. P. 11(b)(3) ............................................................................................5

Fed. R. Civ. P. 11(c) .................................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................1

Plaintiff Liana Davis respectfully moves to dismiss each of defendant Cooprider's counterclaims for failure to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

## I. Cooprider Has Failed To State A Claim For Malicious Prosecution

The tort of malicious prosecution requires a plaintiff to plead and prove:

> (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages.

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). Cooprider's pleading admits that the proceedings that Ms. Davis has initiated against him have not terminated. *See* Answer, ECF No. 7, at 89 n.50 (acknowledging that a malicious-prosecution claim cannot proceed "until the underlying case filed against him is adjudicated in his favor."). So Cooprider's malicious-prosecution counterclaim fails to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

Cooprider suggests that this Court should "abate" rather than dismiss his malicious-prosecution counterclaim. *See* Answer, ECF No. 7, at 89 n.50 ("Counter-Plaintiff COOPRIDER will not oppose an abatement of this Counterclaim until the underlying lawsuit against him is finalized."). But Cooprider cites no authority to support this idea. More importantly, Cooprider cannot litigate his malicious-prosecution lawsuit as a counterclaim in this action because he cannot state a claim for malicious-prosecution until after he prevails and after all appeals are exhausted. *See Texas Beef*, 921 S.W.2d at 208 ("[A]n underlying civil suit has not terminated in favor of a malicious prosecution plaintiff until the appeals process for that underlying suit has been exhausted."). So Cooprider's proposal to "abate" the malicious-prosecution counterclaim is a bootless exercise, as these proceedings must come to a complete end before any malicious-prosecution claim can be considered. The Court should dismiss the malicious-prosecution counterclaim under Rule 12(b)(6).

## II. Cooprider Has Failed To State A Claim For Intentional Infliction Of Emotional Distress

The tort of intentional infliction of emotional distress (IIED) requires Cooprider to plead and prove that:

> (1) [Ms. Davis] acted intentionally or recklessly; (2) [her] conduct was extreme and outrageous; (3) [her] actions caused [Cooprider] emotional distress; and (4) the emotional distress was severe.

*Kroger Texas Limited Partnership v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Cooprider has failed to state a claim for intentional infliction of emotional distress for four separate and independent reasons. First, Cooprider has not identified the conduct of Ms. Davis that qualifies as "extreme and outrageous." Second, Cooprider has not properly alleged that Ms. Davis's actions inflicted "emotional distress" upon him. Third, Cooprider has not properly alleged that the emotional distress that Ms. Davis inflicted was "severe." Finally, the act of filing a lawsuit does not qualify as "extreme and outrageous" conduct, even if the person being sued alleges that the lawsuit is meritless or was filed in bad faith. Each of these reasons, standing alone, warrants dismissal of Cooprider's IIED counterclaim.

### A. Cooprider Has Not Identified The Conduct Of Ms. Davis That Qualifies As "Extreme And Outrageous"

Cooprider cannot state a claim for intentional infliction of emotional distress unless he alleges that Ms. Davis engaged in "extreme and outrageous" conduct. And the element of "extreme and outrageous" conduct is satisfied only by behavior that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Cooprider's pleading does not even identify the alleged conduct of Ms. Davis that meets this standard.

Cooprider's 94-page pleading hurls many accusations at Ms. Davis — many of which are false but must nonetheless be assumed true when deciding a motion to dismiss. But to plead

a claim for intentional infliction of emotional distress, Cooprider must identify *which* of these myriad accusations constitutes the "extreme and outrageous" conduct that inflicted emotional distress upon him. It is not enough to merely recite the elements of the tort, as Cooprider has done. *See* Answer, ECF No. 7, at pp. 91–92; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). A pleading must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests,"[1] so Cooprider must identify the particular acts that (in his view) qualify as "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman,* 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Because Cooprider has not done so, he has failed to plead a claim for intentional infliction of emotional distress.

> B. Cooprider Has Not Properly Alleged That Ms. Davis's Actions Inflicted "Emotional Distress" Upon Him

Cooprider must also explain how the supposedly "extreme and outrageous" conduct of Ms. Davis inflicted "emotional distress" on him. Yet Cooprider offers nothing more than an unexplained assertion that "the outrageous conduct caused the Counter-Plaintiff COOPRIDER emotional distress." Answer, ECF No. 7, at 91. That is not sufficient under *Twombly* and *Iqbal*, which require Cooprider to provide more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 564; *Iqbal*, 556 U.S. at 678. Cooprider correctly states the elements of intentional infliction of emotional distress on pages 91 and 92 of his responsive pleading, but he provides *no* factual content about the emotional distress that he supposedly suffered beyond reciting the elements of the tort. Cooprider must plead

---

1. *Twombly*, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41 (1957)).

enough "factual matter" and "factual content" that allows a court to draw a reasonable inference that he suffered emotional distress. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). But Cooprider pleads no facts at all, only a conclusory assertion that Ms. Davis's supposedly conduct caused him emotional distress. *See* Answer, ECF No. 7, at 91.

   C. **Cooprider Has Not Properly Alleged That The Emotional Distress That Ms. Davis Inflicted Was "Severe"**

 Cooprider has also failed to properly allege that the emotional distress that Ms. Davis supposedly inflicted on him was "severe." On this element, Cooprider once again offers nothing but a conclusion unaccompanied by factual elaboration. *See* Answer, ECF No. 7, at 92 ("[T]he emotional distress suffered by Counter-Plaintiff COOPRIDER was severe."). But *Twombly* and *Iqbal* require more than merely reciting of the elements of a tort. Cooprider must plead facts *showing* that his emotional distress was "severe." *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim *showing* that the pleader is entitled to relief" (emphasis added)). Bald assertions do not qualify as the "showing" required by Rule 8(a)(2). *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

   D. **The Act Of Filing A Lawsuit Does Not Qualify As "Extreme And Outrageous" Conduct, Even If The Person Filing The Lawsuit Knows That It Is Groundless**

 Cooprider claims that Ms. Davis knew that her wrongful-death lawsuit was meritless yet filed it to "frame" Cooprider. *See* Answer, ECF No. 7, at ¶ 14. Even if one assumes these allegations to be true (and they aren't), this alleged conduct does not rise to the level of "extreme and outrageous" behavior. The act of filing a lawsuit does not qualify as behavior that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman,* 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). And that remains the case even when the person filing the lawsuit *knows* that his claims are groundless. *See Beecy v. Pucciarelli*, 387 Mass. 589, 596, 441 N.E.2d 1035, 1040 (1982) (filing a lawsuit that a person knows to be groundless does not qualify as "extreme and outrageous" conduct and does not create liability for intentional infliction of emotional distress).

Litigants file meritless lawsuits on a regular basis, and the law provides ample means to deter and punish this type of behavior. Rule 11, for example, requires attorneys who sign pleadings to certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Parties who violate this rule are subject to sanctions. *See* Fed. R. Civ. P. 11(c). Yet Cooprider is not even seeking Rule 11 sanctions in response to Ms. Davis's pleading, even as he hyperbolically claims that her allegations are "fabricated" and fraudulent. *See* Answer, ECF No. 7, at ¶ 2, ¶¶ 11–14. More importantly, the filing of even a sanctionable lawsuit is not conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman,* 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). We have not found any authority allowing litigants to sue for intentional infliction of emotional distress in response to allegations made against them in a court filing. If Cooprider believes that Ms. Davis has filed this lawsuit in bad faith, then he should seek redress under Rule 11 rather than countersuing for intentional infliction of emotional distress.

Cooprider's counterclaim also has no limiting principle. Does every civil defendant who believes he has been unjustly sued get to counterclaim for intentional infliction of emotional distress? No one enjoys being sued, and participation in civil litigation will inevitably impose distress upon the civil defendant. And many if not most civil defendants believe that the

lawsuits filed against them are "outrageous." But that is not enough to create a cause of action for intentional infliction of emotional distress. Civil litigation is an accepted part of life; it is not "outrageous" or "extreme" conduct of the sort that triggers an IIED claim.

### III. COOPRIDER HAS FAILED TO STATE A CLAIM FOR FRAUD

To allege fraud, Cooprider must allege:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (citations and internal quotation marks omitted). Cooprider must plead each of these elements with particularity, *i.e.*, he must provide specific, detailed factual allegations with respect to each component of the cause of action. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.").

Cooprider alleges that Davis defrauded him in two ways. First, Cooprider claims that Davis told him that she was pregnant on February 3, 2025, when she did not actually become pregnant until later that month. *See* Answer, ECF No. 7, at ¶ 13. Cooprider also claims that he purchased abortion pills on February 6, 2025, in reliance on Davis's representation that she was pregnant at that time. *See* Answer, ECF No. 7, at ¶ 13(e) ("Defendant COOPRIDER acted in reliance upon Plaintiff DAVIS's statement, and ordered such drugs at a time she turned out not to be pregnant at all"). But this purchase of abortion pills did not inflict injury on Cooprider. Davis *did* become pregnant later that month—and Cooprider would

have purchased those abortion pills in response to Davis's actual pregnancy because he wanted to kill any unborn child that he conceived with Davis. *See* Text Message from Christopher Cooprider to Liana Davis of February 3, 2025, at 2:20 P.M., ECF No. 1-3 ("If it's a positive then we need to schedule a clinic visit and get an abortion pill asap"); Text Message from Christopher Cooprider to Liana Davis of February 4, 2025, at 2:40 P.M., ECF No. 1-4 ("It's also just the right thing to do in this situation. Get rid of it"); Text Message from Christopher Cooprider to Liana Davis of March 5, 2025, at 11:57 A.M., ECF No. 1-15 ("If ultrasound says it is somehow alive. Then it needs to be aborted").[2] Cooprider's grievance is that Davis's alleged misrepresentation led him to purchase abortion pills that he would have wound up purchasing anyway. That does not qualify as an injury, and it does not explain any injury that Cooprider might have suffered with the particularity required by Rule 9(b).

Cooprider's second theory of fraud fares no better. *See* Answer, ECF No. 7, at ¶ 14. Cooprider alleges that Davis "made a material representation to Defendant COOPRIDER, that he should come over to her home for a 'night of trust' over hot cocoa and alcohol, when she intended to frame him with false allegations that he poisoned her." *See id.* at ¶ 14. But Cooprider's pleading admits the authenticity of Exhibit 32 in Davis's complaint, which contains text messages showing that *Cooprider* and not Davis initiated the idea of a "trust building night"—and that it was Cooprider who asked to come over to Davis's house to watch Reacher and share some "warm relaxing tea" that he would make for them:

---

2. Cooprider's pleading acknowledges the authenticity of each of the text messages attached to Ms. Davis's complaint. *See* Answer, ECF No. 7, at pp. 75–89.

> Was thinking we could hang out one of these night I'm not scheduled and catch up on Reacher    12:15 PM
>
> I could make us some warm relaxing tea instead of alcohol    12:16 PM
>
> And we could go to bed at a reasonable hour    12:16 PM
>
> Called it a "trust building night" if you have to.....    12:16 PM

Complaint, ECF No. 1, at ¶ 44; Exhibit 32 to Complaint, ECF No. 1-32; *see also* Answer. ECF No. 7, at p. 81 ("Defendant COOPRIDER . . . admits that the texts referenced in Exhibit 32 were exchanged."). So Cooprider *wanted* to come to Davis's house for the so-called "trust-building night"—and he would have come to her house that night even if Davis had not engaged in the supposed misrepresentations that she has been accused of.[3]

Cooprider also fails to plead his second theory of fraud with particularity. He never describes how Ms. Davis misrepresented the "night of trust" or what she said. He never says what Ms. Davis communicated to him about the "night of trust," or when, where, and how she communicated it to him. *See Thompson*, 125 F.3d at 903 ("Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Cooprider also fails to plead particular facts about Ms. Davis's intent to "frame" Cooprider for murder on the night of April 5, 2025. He does not allege or explain how Ms. Davis could have known that she would begin hemorrhaging shortly before midnight on April 5, 2025. And

---

3. It is appropriate for the Court to consider these text messages on a motion to dismiss because Cooprider's pleading admits to their authenticity. *See* Answer. ECF No. 7, at p. 81 ("Defendant COOPRIDER . . . admits that the texts referenced in Exhibit 32 were exchanged."); *see also Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008) ("[D]ocuments may be considered even under a Rule 12(b)(6) analysis . . . [when] [n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss.").

he does not accuse of Ms. Davis of purposefully inducing an abortion that night. So Cooprider has no explanation for how Davis could have intended to "frame" Cooprider on the date that she allegedly invited Cooprider over to her house for a "night of trust." Davis had no way of knowing that she would begin hemorrhaging on April 5, 2025, and Davis had no way of controlling when the hemorrhaging would begin apart from purposefully inducing an abortion, which Cooprider is not accusing her of doing. So the "framing" accusation lacks sufficient factual detail under Rule 9(b).

Finally, Cooprider's claim that Davis intended to "frame" him for murder flunks the plausibility requirement of *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). It is implausible to believe that Davis intended to "frame" Cooprider for murder when she had no way of knowing or controlling whether or when she would begin hemorrhaging. The only way that Davis could "frame" Cooprider would be to knowingly take the abortion pills herself during or shortly before Cooprider's visit to her house. But Cooprider is not alleging that Davis knowingly ingested the abortion pills on the night of April 5, 2025; on the contrary, Cooprider is insisting that the 10 unaccounted-for misoprostol pills "had long been discarded weeks earlier." Answer, ECF No. 7, at ¶ 79(a). So Cooprider's "framing" allegation is implausible on its face and should be dismissed under *Twombly* and *Iqbal*.

### IV. There Is No Cause Of Action Or Tort For "Malice" Under Texas Law

Cooprider claims to be suing Davis for "malice." *See* Answer, ECF No. 7, p. 92 ("Counter-Plaintiff COOPRIDER . . . counter-sues Counter-Defendant DAVIS for malice"). But "malice" is not a tort; nor is it a cause of action. "Malice" is a state of mind that may be needed to prove the tort of defamation or recover punitive damages, but it is not in itself a

claim on which relief may be granted. The Court should dismiss the counterclaim for "malice" under Rule 12(b)(6).

## V.   Cooprider's Remaining Counterclaims Are Requested Remedies Rather Than Causes Of Action

The remaining "counterclaims" listed in Cooprider's responsive pleading are entitled: "punitive damages," "exceptions to Texas' limitations on exemplary damages," and "amount of damages sought." *See* Answer, ECF No. 7, pp. 92–94. But none of these qualify as causes of action or claims for relief. They are merely the relief that Cooprider is asking this Court to impose in response to the torts that he has alleged. Cooprider has failed to state a claim with respect to any of those torts, so the court should not consider his requested remedies.

## CONCLUSION

The Court should dismiss each of Cooprider's counterclaims.

Respectfully submitted.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
  *Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: October 8, 2025                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 8, 2025, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

*Counsel for Defendant Christopher Cooprider*

                                           /s/ Jonathan F. Mitchell
                                           JONATHAN F. MITCHELL
                                           *Counsel for Plaintiff*