| | APPENDIX OF UNPUBLISHED AUTHORITIES<br>(p. 1 of 5)<br>**RESPONSE TO PLAINTIFF'S MOTION TO DISMISS**<br>**DEFENDANT CHRISTOPHER COOPRIDERS COUNTERCLAIMS** |
|---|---|
| | CASE/AUTHORITY NAME |
| 1 | *Kafi, Inc. v. Sand Canyon Corp.*,<br>Civil Action No. 3:20-cv-00354, 2022 WL 3084480 (S.D. Tex. Aug. 3, 2022)<br>(Edison, M.J.) |
| 2 | *Kafi, Inc. v. Sand Canyon Corp.*,<br>Civil Action No. 3:20-cv-00354, 2022 WL 4454395 (S.D. Tex. Sept. 23, 2022)<br>(Brown, J.) |
| 3 | 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, Federal Practice and<br>Procedure § 1291 (4th ed.) |
| 4 | *Maxim Crude Oil, LLC v. Noil Corp., Inc.*,<br>Civil Action No. 2:21-CV-90, 2021 WL 12320541 (S.D. Tex. Nov. 16, 2021)<br>(Morales, J.) |
| 5 | *Crotts v. Healey*,<br>2015 WL 5890103 (Tex. App. – Houston [1st Dist.] 2015), *rev. denied* (Feb. 26,<br>2016), *reh'g of petition for review denied* (April 8, 2016), *cert denied*, 580 U.S. 868<br>(2016) |
| 6 | *Bond v. Nueces County, Texas*,<br>Civil Action No. 2:19-CV-43, 2019 WL 13221680 (S.D. Tex. Sept. 5, 2019)<br>(Morales, J.) |
| 7 | *Oliveros v. Oliveros*,<br>Case No. 5:23-CV-00402-FB-RBF, 2024 WL 875834 (W.D. Tex. Feb. 13, 2024)<br>(Farrer, M.J.) |
| 8 | *Oliveros v. Oliveros*,<br>Case No. 5:23-CV-00402-FB-RBF, 2024 WL 874145 (W.D. Tex. Feb. 29, 2024)<br>(Biery, J.) |
| 9 | *Smith v. MTGLQ Investors, L.P.*,<br>851 Fed. Appx. 514 (Mem) (5th Cir. June 30, 2021) (per curiam) (unpublished) |
| 10 | *Peninsula Marine, Inc. v. Principle Industrial Services, LLC*,<br>Civil Action No. 2:23-CV-00104, 2024 WL 5036616 (S.D. Tex. Sept. 30, 2024) |
| 11 | Restatement (Second) of Torts § 46 cmt. d (1965) |
| 12 | *Kumar v. Panera Bread Co.*,<br>Case No. 23-20178, 2024 WL 1216562 (5th Cir. Mar. 21, 2024) (per curiam)<br>(unpublished) |
| 13 | *7X Cattle Co. LLC v. Brandstadt*,<br>Case No. 6:22-CV-00396-JDK-KNM, 2024 WL 4183301 (E.D. Tex. Jul. 22, 2024)<br>(Mitchell, M.J.) |
| 14 | *7X Cattle Co. LLC v. Brandstadt*,<br>Case No. 6:22-CV-00396-JDK-KNM, 2024 WL 3950677 (E.D. Tex. Aug. 27,<br>2024) (Mitchell, M.J.) |

| | APPENDIX OF UNPUBLISHED AUTHORITIES |
|---|---|
| | (p. 2 of 5) |
| | **RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT CHRISTOPHER COOPRIDERS COUNTERCLAIMS** |
| | CASE/AUTHORITY NAME |
| 15 | *Western Reserve Medtec Services, LLC v. Stryker Corporation*, Civil Action No. 4:18-CV-2604, 2019 WL 13191641 (S.D. Tex. May 13, 2019) (Bryan, M.J.) |
| 16 | *Garcia v. LCS Corrections Services, Inc.*, Civil Action No. C–09–334 2010 WL 2163284 (S.D. Tex. May 24, 2010) (Crane, J.) |
| 17 | *Luebano v. Office Depot, L.L.C.*, Case No. 22-50767, 2023 WL 4249268 (5th Cir. Jun. 29, 2023) (per curiam) (unpublished) |
| 18 | *Briceno-Belmontes v. Coastal Bend College*, Civil Action No. 2:20-CV-00114, 2022 WL 673854 (S.D. Tex. Mar. 5, 2022) (Tipton, J.) |
| 19 | *Perez v. Brooks County, Texas*, Civil Action No. 2:19-CV-391, 2020 WL 4261253 (S.D. Tex. Jul. 24, 2020) (Gonzales Ramos, J.) |
| 20 | *Henderson v. Wells Fargo Bank*, 779 F.Supp.3d 910 (S.D. Tex. Mar. 31, 2025) (Morales, J.) |
| 21 | *Stewart v. City of Arcola*, Civil Action No. 4:23-cv-04387, 2024 WL 3297361 (S.D. Tex. Jul. 3, 2024) (Hanen, J.) |
| 22 | *Garcia v. Oceans Healthcare, L.L.C.*, Civil Action No. 2:22-CV-00219, 2023 WL 6393885 (S.D. Tex. Sept. 30, 2023) (Tipton, J.) |
| 23 | *M.D.C.G. v. United States*, Civil Action No. 7:15–CV–552, 2016 WL 6638845 (S.D. Tex. Sept. 13, 2016) (Crane, J.) |
| 24 | *Gaona v. Wells Fargo Bank, N.A.*, SA-23-CV-280-FB (HJB), 2025 WL 699353 (W.D. Tex. Feb 13, 2025) (Bemporad, M.J.) |
| 25 | *Gaona v. Wells Fargo Bank, N.A.*, SA-23-CV-280-FB (HJB), 2025 WL 696546 (W.D. Tex. Mar. 4, 2025) (Biery, J.) |
| 26 | *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 Fed. Appx. 237 (5th Cir. Apr. 15, 2020) (unpublished) |
| 27 | *Gutierrez v. Corrections Corp. of America*, 559 Fed. Appx. 406 (mem) (5th Cir. Apr. 3, 2014) (unpublished) |
| 28 | *United States v. Basulto-Reina*, 421 Fed. Appx. 349 (5th Cir. Apr. 5, 2011) (unpublished) |
| 29 | *U.S. v. Kim*, Criminal No. H-07-406, 2009 WL 29688 (S.D. Tex. Jan. 5, 2009) (Rosenthal, J.) |

| | APPENDIX OF UNPUBLISHED AUTHORITIES<br>(p. 3 of 5)<br>**RESPONSE TO PLAINTIFF'S MOTION TO DISMISS**<br>**DEFENDANT CHRISTOPHER COOPRIDERS COUNTERCLAIMS** |
|---|---|
| | CASE/AUTHORITY NAME |
| 30 | *Blair v. Pride Industries, Inc.*,<br>Case No. EP-14-CV-00183-DCG, 2015 WL 11251771<br>(W.D. Tex. Jan. 27, 2015) (Guaderrama, J.) |
| 31 | *Medford Co-Operative Bank v. Skerry*,<br>2004 Mass. App. Div. 120, 2004 WL 1853343 (2004) |
| 32 | *ASG Chemical Holdings, LLC v. Bisley Int'l, LLC*,<br>Civil Action No. H-23-4333, 2024 WL 5036568 (S.D. Tex. Nov. 18, 2024<br>(Bray, M.J.) |
| 33 | *ASG Chemical Holdings, LLC v. Bisley Int'l, LLC*,<br>Civil Action No. H-23-4333, 2024 WL 5108450 (S.D. Tex. Dec. 13, 2024<br>(Lake, J.) |
| 34 | *Specialties of Mexico, Inc. v. Masterfoods USA*,<br>Civil Action No. L–09–88, 2010 WL 2488031 (S.D. Tex. Jun. 14, 2010)<br>(Alvarez, J.) |
| 35 | *Albores v. Dimitri*,<br>Civil Action No. 18-6936, 2025 WL 871601 (E.D. La. Mar. 20, 2025)<br>(Milazzo, J.) |
| 36 | *Forum Subsea Rentals v. Globaltech Offshore*,<br>Civil Action No. H–13–885, 2014 WL 10751177 (S.D. Tex. Sept. 17, 2014)<br>(Hittner, J) |
| 37 | *Pointeast Pharma Consulting, Inc. v. Lenzing Aktiengesellschaft*,<br>Civil Action No. 4:21-CV-3654,  2024 WL 5048964 (S.D. Tex. Dec. 9, 2024)<br>(Hanen, J.) |
| 38 | *Katz v. Intel Pharma, LLC*,<br>Civil Action No. H-18-1347, 2018 WL 4701566 (S.D. Tex. Oct. 1, 2018)<br>(Rosenthal, J.) |
| 39 | *Kafi, Inc. v. Sand Canyon Corp.*,<br>Civil Action No. 3:20-cv-00354, 2022 WL 3084480 (S.D. Tex. Aug. 3, 2022)<br>(Edison, M.J.) |
| 40 | *Kafi, Inc. v. Sand Canyon Corp.*,<br>Civil Action No. 3:20-cv-00354, 2022 WL 4454395 (S.D. Tex. Sept. 23, 2022)<br>(Brown, J.) |
| 41 | *Louisiana Oilfield Logistics, LLC v. Flotek Chemistry, LLC*,<br>Civil Action No. H-19-1272, 2020 WL 13240060 (S.D. Tex. Jun. 29, 2020)<br>(Rosenthal, C.J.) |
| 42 | *ClaimHub, Inc. v. Universal Risk Ins. Srvs., Inc.*,<br>Civil Action No. H-10-2841, 2011 WL 13247456 (S.D. Tex. Jul. 25, 2011)<br>(Rosenthal, J.) |
| 43 | *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*,<br>Civil Action No. H–09–2582, 2010 WL 4702303 (S.D. Tex. Nov. 10, 2010)<br>(Rosenthal, J.) |

| | APPENDIX OF UNPUBLISHED AUTHORITIES<br>(p. 4 of 5)<br>**RESPONSE TO PLAINTIFF'S MOTION TO DISMISS**<br>**DEFENDANT CHRISTOPHER COOPRIDERS COUNTERCLAIMS** |
|---|---|
| | CASE/AUTHORITY NAME |
| 44 | *Diagnostic Affiliates of Northeast Houston, LLC v. United Healthcare Services, Inc.*, Civil Action No. 2:21-CV-00131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022) (Gonzales Ramos, J.) |
| 45 | *William Marsh Rice University v. Arrowhead Research Corp.*,<br>Civil Action No. 14-03496, 2016 WL 3223313 (S.D. Tex. Mar. 8, 2016) |
| 46 | *Lee v. Samsung Electronics America, Inc.*,<br>Case No. 4:21-cv-1321, 2023 WL 4240277 (S.D. Tex. Jun. 28, 2023)<br>(Palermo, M.J.) |
| 47 | *Polanco v. Innovation Ventures, LLC*,<br>Civil Action No. 7:13-CV-568, 2014 WL 12599332 (S.D. Tex. May 5, 2014)<br>(Crane, J.) |
| 48 | 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE:<br>Civil 2d § 1356 at 298 (1990) |
| 49 | *Lin v. Veritex Community Bank, N.A.*,<br>Civil Action No. H-20-1904, 2021 WL 3831986 (S.D. Tex. Jan. 4, 2021) (Atlas, J.) |
| 50 | *Enventure Global Technology, Inc. v. Weatherford, U.S., L.P.*,<br>Civil Action No. H-19-2397, 2020 WL 6146565 (S.D. Tex. Oct. 2, 2020) (Atlas, J.) |
| 51 | *IIITec, Ltd. v. Weatherford Technology Holdings, LLC*,<br>Civil Action No. H-19-3386, 2019 WL 7037744 (S.D. Tex. Dec. 20, 2019)<br>(Atlas, J.) |
| 52 | *Balcerowicz v. Sweetin*,<br>Civil Action No. H-12-0310, 2017 WL 1474093 (S.D. Tex. Apr. 6, 2017)<br>(Ellison, J.) |
| 53 | *American General Life Ins. Co. v. Mickelson*,<br>Civil Action No. H–11–3421, 2012 WL 1355591 (S.D. Tex. Apr. 18, 2012)<br>(Ellison, J.) |
| 54 | *Cortez v. Pharia L.L.C.*,<br>Civil Action No. H–10–5068, 2011 WL 2455724 (S.D. Tex. May 18, 2011)<br>(Stacy, M.J.) |
| 55 | 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL<br>PRACTICE AND PROCEDURE § 1357, at 376 (3d ed. 2004) |
| 56 | *Lopez v. Don Herring Ltd.*,<br>Civil Action No. 3:16-CV-02663-B, 2018 WL 296063 (N.D. Tex. Jan. 4, 2018)<br>(Boyle, J.) |
| 57 | *Banquete I.S.D. v. Alliance for Community Solutions, Ltd.*,<br>Civil Action No. 2:22-Cv-00094, 2024 WL 4720290 (S.D. Tex. Sept. 10, 2024)<br>(Libby, M.J.) |
| 58 | *Barge v. Wells Fargo Bank, N.A.*,<br>Civil Action No. 1:23-CV-00189, 2024 WL 2520324 (E.D. Tex. Mar. 28, 2024)<br>(Truncale, J.) |
| 59 | |

| | APPENDIX OF UNPUBLISHED AUTHORITIES (p. 5 of 5) **RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT CHRISTOPHER COOPRIDERS COUNTERCLAIMS** |
|---|---|
| | CASE/AUTHORITY NAME |
| 59 | Case No. A H-04-0916, 2006 WL 2796387 (S.D. Tex. Sep. 26, 2006) (Gilmore, J.) |
| 60 | *United States ex rel. BakerRipley v. Kids U US, Inc.*, Civil Action No. 23-cv-1124, 2024 WL 3541499 (S.D. Tex. Jul. 25, 2024) (Rosenthal, J.) |
| 61 | *Xiongen Jiao v. Ningbo Xu*, Case No.: 4:19-cv-01848, 2020 WL 6136265 (S.D. Tex. Jan. 29, 2020) (Ellison, J.) |

# CASE NO. 1

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 7 of 336

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

2022 WL 3084480
Only the Westlaw citation
is currently available.
United States District Court,
S.D. Texas, Galveston Division.

KAFI, INC. Plaintiff.
v.
SAND CANYON CORPORATION
F/k/a Option One Mortgage
Corporation, et al. Defendants.

**Civil Action** No. **3** : **20** - **cv** - **00354**
|
Signed August 3, **2022**

## Attorneys and Law Firms

Jeffrey Craig Jackson, Jeffrey Jackson & Associates, PLLC, Houston, TX, for Plaintiff.

Brett W. Schouest, Dykema Gossett PLLC, San Antonio, TX, Stephen Andrew Walsh, Weinberg Wheeler et al., Birmingham, AL, for Defendants Sand Canyon Corporation.

Kurt Lance Krolikowski, Ryan Benner Burns, Locke Lord LLP, Houston, TX, for Defendants Nationwide Title Clearing, Inc.

Neyma Edelyn Figueroa, Brett W. Schouest, Dykema Gossett PLLC, San Antonio, TX,

for Defendants Wells Fargo Bank, N.A. as Trustee for ABFC 2006-OPT3 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT3, PHH Mortgage Corporation.

## MEMORANDUM AND RECOMMENDATION

ANDREW M. EDISON, UNITED STATES MAGISTRATE JUDGE

**\*1** Pending before me is Defendants' Joint Motion to Dismiss Fourth Amended Complaint. Dkt. 66. Having reviewed the briefing, the record, and the applicable law, and for the reasons explained below, I recommend the Court **GRANT in part** and **DENY in part** the motion.

## I. FACTUAL BACKGROUND

In this lawsuit, Kafi, Inc. ("Kafi") seeks to avoid foreclosure of a property it owns at 810 Almond Pointe in League City, Texas (the "Property"). In June 2006, non-parties Joe and Kelly Richardson (the "Richardsons") purchased the Property. The transfer was memorialized by general warranty deed with a vendor's lien. The Richardsons financed their purchase with a loan from Sand Canyon Corporation f/k/a Option One Mortgage Corporation ("Sand Canyon"). The loan was secured by a deed of trust in favor of Sand Canyon. The deed of trust contains an optional acceleration clause, allowing Sand Canyon to "invoke the power of sale and/or any other

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

remedies" should the Richardsons default. Dkt. 63-1 at 6.

In January 2012, Sand Canyon purported to assign the deed of trust, along with "all interests secured thereby, all liens, and any rights due or to become due thereon" (the "Assignment"), to Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. 63-9. The Assignment was prepared by Nationwide Title Clearing, Inc. ("NTC"), notarized by Miranda Avila ("Avila"), and purportedly executed on behalf of Sand Canyon by Derrick White ("White") in his professed capacity as Sand Canyon's Vice President. [1] It is undisputed that, at the time of the Assignment, White and Avila were employees of NTC. *See* Dkt. 66 at 3. As discussed in greater detail in the following sections, the central issue in this case is Kafi's allegation that White's and Avila's signatures are forgeries.

By September 2012, the Richardsons were in default. Although the Property was noticed for sale multiple times, for reasons not explained, it was never sold at foreclosure. Kafi has attached to its pleadings four notices of trustee's sales:

| Date of Notice | Date of Sale |
| --- | --- |
| September 5, 2012 | October 2, 2012 |
| November 6, 2012 | December 4, 2012 |
| June 19, 2017 [2] | August 1, 2017 |
| February 24, 2020 | May 5, 2020 |

Kafi alleges that two of the notices—dated September 5 and November 6, 2012—were mailed to the Richardsons and filed in the real property records, thereby "unequivocally accelerat[ing]" the loan. Dkt. 63 at 14.

 **\*2** In September 2020, Kafi purchased the Property "as-is" from the Richardsons by general warranty deed, which provides, in relevant part:

> This conveyance is made subject-to any outstanding liens of record. Grantors understand that Grantee is in no way assuming

or promising to pay any outstanding liens of record.

Dkt. 63-3 at 1–2. There is no allegation that Defendants have attempted to foreclose on the Property.

## II. PROCEDURAL HISTORY

In October 2020, Kafi sued Defendants in Texas state court, seeking, among other things, a declaration that Defendants lack standing to foreclose and a judgment quieting title to the Property. Defendants timely removed the case to this Court on the basis of diversity jurisdiction.

Kafi has since amended its complaint multiple times. In its live pleadings, Kafi requests a bevy of declaratory relief concerning its alleged title to the Property,[3] the most relevant of which are its requests for declaratory judgments that: (1) the Assignment is a forgery and, therefore, void; and (2) the four-year limitations period to foreclose on the Property has expired. Kafi also brings claims to quiet title or, in the alternative, for the equitable right of redemption. *See* Dkt. 63 at 10–11, 16–17. Finally, against Sand Canyon and NTC, Kafi asserts common-law claims for "forgery." *See id.* at 12–13.

In December 2021, I granted Kafi's request to conduct limited, targeted discovery to develop facts supporting its forgery allegation. Specifically, I allowed Kafi to depose Avila and send written discovery to Sand Canyon and NTC. *See* Dkt. 57. In January **2022**, I denied Kafi's request to depose White. *See* Dkt. 60. After completing its court-approved discovery, Kafi amended its complaint for a fourth time in February **2022**. In support of the allegations mentioned above, Kafi's Fourth Amended Complaint includes over a dozen exhibits, most of which pertain to its claim that the Assignment is a forgery. I discuss the relevant exhibits later in the opinion, but it is worth mentioning upfront that one of the exhibits is a "Forensic Document Examination Preliminary Report," prepared by two forensic document examiners who analyzed dozens of White's and Avila's known signatures and compared them to the supposed forgeries. *See* Dkt. 63-14.

Defendants have jointly moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Kafi's forgery claim is time-barred, as are Kafi's claims for declaratory relief based on the alleged forgery. *See* Dkt. 66 at 6–11. Even if the statute of limitations does not torpedo Kafi's claims, Defendants aver that Kafi has failed to sufficiently plead a claim for any of the relief sought. Sand Canyon and NTC further argue that they must be dismissed from the case, irrespective of whether Kafi has adequately pleaded a claim for relief, because they claim no interest in the underlying loan or Property. *See id.* at 29–30.

**\*3** Kafi advances a handful of interrelated arguments in response, the most relevant of which are: (1) the Assignment is a forgery and, therefore, void *ab initio*—meaning Defendants lack standing to enforce the underlying deed of trust; (2) foreclosure is time-barred under Texas' four-year statute of limitations for real-property actions, *see* TEX. CIV. PRAC. & REM. CODE § 16.035(d); and (3) even if the Assignment was valid and foreclosure not time-barred, Kafi is entitled to equitably redeem the Property by paying off the loan's balance to the current mortgagee, Wells Fargo, or the current loan servicer, PHH.

## III. LEGAL STANDARD

**A. RULE 12(b)(6) MOTION TO DISMISS**

Rule 12(b)(6) provides that a district court must dismiss a complaint that fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). This rule is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 10 of 336

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

8(a)(2). To survive dismissal at this early stage, the complaint must state enough facts such that the claim to relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads enough facts to allow the district court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint "does not need detailed factual allegations" to survive Rule 12(b)(6), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, I must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). I also must limit my inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Here, all documents discussed in this opinion are both attached to and incorporated in Kafi's Fourth Amended Complaint.

The Fifth Circuit has repeatedly held that "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). Given my charge to liberally construe the complaint in the light most favorable to the plaintiff, with every doubt resolved in the plaintiff's favor, dismissal is proper only if it "appear[s] beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." *Id.* (quotation omitted).

## B. RULE 9(b)'S HEIGHTENED PLEADING STANDARD

Rule 9(b) imposes a heightened pleading standard for claims of fraud. Forgery is a type of fraud, and, therefore, Rule 9(b)'s heightened pleading standard applies. *See Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 360 (5th Cir. 2017) (analyzing forgery allegations under Rule 9(b)'s heightened pleading standard). *See also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up). Generally, Rule 9(b) requires that a complaint detail "the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). However, the Fifth Circuit has acknowledged that there is "no single construction of Rule 9(b) that applies in all contexts," *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009), and that "Rule 9(b)'s ultimate meaning is context-specific." *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).

**\*4** Relatedly, "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be

based on information and belief." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim."). But the Fifth Circuit has cautioned that "this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quotation omitted). That is, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

## C. DIVERSITY JURISDICTION

Because jurisdiction is based on diversity of citizenship, Texas substantive law and federal procedural law apply to Kafi's claims. *See Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015).

## IV. ANALYSIS

## A. BECAUSE A FORGED SIGNATURE IS THE TYPE OF INJURY THAT IS INHERENTLY UNDISCOVERABLE, THE DISCOVERY RULE APPLIES

It is undisputed that the Assignment was filed in the real property records of Galveston County on January 18, 2012. Defendants insist that subsequent purchasers of real property, like Kafi, are charged with constructive notice of any title defects that could have been discovered through a reasonably diligent inspection of the public record. Defendants

thus contend that Kafi's forgery claim accrued on January 18, 2012. Because Kafi did not file the underlying lawsuit until October 2020, Defendants argue that Kafi's forgery claim is time-barred under Texas's four-year statute of limitations for real-property actions. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004(a) (4), 16.051. Kafi counters that any claim based on the purportedly forged Assignment did not accrue until it acquired an interest in the Property or, alternatively, the discovery rule deferred accrual of its claim because its injury is the type of injury that is inherently undiscoverable.

A cause of action generally accrues when a wrongful act causes some legal injury, regardless of when the plaintiff learns of such injury. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). "The discovery rule represents an exception to this general rule of accrual." *Id.* It applies when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). When the discovery rule applies, the cause of action does not accrue, and, consequently, the limitations period does not begin to run until the plaintiff knows or, through the exercise of reasonable diligence, should know of the facts giving rise to the cause of action. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001).

In Defendants' minds, "had Kafi owned the Property in 2012, *before* the supposedly fraudulent assignment was filed," the discovery rule would save Kafi's claim because property owners do not have a duty to continuously search the public record to ensure that no fraudulent instruments are subsequently recorded against their property. Dkt. 66 at 8. However, because "Kafi purchased the Property from the borrowers nearly nine (9) years *after* the allegedly forged assignment was executed and recorded," Defendants argue that Kafi is charged with "constructive notice [of the allegedly forged Assignment] for limitations purposes." *Id.* (quotation omitted).

 **\*5** Although Texas law may charge a buyer "with constructive notice of the actual knowledge that could have been acquired by examining the public records," *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981), this includes only "knowledge of all facts that reasonable inquiry would have disclosed." *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 542 (Tex. App.—Houston [1st Dist.] 1993, no writ)*. At the time of its purchase, Kafi was placed on notice of the Assignment itself. Nothing on the face of the Assignment—nor anything else in the public record—should have alerted Kafi that White's or Avila's signatures are possible forgeries. To hold otherwise would be nothing short of demanding Kafi exercise clairvoyance. This far exceeds the concept of "reasonable diligence" required under Texas law. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 60–61 (Tex. 2015) (holding where fraudulent information "taints the public record," the question of whether a property owner exercised "reasonable diligence remains a fact question"

for the jury to decide);[4] *Mooney*, 622 S.W.2d at 85 ("When evidence of fraud may be disclosed by examination of public records ... limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence.").

At this point in the litigation, one can only speculate on when Kafi learned of the supposed forgery. Under Texas law, where a plaintiff pleads the discovery rule, the defendant bears the burden of conclusively negating its application before dismissal is appropriate. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) ("the defendant must ... negate the discovery rule, if it applies and has been pleaded or otherwise raised"); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996) ("If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his entitlement to summary judgment.").

Right now, any theory that Kafi knew or should have known of the forgery more than four years before filing suit is just that—a theory without factual support. For Rule 12(b)(6) purposes, I conclude that Kafi has sufficiently invoked the discovery rule, permitting it to proceed for the time being. However, at trial, Kafi, as "[t]he party seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

**B. FORGERY**

### 1. Pleading Requirements for Kafi's Forgery Allegation

Although the parties agree that Rule 9(b)'s heightened pleading standard controls Kafi's forgery claim, they differ over how stringently it must be applied.

Rule 11(b)(3) of the Federal Rules of Civil Procedure allows a party to plead factual allegations that lack evidentiary support if it appears that they are "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). Kafi contends that Rule 9(b)'s heightened pleading standard should be relaxed in this case because the facts in question are peculiarly within Defendants' knowledge. Regardless, Kafi insists that its Fourth Amended Complaint demonstrates its belief that White's signature is a forgery is well-grounded. Understandably, Defendants disagree. They argue, "Kafi's forgery allegations are purely speculative and fail to meet [Rule 9(b)'s] stringent pleading requirements." Dkt. 66 at 16.

Rule 9(b) does not require omniscience. As mentioned, the Fifth Circuit has held that "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." Tuchman, 14 F.3d at 1068. Cf., ABC Arbitrage v. Tchuruk, 291 F.3d 336, 354 (5th Cir. 2002) ("[T]he plaintiffs need not allege all facts that may be related to their claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only the defendants know all the facts related to the alleged fraud." (quotations omitted)).

**\*6** That said, the Fifth Circuit warned that relaxation of Rule 9(b)'s requirements "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Tuchman, 14 F.3d at 1068. That is, "while Rule 11(b)(3) may relax Rule 9(b)'s particularity requirement, it cannot be construed to eviscerate that requirement in its entirety by permitting rank speculation." Moon v. Harrison Piping Supply, 375 F. Supp. 2d 577, 593 (E.D. Mich. 2005), rev'd in part on other grounds, 465 F.3d 719 (6th Cir. 2006). So, even under a non-restrictive application of the rule where allegations are based on information and belief, "the complaint must set forth a factual basis for such belief." U.S. ex rel. Thompson, 125 F.3d at 903. See also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) ("[A] complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

As one leading authority explains:

> Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b), unless accompanied by a statement of the facts upon which the pleader's belief is founded or

by allegations that the
necessary information lies
within the defendant's
control.

5A CHARLES A. WRIGHT & ARTHUR R.
MILLER, *Federal Practice and Procedure* §
1298 (4th ed.) (emphasis added).

The prima facie elements of the claim will
assist in determining whether the plaintiff has
satisfied a relaxed application of Rule 9(b)'s
"time, place, contents, and identity" standard.
*See Wagemann v. Dr.'s Hosp. of Slidell, LLC,*
No. CIV.A. 09-3506, 2010 **WL** 3168087, at *3
(E.D. La. Aug. 6, 2010). Put differently, the
degree of particularity required is guided by the
nature of the claim. *See U.S. ex rel. Foster v.
Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805,
819 (E.D. Tex. 2008) ("Just as the particularity
requirements of Rule 9(b) are depend[e]nt on
the facts of the case, they are also depend[e]nt
on Rule 8.").

In sum, to satisfy Rule 9(b)'s heightened
pleading requirement, Kafi must convince me
that there is a reasonable basis for its belief that
White's and Avila's signatures are forgeries and
that evidentiary support will be forthcoming
should the case proceed.

### 2. Kafi's Forgery Allegations

Keeping in mind that a plaintiff must
plead specific facts and not mere conclusory
allegations, but accepting as true the well-
pleaded factual allegations of the complaint and
reasonable inferences to be drawn from them, I
turn to Kafi's Fourth Amended Complaint.

Below are the allegations that Kafi has
"allege[d] upon information [are] reasonably
likely to be discovered," *see* Dkt. 63 at 6, 12–
13:

- "[T]he signature of Derrick White was not
  signed or affixed by Derrick White nor
  was the signature signed or affixed by
  someone else" with White's knowledge
  and authority. *Id.* at 6.

- "[T]he signature [of] Miranda Avila was
  not signed or affixed by Miranda Avila
  nor was the signature signed or affixed by
  someone else" with Avila's knowledge or
  authority. *Id.*

- "Sand Canyon and NTC altered, made,
  completed, executed, and authenticated
  the 2012 Assignment so that it purported
  to be signed by Derrick White and
  [notarized by] Miranda Avila when in fact
  Derrick White and Miranda Avila did not
  sign and did not authorize anyone else to
  sign for them." *Id.* at 12.

- "Sand Canyon and NTC issued, transferred,
  [possessed], registered, passed off, and
  published the 2012 assignment when it
  purported to be signed by Derrick White
  and Miranda Avila." *Id.* at 12–13.

### 3. The Basis for Kafi's Belief That White's Signature Is a Forgery

**\*7** Kafi's Fourth Amended Complaint
includes a handful of exhibits that it claims
demonstrate a reasonable basis for its belief that
the Assignment is a forgery. I will address the
relevant exhibits, in turn.

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 15 of 336

**i. Osceola County, Florida Records Audit**
The first is a 2014 property records audit performed in Osceola County, Florida,[5] which identifies four property transactions where White, as an "alleged NTC employee," executed unrelated assignments in which he misrepresented his capacity to do so "as Assistant Secretary of MERS" on behalf of several now-defunct corporations. Dkt. 63-10 at 121–22.

Kafi relies on the Osceola County records audit to cast general aspersions on NTC's business practices. *See* Dkt. 63 at 6–7. Buried within the 332-page document are allegations brought by the Illinois Attorney General that implicate NTC in a "robosigning" scheme. *See* Dkt. 63-10 at 111. Ostensibly relevant here is an allegation that "[d]ocuments generated by NTC were ... signed by NTC employees who had no personal knowledge of the facts they were attesting to." *Id.* The records audit also describes NTC as "a known document manufacturing plant," engaged in a pattern of recording documents that were prepared but not executed by NTC employees. *Id.* at 109–12.

The report itself is replete with conclusory allegations. United States District Judge Gray Miller found the same records audit less than useful when considering a similar forgery allegation. *See Reed v. Bank of Am., N.A., No. CV H-15-2005, 2016* **WL** *3058303, at \*4 (S.D. Tex. May 31, 2016)* ("Even considering the report, it simply makes the conclusory statement that Martha Munoz is a 'known Bank of America robosigner.' The report offers no support for this allegation. Moreover, the report is no evidence that the assignments at issue

in this case were forged." (internal citation omitted)).

But even if I were to accept the allegations contained within the records audit as the gospel truth, they are not the silver bullet Kafi believes them to be. That is, the records audit does not lend support to Kafi's theory that White's signature is a forgery. If anything, it tilts the scales in the opposite direction, suggesting that White personally signed the Assignment but misrepresented his capacity to do so as Sand Canyon's Vice President.

Under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer, not void, but merely voidable." *Reinagel v. Deutsche Bank Nat'l Tr. Co., 735 F.3d 220, 226 (5th Cir. 2013).* This is significant because, under Texas law, a non-party to a mortgage assignment (i.e., homeowner) may only challenge the assignment on grounds that would render it void, not merely voidable. *See EverBank, N.A. v. Seedergy Ventures, Inc., 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.)* ("When the homeowner is just a third party to an assignment, the homeowner lacks standing to challenge the assignment on grounds that would merely render the assignment voidable."). Here, Kafi's standing to challenge the Assignment hinges on the fact that "[a] forged deed is void" under Texas law. *Vazquez v. Deutsche Bank Nat'l Tr. Co., N.A., 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.).*

**\*8** Said differently, allegations of White's supposed nefarious conduct found in the

records audit are not comparable to the allegations made by Kafi in this case and do not provide a reasonable basis for its forgery allegations.

### ii. AOL.com News Article

The second exhibit is an online news article similarly discussing NTC's "problematic" business practice of robosigning mortgage-related documents. Dkt. 63-11. In its briefing, Kafi specifically references an NTC employee mentioned in the article who, according to the article, testified at deposition that he notarized hundreds of documents at a time and, on occasion, signed documents as a vice president of various financial institutions. *See id.* at 3. That same employee, however, also apparently testified that he was unaware whether other NTC employees did the same. *See id.*

Cutting to the chase, the article makes no mention of White, Avila, or the Assignment at issue. Like the records audit, the article's general allegations regarding NTC's supposed business practices do nothing to demonstrate a reasonable basis for Kafi's forgery allegations in this case.

### iii. Forensic Document Examination Preliminary Report

The third exhibit is the aforementioned "Forensic Document Examination Preliminary Report," prepared by forensic document examiners Dale Stobaugh ("Stobaugh") and Kenneth Crawford ("Crawford"), both of whom analyzed dozens of White's and Avila's "known signatures" and compared them to the supposed forgeries. *See* Dkt. 63-14. The report begins with the caveat, "[d]ue to the lack of

detail and possible misinterpretation of foreign matter reflected in copies [of signatures], it is usually our policy not to base definite identification or elimination by handwriting comparison on any type of reproduction," and includes a disclaimer that ink originals of the known signatures "could provide a basis for a more definite determination." *Id.* at 1–2. Nonetheless, the report cites "consistent differences" between the known signatures and supposed forgeries before concluding that these inconsistencies "indicat[e]" White and Avila did not author their respective signatures on the Assignment. *Id.* at 2.

### iv. Avila's Deposition Testimony

Avila testified her signature on the Assignment is authentic and that White signed the Assignment in front of her. *See* Dkt. 66-1 at 5–6. However, upon cross-examination, Avila conceded that she did not specifically remember White signing "this particular assignment" but could not recall an instance where she notarized a document where the signer was not in her presence. *Id.* at 6–7.

Predictably, the parties' view of Avila's testimony is considerably different. Defendants would have me look at Avila's seemingly unequivocal statement that White "signed [the Assignment] in front of [her]." *Id.* at 6. While Kafi emphasizes that Avila walked back her testimony, admitting she did not recall White signing the Assignment in question. *See id.* at 6–7 (Q: [A]re you saying that you specifically recall that this particular assignment from January 5, 2012, that you have specific recollection that [White] signed this in front of you?" A: "I don't remember specifically that

day, but we sign in front of each other all the time.").

### 4. Kafi Has Pleaded Forgery with Sufficient Particularity

**\*9** Defendants' flagship argument is that "the Fifth Circuit has repeatedly held that these types of signature comparison are insufficient to state a [forgery] claim." *Id.* at 14 (citing *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 360 (5th Cir. 2017) and *Kreway v. Countrywide Bank*, 647 F. App'x 437, 437–38 (5th Cir. 2016)).

The short of it is that the Fifth Circuit has never decided a case like this. In both *Bynane* and *Kreway*, the plaintiff's forgery allegations were premised solely on the plaintiff's own deduction that the assignment was a forgery because, according to the plaintiff, the signature on the assignment in question differed from the signer's signature on other unrelated assignments, which the plaintiff had attached to the complaint for the court to compare. *See Bynane*, 866 F.3d at 361; *Kreway*, 647 F. App'x at 438.

This case might have started out as a *Bynane* or *Kreway*-type signature-comparison case, but Kafi amended its pleadings and dropped the signature-comparison argument altogether. Now, Kafi's allegations chiefly rely on the preliminary forensic document examination report. Stobaugh and Crawford —professional forensic document examiners —compared dozens of versions of White's and Avila's "known signatures" that were produced by NTC with the supposed forgeries and found "consistent differences," which they concluded "indicat[e]" that White and Avila

"did not write the signature in that name on the [Assignment]." Dkt. 63-14 at 2. While the Fifth Circuit has constructed an admittedly rigorous test for successfully pleading forgery allegations of this type, the preliminary report distinguishes Kafi's allegations from those made in *Bynane* and *Kreway*. Viewed in the light most favorable to Kafi, I find that the preliminary report demonstrates a reasonable basis for its allegation that the Assignment is a forgery. *See* Dkt. 63 at 6 (alleging that "[t]he forgery allegations ... in this complaint have evidentiary support and will likely have even more evidentiary support after a reasonable opportunity for further investigation or discovery").

Moreover, if I were to adopt the position Defendants would have me take, it is difficult to envision how a plaintiff in Kafi's shoes could ever surmount Rule 9(b)'s heightened pleading standard. Admittedly, Kafi does not allege who forged the signatures, when the signatures were forged, where the signatures were forged, or how the signatures were forged. However, there is no question that this information is "peculiarly within the opposing party's knowledge." *Tuchman*, 14 F.3d at 1068. To hold otherwise would essentially require Kafi first figure out who (allegedly) forged the signatures (without the benefit of discovery) and then drag them into court to explain when, where, and how they did so. This would be a draconian application of Rule 9(b) where, as here, Kafi has demonstrated a reasonable basis for its belief that the signatures are forgeries. *See U.S. ex rel. Foster*, 587 F. Supp. 2d at 819 ("the particularity requirements of Rule 9(b) are depend[e]nt on the facts of the case"); 5A CHARLES A. WRIGHT & ARTHUR R.

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

MILLER, *Federal Practice and Procedure* § 1291 (4th ed.) ("[T]hose portions of Rule 9 that require specific or detailed allegations should not be construed in an unduly strict fashion.").

 **\*10**  Courts are intended as places of redress. For this reason, motions to dismiss are generally viewed with disfavor, as they tend to undermine the overarching public policy favoring merits-based disposition. *See Test Masters*, 428 F.3d at 570 ("Motions to dismiss are viewed with disfavor and are rarely granted."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1356 (3d ed.) ("[A] motion under Federal Rule 12(b)(6) ... is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."). Because I find that *Bynane* and *Kreway* are not binding on the facts of this case, I recommend the Court deny Defendants' motion to dismiss Kafi's claims for declaratory relief based on the supposed forgery and decide the merits of Kafi's forgery allegations at summary judgment or at trial. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("[A] primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, *the plaintiff could never win.*" (emphasis added)).

## C. TEXAS LAW DOES NOT RECOGNIZE FORGERY AS AN INDEPENDENT CIVIL CAUSE OF ACTION

In addition to seeking a declaratory judgment that the Assignment is a forgery, Kafi has pleaded an independent "forgery" cause of

action against Sand Canyon and NTC. Thus, I must address whether "forgery" is a recognized civil claim under Texas law and, if so, whether Kafi has sufficiently pleaded such a claim. *See Breitling v. LNV Corp.*, No. CV 3:15-CV-0703-B, 2015 **WL** 5896131, at \*8 (N.D. Tex. Oct. 5, 2015) (observing that whether forgery qualifies as a tort under Texas "is unclear" and collecting conflicting authority).

Kafi's Fourth Amended Complaint cites a single state-court decision in support of its position that a common-law claim of forgery exists under Texas law, *Saxer v. Nash Phillips-Corpus Co. Real Estate*, 678 S.W.2d 736 (Tex. App.—Tyler 1984, writ ref'd n.r.e.). In that case, the court of appeals wrote as follows: "Forgery is an unlawful and unconscionable act for which a common law court may provide a civil remedy independent of the remedies provided by [the Deceptive Trade Practices Act]." *Id.* at 739 (footnote omitted). Critically, following the phrase "unconscionable act," the court included a footnote citation to Texas Penal Code § 32.21, which codifies forgery as a criminal offense. *See id.* at 739 n.2.

As United States District Judge Sim Lake aptly pointed out, "in order for a private right of action to exist under a criminal statute, there must be a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 699 (S.D. Tex.) (cleaned up), *aff'd*, 582 F. App'x 279 (5th Cir. 2014). What's more, *Van Duzer* considered the very question before me now—whether a private cause of action for "forgery" exists under Texas law. *See id.* In deciding that no such civil claim exists, Judge Lake explained: "Plaintiffs have

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 19 of 336

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

not provided any statutory basis for inferring that they are entitled to bring a private cause of action on the basis of any criminal statute. Thus, any attempt by Plaintiffs to assert a cause of action under a criminal statute fails as a matter of law." *Id.*

Much like the plaintiff in *Van Duzer*, Kafi's forgery allegations track the language found in the Texas Penal Code—though Kafi does not cite to the Penal Code itself. *Compare* Dkt. 63 at 12–13, *with* Tex. Penal Code § 32.21(a)–(b). Kafi cannot create a civil cause of action simply by parroting the Texas Penal Code. Because there is no statutory basis for me to infer that Texas law recognizes a civil cause of action for violating the criminal forgery statute, I find that forgery is not a cognizable, stand-alone civil claim under Texas law. *See Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013) (dismissing a forgery claim "to the extent it was asserted as any kind of freestanding cause of action"). Accordingly, I recommend the Court dismiss Kafi's forgery claims against Sand Canyon and NTC with prejudice.

### D. STATUTE OF LIMITATIONS

 **\*11** Defendants label Kafi's claim for declaratory relief based on the expiration of the statute of limitations to foreclose on the Property as "nothing more than speculation," arguing that Kafi has pleaded no facts to support its allegations that the notices of trustee's sale [6] were ever mailed to the Richardsons or that the notices were proceeded by a notice of intent to accelerate. Dkt. 66 at 25–26.

Under Texas law, a suit for the foreclosure of a real property lien must be brought within four years of the maturity date of the last installment of an obligation payable in installments. TEX. CIV. PRAC. & REM. CODE §§ 16.035(a), (e). However, default alone does not automatically start the limitations clock. If a note or deed of trust secured by real property contains an optional acceleration clause—as in this case —"the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

Effective acceleration requires two acts: (1) notice of intent to accelerate; and (2) notice of acceleration. *See id.* Both notices must be "clear and unequivocal," *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991), and notice of acceleration is ineffective unless preceded by proper notice of intent to accelerate. *See Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982).

Kafi has sufficiently pleaded facts to assert a plausible claim that the statute of limitations to foreclose on the Property has expired. Kafi alleges that the debt was accelerated—and, therefore, the limitations period to bring a foreclosure action began—on September 5, 2012, when "notice of foreclosure sale was filed in the real property records and mailed to the Richardsons," or, in the alternative, "on November 6, 2012, when another notice of foreclosure sale was filed in the real property records and mailed to the Richardsons." Dkt. 63 at 14. Kafi further alleges the notices were "preceded by an unequivocal notice of intent to accelerate," though Kafi cabins this allegation by pleading it "will likely have evidentiary

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 20 of 336

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

support after a reasonable opportunity for further investigation or discovery." *Id.* at 15. Accepting these facts as true for the purposes of the motion to dismiss, I find that Kafi has sufficiently pleaded the expiration of the statute of limitations to foreclose.

Accordingly, I recommend the Court deny Defendants' motion to dismiss Kafi's claim for declaratory relief based on the expiration of the statute of limitations to foreclose on the Property. *See e.g.*, *Kafi, Inc. v. Deutsche Bank Nat'l Tr. Co.*, No. CV H-20-3247, 2021 WL 5143309, at *4 (S.D. Tex. Oct. 5, 2021) (recommending the same result under near-identical circumstances).

## E. QUIET TITLE

 **\*12**  Under Texas law, an action to quiet title—also known as a suit to remove cloud from title—is one in which a superior title holder seeks to remove a challenge to that title. *See Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "An action to remove a cloud from title exists to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of a better right." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quotation omitted). In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *See Lance v. Robinson*, 543 S.W.3d 723, 739 (Tex. 2018).

"That is, the plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn*, 321 S.W.3d at 531. "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.–Houston [1st Dist.] 2012, pet. denied).

The elements of a claim for relief to quiet title are: (1) a valid equitable interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) although facially valid, the defendant's claim is invalid or unenforceable. *See id.* To prevail, the plaintiff must demonstrate that she has superior title to the property at issue. *See id.*

Here, there is no question that Kafi has an interest in the Property. Moreover, Wells Fargo's claim of a right to foreclose and thereby transfer legal title to the Property constitutes a cloud on Kafi's title. *E.g.*, *Morales v. Wells Fargo Bank, N.A.*, No. SA-13-CV-410-XR, 2013 WL 6057853, at *6 (W.D. Tex. Nov. 14, 2013). *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("Foreclosure transfers title ... to another party"). As for the third element, either of Kafi's two principal arguments—forgery [7] or limitations [8]—if proven, would demonstrate Wells Fargo's claimed interest in the Property is invalid or unenforceable, and that Kafi has a superior title.

For these reasons, I find that Kafi has alleged facts that, if true, would permit it to recover on the strength of its own title and has demonstrated the existence of a potentially invalid charge against that title. Accordingly, I recommend the Court deny Defendants' motion to dismiss Kafi's claim to quiet title to the Property without prejudice to re-urging the issue at summary judgment.

## F. EQUITABLE RIGHT OF REDEMPTION

**\*13** In the alternative, Kafi has also pleaded a claim for equitable redemption. A right of redemption is the right to redeem the property subject to foreclosure within a reasonable time of default by paying off the full amount owed on the mortgage. *See Scott v. Dorothy B. Schneider Estate Tr.*, 783 S.W.2d 26, 28 (Tex. App.—Austin, 1990 no writ). In order to state a claim for equitable redemption, a plaintiff must allege: (1) it has a legal or equitable interest in the property subject to the mortgage; (2) it is ready, able, or willing to redeem the property in question by paying off the amount of the liens to which the property is subject; and (3) that the equity of redemption was asserted before a foreclosure sale occurred. *See id.*

Kafi's alleged right to equitable redemption is based on its allegations that: (1) it is the "legal owner of the Property"; (2) it "would suffer a loss of ownership and the right to possession and control of the Property if Wells Fargo and PHH are allowed to foreclose"; and (3) it "is ready, able or willing to redeem the Property ... by paying off the amount of any *valid and subsisting* liens to which the Property is subject." Dkt. 63 at 17. Regarding the latter, Kafi pleads that it has a net worth of

$7 million, which dwarfs the loan's principal amount ($260,248), and would "pay any *valid and subsisting* liens in cash." *Id.* Finally, Kafi represents that the current amount owed under the loan agreement is unknown and subject to discovery. *See id.*

Defendants maintain that Kafi has failed to sufficiently plead a claim for equitable redemption because it has not tendered all amounts due on the underlying note. *See Owens v. Bank of Am., NA*, No. CIV.A. H-11-2552, 2012 **WL** 912721, at \*3 (S.D. Tex. Mar. 16, 2012) ("Thus, within the context of the plaintiffs' equitable redemption claim, the plaintiffs must tender the redemption amount (including the full amount of the defendant's lien) either to the defendant or the Court.").

Simply pleading willingness and the ability to pay the amount owed has been rejected by just about every court to consider the issue. Nonetheless, some courts have decided that alleging facts that adequately explain the plaintiff's ability to pay off the amount owed on the subject property is sufficient to survive a motion to dismiss. *Compare, DBDFW 3 LLC v. JPMorgan Chase Bank, N.A.*, No. 3:18-CV-3148-C-BN, 2019 **WL** 823810, at \*8 (N.D. Tex. Feb. 6, 2019) ("Stating that the plaintiff is willing to satisfy the lien is insufficient to state a claim for equitable redemption. The plaintiff must provide additional details such as the value of the lien, how it would pay, its own net worth or assets, or any other information from which the court could infer that plaintiff's right to relief is plausible."), *with 330 Cedron Tr. v. Citimortgage, Inc.*, No. SA-14-CV-933-XR, 2015 **WL** 1566058, at \*3 (W.D. Tex. Apr. 8, 2015) ("Cedron offers no facts in its complaint

that demonstrate it is [ ] 'ready, willing, and able' to pay off the amount of the existing liens to which the Property is subject .... Cedron offers no facts about the value of such lien, how it would pay, its own net worth or assets, etc. The conclusory statement that merely recites an element of the cause of action is not enough to raise the right to relief above a purely speculative level.").

Here, Kafi has pleaded that it is ready, willing, and able to pay off "any *valid and subsisting* liens to which the Property is subject." Dkt. 63 at 17. Standing alone, this would be insufficient. But Kafi has also pleaded that "it has a net worth of $7 million and would pay any *valid and subsisting* liens in cash." *Id.* Moreover, although Kafi offers no facts about the amount due, it does include the loan's principal amount: $260,248. Given that Kafi claims a net worth of $7 million, Kafi has sufficiently alleged that it has the assets to pay off whatever remains on the loan.

 **\*14** In my mind, these extra allegations nudge Kafi's equitable redemption claim above a purely speculative level. *See Green for 2016 Wolf Tr. v. Bank of Am., N.A.*, No. CV H-17-0772, 2017 **WL** 1424332, at \*2 (S.D. Tex. Apr. 20, 2017) ("Plaintiff has plead sufficient facts to state a claim for its equitable right of redemption that is plausible on its face."); *id.* ("Although the cases on which Defendant relies correctly identify tender of the amount owed as a condition precedent to recovery of title, tender is not required in order to state a legally cognizable claim." (quotation omitted)).

## G. KAFI CANNOT OBTAIN ANY RELIEF FROM NTC OR SAND CANYON BECAUSE NEITHER PARTY CLAIMS A CURRENT INTEREST IN THE MORTGAGE

It is undisputed that PHH is the current loan servicer, and, since 2012, Wells Fargo has been the assignee of record of the deed of trust. There are no allegations that Sand Canyon has a current interest in the loan or deed of trust, nor are there any allegations that NTC has ever claimed such an interest. Moreover, there are no allegations that Sand Canyon or NTC is attempting to foreclose on the Property. Thus, even if Kafi ultimately succeeds on any of its claims for declaratory relief, it could not obtain any of the requested relief from NTC or Sand Canyon. Accordingly, I recommend the Court dismiss Kafi's claims against Sand Canyon and NTC.

## H. KAFI'S CLAIMS FOR EXEMPLARY DAMAGES

Kafi alleges that Defendants' conduct in making, presenting, or using the Assignment and the post-2008 notices of sale constitute fraud, malice, or gross negligence, entitling Kafi to exemplary and punitive damages. *See* Dkt. 63 at 18 (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)).

An independent tort must be separately pleaded and proved to recover exemplary damages. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981) (holding that exemplary damages were "not recoverable because the [Appellees] failed to plead and prove a tort allowing recovery of exemplary damages"); *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 703

n.5 (Tex. App.—Fort Worth 1998, no pet.) ("To support an award of exemplary damages, the plaintiff must prove a 'distinct' tortious injury with actual damages arising from that injury."). Because Kafi's forgery allegations live on only through its requests for declaratory relief, it is unable to obtain exemplary damages. Accordingly, I recommend the Court dismiss Kafi's request for exemplary damages.

**CONCLUSION**

For the above reasons, I recommend that the Court **GRANT in part** and **DENY in part** Defendants' Joint Motion to Dismiss (Dkt. 66). Specifically, I recommend the Court dismiss (1) Kafi's civil forgery claim against all Defendants; (2) Kafi's claim for exemplary damages; and (3) all claims against NTC and Sand Canyon. All other requested relief is denied without prejudice to re-urging at summary judgment.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3084480

---

**Footnotes**

1   Kafi's Fourth Amended Complaint alleges that White executed the Assignment as "an 'Assistant Secretary' for" Mortgage Electronic Registration Systems, Inc. Dkt. 63 at 5–6. However, the Assignment identifies White as Sand Canyon's Vice President. *See* Dkt. 63-9. Whatever the case may be, the capacity in which White executed the Assignment has no bearing on my decision.

2   The June 2017 notice of sale identifies Ocwen Loan Servicing, LLC ("Ocwen") as the Richardsons loan servicer. Dkt. 63-7 at 2. Kafi alleges Ocwen merged with PHH Mortgage Corporation in 2019, and that "PHH now claims to be the [loan's] mortgage servicer." Dkt. 63 at 9.

3   Specifically, Kafi seeks the following declarations that: (1) Defendants lack "legal or contractual" standing to conduct a foreclosure sale; (2) the Assignment is void as a forgery; (3) the Assignment is void because Sand Canyon had no right, title, or interest in the mortgage on the date of the Assignment; (4) the Assignment is void because it violates the public policy favoring identification of lienholders and avoidance of "secret liens"; (5) there is no complete and unbroken chain of

assignments and transfers of the deed of trust or mortgage documents from Sand Canyon to any of the other Defendants; (6) not all assignments and transfers of the mortgage were properly recorded in the public record, in violation of TEX. LOC. GOV'T CODE § 192.007; (7) the deed of trust is null and void; and (8) the limitations period to foreclose has expired. Dkt. 63 at 10, 13–15.

4    *Hooks* concerned the fraudulent-concealment doctrine. Although the discovery rule and fraudulent-concealment doctrine are separate tolling doctrines that are "characterized by different substantive and procedural rules," *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996), "cases discussing fraudulent concealment are relevant to the meaning of reasonable diligence" under the discovery rule. *Hooks*, 457 S.W.3d at 58 n.9.

5    The 332-page records audit is part one of a two-part forensic examination of Osceola County, Florida's real property and circuit court records.

6    Defendants cite a decision out of the Houston Division for the proposition that I should dismiss Kafi's limitations claim because nothing in the record indicates the Richardsons actually received the notices of trustee's sale. *See* Dkt. 66 at 25–26 (citing *Ther & Co. v. U.S. Bank, N.A.*, No. CV H-18-2916, 2019 **WL** 5684226, at *3 n.1 (S.D. Tex. Oct. 31, 2019)). Critically, *Ther* was decided at summary judgment. In contrast, Rule 8's liberal pleading standard does not require that a plaintiff produce evidence supporting the facts alleged; "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support what is alleged. *Twombly*, 550 U.S. at 556.

7    "A void contract of assignment confers no right to foreclose under the deed on the purported assignee[.]" *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 **WL** 4335997, at *6 n.14 (N.D. Tex. Aug. 29, 2012) (applying Texas law). *See Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) ("Any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner.").

8    "It is established law in Texas that, when a debt is barred, an action to foreclose a lien or mortgage given as security for it is barred also." *Dupree v. Mansur*, 214 U.S. 161, 166 (1909). *See Wolf*, 44 S.W.3d at 567 ("Under state law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." (internal citations omitted)).

**Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)**

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 2

2022 WL 4454395
Only the Westlaw citation
is currently available.
United States District Court,
S.D. Texas, Galveston Division.

KAFI, INC., Plaintiff.
v.
SAND CANYON CORPORATION
f/k/a Option One Mortgage
Corporation, et al., Defendants.

No.



3
:
20
-
cv
-
00354

|

Signed September 23, **2022**

**Attorneys and Law Firms**

Jeffrey Craig Jackson, Charles Daniel Brooks, Jeffrey Jackson & Associates, PLLC, Houston, TX, for Plaintiff.

Brett W. Schouest, Dykema Gossett PLLC, San Antonio, TX, Stephen Andrew Walsh, Weinberg Wheeler et al, Birmingham, AL, for Defendant Sand Canyon Corporation.

Kurt Lance Krolikowski, Ryan Benner Burns, Locke Lord LLP, Houston, TX, for Defendant Nationwide Title Clearing, Inc.

Neyma Edelyn Figueroa, Brett W. Schouest, Dykema Gossett PLLC, San Antonio, TX, for Defendants Wells Fargo Bank, N.A.

as Trustee for ABFC 2006-OPT3 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT3, PHH Mortgage Corporation.

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE

**\*1** On February 24, 2021, all dispositive and non-dispositive pretrial matters in this case were referred to United States Magistrate Judge Andrew M. Edison under 28 U.S.C. § 636(b)(1)(A) and (B). *See* Dkt. 38. Judge Edison filed a memorandum and recommendation on August 3, **2022**, recommending that the court grant in part and deny in part the defendants' joint motion to dismiss claims brought against them by Kafi, Inc. ("Kafi") for failure to state a claim. *See* Dkt. 72. Specifically, Judge Edison recommended the court dismiss: (1) Kafi's forgery claim against all defendants; (2) Kafi's claim for exemplary damages; and (3) Kafi's claims against Nationwide Title Clearing ("NTC") and Sand Canyon Corporation f/k/a Option One Mortgage Corporation ("Sand Canyon"). In all other respects, Judge Edison recommended the court deny the relief sought by the defendants in their joint motion to dismiss without prejudice to re-urging at summary judgment.

On August 17, **2022**, the defendants timely filed their objections to the memorandum and recommendation. *See* Dkt. 73. In accordance with 28 U.S.C. § 636(b)(1)(C), this court is

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 28 of 336

Kafi, Inc. v. Sand Canyon Corporation, Not Reported in Fed. Supp. (2022)

required to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection [has been] made." 28 U.S.C. § 636(b)(1)(C). After conducting this de novo review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).

The court has carefully considered the objections, the memorandum and recommendation, the pleadings, and the record. The court accepts Judge Edison's memorandum and recommendation and adopts it as the opinion of the court. It is therefore ordered that:

(1) Judge Edison's memorandum and recommendation (Dkt. 72) is approved and adopted in its entirety as the holding of the court;

(2) The defendants' joint motion to dismiss (Dkt. 66) is granted in part and denied in part.

(3) Kafi's forgery claim against all defendants is dismissed with prejudice;

(4) Kafi's claim for exemplary damages is dismissed is dismissed with prejudice;

(5) Kafi's claims against NTC and Sand Canyon are dismissed with prejudice, and those parties are dismissed from the case; and

(6) All other relief sought by the defendants in their joint motion to dismiss is denied without prejudice to re-urging at summary judgment.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4454395

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 3

# 5A Fed. Prac. & Proc. Civ. § 1291 (4th ed.)

**Federal Practice and Procedure (Wright & Miller)** | September 2025 Update

**Federal Rules of Civil Procedure**

**Chapter 4. Pleadings and Motions**

**Rule 9. Pleading Special Matters**
Author: A. Benjamin Spencer

**A. Pleading Special Matters—In General**

---

## § 1291 Pleading Special Matters—In General

> **Primary Authority**
>
> - **Fed. R. Civ. P. 9**

In contrast to the broad general pleading principles in Federal Rule of Civil Procedure 8,[1] Federal Rule of Civil Procedure 9 contains a number of provisions designed to solve or ameliorate several pleading problems that historically have been dealt with in special ways. In some instances, Rule 9 preserves prior practice regarding the detail with which certain matters must be pleaded—for example, with regard to fraud and mistake (Rule 9(b))[2]—but in other respects the rule alleviates the stringency of past pleading practice—for example, in the case of capacity (Rule 9(a))[3] or conditions precedent (Rule 9(c)).[4]

Courts and commentators have traditionally noted that Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8[5] and in conjunction with the directives as to the form of the pleadings that appear in Federal Rule of Civil Procedure 10.[6] This has traditionally meant that those portions of Rule 9 that require specific or detailed allegations should not be construed in an unduly strict fashion. Although the federal rules in their inception contemplated a de-emphasis of the pleadings and a general simplicity in pleading practice,[6.50] the Supreme Court's decisions in Bell Atlantic Corporation v. Twombly[7] and Ashcroft v. Iqbal[8] have modified this understanding to some extent by requiring the pleading of nonconclusory factual allegations sufficient to state a plausible claim for relief.[9] These modified strictures of Rule 8—not simply the classic liberal

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 31 of 336

§ 1291 Pleading Special Matters—In General, 5A Fed. Prac. & Proc. Civ. § 1291 (4th ed.)

pleading philosophy of the federal rules—must be kept in mind when interpreting the requisites and allowances of Rule 9.[10] That said, the Court has stood by the notion that "[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine" and indicated that stating facts that entitle a litigant to relief "simply, concisely, and directly" will suffice to stave off a dismissal.[11] Thus, although Rule 9(b) calls for fraud (and mistake) to be pleaded with particularity, the allegations still may be short, plain, simple, direct, and concise.[12]

Westlaw. © 2025 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

---

## Footnotes

1          **Rule 8**
           See §§ 1201 to 1286.

2          **Rule 9(b)**
           See §§ 1296 to 1301.1.

           "Admittedly, Kafi does not allege who forged the signatures, when the signatures were forged, where the signatures were forged, or how the signatures were forged. However, there is no question that this information is peculiarly within the opposing party's knowledge. To hold otherwise would essentially require Kafi first figure out who (allegedly) forged the signatures (without the benefit of discovery) and then drag them into court to explain when, where, and how they did so. This would be a draconian application of Rule 9(b) where, as here, Kafi has demonstrated a reasonable basis for its belief that the signatures are forgeries." Kafi, Inc. v. Sand Canyon Corporation, 2022 WL 3084480 (S.D. Tex. 2022) (magistrate judge) (citations and internal quotation marks omitted), **citing Wright & Miller**, report and recommendation adopted, 2022 WL 4454395 (S.D. Tex. 2022).

3          **Rule 9(a)**
           See §§ 1292 to 1294.

4          **Rule 9(c)**
           See §§ 1302 to 1304.

5          **Pleading philosophy**
           See §§ 1202, 1215 to 1223, 1281 to 1286.

6          **Form of pleading**
           See §§ 1321 to 1327.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 32 of 336

§ 1291 Pleading Special Matters—In General, 5A Fed. Prac. & Proc. Civ. § 1291 (4th ed.)

| 6.50 | **Simplicity in pleading** |
| | Charles E. Clark, The New Federal Rules of Civil Procedure: The Last Phase—Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure, 23 A.B.A.J. 976 (1937) ("There is certainly no longer reason to force the pleadings to take the place of proof, and to require other ideas than simple concise statements, free from the requirement of technical detail."). |
| 7 | **Twombly case** |
| | 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). |
| 8 | **Iqbal case** |
| | 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). |
| 9 | **Twombly and Iqbal pleading standard** |
| | See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014) ("A plaintiff, [Twombly and Iqbal] instruct, must plead facts sufficient to show that her claim has substantive plausibility."). |
| 10 | **Rule 9 subject to Rule 8** |
| | Iqbal, 556 U.S. at 686–687 ("Rule 9 * * * does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8."), **citing Wright & Miller**. |
| 11 | **Court's pleading philosophy** |
| | Johnson v. City of Shelby, 135 S. Ct. at 347, **quoting Wright & Miller**. |
| | **See also** |
| | Amalgamated National Health Fund v. Hickey Freeman Tailored Clothing, Inc., 2024 WL 1333569, *8 (S.D. N.Y. 2024) ("[T]hose portions of Rule 9 that require specific or detailed allegations should not be construed in an unduly strict fashion. * * * [T]he Rule itself requires only 'particularity,' and it is the language of the federal rules, not judicial interpretation, that governs. Therefore, in keeping with the purpose of Rule 9(b), courts tolerate certain ambiguities in a pleading, provided that the allegations about the fraud are sufficient to give notice to the defendant and allow it to prepare its defense.") (citations omitted), **quoting Wright & Miller**, report and recommendation adopted, 2024 WL 1330049 (S.D. N.Y. 2024). |
| | Deveraux v. Meadowlark of Billings LLC, 2023 WL 2330311, *2, (D. Mont. 2023) ("Rule 9(b)'s requirement of specificity and detailed allegations 'should not be construed in an unduly strict fashion.' * * * Though Plaintiffs do not plead the exact date of the conversation, their identification of the month and year within the case's timeline * * * is sufficiently particular for notice.") (citations omitted), **quoting Wright & Miller**. |
| 12 | **Pleading fraud** |

See §§ 1296 to 1298.

**Pleading mistake** See § 1299.

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S.
Government Works.

# CASE NO. 4

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 35 of 336

Maxim Crude Oil, LLC v. Noil Corp., Inc., Not Reported in Fed. Supp. (2021)

2021 WL 12320541
Only the Westlaw citation
is currently available.
United States District Court, S.D.
Texas, Corpus Christi Division.

MAXIM CRUDE OIL, LLC, Plaintiff,
v.
NOIL CORP., INC., et al., Defendants.

Civil
Action
No.
2
:
21
-
CV
-
90
|
Signed November 16, **2021**
|
Entered November 17, **2021**

**Attorneys and Law Firms**

Antonio Ortiz, Shelby A. Jordan, Jordan & Ortiz, PC, Corpus Christi, TX, for Plaintiff.

Michael Lynn Navarre, Matthew R. Beatty, Beatty Navarre Strama, PC, Austin, TX, Marty J. Schwartz, Three First National Plaza, Chicago, IL, for Defendant.

**ORDER**

DAVID S. MORALES, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendant Morrell Steve Neely's ("Neely") motion to dismiss Plaintiff Maxim Crude Oil, LLC's second amended complaint. (D.E. 8; D.E. 29). Neely seeks dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(6) for failure to state a claim, and 9(b) for failure to plead fraud with particularity. (D.E. 8); *see* FED. R. CIV. P. 12(b)(2), 12(b)(6), 9(b). After considering Plaintiffs second amended complaint (D.E. 29), Neely's motion (D.E. 8), Plaintiff's responses (D.E. 18, D.E. 34), and Neely's reply and surreply (D.E. 24, D.E. 31), the Court **DENIES** Neely's motion to dismiss. (D.E. 8).

**I. Background**

On April 23, **2021**, Plaintiff filed this lawsuit in state court against Defendant Noil Corporation, Inc. ("Noil") and Neely. (D.E. 1). Neely is Noil's CEO and President. (D.E. 8, p. 2). On May 3, **2021**, Defendants removed to this Court based on diversity jurisdiction. (D.E. 1). Plaintiff's second amended complaint sets forth several allegations, including that Noil and Neely fraudulently converted $600,000 from Plaintiff. *See* (D.E. 29). Plaintiff's second amended complaint presents the following factual allegations (D.E. 29), which are taken as true for purpose of the Rule 12(b)(6) motion.[1] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (quoting *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) ("[T]he plaintiff's

complaint is to be construed in a light most favorable to the plaintiff [when deciding a Rule 12(b)(6) motion], and the allegations contained therein are to be taken as true.")).

In early March **2021**, Plaintiff contacted Neely regarding procuring a fuel product, Naptha, in the Nueces County area. (D.E. 29, p. 9). Neely represented that he could, in fact, procure Naptha for Plaintiff. *Id.* Relying on Defendants' representations and promises, Plaintiff and Noil entered into a crude products agreement dated March 15, **2021** (the "Agreement"), whereby Plaintiff would purchase Naptha from Defendants on a monthly basis. *Id.* A material term of the Agreement required that the funds Plaintiff tendered Defendants for Naptha be held in an escrow account until Plaintiff obtained the product. *Id.* at 10. Noil agents represented in several text messages and emails that the funds would be held in an escrow account. *Id.* at 10–15. Relying on these representations, Plaintiff wired $2,000,000 to Noil's bank account. *Id.* at 14.

**\*2** According to Plaintiff, the representations that the funds would be held in an escrow account were false. *Id.* at 13. Noil did not and never intended to keep the funds in an escrow account. *Id.* Significantly, Plaintiff never received the product nor assurance that his funds were in an escrow account. *Id.* at 14–15. Ultimately, Plaintiff terminated the Agreement and demanded the funds be returned. *Id.* at 15. After Plaintiff threatened to file suit, Defendants returned $1,400,000 of Plaintiff's money, withholding $600,000. *Id.* at 16.

Plaintiff alleges that Noil is a sham company created by Neely to perpetuate fraud, including inducing people into wiring funds to Noil with no intention of performing its contractual obligations. *Id.* at 16–17. Plaintiff contends that Neely used Noil to protect his individual liability, knowing that when his fraud is discovered, he will have already drained the corporation's assets. *Id.* at 17. Stated differently, Plaintiff alleges that Neely—as owner, control person, and alter ego of Noil—converted at least $440,000 in fraudulent transfers out of Maxim's $600,000 for his own benefit and now refuses to return the funds, despite claiming that Noil is a highly successful business. *Id.*

The Court will first consider the Rule 12(b) (2) jurisdictional attack before considering the Rule 12(b)(6) merits challenge. *See Wilson v. Hous. Comm. Coll. Sys.*, 955 F.3d 490, 494 (5th Cir. 2020).

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Legal Standard – Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b) (2), a court must dismiss a claim if the court lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). In a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute extends to a particular defendant and exercising jurisdiction over that defendant would comport with due process. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Texas's long-arm statute extends to the limits of due process, so the federal due process analysis is used in

determining personal jurisdiction. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Federal due process permits the exercise of specific jurisdiction if:

> (1) the defendant has minimum contacts with the forum state, i.e., it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

When a district court rules on a Rule 12(b)(2) motion without a hearing, it is the plaintiff's burden to make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not required. *Id.* Moreover, "uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id.* However, a court need not credit a plaintiff's conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v.*

*Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

### B. Plaintiff has made a prima facie showing of personal jurisdiction over Neely via Plaintiff's fraudulent transfer claims.

Neely moved to dismiss the suit against him for lack of personal jurisdiction, contending that he does not have minimum contacts with Texas. (D.E. 8, p. 3–5). Plaintiff argues that Neely has established minimum contacts with Texas, including through Neely's activities as alleged in Plaintiff's fraudulent transfer claims. (D.E. 29, p. 4–7). In those claims, Plaintiff alleges that Neely's minimum contacts with Texas are established under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), with Noil as the fraudulent transferor and Neely as the fraudulent transferee. *Id.* at 27–30. Neely disagrees, raising the following counter arguments. *See* (D.E. 31).

**\*3** First, Neely contends that Plaintiff's allegations are "conclusory." (D.E. 31, p. 2). Second, Neely argues that Plaintiff does not identify a fraudulent transfer and does not and cannot allege that the unidentified transfer was initiated in Texas, occurred in Texas, or involved a Texas bank. *Id.* at 3. Neely relies on his own declaration to controvert Plaintiff's allegations, in which he avers that:

> Since at least January 1, 2021, Noil has not had a bank account with a bank that is based in Texas or has a branch in Texas. Since at least January 1, 2021, I have

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 38 of 336

Maxim Crude Oil, LLC v. Noil Corp., Inc., Not Reported in Fed. Supp. (2021)

not had a bank account with a bank that is based in Texas or has a branch in Texas. I do not reside in Texas and have never lived in Texas.... Noil is not insolvent and has not been insolvent at any time in **2021**.

(D.E. 31-1, p. 1).

Intentional conduct designed to cause harm in the forum state is a basis for finding minimum contacts. *Sourcing Mgmt., Inc. v. Simclair, Inc.*, 118 F. Supp. 3d 899, 911 (N.D. Tex. 2015) (citing *Calder v. Jones*, 465 U.S. 783, 787–90 (1984) (explaining that defendants "reasonably anticipate[d] being haled into court [in the forum state]" because "their intentional, and allegedly tortious actions were expressly aimed at" the forum state and "they knew the brunt of th[e] injury would be felt" in the forum state). Under this standard, the Fifth Circuit has upheld a district court's finding of personal jurisdiction over a party that had "no contacts with the forum state, Texas, other than its involvement in a fraudulent scheme that affected 'a known, major creditor in Texas whose right to payment arises out of contacts that share a strong connection with Texas.' " *Id.* (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009)); *see, e.g., Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 345–48 (5th Cir. 2014) (holding that personal jurisdiction existed where plaintiff alleged that out-of-state defendants fraudulently transferred assets to prevent a Texas creditor/plaintiff from collecting a pre-existing Texas judgment).

Taking all Plaintiff's uncontroverted allegations as true, the Court determines that Plaintiff has made a prima facie showing that Noil fraudulently transferred Plaintiff's assets to Neely to prevent Plaintiff from recovering those assets should Plaintiff prevail in this case. *See* (D.E. 15; D.E. 29). Specifically, Plaintiff alleges that "Noil is insolvent" and that the transfers were made "for less than reasonably equivalent value" in exchange for the transfer. (D.E. 15, p. 28; D.E. 29, p. 29). In support, Plaintiff makes several specific factual allegations, including that:

- Another corporation that Neely owned and operated was sued in Texas, the plaintiff in that case was awarded a judgment, and that judgment was never collected.

- Neely created Noil to perpetuate similar fraudulent conduct.

- The address Noil uses as its office space is vacant and has been for over a year.

- Noil only retains possession of $160,000 out of $600,000 of Plaintiff's funds.

- Noil's fraudulent transfers include the transfer of at least $440,000 of Plaintiff's funds that Noil converted from Plaintiff.

- Noil did not receive reasonably equivalent value for the funds because only $160,000 remains in Noil's account.

(D.E. 29, p. 8, 18, 27–29). Through these specific factual allegations, Plaintiff carries its burden of making a prima facie showing of personal jurisdiction.

**\*4** Respecting Neely's declaration, the Court finds that it does not controvert Plaintiff's specific factual allegations. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."). Importantly, Neely does not dispute that the $440,000 in transfers were made, that he was the transferee of any of the $440,000, nor that the transfers were made for less than reasonably equivalent value. On each of these points, Plaintiff makes specific factual allegations that support a fraudulent transfer claim on the pleadings and is enough, using a prima facie standard, to establish personal jurisdiction over Neely via the TUFTA. *See, e.g., Mullins*, 564 F.3d at 402; *Sourcing Mgmt., Inc.*, 118 F. Supp. 3d at 911. Neely's conclusory allegation that Noil is not insolvent does not controvert Plaintiff's allegations.

For these reasons, the Court may exercise personal jurisdiction over Neely and, accordingly, the Court **DENIES** Neely's motion to dismiss for lack of personal jurisdiction.

### III. Motion to Dismiss for Failure to State a Claim

#### A. Legal Standard – **Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The facial plausibility standard is not a probability standard, but it requires the plaintiff's factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While a court must take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Here, Neely argues that the Court should dismiss all claims against him because Plaintiff fails to plead specific factual allegations as to Neely, individually. (D.E. 8, p. 7). In response, Plaintiff states that he has pled sufficient facts to recover on all claims against Neely through Plaintiff's alter ego claim, which alleges that Neely was the control person of Noil and created Noil to defraud Plaintiff, and, as such, is jointly liable for Noil's misconduct. *See* (D.E. 18, p. 2–4, 16). The Court first addresses Plaintiff's alter ego theory and then each of Plaintiff's remaining claims.

#### B. Piercing the Corporate Veil – Noil as the Alter Ego of Neely

Neely argues that Plaintiff's piercing the corporate veil claim does not state a claim for relief against Neely. (D.E. 24, p. 10). Neely states that the claim is merely a recitation of the

elements and lacks specific factual allegations. *Id.*

### i. Choice of Law

Where federal court jurisdiction is based on diversity, courts apply the conflict of laws rule of the state in which it sits to determine which state's substantive law should be applied. *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995). Under Texas law, "[o]nly the laws of the jurisdiction of incorporation of a foreign corporation shall govern ... the liability, if any, of shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement." *Id.*

Here, Plaintiff seeks to pierce the corporate veil of Noil, an Illinois corporation, to hold Neely, an officer of Noil, personally liable for debts that Noil allegedly owes Plaintiff. *See* (D.E. 29, p. 26). Applying Texas choice of law rules, Neely's liability is governed by the laws of the jurisdiction of Noil's incorporation, which is Illinois. *See Alberto*, 55 F.3d at 203–04; (D.E. 1, p. 4) (stating that Noil is incorporated and has its principal place of business in Illinois).

### ii. Piercing the Corporate Veil

**\*5**  To pierce the corporate veil under Illinois law, a plaintiff must satisfy a two-pronged test. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (applying Illinois state law). First, a plaintiff must prove that there is a unity of interest and ownership such "that

the separate personalities of the corporation and the individual or other corporation no longer exist." *Id.* at 569–70. Second, a plaintiff must show that circumstances exist "such that adherence to the fiction of [a] separate corporate existence would sanction a fraud or promote injustice." *Id.*

Here, Plaintiff states a plausible claim upon which relief could be granted. Plaintiff alleges that Noil is sham corporation that Neely formed only after dissolving his last corporation because it had judgments against it from another fraud lawsuit. (D.E. 15, p. 2). Plaintiff then alleges that Neely, through Noil and Noil's agents, illegally converted Plaintiff's money, which Defendants had represented was held in an escrow account and which Plaintiff was owed because Plaintiff canceled the contract per the Agreement's terms. *Id.* at 3. After accepting all the factual allegations as true, construing the complaint in the light most favorable to Plaintiff, and drawing reasonable inferences in Plaintiff's favor, Plaintiff's theory is that: (1) Neely used Noil as his alter ego; (2) to protect him from personal liability beyond the corporate veil; (3) and directed his agents to misrepresent the nature of the escrow account; (4) to induce Plaintiff into wiring money; (5) which he illegally converted by refusing to refund $600,000 to which Plaintiff was entitled. Plaintiff does more than restate the claim's elements and sufficiently supports the complaint with enough factual allegations to narrate a plausible theory. Accordingly, Neely's Rule 12(b)(6) motion is denied with respect to Plaintiff's alter ego theory.

### C. Breach of Contract

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 41 of 336

Maxim Crude Oil, LLC v. Noil Corp., Inc.; Not Reported in Fed. Supp. (2021)

Neely argues that Plaintiff cannot state a breach of contract claim against Neely because Neely is not a party to the contract. (D.E. 8, p. 2). However, as explained above, Plaintiff has sufficiently alleged that Noil was Neely's alter ego. Accordingly, the only remaining allegation Plaintiff must state is that Noil breached its contract with Plaintiff. [2] Under Texas law, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern, Inc. v. Egle Grp., LLC*, 490 F.3d 380 (5th Cir. 2007) (citing *Valero Mktg. &Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

Here, Plaintiff alleges a breach of contract claim against Noil because Plaintiff alleges that there is a valid and enforceable contract, the contract required an escrow structure, and that Noil breached the agreement by converting the funds for its own use and dispersing the funds from the account prior to Plaintiff receiving any product from Noil. (D.E. 29, p. 23). Noil's failure to deliver Plaintiff the product and to put the funds in an escrow account caused Plaintiff's injury, the $600,000 that Plaintiff wired Noil. *Id.* As such, Plaintiff has stated a breach of contract claim and Neely's Rule 12(b)(6) motion is denied on this claim.

### D. Unjust Enrichment

**\*6** Neely argues that Plaintiff cannot plead an unjust enrichment claim against Neely because Noil, not Neely, received the money from Plaintiff. (D.E. 24, p. 9). Under Texas law,

unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Perales v. Bank of America, N.A.*, 2014 WL 3907793, \*3 (S.D. Tex. Aug. 11, 2014) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Unjust enrichment includes a plaintiff's transfer to a defendant, resulting in the defendant's material gain and the plaintiff's material loss. *Id.*

Here, accepting all factual allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff sufficiently alleges an unjust enrichment claim against Neely. As explained above, Plaintiff articulates a theory in which Neely directed his alter ego, Noil, to fraudulently convert $600,000 belonging to Plaintiff. (D.E. 29, p. 16–17). As such, Neely's Rule 12(b)(6) motion is denied regarding Plaintiff's unjust enrichment claim.

### E. Money Had & Received

Neely's argument to dismiss this claim fails for the same reason explained for Plaintiff's unjust enrichment claim. The elements of a claim for money had and received are that (1) the defendant holds money and (2) the money in equity and good conscience belongs to plaintiff. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (citing *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951)). Accepting all factual allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff plausibly alleges that Plaintiff owned the $600,000 wired to Noil, which Neely converted for his own direct benefit and to perpetuate fraud. (D.E. 29, p. 24).

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 42 of 336

Maxim Crude Oil, LLC v. Noil Corp., Inc., Not Reported in Fed. Supp. (2021)

Neely's Rule 12(b)(6) motion is denied on this claim.

### F. Breach of Fiduciary Duty & Conversion

Neely argues that Plaintiff fails to plead any facts that would establish a fiduciary relationship between Plaintiff and Neely. (D.E. 24, p. 9). However, an escrow agent owes a fiduciary duty to escrow contract parties. *Alexander O & G, LLC v. Nomad Land & Energy Resources, LLC*, 313 F. Supp. 794, 801 (S.D. Tex. 2018) (quoting *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex. App.—Dallas 1992, writ denied)). Here, taking all Plaintiff's factual allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff plausibly alleges a fiduciary relationship between Neely and Plaintiff, asserting that Noil represented that funds would be placed into an escrow account while Noil secured the product. (D.E. 29, p. 12–18). Neely, as Noil's control person, breached his fiduciary duty when he withdrew funds from the account and converted them for his own use. *Id.* at 19. Neely's Rule 12(b)(6) motion is denied on this claim

### G. Fraudulent Transfer under Texas Uniform Fraudulent Transfer Act §§ 24.005 & 24.006(a)

Neely argues that Plaintiff fails to state a claim for fraudulent transfer because Plaintiff fails to allege specific factual allegations against Neely. (D.E. 31, p. 5). Under the TUFTA, a fraudulent transfer may be actual or constructive. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117, 119 (5th Cir. 2019). The elements of an actual fraudulent transfer

claim are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors. *Id.* at 117 (citing *Nwekedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)). Constructive fraudulent transfer has the same elements, except that instead of actual intent, a plaintiff can show that (1) the debtor did not receive reasonably equivalent value for the transfer and (2) the transferor was financially vulnerable or insolvent at the time of the transaction. *Id.* at 119–120 (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 & n.21 (Tex. 2016); TEX. BUS. & COMM. CODE § 24.006(a)).

**\*7** Here, Plaintiff has sufficiently alleged both actual and constructive fraudulent transfer claims. First, Plaintiff alleges that he is a creditor owed money that Noil converted from Plaintiff at Neely's direction and for Neely's benefit. (D.E. 29, p. 27). This is supported by Plaintiff's allegation that Plaintiff wired $600,000 to Noil, $440,000 of which Noil no longer possesses. *Id.* Second, Neely directed Noil to transfer the funds between March 2021 and May 20, 2021, shortly after Plaintiff's claims arose so that Noil would have no cash or assets from which Plaintiff could recover. (D.E. 34, p. 6; D.E. 29, p. 18). Plaintiff alleges that Noil was insolvent during the transfer, and received less than fair value for the transfer, since Noil only has $160,000 left of the funds. (D.E. 29, p. 27–28). Neely's Rule 12(b)(6) motion is denied on this claim.

Overall, taking all factual allegations in the complaint as true and drawing all reasonable

inferences in Plaintiff's favor, the Court determines that Plaintiff has plausibly stated claims for relief against Neely. Neely's Rule 12(b)(6) motion is therefore **DENIED.**

### IV. Motion to Dismiss for Failure to Plead Fraud with Particularity

#### A. Legal Standard – Rule 9(b)

To satisfy Rule 9(b)'s heightened pleading standards, a plaintiff must specifically plead the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and articulate a theory that would render the statement fraudulent. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk, 291 F.3d 336 (5th Cir. 2002); Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 453 (5th Cir. 2005).* Additionally, "[i]n cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006)* (citations omitted).

#### B. Fraudulent Misrepresentations by Neely

Neely argues that Plaintiff fails to allege fraud with particularity because Plaintiff does not plead that Neely made the statement, when he made the statement, where he made the statement, what Neely obtained from the statement, and why the statement was fraudulent. (D.E. 8, p. 8). A plaintiff asserting a fraudulent misrepresentation claim must allege that (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the plaintiff act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *SGK Properties, LLC v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3, 881 F.3d 933, 943 (5th Cir. 2018)* (citing Texas law)).

Here, Plaintiff's second amended complaint specifically includes the requisite allegations, including the "who, what, when, and how" of the alleged misrepresentations. *See* (D.E. 15); *see also Tchuruk, 291 F.3d 336.* First, Plaintiff alleges that Defendants made fraudulent statements misrepresenting Noil's ability to secure Naptha and that the prepaid funds would be held in an escrow account. (D.E. 15, p. 9–10). Second, Plaintiff specifically identifies Neely and his agents as speakers of the fraudulent statements. *Id.* at 9–12. Plaintiff's complaint includes emails and text messages, indicating where the statements were made. *Id.* While Jennifer Watson, not Neely, made these communications, Plaintiff articulates a theory that would render the statement fraudulent by alleging that Neely directed the sham organization as a scheme to perpetuate fraud. *See id.* at 27. As such, the Court finds that Plaintiff has sufficiently stated a fraudulent misrepresentation claim under Rule 9's heightened pleading standards.

## C. Fraud by Non-Disclosure and Omission by Neely

**\*8**  Neely argues that Plaintiff fails to identify the omission, that Neely was the speaker, what Neely obtained from the omission, and why the omission was fraudulent. (D.E. 8, p. 8). "Under Texas law, fraud by non-disclosure requires: (1) a deliberate failure to disclose material facts; (2) a duty to disclose; (3) that the plaintiff was ignorant and did not have an equal opportunity to discover; (4) that the defendant intended the plaintiff to act or refrain from acting; and (5) injury." *Savoia-McHugh v. McCrary*, **2021 WL 4066992, \*4 (S.D. Tex. Sept. 7, 2021**) (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019)).

Here, Plaintiff's second amended complaint sufficiently demonstrates the elements of fraud by non-disclosure and omission. Plaintiff alleges that Neely, in directing Noil, intentionally failed to disclose that the funds Plaintiff wired Noil would not be kept in an escrow account nor be treated as escrow funds. (D.E. 29, p. 13). Plaintiff alleges this failure was material because Plaintiff transferred Noil the funds while relying on the promise that they would be put in an escrow account. *Id.* at 14. But-for Neely's omissions and failure to correct Plaintiff's understanding that the funds would be in an escrow account, Plaintiff would not have transferred Noil the money. *Id.* As a result, Plaintiff was injured in the amount of $600,000. *Id.* at 16. Thus, the Court finds that Plaintiff has sufficiently stated a fraud by omission claim.

For these reasons, the Court determines that Plaintiff has satisfied the heightened pleading standard on its fraudulent misrepresentation and fraudulent omission claims. Accordingly, Neely's Rule 9(b) motion is **DENIED.**

### V. Conclusion

For the reasons stated herein, the Court **DENIES** Defendant Neely's motion to dismiss in its entirety. (D.E. 8).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2021 WL 12320541

---

## Footnotes

1   Neely also moves to dismiss himself under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, *see* (D.E. 18, p. 13), which holds a different standard of review than Rule 12(b)(6). *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (providing that when a district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, it is the plaintiff's burden to make a prima facie showing of jurisdiction over a non-resident). Proof by a preponderance of the evidence is not required. *Id.* "Moreover, on a motion to dismiss for lack of jurisdiction,

uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

2   Illinois law, which would be the choice of law in determining whether Noil is the alter ego of Neely, permits courts to apply alter ego liability to contractual claims. *See UIRC-GSA Holdings Inc. v. William Blair & Co.*, 289 F. Supp. 3d 852 (N.D. Ill. 2018) (citing Illinois law).

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

# CASE NO. 5

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 47 of 336
Crotts v. Healey, Not Reported in S.W. Rptr. (2015)
2015 WL 5890103

2015 WL 5890103
Only the Westlaw citation
is currently available.

SEE TX R RAP RULE 47.2
FOR DESIGNATION AND
SIGNING OF OPINIONS.

Court of Appeals of
Texas, Houston (1st Dist.).

Alan Nelson CROTTS, Appellant
v.
John F. HEALEY, Jr. and
Jeff Strange, Appellees

NO. 01–15–00076–CV
|
Opinion issued October 8, 2015

On Appeal from the 268th District Court, Fort
Bend County, Texas, Trial Court Case No. 14–
DCV–217232

**Attorneys and Law Firms**

Crotts, Alan Nelson, for Appellant.

Randall W. Morse, for Appellees.

Panel consists of Justices Jennings, Higley, and
Brown.

## MEMORANDUM OPINION

Harvey Brown, Justice

**\*1** Alan Nelson Crotts sued his local
district attorney and assistant district attorney
for refusing to prosecute a theft allegedly
committed against him by Jessalyn Cole, the
mother of his children, in a dispute over child
support payments. The defendants filed a plea
to the jurisdiction, which the trial court granted.
Crott's case was dismissed. In three issues,
Crotts contends that (1) the trial court erred in
granting the plea because the district attorney
and assistant district attorney are not entitled
to prosecutorial immunity, (2) this lawsuit is
not an impermissible collateral attack on his
child support proceeding, and (3) the trial court
should not have dismissed the lawsuit "with
prejudice." Because the defendants are entitled
to absolute prosecutorial immunity, we affirm.

## Background

Jessalyn Cole, the mother of Alan Nelson
Crotts's children, claimed Crotts owed child
support. The Child Support Division of the
Office of the Attorney General garnished nearly
$7,000 from Crotts's income tax return for child
support payments. Crotts argued that Cole was
not entitled to the $7,000.

In a lawsuit for modification of the child
support order, the trial court denied Crotts's
request for a $7,000 credit for the alleged
overpayment resulting from the garnishment.
About a year after that order, Crotts reported
Cole to the Sugar Land Police for theft of the
$7,000 in child support Crotts claimed he did
not owe. Jeff Strange, the Assistant District
Attorney for Fort Bend County, informed the
police he would not prosecute Cole for theft.

Crotts filed this lawsuit against John F. Healey,
Jr., the Fort Bend District Attorney, and Strange
for failure to prosecute Cole, alleging civil

2015 WL 5890103

rights violations, breach of contract, and abuse of process. Healey and Strange filed a plea to the jurisdiction, which the trial court granted. Crotts appeals.

## Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Pineda v. City of Houston,* 175 S.W.3d 276, 279 (Tex.App.—Houston [1st Dist.] 2004, no pet.). Subject-matter jurisdiction is required for a court to have authority to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–45 (Tex.1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446; *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 839 (Tex.1967).

The existence of subject-matter jurisdiction is a question of law. *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Therefore, we review de novo the trial court's ruling on a plea to the jurisdiction. *Mayhew,* 964 S.W.2d at 928.

## Prosecutorial Immunity

Healey and Strange argue they are entitled to "the defense of absolute prosecutorial immunity from any suit for damages," for their conduct performing discretionary duties.

**\*2** Crotts disagrees, arguing that "prosecutors enjoy absolute immunity only when initiating a prosecution and in presenting the State's case." Crotts argues Healey and Strange never initiated a case, instead they "advised the Sugar Land Police Department that they would not prosecute a case.... In essence, [Healey and Strange] performed no duties related to their office."

## A. Healey and Strange are entitled to absolute prosecutorial immunity

A prosecutor, in certain circumstances, is entitled to absolute immunity from a lawsuit for damages. *Imbler v. Pachtman,* 424 U.S. 409, 411, 96 S.Ct. 984, 986 (1976); *Bradt v. West,* 892 S.W.2d 56, 71 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Absolute immunity extends to both a prosecutor and to the prosecutor's deputies. *See Imbler,* 424 U.S. at 411, 96 S.Ct. at 986 (applying absolute prosecutorial immunity to deputy district attorney). To determine when a prosecutor is entitled to immunity, Texas applies a "functional approach." *Bradt,* 892 S.W.2d at 69. This approach "focuses on the nature of the official acts of which the plaintiff complains" and shields a prosecutor for acts "intimately associated with the judicial phase of the criminal process." *Id.* at 69–70. In applying the functional approach, "Texas courts follow federal jurisprudence." *Clawson v. Wharton Cnty.,* 941 S.W.2d 267, 271 (Tex.App.—Corpus Christi 1996, writ denied); *see Bradt,* 892 S.W.2d at 69; *Brown v. Lubbock Cnty. Comm'rs Court,* 185 S.W.3d 499, 505 (Tex.App.—Amarillo 2005, no pet.); *Oden v. Reader,* 935 S.W.2d 470, 474 (Tex.App.—Tyler 1996, no writ).

The decision on whether to initiate a prosecution is a "quintessential function" of a prosecutor "intimately associated with the judicial phase of the criminal process." *Bradt, 892 S.W.2d at 70*. Thus, "in initiating a prosecution ... the prosecutor is immune from a civil suit for damages." *Imbler, 424 U.S. at 430, 96 S.Ct. at 995*. A prosecutor receives absolute immunity because civil liability "for his decision to initiate and pursue a prosecution could skew his decisionmaking, tempting him to consider the personal ramifications of his decision rather than rest that decision purely on appropriate concerns." *Bradt, 892 S.W.2d at 70* (quoting *Schloss v. Bouse, 876 F.2d 287, 289–90 (2d Cir.1989)*).

Texas law does not support Crotts's distinction between initiating and declining to initiate a prosecution. "[T]he decision not to prosecute ... is the quintessential function of a prosecutor." *Clawson, 941 S.W.2d at 272*; *see Font v. Carr, 867 S.W.2d 873, 876 (Tex.App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.)* (*citing Miller v. Curry, 625 S.W.2d 84, 87 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.)*) (recognizing "absolute prosecutorial immunity for decisions to prosecute or not prosecute criminal complaints"). Public policy supports applying prosecutorial immunity when a prosecutor chooses not to initiate a prosecution because, "if the prosecutor were not immune ... suits for civil damages could be expected with considerable frequency from disgruntled, frustrated citizens whose complaints and grievances the prosecutor, in exercising his best judgment, chose not to file and prosecute. His time, energies and resources would be seriously affected." *Miller, 625 S.W.2d at 87*. Eleven federal circuits have reached the same

conclusion. *Pugh v. Balish, 564 Fed.Appx. 1010, 1013 (11th Cir.2014)*; *Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir.2009)*; *Nedab v. Litten, 184 Fed.Appx. 261, 262 (3d Cir.2006)*; *Botello v. Gammick, 413 F.3d 971, 976 (9th Cir.2005)*; *Steele v. City of Bemidji, 257 F.3d 902, 906 (8th Cir.2001)*; *Ireland v. Tunis, 113 F.3d 1435, 1446 (6th Cir.1997)*; *Mendenhall v. Goldsmith, 59 F.3d 685, 691 n.10 (7th Cir.1995)*; *Guzman–Rivera v. Rivera– Cruz, 55 F.3d 26, 31 (1st Cir.1995)*; *Schloss, 876 F.2d at 290*; *Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir.1985)*; *Dohaish v. Tooley, 670 F.2d 934, 938 (10th Cir.1982)*.

**\*3** Under Texas law, Healey and Strange are entitled to absolute prosecutorial immunity for their decision not to prosecute Cole. Crotts attempts to circumvent prosecutorial immunity by alleging that he in only complaining of "legal advice" Strange gave the police to not file a police report. A prosecutor is not protected by absolute immunity when giving legal advice to law enforcement. *Burns v. Reed, 500 U.S. 478, 496, 111 S.Ct. 1934, 1944– 45 (1991)*; *Font, 867 S.W.2d at 875*. In *Font v. Carr,* a bondsman sued a prosecutor for advising the sheriff to require the bondsman to show additional proof of sufficiency of security for bonds he posted. *Font, 867 S.W.2d at 875*. This Court held that this advice was not "bound up with the judicial process" and, thus, the prosecutor was not entitled to absolute prosecutorial immunity. *Id. at 874, 876*. In contrast, the advice here was intertwined with the decision not to prosecute. Crotts's petition makes clear that Healey and Strange's decision not to prosecute Cole underlies all of his asserted causes of action.[1]

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 50 of 336
Crotts v. Healey, Not Reported in S.W. Rptr. (2015)
2015 WL 5890103

This "advice" Strange gave the police was connected with the district attorney's office's decision not to prosecute. *See Koubriti v. Convertino, 593 F.3d 459, 469–70 (6th Cir.2010)* (holding prosecutor's recommendation to police officer that he need not disclose certain evidence to defendant was not "legal advice" but rather part of decisions for which the prosecutor was entitled to prosecutorial immunity). Because Healey and Strange did not give the police any legal advice and Crotts only complains of their decision not to prosecute Cole, Healey and Strange are entitled to absolute prosecutorial immunity.

To the extent absolute prosecutorial immunity may not shield Healey and Strange from liability for breach of contract, Crotts cannot successfully assert a breach-of-contract claim against them. To successfully assert a claim for breach of contract, a contract must exist between the parties. *Graves v. Logan, 404 S.W.3d 582, 584 (Tex.App.—Houston [1st Dist.] 2010, no pet.).* Crotts claims that Healey and Strange's oaths of office constitute a contract between them and the public. No contract, however, has been entered into between Crotts and Healey and Strange; thus, Crotts cannot sue them for breach of contract. *See Price v. Schnaufer, 81 S.W.2d 160, 160–61 (Tex.Civ.App.—Fort Worth 1935, no writ)* (holding that member of public cannot assert breach-of-contract claim against police officer based on contract formed by police officer's oath of office).

Because Healey and Strange are entitled to absolute immunity, we overrule his first issue. We do not reach the issues of qualified immunity, state sovereign immunity, or Eleventh amendment immunity. Nor do we reach Crotts's second issue of whether this lawsuit constituted an improper collateral attack on the child support proceedings.

**B. Dismissal with prejudice**

In his third issue, Crotts argues that the trial court should have dismissed his lawsuit without prejudice. Ordinarily, if the trial court grants a plea to the jurisdiction, it should not dismiss the lawsuit with prejudice until it first affords the plaintiff a reasonable opportunity to amend the jurisdictionally defective pleading. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Eltonsy, 451 S.W.3d 478, 481 (Tex.App.—Houston [14th Dist.] 2014, no pet.).* "Incurably defective claims, however, must be dismissed with prejudice." *Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 846 (Tex.2007).* A dismissal of a lawsuit by granting a plea to the jurisdiction on the grounds of immunity "is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Harris Cnty. v. Sykes, 136 S.W.3d 635, 639 (Tex.2004).* Here, the jurisdictional defects are incurable: no amount of repleading will overcome absolute immunity. Accordingly, we conclude that the trial court did not err in dismissing Crotts's lawsuit with prejudice. We overrule his third and final issue.

**Conclusion**

**\*4** We affirm the judgment of the trial court.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 51 of 336

Crotts v. Healey, Not Reported in S.W. Rptr. (2015)
2015 WL 5890103

**All Citations**

Not Reported in S.W. Rptr., 2015 WL 5890103

---

## Footnotes

1    In his cause of action for violation of his civil rights, Crotts complains that Healey and Strange "have refused to prosecute crimes committed against the Plaintiff in the same manner as crimes committed against others." In his cause of action for breach of contract, Crotts complains that "the Defendants substantially breached [their employment] contract, failing in whole or in part, to faithfully perform their duties, which include, but are not limited to, the diligent prosecution of crimes committed within their jurisdiction, refusing to prosecute crimes not supported by probable cause, and to see that justice is done, not merely seek convictions." In his cause of action for abuse of process, Crotts complains that "[t]he Defendant's perverted the proper use of legal process by refusing to prosecute crimes committed against the Plaintiff, thereby violating the Plaintiff's civil rights."

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 6

2019 WL 13221680
Only the Westlaw citation
is currently available.
United States District Court, S.D.
Texas, Corpus Christi Division.

Diana BOND, Plaintiff,
v.
NUECES COUNTY,
TEXAS, et al., Defendants.

| Civil Action No. 2:19-CV-43 |
|---|

|
Signed September 5, **2019**

## Attorneys and Law Firms

Christopher J. Gale, Amie Augenstein, Gale Law Group PLLC, Corpus Christi, TX, for Plaintiff.

Calvin Trey Scott, Kennedy Attorneys and Counselors at Law, Dallas, TX, for Defendant Jackie Blevins.

Nichol L. Bunn, Lewis Brisbois Bisgaard & Smith, Calvin Trey Scott, Kennedy Attorneys and Counselors at Law, Dallas, TX, for Defendant Wellpath LLC.

## ORDER GRANTING MOTION TO DISMISS

DAVID S. MORALES, UNITED STATES DISTRICT JUDGE

**\*1** In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Diana Bond claims that Nueces County employees denied adequate medical attention to Plaintiffs daughter, Tami Bond ("Bond"), who died while detained at the Nueces County Jail. (D.E. 29). Before the Court is Defendants' Supplemental Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 33). The Motion to Dismiss was filed by Nueces County, Texas ("Nueces County"), Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez (together "Individual County Defendants"). For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED.** Plaintiff may file for leave to amend **on or before September 19, 2019.**

## I. Procedural Background

On February 5, **2019**, Plaintiff filed her Original Complaint alleging that Defendants did not provide adequate medical care to treat Plaintiff's serious medical needs in violation of her constitutional rights. [1] (D.E. 1). She named as Defendants: (1) Nueces County, Texas; (2) two John Doe defendants; and (3) two Jane Doe defendants. (D.E. 1). On February 11, **2019**,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 54 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

Plaintiff filed her First Amended Complaint naming the same defendants. (D.E. 3).

On April 22, **2019**, Nueces County filed a 12(b)(6) Motion to Dismiss. (D.E. 10). The Plaintiff responded on May 28, **2019**, (D.E. 17), and Nueces County replied on June 4, **2019**. (D.E. 21). In Plaintiff's response, she requested leave to amend, which the Court granted on June 12, **2019**. (D.E. 22).

On July 1, **2019**, Plaintiff filed her Second Amended Complaint ("the Complaint"), naming as defendants: (1) Nueces County, Texas; (2) Elizabeth Alvarado; (3) Jasmine Drake; (4) Michael Alvarez; (5) Anthony Munoz; (6) Jose Rodriguez; (7) Luis Rivera; (8) Jose Aguayo; (9) Chris Gomez; (10) Wellpath, LLC; and (11) Jackie Blevins. (D.E. 29). On July 12, **2019**, Defendants filed a Supplemental 12(b)(6) Motion to Dismiss. (D.E. 33). Plaintiff filed her Response to the Supplemental Motion to Dismiss on August 7, **2019**. (D.E. 39).

## II. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. The district court, however, must construe the complaint in a light most favorable to the plaintiff, and the allegations contained therein must be taken as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face" and must plead those facts with enough specificity

"to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a complaint will not be dismissed merely because it contains an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam) (citations omitted).

## III. Plaintiff's Allegations

**\*2** The following allegations were made in Plaintiffs Second Amended Complaint and are taken as true for the purposes of a 12(b)(6) motion to dismiss. *Katrina Canal Breaches*, 495 F.3d at 205.

On February 6, 2017, Tami Bond was arrested, charged with possession of a controlled substance and tampering with evidence, and placed in the Nueces County Jail. (D.E. 29, ¶ 15). During intake, Bond was calm, focused, and oriented. (D.E. 29, ¶ 15). Soon thereafter, however, Bond became uncooperative because she had swallowed two lethal-sized baggies of methamphetamine or amphetamines. (D.E. 29, ¶ 15). When the medical personnel provided by Nueces County Sheriff's Department asked about any medical concerns, Bond answered "no" to all questions. (D.E. 29, ¶ 16). However, Bond was unable to follow verbal commands, and she was placed in a holding cell until

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 55 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

she could sufficiently cooperate and finish the booking process. (D.E. 29, ¶ 16).

During Bond's time in holding, she required help from other inmates to use the bathroom and get up from the floor, and she was seen grabbing unseen objects from the air. (D.E. 29, ¶ 17). Because of Bond's behavior, guards were sent into the cell to search for narcotics. (D.E. 29, ¶ 17). After the search, Bond was seen acting as if she was in pain and continued to require assistance from other inmates. (D.E. 29, ¶ 18). Defendants saw she was stumbling, had slurred speech, and needed assistance, and when Defendants again tried to complete Bond's booking, they were unable to because of her behavior. (D.E. 29, ¶ 18). Both Bond and other inmates sought further medical attention for her. (D.E. 29,¶ 20). Despite Bond's behavior and requests for help, Defendants took no action to have Bond medically reassessed. (D.E. 29, ¶ 18).

Defendants eventually moved Bond to another cell—and then to an isolation cell—because of erratic behavior, such as sitting on a pregnant woman and hallucinating. (D.E. 29, ¶ 19). Though she was placed in isolation and was supposed to be checked on every fifteen minutes, jail personnel neither monitored Bond nor provided medical treatment. (D.E. 29, ¶ 19). Bond died from an overdose the following morning. (D.E. 29, ¶ 20). Plaintiff alleges that Defendants' failure to provide adequate medical attention to Bond's serious medical condition resulted in Bond's death. (D.E. 29, ¶ 20).

Based on these factual allegations, Plaintiff brings suit under 42 U.S.C. § 1983 against Nueces County, eight individual county employees, Wellpath, LLC (the jail medical provider), and Wellpath's employee, Blevins. (D.E. 29). Plaintiff alleges that Defendants violated Bond's Fourth Amendment rights "by acting with deliberate indifference to a substantial and known risk of harm" to Bond, "failing to intervene, where such intervention would have prevented further injury, including [Bond]'s death," ignoring Bond's "serious medical needs," and "failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs and/or training concerning same." (D.E. 29, ¶ 25). Plaintiff advances her theory of municipal liability by asserting ten customs or persistent practices that Plaintiff alleges have become Nueces County policy. (D.E. 29, ¶ 27). The allegations include that Nueces County does not properly supervise detainees and ignores their serious medical needs, does not provide adequate staff or discipline employees who violate procedures, does not comply with standards concerning proper cell checks, and does not have proper policies and procedures for screening or reassessing the medical needs of detainees. (D.E. 29, ¶ 27).

**\*3** Nueces County moves to dismiss Plaintiff's claims asserting Plaintiff has failed to state any plausible claim for governmental liability. (D.E. 33). The Individual County Defendants move to dismiss claiming the suit against them is barred by the statute of limitations. (D.E. 33).

### IV. Section 1983 & Municipal Liability

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 56 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A municipality will be liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff must identify three elements: (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). Together, these three elements "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). A "facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* at 579 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiff does not allege that Nueces County is liable because of an official policy but alleges ten customary practices that Plaintiff claims have become policy. Defendants argue that Plaintiff did not plead sufficient factual content to show a custom or practice of failing to protect or provide adequate medical care. In response, Plaintiff challenges the pleading standard, stating that the Fifth Circuit "blatantly ignore[s]" the proper pleading standard for a section 1983 municipal claim. (D.E. 39, p. 7). Specifically, Plaintiff pleads that "generic and boilerplate" assertions are sufficient at this stage.[2] (D.E. 39, p. 11).

### A. *Leatherman* Does Not Eliminate *Twombly* & *Iqbal* in Section 1983 Cases

The Supreme Court in *Leatherman* made it clear that the pleading of a section 1983 claim is not governed by Rule 9 the Federal Rules of Civil Procedure, but by Rule 8, which at the time was treated as a notice pleading standard. *Leatherman v. Tarrant Cty. Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 164, 168 (1993). The Court agrees with Plaintiff that the main point of *Leatherman* survived *Twombly* in that section 1983 pleadings are evaluated under Rule 8(a). But *Twombly* announced new law that altered the interpretation of Rule 8(a), and that new interpretation applies to every case going forward that would have previously permitted formulaic pleadings. *Twombly*, 550 U.S. 544; *see, e.g.*, *Evans v. City of Meridian*, 630 F. App'x 312, 315 (5th Cir. 2015) (per curiam) (applying *Twombly* & *Iqbal* to a municipal section 1983 claim without mentioning *Leatherman*); *Hatcher ex rel. T.H. v. Nueces Cty.*, No. 2:17-CV-155, 2017 **WL** 2985639, at *2 (S.D. Tex. July 13, 2017) (applying *Twombly* & *Iqbal* to municipal section 1983 claims); *Gonzales v. Nueces Cty.*, 227 F. Supp. 3d 698, 701 (S.D. Tex. 2017) (same); *Flanagan v. City of Dall*, 48 F. Supp. 3d 941, 950-51 (N.D. Tex. 2014) (same); *White v. City of Dall*, No. 3:12-cv-2145-0(BH), 2013 **WL** 821992, at *4 (N.D. Tex. Feb. 8, 2013)

(same); *Wright v. City of Dall*, No. 3:09-cv-1923-B, 2010 **WL** 3290995, at *2–4 (N.D. Tex. July 19, 2010) (same). This Court does not hold Plaintiff to a Rule 9(b) or a summary judgment standard. Rather, this Court holds Plaintiff to the pleading standards set forth under Rule 8, *Twombly, Iqbal*, and *Leatherman*.

### B. Official Policy or Custom

**\*4** The first element of a municipal liability claim under section 1983 requires Plaintiff to adequately plead an official policy or custom. *Peterson*, 588 F.3d at 847. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). A custom is "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). To establish a custom, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Id.* at 582 (citing *Brown*, 520 U.S. at 410–11). Prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *McCully v. City of N. Richland Hills (In re Estate of Davis)*, 406 F.3d 375, 383 (5th Cir. 2005) (footnote omitted); *see also Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 **WL** 3503457, at *6 (W.D. Tex. Sept.

2, 2010) (holding that to survive a motion to dismiss on an unconstitutional unwritten policy or customary-practice claim, a plaintiff must plead sufficient facts to "allow the court to draw the reasonable inference that [the municipality has] engaged in a pattern of misconduct").

Plaintiff alleges that the following customary policies caused the violations of constitutional rights and form the basis of the Defendants' liability under section 1983:

> (1) ignoring the serious medical needs of those entrusted to its care based either on expedience or ignorance to the consequences, (2) failing to discipline those persons [who] are found to have ignored the medical needs of such individuals, (3) failing to adequately supervise and/or observe its inmates/detainees/arrestees, (4) failing to provide adequate manpower to supervise and/or observe inmates/detainees/arrestees, (5) failing to provide adequate staff to handle situations stemming from the medical needs of inmates/detainees/arrestees, (6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs,

(7) failing to act in compliance with and failing to enforce the policy (of Texas Jail Standards or otherwise) concerning proper cell checks and/or the importance of same, and (8) failing to act in compliance with and failing to enforce the policy (of Texas Jail Standards or otherwise) requiring visual "checks" every 15 minutes for persons in isolation and/or under medical review, (9) failing to train and/or discipline those employees whom are found to have violated any of the above-noted policies, and (10) failing to train and/or supervise concerning medical reassessments for inmates/detainees/arrestees who – even while initially may not have signs of obvious medical problems – begin to exhibit obvious signs of medical problems, including but not limited to, those stemming from the use of illicit drugs.

(D.E. 29, ¶ 27).

Plaintiffs allegations one through five, seven, and eight are those of customary policies, while allegations six, nine, and ten pertain to failure to train and are addressed separately.[3] Defendants move to dismiss asserting that

Plaintiff did not establish the existence of an unconstitutional policy or custom by Nueces County. The Court addresses each customary policy allegation below, focusing solely on the issue of governmental liability.

### i. *Alleged Customs One, Three, Seven and Eight*

**\*5** Plaintiff alleges that Nueces County ignores the serious medical needs of those entrusted to its care based either on expedience or ignorance of the consequences and that the County does not adequately supervise and observe its inmates, detainees, or arrestees. (D.E. 29, ¶ 27). Plaintiff also alleges that Defendants do not comply with or enforce policies (of the Texas Jail Standards,[4] or otherwise) concerning proper cell checks, specifically for persons in isolation or under medical review. (D.E. 29, ¶ 27).

All of Plaintiff's alleged facts on these allegations deal exclusively with Bond. No other instances involving other inmates, detainees, or arrestees are alleged. But a pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson*, 588 F.3d at 850.

> If actions of [municipal] employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing

body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees.

*Webster*, 735 F.2d at 842; *see Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability" (citing *Piotrowski*, 237 F.3d at 578)). [5]

Persuasive here are rulings from other federal district courts where claims of an unconstitutional policy or custom against a municipality were dismissed. *See Hatcher*, 2017 **WL** 2985639, at *3–4 (finding insufficient facts to infer a policy or custom for failure to plead adequate medical treatment in part because plaintiff did not plead a pattern of denial of medical care); *Gonzales*, 227 F. Supp. 3d at 705 (dismissing claims against a county because lists of internal investigations were devoid of facts showing any similarity); *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 753 (S.D. Tex. 2016) (dismissing claims against a city because alleging only three isolated incidents was insufficient to plead a custom or practice); *Moreno v. City of Dall*, No. 3:13-cv-4106-B, 2015 **WL** 3890467, at *9 (N.D. Tex. June 18, 2015) (dismissing claims against a city because eight prior incidents over five years did not establish a pattern).

Holdings where the plaintiff was found to have met the pleading standard are also instructive. *See, e.g., Sanchez v. Gomez*, 283 F. Supp. 3d 524, 536-37 (W.D. Tex. 2017) (finding a

sufficient pattern of excessive force against persons with mental illness when nine similar incidents were alleged and statistics suggested that the city's proportion of individuals killed by police who had visible mental health issues were double and quadruple the national average); *Flanagan*, 48 F. Supp. 3d at 952-54 (finding a "close call" that plaintiffs had pled sufficient facts in alleging that a police department had a policy to shoot first and ask questions later after the city acknowledged training issues existed and numerous statistics showed high levels of a variety of misconduct compared to the national averages); *Oporto*, 2010 **WL** 3503457, at *6 (finding allegations of thirty-two prior incidents of deadly force spanning fifteen years sufficient to infer a custom or practice).

**\*6** In the case at hand, Plaintiff does not even allege a bare list of prior incidents. Though she must allege a pattern with "similarity and specificity," *Peterson*, 588 F.3d at 851, Plaintiff fails to allege any other instances where Nueces County allegedly ignored the serious medical needs of someone entrusted to its care, let alone similar or specific instances. The Complaint is devoid of any facts suggesting a persistent practice existed as to these four alleged policies.

Plaintiff alleges:

> The actions and/or inactions taken in this case were taken pursuant to the customary practices and/ or policies or procedures that were sanctioned by

Defendants. Liability for Defendants is established under § 1983 because its "ignore all policies" attitude is a persistent, widespread practice of the county employees —namely deputies/officers/ agents—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. Defendants had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendants' unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.

(D.E. 29, ¶ 28).

These allegations are almost verbatim quotes from the elements of municipal liability and are too conclusory and general to assert an actionable claim. *See Spiller v. City of Tex. City, Police Dept.*, 130 F.3d 162, 167 (5th Cir.

1997) ("[The] assertion that [the municipality] is liable because '[defendant] was acting in compliance with the municipality's customs, practices or procedures' is insufficient because it is conclusory."). "It is the conclusory nature of respondent's allegations ... that disentitles them to the presumption of truth." *Iqbal, 556 U.S. at 681*.

Plaintiff points to *Balle v. Nueces County*, where the Fifth Circuit found a pattern was sufficiently pled. 690 F. App'x 847, 850-53 (5th Cir. 2017) (finding the complaint asserted a pattern when jail personnel did not provide Balle with "even minimally adequate medical care for his acute and emergency needs and made little effort to transfer him to a hospital, despite his numerous complaints that he was experiencing a medical emergency."). *Balle* is distinguishable from this. The plaintiff in *Balle* was detained for six days and subject to mistreatment on several days across several shifts of employees. *See id.* at 848. By contrast, Bond was detained for one night in Nueces County Jail. As such, this Court relies on the numerous published Fifth Circuit precedents requiring plaintiffs to allege a pattern of mistreatment to sufficiently show a policy. *See Peterson, 588 F.3d at 850*; *Rivera, 349 F.3d at 247*; *Webster, 735 F.2d at 842*. Accordingly, Plaintiff's amended pleadings are insufficient to allege a pattern of similar abuses.

### ii. *Alleged Customs Two, Four and Five*

Plaintiff alleges that Nueces County does not discipline employees who ignore the medical needs of individuals entrusted to its care, but Plaintiff offers no facts to support this allegation. Plaintiff also alleges Nueces County is liable for failing to provide adequate

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 61 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

manpower to supervise and observe inmates, detainees, and arrestees and failing to provide adequate staff to handle situations stemming from the medical needs of those individuals. Again, the Complaint is entirely devoid of facts to support these conclusory allegations for either Bond's case or to establish a pattern. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations to be entitled to the assumption of truth." *Id.* at 679. As such, these customs are likewise insufficiently pled.

### iii. *Alleged Customs Six, Nine, and Ten: Failure to Train*

**\*7** The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Plaintiffs allegations six, nine, and ten assert that Nueces County is liable for failure to train. Defendants move to dismiss, arguing that Plaintiff pled insufficient factual content to show a failure to train. (D.E. 33, p. 9–10). Plaintiff's response did not address the argument. However, the Court has reviewed the merits of this claim.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). To establish liability for failure to train, a plaintiff must show that: "(1) the municipality's training policy or procedure was inadequate, (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "Moreover, 'for liability to attach based on an inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.' " *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). To show a municipality's deliberate indifference, the plaintiff is required to demonstrate a municipality had "notice of a pattern of similar violations." *McCully*, 406 F.3d at 383.

Plaintiff alleges that Nueces County failed "to train and/or discipline those employees [who] are found to have violated any of the above-noted policies." (D.E. 29, ¶ 27). The Complaint contains no other information related to this alleged custom and is therefore insufficient and shall be dismissed.

Plaintiff also pled two customary policies of:

> failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs .. and [ ] failing to train and/or supervise concerning medical reassessments for inmates/detainees/arrestees who—even while initially may not have signs of

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 62 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

obvious medical problems —begin to exhibit obvious signs of medical problems, including but not limited to, those stemming from the use of illicit drugs.

(D.E. 29, ¶ 27). The alleged facts supporting these policies are those surrounding Bond's time in jail, which would be sufficient if analyzing the Individual County Defendants' liability. For governmental liability, more facts are needed to establish a persistent, widespread practice of failing to protect or provide adequate medical care. *See Piotrowski*, 237 F.3d at 579. To that point, Plaintiff alleges:

Defendants are aware that during each and every shift of every single day, that the possibility that someone (especially someone that is accused of tampering with evidence by ingestion) could very well have complications associated with the use/ ingestion of same. The possibility that overdoses (leading to death or otherwise) will occur is without question and any jail should be training their employees/agents to observe signs of same, how to react to same and actually utilize medical technology at hand. Based on information and belief, Plaintiff would

proffer that such "overdoses" are a regular event and that very often, medical (either internal or outside ambulance services) is called for persons suffering same. Even in the last few months, such occurrence has been repetitive and resulted in multiple persons being treated and/or hospitalized.

**\*8** (D.E. 29, ¶ 21).

Taken as true, Defendants knew of regular overdoses that very often required medical services by their detainees. Plaintiff fails to allege anything further that could meet the elements for failure to train. Plaintiff does not allege that Nueces County had notice "of a pattern of similar violations" to show Bond's death was a "plainly obvious consequence" of the decision not to provide her medical care. *See Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). Plaintiff alleged that overdoses requiring medical attention are a pattern, but she did not allege a pattern of Nueces County failing to provide medical care during those overdoses. In fact, Plaintiff seems to allege the opposite—that medical care *is* being provided—in that such occurrences have "been repetitive and resulted in multiple persons being treated and/or hospitalized." (D.E. 29, ¶ 21).

Plaintiff did not plead any prior incidents allowing the Court to draw the reasonable inference that Nueces County was deliberately indifferent to constitutional violations like

those Bond suffered. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff did not plead sufficient facts to hurdle the deliberate indifference element. Because Plaintiff fails to factually plead deliberate indifference, she has not met the pleading standard as to any of the failure to train elements.

After considering all ten "policies" Plaintiff put forth, the Court concludes that none are sufficient to establish that Nueces County maintained a wide-spread custom or policy that caused Bond's death. Because the Court finds Plaintiff's claim fails on element one of municipal liability—an official policy or custom—there is no need to consider the other two elements: policy maker and moving force. Without an official policy or custom, Plaintiff's section 1983 claim against Nueces County must be dismissed. The Court notes that Plaintiff made compelling and detailed allegations against at least some of the individual officers. But alleging liability against Nueces County is beyond the inferences afforded this Complaint.

### V. Statute of Limitations & the Individual Defendants

Defendants argue that Rule 15 does not allow Plaintiff to add named defendants in for the Doe defendants after the limitations period. (D.E. 33, p. 11–12). The statute of limitations for a section 1983 claim "is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski*, 237 F.3d at 576 (citing *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993)). Texas's statute of limitations for personal injury

actions is two years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.003; *Piotrowski*, 237 F.3d at 576. The cause of action for injury resulting in death accrues on the death of the injured person, in this case February 7, 2017. TEX. CIV. PRAC. &REM. CODE § 16.003(b). As such, limitations ran on February 7, **2019**.

Plaintiff's Original Complaint was filed on February 5, **2019**. (D.E. 1). Her Second Amended Complaint, which substituted names of individual defendants for John and Jane Doe, was filed on July 1, **2019**. (D.E. 29). However, changing the parties' names from "Doe" to named individuals does not relate back to the date of the Original Complaint filed within the limitations period. Accordingly, as discussed below, these claims must be dismissed as barred by limitations.

### A. Applicable Law

**\*9** Federal Rule of Civil Procedure 15(c)(1) allows for an amendment to a complaint to relate back to the date of the original complaint if certain conditions are met.

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

i. received such notice of the action that it will not be prejudiced in defending on the merits; and

ii. knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity.*

FED. R. CIV. P. 15(c)(1) (emphasis added).

In *Jacobsen v. Osborne*, the Fifth Circuit held that an attempted substitution for a "John Doe" defendant does not relate back to the date of the original complaint for limitations purposes. 133 F.3d 315, 320-21 (5th Cir. 1998). Rule 15(c) requires a " 'mistake concerning the identity of the proper party' and our Circuit held that "use of a John Doe moniker does not constitute a 'mistake.' " *Whitt v. Stephens Cty.*, 529 F.3d 278, 282-83 (5th Cir. 2008) (denying leave to amend after the limitations period because naming Doe defendants is not a mistake and did not relate back (quoting *Jacobsen*, 133 F.3d at 321–22)).

In some circumstances, a court may preserve a claim that is otherwise untimely under the doctrine of equitable tolling. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert*

*v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citation omitted). "Traditional equitable principles preclude a court from invoking equitable tolling, however, when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations." *Id.* at 299 (citations omitted).

**B. Analysis**

Plaintiff does not dispute that both *Balle*, 690 F. App'x 847, and *Jacobsen, 133 F.3d 315*, hold that substituting for "John Doe" defendants does not relate back for limitations periods. Instead, Plaintiff argues that the Fifth Circuit's caselaw is incorrect on this matter and ostensibly urges the Court to follow other circuit courts. (D.E. 39, p. 3–4). To be sure, Fifth Circuit caselaw is binding upon this Court. Plaintiff substituted named individuals for "John Doe" and "Jane Doe" in her Second Amended Complaint—over six months after the limitations period expired. (D.E. 29). That substitution does not relate back to the date of her original complaint. *See Jacobsen*, 133 F.3d at 321-322. Therefore, the claims against the substituted individual defendants are time-barred.

Additionally, equitable tolling does not apply. Because the Texas statute of limitations is borrowed in section 1983 cases, "Texas's equitable tolling principles control this litigation." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir.2012) (per curiam) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir.1998)). "Texas courts sparingly apply equitable tolling and look, *inter alia*, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 65 of 336

Bond v. Nueces County, Texas, Not Reported in Fed. Supp. (2019)

the doctrine sparingly." *Id.* at 349 (citations and internal quotation marks omitted).

 **\*10** The Fifth Circuit has spoken on this issue. In *Balle*, the court found that the delay in determining identities of "Doe" defendants did not warrant equitable tolling. 690 F. App'x at 851. In contrast, in *Green v. Doe*, the Fifth Circuit instructed that equitable tolling was appropriate "because the delay in determining the identity of 'John Doe' [was] not attributable to" the plaintiff's actions. 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam) (emphasizing that the plaintiff had filed motions for discovery twice before limitations expired, which the district court denied). The Fifth Circuit in *Green* was careful to distinguish the case from *Jacobsen*, noting that Green had filed his lawsuit "almost eleven months before the running of the statute." *Green*, 260 F. App'x at 719. In contrast, the *Jacobsen* and *Balle* plaintiffs filed the suit just a few days before the limitations period had run, and the Fifth Circuit instructs that "there was no justification for equitable tolling" in those cases. *Id.* (citing *Jacobsen*, 133 F.3d at 321); *Balle*, 690 F. App'x at 851.

The Court finds equitable tolling is not applicable here. Plaintiff's inability to timely determine the identities of the "Doe" defendants was attributable to her own decision to file this suit two days before the end of the limitations period. By choosing to file that close to the deadline, Plaintiff failed to utilize the discovery mechanisms of the Federal Rules of Civil Procedure. Plaintiff states she "attempted—prior to hiring counsel —to determine the identity of the employees at issue to no avail." (D.E. 39, p. 6). No

further facts were alleged about this attempt. Because the court's discovery mechanisms are a legal remedy available to Plaintiff and she did not utilize them by filing so close to the end of the limitations period, the Court cannot conclude that Plaintiff "diligently pursued [her] rights" and does not find that equitable tolling is appropriate. *Myers*, 464 F. App'x at 349; *see also Lambert*, 44 F.3d at 299.

As such, all claims against Individual County Defendants Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez are untimely and are dismissed.

## VI. Leave to Amend

Plaintiff included in her response a request for leave to amend should the Court find her pleading deficient. The Court notes that this Order is not dispositive of the entire case because claims against Wellpath, LLC and Jackie Blevins remain. The Court will permit Plaintiff to file a renewed motion for leave to amend with the proposed amended pleading attached as an exhibit. The motion shall include any necessary briefing to show that the amended pleading complies with Federal Rule of Civil Procedure 8(a) and *Twombly*, 550 U.S. 544, & *Iqbal*, 556 U.S. 662. The motion for leave to amend may be filed on or before September 19, **2019**. No extensions shall be granted.

## VII. Conclusion

Defendants' Motion to Dismiss, (D.E. 33), is **GRANTED.** All claims against Elizabeth Alvarado, Jasmine Drake, Michael Alvarez, Anthony Munoz, Jose Rodriguez, Luis Rivera, Jose Aguayo, and Chris Gomez are time-barred and **DISMISSED.** The claims against Nueces County, Texas are **DISMISSED** for failure to state a claim. Defendant's first Motion to Dismiss, (D.E. 10), is **DENIED** as moot.

Plaintiff may request leave to amend **on or before September 19, 2019.**

SIGNED and ORDERED this 5th day of September 2019.

### All Citations

Not Reported in Fed. Supp., 2019 WL 13221680

---

## Footnotes

1   Plaintiff also initially brought a claim under the Americans with Disabilities Act, but she did not include an ADA claim in her Second Amended Complaint.

2   Plaintiff relies on *Gearin v. Rabbett*, No. 10-CV-2227 (PJS/AJB), 2011 **WL** 317728, at *9 (D. Minn. Jan. 28, 2011); *Charles v. Galliano*, No. 10-811, 2010 **WL** 3430519, at *6 (E.D. La. Aug. 26, 2010); *Abdulkhalik v. City of San Diego*, No. 08CV1515-MMA(NLS), 2009 **WL** 4282004, at *10 (S.D. Cal. Nov. 25, 2009); and *Dwyer v. City of Corinth*, No. 4:09-CV-198, 2009 **WL** 3856989, at *9 (E.D. Tex. Nov. 17, 2009).

3   Plaintiff also alleges that "[a]t all pertinent times, Defendant Nueces County, Texas (by and through the Nueces County Sheriff's Department) authorized and ratified the wrongful and tortuous acts and/or omissions of its officers/deputies/agents." (D.E. 29, ¶ 22). Neither side briefed the issue of ratification, but "[Fifth Circuit] precedent has limited the theory of ratification to 'extreme factual situations.' " *Peterson*, 588 F.3d at 848 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Plaintiff alleges no facts to support a ratification claim beyond this conclusory statement.

4   Plaintiff does not state which chapter of the Texas Jail Standards she is referring to, but the Texas Jail Standards are found in Title 37, Part 9, of the Texas Administrative Code.

5   The Court notes that the posture of this case is distinguishable from much of the Fifth Circuit case law on establishing a pattern. Discovery has not usually begun at the motion to dismiss stage, unlike in *Peterson, Rivera*, and *Webster*, which were at the summary judgment or jury stage. Those cases discussed the need for evidence beyond a bare list of prior incidents. *See Peterson*, 588 F.3d at 850; *Rivera*, 349 F.3d at 247; *Webster*, 735 F.2d at 842. In contrast, here at the motion to dismiss stage,

the Court "must only evaluate whether Plaintiff has pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Ramirez v. Jim Wells* Cty., No. CC-09-CV209, 2010 **WL** 2598304, at *2 (S.D. Tex. June 25, 2010).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 7

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 69 of 336

2024 WL 875834
Only the Westlaw citation
is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

Christine OLIVEROS, Plaintiff,
v.
David Rene OLIVEROS, Ross
Molina Oliveros PC, James
Michael Oliveros, Defendants.



5
:
23
-
CV
-
00402
-
FB
-
RBF
|
Signed February 13, **2024**

**Attorneys and Law Firms**

Mark Andrew Nelson, Law Office of Mark A. Nelson, Vista, CA, for Plaintiff.

Mark J. Barrera, The Barrera Firm, San Antonio, TX, Ana Luisa Zabalgoitia, Matthiesen, Wickert, Lehrer, S.C., Austin, TX, for Defendants David Rene Oliveros, Ross Molina Oliveros PC, James Michael Oliveros.

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

RICHARD B. FARRER, UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

**\*1** This Report and Recommendation concerns Defendants' Motions for Summary Judgment (originally filed as Motions to Dismiss). *See* Dkt. Nos. 33, 34, & 35; *see also* Dkt. No. 47 (Order converting Motions to Dismiss to Motions for Summary Judgment). Also before the Court is Plaintiff's Motion to Set Aside Mutual Release. *See* Dkt. No. 58. All pretrial matters in this action have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 14. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motions for Summary Judgment, Dkt. Nos. 33, 34, & 35, are converted back to Motions to Dismiss, and those motions to dismiss should be **GRANTED IN PART** and **DENIED IN PART**, as discussed below. The Court will take up Plaintiff's Motion to Set Aside Mutual Release by a separate order.

**Factual and Procedural Background**

This **case** centers around a divorce between Plaintiff Christine Oliveros and Defendant

David Rene Oliveros. Defendant James Oliveros is David's brother. James is a partner at Defendant law firm Ross Molina Oliveros PC, and David is a non-partner attorney working at the firm.

Plaintiff Christine filed for divorce from David on March 3, 2020, in Bexar County, Texas. Dkt. No. 32, Second Amended Complaint, at 3-4 ("2d Am. Compl.") According to Christine, she decided to end the 22-year marriage "after learning that Defendant David Oliveros had sexually assaulted her while she was 'not cognizant' due to taking prescribed sleeping medication." *Id.*

Three documents and one alleged incident are pertinent to the present motions. On March 18, 2021, while the then year-long divorce proceedings were pending, Christine, David, and James all signed and entered into a Mediated Settlement Agreement. It includes a release provision that states:

> Mutual Release by all parties and Jim Oliveros as to all claims that are known or reasonably could have been known.

Dkt. No. 33, Exhibit I, Mediated Settlement Agreement at 7.

But then in April of 2021, an incident occurred at the Ross Molina Oliveros PC law firm. 2d Am. Compl. at 11. According to Christine's recounting of events, she was the victim of a physical assault by David. *Id.*

In November of 2021, Christine, David, and James all signed and executed an Agreement Incident to Divorce. The Agreement Incident to Divorce styles itself, "a merger of [the] mediated settlement agreement dated March 18, 2021, between the parties." Dkt. No. 33, Exhibit N ("Agreement Incident to Divorce") at 18. The Agreement Incident to Divorce, like the preceding Mediated Settlement Agreement, includes a release provision. *See* Dkt. No. 33, Exhibit I ("Mediated Settlement Agreement"). The release in the Agreement Incident to Divorce provides in pertinent part the following:

> Save and except the obligations contained in this Agreement or in the Final Decree of Divorce, each party to this Agreement releases each other party to this Agreement for all claims, liabilities, debts, obligations, and causes of action of any and every character, whether asserted or unasserted, at law or equity, whether sounding in contract, tort, or arising under any federal or state statute, that each party may have against the other and that are known or reasonably could have been known.

Agreement Incident to Divorce at 15. As an aside, Christine now takes issue with the

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 71 of 336

validity of this release, claiming the "release was obtained under both emotional and financial duress, duress of property, through fraudulent means, and should be deemed invalid." 2d Am. Compl. at 8; Dkt. No. 38 at 14; Dkt. No. 39 at 6.

**\*2** In January of 2022, the state court entered a final decree of divorce. Dkt. No. 33, Exhibit O ("Final Divorce Decree"). The decree incorporates by reference the Agreement Incident to Divorce, using the following language:

> The Court finds that the Parties have entered into an Agreement Incident to Divorce, in a document separate from the Final Decree of Divorce. The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement.

Final Divorce Decree at 2. The divorce decree also includes a mutual release, which states:

> Save and except the obligations contained in this Final Decree of Divorce and the obligations contained in the parties' Agreement Incident to Divorce, CHRISTINE OLIVEROS and DAVID OLIVEROS have fully and forever released each other from all claims and causes of action of any and every character, whether asserted or unasserted, at law or in equity, whether sounding in contract, tort, or arising under any federal or state statute, that each party may have against the other and that are known or reasonably could have been known. *This release does not apply to any claims or causes of action that may arise after March 18, 2021.*

Final Divorce Decree at 28 (emphasis added).

Plaintiff Christine filed her complaint against Defendants David Oliveros, James Oliveros, and the Ross Molina Oliveros PC law firm on April 1, 2023. Dkt. No. 1. Against her former husband, Defendant David, Christine raises claims of sexual assault, physical assault, and civil conspiracy to defraud. 2d Am. Compl. at 6-8, 11-12, & 22-35. Against David's brother, Defendant James, Christine raises claims for sexual assault (as an accessory after the fact), fraud, civil conspiracy to defraud, knowing participation in breach of fiduciary duty, tortious interference with a contract or business relationship, and intentional infliction of emotional distress. *Id.* at 8-10 & 15-35. Against Ross Molina Oliveros PC, Christine

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 72 of 336

alleges vicarious liability for physical assault, negligent retention, fraud, and civil conspiracy to defraud. *Id.* at 12-15 & 22-35. In the present Motions to Dismiss, filed on August 8, 2023, Defendants ask the Court to dismiss Plaintiff's various claims on the basis of *res judicata* and due to pleading deficiencies. *See generally* Dkt. Nos. 33, 34 & 35.

In their Original Answer, Defendants David, James, and Ross Molina Oliveros PC raise counterclaims against Christine for breach of contract and trespass. Dkt. No. 11 at 15-16. These claims, however, are not at issue in the present motions and, indeed, are not presently the subject of any dispositive motion.

Upon its initial review of the present motions to dismiss, the Court observed that Defendants attached to those motions a significant amount of evidentiary material that had not been attached to or referenced in the live complaint. *See id.*; *see also* 2d Am. Compl. Accordingly, the Court ordered the motions converted to motions for summary judgment and ordered the parties to submit any additional summary judgment evidence they believed the Court should consider when resolving the motions in a summary judgment posture. *See* Dkt. No. 47.

 **\*3** But having spoken with the parties at a December 1, 2023, hearing on a motion to quash depositions, the Court will now— at the parties' request—convert the motions back to motions to dismiss and exclude from consideration when addressing those motions any evidence not properly before the Court under Rule 12(b)(6). *See* Dkt. No. 52.

**Analysis**

The Court will first explain why the motions are being converted back to motions to dismiss and, second, what the scope of the record is in connection with the Court's consideration of those motions. The Court then will address the motions' merits. As discussed further below, some of Plaintiff's claims warrant dismissal under the doctrine of *res judicata*, some warrant dismissal due to pleading deficiencies, and some survive Defendants' dismissal arguments. The surviving claims are Christine's claims against James Oliveros and Ross Molina Oliveros PC law firm for fraud and civil conspiracy to defraud, as well as Christine's claim against James for intentional infliction of emotional distress and her direct negligence claim against Ross Molina Oliveros PC law firm. Also still alive are all of Defendants' counterclaims, as none are the subject of a dispositive motion.

**A. Defendants' Present Motions Should Be Converted Back to Motions to Dismiss.**

Although the Court initially converted Defendants' motions to dismiss into motions for summary judgment, the parties both requested at the December 1 hearing that the motions be treated as motions to dismiss and that the Court exclude from consideration any evidence not properly before the Court in a Rule 12(b) (6) posture. Dkt. Nos. 52 & 53. In light of this request, the Court converts the motions to motions to dismiss.

Accordingly, **IT IS ORDERED** that Defendants' Motions for Summary Judgment, Dkt. Nos. 33, 34, & 35, are converted back to Motions to Dismiss.

### B. The Court Considers Only Such Evidence as Is Properly Before It on a Rule 12(b)(6) Motion.

In reviewing the present motions to dismiss under Rule 12(b)(6), the Court will "accept[ ] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotation marks omitted). The Court, however, need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In resolving the motions to dismiss, the Court does not consider any evidence outside the pleadings, except for documents that are attached or referred to in the live complaint or are central to the complaint. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

At the motion hearing on December 1, Defendants agreed to file a brief explaining which of the documents attached to their Motions to Dismiss could properly be considered under a 12(b)(6) standard. Dkt. No. 52. Christine agreed that she would respond with her position on the issue. *Id.* Both sides filed their respective briefs outlining which materials should be considered at this juncture. Dkt. Nos. 55 & 56. While the parties disagree on whether some documents can be considered, they agree that certain documents filed as part of the record in the state court divorce **case**

may be considered. *See id.* Those documents —specifically, the Final Divorce Decree, Agreement Incident to Divorce, and Mediated Settlement Agreement—will be considered by the Court. The three documents are referred to in Christine's complaint, and the Final Divorce Decree and Mediated Settlement Agreement are attached to her complaint. *See generally* 2d Am. Compl. The Court will also take judicial notice of matters of public record, including all documents publicly filed as part of the divorce **case**. *See* Dkt. No. 56 at 4; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("A court [ruling on a motion to dismiss] is permitted ... to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal quotations omitted).

**\*4** The parties also agree that a Correction Instrument may be considered. *See* Dkt. Nos. 55 & 56; *see also* Dkt. No. 33, Exhibit K ("Correction Instrument.") Christine's complaint refers to the Correction Instrument, which is central to her fraud claims. *See* 2d Am. Compl. at 15-17, 31. Accordingly, it is also properly considered by the Court at this stage.

No argument seeking the Court to consider any other evidence in connection with the Rule 12(b)(6) motions convinces the Court. To consider the motions, the well-pleaded allegations in Christine's live complaint will be taken as true and modified only by conclusive or uncontested evidence in the Final Divorce Decree, the Agreement Incident to Divorce, the Mediated Settlement Agreement, or the Correction Instrument. All other evidence is excluded from the Court's consideration at this Rule 12(b)(6) stage of the **case**.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 74 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

## C. Plaintiff's Claims Against David Should Be Dismissed.

Defendant David's argument that Christine's claims are barred under the principles of *res judicata* is well taken. Res judicata "prevents relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). When federal courts determine the preclusive effect of Texas judgments, Texas law applies. *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020). Under Texas law, "*res judicata* bars assertion of a claim in a subsequent **case** when: (1) there is a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the claims as were raised or could have been raised in the first action." *Id.* (citing *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 906 (5th Cir. 2011) (internal quotes omitted)). "To determine what claims could have been raised in the first action, Texas follows a transactional approach, under which a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Id.* (citing *Barr*, 837 S.W. at 631 (internal quotes omitted)).

The three requirements for *res judicata* under Texas law are met here with respect to Christine's claims against David. The Final Divorce Decree is a final judgment. Under Texas law, *res judicata* "applies to a final divorce decree to the same extent that it applies to any other final judgment." *Baxter v. Ruddle, 794 S.W.2d 761, 762 (Tex. 1990)*. The divorce decree itself bars relitigation of any claims by Christine against David that could have been raised in the divorce **case**. *See Barr*, 837 S.W.2d at 628. Further, the decree includes a release that, on its face, bars any claims against David predating March 18, 2021. Christine, therefore, cannot assert any claims against David that relate to the divorce as a matter of law. The parties in the present **case** and in the divorce —Christine and David—are the same. Finally, Christine could have raised her claims against David in the state divorce proceedings but did not. The claims all relate to the same transaction, the divorce. In sum, Christine is seeking to relitigate her divorce and raise claims against David—for assault, for fraud, for sexual assault—that she could have raised in her divorce **case** that wasn't final until January of 2022. Texas's transactional approach to *res judicata* bars these claims regardless of the various releases that were executed, although those releases do nothing to assist Christine's efforts.

**\*5** Christine's argument that her claims against David are not barred do not convince the Court, including her argument that although she could have sued David in the divorce she didn't. Through this argument she urges, "Texas is a state in which joinder of such actions in tort in divorce proceedings in [sic] permissive, not mandatory ... [so that] Christine ... *could* have sued David for his rape during the marriage in the divorce proceedings, and may have even threatened to, but did not do so, and she did not recover damages for, nor was she compensated for the rape or physical assault in any way." Dkt. No. 38 at 2. Christine further

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 75 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

emphasizes that none of her claims against David were actually adjudicated in the divorce **case**. *Id.* at 8–10. This argument cannot be reconciled with Texas's transaction approach to *res judicata*, and Christine does not dispute that Texas follows that transactional approach.

The principal **case** Christine cites in support of her argument, *Brinkman*, actually undercuts her argument. *Id.* at 12 (citing *Brinkman v. Brinkman*, 966 S.W.2d 780, 782 (Tex. App.— San Antonio 1998, pet. denied)). In *Brinkman*, the Court of Appeals cited *Twyman*, noting that "the Texas Supreme Court adopted the less extreme permissive approach, whereby the joinder of tort causes of action with divorce proceedings is permitted but not required." *Brinkman*, 966 S.W.2d at 782 (citing *Twyman v. Twyman*, 855 S.W.2d 619, 624 (Tex. 1993)). However, the court noted immediately thereafter that in *Twyman*, "the court cautioned that while joinder of the two actions is permissive, *the principles of res judicata remain applicable.*" *Id.* (citing *Twyman*, 855 S.W.2d at 625) (emphasis added). Accordingly, the transactional approach to *res judicata*, as set out in *Barr*, still applies. 837 S.W.2d at 631.

Christine's claims all arise out of the same transaction (or at the very least, a "series of connected transactions, out of which the action arose")—the divorce. *See id.* Indeed, Christine pleads that the alleged sexual assault was the instigating cause of the divorce. 2d Am. Compl. at 3–4. Because she could have brought all her connected claims against David relating to the divorce in the divorce **case**, those claims are now barred by *res judicata*.

As Christine's claims against David are barred by *res judicata*, the Court need not address David's fairly conclusory argument that the claims are also barred by the narrow *Rooker-Feldman* doctrine.

### D. Plaintiff's Claims Against Defendant James Oliveros Are Not Barred.

Plaintiff Christine alleges claims against Defendant James for the following: sexual assault as an accessory after the fact, fraud, knowing participation in breach of fiduciary duty, tortious interference with a contract or business relationship, intentional infliction of emotional distress, and civil conspiracy to defraud. *See generally* 2d Am. Compl. James responds that Christine's claims against him are barred by *res judicata* and the *Rooker-Feldman* doctrine. Dkt. No. 34 at 2–5 & 13.

**1.** *Christine's claims against James are not barred by res judicata. Res judicata* applies when "the *parties* in the action are the *same* or in privity with those in the first action." *Basic Capital*, 976 F.3d at 591 (emphasis added). Christine's claims against James are not barred by *res judicata* because James was not a party to the divorce **case** or the divorce decree.

Moreover, James's argument that he was in privity with David in the divorce **case** does not convince the Court under a 12(b)(6) standard. Under Texas law, there are "three ways" someone can be in privity with a judgment they are not a party to: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *E.E.O.C. v. Jefferson Dental*

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 76 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

*Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007), quoting *Amstadt v, U.S. Brass Corp.*, 919 S.W.2d 644, 653 (internal quotations omitted). James invokes the first two of these, arguing that he was in privity with the divorce **case** because he controlled it and because David represented his interest in the **case**. He fails to convince on both.

**\*6** Privity through control exists when "an individual actively and openly participated in the prior proceedings to such an extent that it was clear that the individual had the right to direct them." *E.E.O.C.*, 478 F.3d at 695, quoting *Maxson v. Travis Cty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App.—Austin 1999). James argues that Christine's complaint itself establishes privity through control because she alleges James "maliciously inserted himself into the divorce **case**" and wrongfully took control. Dkt. No. 34 at 4. James also argues that he was in privity because David represented non-party James's interest in Christine's home that was involved in the divorce **case**. *Id.*

Privity is a fact-bound inquiry. Reading Christine's complaint fairly, the Court would be required to draw several inferences to conclude on the basis of the complaint's allegations that James "actively and openly participated" in the divorce **case** "to *such an extent* that it was clear that [he] had the *right* to direct" it. *See E.E.O.C.*, 478 F.3d at 695 (emphasis added). Keep in mind, Christine alleges that James's participation in the divorce **case** was malicious and wrongful. *See* 2d Am. Compl. at 16-17. It is undisputed that James participated in the divorce **case** to some degree, but "mere participation" does not suffice to establish privity for *res judicata*. *E.E.O.C.*, 478 F.3d

at 695, quoting *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005). While Christine's complaint and the documents properly before the Court suggest James had an interest in the marital home, it is not clear that part of David's role in the divorce was to represent that interest. *See* Correction Instrument, Mediated Settlement Agreement at 4, Agreement Incident to Divorce at 3, 2d Am. Compl. at 16. Conversely, James's involvement in signing and acting as a party to several of the agreements involved in the divorce proceedings indicates that perhaps David *did not* fully or significantly represent James's interest. Drawing all inferences in favor of Christine under Rule 12(b)(6)'s standard, the facts she alleges do not affirmatively establish that James was in privity.

James was, however, a signatory to two of the releases in the divorce **case** but this does little to assist him at this stage. *See* Mediated Settlement Agreement & Agreement Incident to Divorce. Christine's claims against James based on facts predating March 18, 2021, are arguably brought in violation of the Mediated Settlement Agreement's release. *See* Mediated Settlement Agreement at 7. And claims against him that arose prior to the November 12, 2021, date of the Agreement Incident to Divorce arguably violate that agreement's release. *See* Agreement Incident to Divorce at 15. But invoking these releases to bar Christine's claims is James' burden under Texas law, *see* Tex. R. Civ. P. 94, and thus the Court can only grant dismissal if the releases are valid on the face of the live complaint. *See, e.g.,* *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Christine, however, takes issue with the validity of these releases in her complaint, claiming

*inter alia* that they were procured by fraud. 2d Am. Compl. at 7-8.

**2.** *Christine's claims against James are not barred by the Rooker-Feldman doctrine.* James argues, in conclusory fashion, that the narrow *Rooker-Feldman* doctrine bars Christine's claims against him. Dkt. No. 34 at 13. James' argument is devoid of analysis; indeed, he does not even provide the applicable four-part test adopted by the Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S 280, 284 (2005). On that basis alone, the Court rejects James's argument for failure to carry his burden under a 12(b)(6) standard. Regardless, Christine's claims against James are not *Rooker-Feldman* barred.

**\*7** *Rooker-Feldman* is a complex, incredibly narrow doctrine that only applies in <mark>cases</mark> "[1] brought by state-court losers [2] complaining of injuries *caused* by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Land & Bay Gauging, L.L.C. v. Shor*, 623 Fed. Appx. 674, 678 (5th Cir. 2015) (emphasis added); citing *Exxon Mobil*, 544 U.S. at 284. Here, James does not explain how Christine's alleged injuries were *caused* by the divorce decree.

To the extent that any fraud claim Christine brings against James seeks to *change* the divorce decree, that relief would likely be barred. But resolving all ambiguities in Christine's favor, she alleges injuries distinct from the decree and asks for money damages, not to re-open or change the decree. Accordingly, the "second hallmark of the *Rooker-Feldman* inquiry" is not met. *See*

*Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). In *Truong*, the Fifth Circuit gave several examples of <mark>cases</mark> not barred by *Rooker-Feldman* because the plaintiffs' alleged injuries were not *caused* by the state-court judgment, and James has not done enough to explain why such <mark>cases</mark> don't control the issue here. [1]

Furthermore, to determine whether a plaintiff is complaining of injuries caused by state-court judgments, courts have looked at the *timing* of the alleged injuries. *See Land & Bay Gauging*, 623 Fed. Appx. at 679; citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 172 (observing that a "useful guidepost is the timing of the injury"). Here, the timing indicates that the divorce decree itself was not the source of Christine's alleged injuries—all the facts she alleges giving rise to her claims occurred prior to the Final Divorce Decree judgment on January 11, 2022. *See generally* 2d Am. Compl.; *see also* Final Divorce Decree. James has not carried his burden to demonstrate that Christine's claims against him are barred by *res judicata* or *Rooker-Feldman*.

Whether James could benefit from any preclusion principles as to the validity of the releases based on the divorce decree—as opposed to only *res judicata*—is an issue the parties do not raise or brief. In sum, James has not demonstrated that Chirstine's claims against him are barred pursuant to either of the two arguments raised in his motion.

### E. Some of Plaintiff's Claims Should Be Dismissed for Pleading Deficiencies or Failure to State a Viable Claim.

Christine also brings claims against Defendants James and the Ross Molina Oliveros PC law firm that fail for pleading deficiencies. Again, under a Rule 12(b)(6) standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin, 369 F.3d at 467 (5th Cir. 2004)*. But the Court will not accept conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim, 836 F.3d at 469*.

**\*8  1.** *Christine's claim against James for sexual assault as an accessory after the fact should be dismissed.* In her apparently criminal claim against James, Christine relies on § 38.05 of the Texas Penal Code and 18 U.S.C. §§ 3, 1512, & 1513. There is no private cause of action under the Texas Penal Code or under the federal criminal statutes Christine cites. *See Hanna v. Home Ins. Co., 281 F.2d 298, 303 (5th Cir. 1960)*; *Jones v. Chevron Phillips Chem. Co.*, No. A-14-CV-761-DAE at *4 (W.D. Tex. 2014); *Spurlock v. Johnson, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.)*. Christine does not plead any facts or make any arguments explaining how she could recover via criminal charges raised in a civil **case**. This claim against James should be dismissed.

**2.** *Christine's claim against James for knowing participation in breach of fiduciary duty should be dismissed.* Knowing participation in breach of fiduciary duty is a derivative claim that depends on a claim for breach of fiduciary duty. *See Matter of Estate of Poe, 648 S.W.3d 277, 286 (Tex. 2002)*. Under Texas law, "where a

third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a *joint* tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 574 (Tex. 1942)* (emphasis added). Christine alleges that James "maliciously inserted himself into the dealings and participated in Charles Hardy [Christine's divorce attorney]'s breach of fiduciary duty to Christine." 2d Am. Compl. at 17. But a defendant's liability for a derivative tort "depends on participation in some underlying tort for which the plaintiff *seeks to hold at least one of the named defendants liable*." *Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996)* (emphasis added). Christine has not sued her divorce attorney, Charles Hardy, for breach of fiduciary duty. Therefore, the derivative claim against James fails. This claim should be dismissed.

**3.** *Christine's claim against James for tortious interference with a contract should be dismissed.* In Texas, a person "must be a stranger to a contract to tortiously interfere with it." *In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 761 (Tex. 2006)* (quoting *Morgan Stanley & Co., Inc. v. Texas Oil Co., 958 S.W.2d 178, 179 (Tex. 1997)*). Christine's complaint alleges that James was a party to the Mediated Settlement Agreement and Agreement Incident to Divorce, and the documents properly considered by the Court confirm her allegations in that regard. *See* 2d Am. Compl. at 19; *see also* Mediated Settlement Agreement & Agreement Incident to Divorce. Taking Christine's complaint as true, she has failed to successfully plead a claim against James for tortious interference. Since James was a party to the contracts mentioned

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 79 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

by Christine in her complaint, he was not a "stranger" to the contracts and cannot be liable for tortious interference with them. *See id.*; *see also In re Vesta*, 192 S.W.3d at 761. Therefore, this claim should be dismissed.

**4.** *Christine's claim against Ross Molina Oliveros PC law firm for vicarious liability for physical assault should be dismissed.* In Texas, claims for vicarious liability are considered "liability-spreading theories [that] depend upon liability for an underlying tort, and they survive or fail alongside that tort." *Nettles v. GTECH Corporation*, 606 S.W.3d 726, 738 (Tex. 2020). Christine's claim for vicarious liability against the law firm for physical assault is based on her underlying claim against David for physical assault. 2d Am. Compl. at 12-14. Christine's claims against David are barred, as explained above. Without direct liability against David for the alleged assault, there can be no vicarious liability against his employer for the same alleged incident. *See Nettles*, 606 S.W.3d at 738. This claim should be dismissed.

#### F. Some of Plaintiff's Claims Survive Defendants' Motions to Dismiss.

**\*9** Some of Christine's claims survive at this stage.

**1.** *Christine's complaint against James for fraud should not be dismissed under a 12(b)(6) standard.* In her complaint, Christine alleges various facts supporting her claim against James for fraud, and at this stage the Court takes those facts as true. *See Martin*, 369 F.3d at 467 (5th Cir. 2004). In his motion to dismiss, James argues that Christine's fraud claim is "nonsensical" because she cannot establish a critical element of fraud: reliance. *See* Dkt. No.

34 at 6; *see also Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) ("A common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."). James also argues "it is obvious" that Christine's pleadings affirmatively *disprove* her reliance on James' alleged misrepresentations because she "immediately disputed" them. Dkt. No. 34 at 6. James also argues that Christine failed to establish that James *intended* to induce her reliance and that she suffered damages. *Id.* at 7-8. These arguments fall short because they all implicate disputed fact issues.

The question before this Court is not whether Christine has *established* each element of fraud, but whether she has sufficiently pleaded a plausible claim for relief that can survive a motion to dismiss. Christine alleges that James fraudulently added his name to the title of her house, that she "was deceived and acted upon that deception," and that she "suffered great damages emotionally, mentally and financially ... and she had to hire a property attorney." 2d Am. Compl. at 16. These allegations, taken as true, plead not only reliance but also James's intent and Christine's damages.

**2.** *For the same reason that Christine's claims for fraud against James don't fail, her fraud claim against Ross Molina Oliveros PC law firm doesn't fail.* Christine alleged that James, a partner at the law firm, used the law firm's mailing envelope to send the allegedly fraudulent document adding James to the title

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 80 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

of her house. *See* 2d Am. Compl. at 16. She also alleges that another employee of Ross Molina Oliveros PC law firm was involved in the fraud by notarizing the allegedly fraudulent document. *Id.* Under a Rule 12(b)(6) standard that resolves all inferences in favor of Christine, her claim survives the law firm's motion to dismiss.

In its response and reply, the law firm argues only that Christine's fraud claim against James is barred, which then also bars her fraud claim against the firm. Dkt. Nos. 35 & 46. The firm, like James, also argues that Christine failed to show the essential element of reliance. However, as explained above, Christine pleads various allegations supporting reliance or a reasonable inference to that effect, and the Court takes her pleading as true at this stage and draws such inferences in her favor. *See* 2d Am. Compl. at 16. Accordingly, for the same reasons that Christine's fraud claim against Jame survives, so does her fraud claim against Ross Molina Oliveros PC law firm.

 **\*10 3.** *Christine's claims for civil conspiracy to defraud against James and Ross Molina Oliveros PC law firm survive.* In Texas, a civil conspiracy is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). It is a derivative tort, meaning that "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.* Here, Christine has alleged that two or more persons, namely, James and the law firm,[2] conspired to defraud her. 2d Am.

Compl. at 22-35. She has also alleged various facts supporting her underlying fraud claim; for example, she alleges that James sent her a fraudulent document which she detrimentally relied on, and that the document was sent via a law firm envelope and notarized by a law firm employee. *See id.* at 16. Therefore, this claim, as to James and the law firm, survives.

 **4.** *Christine's claim for intentional infliction of emotional distress against James should not be dismissed at this stage.* In Texas, the elements of intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). In support of this claim Christine alleges, *inter alia*, that James "interrogated [her] ... about being raped," "mocked ... her pain and trauma and tried to tell her that it did not count as rape," "mocked [her] fragile mental state," "yelled at [her] children," and "instructed David ... to use physical force to throw Christine out of [the Defendant law firm] with aggression and cruelty." 2d Am. Compl. at 20-21. Christine further alleges that this conduct was extreme and outrageous, and that it caused her severe emotional distress. *Id.* at 22. ("James [sic] maliciousness and cruelty towards Christine nearly caused her to commit suicide and it ended up causing her to move away from Texas and her children suffered daily... [t]his is very disruptive and traumatizing to Christine as a mother to see her children so traumatized.").

James argues that Christine's claim should be dismissed as a matter of law because it is

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 81 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

"nothing more than a regurgitated summary of her other claims against James." Dkt. No. 34 at 13-14. But Christine alleges various facts to support her intentional-infliction-of-emotional-distress claim that are not stated anywhere else in her complaint. *See* 2d Am. Compl. at 20-22 ("James interrogated Christine via text and ... phone call about her being raped," "James mocked Christine and ...tried to tell her that it did not count as rape," "James had called and yelled at [Christine's children]."). It is not, as James argues, based on the exact same conduct she alleges in her other claims against James. And although the Court need not credit her legal conclusions or conclusory allegations, there are sufficient specific facts alleged to describe a plausible claim.

James' argument that Christine's claim should be dismissed because his alleged conduct is not sufficiently extreme and outrageous fails under the Rule 12(b)(6) standard. Dkt. No. 34 at 15-16. In Texas, "[w]hether a defendant's conduct is extreme and outrageous is a matter of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). James argues that the conduct Christine alleges against him, as a matter of law, cannot satisfy this element of her tort claim. Dkt. No. 24 at 15-16. James cites several Texas Supreme Court **cases** to support his contention that Christine's claims fail as a matter of law. *See Bradford*, 48 S.W.3d at 758; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 798 (Tex. 2006); *Twyman*, 855 S.W.2d at 622. One of the **cases** is inapplicable: in *Twyman*, the Texas Supreme Court held that the plaintiff could not recover because the trial court did not make findings of outrageousness or extreme emotional distress

—but this was because, at the trial court, the plaintiff's claim was *negligent* infliction of emotional distress. *See* 855 S.W.2d at 625-26. The Court in *Twyman* remanded the **case** for a new trial. *Id.* at 626.

**\*11** The other **cases** are distinguishable. In *Bradford*, the defendant was the landlord of a store at a mall. 48 S.W.3d at 752-53. After an altercation between the plaintiff and a third party, the defendant told the police that the third party owned the store and that "he did not want [the plaintiff] in the mall since he was causing a scene." *Id.* at 753. The plaintiff believed that he was the store's proper tenant and brought an intentional infliction of emotional distress claim against the defendant. *Id.* The facts Christine alleges in her complaint, taken as true, are more egregious than the facts in *Bradford*.

*Kroger* is also distinguishable. In *Kroger*, the plaintiff was acquitted of a misdemeanor theft charge for alleged shoplifting. 216 S.W.3d at 791. Then, the plaintiff sued the grocery store where the alleged incident occurred, claiming intentional infliction of emotional distress and urging that the grocery store "knowingly provid[ed] false information to police so that an innocent person is prosecuted." *Id.* at 791, 796. The Court found that such behavior would be sufficiently extreme and outrageous if the evidence supported it. *Id.* at 796. But the Court found that the evidence was insufficient to show that "Kroger did not honestly and reasonably believe [the plaintiff] was guilty." *Id.* The facts Christine alleges in her complaint are also more egregious than the facts in *Kroger*. And whether Christine has provided sufficient *evidence* to support her factual allegations is

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 82 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

not appropriately considered by the Court on a motion to dismiss.

*Tiller* presents a factual scenario most comparable to that before the Court, but it is still distinguishable. The plaintiff in *Tiller* owned a construction company with her husband. 121 S.W.3d at 711. Their company contracted with the defendant to complete a construction project. *Id.* The plaintiff's husband became ill and died during the project, and the plaintiff increasingly took over more management duties of the company. *Id.* The plaintiff sent a letter to the defendant letting him know that the project would nevertheless be completed, but that it was a hard time for her. *Id.* at 711-12. Throughout the project, the defendant called the plaintiff and her children at home many times at odd hours, including late at night, on Sunday mornings, and over holidays. *Id.* at 712. He "raised hell" with her, and was "rude, demanding and curt." *Id.* At one point, when the construction site was shut down for one day, the day of the plaintiff's husband's funeral, the defendant threatened to terminate the contract. *Id.* The Court held that this threat was the most egregious of the defendant's actions, but even so, it was not sufficiently extreme and outrageous as a matter of law. *Id.* at 713-14. The Court highlighted that "to determine whether certain conduct is extreme and outrageous, [courts] consider the context and the relationship between the parties." *Id.* at 714 (citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). The Court determined that in the context of a business relationship, where the plaintiff was designated as a contact person for complaints relating to the project, and especially because the defendant only complained about the project

and did not insult the plaintiff personally or threaten to harm her, the defendant's conduct was not sufficiently extreme and outrageous. *Id.* at 714.

Like in *Tiller*, the conduct Christine complains of involves phone calls by James and alleged cruel comments made to her and her children. However, Christine also alleges that James incited David to "use physical force to throw Christine out" of the law firm. 2d Am. Compl. at 20-21. Taking this allegation as true, it distinguishes Christine's allegations from the facts in *Tiller*. Additionally, the context in the two **cases** is different: *Tiller* involved a business relationship with a plaintiff who opted to receive customer complaints by phone, while this **case** involves a family relationship and allegations of highly personal statements about an alleged sexual assault. Based on the facts at hand, the Court cannot apply the same reasoning as the court in *Tiller*.

**\*12** Here, the question before the Court is whether Christine has pleaded sufficient factual allegations to state a "plausible" claim to relief and survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Taking Christine's allegations as true, she has described extreme and outrageous conduct. She alleges intentional cruelty and incitement to violence in the aftermath of an intentional sexual assault. Nothing in Defendants' arguments convince the Court that Christine has failed to plead sufficient facts to raise a plausible claim for relief.

**5.** *Christine's claim against Ross Molina Oliveros PC law firm for negligent retention should not be dismissed.* The claim against

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 83 of 336

Ross Molina Oliveros PC law firm for negligent retention should not be dismissed because Christine has pleaded facts plausibly demonstrating a claim for relief. The Texas Supreme Court has not ruled definitively on the existence or elements of a negligent-retention cause of action. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 505 (Tex. 2017) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3 796, 804 n.27 (Tex. 2010)). Various Texas Courts of Appeals have recognized a claim for negligent retention and "have often held employers to very general duties, but they have not weighed the factors that determine whether a duty exists, and what it is." *Id.* at 505-06. Common law negligence, however, is recognized under Texas law, and has three elements: "1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.3d 523, 525 (Tex. 1990).

The five relevant factors in determining whether a defendant owed a duty to a third party are "risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* at 525; *see also Pagayon*, 536 S.W.3d at 507-08. In *Pagayon*, the Texas Supreme Court assessed a negligent retention claim by analyzing various factors that determine whether an employer in certain situation owes a duty to third parties to supervise its employees. *See id.* at 507-508. There, the Court considered various facts relevant to the legal question of whether the employer owed a duty to a third party. *Id.*

In applying the facts to the *Phillips* factors mentioned above, the Court found that the employer owed no duty as a matter of law and reversed the jury verdict. *Id.*

In her complaint, Christine alleges various facts surrounding the circumstances under which David allegedly physically assaulted her on the premises of the law firm. *See* 2d Am. Compl. at 11-12. She also alleges that Ross Molina Oliveros PC had a "legal duty to hire, supervise, train, and retain competent employees" and to "protect the public ... from ... abuse." 2d Am. Compl. at 14. Christine also alleges that the law firm "was made aware of the events alleged herein and that [David] had a history of domestic violence and sexual assault" and that the firm "breached its duty ... due to the fact that it retained [David] as an employee without any limitations or supervision or remedies to ensure the safety of anyone in the general public on company property or the environment after becoming aware of his history of domestic violence and sexual assault." *Id.* at 14-15.

Defendant Ross Molina Oliveros PC law firm admits that Christine's claim is "a claim for direct liability against [the law firm], not vicarious liability." Dkt. No. 35 at 3. Therefore, it does not necessarily fail because the claim against David fails. *Cf. Nettles*, 606 S.W.3d at 738. In arguing why this claim *should* be dismissed, however, the law firm claims that "the existence of a legal duty is a threshold question of law for the court to decide *based on the facts surrounding the occurrence in question.*" Dkt. No. 35 at 3-4 (citing *Greater Hous. Transp. Co.*, 801 S.W.3d at 525) (emphasis added). But the law firm does not provide further analysis under a Rule 12(b)

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 84 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

(6) standard, which requires the Court to accept as true facts alleged in the complaint. *Twombly*, 550 U.S. 544 at 556; *see also Martin*, 369 F.3d at 467 (5th Cir. 2004). This claim, and the law firm's response to it, raise a fact issue which the Court cannot properly resolve at this stage of the litigation.

**\*13** The law firm contends that Christine's negligent retention claim must be dismissed because she is required to allege facts showing that her injury relates to "David's competence or fitness to perform his job [at the law firm]"— specifically, his legal work as an attorney, though the Court finds this unpersuasive. Dkt. No. 35 at 4. The law firm cites *Houser v. Smith* for this proposition. 968 S.W.2d 542, 544 (Tex. App—Austin 1998, no pet.) (noting, "the theory of negligent hiring and supervision does require that a plaintiff's harm be the *result of the employment*." (emphasis added)). But *Houser* doesn't appear to support the law firm's reading of it, and the firm has provided no Texas Supreme Court <mark>case</mark> or other binding authority to support its contention. Considering *Pagayon*'s hesitance to clearly recognize or set out elements for negligent retention, Christine's claim is more fairly read as a simple negligence claim. *Pagayon*, in fact, also involved a claim that an employer owed a duty to a third party, and the Court there declined to find that the negligence claim must relate to the nature of the employee's job. *See generally Pagayon*, 968 S.W.2d 542.

Considering the facts that Christine alleged and applying those to the five factors Texas courts use in determining the existence of a legal duty, her claim survives the law firm's motion to dismiss. Christine's allegations that

prior to the incident in question the law firm was "aware ... that [David] had a history of domestic violence and sexual assault," and that the firm had no "limitations or supervision or remedies to ensure the safety of anyone in the general public on company property" inform the Court's weighing of the risk, foreseeability, likelihood, and consequence factors. *See* 2d Am. Compl. at 14; *see also Pagayon*, 536 S.W.3d at 507-08. These allegations support Christine's claim that the firm owed her a legal duty. At this stage, considering all facts Christine alleges as true, the law firm has failed to carry its burden to show that Christine's direct negligence claim warrants dismissal.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendants' Motions to Dismiss, Dkt. Nos. 33, 34, & 35, be **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's Motion to Set Aside Mutual Release, Dkt. No. 58, will be taken up by the Court in due time by a separate order.

The surviving claims are Christine's claims against James Oliveros and Ross Molina Oliveros PC law firm for fraud and civil conspiracy to defraud, as well as Christine's claim against James for intentional infliction of emotional distress and her direct negligence claim against Ross Molina Oliveros PC law firm.

Also surviving are the three defendants' two counterclaims against Christine for trespass and breach of contract, as neither counterclaim

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 85 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

has been the subject of a dispositive motion. *See* Dkt. No. 11.

The Court anticipates motions for summary judgment will be filed. Accordingly, the Court will by separate order extend the deadlines for discovery and to file motions for summary judgment. The parties need not wait until the completion of those deadlines to file motions.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**\*14  IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2024 WL 875834

---

## Footnotes

1    *See id.* at 382-83 (citing *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) (noting that if a plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, rather than an allegedly erroneous decision by a state court, *Rooker-Feldman* does not bar the **case**), *Scott v. Fortenberry*, 278 Fed. Appx. 440, 441

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 86 of 336

**Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)**

[(5th Cir. 2008)](#) ("*Rooker-Feldman* does not bar a 1983 plaintiff's claim for damages arising from court reporter's failure to prepare a trial transcript and consequent delay of his criminal appeal because the suit did not challenge his conviction."); and *[Mosley v. Bowie Cnty. Tex., 275 Fed. Appx. 327, 328-29 (5th Cir. 2008)](#)* ("*Rooker-Feldman* bars a claim that a state child support order is void, but not a claim that state government defendants violated the federal plaintiffs' constitutional rights in the course of enforcing the order.")).

2   No party discusses whether and to what extent a law firm can conspire with its own employee in circumstances such as those alleged here, and so the Court declines to address that topic.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 8

2024 WL 874145
Only the Westlaw citation
is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

Christine OLIVEROS, Plaintiff,
v.
David Rene OLIVEROS; Ross
Molina Oliveros, P.C.; and James
Michael Oliveros, Defendants.

CIVIL ACTION NO. SA-23-CA-402-FB
|
Signed February 29, 2024

**Attorneys and Law Firms**

Mark Andrew Nelson, Law Office of Mark A. Nelson, Vista, CA, for Plaintiff.

Mark J. Barrera, The Barrera Firm, San Antonio, TX, Ana Luisa Zabalgoitia, Matthiesen, Wickert, Lehrer, S.C., Austin, TX, for Defendants.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

FRED BIERY, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is the Report and Recommendation of United States Magistrate Judge (docket no. 62), filed in the above-captioned cause on February 13, 2024, concerning Defendants' Motions for Summary Judgment (originally filed as Motions to

Dismiss). *See* (docket nos. 33, 34, & 35); *see also* (docket no. 47) (Order converting Motions to Dismiss to Motions for Summary Judgment). Also before the Court is Plaintiff's Motion to Set Aside Mutual Release. (Docket no. 58). To date, no objections to the Report and Recommendation have been received.[1]

Because no party has objected to the Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). The Court has reviewed the Report and Recommendation and finds its reasoning to be neither clearly erroneous nor contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918 (1989).

IT IS THEREFORE ORDERED that the Report and Recommendation of United States Magistrate Judge (docket no. 62) is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that Defendants' Motions to Dismiss (docket nos. 33, 34 & 35) are GRANTED IN PART and DENIED IN PART. Plaintiff's Motion to Set Aside Mutual Release (docket no. 58) will be taken up by the Court in due time by a separate order.

The surviving claims are Plaintiff's claims against Defendants James Oliveros and Ross Molina Oliveros PC law firm for fraud and civil conspiracy to defraud, as well as Plaintiff's claim against Defendant James Oliveros for intentional infliction of emotional distress and her direct negligence claim against Defendant Ross Molina Oliveros PC law firm. This **case**

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 89 of 336

Oliveros v. Oliveros, Not Reported in Fed. Supp. (2024)

continues to be referred to the Magistrate Judge
for further pretrial proceedings.

It is so ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 874145

---

## Footnotes

1    Any party who desires to object to a Magistrate's findings and recommendations
     must serve and file his, her or its written objections within fourteen days after being
     served with a copy of the findings and recommendation. 28 U.S.C. § 635(b)(1). If
     service upon a party is made by mailing a copy to the party's last known address,
     "service is complete upon mailing." FED. R. CIV. P. 5(b)(2)(C). If service is by
     electronic means, "service is complete upon transmission." *Id.* at (E).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 9

851 Fed.Appx. 514 (Mem)
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure
32.1 generally governing citation of
judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of
App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

Wayne SMITH, Plaintiff-Appellant,
v.
MTGLQ INVESTORS,
L.P., Defendant-Appellee.

No. 19-20665
|
Summary Calendar
|
FILED June 30, 2021

Appeal from the United States District Court
for the Southern District of Texas, USDC No.
4:19-CV-1888

**Attorneys and Law Firms**

Wayne Smith, Pro Se

Robert Brandon Hakari, McCarthy & Holthus,
L.L.P., Plano, TX, for Defendant-Appellee

Before Higginbotham, Jones, and Costa,
Circuit Judges.

**Opinion**

Per Curiam: [*]

Wayne Smith appeals the district court's
dismissal of his case under Federal Rule
of Civil Procedure 12(b)(6) for failure to
state a claim upon which relief can be
granted. Smith asserted claims of violation
of the Fair Debt Collection Practices Act,
negligence, fraudulent concealment, fraudulent
inducement, slander of title, and rescission
under the Truth in Lending Act. The relief
he sought included a declaratory judgment,
injunctive relief, and monetary damages.

We review "a district court's dismissal under
Federal Rule of Civil Procedure 12(b)(6) de
novo, accepting all well-pleaded facts as true
and viewing those facts in the light most
favorable to the plaintiff." *Harris Cty. Texas v.
MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir.
2015) (internal quotation marks and citation
omitted). Smith argues that the district court
erred by dismissing the case without first
requiring the defendant, MTGLQ Investors,
L.P. (MTGLQ), to provide documents proving
that it had the authority to foreclose on his
property.

The Deed of Trust and assignment records
relating to Smith's property were public
records, and the district court was permitted to
take judicial notice of those unrebutted records
in granting MTGLQ's motion to dismiss. *See
Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9
(5th Cir. 2007). Smith's argument fails to show
that his allegations stated a claim upon which
relief could be granted. *See MERSCORP*, 791
F.3d at 551; Fed. R. Civ. P. 12(b)(6). Smith
does not brief any other argument challenging
the district court's reasons for dismissing his
claims, and he has thus waived any such
arguments. *See Yohey v. Collins*, 985 F.2d 222,
224-25 (5th Cir. 1993) (recognizing that even

pro se litigants must brief arguments in order to maintain them).

Accordingly, the district court's judgment is AFFIRMED. Smith's motion seeking an order to prevent the collection of payment from him is DENIED.

**All Citations**

851 Fed.Appx. 514 (Mem)

---

## Footnotes

*    Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 10

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 94 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

2024 WL 5036616
Only the Westlaw citation
is currently available.
United States District Court, S.D.
Texas, Corpus Christi Division.

PENINSULA MARINE, INC., Plaintiff,

v.

PRINCIPLE INDUSTRIAL
SERVICES, LLC, et al., Defendants.

| Civil Action |
| No. |
| 2 |
| : |
| 23 |
| - |
| CV |
| - |
| 00104 |

|
Signed September 30, **2024**

## Attorneys and Law Firms

Michael Savan Prejean, Michael Prejean,
Pearland, TX, Brenton Joel Allison, Gilman
Allison, LLP, Pearland, TX, for Plaintiff.

Joshua L. Hedrick, Spencer Fane LLP, Dallas,
TX, Kevin Gerard Corcoran, Rebecca Lynne
Gibson, Spencer Fane LLP, Houston, TX, for
Defendants Principle Industrial Services, LLC.

Stephen Eric Irving, Peckar & Abramson PC,
Houston, TX, for Defendants TTL, Inc.

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

DAVID S. MORALES, UNITED STATES
DISTRICT JUDGE

**\*1** Before the Court is Defendant Principle
Industrial Services, LLC's ("Principle")
Motion to Dismiss Plaintiff's First Amended
Original Complaint. (D.E. 20). Plaintiff
Peninsula Marine ("Peninsula") brings myriad
claims against Principle—including breach
of contract, promissory estoppel, quantum
meruit, sworn account, and fraud—arising
out of two agreements.[1] Peninsula states a
valid claim for breach of contract under the
first, express agreement. Therefore, Peninsula's
quasi-contract claims under the first contract
fail because of the express contract doctrine.
With respect to the second agreement, because
Principle disputes the existence of a contract,
Peninsula can proceed under alternative
theories at the motion to dismiss stage, and it
has sufficiently alleged both breach of contract
and quasi-contract claims under the second
agreement. Finally, Peninsula states a valid
claim for fraud because it sufficiently pled that
Principle made false statements that Peninsula
detrimentally relied on. As such, the **Court
GRANTS in part and DENIES in part** the
motion to dismiss. (D.E. 20).

### I. Background

In May of 2022, Defendant Principle and
TTL, Inc., ("TTL") contracted for Principle to

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 95 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

remove pipelines in the Corpus Christi Ship Channel. (D.E. 17, p. 3–4). Lucas Pappas, an officer of Principle (and now-dismissed Defendant in this matter, *see* (D.E. 28)), signed this contract.. (D.E. 17, p. 3). Later that month, Pappas approached Peninsula "to supply labor, equipment, and services" regarding the pipeline removal. *Id.* at 4. Peninsula gave Principle a bid for the work and negotiated payment, ("the first contract"), which included a clause requiring Peninsula's work invoices to be paid when TTL paid Principle. *Id.* Later that year, Peninsula started work under the first contract and submitted monthly invoices to Principle. *Id.* Principle paid some, but not all, of the amounts owed. *Id.* In November 2022, Principle told Peninsula to stop working under the first contract because there was a "lack of an approved permit." *Id.* at 5. Peninsula obliged. *Id.* Pappas then proposed to Peninsula that it remain on site "at a reduced standby and holiday rate" and any work performed from that day "until the permit issue was resolved would be" Defendants' responsibility ("the second agreement"). *Id.* Peninsula agreed, accepted those terms, and began complying with the terms of this second agreement by working. *Id.* at 5–6. In January 2023, Principle and the now-dismissed Defendants told Peninsula to stop working, and Peninsula left the worksite on January 16, 2023. *Id.* at 6. Peninsula submitted invoices for the standby time and work performed. *Id.* Peninsula calculates the outstanding principal amount under the second agreement (i.e., work from November 2022– January 2023) as approximately $740,000. *Id.* In total, Peninsula alleges Principle owes them $1,085,150.65. *Id.*[2]

**\*2** Peninsula then sued, alleging breach of contract and promissory estoppel as to the first contract, *id.* at 8–9, breach of contract and promissory estoppel as to the second agreement, *id.* at 9–11, quantum meruit, *id.* at 11, sworn account as to the second agreement, *id.* at 11–12, and fraud, *id.* at 12–13.

Principle and two now-dismissed Defendants move to dismiss the amended complaint. (D.E. 20).[3] Principle first argues that Peninsula cannot state a breach-of-contract claim for the first contract because the condition precedent —that TTL pay Principle—was not satisfied. *Id.* at 15. For the second agreement, Principle argues that Peninsula's breach-of-contract claim fails because the second agreement lacked all the essential requirements to form a contract: offer, acceptance, mutual assent, delivery, and execution. *Id.* at 16–17. Principle argues that Peninsula's promissory estoppel claims fail (1) for similar reasons as the first contract claim—namely, that Peninsula's alleged reliance was neither foreseeable nor justifiable because Peninsula knew (via the first contract) that TTL *had* to pay Principle *before* Principle would pay Peninsula—and (2) because the express contract doctrine bars any estoppel claims. *Id.* at 17–18. Principle argues Peninsula's quantum meruit claim is barred by the express contracts doctrine, *id.* at 18, and that the sworn account claim fails because Peninsula has no outstanding claim for payment (because, as above, the condition precedent that TTL pay Principle has not occurred) and because Peninsula never alleges the prices charged, *id.* at 19–20. Finally, with respect to fraud, Principle argues that Peninsula's claims fail because: (1) the allegations are not particular enough under the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 96 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

heightened pleading standard; and (2) because the alleged fraudulent statement about TTL not paying is not false, *id.* at 21–22. Alternatively, Principle argues the fraud claims are barred because they arise solely from duties within the contract and are barred by the economic loss rule. *Id.* at 23–24.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To permit a reasonable inference, the complaint must demonstrate "more than a sheer possibility" of unlawful behavior but not a particular probability. *Id.*

At the motion to dismiss stage, the Court examines only "the pleadings and 'any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.' " *Perry v. Minn. Life Ins. Co.*, No. 6:23-CV-00018, 2023 WL 11802193, at *2 (S.D. Tex. July 14, 2023) (Morales, J.) (quoting *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023) (citations and internal quotations omitted)). Although the Court accepts the allegations of the complaint as true and views them "in

the light most favorable to the plaintiff[,]" *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (citation and internal quotations omitted), the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[,]" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)) (citing *Iqbal*, 556 U.S. at 679).[4]

**\*3** Rule 8 of the Federal Rules of Civil Procedure requires all pleadings that state a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 9(b) lays out a heightened pleading standard for fraud claims. FED. R. CIV. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake.")). The applicable pleading standard for Peninsula's fraud claims is Rule 9(b), but all claims are subject to Rule 8. *See* (D.E. 17, p. 8–14).

## III. Analysis

### A. First Contract

#### i. Breach of Contract

In its complaint, Peninsula alleges Principle "has materially breached the [f]irst [c]ontract by failing to make payment to [Peninsula] in the principal amount of $346,643.69, despite having received payment for such [w]ork from TTL." (D.E. 17, p. 9). Principle moved to dismiss, arguing that because the

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 97 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

condition precedent—that TTL pay Principle —has not been met, Peninsula has failed to state a claim for breach of contract. (D.E. 20, p. 15). To support this argument, Principle points to language in the contract which states "[f]inal payment will not become due to [Peninsula] until final payment is received in full by Principle." (D.E. 20-4, p. 4). In response, Peninsula first argues that Principle's assertion that TTL had not paid Principle is "demonstrably untrue." (D.E. 29, p. 4). In other words, the condition precedent that Principle identifies has been met. *Id.* But Peninsula also goes further, arguing no such condition precedent exists. (D.E. 29, p. 8). Rather, according to Peninsula, "the plain unambiguous language of the [f]irst [c]ontract" provides that once Peninsula submitted invoices to Principle for Peninsula's work, Principle would pay Peninsula within thirty days of receiving the invoice. *Id.* And Peninsula contends that condition precedent was met: it performed work for Principle under the first contract and then "invoiced Principle in accordance with those contractual terms." *Id.*

Under Texas law, a breach of contract claim consists of "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)). "A condition precedent is 'an event that must happen or be performed before a right can accrue to enforce an obligation.' " *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir.

2018) (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998)). To make performance conditional, courts typically require the contract to contain conditional language like " 'if', 'provided that', 'on condition that', or some similar phrase of conditional language." *Id.* (quoting *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010)).

Both parties do not appear to dispute the validity of the first, written contract, nor do they dispute that Peninsula tendered performance. (D.E. 20; D.E. 29). Principle's motion to dismiss only raises argument that there was no *breach* of the contract—Principle does not make argument regarding the contract's essential elements, like offer or consent. *See* (D.E. 20, p. 15–16)). And neither party appears to dispute that Peninsula suffered damages. *See* (D.E. 29; D.E. 20, p. 15–16). As such, the Court need only determine whether Peninsula's complaint alleges facts sufficient to support an inference that the contract was breached. [5]

**\*4** Peninsula's first breach of contract claim passes Rule 12(b)(6) muster. Principle hangs its hat on its assertion that the contract does not require any payment to Peninsula until " 'final payment is received in full' by Principle from TTL." (D.E. 31, p. 3) (citation and emphasis omitted). Even assuming Principle's interpretation is correct, Peninsula has stated a claim for breach of contract. [6] The complaint notes that Peninsula received word from Principle's agent "that TTL has in fact paid [Principle] for all" of Peninsula's work. (D.E. 17, p. 4). Peninsula reasserts this point in its response, arguing that Principle has in fact been "paid in full by TTL." (D.E. 29, p. 8). In sum,

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 98 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

Peninsula alleges that: (1) it had a contract with Principle providing that once TTL fully paid Principle, Principle would pay Peninsula; and (2) TTL did pay Principle and Principle did not pay Peninsula. (D.E. 17, p. 4; D.E. 29, p. 8). Viewing these allegations "in the light most favorable to" Peninsula, Peninsula has sufficiently alleged that Principle breached the first contract. *See Allen*, 28 F.4th at 616. Accordingly, the Court **DENIES** Principle's motion as to this claim. (D.E. 20, p. 15-16).

### *ii. Promissory Estoppel as to the First Contract*

Principle argues that Peninsula fails to state a claim for promissory estoppel as to the first contract because the written contract covers the conduct at issue. (D.E. 20, p. 17–18). Peninsula's complaint alleges, "in the alternative," that Principle promised to pay Peninsula for its work, that Peninsula substantially relied on those promises, and finally, that Principle owes Peninsula $346,643.69. (D.E. 17, p. 9).

"The elements of a promissory-estoppel claim are (1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; and (4) injustice that can be avoided only by enforcement of the promise." *Alvarado v. PNC Bank Nat'l Ass'n*, 660 F. Supp. 3d 612, 619 (S.D. Tex. 2023) (Alvarez, J.) (quoting *George-Baunchand v. Wells Fargo Home Mortg., Inc.*, No. H-10-3828, 2011 **WL** 6250785, at *8 (S.D. Tex. Dec. 14, 2011) (Rosenthal, J.)). "But promissory estoppel 'is not applicable to a promise covered by a valid contract between the parties.' " *OPF Enters., LLC v. Evanston Ins. Co.*, No. 4:21-CV-01835, 2021 **WL** 4710948, at *6 (S.D. Tex. Oct. 7, 2021) (Ellison, J.) (quoting *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.)). "In other words, the doctrine of promissory estoppel may be invoked only where no contract on the subject matter exists." *Id.* (quoting *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 863 (S.D. Tex. 2016) (Smith, Mag. J.), *adopted*, 221 F. Supp. 3d 853, 855 (S.D. Tex. 2016) (Hughes, J.)); *see also Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990) (citations omitted) ("Under Texas law, a contract comprising the disputed promise precludes recovery under promissory estoppel.").The express contract doctrine "is an affirmative defense" to equitable claims under Texas law. *Shanghai Hailian Elec. Tools Co., Ltd. v. Home Depot Int'l, Inc.*, No. 3:16-CV-1451-D, 2016 **WL** 5815896, at *2 (N.D. Tex. Oct. 5, 2016) (Fitzwater, J.) (citations omitted). "Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Id.* (collecting cases) (internal citations omitted).

Here, Peninsula first argues that Principle both misrepresents the contract terms and contradicts its own performance under the contract—arguing that the contract provides for regular progress payments that both parties abided by. (D.E. 29, p. 10–11). Further, Peninsula notes that its "pleading identifies that it agreed to perform the Work for Principle

in exchange for payment, and that [Peninsula] did so." *Id.* at 11. Finally, Peninsula concedes that the express contract doctrine normally bars promissory estoppel claims when there is an express contract. *Id.* Peninsula attempts to distinguish the instant case by summarily arguing that "there is no agreement between the parties as to the existence of the express contract upon which the suit is brought," meaning a cause of action for promissory estoppel is permitted, *id.* at 11–12.

**\*5** The Court disagrees with Peninsula as to its last point. Peninsula alleges that it performed work for Principle under the first contract's terms and that it "invoiced Principle in accordance with those contractual terms." (D.E. 29, p. 8). Accordingly, Peninsula's promissory estoppel claim as to work performed under the first contract "is founded upon precisely the same promise as that which undergirds its breach of contract claim." *Elite Ctr. for Minimally Invasive Surgery*, 221 F. Supp. 3d at 863.

Peninsula summarily states that the parties disagree as to whether an express contract exists. (D.E. 29, p. 11). Peninsula fails to cite to anywhere in the record where it disputes the existence of the first, express contract. [7] Indeed, Peninsula's complaint suggests the opposite—as Principle's reply points out. *See* (D.E. 31, p. 6) ("The parties do dispute the existence of a contract as to [the second agreement], but <u>not</u> as to [the first contract]; both parties agree to the validity and existence of the Agreement."). Put another way, Peninsula's allegations demonstrate that an express, written contract covering the work that underlies Peninsula's promissory estoppel

claim "clearly appears on the face of the complaint." *See Shanghai Hailian Elec. Tools Co.*, 2016 **WL** 5815896, at \*2–3 (finding express contract did not bar quasi-contract claim because the allegations did not clearly demonstrate that the contract covered the work at issue); *see also* (D.E. 17, p. 4) (defining "the Work" as work conducted under the first contract); (D.E. 17, p. 9) (premising promissory estoppel claim on work conducted under the first contract)). Finally, at the most recent status conference in this matter, Peninsula proceeded with argument that the first contract exists and governs the work at issue. *See* March 6, **2024** Minute Entry.

In sum, the Court must look at Peninsula's complaint. Peninsula's complaint states that the parties agreed to an express contract— the first contract, according to Peninsula— and that Peninsula worked in accordance with that contract. (D.E. 17, p. 3–5). The complaint facially contains an express contract covering the work at issue in Peninsula's promissory estoppel claim. *See* (D.E. 17, p. 3–5, 8). [8] While Peninsula may plead claims in the alternative, FED. R. CIV. P. 8(d)(2), Peninsula cannot do so when "there is a contract that governs" the work at issue. *See Optiv Sec. Inc. v. Iheartmedia Mgmt. Servs., Inc.*, No. SA-20-CV-01273-ESC, 2021 **WL** 2156410, at \*8 (W.D. Tex. May 27, 2021) (Chestney, Mag. J.). "That is because parties should be bound by their express agreements." *Id.* (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)) (dismissing promissory estoppel and unjust enrichment claims at the 12(b)(6) stage).

**\*6** This means that Peninsula cannot state a claim for promissory estoppel for the first contract. *See Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*, No. 1:18-CV-00726, 2019 **WL** 3557349, at \*4 (W.D. Tex. Aug. 5, 2019) (Austin, Mag. J.) (dismissing promissory estoppel claim at the 12(b)(6) stage when the plaintiff failed to allege a promise distinct from the contract's promise), *adopted*, No. A-18-CV-00726, 2019 **WL** 6037271 (W.D. Tex. Sept. 17, 2019) (Yeakel, J.).; *Cotton v. Tex. Express Pipeline, LLC*, No. 6:16-CV-00453-RP-JCM, 2017 **WL** 3709093, at \*9 (W.D. Tex. July 19, 2017) (Manske, Mag. J.) (citing *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 722–23 (Tex. App.—Houston [1st Dist.] 2011, no pet.)) (dismissing promissory estoppel claim at the 12(b)(6) stage because a valid express contract governed the dispute), *adopted*, No. 6:16-CV-453-RP-JCM, 2018 **WL** 1419346 (W.D. Tex. Mar. 22, 2018) (Pitman, J.). As such, the Court **GRANTS** Principle's motion to dismiss as to this claim. (D.E. 20, p. 17–18).

### B. Second Agreement

#### i. Breach of Contract

Principle next argues that Peninsula cannot state a claim under the second agreement, because the second agreement did not give rise to a second contract. (D.E. 20, p. 16). According to Principle, none of the essential contract requirements arose: no offer, acceptance, mutual assent, delivery, or execution. *Id.* at 16–17. Principle frames the second agreement as "mere discussion of rates for [Peninsula]'s work" rather than a

promise to do anything. *Id.* at 16. In response, Peninsula argues that "[w]hat is relevant is [Peninsula]'s pleading and the facts alleged" there. (D.E. 29, p. 9). And those facts include that Principle proposed "an agreement and terms" to Peninsula; Peninsula accepted those terms; Peninsula performed according to those terms; and Peninsula incurred damages because of Principle's nonpayment. *Id.*[9] Given the necessary inferences that the Court must make at the motion to dismiss stage, *see Allen*, 28 F.4th at 616, Peninsula argues that its complaint "contains sufficient allegations to state a claim." (D.E. 29, p. 9). The Court agrees.

The Court first considers whether the second agreement gave rise to a contract. "The following elements are required for the formation of a valid and binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 567 (S.D. Tex. 2016) (Ronsenthal, J.) (quoting *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex.App.—Dallas 2011, no pet.)). Under Texas law, the Court determines the existence of these elements using an "objective standard." *See Fernandes v. Dillard's Inc.*, 997 F. Supp. 2d 607, 609 (S.D. Tex. 2014) (Atlas, J.) (citations omitted). The Court considers each element in turn.

#### a. Offer

Peninsula has sufficiently alleged that Principle made an offer. "To prove a valid offer, a party

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 101 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

must show that (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Cano v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 3d 779, 790 (W.D. Tex. 2019) (Rodriguez, J.) (citing *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied)).

 **\*7** Principle challenges whether its proposal was an offer. *See* (D.E. 20, p. 16).[10] Principle frames the second agreement as "a mere discussion of rates[,]" and argues that this discussion "[did] not reflect that [Principle] agreed or promised to do anything." (D.E. 20, p. 16).

However, Peninsula's complaint alleges that Lucas Pappas, an officer of Principle, "made a separate and new proposal for" Peninsula to do work at a specific rate. (D.E. 17, p. 5). Viewing this allegation through an "objective standard of what the parties said and did and not [based on] their subjective state of mind[,]" *DeClaire v. G & B Mcintosh Fam. Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.), an officer of Principle (the offeror), intending to come to an agreement, communicated terms for Peninsula to work at definite rates (the terms of the offer), and Peninsula (the offeree) understood that agreement as an offer for specific terms. *See Cano*, 425 F. Supp. at 790. As such, the Court finds that Peninsula sufficiently alleged that Principle made an offer.

b. Acceptance

Principle argues that the new agreement "does not reflect that any Defendant agreed ... to do anything." (D.E. 20, p. 16). But Peninsula alleges that it accepted the new terms. (D.E. 17, p. 5–6) (indicating that Peninsula "agreed to the reduced standby and holiday rates and accepted [the] proposal"). Again, the Court determines the presence of acceptance using an objective standard. *Jordan v. Bank of Am., N.A.*, No. 4:23-CV-01092, **2024 WL** 420903, at \*4 (S.D. Tex. Feb. 5, **2024**) (Ellison, J.). Under Texas law, a party may accept a contract through "acts, conduct, or acquiescence in the terms of the contract." *DeClaire*, 260 S.W.3d at 44 (collecting cases). Here, after Peninsula received the offer of the new rates, it "accepted" and began working. (D.E. 17, p. 5–6).

 **\*8** Accepting the complaint's allegations as true and making all reasonable inferences for Peninsula, *see Allen*, 28 F.4th at 616, Peninsula sufficiently alleges that it accepted Principle's offer for a second agreement, either by accepting the terms or by commencing performance in accordance with the terms. As such, this element is satisfied.

c. Meeting of the Minds

Principle argues that the second agreement contains no "mutual assent." (D.E. 20, p. 16–17). But as Peninsula points out, its complaint alleges that Principle and Peninsula mutually agreed to specific terms for "agreed upon rates." (D.E. 29, p. 9) Under Texas law, "[f]or an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms." *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 102 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

771 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885, 894 (Tex. 2014) (citation omitted).

Here, taking Peninsula's allegations as true, Peninsula and Principle discussed a new agreement to perform work for compensation —this reflects a meeting of the minds as to the subject matter (Peninsula performing work for Principle, *see* (D.E. 29, p. 9)) and the essential terms (billing at the holiday and standby rates, *see id.*). *See Tyco Valves*, 365 S.W.3d at 771. As such, this element is satisfied.

### d. Consent

Each party must consent to the contract terms. *Gallier*, 171 F. Supp. 3d at 567. Neither party appears to dispute the element of consent. *See* (D.E. 20; D.E. 29; D.E. 31). As such, the Court finds this element satisfied for purposes of resolving the instant motion to dismiss.

### e. Execution

Principle asserts that the second agreement "d[id] not show ... execution[.]" (D.E. 20, p. 16). Peninsula responds by arguing that once it accepted and began performing (i.e., by working and "remaining on standby, billing at the agreed upon rates, [and] invoicing Principle"), the contract became enforceable. *See* (D.E. 29, p. 9).

"The execution of a contract includes the performance of all acts necessary to render it complete as an instrument." *Tyco Valves*, 365 S.W.3d at 771 (citation omitted). Here,

the acts necessary to complete the contract as an instrument include (1) that the parties reached an agreement as to the terms of the contract and (2) at least one party began to perform under those terms. *See Saum v. City of Coll. Station*, No. 10-17-00408-CV, 2020 **WL** 7688033, at *6 (Tex. App.—Waco Dec. 22, 2020, pet. denied) (mem. op.) (noting that Texas law does not require a contract to be signed to be executed); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (noting performance is an essential element). The Court has already determined that Peninsula has alleged that the parties reached an agreement as to the contractual terms. *Supra* section III.B.i.c. Peninsula alleges that it performed the work "as instructed by" Principle (and the now-dismissed Defendants). (D.E. 17, p. 10). Given the inferences the Court must make at this stage in the proceedings, *see Allen*, 28 F.4th at 616, Peninsula sufficiently alleges that the second agreement shows execution of a contract.

In sum, the Court finds that Peninsula has sufficiently alleged that the second agreement gave rise to a contract. *See* (D.E. 17, p. 5–6). Because Peninsula has alleged a valid contract, the Court must now turn to the other breach of contract elements.

### f. Breach of Contract Elements

**\*9** "Under Texas law, the elements of a breach of contract claim are: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Jordan*, **2024 WL** 420903, at *4 (cleaned up). Peninsula

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 103 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

sufficiently alleges all four elements. *See* (D.E. 17, p. 5–6). The Court has already determined that Peninsula has sufficiently alleged the existence of a valid contract, satisfying the first element. *See supra* sections III.C.i–vii.

As to the second element, Peninsula alleges that it "commenced performance under" this new agreement, satisfying the second element. *See* (D.E. 17, p. 6); (D.E. 29, p. 9) (arguing Peninsula performed work under the agreed terms). As to the third and fourth elements, Peninsula alleges that Principle breached their second agreement by refusing to pay the balance for Peninsula's work, (D.E. 17, p. 6), and that Peninsula has suffered damages of at least "the value of the invoices and work" under this second agreement, *id.* at 10. In sum, Peninsula alleges that the second agreement constitutes a valid contract and that Principle breached that contract by refusing to pay in accordance with the parties' agreement. Accordingly, the Court **DENIES** Principle's motion to dismiss as to this claim. (D.E. 20, p. 16–17).

### ii. Promissory Estoppel

Principle argues that Peninsula fails to adequately plead "any" of the promissory estoppel elements as to the second agreement. (D.E. 20, p. 18) (emphasis omitted). Peninsula responds that its complaint alleges all elements of a promissory estoppel claim. (D.E. 29, p. 12).

The Court has already determined that Peninsula states a breach of contract claim as to the second agreement. *Supra* Section III.C. However, "[g]enerally, promissory estoppel is

a viable alternative to a claim for breach of contract." *Mann v. Robles*, No. 13-14-00190-CV, 2016 WL 1274690, at *4 (Tex. App.—Corpus Christi-Edinburg Mar. 31, 2016, pet denied) (mem. op.) (citation omitted). In other words, "[a] party can plead legal and equitable claims in the alternative," when—as is the case here—a "party disputes the existence of a contract governing the dispute." *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (Lynn, J.). Here, Principle disputes the existence of a contract governing the work at issue under the second agreement. *See* (D.E. 20, p. 18) (arguing that Peninsula fails to state a claim for breach of contract because the second agreement never gave rise to a legally binding contract). And Peninsula pled its promissory estoppel claim "in the alternative" to its breach of contract claim. (D.E. 17, p. 10). Further, while Peninsula could not *recover* at trial on both a breach of contract claim and a promissory estoppel claim, at this stage, Peninsula may proceed on alterative theories of liability. FED. R. CIV. P. 8(d)(2).

As the Court stated above, *supra* section III.B, the promissory estoppel elements are "(1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; and (4) injustice that can be avoided only by enforcement of the promise." *Alvarado*, 660 F. Supp. 3d at 619 (citation omitted). Peninsula's complaint alleges that Principle promised to pay if Peninsula worked from November 2022 to January 2023; that Peninsula then foreseeably and "reasonably and substantially relied on" this promise by continuing to work; and that it would be unjust

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 104 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

to not enforce such promise. (D.E. 17, p. 10–11).

**\*10**  In sum, Peninsula alleges that Principle's agent proposed a new arrangement and promised a specific rate for Peninsula to work. (D.E. 17, p. 5). Peninsula had been working for Principle for the previous several months and anticipated that it would continue working under this new arrangement. *See id.* at 5–6. Peninsula then allegedly relied on Principle's promise to pay a "reduced standby and holiday rate" to continue working. *See id.* at 5. Accepting the allegations as true and viewing them "in the light most favorable to" Peninsula, *see Allen*, 28 F.4th at 616, the Court finds that Peninsula sufficiently alleges a promissory estoppel claim as to the second agreement. Accordingly, the Court **DENIES** Principle's motion to dismiss as to this claim. (D.E. 20, p. 17).[11]

### C. Quantum Meruit

Principle argues that Peninsula's quantum meruit claim fails because (1) it is barred by the express, valid contract that already covers the work at issue and (2) Principle "did not have 'reasonable notice that' " Peninsula expected to be paid for its work. (D.E. 20, p. 18) (citations omitted). In response, Peninsula points out that (1) its quantum meruit theory is presented in the alternative, and no magic words are required to establish that fact; and (2) it would not have given "over $700,000.00 worth of equipment, labor, and manpower to Principle" without expecting to be paid for it. (D.E. 29, p. 13).

Texas law recognizes the "principle of recovery on quantum meruit [that] is founded on the rule that it is inequitable for a party to refuse to pay for benefits received or for work performed for him with his knowledge and consent by someone who is authorized to expect remuneration therefor." *Channel Source Inc. v. CTI Indus. Corp.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *3 (N.D. Tex. Oct. 26, 2015) (Solis, J.) (quoting *Camacho v. Sullivan Transfer Co.*, 577 S.W.2d 793, 794 (Tex. App.—Waco 1979, no writ)). "While a plaintiff may seek recovery under quantum meruit and breach of contract, a plaintiff may only recover under *one* claim." *Port Elevator-Brownsville, L.C. v. Ivonne Soto Vega*, No. B-98-23, 2008 WL 5435563, at *3 (S.D. Tex. Dec. 30, 2008) (Tagle, J.) (emphasis added) (citation omitted). And "quantum meruit applies where no express contract exists." *Id.* (citations omitted). In other words, "[i]f the parties reached an express agreement allocating payments, services, and risks—that is, a contract—then a court should not step in and impose its view of what would constitute an equitable arrangement." *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 436 (5th Cir. 2020).

**\*11**  However, "it is well-established [that] the Federal Rules of Civil Procedure allow a party to assert separate claims under alternative theories of liability." *Fulcrum Credit Partners LLC v. ChipMOS Techs. Inc.*, No. A-10-CA-060-SS, 2010 WL 11444280, at *8 (Sparks, J.) (citing FED. R. CIV. P. 8(d)(2)). And a plaintiff does not need to "include the magic words 'in the alternative' " to successfully plead an alternative theory. *Id.* (citation omitted).

To the extent Peninsula brings a quantum meruit claim as to actions arising under

the first, express contract, these claims are barred because "quantum meruit applies where no express contract exists." *Port Elevator-Brownsville, L.C.*, 2008 **WL** 5435563, at *3; *Cotton*, 2017 **WL** 3709093, at *9 (noting that when an "express contract governs" the parties' disagreement, plaintiff fails to state a quantum meruit claim under the 12(b)(6) standard); *Shanghai Hailian Elec. Tools Co.*, 2016 **WL** 5815896, at *2 (noting that if a defendant asserts the express contract doctrine as an affirmative defense to quantum meruit claim, and the express contract covers the dispute at issue, the quantum meruit claim is subject to 12(b)(6) dismissal). As such, the Court **GRANTS** Principle's motion to dismiss to the extent that it seeks to dismiss Peninsula's quantum meruit claim as to actions arising under the first, express contract. (D.E. 20, p. 18).

But to the extent Peninsula brings a quantum meruit claim as to actions arising under the second agreement—in the alternative to breach of contract—these claims pass Rule 12(b)(6) muster. *See* (D.E. 17, p. 11). As previously stated, plaintiffs can assert claims under alterative theories of liability. FED. R. CIV. P. 8(d)(2). And Peninsula alleges that Principle is refusing "to pay for benefits received [and] for work performed for [Principle] with [Principle's] knowledge and consent." *See Camacho*, 577 S.W.2d at 794; (D.E. 17, p. 5–6, 11) (alleging Peninsula worked for Principle for months under its agreement where Principle's agent proposed a specific rate at which Peninsula would work). While Principle argues that it "did not have 'reasonable notice that' " Peninsula expected to be paid for its work under the second agreement, (D.E. 20,

p. 18) (citation omitted), Peninsula's allegation that it agreed to work for Principle at a specified rate (the "reduced standby and holiday rate") is sufficient to state that Principle had reasonable notice that Peninsula expected payment for its work. *See* (D.E. 17, p. 6). As such, the Court **DENIES** Principle's motion to dismiss to the extent that it seeks to dismiss Peninsula's quantum meruit claim as to actions arising under the second agreement. *See* (D.E. 20, p. 18–19) [12]

### D. Sworn Account as to the Second Agreement

**\*12** Principle argues that Peninsula's claim under sworn account fails because Peninsula does not adequately plead whether the prices were in accordance with an agreement or were "reasonable and customary." (D.E. 20, p. 19) (citation omitted). In response, Peninsula first argues that it can plead this claim in the alternative to a breach of contract claim, and that it rendered work for Principle and that the agreed price for the work was usual and customary. *See* (D.E. 29, p. 14) [13]

In Texas, the elements of a sworn account claim are "(1) ... the rendering of personal services; (2) the prices charged are in accordance with the parties' agreement or, in the absence of an agreement, the prices are usual, customary and reasonable; and (3) the amount remains unpaid." *Nat'l Oilwell Varco, L.P. v. Elite Coil Tubing Sols., LLC*, No. H-13-0374, 2014 **WL** 12619323, at *3 (S.D. Tex. Oct. 17, 2014) (Atlas, J.) (citations omitted).

Here, only the second element appears to be at issue. *See* (D.E. 20, p. 19) (arguing

Peninsula fails to allege second element); *see also* (D.E. 17, p. 5–6) (alleging Peninsula rendered services for Principle and Principle has not paid Peninsula for that work). Principle appears to argue that the prices for the second agreement were not made in accordance with an agreement, which means that the prices would not be assessed under the "reasonable and customary" standard. *See* (D.E. 20, p. 19–20).

Principle is correct that Peninsula's complaint states that the prices for the second agreement "were reasonable and customary." *See* (D.E. 17, p. 11). But Peninsula's sworn account section also incorporates by reference every previous allegation "as though fully restated verbatim[,]" *id.*, and Peninsula's complaint previously states that the parties agreed to "a reduced standby and holiday rate" at which Peninsula would work, *see* (D.E. 17, p. 5). Accepting these allegations as true and construing them in the light most favorable to Peninsula, *see Allen*, 28 F.4th at 616, Peninsula has sufficiently alleged there was an agreement regarding prices and those prices were in accordance with that agreement—satisfying the second element for sworn account. As such, the Court **DENIES** Principle's motion to dismiss as to this claim. (D.E. 20, p. 19).

### E. Fraud

Peninsula's fraud claim is subject to a heightened pleading standard. *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Principle argues that Peninsula fails to state a claim under this heightened standard. (D.E. 20, p. 20–23). In the alternative, Principle argues

that the economic loss doctrine bars any fraud claims because the claims are based on a duty that arises out of the contract and because the loss is the subject of the contract. *Id.* at 23–24. In response, Peninsula argues that despite the heightened pleading standard, fraud claims do "not require absolute particularity" and that the heightened fraud pleading "standard is not a straightjacket." (D.E. 29, p. 15–16) (citation omitted). Peninsula also argues that the economic loss doctrine does not bar fraud and fraudulent inducement claims and does not apply when a party to a contract has an independent legal duty (here, the duty to avoid fraud). (D.E. 29, p. 21) (citations omitted). [14]

**\*13** Under Texas law, fraud "requires (1) a material misrepresentation; (2) that was false; (3) that the employer knew to be false when made or asserted without knowledge of its truth; (4) intended to be acted upon; (5) detrimentally relied upon; and [(6)] resulting in injury." *Gilbert v. Driven Brands Shared Servs., LLC*, No. 4:23-CV-01747, 2023 **WL 9316919, at \*6 (S.D. Tex. Dec. 11, 2023)** (Ho, Mag. J.) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)), *adopted*, No. 4:23-CV-01747, **2024 WL** 407497 (S.D. Tex. Feb. 2, **2024**) (Bennett, J.). However, the "mere failure to perform contractual obligations as promised does not constitute fraud but is instead breach of contract.... To be actionable as fraudulent inducement, a breach must be coupled with a showing that the promisor never intended to perform under the contract." *Kevin M. Ehringer Enters., Inc. v McData Servs. Corp.*, 646 F3d 321, 325 (5th Cir. 2011) (citations omitted). Such a representation "must be a representation

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 107 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

of a material fact." *Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983)* (citation omitted).

In the Fifth Cirucit, "[p]leading fraud with particularity ... requires 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Ascend Performance Materials Operations LLC, v. Mastec Power Corp.*, No. 4:22-CV-03932, 2024 WL 3497931, at *2 (S.D. Tex. July 22, 2024)* (Eskridge, J.) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Before turning to the elements of fraud, the Court considers whether the economic loss doctrine bars this claim. Principle cites *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (Lynn, J.) (adopting magistrate judge's recommendation, 880 F. Supp. 2d 747, 753–769 (N.D. Tex. 2012) (Ramirez, Mag. J.)), in support of its argument that a claim is barred by the economic loss doctrine if the claim arises from a breach of the contract or from "the subject of the contract itself." (D.E. 20, p. 23) (citing *Hurd*, 880 F. Supp. 2d at 763). But *Hurd* also notes "that the economic loss rule does not bar fraud and fraudulent inducement claims." *Hurd, 880 F. Supp. 2d at 763* (collecting cases). Further, Peninsula's fraud claim does not arise solely from Peninsula and Principle's first contract—as Peninsula's complaint states, *see* (D.E. 17, p. 13), Peninsula alleges Principle committed fraud in order to convince Peninsula to begin and to keep working under the second agreement, *see id.* (stating that Principle made its representation "with the intent that" Peninsula would later perform the work for

Principle). As such, Principle's argument that the economic loss doctrine bars Peninsula's fraud claims is inapposite, and the Court **declines** to dismiss Peninsula's fraud claims on those grounds. *See* (D.E. 20, p. 23–24).

Now, the Court turns to the fraud claim itself, considering each element in turn, viewing the allegations in the light most favorable to Peninsula, and making all reasonable inferences in Peninsula's favor. *See Allen*, 28 F.4th at 616.

### i. Principle made a material misrepresentation.

To be actionable, Peninsula must allege Principle made "a representation of a material fact" and not merely an opinion. *See Trenholm, 646 S.W.2d at 930*. To start, Peninsula's allegations state that Principle represented to Peninsula "that [Principle] had not received payment from TTL for all the [w]ork completed by [Peninsula] under the [f]irst [c]ontract." (D.E. 17, p. 12). Peninsula contends this is a *misrepresentation* because it alleges that Principle "had no intention of compensating" Peninsula for its work, even though TTL had paid Principle. *Id*; *see also id.* at 4 (alleging that "TTL has in fact paid ... Principle") This representation is more than a mere opinion —Peninsula alleges that Principle stated as a fact that TTL had not submitted final payment. Further, this representation was not ancillary; it was material enough that it induced Peninsula to continue working for at least two months. *See* (D.E. 17, p. 5–6) (alleging that Peninsula worked for approximately two and a half months after Principle's representation); (D.E.

### ii. The representation was false.

**\*14** Principle argues that its statement to Peninsula was "not materially false" because "Principle never was paid in full by TTL[.]" (D.E. 20, p. 22). Nevertheless, the Court accepts Peninsula's allegations as true. *See Allen,* 28 F.4th at 616. And those allegations say that TTL paid Principle. In support of the allegation that TTL paid Principle, Peninsula notes that Principle's agent Pappas "affirmed receipt of the payments from TTL by executing sworn Conditional Waiver of Release of Liens attesting to receipt of the payments and that subcontractors, such as [Peninsula], would be paid in full for their work." (D.E. 17, p. 13). It appears that Principle made this alleged representation sometime in the fall of 2022. *See id.* at 4–5. As such, this element is satisfied.

### iii. Principle knew the representation was false.

Peninsula alleges that Principle knew its representation was untrue because TTL had paid Principle; Peninsula notes that Principle's agent Pappas "affirmed receipt of the payments from TTL by executing sworn conditional waiver of release of liens attesting to receipt of the payments" and that those receipts meant "that subcontractors, such as [Peninsula], would be paid in full for their [w]ork." (D.E. 17, p. 13) (cleaned up); *see e.g.* (D.E. 29-4, p. 23) (signature of Lucas Pappas as agent of Principle

swearing that Principle received payment from TTL). At the same time, Peninsula alleges that Principle said that TTL had not paid Principle. *Id.* at 4. Because Peninsula alleges that Principle made this representation at a time during or after it allegedly received payment from TTL, Peninsula sufficiently alleges that Principle knew its representation that TTL had not paid was false. As such, this element is satisfied.

### iv. Principle made a representation with the intent that Peninsula would rely on it, and Peninsula reasonably and detrimentally relied on this representation.

Peninsula alleges that it detrimentally relied on Principle's representation: Principle allegedly misrepresented that TTL had not paid Principle to induce Peninsula to work under the second agreement. *See* (D.E. 17, p. 13) (stating that Principle made its representation "with the intent that [Peninsula] would rely upon [it] and act thereon and perform the [w]ork" and that Peninsula did rely on such statement). Peninsula must have reasonably relied on this representation to be actionable under Texas law. *See LeTourneau Techs. Drilling Sys., Inc. v. Nomac Drilling, LLC,* 676 F. Supp. 2d 534, 546 (S.D. Tex. 2009) (Lake, J.) (stating that reliance on an oral representation must be reasonable for fraud claim to be proper under Texas law).

Here, viewing the allegations in the light most favorable to Peninsula, *see Allen,* 28 F.4th at 616, the Court finds Peninsula has sufficiently alleged that its reliance was both reasonable and detrimental. Peninsula alleges that it "relied on [Principle]'s representation because

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 109 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

it believed ... Principle would compensate" Peninsula for Peninsula's work—which is why it came to an agreement with Principle —the second agreement, *see* Section III.B —to continue to work. (D.E. 17, p. 5–6, 13). Because Peninsula alleges that Principle gave Peninsula a reason it needed to enter into a new contract (that TTL had not yet paid Principle) and that Principle had previously paid Peninsula in the parties' course of dealing, *see* (D.E. 17, p. 4), the Court finds Peninsula has sufficiently alleged reasonable reliance. Additionally, because Peninsula alleges damages resulting from this reliance, *see* (D.E. 17, p. 6, 13), the Court finds Peninsula has sufficiently alleged detrimental reliance. As such, this element is satisfied.

### v. Peninsula was injured as a result.

Finally, Peninsula alleges that it spent significant resources and incurred expenses for its labor, equipment, and services and forewent other work opportunities as a result of entering into the second agreement. (D.E. 17, p. 13). The amount Principle allegedly owes Peninsula includes $738,506.96 worth of damages. *Id.* at 6. These injuries were a direct result of Peninsula's continuing to work for Principle (and forgoing other work opportunities). *See id.* at 4–6, 13. Accordingly, Plaintiff has sufficiently alleged it was injured.

### vi. In total, Peninsula sufficiently alleges fraud.

**\*15** In short, Peninsula alleges that Principle, through its agent, made a false representation

with the intent that Peninsula would rely upon it, and Peninsula ultimately relied upon the representation, resulting in Peninsula's injury. *See* (D.E. 17, p. 4, 5–6, 12–13). Indeed, Peninsula's chronology of alleged events supports the inference of fraud: Principle told Peninsula that TTL had not paid Principle at around the same time that TTL had in fact paid Principle, assuming the allegation's truth and holding all inferences in favor of Peninsula, *see Allen*, 28 F.4th at 616. *Cf. Gilbert*, 2023 **WL 9316919, at \*6** (finding fraud claim failed when plaintiff's pleadings were conclusory and "the chronology of events undermine[d]" plaintiff's theory of fraud). While Peninsula could have alleged in more detail how Principle was fraudulent, the Court finds that each of the fraud elements under Texas law are met.

Finally, in addition to alleging the elements of fraud, Peninsula also meets the Fifth Circuit's test: Peninsula alleges the time-frame (fall 2022), the place (occurring in the Corpus Christi, Texas area) [15], the contents (that TTL had not paid Principle), and the identity of the person making the alleged false statement (Pappas, an agent of Principle). *See Williams*, 112 F.3d at 177. This is sufficient at this early stage in the proceedings. *Allen*, 28 F.4th at 616. As such, the Court **DENIES** Principle's motion to dismiss as to this claim. (D.E. 20, p. 20–21).

### F. Fraud Claims against now-dismissed Defendants

Peninsula's complaint includes claims of fraud against the now-dismissed Pappas and Southern. (D.E. 17, p. 13–14). Principle moves to dismiss these claims. (D.E. 20, p. 20–24). Given that Southern and Pappas are no longer

defendants in this action, (D.E. 28), the Court **DENIES as moot** Principle's motion to dismiss as to these claims. (D.E. 20, p. 20–24).

## IV. Conclusion

For the reasons above, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss. (D.E. 20). Accordingly, the Court **ORDERS** the following:

- Peninsula has plausibly alleged a breach of contract claim as to the first contract. As such, Principle's motion to dismiss as to this claim is **DENIED.**

- Peninsula has not plausibly alleged a promissory estoppel claim as to the first contract. As such, Principle's motion to dismiss as to this claim is **GRANTED.**

- Peninsula has plausibly alleged a breach of contract claim as to the second agreement. As such, Principle's motion to dismiss as to this claim is **DENIED.**

- Peninsula has plausibly alleged a promissory estoppel claim as to the second agreement. As such, Principle's motion to dismiss as to this claim is **DENIED.**

- Peninsula has failed to plausibly allege a quantum meruit claim as to the first, express contract, but Peninsula has plausibly alleged a claim as to quantum meruit claim as to the second agreement. As such, Principle's motion to dismiss as to this claim is **GRANTED in part and DENIED in part**.

- Peninsula has plausibly alleged a claim as to sworn account as to the second agreement. As such, Principle's motion to dismiss as to this claim is **DENIED.**

- Peninsula has plausibly alleged a claim of fraud, which the Court construes as a fraudulent inducement claim. As such, Principle's motion to dismiss as to this claim is **DENIED.** Further, the Court **DENIES as moot** Principle's motion to dismiss Peninsula's fraud claims against Pappas and Southern.

- Principle's motion to dismiss with respect to personal jurisdiction and failure to state a claim as to Southern and Pappas, *see* (D.E. 20, p. 5–14), is **DENIED as moot.**

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2024 WL 5036616

---

## Footnotes

1    For clarity, in this Order, the Court refers to the first, written agreement between the parties as the "first contract" and the second agreement (that Peninsula alleges is a

contract) as the "second agreement." Since Principle has not moved to dismiss the first breach of contract claim on the grounds that it was not a contract, both parties appear to agree that the first agreement is a contract. However, given that Principle disputes whether the second agreement is a contract, the Court refers to it as the "second agreement."

2    Peninsula submitted four invoices (totaling $738,506.96) for this time (from November 2022–January 2023) for standby time and work performed payable on "Net 30 days" with a past due penalty of 1.5% interest each month until the invoice is paid in full. *Id.* at 6. Peninsula submitted these invoices under the parties' previous course of dealing and "arrangement." *Id.*

3    The motion to dismiss includes a Rule 12(b)(2) argument for lack of personal jurisdiction and Rule 12(b)(6) argument for failure to state a claim as to the now-dismissed Defendants Southern Road & Bridge, LLC ("Southern") and Pappas. (D.E. 20, p. 5–14). Given that Southern and Pappas are no longer defendants in this action, (D.E. 28), the Court finds those arguments moot and declines to address them. (D.E. 20, p. 5–14).

4    The Court applies Texas law in this diversity case. (D.E. 17, p. 1–2); *Am. Gen. Life Ins. Co. v. Vega*, No. H-11-1720, 2012 **WL** 13042660, at *4 (S.D. Tex. Dec. 12, 2012) (Gilmore, J.).

5    Principle attaches the first contract to its motion to dismiss. (D.E. 20-4). At the motion to dismiss stage, the Court examines "the pleadings and ... 'any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.' " *PHI Grp., Inc.*, 58 F.4th at 841 (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Given that this contract gives rise to Peninsula's first breach of contract claim and that Peninsula refers to the contract in its complaint, (D.E. 17, p. 3–5, 8–9), the Court considers the contract in ruling on the motion to dismiss. *See Wellness Walk In Tubs, LLC v. Scripps Media, Inc.*, 607 F. Supp. 3d 1167, 1171 n.2 (D. Colo. 2022) (Blackburn, J.) (citations omitted) ("This [contract] document, although not attached to the [a]mended [c]omplaint, is referenced therein and central to plaintiff's claims. It therefore is properly considered in resolving the motion to dismiss.").

6    At the most recent status conference in this matter, Peninsula noted the final payment issue is a fact dispute on which Peninsula needs to conduct discovery. *See* March 6, **2024** Minute Entry. The Court agrees that whether TTL did in fact issue a final payment is a dispute better reserved for the summary judgment stage. At the motion to dismiss stage, the Court must take Peninsula's allegations as true. *Allen*, 28 F.4th at 616.

7    In the alternative, the Court could also decline to consider this one-sentence argument for inadequate briefing, because "[c]ourts have consistently held that inadequate briefing results in a waiver of a party's arguments." *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2, 2018 **WL** 1370610, at *2 (N.D. Miss. Mar. 16, 2018) (Brown, J.) (quoting *TGIP, Inc. v. AT&T Corp.*, 512 F.Supp.2d 696, 712 (E.D. Tex. 2007) (Clark, J.)).

8    Indeed, Peninsula's complaint states that the parties "entered into a contract" that each party signed. (D.E. 17, p. 3). The parties agreed that Texas law would control the contract and that the parties would work in accordance with this contract. *See id.* at 3–4. This contract is an express contract, as "the contractual terms are stated by the parties[.]" *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) (citation omitted). This is in contrast to an implied contract, where a contract arises from the parties' conduct. *Id.* (citation omitted).

9    Peninsula confirmed at the most recent status conference in this matter that the second agreement was comprised of both verbal assertions (with Principle requesting that Peninsula remain on site at the standby rate) and later written confirmation via email. *See* March 6, **2024** Minute Entry.

10    In support of its argument, Principle cites to an email exchange between Lucas Pappas and Peninsula Marine that occurred on December 29, 2022. *See* (D.E. 20, p. 16) (citing (D.E. 20-5, p. 1)). In ruling on a motion to dismiss, the Court may consider documents attached to the motion to dismiss, if those document "are 'referred to in the plaintiff's complaint and are central to [the] claim.' " *Stoller Enterprises*, 2022 **WL** 1238547, at *1 (citations omitted). In reviewing the live complaint, the Court fails to find a December 29, 2022 conversation—indeed, the Court fails to find a conversation from December 2022. *See* (D.E. 17). To be sure, the complaint implicitly references that the parties may have communicated during this time, *see* (D.E. 17, p. 6 (indicating that from November 14, 2022 to January 16, 2023, the parties had a course of dealing)), but the Court declines to determine whether this specific conversation is both referred to in the complaint and central to Plaintiff's claims. *See* (D.E. 20-5, p. 1); *Stoller Enterprises*, 2022 **WL** 1238547, at *1. As such, the Court declines to consider this conversation in ruling on the motion to dismiss and focuses instead on the allegations in Plaintiff's live complaint. *See* (D.E. 17). Determining whether a fact issue about the formation of a second contract exists based on the possible December 29, 2022 conversation is a determination better suited for the summary judgment stage.

11    Whereas the Court has determined that Peninsula's complaint alleges that an express contract governs the conduct at issue for claims arising under the first contract, *supra* Section III.A.ii, the second agreement does not clearly give rise

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 113 of 336

Peninsula Marine, Inc. v. Principle Industrial Services, LLC, Not Reported in Fed. Supp....

to an express contract. The second agreement may ultimately turn out to be an implied, rather than express, contract. *See Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 400 (N.D. Tex. 2016) (Lindsay, J.) (noting that an implied contract arises "[w]hen the evidence consists of the conduct of the parties and their course of dealing with one another"), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018); *see also* (D.E. 17, p. 5–6) (alleging that Peninsula commenced performance by working under the second agreement's terms and the parties' "course of dealing"). At this juncture, the Court need not decide the unbriefed issue of whether the second agreement was an express or implied contract. Further, Principle disputes the existence of a contract arising from the second agreement, *see* (D.E. 20, p. 18), so Peninsula can properly plead its "equitable claim[ ] in the alternative[,]" *see Johnson*, 999 F. Supp. 2d at 929. Accordingly, although the express contract doctrine bars Peninsula's promissory estoppel claims on the first contract, the express contract doctrine does not bar Peninsula's promissory estoppel claims on the second agreement—at least, at the motion to dismiss stage.

12    Again, while Peninsula cannot recover at trial on both a breach of contract claim and a quantum meruit claim as to damages under the second agreement, at this stage, Peninsula may proceed on alterative theories of liability. *See* FED. R. CIV. P. 8(d)(2); *supra* Section III.D. n.6; *see also SCP Distribs., L.L.C. v. Tex. Pool Grp., L.L.C.*, No. H-22-4522, **2024 WL** 534617, at *6 n.40 (S.D. Tex. Feb. 9, **2024**) (Lake, J.) (holding that plaintiff was "entitled to summary judgment on the breach of contract claim" which precluded plaintiff's "recovery in quantum meruit"). The difference between Peninsula's quantum meruit claim under the first contract and its claim under the second agreement is that Peninsula's complaint clearly alleges that an express contract covers work under the first contract, whereas the parties disagree whether the second agreement ultimately formed a legally binding contract. As such, the first contract bars Peninsula's quasi-contract claims (like quantum meruit) as a matter of law, whereas Peninsula may proceed to summary judgment to prove either breach of contract or quasi-contract claims as to the second agreement.

13    Principle appears to argue that Peninsula cannot bring a claim for sworn account under the first contract. *See* (D.E. 20, p. 20). But Peninsula has clarified that it brings a claim for sworn account only under services provided under the second agreement —not the first. *See* (D.E. 29, p. 14). As such, Peninsula's complaint only brings a claim for sworn account under actions arising under the second agreement, so the Court declines to address any argument that Peninsula cannot bring a claim for sworn account under the first contract. *See* (D.E. 20, p. 20).

14    While Peninsula styles this claim as a 'fraud' claim, the Court construes this claim as a fraudulent inducement claim. *See W. Afr. Ventures Ltd. v. Fleming*, 634 F. Supp. 3d 391, 398 (S.D. Tex. 2022) (Rosenthal, C.J.) (quoting *Bohnsack v. Varco,*

*L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) ("Fraud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims."). Fraudulent inducement claims are "a 'species of common-law fraud' that" arise when a defendant makes a "false promise [that] 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.* (quoting *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)). Given that the alleged fraud at issue arises in the context of Principle inducing Peninsula into a second agreement, *see* (D.E. 29 p. 15) (arguing the fraud arose out of Principle's misrepresentation that TTL had not paid Principle to avoid paying Peninsula under the first contract); (D.E. 17, p. 13) (alleging Principle made representations to Peninsula so that Peninsula would begin work under the "standby and holiday rate[,]" i.e. the second agreement), the Court thus construes Peninsula's claim as a fraudulent inducement claim. Regardless, that does not alter the analysis because the essential elements remain the same: a material misrepresentation that was false, that the defendant intended the plaintiff to rely on; that the plaintiff did rely on; and that caused the plaintiff injury. *W. Afr. Ventures Ltd.*, 634 F. Supp. 3d at 398.

15    Peninsula's complaint notes that TTL employees (as well as Peninsula and Principle) worked out of Corpus Christi, Texas during the time when the allegations occurred. *See* (D.E. 17, p. 5).

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# CASE NO. 11

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 116 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

## Restatement (Second) of Torts § 46 (1965)

**Restatement of the Law - Torts** | September 2025 Update

**Restatement (Second) of Torts**

**Division One. Intentional Harms to Persons, Land, and Chattels**

**Chapter 2. Intentional Invasions of Interests in Personality**

**Topic 5. The Interest in Freedom from Emotional Distress**

---

§ 46 Outrageous Conduct Causing Severe Emotional Distress

Comment:

Reporter's Notes

Case Citations - by Jurisdiction

> **(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.**
> **(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress**
>> **(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or**
>> **(b) to any other person who is present at the time, if such distress results in bodily harm.**

**See Reporter's Notes.**

**Caveat:**

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 117 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress.

**Comment:**

*a*. This Section is concerned only with emotional distress which is inflicted intentionally or recklessly. As to the negligent infliction of emotional distress, see §§ 312, 313, 436, and 436A.

*b*. As indicated in Chapter 47, emotional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress. Because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone. It is only within recent years that the rule stated in this Section has been fully recognized as a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land, or the like. This Section may be regarded as an extension of the principle involved in the rules stated in §§ 21- 34 as to the tort of assault.

*c*. The law is still in a stage of development, and the ultimate limits of this tort are not yet determined. This Section states the extent of the liability thus far accepted generally by the courts. The Caveat is intended to leave fully open the possibility of further development of the law, and the recognition of other situations in which liability may be imposed.

*d. Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 47 Harvard Law Review

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 118 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

1033, 1053 (1936). It is only where there is a special relation between the parties, as stated in §
48, that there may be recovery for insults not amounting to extreme outrage.

---

**Illustrations:**

1. As a practical joke, A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken. B suffers severe emotional distress. A is subject to liability to B for her emotional distress. If it causes nervous shock and resulting illness, A is subject to liability to B for her illness.

2. A, the president of an association of rubbish collectors, summons B to a meeting of the association, and in the presence of an intimidating group of associates tells B that B has been collecting rubbish in territory which the association regards as exclusively allocated to one of its members. A demands that B pay over the proceeds of his rubbish collection, and tells B that if he does not do so the association will beat him up, destroy his truck, and put him out of business. B is badly frightened, and suffers severe emotional distress. A is subject to liability to B for his emotional distress, and if it results in illness, A is also subject to liability to B for his illness.

3. A is invited to a swimming party at an exclusive resort. B gives her a bathing suit which he knows will dissolve in water. It does dissolve while she is swimming, leaving her naked in the presence of men and women whom she has just met. A suffers extreme embarrassment, shame, and humiliation. B is subject to liability to A for her emotional distress.

4. A makes a telephone call but is unable to get his number. In the course of an altercation with the telephone operator, A calls her a God damned woman, a God damned liar, and says that if he were there he would break her God damned neck. B suffers severe emotional distress, broods over the incident, is unable to sleep, and is made ill. A's conduct, although insulting, is not so outrageous or extreme as to make A liable to B.

---

*e*. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 119 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

> **Illustrations:**
>
> 5. A, a private detective, calls on B and represents himself to be a police officer. He threatens to arrest B on a charge of espionage unless B surrenders letters of a third person which are in her possession. B suffers severe emotional distress and resulting illness. A is subject to liability to B for both.
>
> 6. A, the principal of a high school, summons B, a schoolgirl, to his office, and abruptly accuses her of immoral conduct with various men. A bullies B for an hour, and threatens her with prison and with public disgrace for herself and her parents unless she confesses. B suffers severe emotional distress, and resulting illness. A is subject to liability to B for both.
>
> 7. A, a creditor, seeking to collect a debt from B, sends B a series of letters in lurid envelopes bearing a picture of lightning about to strike, in which A repeatedly threatens suit without bringing it, reviles B as a deadbeat, a dishonest man, and a criminal, and threatens to garnish his wages, to bother his employer so much that B will be discharged, and to "tie B up tight as a drum" if he does not pay. B suffers severe emotional distress. A is subject to liability to B.
>
> 8. A, a creditor, seeking to collect a debt, calls on B and demands payment in a rude and insolent manner. When B says that he cannot pay, A calls B a deadbeat, and says that he will never trust B again. A's conduct, although insulting, is not so extreme or outrageous as to make A liable to B.

*f.* The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 120 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**Illustrations:**

9. A, an eccentric and mentally deficient old maid, has the delusion that a pot of gold is buried in her back yard, and is always digging for it. Knowing this, B buries a pot with other contents in her yard, and when A digs it up causes her to be escorted in triumph to the city hall, where the pot is opened under circumstances of public humiliation to A. A suffers severe emotional disturbance and resulting illness. B is subject to liability to A for both.

10. A knows that B, a Pennsylvania Dutch farmer, is extremely superstitious, and believes in witchcraft. In order to force B to sell A his farm, A goes through the ritual of putting a "hex" on the farm, causing B to believe that it is bewitched so that crops will not grow on it. B suffers severe emotional distress and resulting illness. A is subject to liability to B for both.

11. A, who knows that B is pregnant, intentionally shoots before the eyes of B a pet dog, to which A knows that B is greatly attached. B suffers severe emotional distress, which results in a miscarriage. A is subject to liability to B for the distress and for the miscarriage.

12. A is in a hospital suffering from a heart illness and under medical orders that he shall have complete rest and quiet. B enters A's sick room for the purpose of trying to settle an insurance claim. B's insistence and boisterous conduct cause severe emotional distress, and A suffers a heart attack. B is subject to liability to A if he knows of A's condition, but is not liable if he does not have such knowledge.

13. A is an otherwise normal girl who is a little overweight, and is quite sensitive about it. Knowing this, B tells A that she looks like a hippopotamus. This causes A to become embarrassed and angry. She broods over the incident, and is made ill. B is not liable to A.

*g.* The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. Apart from this, there may perhaps be situations in which the actor is privileged to resort to extreme and outrageous words, or even acts, in self-defense against the other, or under circumstances of extreme provocation which minimize or remove the element of outrage. Such cases have not arisen; but an analogy may be found in decisions under the actionable words statutes of Mississippi, Virginia, and West Virginia.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 121 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

> **Illustration:**
>
> 14. A and her children are destitute, ill, and unable to pay their rent. B, their landlord, calls on A and threatens to evict her if the rent is not paid. Although B's conduct is heartless, he has done no more than the law permits him to do, and he is not liable to A for her emotional distress.

*h. Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*i. Intention and recklessness.* The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.

> **Illustrations:**
>
> 15. During A's absence from her home, B attempts to commit suicide in A's kitchen by cutting his throat. B knows that A is substantially certain to return and find his body, and to suffer emotional distress. A finds B lying in her kitchen in a pool of gore, and suffers severe emotional distress. B is subject to liability to A.
>
> 16. The same facts as in Illustration 15, except that B does not know that A is substantially certain to find him, but does know that there is a high degree of probability that she will do so. B is subject to liability to A.

*j. Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious.

The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. See Comment *f*.

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

> **Illustrations:**
>
> 17. The same facts as Illustration 1, except that B does not believe A's statement, and is only sufficiently disturbed to telephone to the hospital to find out whether it could possibly be true. A is not liable to B.
>
> 18. As a practical joke, A dresses himself in woman's clothing in order to surprise and startle B. B, who has a pathological fear of men in women's clothing, is badly frightened, becomes hysterical, and suffers a shock which results in illness. A is not liable to B unless A knows of B's peculiar susceptibility.

*k. Bodily harm.* Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 123 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required.

> **Illustrations:**
>
> 19. A, a police officer, arrests B on a criminal charge. In order to extort a confession, A falsely tells B that her child has been injured in an accident and is dying in a hospital, and that she cannot be released to go to the hospital until she confesses. B suffers severe emotional distress but no physical consequences. A is subject to liability to B.
>
> 20. A organizes a mob, and brings it to B's door at night. A tells B that unless he leaves town within ten days the mob will return and lynch him. B suffers severe emotional distress, but no physical consequences. A is subject to liability to B.

*l. Conduct directed at a third person.* Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred. The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford. The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required.

Furthermore, the decided cases in which recovery has been allowed have been those in which the plaintiffs have been near relatives, or at least close associates, of the person attacked. The language of the cases is not, however, limited to such plaintiffs, and there appears to be no essential reason why a stranger who is asked for a match on the street should not recover when the man who asks for it is shot down before his eyes, at least where his emotional distress results in bodily harm.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 124 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**Illustrations:**

21. In the presence of A, a bystander, B quarrels violently with C, draws a pistol, and threatens to kill C. B knows that A is pregnant, and that it is highly probable that his conduct will cause severe emotional distress to A. A suffers severe emotional distress, which results in a miscarriage. B is subject to liability to A.

22. The same facts as in Illustration 21, except that A is concealed in an adjoining room, and B does not know of her presence. B is not liable to A.

**Reporter's Notes**

This Section was revised, and the Comments rewritten, in the 1948 Supplement to the Restatements. It has again been revised, and the Comments rewritten, to keep pace with the continued development of the law. As to this development, see Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033 (1936); Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich.L.Rev. 874 (1939); Eldredge, Modern Tort Problems, 71-102 (1941); Smith, Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 194 (1944); Wade, Tort Liability for Abusive and Insulting Language, 4 Vand.L.Rev. 63 (1950); Prosser, Insult and Outrage, 44 Cal.L.Rev. 40 (1956).

*Extreme and outrageous conduct:* Illustration 1 is based on Wilkinson v. Downton, 2 Q.B.D. 57 [1897]. See also Bielitski v. Obadisk, 15 Sask.L.R. 155, 61 Dom.L.Rep. 494, 23 A.L.R. 351 (1921); Savage v. Boies, 77 Ariz. 355, 272 P.2d 349 (1954). Cf. Great Atlantic & Pacific Tea Co. v. Roch, 160 Md. 189, 153 A. 22 (1931).

Illustration 2 is taken from State Rubbish Collectors Association v. Siliznoff, 38 Cal.2d 330, 240 P.2d 282 (1952).

Illustration 3: Compare Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344 (1961); Mitran v. Williamson, 21 Misc.2d 106, 197 N.Y.S.2d 689 (1960); Halio v. Lurie, 15 App.Div.2d 62, 222 N.Y.S.2d 759 (1961).

Illustration 4 is taken from Brooker v. Silverthorne, 111 S.C. 553, 99 S.E. 350, 5 A.L.R. 1283 (1919). Cf. Martin v. Lincoln Park West Corp., 219 F.2d 622 (7 Cir.1955); Ex parte Hammett, 259

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 125 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Ala. 240, 66 So.2d 600 (1953); Halliday v. Cienkowski, 333 Pa. 123, 3 A.2d 372 (1939); Flowers v. Price, 190 S.C. 392, 3 S.E.2d 38 (1939); Atkinson v. Bibb Mfg. Co., 50 Ga.App. 434, 178 S.E. 537 (1935); Kramer v. Ricksmeier, 159 Iowa 48, 139 N.W. 1091, 45 L.R.A.N.S. 928 (1913); Galvin v. Starin, 132 App.Div. 577, 116 N.Y.Supp. 919 (1909); Stavnezer v. Sage-Allen & Co., 146 Conn. 460, 152 A.2d 312 (1959); Slocum v. Food Fair Stores of Florida, 100 So.2d 396 (Fla.1958).

Illustration 5 is taken from Janvier v. Sweeney [1919] 2 K.B. 316 (C.A.).

Illustration 6 is taken from Johnson v. Sampson, 167 Minn. 203, 208 N.W. 814, 46 A.L.R. 772 (1926).

Illustration 7 is taken from La Salle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491 (1934) and Barnett v. Collection Service Co., 214 Iowa 1303, 242 N.W. 25 (1932). See also Kirby v. Jules Chain Stores Corp., 210 N.C. 808, 188 S.E. 625 (1936); Clark v. Associated Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62 (1939); Bowden v. Spiegel, Inc., 96 Cal.App.2d 793, 216 P.2d 571 (1950); Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64 (1954); Christensen v. Swedish Hospital, 59 Wash.2d 545, 368 P.2d 897 (1962); Moore v. Savage, 359 S.W.2d 95 (Tex.Civ.App.), affirmed per curiam, 362 S.W.2d 298 (Tex.1962); Quina v. Robert's, 16 So.2d 558 (La.App.1944); and cf. House v. Peth, 165 Ohio St. 35, 59 Ohio Ops. 60, 133 N.E.2d 340 (1956), privacy; Wiggins v. Moskins Credit Clothing Store, 137 F.Supp. 764 (E.D.S.C.1956), nuisance.

As to the similar bullying tactics of insurance adjusters, see Interstate Life & Accident Ins. Co. v. Brewer, 56 Ga.App. 599, 193 S.E. 458 (1937); National Life & Accident Insurance Co. v. Anderson, 187 Okl. 180, 102 P.2d 141 (1940); Pacific Mutual Life Insurance Co. v. Tetirick, 185 Okl. 37, 89 P.2d 774, 5 N.C.C.A.N.S. 544 (1938); Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935). Compare, as to forcing settlement of a claim, Curnutt v. Wolf, 244 Iowa 683, 57 N.W.2d 915 (1953).

For cases of a landlord's liability, see Wood v. Young, 20 Ky.L.Rep. 1931, 50 S.W. 541 (1899); Preiser v. Wielandt, 48 App.Div. 569, 62 N.Y.Supp. 890 (1900); Nordgren v. Lawrence, 74 Wash. 305, 133 P. 436 (1913); Duncan v. Donnell, 12 S.W.2d 811 (Tex.Civ.App.1929); Emden v. Vitz, 88 Cal.App.2d 313, 198 P.2d 696 (1948); Richardson v. Pridmore, 97 Cal.App.2d 124, 217 P.2d 113, 17 A.L.R.2d 929 (1950); Louisville & N.R. Co. v. Roberts, 207 Ky. 310, 269 S.W. 333 (1925); Stockwell v. Gee, 121 Okl. 207, 249 P. 389 (1926); Levine v. Tramwell, 41 S.W.2d 334 (Tex.Civ.App.1928), error refused.

Illustration 8 is based on Maze v. Employees' Loan Society, 217 Ala. 44, 114 So. 574 (1927). See also People's Finance & Thrift Co. v. Harwell, 183 Okl. 413, 82 P.2d 994, 4 N.C.C.A.N.S. 242 (1938).

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 126 of 336

Illustration 9 is taken from Nickerson v. Hodges (Raley v. Hodges), 146 La. 735, 84 So. 37, 9 A.L.R. 361 (1920). Compare, as to bullying a child, Delta Finance Co. v. Ganakas, 93 Ga.App. 297, 91 S.E.2d 383 (1956).

Illustration 11 is taken from Alabama Fuel & Iron Co. v. Baladoni, 15 Ala.App. 316, 73 So. 205 (1916). See also Richardson v. Pridmore, 97 Cal.App.2d 124, 217 P.2d 113, 17 A.L.R.2d 929 (1950); Vargas v. Ruggiero, 197 Cal.App.2d 709, 17 Cal.Rptr. 568 (1961). Compare Allen v. Camp, 14 Ala.App. 341, 70 So. 290 (1916), where there were no such circumstances of aggravation.

Illustration 12 is taken from Pacific Mutual Life Insurance Co. v. Tetirick, 185 Okl. 37, 89 P.2d 774, 5 N.C.C.A.N.S. 544 (1939). See also Clark v. Associated Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62 (1939); Interstate Life & Accident Co. v. Brewer, 56 Ga.App. 599, 193 S.E. 458 (1937); Patapsco Loan Co. v. Hobbs, 129 Md. 9, 98 A. 239 (1916); Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935); National Life & Accident Ins. Co. v. Anderson, 187 Okl. 180, 102 P.2d 141 (1940).

Where the defendant is ignorant of the plaintiff's peculiar susceptibility, and the conduct is not otherwise extreme and outrageous, there is no liability. Braun v. Craven, 175 Ill. 401, 51 N.E. 657, 42 L.R.A. 199 (1898); Carrigan v. Henderson, 192 Okl. 254, 135 P.2d 330 (1943); Haas v. Metz, 78 Ill.App. 46 (1898); Kramer v. Ricksmeier, 159 Iowa 48, 139 N.W. 1091, 45 L.R.A.N.S. 928 (1913).

Illustration 14 is taken from Smith v. Gowdy, 196 Ky. 281, 244 S.W. 678, 29 A.L.R. 1353 (1922). See also Stratton v. Posse Normal School of Gymnastics, 265 Mass. 223, 163 N.E. 905 (1928); People's Finance & Thrift Co. v. Harwell, 183 Okl. 413, 82 P.2d 994, 4 N.C.C.A.N.S. 242 (1938); Bechtel v. Combs, 70 Pa.Super. 503 (1918).

*Intention and recklessness:* Illustrations 15 and 16 are based on Blakeley v. Shortal's Estate, 236 Iowa 787, 20 N.W.2d 28 (1945). Compare Bielitski v. Obadisk, 15 Sask.L.R. 155, 61 Dom.L.Rep. 494, 23 A.L.R. 351 (1921); Price v. Yellow Pine Paper Mill Co., 240 S.W. 588 (Tex.Civ.App.1922); Boyle v. Chandler, 33 Del. 323, 138 A. 273 (1927); Lindh v. Great Northern R. Co., 99 Minn. 408, 109 N.W. 823, 7 L.R.A.N.S. 1018 (1906); Mahnke v. Moore, 197 Md. 61, 77 A.2d 923, 29 N.C.C.A.N.S. 237 (1951); Anderson v. Knox, 297 F.2d 702 (9 Cir.1961), certiorari denied, 370 U.S. 915, 8 L.Ed.2d 498, 82 S.Ct. 1555.

*Severe emotional distress:* As to Illustration 17, compare Taft v. Taft, 40 Vt. 229, 94 Am.Dec. 389 (1867).

Illustration 18 is taken from Nelson v. Crawford, 122 Mich. 466, 81 N.W. 335, 80 Am.St.Rep. 577 (1899). Cf. Oehler v. L. Bamberger & Co., 103 N.J.L. 703, 137 A. 425 (1927), affirming by an equal division, 4 N.J.Misc. 1003, 135 A. 71 (1926); March v. Cacioppo, 37 Ill.App.2d 235, 185 N.E.2d 397 (1962).

*Bodily harm:* Illustration 19 is based upon Savage v. Boies, 77 Ariz. 355, 272 P.2d 349 (1954).

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 127 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Illustration 20 is taken from Wilson v. Wilkins, 181 Ark. 137, 25 S.W.2d 428 (1930). Cf. Ruiz v. Bertolotti, 37 Misc.2d 1067, 236 N.Y.S.2d 854 (1962).

Other cases in which recovery has been allowed for emotional distress without physical consequences are Barnett v. Collection Service Co., 214 Iowa 1303, 242 N.W. 25 (1932); La Salle Extension University v. Fogarty, 126 Neb. 457, 253 N.W.2d 424, 91 A.L.R. 1491 (1934); Quina v. Roberts, 16 So.2d 558 (La.App.1944); State Rubbish Collectors Association v. Siliznoff, 38 Cal.2d 330, 240 P.2d 282 (1952); Curnett v. Wolf, 244 Iowa 683, 57 N.W.2d 915 (1953); Herman Saks & Sons v. Ivey, 26 Ala.App. 240, 157 So. 265 (1934); Delta Finance Co. v. Ganakas, 93 Ga.App. 297, 91 S.E.2d 383 (1956); Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344 (1961); Mitran v. Williamson, 21 Misc.2d 106, 197 N.Y.S.2d 689 (1960). Contra, Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64 (1954).

*Conduct directed at a third person:* Illustration 21 is taken from Rogers v. Williard, 144 Ark. 587, 223 S.W. 15, 11 A.L.R. 1115 (1920). See also Young v. Western & Atlantic Railroad, 39 Ga.App. 761, 148 S.E. 414 (1929); Lambert v. Brewster, 97 W.Va. 124, 125 S.E. 244 (1924); Hill v. Kimball, 76 Tex. 210, 13 S.W. 59, 7 L.R.A. 618 (1890); Duncan v. Donnell, 12 S.W.2d 811 (Tex.Civ.App.1928); Jeppsen v. Jensen, 47 Utah 536, 155 P. 429, L.R.A. 1916D 614 (1916); Purdy v. Woznesensky, 2 West. Week. Rep. (Sask.) 116 [1937]. A clear case of intent is Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157 (1961).

Illustration 22 is taken from Reed v. Ford, 129 Ky. 471, 112 S.W. 600, 19 L.R.A.N.S. 225 (1908). See also Goddard v. Watters, 14 Ga.App. 722, 82 S.E. 304, 7 N.C.C.A. 1 (1914); Phillips v. Dickerson, 85 Ill. 11, 28 Am.Rep. 607 (1877); McGee v. Vanover, 148 Ky. 737, 147 S.W. 742, Ann.Cas. 1913E 500 (1912); Ellsworth v. Massacar, 215 Mich. 511, 184 N.W. 408 (1921); Hutchinson v. Stern, 115 App.Div. 791, 101 N.Y.Supp. 145, appeal dismissed, 189 N.Y. 577, 82 N.E. 1128 (1906); Koontz v. Keller, 52 Ohio App. 265, 6 Ohio Ops. 334, 21 Ohio L.Abs. 544, 3 N.E.2d 694 (1936); Taylor v. Vallelunga, 171 Cal.App.2d 107, 339 P.2d 910 (1959).


## Case Citations - by Jurisdiction

—

U.S.

C.A.1,

C.A.1,

C.A.1

C.A.2,

C.A.2

C.A.3

C.A.4,

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 128 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

C.A.4

C.A.5,

C.A.5

C.A.6

C.A.6,

C.A.6

C.A.6,

C.A.6

C.A.6, Bkrtcy.App.

C.A.7,

C.A.7

C.A.8,

C.A.8

C.A.9

C.A.9, Bkrtcy.App.

C.A. 10,

C.A.10

C.A.11

C.A.11,

C.A.11

C.A.D.C.

Ct.Fed.Cl.

M.D.Ala.

N.D.Ala.

S.D.Ala.

D.Ariz.

E.D.Ark.

W.D.Ark.

C.D.Cal.

E.D.Cal.

E.D.Cal.Bkrtcy.Ct.

N.D.Cal.

S.D.Cal.

D.Colo.

D.Colo.Bkrtcy.Ct.

D.Conn.

D.Del.

D.D.C.

M.D.Fla.

N.D.Fla.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 129 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

S.D.Fla.

M.D.Ga.

N.D.Ga.

S.D.Ga.

D.Hawaii

D.Hawaii,

D.Hawaii

D.Idaho

D.Idaho Bkrtcy.Ct.

C.D.Ill.

N.D.Ill.

S.D.Ill.

N.D.Ind.

S.D.Ind.

N.D.Iowa,

N.D.Iowa

S.D.Iowa

S.D.Iowa

D.Kan.

E.D.Ky.

W.D.Ky.

E.D.La.

M.D.La.

W.D.La.

D.Me.

D.Md.

D.Mass.

E.D.Mich.

W.D.Mich.

W.D.Mich.Bkrtcy.Ct.

D.Minn.

N.D.Miss.

S.D.Miss.

E.D.Mo.

W.D.Mo.

D.Mont.

D.Neb.

D.Nev.

D.N.H.

D.N.J.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 130 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

D.N.M.
D.N.M.Bkrtcy.Ct.
E.D.N.Y.
E.D.N.Y.Bkrtcy.Ct.
N.D.N.Y.
S.D.N.Y.
S.D.N.Y.Bkrtcy.Ct.
W.D.N.Y.
W.D.N.Y.Bkrtcy.Ct.
E.D.N.C.
M.D.N.C.
W.D.N.C.
D.N.D.
N.D.Ohio,
N.D.Ohio
N.D.Ohio.
N.D.Ohio
N.D.Ohio,
N.D.Ohio
N.D.Ohio.Bkrtcy.Ct.
N.D.Ohio Bkrtcy.Ct.
S.D.Ohio,
S.D.Ohio
S.D.Ohio,
S.D.Ohio
N.D.Okl.
W.D.Okl.
D.Or.
E.D.Pa.
E.D.Pa.Bkrtcy.Ct.
M.D.Pa.
M.D.Pa.Bkrtcy.Ct.
W.D.Pa.
D.P.R.
D.R.I.
D.R.I.Bkrtcy.Ct.
D.S.C.
D.S.D.
E.D.Tenn.
E.D.Tenn.Bkrtcy.Ct.

M.D.Tenn.

W.D.Tenn.

E.D.Tex.

N.D.Tex.

S.D.Tex.

W.D.Tex.

D.Utah

D.Vt.

E.D.Va.

E.D.Va.Bkrtcy.Ct.

W.D.Va.

D.V.I.

E.D.Wash.

W.D.Wash.

N.D.W.Va.

S.D.W.Va.

W.D.Wis.

D.Wyo.

Ala.

Ala.App.

Ala.Civ.App.

Alaska

Ariz.

Ariz.App.

Ark.

Ark.App.

Cal.

Cal.App.

Colo.

Colo.App.

Conn.

Conn.App.

Conn.Super.

Del.

Del.Super.

D.C.App.

Fla.

Fla.App.

Ga.

Ga.App.

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 132 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Hawaii

Hawaii App.

Idaho,

Idaho

Idaho App.

Ill.

Ill.App.

Ind.

Ind.App.

Iowa,

Iowa

Iowa App.

Kan.

Kan.App.

Ky.

Ky.App.

La.

La.App.

Me.

Md.

Md.Spec.App.

Mass.

Mass.App.

Mich.

Mich.App.

Minn.

Minn.App.

Miss.

Miss.App.

Mo.

Mo.App.

Mont.

Neb.

Neb.App.

Nev.

N.H.

N.J.

N.J.Super.App.Div.

N.J.Super.

N.M.

N.M.App.

N.Y.

N.Y.Sup.Ct.App.Div.

N.Y.Sup.Ct.

N.Y.Ct.Cl.

N.Y.Dist.Ct.

N.Y.City Civ.Ct.

N.C.

N.C.App.

N.D.

Ohio

Ohio App.

OhioApp.

Ohio App.

Ohio Com.Pl.

Ohio Ct.Cl.

Okl.

Okl.App.

Or.

Or.App.

Pa.

Pa.Super.

Pa.Cmwlth.

R.I.

S.C.

S.C.App.

S.D.

Tenn.

Tenn.App.

Tex.

Tex.App.

Utah,

Utah

Utah App.

Utah.App.

Vt.

Va.

Va.App.

Wash.

Wash.App.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 134 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

W.Va.

W.Va.App.

Wis.

Wis.App.

Wyo.

## U.S.

**U.S.**2011. Coms. (d) and (j) quot. in case quot. in diss. op., illus. 1 cit. in diss. op. Father of marine killed in Iraq in the line of duty sued members of church who picketed near decedent's funeral with signs declaring their church's view that God hated the United States for its tolerance of homosexuality, particularly in its military, and that decedent had died in shame as a curse from God. The district court entered judgment on a multimillion-dollar jury verdict for plaintiff on his claims for intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy. The court of appeals reversed. This court affirmed, holding, as to the IIED claim, that defendants' speech was entitled to "special protection" under the First Amendment, and that protection could not be overcome by a finding that the picketing was outrageous. The dissent argued that when grave injury was intentionally inflicted by means of a malevolent and vicious verbal attack such as the one at issue in this case, the First Amendment should not be a bar to recovery. Snyder v. Phelps, 562 U.S. 443, 464, 465, 131 S.Ct. 1207, 1223, 179 L.Ed.2d 172.

**U.S.**2002. Subsec. (2)(a) quot. in ftn. Widow of a murdered Guatemalan citizen sued the former Secretary of State and other government officials, alleging that defendants intentionally concealed that her husband was being detained and tortured in Guatemala by Guatemalan military officers who were paid by the Central Intelligence Agency (CIA) and that this deception denied her access to a lawsuit that might have saved husband's life. District court dismissed plaintiff's claims, and court of appeals reversed in part. The Supreme Court reversed and remanded, holding, inter alia, that plaintiff failed to state a claim for denial of judicial access. The court noted that it was unclear whether plaintiff's allegations met either the "intent" or the "presence" requirements of the emotional-distress cause of action where CIA defendants did not intend husband's situation to become known to the public, but sought to conceal it. Christopher v. Harbury, 536 U.S. 403, 419, 122 S.Ct. 2179, 2189, 153 L.Ed.2d 413, on remand 44 Fed.Appx. 522 (Fed.Cir.2002).

**U.S.**1987. Cit. in ftn., subsec. (1) cit. in ftn., coms. (d) and (k) cit. in ftn. A railroad employee sued a railroad under the Federal Employer's Liability Act (FELA) for emotional distress caused by his fellow employees. The federal district court granted summary judgment for the railroad and the court of appeals reversed. Vacating and remanding in part, this court held that the Railway Labor Act did not deprive the railroad employee of his right to bring a FELA action for damages. The court recognized the doctrinal divergence in the area of recovering for intentional infliction of emotional distress, such as the different degrees of intent required to establish liability and the abandonment in most jurisdictions of the "impact rule," and concluded that the record had insufficient facts for this Court or the court of appeals to decide whether the employee's emotional injury claim would permit recovery under the FELA. Atchison, Topeka and Santa Fe Ry. Co. v.

Buell, 480 U.S. 557, 568-571, 107 S.Ct. 1410, 1416-1418, 94 L.Ed.2d 563, on remand 818 F.2d 868 (9th Cir.1987).

## C.A.1,

**C.A.1,** 2023. Com. (d) quot. in case quot. in sup. Pregnant resident of an apartment that was the subject of a search warrant filed claims for, among other things, intentional infliction of emotional distress (IIED) against police officers who executed the warrant, alleging that defendants caused her to go into labor prematurely and to suffer from post-traumatic stress disorder by entering unannounced and pointing their firearms at plaintiff during the search. The district court granted defendants' motion for summary judgment. This court affirmed, holding that plaintiff's IIED claim failed as a matter of law. The court explained that defendants' entry into plaintiff's home, even if conducted without knocking and with weapons raised, could not be classified as going beyond all possible bounds of decency, as required to sustain a claim for IIED under Restatement Second of Torts § 46, Comment *d*. Penate v. Sullivan, 73 F.4th 10, 23.

## C.A.1,

**C.A.1,** 2022. Com. (d) quot. in case quot. in sup.; coms. (e) and (f) quot. in sup. Male student sued university for intentional infliction of emotional distress and other claims in connection with its handling of a sexual-assault complaint filed against him by a female classmate. The district court granted summary judgment for university. This court reversed in part and remanded, holding that there were questions of fact as to whether university's actions were extreme and outrageous, as required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court pointed out that university's dean and vice president knew that student had been hospitalized for a recent suicide attempt but insisted on meeting with him hours after he was discharged to discuss new, facially dubious, and seemingly trivial allegations that the classmate had raised against him. Doe v. Brown University, 43 F.4th 195, 210, 211.

## C.A.1

**C.A.1,** 2010. Com. (j) quot. in case quot. in sup. As part of a § 1983 action filed by several residents against town and various police officers employed by town, two minor plaintiffs brought, inter alia, pendent state-law claims for intentional infliction of emotional distress (IIED) against police officer and police chief. The district court entered judgment on jury verdicts for plaintiffs on their IIED claims. This court vacated the judgments as to those claims and directed entry of judgment for defendants, holding that the minors' fear of going to court, fear of the police, nightmares, and loss of sleep, after one minor's arrest and after the filing of an application for a complaint against the other minor, did not constitute severe emotional distress for purposes of this claim under Massachusetts law, i.e., the kind of distress that no reasonable man could be expected to endure. Kennedy v. Town of Billerica, 617 F.3d 520, 530, 531.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 136 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.1,** 2009. Com. (i) cit. in sup. Former prisoners and estates of two deceased prisoners sued the United States under the Federal Tort Claims Act after their state-court murder convictions were vacated based on the discovery that the FBI had suppressed reliable intelligence undercutting a witness's account of the murder. After a bench trial, the district court found for plaintiffs. Affirming as to plaintiffs' claim for intention infliction of emotional distress, this court held, inter alia, that, while a finding of extreme and outrageous conduct under Massachusetts law could be grounded either on actual knowledge or on a defendant's deliberate disregard of a substantial probability that his actions would produce severe emotional distress, the district court's finding that the FBI had actual knowledge that plaintiffs were not involved in the murder was, in any event, unassailable. Limone v. U.S., 579 F.3d 79, 95.

**C.A.1,** 2008. Cit. in sup., cit. in case cit. in sup., com. (d) quot. in sup. Former employee who was terminated for violating company rules sued former employer for intentional infliction of emotional distress (IIED), inter alia, alleging that defendant had wrongfully accused him of using company facilities to ship drugs, subjected him to a security interview, and had conducted an inadequate investigation of the charges against him. After the jury returned a verdict awarding plaintiff damages, the district court ordered a remittitur of the IIED award. This court vacated the jury verdict on the IIED claim, holding that the claim failed because defendant's actions upon which plaintiff based his IIED claim were insufficient to support a finding of extreme and outrageous conduct. Soto-Lebron v. Federal Express Corp., 538 F.3d 45, 57, 58.

**C.A.1,** 2005. Cit. in case quot. in disc., com. (d) quot. in sup., com. (g) quot. in case quot. in sup. Woman whose 23-year adulterous relationship broke up sued former male lover for, in part, intentional infliction of emotional distress. Trial court granted defendant's motion for summary judgment. Affirming, this court held, inter alia, that plaintiff failed to establish a claim for intentional infliction of emotional distress; merely breaking up an extramarital affair did not constitute outrageous conduct as required for such claim. Norton v. McOsker, 407 F.3d 501, 509-511.

**C.A.1,** 2002. Cit. in sup., com. (d) quot. in sup. Former archery counselor at a summer camp sued camp director for intentional infliction of emotional distress, inter alia, alleging that defendant falsely stated to an assistant counselor that he had received a complaint regarding plaintiff through state of New Hampshire concerning inappropriate contact with boys, as well as two complaints from camp parents. District court dismissed plaintiff's complaint. This court affirmed in part, holding, inter alia, that plaintiff did not state a claim for intentional infliction of emotional distress; while defendant's statement could be considered offensive, it was not so outrageous or extreme as to go beyond all bounds of decency. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 510-511.

**C.A.1,** 2002. Quot. in case quot. in disc., com. (d) quot. in case quot. in disc. Objecting to his portrayal in a book that focused on toxic-tort litigation over contaminated well water, a tannery owner and his wife sued the author and his publisher for, inter alia, defamation and intentional infliction of emotional distress. District court granted defendants partial summary judgment,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 137 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

holding that New Hampshire law did not recognize emotional-distress claim where the factual predicate sounded in defamation. This court affirmed, holding, inter alia, that the book's statements that plaintiff did not give truthful testimony during the litigation and that plaintiff experienced episodes of depression were not extreme and outrageous. Riley v. Harr, 292 F.3d 282, 299.

**C.A.1,** 1997. Com. (g) quot. in sup. A truck driver sued his employer after he was fired for refusing to participate in a drug-testing procedure, alleging negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The jury returned a verdict for plaintiff, but the federal district court granted defendant's motion for judgment as a matter of law. This court affirmed, holding that the resolution of each of plaintiff's state law claims required an examination of the terms of the parties' collective-bargaining agreement, and, as a result, the claims were preempted under § 301 of the Labor Management Relations Act. If defendant was within its rights to require plaintiff to take a drug test at the designated site and to terminate him when he refused to do so, a claim for intentional infliction of emotional distress could not lie. Resolution of this issue necessitated examination of the collective-bargaining agreement. Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 27, certiorari denied 523 U.S. 1123, 118 S.Ct. 1806, 140 L.Ed.2d 945 (1998).

**C.A.1,** 1996. Adopted in case cit. in sup., com. (d) quot. in case quot. in sup. City worker who refused to continue a work assignment on a boat at a city pond due to his fear of capsizing and who was subsequently terminated sued the city for negligent or intentional infliction of emotional distress, inter alia. Affirming in part the district court's grant of directed verdicts for defendant, this court held, in part, that, despite the fact that plaintiff was discharged only several days prior to the expiration of his probationary period, the evidence presented was insufficient to warrant a finding that defendant's actions in terminating plaintiff rose to the level of extreme and outrageous conduct necessary to support plaintiff's claim. Marques v. Fitzgerald, 99 F.3d 1, 7.

**C.A.1,** 1995. Cit. in headnote, cit. and quot. in sup. Cashier at an Army Post Exchange Store was questioned for violating the store's policy prohibiting employees from transporting merchandise through the front door and was later terminated; she brought an action under the Federal Tort Claims Act for intentional infliction of emotional distress. On remand, the district court granted defendant's motion to dismiss. Affirming, this court held that plaintiff, who alleged that she was questioned for 45 minutes, was shown a videotape supposedly taken at the store where she worked, was told that if she did not cooperate "all of this could be taken to the F.B.I.," and signed a statement after the interview, failed to state a claim for intentional infliction of emotional distress, since there was no allegation that the questioning was abusive, extreme, or outrageously intimidating and the questioning was a necessary incident of employment. Therefore, the action was barred by the exclusivity provision of Puerto Rico's workers' compensation act. Santiago-Ramirez v. Secretary of Defense, 62 F.3d 445, 446, 448.

**C.A.1,** 1993. Cit. in disc., com. (d) cit. in ftn. Oil tanker engineer whose employment was terminated when employer adopted a new policy barring employees who had ever participated in an alcohol rehabilitation program from holding certain designated jobs sued employer in contract

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 138 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

and in tort. The district court entered judgment for plaintiff on his breach of contract claim but refused to submit plaintiff's punitive damages claim to the jury, inter alia. Affirming in part, this court stated that even if maritime law permitted a limited role for punitive damages in a contract setting when the breaching party acted with the state of mind that accompanied an intentional tort and even if the court accepted plaintiff's argument that the standard for punitive damages under maritime tort law was less demanding than the standard for intentional infliction of emotional distress, the court nevertheless declined to hold that punitive damages could be awarded for breach of contract under the circumstances of this case in which the jury specifically rejected plaintiff's accompanying intentional tort claims. Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1283, 1284, cert. denied ___ U.S. ___, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993).

**C.A.1,** 1993. Com. (h) cit. in ftn. Former police officer who was placed under surveillance by insurer in connection with his receipt of disability benefits under an insurance policy sued insurer for intentional infliction of emotional distress, inter alia. Affirming the district court's entry of a directed judgment as a matter of law for defendant, this court held that since defendant's behavior amounted to not much more than an insurance company's efforts to determine the activities of a claimant whose receipt of benefits was conditioned on his total disability and since investigations of this sort were commonplace and to be expected where disability claims were involved, defendant's surveillance of plaintiff was not extreme or outrageous or utterly intolerable in a civilized society and thus did not violate the tort standard for plaintiff's claim. Thorpe v. Mutual of Omaha Ins. Co., 984 F.2d 541, 545.

**C.A.1,** 1991. Cit. in disc. com. (d) cit. in sup. An insured misrepresented material facts regarding his medical history and employment when he applied for a health insurance policy. After learning that the insured had misrepresented his employment, the insurer switched the insured's policy with a downgraded policy, and delayed benefit payments to induce the insured to sign a new contract agreeing to the switch. The insured sued the insurer, claiming intentional infliction of emotional distress, inter alia. The district court entered judgment for plaintiff, awarding compensatory and punitive damages. Defendant argued that its conduct, although intentional, was not sufficiently extreme or outrageous, and that plaintiff's emotional distress was not accompanied by significant physical ills that a rational juror could have found satisfied the elements of the tort. Affirming, this court held that defendant's conduct was sufficiently extreme and outrageous, and that two migraine headaches suffered by the insured demonstrated physical injury sufficient to prevent a directed verdict. Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 380, 381.

**C.A.1,** 1991. Cit. in ftn., quot. in case cit. in sup., coms. (h) and (j) quot. in disc. and cit. in case cit. in disc. A worker who claimed to have been exposed to excessive radiation in his job as foreman for an independent contractor at a nuclear power plant sued the power plant in state court for intentional infliction of emotional distress, inter alia. The case was removed to federal district court, which granted the defendant's motion for summary judgment. Affirming, this court held that there was no evidence of willful and wanton misconduct by the defendant, the defendant's delay in determining the problem with the plaintiff's contradictory dosimeter readings was not extreme

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 139 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

and outrageous behavior, and there was no causal link between the defendant's conduct and the plaintiff's depression. Caputo v. Boston Edison Co., 924 F.2d 11, 13-15.

**C.A.1,** 1991. Com. (d) quot. in case quot. in disc. The plaintiff was mistakenly identified and arrested as an escaped felon, suffering minor physical injuries during the arrest. He was released after a 30-minute detention when the police officers discovered their mistake. Two years later, he sued the arresting police officers and the city for intentional infliction of emotional distress, inter alia. The district court entered summary judgment for the defendants. Affirming, this court held that, since the officers' conduct in effecting the intended arrest was objectively reasonable in the circumstances, the claim must fail. Dean v. City of Worcester, 924 F.2d 364, 369.

**C.A.1,** 1989. Coms. (d) and (j) quot. in case quot. in disc., com. (i) cit. in case quot. in disc. After hitchhikers falsely accused a driver who picked them up of armed robbery, the driver was arrested in a neighboring town by the police, who verbally and physically abused him and returned him to the city where the incident occurred. The driver sued, among others, the city police lieutenant who charged him, alleging intentional infliction of emotional distress, inter alia. At the close of the evidence, the district court directed a verdict for the defendant on this claim. Affirming, this court held that the plaintiff's testimony that the defendant failed to advise him of the charges against him, failed to give him the Miranda warnings, refused the plaintiff's request for hospital care, and ordered him to remove all his clothing did not provide evidence of the extreme and outrageous conduct necessary to sustain the plaintiff's claim. Kinan v. City of Brockton, 876 F.2d 1029, 1036, 1037.

**C.A.1,** 1989. Quot. and cit. in sup., com. (d) quot. in case quot. in disc., com. (g) and illus. 14 cit. in ftn., illus. 13 quot. in ftn. An overweight nursing student who was harassed about her weight and was pressured by school administrators to sign a contract to attend Weight Watchers and lose two pounds a week voluntarily left the school and sued it for intentional infliction of emotional distress, inter alia. The district court entered a directed verdict for the defendant on that claim. Affirming, this court held that the defendant's conduct was unprofessional but was not so far removed from the bounds of civilization as to meet the necessary standards of extreme and outrageous behavior necessary for the tort of intentional infliction of emotional distress. Russell v. Salve Regina College, 890 F.2d 484, 487, 488, judgment reversed 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190, on remand 938 F.2d 315 (1st Cir.1991).

**C.A.1,** 1988. Cit. in sup., coms. cit. in sup., coms. (d) and (h) quot. in sup. A newspaper story included a picture of four elementary school girls who protested the principal's decision to segregate the sexes during recess periods. When a sexually explicit magazine republished the photograph and referred to them as "amazons," the girls and their parents sued it for false light portrayal and intentional infliction of emotional distress. The trial court dismissed the complaint. Affirming, this court stated that defamation and false light claims had much in common and that the threshold determination of whether the story implied that the girls had consented to the publication was for the court. It was also for the court to determine whether the defendant's conduct might be regarded as so extreme and outrageous as to permit recovery. The court reasoned that even if the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 140 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

publication had caused severe emotional distress, there was no liability because the defendant's conduct could not be regarded as atrocious and utterly intolerable in a civilized community. Fudge v. Penthouse Intern., Ltd., 840 F.2d 1012, 1021, cert. denied 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

**C.A.1,** 1987. Com. (d) quot. in case quot. in disc. An employee sued his former employer for intentional infliction of mental distress after he was fired from his job. The trial court found for the employee. Reversing, this court held that the employer's conduct was not sufficiently extreme and outrageous to support a claim for intentional infliction of mental distress where a report the employer sent to the Division of Employment Security, stating that the employee had been fired for willful misconduct, delayed but did not prevent an award of unemployment benefits to the plaintiff. Brown v. Freedman Baking Co., Inc., 810 F.2d 6, 10.

**C.A.1,** 1987. Com. (d) cit. in disc. An arrestee sued the arresting officers and a private individual, asserting various civil rights and pendent tort claims, including intentional infliction of emotional distress as a result of his unlawful commitment to a mental institution. The trial court entered judgment for the plaintiff and awarded compensatory and exemplary damages. This court affirmed, holding, inter alia, that the arrestee could recover damages for intentional infliction of emotional distress, reasoning that the defendants had every reason to know that wrenching psychic harm was a likely result of arresting and imprisoning an innocent man on the eve of his daughter's wedding, and committing him, though sane, to a mental institution; the defendants' conduct was clearly outrageous and it was the direct cause of the plaintiff's acute emotional distress. Wagenmann v. Adams, 829 F.2d 196, 214.

**C.A.1,** 1978. Cit. in disc. A former pantryman on a vessel brought an action in negligence against the vessel owner. The jury awarded the pantryman a $300,000 judgment on his claim. The district court entered judgment n.o.v. in favor of the vessel owner, and the pantryman appealed. The appellate court vacated the judgment and remanded the case to the district court for reconsideration of defendant's motion for a new trial. The court held that evidence of negligence of the captain who directed his anger at the pantryman, threatened and insulted him, and threw a spoon at him, which incident allegedly resulted in the pantryman's mental breakdown, was for the jury, and the case should not have been taken from it. In ruling on the motion for a judgment n.o.v., the court could not substitute its views for those of the jury. The court stated that a defendant is liable not only for the emotional consequences flowing from the injury itself, but also for those flowing from the conduct that causes the injury, and that the relevant conduct in this case included not only the throwing of the spoon, but also the captain's manner and manifestations at the time he threw it. The expert testimony of plaintiff's examining physician could be understood as stating a causal connection between plaintiff's mental collapse and the fear and shock resulting from having an angry captain throw a spoon at him. Viewing the evidence in plaintiff's favor, the court found sufficient evidence of some connection between the relevant conduct and the purported psychosis to support the verdict. The court held further that under the circumstances of this case, it could not say that either granting or denying a new trial on the ground that the verdict was contrary to the

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 141 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

weight of the evidence would be an abuse of discretion, and that the district court should have a further opportunity to pass on the matter. Borras v. Sea-Land Service, Inc., 586 F.2d 881, 885.

## C.A.2,

**C.A.2,** 2019. Subsec. (1) quot. in sup., adopted in case cit. in sup.; com. (f) cit. and quot. in sup., cit. in cases cit. in ftn.; com. (*j*) quot. in disc., cit. in cases cit. in ftn.; coms. (g) and (h) quot. in sup. Parents brought, among other things, a claim for intentional infliction of emotional distress (IIED) against news network and journalists, alleging that defendants engaged in a deliberate and malicious campaign of harassment during their journalistic investigation into the murder of plaintiffs' son. The district court granted defendants' motion to dismiss. This court vacated and remanded, holding that plaintiffs stated a claim for IIED. The court explained that defendants knowingly published a false article about the son's death, exploited plaintiffs' trust by falsely representing to them that their investigator was independent and using the investigator to fabricate false information, and knew plaintiffs' emotional vulnerability to such conduct, which constituted extreme and outrageous behavior sufficient for an IIED claim under Restatement Second of Torts § 46. The court noted that, under § 46, Comment *g*, defendants' conduct was not privileged, because they did not insist on their legal rights in a permissible way. Rich v. Fox News Network, LLC, 939 F.3d 112, 122-126.

## C.A.2

**C.A.2,** 2014. Subsec. (1) adopted in case cit. in ftn., com. (d) quot. in sup. and in ftn. Employee brought an action for intentional infliction of emotional distress (IIED), inter alia, against employer, among others, alleging that he suffered from a hostile and abusive work environment where he was subjected to racial insults, intimidation, and degradation over a period of more than three years. The district court entered judgment on a jury verdict for plaintiff. The court of appeals affirmed as to liability for IIED. Affirming that part of the judgment, this court held that the jury did not err in finding defendant vicariously liable for IIED committed by plaintiff's supervisor. The court remarked that, unlike other intentional torts—such as those of battery and false imprisonment as described in Restatement Second of Torts §§ 18 and 35—IIED did not proscribe specific conduct, but instead imposed liability based on after-the-fact judgments about the actor's behavior. Here, supervisor was liable for IIED as set out in Restatement Second of Torts § 46, because his behavior—which included being a personal witness to the torment to which plaintiff was subjected, blocking others' efforts to investigate serious threats, and, at times, seeming to encourage further harassment—was extreme and outrageous conduct that so transcended the bounds of decency as to be regarded as atrocious and intolerable in a civilized society. Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 157, 158.

**C.A.2,** 2011. Cit. and quot. in disc., subsec. (1) quot. in disc. Former employee of railroad brought, inter alia, a claim for intentional infliction of emotional distress (IIED) under the Federal Employers' Liability Act (FELA) against railroad and two co-employees, alleging that, while

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 142 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

employed by railroad, he suffered severe emotional distress after defendant co-employee posted plaintiff's sick-leave form on a bulletin board at railroad's facility disclosing that plaintiff was HIV positive. The district court dismissed plaintiff's complaint. Affirming, this court held that, while the common law no longer imposed a zone-of-danger test on IIED claims, that test still applied to such claims brought under FELA; thus, in this case, plaintiff's claim failed because he did not assert that he sustained a physical impact as a result of defendants' alleged conduct or was placed in immediate risk of physical harm by that conduct, as required by the zone-of-danger test. Goodrich v. Long Island Rail Road Co., 654 F.3d 190, 196, 198.

C.A.2, 2003. Subsec. (1) cit. in disc. After enduring physical and verbal harassment from her supervisor, railroad employee sued employer for liability under Federal Employers' Liability Act, negligent failure to provide safe workplace, negligent supervision, and intentional infliction of emotional distress. District court granted railroad summary judgment. This court affirmed, holding, inter alia, that the four alleged incidents of work-related yelling and cursing that could be imputed to railroad under doctrine of respondeat superior were insufficient to make out a case for intentional infliction of emotional distress, because the incidents did not involve extreme and outrageous conduct. Higgins v. Metro-North R. Co., 318 F.3d 422, 426.

C.A.2, 1999. Com. (b) cit. in conc. and diss. op. Wife of former Ghanaian trade representative to the United States brought a claim for intentional infliction of emotional distress against Ghana, after defendant summoned plaintiff's husband home, where he allegedly was detained and tortured. The district court dismissed for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), and this court affirmed in part. The concurring and dissenting opinion argued that plaintiff's emotional-distress claim could not be characterized as a claim for misrepresentation or any other noncommercial tort with respect to which a foreign state could still claim immunity under the FSIA. Cabiri v. Government of Republic of Ghana, 165 F.3d 193, 203, cert. denied 527 U.S. 1022, 119 S.Ct. 2368, 144 L.Ed.2d 772 (1999).

C.A.2, 1999. Cit. in headnote, com. (d) quot. and cit. in disc., com. (h) cit. in disc. Postal worker whose disability benefits were terminated sued local branch of the Office of Workers' Compensation Programs for violations of the Federal Tort Claims Act, alleging, inter alia, intentional infliction of emotional distress. The district court dismissed the complaint. Affirming, this court held, in part, that the conduct complained of, which included ignoring dispositive medical evidence and pressuring plaintiff to return to work, did not rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress. Stuto v. Fleishman, 164 F.3d 820, 822, 827.

C.A.2, 1996. Com. (d) quot. in case quot. in disc. Arrestee brought § 1983 and pendent state-law claims for false arrest, malicious prosecution, battery, and intentional infliction of emotional distress against city and police officers. The district court entered judgment on a jury verdict awarding plaintiff $300,700. Reversing and remanding unless plaintiff accepted remittitur of $150,000, this court held, inter alia, that police officer's actions, as determined by the jury, in striking plaintiff in the mouth and wrongfully initiating an assault charge based on the false claim

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 143 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

that plaintiff bit officer could be regarded as sufficiently outrageous to satisfy the conduct element of the emotional-distress tort; the aggregate award, however, was excessive and was highly likely to have been artificially inflated by duplication of awards among causes of action and among defendants. Bender v. City of New York, 78 F.3d 787, 791.

**C.A.2,** 1996. Cit. in disc. Pipe fitter who was exposed to asbestos while working in steam tunnels for railroad sued railroad for negligent infliction of emotional distress under the Federal Employers' Liability Act. Vacating the district court's grant of defendant's motion for judgment as a matter of law and remanding, this court held, inter alia, that plaintiff's testimony about his anger and fear of dying satisfied his burden of introducing evidence of his particular fears with some specificity, including, as a threshold matter, evidence of his particular fear of developing cancerous conditions. The court said that emotional distress must be severe only when a plaintiff had not suffered a physical impact, in which case the severity of the emotional distress served to guarantee the genuineness of the claim; here, however, a reasonable jury could find that plaintiff had suffered a physical impact with asbestos and thus was entitled to damages flowing from the impact, including his reasonable emotional distress. Buckley v. Metro-North Commuter R.R., 79 F.3d 1337, 1346, reversed 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997).

**C.A.2,** 1988. Subsec. (1) cit. in disc. A sergeant with the police department's absence control unit allegedly was transferred as a result of a conspiracy by the police union, the department, and other officers to blame him for the suicide of a police officer. The sergeant sued the union and the union president, alleging federal civil rights violations and state tort law claims for intentional infliction of emotional distress. The district court entered judgment on a jury verdict awarding the plaintiff substantial damages for intentional infliction of emotional distress and prima facie tort. Affirming in part and reversing in part, this court held that the jury charge as to intentional infliction of emotional distress, requiring extreme and outrageous conduct, conformed in all respects to New York's strict requirements for that tort and that reasonable jurors could have determined that the plaintiff prevailed on each required element to establish the commission of the tort. Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., 850 F.2d 876, 883, cert. denied 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

**C.A.2,** 1986. Cit. in sup. A retired laborer was denied a pension when his union misinformed him that he was not eligible. In a suit against the union, the jury awarded the laborer lost pension benefits and a large verdict for emotional distress because of the union's fraudulent concealment of his pension rights. However, the trial court set aside the award for emotional distress. Affirming in part, vacating, and remanding in part, this court upheld the award of pension benefits on the ground that, regardless of its relationship to the plaintiff, the defendant had a duty to properly inform the plaintiff about his rights. The court also upheld the setting aside of the large emotional distress award, but it stated that the plaintiff should have received a new trial on that issue based on the principle of allowing only compensatory damages for extreme and outrageous conduct. Baskin v. Hawley, 807 F.2d 1120, 1133.

**C.A.2,** 1986. Cit. in sup. An attorney, who was a landlord, sued a tenant's father on a prima facie tort theory after a heated phone conversation between the parties regarding the plaintiff's refusal to return a security deposit. The trial court dismissed the action on the grounds that it was frivolous and brought in bad faith to harass the defendant. Affirming, this court stated that the facts revealed a total absence of intent or purpose to do harm to the plaintiff or evidence that making the telephone call to the plaintiff was without any purpose of legitimate communication or with an intent to cause injury. The court reasoned that trivial intrusions were an inevitable product of modern existence and only when the conduct complained of was malicious or so outrageous in character as to exceed the bounds of decency would the law recognize it as an actionable tort. Fox v. Boucher, 794 F.2d 34, 38.

**C.A.2,** 1985. Subsec. (1) cit. in disc. A bank employee sued her employer for employment discrimination, intentional infliction of emotional distress, and constructive discharge as a result of an incident in which the employee underwent a polygraph test as part of an investigation of an in-bank theft. The trial court dismissed the constructive discharge claim but awarded damages on the discrimination and emotional distress claims. This court affirmed the denial of the constructive discharge claim but reversed the rest of the judgment, holding that there was no discrimination because the evidence presented at trial plainly established that there was good cause for investigating the employee. The court held that there was no intentional infliction of emotional distress since the employer's conduct was not "outrageous in character" or "extreme in degree." The court also noted that the conduct must be intentionally directed at the plaintiff and lack any reasonable justification. Martin v. Citibank, N.A., 762 F.2d 212, 220.

**C.A.2,** 1983. Cit. but not fol. and subsec. (1) quot. but not fol. Parents sued under a New York wrongful death statute to recover pecuniary loss, property damage, and compensation for emotional distress suffered due to the murder of their daughter. Although the parents did not witness the attack by the defendant, they found their daughter barely alive the next day. The trial court granted damages based on the theory of reckless infliction of emotional distress. On appeal, the court discussed the Restatement formulation allowing recovery for emotional distress inflicted recklessly as well as intentionally, but found no authority for this formulation in the state's highest court. Even if New York adopted the Restatement formulation, plaintiff's recovery would be limited to pecuniary loss prescribed by the relevant wrongful death statute. Reversed, remanded with instructions to dismiss the action to recover for emotional distress. Garland v. Herrin, 724 F.2d 16, 18.

## C.A.3

**C.A.3,** 2010. Subsec. (1) quot. in case quot. in ftn. Student brought a § 1983 suit against public university and others, alleging that university's student code of conduct violated the First Amendment. After a bench trial, the district court entered judgment in favor of defendants. Reversing in part, this court held, among other things, that a provision in the code prohibiting conduct that caused emotional distress was an unconstitutional infringement on students' First

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 145 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Amendment right to free speech. The court reasoned that "emotional distress" was driven by the subjective experience of the individual, and that the extreme and outrageous conduct necessary to assert a claim for intentional infliction of emotional distress did not bear any clear relationship to free speech; not all extreme and outrageous conduct involving speech was necessarily unprotected by the First Amendment. McCauley v. University of the Virgin Islands, 618 F.3d 232, 251.

**C.A.3,** 2005. Com. (d) quot. in disc. School nurse filed civil-rights action against school officials, claiming that they violated her rights by harassing her and giving her an unsatisfactory rating in retaliation for her advocacy on behalf of disabled students and her reports to state authorities regarding school's failure to follow various state requirements. The district court granted defendants' motions for summary judgment. This court affirmed in part, holding, inter alia, that, although plaintiff's work environment was unpleasant and stressful, defendants' actions toward her were not outrageous enough to satisfy Pennsylvania's definition of intentional infliction of emotional distress, particularly since plaintiff was never given degrading work and she consistently received pay raises. McGreevy v. Stroup, 413 F.3d 359, 371.

**C.A.3,** 2004. Quot. in sup., coms. (i) and (j) quot. in case cit. in sup. After being severely injured and psychologically traumatized from an accident at a jobsite, lineman collected workers' compensation, and sued employer for intentional infliction of emotional distress. District court entered judgment for lineman. Reversing with instructions, this court held, inter alia, that lineman failed to prove that, as a result of employer's intentional, extreme, and outrageous conduct, he suffered from emotional distress, excluded by the Workers' Compensation Act, that was so severe that no reasonable man could be expected to endure it. Eddy v. Virgin Islands Water and Power Authority, 369 F.3d 227, 231-232, 235.

**C.A.3,** 2001. Cit. in case cit. in disc., cit. in case cit. but dist., subsec. (1) and com. (d) quot. in sup., subsec. (2) quot. in ftn., com. (i) quot. in ftn. in sup. Dog owner brought suit for, in part, intentional infliction of emotional distress against police officer who shot her pet dog. The district court granted defendant summary judgment. Reversing in part and remanding, this court held, inter alia, that plaintiff's allegations that defendant, without any justification whatsoever, shot her dog five times in front of her, deliberately ignoring the fact that she was screaming in protest and pleading with him not to shoot, were sufficient to state a claim for intentional infliction of emotional distress. The court said that a reasonable trier of fact could conclude that defendant acted intentionally to cause plaintiff severe emotional distress. Brown v. Muhlenberg Tp., 269 F.3d 205, 217-219, rehearing and rehearing en banc denied 273 F.3d 390 (3d Cir.2001).

**C.A.3,** 2000. Quot. in case quot. in disc., cit. in ftn. Employee with multiple sclerosis sued former employer for violations of the Americans with Disabilities Act and intentional infliction of emotional distress. The district court entered summary judgment for defendant. Affirming, this court held, in part, that plaintiff had failed to establish that any of the challenged conduct was motivated by a discriminatory or retaliatory intent, and that allegations that plaintiff's co-workers had behaved in an extreme and outrageous manner by acting to worsen his condition were not supported by the evidence. Shaner v. Synthes, 204 F.3d 494, 507, 508.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 146 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.3,** 1998. Cit. in disc., cit. in case quot. in disc., com. (d) quot. in disc. Administrator of estate of individual who died as a result of inhaling fumes from a butane canister brought strict liability failure-to-warn action against distributor of butane can found next to decedent's body. Plaintiff also asserted a claim for intentional infliction of emotional distress. Defendant filed third-party complaint against manufacturer of butane, and defendants moved for summary judgment. The district court granted the motion. Affirming in part, reversing in part, and remanding, this court held that material factual issues existed as to the adequacy of the warnings printed on the butane can; that plaintiff was entitled to raise the rebuttable presumption that decedent would have heeded adequate warnings of the dangers of inhaling butane; and that a jury could determine whether the heeding presumption was rebutted by the fact that decedent's mother had warned him that butane was dangerous; however, defendants' conduct was not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. Pavlik v. Lane Limited/Tobacco Exporters Intern., 135 F.3d 876, 890.

**C.A.3,** 1996. Cit. in disc. HIV-positive employee who claimed he was discharged because of his medical condition sued former employer for, inter alia, violations of the Americans With Disabilities Act, invasion of privacy, and intentional infliction of emotional distress. The district court granted employer's motion for summary judgment. Affirming, this court held that employee was judicially estopped from asserting that he was qualified to perform his essential job functions where he had already secured state and Social Security benefits based on his representation that he was permanently and completely disabled; employer's inquiry as to employee's HIV status did not constitute an intrusion upon his seclusion; employer did not publicize that employee was HIV-positive when it told one person of that fact; and the discharge was not so outrageous as to be considered utterly intolerable in a civilized society. McNemar v. Disney Store, Inc., 91 F.3d 610, 623, cert. denied 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997).

**C.A.3,** 1996. Cit. in case cit. in sup. and cit. generally in headnote, coms. (d) and (f) quot. in sup. An insurance salesperson sued her former employer and former supervisor for intentional infliction of emotional distress, alleging that the supervisor instructed his sales managers to verbally attack plaintiff so as to intimidate plaintiff and force her to resign. New Jersey federal district court granted defendants summary judgment. This court reversed and remanded, holding that defendants' conduct was sufficiently outrageous, because the supervisor essentially set out to put plaintiff under unnecessary stress to force her out of the company, all the while knowing that her physician had stated specifically that her condition required her to avoid such stress. Subbe-Hirt v. Baccigalupi, 94 F.3d 111, 112, 114, 115.

**C.A.3,** 1995. Cit. in headnote and disc., quot. in ftn., com. (d) quot. in case quot. in disc. Former employees sued employer in Pennsylvania state court for breach of contract, fraud, RICO violations, and intentional infliction of emotional distress. After removal to federal court, employees moved to withdraw the RICO claims and remand to state court. District court granted employees' motion. This court denied employer's petition for a writ of mandamus to direct the federal district court judge to rescind his order. The court held that the contract, fraud, and

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 147 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

emotional-distress claims asserted substantive rights independent of the collective-bargaining agreement. Employees' allegations that they suffered severe mental distress did not implicate any analysis of terms or rights created by the collective-bargaining agreement, since the state law analysis would only focus on employer's conduct while inducing employees to enter into a guarantee agreement and on the employees' response. Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 219, 232.

**C.A.3,** 1994. Cit. in case quot. in disc. Former employee brought a § 1983 claim against former employer for violation of his civil rights, arising from his discharge for suspected drug use. On remand, the district court entered judgment awarding plaintiff emotional-distress damages. Affirming, this court held, inter alia, that expert medical evidence was not required to prove emotional distress in § 1983 cases. The court rejected defendant's argument that a § 1983 case in which damages for emotional distress were claimed must be analogized to a common-law action for intentional infliction of emotional distress, which, under Pennsylvania law, required expert medical confirmation that plaintiff actually suffered the claimed distress, noting that this case more closely resembled a defamation case. Bolden v. SEPTA, 21 F.3d 29, 35.

**C.A.3,** 1993. Cit. in ftn., com. (j) cit. in disc. Railroad employee whose friend and co-worker died of a heart attack brought on by extreme heat and humidity while they repaired a stretch of track sued the railroad under the Federal Employers' Liability Act for negligent infliction of emotional distress. Reversing the district court's granting of summary judgment for defendant and remanding, this court held that the totality of the circumstances, including plaintiff's 40-pound weight loss and institutionalization for medical care, provided sufficient indicia of the genuineness of plaintiff's emotional injury to survive threshold requirements for a trial on the merits and plaintiff presented genuine issues of material fact as to whether there was a breach of duty, injury, and causation. Gottshall v. Consolidated Rail Corp., 988 F.2d 355, 363, 370, cert. granted ___ U.S. ___, 114 S.Ct. 299, 126 L.Ed.2d 247 (1993), judgment reversed ___ U.S. ___, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

**C.A.3,** 1990. Subsec. (1) and com. (d) cit. in disc. Four railroad employees sued their employer, alleging that its policies and practices in eliminating manpower and increasing their responsibilities required them to work in an environment that was unreasonably stressful, as a result of which they suffered various illnesses, injuries, and disabilities. The district court granted the defendant's motion for summary judgment on the grounds that the plaintiffs did not make a case for intentional infliction of emotional distress, because the conduct alleged did not meet the test of outrageous behavior, and that their claim for negligent infliction of emotional distress failed to meet the requirements of such a claim. This court granted the defendant's motion to dismiss the plaintiffs' appeal because it was untimely filed. The court said that it was not an appropriate case for it to exercise its authorization to accept an untimely appeal under the unique-circumstances doctrine. Kraus v. Consolidated Rail Corp., 899 F.2d 1360, 1361.

**C.A.3,** 1990. Cit. in disc. and in ftn., com. (d) and illus. 2 quot. in ftn. The principal of a construction company sued a subcontractor for intentional interference with existing and

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 148 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

prospective contractual relations and intentional infliction of emotional distress, inter alia, arguing that the defendant filed, without probable cause, a petition for involuntary bankruptcy against the plaintiff's construction company because of a dispute between the parties over payments allegedly due to the defendant, as a result of which the plaintiff suffered financial injuries. The district court dismissed the complaint and entered judgment for the defendant. Reversing and remanding in part, this court held that the plaintiff stated a claim for intentional infliction of emotional distress, even though it was speculative whether Pennsylvania law recognized the tort. The court said that the extortionate threats made by the defendant constituted outrageous behavior. Silver v. Mendel, 894 F.2d 598, 606, certiorari denied 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990).

**C.A.3,** 1989. Cit. in case quot. in disc., subsec. (1) quot. in disc. and cit. generally in disc. A female university student brought, inter alia, a civil rights action against a university and one of its professors, alleging sexual harassment by the professor. Her complaint also asserted a state claim against the professor for intentional infliction of emotional distress. The district court granted the university and professor summary judgment on the ground that the plaintiff's right to be free of unwanted sexual advances did not rise to the level of a constitutional right or federal substantive due process right. The circuit court affirmed on different grounds, holding that the student had no cause of action, because neither defendant committed any actionable wrong within the two-year statute of limitations period preceding the filing of the complaint. The emotional distress claim was dismissed on the same procedural ground. The court also noted that the professor's alleged acts of staring at the plaintiff in a menacing manner on two occasions at a public restaurant were not so outrageous as to constitute intentional infliction of emotional distress. Bougher v. University of Pittsburgh, 882 F.2d 74, 80.

**C.A.3,** 1989. Cit. in disc., cit. in case quot. in disc., quot. in ftn., com. (d) quot. in case quot. in disc. and cit. in case cit. in disc. A police lieutenant sued a township, police chief, and township supervisor for intentional infliction of emotional distress, inter alia, alleging that the police chief and township supervisor took numerous steps to harass the plaintiff and make his job difficult. The district court entered judgment on a jury verdict for the plaintiff. Reversing and remanding, this court held that the defendants' conduct of forwarding charges against the plaintiff to the district attorney, showing disparaging reports about the plaintiff in public, and changing his duties and depriving him of privileges did not constitute the extreme and outrageous conduct necessary for the tort of intentional infliction of emotional distress. Clark v. Township of Falls, 890 F.2d 611, 622, 623.

**C.A.3,** 1989. Quot. in ftn., cit. in case quot. in disc., cit. in disc., cit. in case cit. in disc., cit. in case quot. in ftn., cit. in case cit. in ftn. A former tenant sued his former landlord and its employee, alleging intentional infliction of emotional distress, inter alia, stemming from his eviction from an apartment complex. The jury awarded the tenant $25,000 on his emotional distress claim. This court affirmed the district court's entry of judgment on the jury's verdict, concluding that absent a clear statement from the Pennsylvania Supreme Court, it would continue to predict that Pennsylvania would impose liability for intentional infliction of emotional distress. It also opined that Pennsylvania would limit the scope of liability by requiring competent medical evidence of

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 149 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

causation and severity. The court held that the landlord's conduct was sufficiently outrageous to present the case to the jury, in that he had the door removed from the tenant's apartment, told a police officer that the tenant was a trespasser, publicly announced that the tenant was a pimp, and threw his belongings into the street. The plaintiff also put forward medical testimony that these events contributed to a severe set of depressive symptoms. Williams v. Guzzardi, 875 F.2d 46, 50, 51.

**C.A.3,** 1988. Com. (d) quot. in case quot. in ftn. in sup., com. (h) cit. in case cit. in sup. and quot. in ftn. Upon returning to work after triple bypass surgery, an employee was dismissed, allegedly because the employer wished to avoid medical benefit payments. He sued the employer for interference with the attainment of employee benefits and intentional infliction of emotional distress. The district court directed a verdict for the employer on the emotional distress claim and entered judgment on a verdict for the plaintiff on the interference with the attainment of employee benefits claim and ruled that the employee was not entitled to a jury trial. This court affirmed the emotional distress ruling, holding that the conduct was insufficiently outrageous, but remanded the interference with the attainment of employment benefits ruling, holding that a jury trial may be available under the Employee Retirement Income Security Act. The court said that an improper motive for dismissal, without more, could not provide a basis of recovery for emotional distress. Cox v. Keystone Carbon Co., 861 F.2d 390, 395, appeal after remand 894 F.2d 647 (3d Cir.1990), cert. denied 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).

**C.A.3,** 1988. Subsec. (1) quot. in disc., com. (d) cit. in case quot. in sup. A county detective sued the county prosecutor for violation of his First Amendment rights, wrongful retaliation, and intentional infliction of emotional distress, alleging that various disciplinary actions were taken against him because he criticized the prosecutor's reorganization plan for the department. The district court granted the prosecutor's motion for summary judgment on the ground that the detective's expressions were not on a matter of public concern and hence were outside the ambit of First Amendment protection. This court reversed as to the First Amendment and wrongful retaliation claims but affirmed as to the intentional infliction of emotional distress claim, holding that the detective had not alleged behavior that rose to the level of outrageousness necessary for the tort. Zamboni v. Stamler, 847 F.2d 73, 80, cert. denied 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988).

**C.A.3,** 1987. Cit. in case quot. in ftn., quot. in part in disc.; subsec. (2)(a) quot. but dist.; com. (d) quot. in case quot. in disc., cit. in ftn.; com. (e) cit. in disc.; com. (l) cit. but dist. Relatives of deceased workers sued an asbestos manufacturer for damages, alleging that the manufacturer had exposed the relatives to asbestos dust through the workers' clothing or tools, and that they suffered severe emotional distress as a result of their fears of contracting asbestos-related diseases. The district court granted judgment for the manufacturer. This court affirmed, stating that the manufacturer's conduct was not sufficiently outrageous or reckless to sustain a claim for intentional infliction of emotional distress in the absence of evidence that the manufacturer knew that its products posed a danger to those indirectly exposed through contact with a worker who handled asbestos products. In addition, plaintiffs could not recover for emotional harm from observing the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 150 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

worker's illnesses and deaths where the injuries were gradual and nontraumatic. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 85-89.

**C.A.3,** 1986. Cit. but not fol., com. (d) quot. in case cit. in disc. The estate of a deceased former employee sued the employer for intentional infliction of emotional distress arising out of the employer's firing and potential rehiring of the employee. The trial court held that the plaintiff failed to state a claim for intentional infliction of emotional distress. Affirming, this court held that the state law which governed the claim placed substantial restrictions on the cause of action beyond just extreme and outrageous conduct that was intentional and/or reckless which caused severe distress. The court stated that the conduct must be beyond the bounds of decency to recover for intentional infliction of emotional distress in the state. Bradshaw v. General Motors Corp., Fisher Body Div., 805 F.2d 110, 114.

**C.A.3,** 1986. Quot. and cit. but dist., coms. (d), (j), and (k) quot. and cit. in sup. A car buyer in the Virgin Islands sued the seller for intentional infliction of emotional distress for failing to be reasonable in honoring the terms of a warranty and for failing to treat her in a professional manner. The territorial court dismissed the claim, and the district court affirmed the dismissal on the ground that the plaintiff had failed to state a cause of action. Affirming, this court reasoned that the alleged facts, showing an absence of bodily harm, were insufficient to meet the standard of extreme and outrageous conduct required to state a cause of action for intentional infliction of emotional distress. Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 371, 372.

**C.A.3,** 1985. Cit. in disc., quot. in ftn., cit. in diss. op., com. (d) quot. in part in diss. op. The wives and children of a number of men who had died from exposure to asbestos sued the manufacturers and vendors of the asbestos on theories that included products liability and negligent and intentional infliction of emotional distress. Applying Pennsylvania law, the district court dismissed the claims for emotional distress for failure to state a claim on which relief could be granted. This court affirmed as to the claim for negligent infliction of emotional distress, but ruled that the appellants had stated a claim for intentional infliction of emotional distress based upon their fear they would suffer future illness because of exposure in their homes to asbestos occasioned by the conditions of their decedents' employment. A dissent argued that Pennsylvania courts would allow recovery under such a claim only when the plaintiff's injuries resulted directly and immediately from conduct directed at those plaintiffs. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 275, 276, 278, 279, on remand 1986 WL 3858 (E.D.Pa.1986).

**C.A.3,** 1982. Cit. in disc. and com. (k) cit. in disc. The plaintiff brought suit against his employer, seeking damages on a variety of tort and contract theories because his employer terminated his employment and failed to offer him permanent employment. The district court dismissed the plaintiff's complaint. On appeal, the plaintiff contended that the district court erred in holding that the plaintiff's intentional infliction of emotional distress claim was time-barred. The plaintiff argued that he was entitled to the benefit of the state's discovery rule because his physical symptoms did not fully manifest themselves until over two years after his alleged injury. This court stated that bodily harm was not an essential element of the tort of intentional infliction of emotional

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 151 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

distress. Therefore, the plaintiff's cause of action was complete before he experienced any physical symptoms. This court further found that since the plaintiff was aware of all the operative facts of his injury prior to the filing of his complaint, the plaintiff could not use the discovery rule to toll the statute of limitations. The judgment was affirmed. Bruffett v. Warner Communications, Inc., 692 F.2d 910, 914.

**C.A.3,** 1982. Com. (d) cit. in case quot. in disc. In a suit by insureds against a fire insurer, the plaintiffs appealed from the final judgment of the district court. On appeal the plaintiffs contended, inter alia, that the trial court erred in refusing to submit to the jury their claim for intentional infliction of emotional distress. In response, this court stated that New Jersey recognized an independent cause of action for intentional infliction of emotional distress. Recovery was conditioned on a showing that the conduct causing the emotional distress was so extreme and outrageous as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. Since the jury found no breach of the insurer's duty of good faith, the plaintiffs could hardly have prevailed on a cause of action for intentional infliction of emotional distress under the standard above. Thus the court held that error, if any, in the district court's refusal to submit the plaintiffs' separate tort claim to the jury was harmless. The verdict in favor of the insurer precluded an award of damages for emotional distress. Judgment was affirmed as to this issue, but the court reversed and remanded for a new trial on the plaintiffs' breach of contract claim and counsel fees. Polito v. Continental Cas. Co., 689 F.2d 457, 464.

**C.A.3,** 1980. Cit. in sup. and coms. (h) and (j) cit. in sup. Plaintiff brought an action against an innkeeper for false arrest and intentional infliction of emotional harm after being subjected to citizen's arrest for refusing to leave the hotel for violating its dress code. A jury awarded plaintiff compensatory and punitive damages, and defendant appealed. The court reversed on the emotional harm issue, holding that the District Court erred in not determining whether plaintiff had established that defendant's conduct could be reasonably regarded as so extreme and outrageous as to permit recovery before submitting the case to the jury, and it found that defendant's conduct was not extreme or outrageous, and that plaintiff's embarrassment and humiliation did not constitute severe emotional distress. Moolenaar v. Atlas Motor Inns, Inc., 616 F.2d 87, 89.

**C.A.3,** 1979. Quot. and fol., illus. (1) quot. in ftn. in sup., com. (d) quot. in sup., com. (j) cit. in sup., coms. (h) and (i) quot. Plaintiff former professional football player sued former employer to recover salary, allegedly due, and damages for defamation and intentional infliction of emotional distress, allegedly resulting from statements made to the press by the team doctor. In the trial court, the jury returned a verdict for the plaintiff on the breach of contract and intentional infliction of emotional distress claims, and against plaintiff on the defamation claim. After judgment was entered, both parties appealed denials of their motions for a judgment notwithstanding the verdict. This court affirmed and held, in regard to the breach of contract claim, that the evidence warranted a finding that the parties had intended to compensate the plaintiff for a three-year period, not a one-year period as contended by defendant. In regard to the claim for intentional infliction of emotional distress, the court held that a jury could reasonably have concluded that defendant's statements were extreme and outrageous, and that they had been made with the requisite intent; it

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 152 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

was viewed as irrelevant as to whether defendant was aware of the consequences of his words. In addition, the court held that punitive damages can be awarded for the tort of intentional infliction of emotional distress, and that under Pennsylvania law the team could be held vicariously liable for its physician's statements. In regard to the claim for defamation, this court held that the remarks in question were not defamatory, as a matter of law, and that the issue should not have gone to the jury. In doing so, the court rejected the contentions of plaintiff that the remarks imputed a loathsome disease or affected his business, trade, profession, or office. Accordingly, the judgment of the district court was affirmed. The dissent objected to the finding of the court that the evidence did not support the defamation count as a matter of law. It was suggested by the dissent that the allegedly defamatory remarks could be construed as affecting plaintiff's business, trade, profession, or office and, therefore, could have formed the basis for his claim. Thus, the dissent concluded that this error necessitated a new trial limited to the defamation claim. Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273-1275, 1277.

## C.A.4,

**C.A.4,** 2016. Cit. in case quot. in sup., com. (d) quot. in case quot. in sup. Former university graduate student brought claims for, among other things, intentional infliction of emotional distress against university and others in connection with allegations that defendants caused false and misleading statements to be included in her permanent academic record, and denied or conspired to deny her academic credit. The district court granted defendants' motions to dismiss. Affirming, this court held that defendants' conduct did not rise to the exacting standard for intentional infliction of emotional distress imposed by West Virginia law. The court noted that West Virginia courts followed Restatement Second of Torts § 46, which provided that, in order for the "outrageous" standard to be met, the conduct had to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Kerr v. Marshall University Board of Governors, 824 F.3d 62, 78.

## C.A.4

**C.A.4,** 2004. Com. (i) cit. in case quot. in disc. Female security guard sued employer for, in part, intentional infliction of emotional distress, after supervisor permitted plaintiff's boyfriend, against whom plaintiff had obtained a restraining order, access to her, and the boyfriend kidnapped plaintiff at gunpoint and raped her. The district court granted summary judgment for defendant on the emotional-distress claim. Reversing in part and remanding, this court held, inter alia, that summary judgment was precluded on the portion of the claim growing out of supervisor's intentional assignment of plaintiff to an unsecured post. The court said that a jury could infer that supervisor, despite her awareness of boyfriend's abuse of plaintiff, believed it all-important that plaintiff and her boyfriend talk, and so deliberately determined to inflict on plaintiff any emotional distress she might suffer from talking to him. Gantt v. Security, USA, 356 F.3d 547, 552, cert. denied ___ U.S. ___, 125 S.Ct. 51, 160 L.Ed.2d 20 (2004).

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 153 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.4,** 1999. Com. (d) quot. in case quot. in sup. and cit. in headnote, coms. (e) and (f) quot. in sup. and cit. in headnote. A middle school student and her mother sued the student's former teacher, the school principal, and the school board for, in part, intentional infliction of emotional distress, alleging that student was excluded from participating in show choir because of her depression. District court granted defendants' motion to dismiss. This court reversed in part, holding, inter alia, that the district court improperly dismissed plaintiffs' emotional-distress claim, because plaintiffs' assertion that the teacher intentionally attempted to humiliate a child knowing that she was suffering from clinical depression was sufficient to allege outrageous conduct. Baird v. Rose, 192 F.3d 462, 472.

**C.A.4,** 1998. Cit. in headnote, cit. in disc., com. (d) quot. in disc. Airline passenger who was denied permission to board a connecting flight from Cincinnati to Minneapolis because airline personnel in Roanoke, his point of origin, failed to ask for photo identification sued airline for breach of contract, false imprisonment, and intentional infliction of emotional distress. The district court granted defendant's motion for summary judgment. Affirming, this court held that the contract claim was preempted by the Airline Deregulation Act; that, to the extent the tort claims were based on defendant's refusal to allow plaintiff to board, they too were preempted; and that, to the extent the tort actions were based on other conduct, they failed to state a claim. Smith v. Comair, Inc., 134 F.3d 254, 255, 260.

**C.A.4** 1994. Cit. in headnotes, cit. in sup. Employee who was dismissed for allegedly stealing some painting equipment sued former employer in state court for intentional infliction of emotional distress, inter alia. On removal to federal district court, the district court entered judgment on a jury verdict awarding plaintiff damages. Reversing in part, this court held, inter alia, that although defendant's human resources manager's verbal abuse of plaintiff during a 40-minute meeting during which plaintiff became very upset was despicable, it did not rise to the level of being atrocious and utterly intolerable in a civilized community; thus, plaintiff failed to establish the element of outrageous conduct necessary for a claim of intentional infliction of emotional distress. Barber v. Whirlpool Corp., 34 F.3d 1268, 1269, 1277.

**C.A.4,** 1994. Coms. (d), (i), and (j) quot. in case quot. in sup. Motorist arrested for failing to appear in court as required by a parking ticket sued the issuing county and its maintenance man, who had filed an affidavit to obtain the arrest warrant, alleging civil rights violations and intentional infliction of emotional distress, among other claims. The trial court entered judgment on a jury verdict awarding plaintiff damages. Reversing, this court held, inter alia, that, under South Carolina law, plaintiff could not recover emotional-distress damages, even though her brief detention caused her some distress and even if a jury could have found that the maintenance man's submission of an allegedly false affidavit caused that distress, as there was no evidence that the maintenance man intentionally or recklessly inflicted any harm, the conduct was not extreme and outrageous, and the distress suffered was not so severe that no reasonable man could be expected to endure it. Wilkes v. Young, 28 F.3d 1362, 1366, certiorari denied 513 U.S. 1151, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995).

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 154 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.4,** 1991. Com. (g) quot. generally in disc. An employee who had sued his former employer in a Virginia state court for intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, and negligence in the care of a bailment moved to remand the action to state court following the employer's successful motion to remove the action to federal court. The district court denied the motion to remand and granted summary judgment in favor of the employer, holding that the employee's state law claims were preempted by § 301 of the Labor Management Relations Act (LMRA). Affirming, this court held that because resolution of the state law claims would require interpretation of the collective bargaining agreement, the state law claims were preempted. The court stated that if the collective bargaining agreement authorized the employer to clean out the terminated employee's locker and throw away the employee's personal belongings, those actions could not simultaneously be considered outrageous and intolerable, and therefore punishable as intentional infliction of emotional distress, under Virginia law. McCormick v. AT & T Technologies, Inc., 934 F.2d 531, 537, certiorari denied 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992).

**C.A.4,** 1989. Com. (d) cit. in case quot. in disc. An employee sued her employer for wrongful discharge and intentional infliction of emotional distress after she was terminated after being denied disability benefits and then refusing to work. After the employee injured her finger while installing a telephone for the employer, she was awarded temporary total disability benefits, but she was denied permanent disability benefits based on her work-related psychiatric and physical disabilities. The district court granted summary judgment to the defendants, holding that the plaintiff's state law claims were preempted and that her federal claims were barred for failure to file a timely action. Affirming, this court held that a federal court has discretion to dismiss state claims on the merits before resolving the preemption inquiry if the underlying state claims are patently without merit. The court denied relief for emotional distress since the plaintiff's allegations did not rise to the requisite level of "outrageous" conduct. It reasoned that the defendant merely exercised its legal rights in a permissible way in contesting the plaintiff's workers' compensation claims, insisting that the plaintiff be examined by a psychiatrist of the defendant's choosing, and ordering her to return to work. Childers v. Chesapeake & Potomac Telephone Co., 881 F.2d 1259, 1266.

**C.A.4,** 1989. Com. (d) quot. in sup. An employee sued her employer and her supervisor, in part, for sexual harassment, constructive discharge, and intentional infliction of emotional distress, asserting that the supervisor made unwelcome sexual advances toward her both on and off the job. The district court granted the defendants summary judgment. Reversing in part while affirming the grant of summary judgment on the intentional infliction of emotional distress claim, this court held, inter alia, that summary judgment on that claim was proper, not because the plaintiff could not pursue simultaneous claims for intentional infliction of emotional distress and assault and battery, as the district court reasoned, but because the harassment the plaintiff alleged did not rise to the level of outrageousness required by state law to support such a claim. Paroline v. Unisys Corp., 879 F.2d 100, 112, opinion vacated in part on rehearing 900 F.2d 27 (4th Cir.1990).

**C.A.4,** 1987. Com. (d) cit. in sup. A country and western singer singled out and made allegedly racially disparaging comments about a black security guard during one of her concerts. The

security guard sued the singer for intentional infliction of emotional distress. Affirming the trial court's grant of the defendant's motion to dismiss for failure to state a claim, this court held that the singer's behavior did not meet the stringent requirement of outrageousness, central to the tort of intentional infliction of emotional distress. The court concluded that the singer's conduct fell among those intended or unintended hurts that persons in our still "rough-edged" society must simply abide without judicial remedy. Gaiters v. Lynn, 831 F.2d 51, 53, 54.

**C.A.4,** 1976. Com. (b) quot. in part. in disc. (erron. cit. as com. (a)), cit. in sup. Plaintiffs, customers of defendant carrier, brought an action for breach of duty of nondiscrimination imposed by the Interstate Commerce Act. Defendant delivered plaintiffs' furniture after the date designated in the contract, apparently giving preference to other shippers. Plaintiffs appealed from the district court's order striking all allegations from their complaint supporting recovery of punitive damages and damages for mental distress. The court, in reversing, held that a private right of action existed for violation of the nondiscrimination provision of the Interstate Commerce Act. The court relied in part on aeronautics cases. The court held that plaintiffs' allegations that defendant acted recklessly in callous disregard of plaintiffs' rights was sufficient to allow plaintiffs to introduce further evidence and, if proven, to entitle them to punitive damages. Plaintiffs and defendant occupy a special relationship, that of shipper and common carrier, which creates a strong duty to safeguard plaintiffs' interests. Although the court noted that delay in shipment is generally not such grossly outrageous conduct as to be offensive to a person of normal sensibilities, the court ruled that plaintiffs may introduce proof on the issue of mental distress. Hubbard v. Allied Van Lines, Inc., 540 F.2d 1224, 1229, 1230.

**C.A.5,**

**C.A.5,** 2018. Com. (d) quot. in case quot. in sup. Former high-school nurse brought claims for, among other things, intentional infliction of emotional distress (IIED) against school district and others, alleging that she was shunned, subjected to unfounded reprimands, involuntarily transferred to another school, and threatened after she expressed concerns regarding the school's handling of the health needs of a diabetic student who had committed suicide because of her classmates' bullying. The district court granted summary judgment for defendants. Affirming, this court held that plaintiff failed to state an IIED claim, because she failed to show that any of defendants' conduct was extreme and outrageous, or more than a reasonable person could be expected to endure, as required to state such a claim under Restatement Second of Torts § 46. Rayborn v. Bossier Parish School Board, 881 F.3d 409, 420.

**C.A.5**

**C.A.5,** 2002. Com. (j) quot. in sup. Employee sued former employer and former supervisors for Title VII violations and intentional infliction of emotional distress, inter alia, arising from defendants' sexual advances and their racial and sexist comments. District court granted defendants summary judgment. This court affirmed, holding, inter alia, that employee's emotional-distress

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 156 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

claim failed, because although defendants' conduct involved persistent verbal and physical sexual harassment and employee suffered emotional distress and lost her job due to the harassment, evidence did not show that distress was unendurable. While employee testified that she felt angry, embarrassed, disgusted, humiliated, horrified, and repulsed by defendants' actions and that she suffered from depression, headaches, and loss of appetite, employee's emotional distress did not satisfy requisite severity prong. Smith v. Amedisys Inc., 298 F.3d 434, 450.

**C.A.5,** 2001. Quot. in sup., cit. in ftn. Insurer sought declaratory judgment that the liability policies it sold to insured company afforded no coverage or defense for 21 Mississippi lawsuits alleging that insured's male employee had surreptitiously videotaped female customers in dressing room at insured's photography studio. District court granted insurer summary judgment. This court reversed and remanded, concluding that insurer was obligated to defend and indemnify insured in underlying state suits. The court determined, inter alia, that Mississippi Supreme Court would decide that employee committed the torts of invasion of privacy and extreme and outrageous conduct upon plaintiffs in underlying suits. American Guarantee and Liability Ins. Co. v. 1906 Co., 273 F.3d 605, 614, 615.

**C.A.5,** 2001. Com. (f) quot. in case quot. in disc. Employee sued former employer for intentional infliction of emotional distress that caused her to leave her employment. District court vacated arbitration award for employee, holding that employer's decision to immediately continue employee's time-sensitive evaluation on her return from medical leave due to stroke-like symptoms was not extreme and outrageous conduct. This court affirmed, holding, inter alia, that, although employer's conduct was insensitive to employee's peculiar physical susceptibility to stress, its instructions that employee resume the evaluation were not extreme and outrageous conduct. Hughes Training Inc. v. Cook, 254 F.3d 588, 595, cert. denied 534 U.S. 1172, 122 S.Ct. 1196, 152 L.Ed.2d 135 (2002).

**C.A.5,** 2001. Com. (d) cit. in case cit. in sup. African-American store customer sued store, store's insurer, and security guard for unlawful search and seizure, discrimination, false arrest, and intentional infliction of emotional distress, among other claims. Suspecting plaintiff of shoplifting based on eyewitness report, security guard had followed plaintiff through the store and to the parking lot, copied down her car's license plate number, handcuffed her, and transported her to the police station. District court granted defendants summary judgment. This court affirmed, holding, inter alia, that plaintiff's emotional-distress claim failed, because defendants' conduct did not rise to the requisite level of extreme and outrageous conduct. Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 757.

**C.A.5,** 2001. Cit. in disc., com. (f) cit. in case cit. in disc. Doctor fired from university medical school's residency program sued the school, the director of school's residency program, and psychiatrist who examined her, alleging state and federal claims including intentional infliction of emotional distress. District court denied director's motion for summary judgment. This court reversed in part, holding, inter alia, that plaintiff did not prove emotional distress, because director's alleged statements to plaintiff about plaintiff's childhood sexual abuse were not extreme and

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 157 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

outrageous, as plaintiff was not exposed to those remarks over a protracted period of time or physically threatened. Furthermore, director's effort to obtain information about plaintiff's mental illness and to seclude plaintiff, while ill-motivated, was not actionable infliction of emotional distress. Shaboon v. Duncan, 252 F.3d 722, 734.

**C.A.5,** 2000. Com. (d) cit. in case cit. in disc. Two African-American former employees sued employer and its vice president and office manager for, in part, racial discrimination and intentional infliction of emotional distress. Affirming in part the district court's grant of summary judgment for defendants, this court held, inter alia, that defendants' racial harassment of plaintiffs in the form of racist remarks did not rise to the level of extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress under Texas law. Walker v. Thompson, 214 F.3d 615, 628.

**C.A.5,** 1999. Cit. in case cit. in disc. A Louisiana cigarette smoker and his wife sued several tobacco manufacturers' trade associations for misrepresentation and fraud, among other claims. Louisiana federal district court dismissed plaintiffs' claims. This court reversed and remanded, holding, inter alia, that plaintiffs made an adequate prima facie case for intentional and nonintentional torts. Each defendant intentionally and negligently communicated to the plaintiffs and other Louisiana residents false representations of material facts as to the addictive and cancer-causing effects of their tobacco products. Guidry v. United States Tobacco Company, Inc., 188 F.3d 619, 627.

**C.A.5,** 1999. Com. (d) cit. generally in headnote and quot. in case quot. in disc. Former employee sued employer, the employer's parent company, and a coemployee for intentional infliction of emotional distress and Title VII violations arising from sexual harassment by the coemployee. District court entered judgment on a jury verdict for plaintiff. This court vacated in part, reversed in part, and remanded, holding, inter alia, that there was sufficient evidence to support the jury verdict against the coemployee on plaintiff's emotional-distress claim, because the coemployee's behavior went well beyond unwanted sexual advances in the workplace where he subjected plaintiff to sexually suggestive touching, made constant sexual remarks, and asked plaintiff to leave her husband for him. Skidmore v. Precision Printing and Packaging, Incorporated, 188 F.3d 606, 613.

**C.A.5,** 1997. Com. (d) quot. in sup. and cit. generally in headnote. An employee who suffered from temporomandibular joint disease and underwent jaw surgery was fired. The employee sued her employer for intentional infliction of emotional distress and violations of the Americans with Disabilities Act. Plaintiff alleged that her supervisor became angry when she requested time off for additional surgery, that he told her he would no longer tolerate her health problems, that he pressured her to return to work, and that he excluded her from business meetings and transferred assignments away from her. The district court granted defendant summary judgment. This court affirmed, holding, inter alia, that plaintiff's emotional-distress claim failed because she did not prove that defendant acted in a manner that was extreme or outrageous. Even if the supervisor was in fact generally cruel and unfair and threatened to fire plaintiff, this did not pass muster as the type of utterly indecent, intolerable, and atrocious behavior necessary to prevail on a claim of

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 158 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

intentional infliction of emotional distress. McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 560, 564.

**C.A.5,** 1997. Cit. in headnotes, cit. in case cit. in disc. An African-American engineer sued her former employer, alleging workplace discrimination based on her sex, race, and national origin, as well as several state law claims, including intentional infliction of emotional distress. Plaintiff had supervised an employee who resented being supervised by an African-American woman and who physically threatened her after being reassigned to a different engineering project. District court granted defendant summary judgment. This court affirmed, holding, inter alia, that plaintiff failed to raise a fact question as to whether defendant's conduct was extreme and outrageous. The employee's harassment of plaintiff was not ratified, in light of defendant's decisive actions to remove the employee from plaintiff's work site and to prevent him from harassing her. Ward v. Bechtel Corp., 102 F.3d 199, 201, 203.

**C.A.5,** 1996. Com. (d) cit. in case quot. in sup. University student who claimed at a meeting attended by several professors and students that she had been sexually assaulted by another student at a party brought, in part, a state-law claim for intentional infliction of emotional distress against one of the professors who, after the meeting, allegedly engaged in a course of conduct intended to intimidate her. Reversing the district court's denial of defendant's motion for summary judgment and rendering, this court held, inter alia, that defendant's alleged acts of following plaintiff in the hallways, obstructing her passage from a water fountain, showing up in a class and positioning himself where plaintiff usually sat so that she could not avoid encountering him, and repeatedly going in and out of a room where she was taking a make-up exam did not rise to the level of outrageous conduct necessary for a claim of intentional infliction of emotional distress, and thus defendant was entitled to state official immunity from plaintiff's claim. Cantu v. Rocha, 77 F.3d 795, 810.

**C.A.5,** 1996. Com. (d) quot. in case quot. in disc. Fifty-one-year-old salesman who was fired after 22 years on the job sued his former employer for violations of the Age Discrimination in Employment Act (ADEA) and for intentional infliction of emotional distress. The district court granted employer's motion for judgment as a matter of law on the emotional-distress claim but entered judgment on a jury verdict for salesman on his ADEA claim. Affirming, this court held that the evidence was sufficient to support a finding that salesman's age was the reason for his dismissal, but that a supervisor's failure to remove language from salesman's personnel files indicating that salesman had been placed on probation was not so outrageous as to give rise to an action for intentional infliction of emotional distress. Haun v. Ideal Industries, Inc., 81 F.3d 541, 548.

**C.A.5,** 1996. Com. (d) quot. in case quot. in disc. An Amtrak ticket and baggage clerk sued Amtrak, alleging a violation of Title VII and a claim for intentional infliction of emotional distress. After plaintiff and her co-workers had received a series of obscene and threatening anonymous phone calls and notes, defendant had called upon four law enforcement agencies to investigate. District court granted defendant summary judgment. This court affirmed, holding, inter alia, that defendant's response to her complaints was not extreme and outrageous conduct, as the evidence

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 159 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

demonstrated that defendant took plaintiff's complaints seriously and conducted a prompt and thorough investigation. Hirras v. National R.R. Passenger Corp., 95 F.3d 396, 400.

**C.A.5,** 1996. Com. (d) quot. in case quot. in sup. Discharged employees sued former employer and supervisor, asserting claims for age discrimination and intentional infliction of emotional distress. Affirming the district court's grant of summary judgment for defendants, this court held, inter alia, that plaintiffs failed to show that defendants' actions in terminating plaintiffs' employment rose to the level of extreme and outrageous conduct or caused plaintiffs severe emotional distress, as required to state a claim for intentional infliction of emotional distress under Texas law, where plaintiffs alleged only that one plaintiff's discharge interview occurred in an office so that he and a manager could speak privately, after which defendant supervisor did nothing to cause plaintiff emotional distress, and that defendant supervisor had a smile or smirk on his face when he met with the other plaintiff to discuss plaintiff's work record following his discharge and failed to call plaintiff after promising to do so. Stults v. Conoco, Inc., 76 F.3d 651, 658.

**C.A.5,** 1995. Subsec. (1) cit. in case cit. in ftn. in sup., com. (d) quot. in sup., quot. in case cit. in ftns. in sup. Texas employee brought state court action for intentional infliction of emotional distress against his Virginia-based corporate employer and two of his Texas supervisors. Plaintiff was reclassified as a staff employee after serving as a manager and, although his responsibilities decreased, his salary remained the same. Defendants successfully removed the case to federal court, but plaintiff moved to remand it, arguing that complete diversity was absent. The district court retained jurisdiction, explaining that supervisors were fraudulently joined, then dismissed the claim against them. Affirming, this court held that supervisors' conduct was not extreme and outrageous and, since plaintiff could not possibly win his case against them, their joinder, for the purpose of defeating removal to federal court, was clearly fraudulent. Burden v. General Dynamics Corp., 60 F.3d 213, 218, 220.

**C.A.5,** 1995. Cit. in case cit. in disc., subsec. (1) cit. in headnote and quot. in disc., coms. (b) and (j) cit. in disc. Former manager of a convenience store sued her former employer for intentional infliction of emotional distress and slander stemming from her employment termination. After the district court entered judgment on a jury verdict awarding plaintiff damages, this court reversed as to the claim for intentional infliction of emotional distress, affirmed as to the claim for slander, and remanded for apportionment of the damages. On remand, the district court apportioned the entire damages award to the slander claim. Affirming, this court held, inter alia, that, while the evidence of emotional injuries did not rise to the level of severity to support an independent tort of intentional infliction of emotional distress, plaintiff's emotional injuries were compensable as damages for her slander claim. Burroughs v. FFP Operating Partners, L.P., 70 F.3d 31, 32, 33.

**C.A.5,** 1995. Cit. in headnotes, cit. in case cit. in sup., com. (d) quot. in case quot. in sup., com. (g) cit. in sup. Railroad company employee sued employer for, inter alia, Title VII violations and intentional infliction of emotional distress, alleging that she received verbal abuse from co-workers and abusive phone calls and notes from anonymous sources. Texas federal district court dismissed, holding, in part, that the Title VII and intentional-infliction-of-emotional-distress claims were

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 160 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

preempted by Railway Labor Act (RLA). Reversing and remanding, this court held, in part, that plaintiff's state law claim of intentional infliction of emotional distress was independent of the collective-bargaining agreement (CBA) because its resolution did not require an interpretation of the CBA; therefore, this claim was not preempted by the RLA. CBA contained no provision related to sexual harassment or the right to work in a nonhostile environment. Hirras v. National R.R. Passenger Corp., 44 F.3d 278, 279, 283, appeal after remand 95 F.3d 396 (5th Cir.1996).

**C.A.5,** 1995. Com. (d) quot. in case quot. in sup. and cit. in headnote. A female research laboratory technician at a university sued the university health center and two doctors for, inter alia, Title VII retaliation and intentional infliction of emotional distress. Jury awarded damages on the emotional-distress claim. Reversing as to the emotional-distress award, this court held, in part, that, although defendant doctor may have lost control, behaved intemperately, rudely reprimanded plaintiff or overreacted in reporting her mistake to her supervisor, the evidence did not demonstrate conduct and actions so unjustifiable, so uncivilized, or so based on malice that they rose to the level of outrageous conduct. In response to each incident involving plaintiff's carelessness or incompetence, defendant doctor had a plausible basis to become upset with plaintiff's conduct. MacArthur v. University of Tex. Health Center Tyler, 45 F.3d 890, 891, 898.

**C.A.5,** 1994. Cit. in case cit. in sup. Employee of electric cooperative sued employer and its general manager in state court for intentional infliction of emotional distress arising from a job reassignment. On removal to federal district court, the district court denied plaintiff's motion to remand the action to state court and dismissed the action without prejudice. Affirming as modified, this court held, inter alia, that, because plaintiff's claim required analysis of the collective bargaining agreement to determine whether defendants' actions in reassigning plaintiff to a maintenance position were extreme and outrageous, a necessary element of his state law claim, his claim was preempted by a section of the Labor Management Relations Act vesting jurisdiction in federal courts to hear claims for violation of labor contracts and thus the district court did not err in denying plaintiff's motion to remand. Baker v. Farmers Elec. Co-op., Inc., 34 F.3d 274, 280.

**C.A.5,** 1994. Com. (k) cit. in disc., com. (j) quot. in sup. Former manager of a convenience store sued her employer in state court after the employer accused her of embezzlement, asserting intentional infliction of emotional distress and other claims. The case was removed to federal district court, which entered judgment on a jury verdict for plaintiff on the emotional-distress claim. Reversing in part and remanding, this court held, inter alia, that defendant's failure to contact plaintiff prior to initiating criminal proceedings against her was not extreme and outrageous conduct sufficient to support the emotional-distress claim and plaintiff's emotional injuries were not severe enough, as a matter of law, to meet the standard for intentional infliction of emotional distress. Burroughs v. FFP Operating Partners, L.P., 28 F.3d 543, 546, 549, appeal after remand 70 F.3d 31 (5th Cir.1995).

**C.A.5,** 1994. Cit. in headnotes, cit. and quot. in sup., coms. (d) and (h) cit. in case quot. in sup. Beneficiary of annuity sued insurer for stopping payment on his annuity check, alleging various causes of action, including intentional infliction of emotional distress. Affirming the district court's

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 161 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

dismissal of the complaint, this court held that the determination in a prior state court action that insurer's conduct in not delivering the disputed funds to plaintiff did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress barred plaintiff's instant claim on the ground of collateral estoppel. Daniels v. Equitable Life Assur. Soc. of U.S., 35 F.3d 210, 211, 216.

**C.A.5,** 1994. Cit. in headnotes, cit. in sup., coms. (d), (e), and (f) quot. in sup. Company office insurance agent who suffered mental breakdown sued employer in state and federal court alleging, among other claims, intentional infliction of emotional distress. Insurer had realized that its new "neighborhood office agent" program would disrupt existing company offices and agents that stayed in them, but it believed that new system was best way to facilitate growth. District court granted employer judgment as a matter of law on plaintiff's claim for intentional infliction of emotional distress. Affirming in part, this court held, inter alia, that defendant's alleged mistreatment of plaintiff was not sufficiently thoughtless to rise to level of outrageousness necessary to impose liability under Louisiana law. Plaintiff was not targeted for specific abuse and his grievances were a foreseeable result of application of defendant's new system. Furthermore, defendant did not abuse its position of trust or power and was not aware of plaintiff's preexisting health problems. Deus v. Allstate Ins. Co., 15 F.3d 506, 507, 508, 514-517, cert. denied ___ U.S. ___, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994).

**C.A.5,** 1994. Cit. in disc. A vendor at an Air Force commissary sued the government under the Federal Tort Claims Act (FTCA), alleging that her supervisor had created a hostile work environment by making off-color sexual remarks and dirty jokes and by giving the vendor winks and nods, resulting in mental anguish, anxiety, embarrassment, and humiliation. The district court granted the government summary judgment. This court reversed and remanded, holding that plaintiff's claim for intentional infliction of emotional distress was not excluded from the reach of the FTCA. The court determined that plaintiff's claims did not arise out of an assault, a battery, or a slander. It noted that the components necessary to establish assault, battery, and slander were distinct from the elements of intentional infliction of emotional distress, and that the goals of these torts were also different. Truman v. U.S., 26 F.3d 592, 595.

**C.A.5,** 1993. Coms. (d) and (h) quot. in case quot. in sup. Independent contractor for public utility sued utility and its supervisory employee to recover damages for, inter alia, intentional infliction of emotional distress, alleging that he was defamed by supervisor's statements to others that he was discharged for falsifying a work-related document. Affirming the district court's dismissal of the claim, this court held, inter alia, that supervisor's conduct, as a matter of law, was not so extreme and outrageous as to permit recovery, since it did not exceed all possible bounds of decency and was not utterly intolerable in a civilized community. Danawala v. Houston Lighting & Power Co., 14 F.3d 251, 256.

**C.A.5,** 1993. Com. (d) cit. in headnote and quot. in case cit. in sup. A former police officer sued his former supervisors and the city that terminated him, asserting civil rights and state tort claims, including one for intentional infliction of emotional distress. This court, affirming the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 162 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

trial court's entry of judgment against the officer, held, inter alia, that, under Texas law, none of the defendants had acted outrageously in discharging the officer, as their statements were either accurate descriptions of the controversy surrounding the officer or, at worst, hyperbolic ramblings. Gillum v. City of Kerrville, 3 F.3d 117, 122, cert. denied ___ U.S. ___, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994).

**C.A.5,** 1993. Subsec. (1) cit. in sup., com. (j) quot. in case cit. in sup. A retired sales manager sued his former employer and others for intentional infliction of emotional distress and other damage claims allegedly arising out of derogatory comments made by a presenter at an awards ceremony. The district court entered judgments for defendants. Affirming, this court held, inter alia, that the employer's conduct, in failing to take corrective action after the ceremony and in retracting its offer of continued employment after the manager retired, was not sufficiently extreme to support an intentional infliction of emotional distress claim. The court noted that the comments conveyed, at worst, a message that the manager had not earned top performance recognition. McKethan v. Texas Farm Bureau, 996 F.2d 734, 741, 742.

**C.A.5,** 1993. Com. (d) quot. in part in case cit. in sup. A Hispanic employee who was referred to as a "Mexican" and a "wetback" by his supervisor sued the employer, asserting claims for constructive discharge under Title VII and for intentional infliction of emotional distress. This court affirmed a grant of the employer's motion for summary judgment, holding, inter alia, that the supervisor's conduct, though repeated over a period of time, was not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243.

**C.A.5,** 1992. Quot. in disc., com. (d) quot. in case quot. in disc. An at-will employee who was fired sued his former employer for intentional infliction of emotional distress and wrongful termination. The district court granted defendant's motion for summary judgment, finding that defendant's conduct of constantly criticizing plaintiff and threatening to terminate him was not extreme and outrageous and did not cause plaintiff to suffer severe emotional distress. This court affirmed, holding that the conduct complained of was within the realm of ordinary employee disputes, which under Texas law would not give rise to a claim for intentional infliction of emotional distress. While the defendant's alleged act of telling plaintiff's current employer that plaintiff was under psychiatric care fell outside the category of a nonactionable employment dispute, the court did not find this factually accurate report to rise to the level of extreme and outrageous behavior. Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31, 33.

**C.A.5,** 1992. Com. (d). cit. in case quot. in sup. Employee who was demoted, reduced from a salary to an hourly wage, and eventually terminated sued former employer for intentional infliction of emotional distress, among other claims. The district court entered judgment on jury verdict for employee. Reversing and remanding for the district court to enter judgment for defendant, this court held that while defendant's actions may have been illegal and discriminatory, they did not constitute extreme and outrageous conduct, since plaintiff was not subjected to intentional and systematic humiliation. Moreover, plaintiff's duties following demotion were not menial or

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 163 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

demeaning but were duties that defendant required its other supervisors to do on occasion, and, indeed, were duties that defendant had often called on plaintiff to do himself before his demotion. Ramirez v. Allright Parking El Paso, Inc., 970 F.2d 1372, 1375.

**C.A.5,** 1991. Com. (d) quot. in sup. The father of a juvenile who committed suicide after being detained by a police officer for driving an automobile without a license sued the officer alleging, inter alia, intentional infliction of emotional distress. The district court directed a verdict for the defendant. Affirming in part, this court held that statements made by the officer to the plaintiff's decedent and his friends were not sufficiently outrageous to warrant the imposition of liability. White v. Walker, 950 F.2d 972, 978.

**C.A.5,** 1991. Cit. in ftn.; com. (g) quot. in ftn.; com. (d) cit. in case quot. in disc., quot. in disc. An employee sued his former employer for age discrimination, intentional infliction of emotional distress, and termination of long term disability benefits in retaliation for filing age discrimination charges under the Age Discrimination in Employment Act. The district court denied the defendant's motions for a directed verdict, judgment n.o.v., a new trial, and remittitur, and entered judgment on the jury award of damages for age discrimination and intentional infliction of emotional distress. Affirming, this court held that the jury determination on age discrimination was reasonable. It held, moreover, that demoting an executive manager to an entry-level warehouse position with menial janitorial duties was extreme and outrageous conduct demonstrating an intentional infliction of emotional distress; the demotion was contrived to humiliate the employee in the hope that he would quit. Wilson v. Monarch Paper Co., 939 F.2d 1138, 1141, 1143, 1144.

**C.A.5,** 1989. Com. (d) quot. in disc. An employee sued her supervisor, alleging claims under Title VII and a pendent state-law claim for intentional infliction of emotional distress. The district court found for the plaintiff on the emotional distress claim, but dismissed the Title VII claims for failure to prove a retaliatory discharge. Affirming, this court held, inter alia, that the defendant's intentional placement of two checks in the plaintiff's purse to make it appear that she was a thief constituted outrageous conduct giving rise to a claim for intentional infliction of emotional distress. The court said that the supervisor's subjecting the innocent plaintiff to an accusation of theft passed the bounds of tolerated conduct and was therefore outrageous. Dean v. Ford Motor Credit Co., 885 F.2d 300, 306.

**C.A.5,** 1989. Quot. in case quot. in disc. A woman who was portrayed in a book as assisting in her 45-year-old brother's marriage to an 11-year-old girl sued the book's publisher to recover damages for libel, for "false light" invasion of privacy, and for intentional and negligent infliction of emotional distress. The trial court dismissed the complaint for failure to state a claim. Affirming, this court held, inter alia, that in order to prevail on her defamation claim, the plaintiff had to establish a false and defamatory statement concerning another, an unprivileged publication to a third party, fault amounting at least to negligence on the part of the publisher, and the existence of either "per se" actionability or special harm. Mitchell v. Random House, Inc., 865 F.2d 664, 672.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 164 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.5,** 1973. Cit. in sup. A tugboat owner filed a petition seeking exoneration or limitation of liability following the boat's crash into a bridge. The bridge operator sought damages and the representative of the deceased boat pilot sought damages for the pilot's death. The trial court held the ship's owner liable to the other two parties, finding that the owner was negligent in providing an unseaworthy vessel and that fit was responsible for the negligence of some of its employees. The appellate court reversed in part, holding that, as a matter of law, the pilot was chargeable with having knowledge of certain navigational hazards which in fact he did not have, and that he was thus contributorily negligent in not informing himself of the special hazards attendant upon the conditions known to him. The court remanded the issue of whether the owner was entitled to indemnification from the pilot's estate. The court also held, with regard to the suit of the bridge operator, that parol evidence was admissible to show, contrary to express contractual terms, that railroads, who had to use another bridge while the damaged one was being repaired, expected to be reimbursed for their extra expenses, the court finding that the contracts in question were not complete. In addition, the court denied grief damages to the pilot's survivors, finding this result indicated by the relevant federal laws. Petition of M/V Elaine Jones, 480 F.2d 11, 25, amended 513 F.2d 911 (5th Cir.1975), cert. denied 96 S.Ct. 71, (1975) 46 L.Ed.2d 60.

## C.A.6

**C.A.6,** 2021. Com. (j) quot. in case quot. in sup. Mortgage borrower filed a class action against law firm and its principals, who sent him a letter regarding the possible foreclosure of his loan without first having an attorney provide a meaningful review of his foreclosure files, alleging that the letter violated federal and state statutes because it falsely represented or implied that it was from an attorney. The district court dismissed borrower's claims, finding that borrower failed to show that he suffered an injury in fact. Affirming, this court held that borrower's bare allegations of confusion and anxiety did not qualify as injuries in fact that could give rise to standing. The court cited Restatement Third of Torts: Liability for Physical and Emotional Harm § 46 and Restatement Second of Torts § 46 in explaining that liability for emotional distress arose only where the distress was extreme, and borrower did not make any allegations regarding the severity of his anxiety. Garland v. Orlans, PC, 999 F.3d 432, 440.

## C.A.6,

**C.A.6,** 2020. Coms. (d) and (j) quot. in sup. Debtor who received letters from law firm about certain debts that he admittedly owed to bank sued law firm, alleging that it violated the Fair Debt Collection Practices Act by giving the impression that an attorney had reviewed his case and determined that he owed the debts, which made him anxious and afraid that law firm would sue him if he did not promptly pay. The district court granted law firm's motion to dismiss. Affirming, this court held that debtor lacked standing to sue, because he had not shown any injury-in-fact that was traceable to law firm's challenged conduct. The court noted that it was skeptical as to whether debtor's bare allegations of anxiety were sufficient to establish an injury in fact consistent with common-law requirements to recover for emotional harm under Restatement Second of Torts §

46, but explained that it did not need to resolve that issue, because debtor's anxiety, as alleged, amounted to a fear of a future harm, which was rarely cognizable as an injury in fact. Buchholz v. Meyer Njus Tanick, PA, 946 F.3d 855, 864, 870.


## C.A.6

**C.A.6,** 2014. Com. (d) quot. in sup. Parents of arrestee brought, inter alia, a state-law claim for intentional infliction of emotional distress (IIED) against officers of a private medical clinic's police department. The district court granted defendants' motion for judgment on the pleadings. Reversing as to this claim and remanding, this court held that, at this stage in the proceedings, plaintiffs alleged sufficient facts to make plausible a claim that, under Ohio law, defendants' conduct was extreme and outrageous, as required for an IIED claim under Restatement Second of Torts § 46, Comment *d*. The court pointed to evidence that defendants broke into plaintiffs' home late at night without a warrant or exigent circumstances in attempting to arrest plaintiffs' son for minor traffic violations, blindly deployed stun guns through a broken window into plaintiffs' occupied home, verbally abused them, and used racial epithets throughout the encounter. Hayward v. Cleveland Clinic Foundation, 759 F.3d 601, 619.

**C.A.6,** 2014. Com. (d) quot. in case quot. in sup. Tenants brought a claim for outrageous infliction of emotional distress, inter alia, against purchaser that acquired tenants' rental home at a foreclosure sale, alleging that purchaser's actions in evicting them were outrageous and caused them severe emotional distress. The district court dismissed the complaint. Affirming in part, this court held that the conduct alleged by plaintiffs was not sufficiently extreme or atrocious to be considered outrageous under Kentucky law. The court explained that, while defendant's alleged conduct— which included having the local sheriff's office place plaintiffs' possessions in the yard, where more than $38,000 worth of their property was damaged or destroyed by rain—was unfortunate, the procedure that defendant followed to evict plaintiffs generally conformed to Kentucky law, providing support for the conclusion that it was not atrocious, and, in fact, was considered acceptable. Mik v. Federal Home Loan Mortg. Corp., 743 F.3d 149, 169.


## C.A.6,

**C.A.6,** 2014. Com. (d) quot. in case quot. in sup. Former employee brought, inter alia, a state-law claim for intentional infliction of emotional distress (IIED) against employer and supervisor, alleging that supervisor had sexually harassed her. The district court granted summary judgment for defendants. Affirming in part, this court held that plaintiff's IIED claim failed under Kentucky law, because, while supervisor's alleged comments that plaintiff's appearance sexually aroused him were offensive to her, they were not sufficiently outrageous, under Restatement Second of Torts § 46, Comment *d*, to support a claim for IIED. Montell v. Diversified Clinical Services, Inc., 757 F.3d 497, 510.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 166 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.6,** 2013. Com. (d) quot. in case quot. in sup. Arrestee who was detained for driving under the influence brought, inter alia, a pendent state-law claim for intentional infliction of emotional distress against two county deputy sheriffs who searched him at the county jail, alleging that, even though he was physically compliant during the search, defendants knocked him unconscious and broke his tooth immediately after he asked one of them"while you're down there, you want to give me a blow job?" The district court granted summary judgment for defendants. Reversing as to this claim and remanding, this court held that a genuine issue of material fact existed as to whether defendants' assault of plaintiff for the sole transgression of goading defendants by making an off-color jibe was utterly intolerable in a civilized community, noting that a jury could reasonably conclude that defendants assaulted plaintiff with the intent not just to hurt him physically but to reprimand him for his remark—that is, to humiliate him. Burgess v. Fischer, 735 F.3d 462, 480.

## C.A.6

**C.A.6,** 2011. Subsec. (1) cit. in disc. and adopted in case quot. in disc., subsec. (2) cit. and quot. in disc. Arrestee's daughter brought a claim for intentional infliction of emotional distress (IIED) against city police officer, alleging that she suffered severe emotional distress as a result of witnessing a highly charged incident during which defendant placed her mother in a chokehold, dragged her to his police car, and sprayed her with pepper spray. At trial, the district court granted defendant's motion for judgment as a matter of law on plaintiff's IIED claim. Affirming as to that claim, this court held that the district court correctly found that defendant's conduct was not directed at plaintiff, as required by Restatement Second of Torts § 46(1), and that, while the situation fit within the parameters of § 46(2), which subjected an actor to liability where the conduct was directed at a third person, Kentucky had not yet adopted that provision, and plaintiff never asked the district court to anticipate whether the Supreme Court of Kentucky would adopt § 46(2) if it were squarely presented with a case meeting its requirements. Arnold v. Wilder, 657 F.3d 353, 368.

**C.A.6,** 2011. Quot. in case quot. in sup. Participant in state's pretrial release program, who agreed to undergo random drug testing in order to participate in the program, sued private corporation that conducted the testing, alleging, among other things, that it subjected him to an unreasonable search in violation of the Fourth Amendment, as well as intentional infliction of emotional distress (IIED), by requiring him to provide a urine sample while directly facing one of its employees. The district court granted summary judgment for defendant. Affirming, this court held that defendant's use of the direct observation method of obtaining a urine sample did not constitute IIED. The court, citing its earlier conclusion that the direct observation method used here was reasonable under the Fourth Amendment, reasoned that such conduct did not go beyond all possible bounds of decency and would not be regarded as atrocious or as intolerable in a civilized community. Norris v. Premier Integrity Solutions, Inc., 641 F.3d 695, 703.

**C.A.6,** 2010. Com. (d) quot. in case quot. in sup. Father/personal representative of inmate who died of cancer while he was being held at a county jail as a pretrial detainee sued county, nurses, and

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 167 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

corrections officers in connection with the medical care that was provided to inmate. The district court, among other things, granted defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress (IIED). Affirming that portion of the decision, this court held that, although nurses' purported conduct in ignoring for several months medical request forms from inmate that claimed he was seriously ill could reasonably be construed as deliberately indifferent to inmate's serious medical needs, it did not establish that nurses acted intentionally or in a manner that was sufficiently extreme or outrageous to satisfy an IIED claim under Michigan law. Jones v. Muskegon County, 625 F.3d 935, 948.

**C.A.6**, 2005. Com. (d) cit. in case quot. in disc. Pretrial detainee sued municipality and others for failing to provide her with insulin following her arrest, after which she was hospitalized with diabetic ketoacidosis. The district court granted municipality's motion for summary judgment against her claim for intentional infliction of emotional distress. This court affirmed in part, holding that a claim for intentional infliction of emotional distress required actual emotional distress characterized by some egregious misconduct. Detainee failed to show that her arrest was sufficiently distressful, particularly since she had been arrested five times before and had experienced a similar diabetic attack at another jail. Garretson v. City of Madison Heights, 407 F.3d 789, 799.

**C.A.6,** 2005. Cit. in sup., cit. in case quot. in sup., subsec. (1) quot. in sup. Employee brought, inter alia, claim for intentional infliction of emotional distress against former corporate employer, alleging that she suffered serious mental injury from outrageous discriminatory conduct against her at work by co-workers. The district court entered judgment for plaintiff on the claim and awarded punitive damages. This court affirmed, holding, inter alia, that corporate supervisor' and officials' reckless disregard of and utter refusal to address plaintiff's repeated complaints and requests for help in regard to a hostile work environment that subjected her to daily instances of outrageous sexual harassment for over a year and a half rendered corporate employer directly, rather than vicariously, liable for intentional or reckless infliction of emotional distress. Pollard v. E.I. DuPont De Nemours, Inc., 412 F.3d 657, 664, 667.

**C.A.6,** 2005. Com. (d) quot. in case quot. in sup. Former police officer accused of stealing official funds brought numerous claims, including a claim for intentional infliction of emotional distress, against municipality and others after he was arrested at his new place of employment—an event, along with his subsequent arraignment, covered by the media—and the charges against him were ultimately dropped. The district court dismissed or granted summary judgment for defendants on all claims. This court affirmed in part, holding, inter alia, that routine police conduct stemming from officer's arrest and detention did not rise to the level of outrageousness required to establish a claim for intentional infliction of emotional distress under Ohio law. Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 678.

**C.A.6,** 2005. Com. (h) quot. in disc. Elected union representative brought suit against union and its officials, alleging, in part, intentional infliction of emotional distress, as the result of acts of reprisal against plaintiff after opposing a specific union agreement. District court granted

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 168 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

defendants' motion for summary judgment. Affirming, this court held, inter alia, that plaintiff failed to sufficiently show that the insults and indignities to which he was subjected created a genuine issue of material fact as to whether defendants' conduct was so "extreme and outrageous" as to go beyond the bounds of decency and be considered intolerable in a civilized society. Webster v. United Auto Workers, Local 51, 394 F.3d 436, 442-443, cert. denied 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005).

**C.A.6,** 2003. Adopted in case cit. in disc., coms. (d) and (h) quot. in sup. Former family services worker with the Kentucky Cabinet for Families and Children sued Cabinet and male former supervisor for sexual harassment, discrimination, hostile work environment, retaliation, and the tort of outrage. District court dismissed all claims against supervisor, and dismissed claims of discrimination, retaliation, and outrage against Cabinet. This court reversed in part, holding, inter alia, that plaintiff satisfied elements of her tort-of-outrage claim against supervisor. Supervisor's behavior was outrageous, in that it went far beyond sexual jokes, comments, and innuendoes. There was sufficient evidence to send issues of causation and severity to the jury, as plaintiff testified that she experienced depression and sought psychological counseling after leaving her job. Akers v. Alvey, 338 F.3d 491, 496.

**C.A.6,** 2002. Com. (d) quot. in case quot. in sup. Husband of deceased prison employee sued state department of corrections and prison officials, alleging violation of his wife's substantive due-process rights by failing to prevent her murder by prisoner, sexually hostile work environment, and intention infliction of emotional distress. The district court granted prison summary judgment. Affirming, this court held, inter alia, that defendants' conduct was not intentional and did not rise to level of extreme and outrageous sufficient to support claim for intentional infliction of emotional distress. Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 496.

**C.A.6,** 2000. Com. (d) quot. in case quot. in sup., com. (j) quot. in case quot. in conc. op. Motorist who was stopped, questioned, and eventually released sued police officers involved, among others, for violations of 42 U.S.C. § 1983 and for intentional infliction of emotional distress. The district court entered summary judgment for defendants. Affirming, this court held that the facts and circumstances known to defendants at the time gave them reasonable suspicion justifying the stop, and that plaintiff had failed to establish that the manner in which defendants conducted themselves was extreme or outrageous. Concurrence would not have reached the issue of defendants' behavior, noting that plaintiff could not show that he suffered severe emotional distress as a result of the incident. Watkins v. City of Southfield, 221 F.3d 883, 890, 893.

**C.A.6,** 1999. Quot. in case quot. in disc. After a company fired its marketing director, the director sued the company for intentional infliction of emotional distress, among other claims. District court granted defendant summary judgment. This court affirmed, holding, inter alia, that defendant's conduct was not outrageous. The company's president was courteous to plaintiff and never tried to humiliate him, and plaintiff's upset stomach, loss of sleep, and financial concerns did not constitute a severe emotional injury. Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 376.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 169 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.6,** 1999. Subsec. (1) quot. in case quot. in sup. Borrowers brought suit for, in part, intentional infliction of emotional distress against bank and bank officers, arising from defendants' disclosure of plaintiffs' loan file to opposing attorney in underlying state court action. Affirming the district court's grant of summary judgment for defendants, this court held, inter alia, that plaintiffs failed to set forth all of the elements of a prima facie case under Ohio law, since plaintiffs did not allege that defendants' actions were outrageous, or that plaintiffs' resulting emotional distress was severe. Hahn v. Star Bank, 190 F.3d 708, 718, cert. denied 529 U.S. 1020, 120 S.Ct. 1423, 146 L.Ed.2d 314 (2000).

**C.A.6,** 1998. Cit. in headnote, com. (d) quot. in case cit. in disc. Securities brokers sued securities dealer for defamation and intentional infliction of emotional distress, alleging that defendant filed false Uniform Termination Notice of Securities Industry Regulation, or U-5, forms with the National Association of Securities Dealers. The district court entered summary judgment for defendant. Affirming, this court held, in part, that plaintiffs' defamation claim failed because the statements contained in the U-5 forms were true, and that the publication of truthful and accurate statements could not be considered extreme or outrageous. Andrews v. Prudential Securities, Inc., 160 F.3d 304, 305, 309.

**C.A.6,** 1997. Subsec. (1) quot. in case quot. in disc. Plaintiff brought an action under 42 U.S.C. § 1983 against a state trooper for an illegal search that resulted in plaintiff's arrest on drug charges. The district court entered judgment on a jury verdict for plaintiff. Affirming, this court held, inter alia, that plaintiff did not have to prove that he suffered severe emotional distress to recover for nonphysical injury under § 1983. Chatman v. Slagle, 107 F.3d 380, 384.

**C.A.6,** 1997. Com. (d) quot. in case quot. in disc. Female former employee who was sexually harassed by three supervisors sued supervisors and employer for violations of Title VII and the Kentucky Civil Rights Act (CRA). Employee also asserted a claim for the tort of outrage. The district court granted defendants' motions for summary judgment. Affirming, this court held, in part, that supervisors could not be found individually liable under either Title VII or the CRA, that employer was not liable for sexual harassment where it took prompt action to remedy the situation, and that supervisors' conduct, while crude and wholly inappropriate, was not atrocious and utterly intolerable as a matter of law. Wathen v. General Elec. Co., 115 F.3d 400, 407.

**C.A.6,** 1996. Cit. in ftn., com. (d) quot. but dist. Sales representative who claimed to have been sexually harassed by a co-worker brought civil-rights action against former employer, seeking recovery for, among other things, intentional infliction of emotional distress. The district court granted defendant's motion for summary judgment. Affirming, this court held that co-worker's conduct, which included telephoning plaintiff, sending her cards and notes, and asking her to join him on weekend getaways, was not sufficiently outrageous or atrocious as to support a claim for damages. Hartleip v. McNeilab, Inc., 83 F.3d 767, 769, 777.

**C.A.6,** 1995. Com. (d) quot. in case quot. in sup. The daughter of a nursing-home patient sued her brother, her brother's attorney, and the nursing home for, among other claims, intentional infliction

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 170 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

of emotional distress, alleging that defendants interfered with her visits with her mother. District court granted defendants' motion to dismiss this claim. This court reversed and remanded, holding, inter alia, that plaintiff stated an emotional-distress cause of action, because it was within the realm of imagination that hiding a 98-year-old, physically infirm mother from her adult daughter, and causing the daughter to be arrested for attempting to visit her mother, could constitute extreme and outrageous conduct. Miller v. Currie, 50 F.3d 373, 378.

**C.A.6**, 1994. Cit. in sup. and in disc., cit. generally in sup., quot. in case quot. in sup., coms. (d) and (g) quot. in case quot. in sup. Employee who was also a union official sued his employer and several co-workers in state court, asserting intentional infliction of emotional distress and other claims allegedly arising from administrative charges of sexual harassment having been brought against employee. After the case was removed to federal court, this court affirmed the district court's dismissal of the action, holding, inter alia, that, the Labor Management Relations Act preempted the emotional-distress claim, as reference to the collective-bargaining agreement would be required to determine whether employer and co-workers acted outrageously or whether they merely had pursued their legal rights in a permissible way. DeCoe v. General Motors Corp., 32 F.3d 212, 218-220.

**C.A.6**, 1994. Cit. in headnote, adopted in case cit. in disc., cit. generally in sup., subsec. (1) quot. in sup., com. (d) cit. in headnote and quot. in sup., com. (h) quot. in sup. Male employee who was demoted and transferred for violating employer's sexual-harassment policy sued employer for reverse discrimination and intentional infliction of emotional distress. Affirming the district court's grant of summary judgment for defendant, this court held, inter alia, that plaintiff's claim of intentional infliction of emotional distress was properly dismissed, since defendant's conduct in investigating allegations of sexual harassment against plaintiff and demoting him was not so extreme and outrageous as to support plaintiff's claim under Kentucky law, even though the alleged false statements of defendant's officials regarding plaintiff's behavior during years past might have been tortious and defendant's investigators' crude statements, comparing plaintiff's acts to the perpetration of heinous crimes, were insulting and vulgar. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 798, 805, 806.

**C.A.6,** 1993. Com. (d) quot. in case cit. in disc., subsec. (1) quot. in sup. An accountant sued his former client and business associate for intentional infliction of emotional distress after the client allegedly deliberately misinformed the plaintiff's other associates that the plaintiff had engaged in criminal behavior and had threatened the safety of the client and his family. This court, reversing the district court's dismissal of the claim and remanding, held that this was a sufficient allegation of extreme and outrageous conduct under Michigan law to state an emotional distress claim. Mroz v. Lee, 5 F.3d 1016, 1017, 1019.

**C.A.6,** 1991. Subsec. (1) quot. in case quot. in sup., com. (d) quot. in sup. and quot. in case quot. in sup. A nuclear engineer formerly employed by the Tennessee Valley Authority (TVA) sued the TVA and some of its officials and employees alleging, among other claims, violation of his First and Fifth Amendment rights and intentional infliction of emotional distress. The district court

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 171 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

dismissed the plaintiff's claims. Affirming, this court held, inter alia, that the district court correctly dismissed the claim for intentional infliction of emotional distress because the actions by the TVA and its officers and employees were not sufficiently outrageous to support such an action. The court stated that while assigning the nuclear engineer to menial tasks, unfairly reprimanding him, giving him low performance appraisals, and barring him from promotions, bonuses, and raises may have been tortious conduct, it did not go beyond the pale of decency. Jones v. Tennessee Valley Authority, 948 F.2d 258, 266.

**C.A.6,** 1991. Subsec. (1) quot. in case cit. in disc., com. (d) quot. in case quot. in sup., com. (g) quot. in sup. An employee terminated after 35 years of service to his employer sued his employer for intentional infliction of emotional distress, inter alia. The district court granted the employer summary judgment. Affirming, this court held that the plaintiff had alleged no action on the part of the defendant that was sufficiently outrageous to constitute intentional infliction of emotional distress, noting that the plaintiff was terminated after being unable to explain discrepancies between his submission of expense account receipts and actual restaurant records showing that the amount spent was less than his receipts showed. The court concluded that falsification of expense account records was a serious breach of responsibility on the part of the employee and constituted just cause for termination. Rush v. United Technologies, Otis Elevator Div., 930 F.2d 453, 456, 457.

**C.A.6,** 1989. Cit. in disc., com. (g) quot. in disc. A former railroad employee who lost health benefits because his employer wrongfully told the group health insurer that the employee had quit his job sued his former employer and the insurer for intentional infliction of emotional distress, inter alia. The district court dismissed one count and removed the case to state court for lack of jurisdiction. Reviewing the case by way of mandamus, this court remanded the case to the district court with directions to vacate the order remanding the case to the state court and to dismiss the claim without prejudice. The court held that the plaintiff's claim for intentional infliction of emotional distress fell within the exclusive jurisdiction of the National Railroad Adjustment Board because the claim required interpretation of the collective bargaining agreement. The court stated that, because an actor was not liable when he had done no more than insist on his legal rights in a permissible way, a determination of the defendant employer's legal rights required resort to the provisions of the collective bargaining agreement. Beard v. Carrollton R.R., 893 F.2d 117, 122.

**C.A.6,** 1989. Com. (j) quot. in case cit. in disc. A terminated claims representative sued her employer insurance agency for age discrimination and tortious infliction of emotional distress, inter alia, after she was terminated following a series of verbal and written negative admonitions concerning her work performance. The only evidence of age discrimination was a solitary remark by her supervisor that he "needed younger blood." This court affirmed the district court's award of summary judgment to the employer on the ground that the solitary remark was insufficient to create a triable issue of age discrimination. Additionally, the court held that the crude and sexually suggestive remarks allegedly made by her supervisor to her did not give rise to an actionable claim of tortious infliction of emotional distress. The court noted that she had never consulted a physician for assistance and never missed work during the time when these alleged outrageous episodes had occurred. Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309, 318.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 172 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.6,** 1988. Cit. and quot. in disc., quot. in case quot. in disc., coms. (d), (g), (j), and (k) quot. in disc. The plaintiff was discharged by his employer when he refused to apologize to an upper-level manager after accusing him of making obscene and threatening telephone calls to the plaintiff's wife. Months later, when the plaintiff attempted to regain his job, the employer, during a series of meetings, imposed several conditions, including the requirements that he refuse to talk about the incident and that he work with the alleged obscene phone caller. When, at the end of the meetings, the plaintiff was told that the manager had confessed to making the phone calls, the plaintiff's demand for an out-of-court settlement for damages was refused and he sued the employer for wrongful discharge and intentional infliction of emotional distress. The district court entered judgment on the jury's verdict for the plaintiff. This court reversed the wrongful discharge award and affirmed the emotional distress award, holding that the company's conditioning the plaintiff's reemployment in such a manner was outrageous behavior that caused the plaintiff to suffer severe emotional distress. Pratt v. Brown Mach. Co., 855 F.2d 1225, 1238-1242.

**C.A.6,** 1987. Quot. in case quot. in disc., com. (d) quot. in disc. A real estate developer sued a city and its officials for malicious prosecution, infliction of emotional distress, and violation of due process. The trial court directed a verdict for the defendants. Affirming, this court held that the plaintiff had failed to establish a case of intentional infliction of emotional distress. The court reasoned that the efforts of the city officials to require the plaintiff to obtain permits before construction may have been misguided, but they did not remotely approach extreme and outrageous conduct. Coogan v. City of Wixom, 820 F.2d 170, 173, 174.

**C.A.6,** 1986. Cit. in disc. Two paraplegic prison inmates were treated abusively by a guard and confined under unhygienic conditions. The inmates sued the guard and various other defendants, alleging that the conditions of confinement were unconstitutional and that the guard's conduct had violated their constitutional rights. The trial court held that the conditions of confinement were unconstitutional and that the constitutional rights of one of the inmates had been violated; however, the court awarded that plaintiff only nominal damages, reasoning that injunctive relief was a more appropriate remedy than damages. This court reversed and remanded, holding that on remand the inmate might be able to recover damages based on the defendant guard's verbal abuse. The court reasoned that, in the absence of physical injury, the inmate would be required to prove that the guard's conduct was both extreme and outrageous and caused severe emotional distress in order to recover. Parrish v. Johnson, 800 F.2d 600, 611.

**C.A.6,** 1986. Quot. in disc., coms. (d) and (j) quot. in case quot. in sup., com. (g) quot. in sup. After an employer discharged an employee, the employee sued her former employer for race discrimination, breach of an implied employment agreement, retaliatory discharge, and intentional infliction of emotional distress. The trial court entered judgment for the defendant on the race discrimination claim but for the plaintiff on all of the other claims. This court reversed in part and remanded, holding that the evidence did not show that the plaintiff had suffered actual emotional distress of sufficient magnitude to allow her to recover from the defendant on her claim for intentional infliction of emotional distress. The court reasoned that the plaintiff did not display any

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 173 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

emotional reactions that were atypical of those of any employee faced with an unpleasant work situation and that, to a certain extent, her distress was self-inflicted. Polk v. Yellow Freight System, Inc., 801 F.2d 190, 195, 196, appeal after remand 876 F.2d 527 (1989).

**C.A.6,** 1986. Quot. in part in sup. Three employees were discharged by their employer without a showing of good cause. One of the former employees sued the employer for intentional infliction of emotional distress, alleging that her employment contract required the employer to show good cause before the employee could be terminated. The trial court granted the defendant's motion for summary judgment. Affirming, this court held that, because the plaintiff's employment contract was terminable at will either with or without cause, the employer was not liable for intentional infliction of emotional distress when it had simply exercised its legal right to discharge the employee without cause. The court reasoned that the discharge of the employee without cause, regardless of the reasons for the termination, did not constitute extreme and outrageous wrongful conduct. Reid v. Sears, Roebuck and Co., 790 F.2d 453, 462.

**C.A.6,** 1980. Quot. in part and fol. and com. (d) cit. in sup. Newspaper reporters brought this action against undercover police officer, alleging violation of their civil rights, assault, battery, false imprisonment, and intentional infliction of emotional distress. Defendant officer counterclaimed, alleging that publication of his photograph by the reporters amounted to invasion of privacy and intentional infliction of emotional distress. The district court entered judgment for the defendant on his counterclaim. Plaintiffs appealed from the entry of this judgment, asserting that, in regard to the claim for intentional infliction of emotional distress, the evidence at trial was insufficient as a matter of law to permit submission to the jury. This court accepted plaintiffs' assertion and reversed that portion of the district court's holding. In doing so the court stated that defendant's evidence of his photograph being published, in conjunction with news articles expressing strong political views, failed to satisfy the requirement of extreme and outrageous conduct described in the Restatement (Second) of Torts as being one of the four distinct elements of proof necessary to sustain a claim. In all other respects the judgment of the district court was affirmed. Ross v. Burns, 612 F.2d 271, 273.

**C.A.6, Bkrtcy.App.**

**C.A.6, Bkrtcy.App.**2000. Subsec. (1) quot. in case quot. in disc. Ex-wife who had successfully sued now-bankrupt ex-husband for intentional infliction of emotional distress sought to have husband's judgment debt to her declared nondischargeable as one arising from a willful and malicious injury. The district court entered summary judgment for wife. Affirming, this court held, in part, that the lower court correctly gave collateral-estoppel effect to the finding by the jury in the earlier tort action that husband either intended to cause, or was substantially certain of bringing about, the consequences of his actions. In re Moffitt, 252 B.R. 916, 922.

**C.A.7,**

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 174 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.7,** 2022. Subsec. (1) quot. in diss. op. Consumer brought a putative class action against debt-collection agency, alleging that defendant violated the Fair Debt Collection Practices Act when it sent plaintiff a collection letter informing her that she was pre-approved for a discount payment plan for the payment of her debts, for which the statute of limitations had passed. The district court entered judgment on a jury verdict for plaintiff. This court vacated, remanded, and denied plaintiff's petition for en banc rehearing. The dissent argued that the majority erred in finding that plaintiff's psychological distress induced by defendant's attempt to collect expired debts did not constitute a concrete injury-in-fact granting her standing under the Act, because plaintiff's intangible harms had a close relationship to the common-law tort of intentional infliction of emotional distress as set forth by Restatement Second of Torts § 46(1). Pierre v. Midland Credit Management, Inc., 36 F.4th 728, 732-733.

**C.A.7,** 2022. Subsec. (1) quot. in diss. op. Consumer brought a putative class action against debt-collection agency, alleging that defendant violated the Fair Debt Collection Practices Act when it sent plaintiff a collection letter informing her that she was pre-approved for a discount payment plan for the payment of her debts, for which the statute of limitations had passed. The district court granted plaintiff's motion for summary judgment. This court vacated and remanded, holding that plaintiff's confusion and emotional distress, which arose from her concern about being sued for what appeared to be a restarted debt, did not constitute a concrete injury giving her standing to bring suit under Article III. Citing Restatement Second of Torts § 46(1), the dissent argued that plaintiff's intangible injuries closely followed those found in common-law torts contemplated by the Act, because, under the common law, plaintiff could recover for defendant's extreme and outrageous conduct that intentionally caused her severe emotional distress. Pierre v. Midland Credit Management, Inc., 29 F.4th 934, 947.

**C.A.7,** 2017. Com. (j) quot. in case quot. in sup. Former police officer for village sued village and three members of its police department for, among other things, intentional infliction of emotional distress (IIED) in connection with allegations that defendants fired him in retaliation for his exercise of protected speech at a community board meeting. The district court granted summary judgment for defendants. This court affirmed the dismissal of plaintiff's IIED claim, holding that plaintiff failed to offer any evidence that defendants' conduct was extreme and outrageous or caused him severe emotional distress. The court noted that, under Restatement Second of Torts § 46, the law intervened only where the distress inflicted was so severe that no reasonable person could be expected to endure it, and plaintiff admitted in his own brief that the "severity" of his emotional distress was "probably of the garden variety," which was insufficient to meet that standard. McGreal v. Village of Orland Park, 850 F.3d 308, 315.

## C.A.7

**C.A.7,** 2016. Com. (d) quot. in case cit. and quot. in sup. Arrestees brought a claim for intentional infliction of emotional distress (IIED), inter alia, against law-enforcement officers, among others, as a result of defendants' interrogation tactics. The district court granted summary judgment in

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 175 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

favor of defendants. This court affirmed, holding that plaintiffs failed to show behavior that was sufficiently outrageous, under the standard set forth in Restatement Second of Torts § 46, Comment *d*, to support an IIED claim. The court rejected plaintiffs' argument that defendants' conduct during the interrogation was outrageous due to defendants' position of power and due to the emotional susceptibility of one of the plaintiffs due to a learning disability, concluding that defendants were entitled to try to solve crimes by investigating and interrogating suspects, and, here, acted appropriately in questioning plaintiffs using nothing more than ordinary interrogation tactics. Cairel v. Alderden, 821 F.3d 823, 836.

**C.A.7,** 2009. Com. (d) cit. in disc. Black inmate of state prison filed a federal civil-rights action against state department of corrections and prison personnel in connection with an incident in which a white guard hung a noose from the ceiling for plaintiff and others to see. The district court dismissed the suit. Affirming in part, this court held that the district court properly dismissed plaintiff's claim that the incident constituted cruel and unusual punishment in violation of his federal constitutional rights. The court noted that, while plaintiff stated that he was afraid that the guard would "snap" and "go postal," the incident did not justify such a fear, because it was not a credible threat to kill or to inflict any other physical injury; the test for what constituted "cruel and unusual punishment" was an objective one—not the actual fear of the victim, but what a "reasonable" victim would fear. Dobbey v. Illinois Dept. of Corrections, 574 F.3d 443, 445.

**C.A.7,** 2008. Com. (d) quot. in case quot. in sup. Employees brought state-law claims for intentional infliction of emotional distress (IIED) against employer, as part of their suit for discrimination and retaliation in violation of the Family and Medical Leave Act (FMLA). The trial court, inter alia, granted summary judgment for defendant on plaintiffs' IIED claims. Affirming as to that portion of the judgment, this court held that the IIED claims failed for lack of merit, since none of the conduct complained of by plaintiffs, which included being demoted, questioned, or criticized upon return from FMLA leave, passed over for raises or given reduced raises, denied tuition reimbursements, or given unexcused absences met the standard of extreme and outrageous behavior required to state an IIED claim under Illinois law. Breneisen v. Motorola, Inc., 512 F.3d 972, 983.

**C.A.7,** 2006. Cit. in case cit. in disc., com. (d) quot. in case quot. in disc. (general cite). Former assistant professor at state university sued university's board of trustees for, in part, intentional infliction of emotional distress under the Indiana Tort Claims Act, after university failed to reappoint him for another academic year. The district court granted summary judgment for defendant. Affirming, this court held, inter alia, that plaintiff's claim for intentional infliction of emotional distress failed, since defendant's decision not to reappoint plaintiff was not extreme or outrageous in light of the accusations against him of inappropriate behavior with his students and of unsatisfactory teaching, and plaintiff presented no evidence that he suffered severe emotional distress as a result of defendant's decision. Keri v. Board of Trustees of Purdue University, 458 F.3d 620, 650, cert. denied 549 U.S. 1210, 127 S.Ct. 1331, 167 L.Ed.2d 83 (2007).

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 176 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.7,** 2003. Com. (d) quot. in case quot. in sup. After a man was arrested and unsuccessfully prosecuted for home invasion and rape, he brought 42 U.S.C. § 1983 suit against police detectives who caused his arrests. He and his wife also brought state-law claims for false arrest, defamation, and intentional infliction of emotional distress. District court granted defendants summary judgment. This court affirmed, holding, inter alia, that wife's emotional-distress claim against one of the detectives failed, because even if officer called wife a "bitch" in connection with searching her home in an alleged outrageous fashion, his use of profanity was not extreme and outrageous conduct. Although she alleged rough treatment by police, she did not identify this officer as one of those who mistreated her. Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 747.

**C.A.7,** 2003. Com. (d) quot. in case quot. in disc. After bank closed the savings account of a customer who had a series of epileptic seizures in the bank branch lobby, customer sued bank for intentional infliction of emotional distress. The district court granted bank's motion for judgment as a matter of law. This court affirmed, holding that plaintiff's emotional-distress claim failed, because there was no evidence that bank intended to cause plaintiff severe emotional distress or knew that such distress was likely to result from closing the account. The court did not need to resolve whether bank's conduct was extreme and outrageous, but it noted that bank had control over plaintiff's entire savings and that it acted in a callous way to handle the serious medical condition of a long-time customer. Sanglap v. LaSalle Bank, FSB, 345 F.3d 515, 518.

**C.A.7,** 2001. Cit. in disc. Chapter 7 debtor sued creditor for alleged violation of automatic stay, claiming that creditor sought reaffirmation of its debt too aggressively. The bankruptcy court granted creditor summary judgment. The district court affirmed. Affirming, this court held that debtor could not recover damages for purely emotional injuries under the damages section of stay provision. Aiello v. Providian Financial Corp., 239 F.3d 876, 880.

**C.A.7,** 2001. Com. (d) quot. in case quot. in sup. and cit. generally in disc. Homeowner sued village mayor and fire chief for violations of 42 U.S.C. § 1983 and intentional infliction of emotional distress, alleging that defendant caused fire that destroyed his house and did not use best efforts to fight it. District court granted defendant judgment as a matter of law on emotional-distress claim and granted defendant's motion for judgment n.o.v. on § 1983 claim. This court reversed and remanded as to emotional-distress claim, holding, inter alia, that whether defendant was responsible for setting fire, such that he could be said to have engaged in extreme and outrageous conduct, was jury question where the house burned under questionable circumstances and property's condition was a source of longstanding animosity in village. Honaker v. Smith, 256 F.3d 477, 490, 496.

**C.A.7,** 2000. Quot. in case quot. in disc., com. (d) cit. in case cit. in disc. Employee sued employer for intentional infliction of emotional distress, among other claims, asserting that his co-workers and supervisors tormented him because he was mentally ill. District court granted employer summary judgment. This court affirmed, holding that plaintiff's emotional-distress claim failed, because he could not show that the employer intended to harm him, a requirement under state law. Plaintiff did not assert that the persons who tormented him were acting pursuant to a decision or

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 177 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

policy made through employer's regular decision making channels by persons authorized to do so. The employer's refusal to allow him to work overtime and the denial of a position change did not constitute outrageous conduct. However, the court rendered no opinion as to whether the other acts committed by plaintiff's co-workers and supervisors constituted extreme and outrageous conduct. Holbrook v. Lobdell-Emery Mfg. Co., 219 F.3d 598, 600-602, certiorari denied 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 489 (2000).

**C.A.7,** 1998. Com. (j) quot. in case quot. in disc. Individual sued host of nationally syndicated television talk show for tortious interference with contract, tortious interference with prospective economic advantage, defamation, and intentional infliction of emotional distress, alleging that defendant thwarted his plans to sell the tabloid press a story detailing their illicit drug use. The district court dismissed the complaint. Affirming in part, reversing in part, and remanding, this court held that plaintiff's allegations were sufficient to state claims for tortious interference and defamation; however, defendant's conduct, which was not extreme and outrageous, did not give rise to a cause of action for intentional infliction of emotional distress. Cook v. Winfrey, 141 F.3d 322, 331.

**C.A.7,** 1998. Quot. in case quot. in disc. Employee sued employer and union for breach of the duty of fair representation under the Labor Management Relations Act (LMRA) and for intentional infliction of emotional distress. The district court entered summary judgment for defendants. Affirming, this court held that union did not act arbitrarily, discriminatorily, or in bad faith in pursuing and processing plaintiff's grievances against employer, and that the LMRA displaced state law with regard to the tort of intentional infliction of emotional distress, because resolution of the claim, specifically whether defendants' conduct was extreme and outrageous, required interpretation of the parties' collective-bargaining agreement. Filippo v. Northern Indiana Public Service Corp., 141 F.3d 744, 750.

**C.A.7,** 1997. Adopted in case quot. in disc. Former employee who had injured his back at work sued employer for, in part, intentional infliction of emotional distress. The district court granted summary judgment for plaintiff. Affirming in part, this court held, inter alia, that plaintiff's supervisor's act of yelling at plaintiff out of the presence of others about his work restrictions and defendant's refusal to reassign plaintiff to the quality control department to accommodate his disability were not the sort of extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress under Indiana law. McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1167.

**C.A.7,** 1997. Com. (d) quot. in case quot. in disc. Former employee who was diagnosed with bipolar disorder sued former employer for violations of the Americans with Disabilities Act (ADA), alleging that he was terminated because of his illness. Employee also asserted a claim for intentional infliction of emotional distress in connection with the manner in which he was dismissed. The district court entered judgment on a jury verdict for employer on the ADA claim, and for employee on the claim for intentional infliction of emotional distress. Affirming in part, reversing in part, and remanding, this court held, in part, that employer's actions in dismissing

Case 2:25-cv-00220　Document 25-3　Filed on 10/28/25 in TXSD　Page 178 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

employee, which included calling him at home during his vacation and lying about the reasons for the dismissal, were not so outrageous as to support recovery for intentional infliction of emotional distress. Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567.

**C.A.7**, 1995. Com. (j) cit. in headnote and cit. and quot. in sup., com. (p) quot. in sup. Associate producer of play sued playwright-employer for sex discrimination, breach of contract, and tortious infliction of emotional distress, after she was discharged. The district court entered judgment on a jury verdict for plaintiff on the emotional-distress claim. Affirming in part, this court held, inter alia, that defendant's conduct in firing plaintiff between 12 and 40 times and promptly rehiring her (all but the last time), following her around at work, stalking her during nonworking hours, banging on her apartment door late at night, calling her 10 to 30 times a night, and leaving messages on her answering machine that he hated her and wished her dead was extreme and outrageous, and the emotional distress that it inflicted was sufficiently severe to support the jury's verdict. Bristow v. Drake Street Inc., 41 F.3d 345, 346, 349, 350.

**C.A.7**, 1993. Coms. (d) and (j) quot. in cases cit. in disc. A black former employee sued her employer, alleging race discrimination in her transfer from a managerial to a nonmanagerial position. Affirming a grant of summary judgment for the employer, the court of appeals held, inter alia, that, under Illinois law, allegations that the employee was not allowed to supervise white subordinates, was reprimanded for no reason, was refused participation in a management incentive fund, was forced out of her management position, was falsely accused of poor sales and threatened with discipline, and was excluded from office activities did not establish the level of extreme and outrageous conduct needed to support a claim for intentional infliction of emotional distress. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703.

**C.A.7**, 1993. Com. (d) quot. in part in disc. A plaintiff sued her brother for intentional infliction of emotional distress allegedly resulting from his preventing reconciliation with her mother and breaching a fiduciary duty to convince the mother to give money to plaintiff. Affirming the district court's grant of summary judgment for the brother, this court held, inter alia, that, under Illinois law, the brother's denial of entry to his home so that plaintiff could visit her mother and his preventing the mother from taking a handful of plaintiff's telephone calls over the course of a year were not extreme and outrageous conduct that would support the emotional distress claim. The court noted that plaintiff showed up unannounced at the brother's home in the company of one of the brother's ex-wives and that plaintiff had telephoned while her mother was napping. Lopacich v. Falk, 5 F.3d 210, 212.

**C.A.7**, 1989. Coms. (d) and (g) quot. in cases quot. in disc., com. (j) quot. in case quot. in ftn. An employee sued her employer in state court for intentional infliction of emotional distress arising from actions allegedly in retaliation for a back injury that restricted the employee's work hours and prevented her from performing voluntary stress-laden work. Upon removal, the district court dismissed the claim for failure to exhaust grievance and arbitration remedies under the collective bargaining agreement as required under federal law. This court affirmed, holding that since the emotional distress claim consisted of allegedly extreme and outrageous acts directly related to the

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 179 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

terms and conditions of her employment, resolution of her claim would depend on an analysis of the terms of the collective bargaining agreement. Since the employee did not exhaust her grievance procedures, the claim was preempted by federal law and was properly dismissed. Douglas v. American Information Technologies Corp., 877 F.2d 565, 570-571.

**C.A.7,** 1982. Com. (d) cit. in conc. and diss. op. The plaintiff brought a diversity action against officers of the insurance company with whom her husband had been employed, seeking damages for intentional infliction of emotional distress. The plaintiff alleged that the termination of her husband's employment was a retaliatory action taken against the plaintiff on account of the plaintiff's exercise of loan privileges. The lower court granted the defendants' motion to dismiss the claim upon the ground that the husband was merely an employee at will of the defendants and the defendants had a legal right to terminate his employment without reasonable cause. The plaintiff appealed and this court reversed and remanded. It was determined that the lower court erred in finding that a cause of action for emotional distress could not be sustained where the defendants' conduct was the exercise of a legal right. The majority held that because the defendants had no right to punish the plaintiff, the alleged fact that they did so by firing the plaintiff's husband made the defendants' conduct extreme or excessive. The concurring and dissenting judge disagreed, arguing that the defendants' action was not so outrageous as to go beyond all bounds of decency to sustain a cause of action for intentional infliction of emotional distress, nor were the defendants taking advantage of a known vulnerability of the plaintiff. Geist v. Martin, 675 F.2d 859, 864.

**C.A.7,** 1972. Subsec. (1) and com. (e) and (f) cit. in sup. The plaintiff was the beneficiary of her husband's accidental death policy with the defendant. She alleged that her husband died accidentally and that defendant had no valid defense to her claim; yet defendant, knowing of the financial distress, repeatedly refused payment and attempted to thereby coerce her into compromising her claim. Plaintiff sought, in Count I, payment on the policy, and in Counts II and III damages for intentional infliction of severe emotional distress. The lower court dismissed Counts II and III; Count I was dismissed without prejudice and later settled in a state court. The Circuit Court reversed as to Counts II and III, holding that the Illinois Supreme Court had recognized the "new tort" of intentional infliction of emotional distress, and if plaintiff's allegations proved true she could be awarded compensatory, but not punitive damages. Eckenrode v. Life of America Insurance Company, 470 F.2d 1, 4.

**C.A.8,**

**C.A.8,** 2021. Com. (d) quot. in case quot. in sup. Former employee of a state agency filed a claim for intentional infliction of emotional distress against former employer, state, and certain former supervisors and coworkers, alleging that defendants suspended and later terminated her on the pretextual ground that she had engaged in insurance fraud, in retaliation for her testimony before a state oversight committee that had launched an unrelated investigation of the agency. The district court granted summary judgment for defendants. Affirming, this court held that defendants' conduct was not sufficiently outrageous to satisfy the outrageousness prong of her claim for

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 180 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

intentional infliction of emotional distress under Restatement Second of Torts § 46. The court reasoned, in part, that while one supervisor's testimony about her might have not been precisely accurate, it was hardly "beyond all possible bounds of decency." Ackerman v. State of Iowa, 19 F.4th 1045, 1061.

## C.A.8

**C.A.8,** 2009. Adopted in case quot. in sup., com. (d) quot. in case quot. in sup., com. (j) quot. in sup. Male former employee brought a claim for intentional infliction of emotional distress (IIED) against former employer, alleging that two of defendant's managers falsely accused him of making homosexual advances to a co-worker, and that, as a result, he began having panic attacks and was diagnosed with posttraumatic stress disorder. The trial court granted summary judgment for defendant. Affirming, this court held that, under Missouri law, managers' alleged conduct was not sufficiently outrageous to state a claim for IIED. The court further held that plaintiff's reaction was not one consistent with a reasonable person under the circumstances; the decline of plaintiff's mental health was unfortunate, but there was no evidence that either manager, or anyone else, knew or suspected how strongly he would react to the allegation or realized that he was in a fragile or vulnerable state. Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310, 311.

**C.A.8,** 2006. Com. (d) quot. in case quot. in sup. Former employee sued former employer and supervisor for, in part, intentional infliction of emotional distress, alleging that she suffered a miscarriage and depressive symptoms due to the distressing manner in which supervisor, knowing that she was pregnant, informed her that her position was being eliminated and that she would be forced to relocate. The district court granted summary judgment for defendants. Affirming, this court held, inter alia, that the facts of this case did not support the tort, since termination from a job, while potentially upsetting, did not in itself constitute extreme or outrageous conduct, and employee did not additionally allege a severe medical problem that made her vulnerable to emotional distress or that supervisor was hostile to her when he informed her of the news. Reynolds v. Ethicon Endo-Surgery, Inc., 454 F.3d 868, 873.

**C.A.8,** 2001. Coms. (d)-(f) cit. and quot. in conc. and diss. op. Student and her parents sued band teacher, among others, for, in part, intentional infliction of emotional distress. Affirming the district court's dismissal of the claim, this court held that defendant's actions in calling student "retarded," "stupid," and "dumb" in front of her classmates and throwing a notebook at her face, while unworthy of one entrusted with the responsibility of educating students, did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Concurring and dissenting opinion argued that, because defendant intentionally publicly humiliated student, knowing that she was susceptible given her youth and the fact that she was undergoing mental-health counseling, his conduct met the extreme-and-outrageous element of plaintiffs' claim. Costello v. Mitchell Public School Dist., 266 F.3d 916, 927.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 181 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.8,** 1998. Com. (b) cit. in sup. Meatcutter who claimed that employer allowed its supervisors to harass him and transfer him to a store farther away from his home in retaliation for his criticism of employer's failure to enforce proper sanitation procedures in the meat departments of employer's stores sued employer in state court for, in part, slander and intentional and negligent infliction of emotional distress. Employer removed the case to federal district court, which granted employer's motion for summary judgment. Vacating and remanding, this court held that none of plaintiff's claims was preempted by the Labor Management Relations Act and that the district court thus had no removal jurisdiction over the case. The court said that the fact that the collective-bargaining agreement prohibited transfer of employees without justification or for discriminatory reasons had no legal significance in the context of this case, since plaintiff's claims were not dependent on interpretation of the collective-bargaining agreement, but on consideration of employer's conduct and motives and the effect of its behavior on plaintiff. Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1052.

**C.A.8,** 1997. Com. (d) cit. in case quot. in disc. Employees at a residential program for developmentally disabled individuals sued the for-profit organization that operated the program, alleging sexual harassment due to the organization's failure to respond appropriately to the conduct of a mentally incapacitated resident toward program employees. District court granted the organization summary judgment. This court affirmed in part, reversed in part, and remanded, holding, inter alia, that plaintiffs presented insufficient evidence to prove a claim of either intentional or negligent infliction of emotional distress under Minnesota law. The organization's response to plaintiffs' concerns was not extreme and outrageous conduct. Crist v. Focus Homes, Inc., 122 F.3d 1107, 1112.

**C.A.8,** 1997. Cit. in disc., com. (f) quot. in disc. Employees sued their former employer for, among other claims, the tort of outrage, alleging that the employer tolerated various forms of sexual harassment and other clearly inappropriate behavior by its supervisors and employees. The district court granted judgment as a matter of law to the employer on two of the plaintiffs' outrage claims. This court affirmed in part, reversed in part, and remanded, holding, inter alia, that Arkansas courts would continue to adhere to the traditional elements of outrage, and that notice of peculiar susceptibility to emotional distress would merely be one factor given special emphasis when an aggrieved employee asserted an outrage claim. The court was confident that the Arkansas Supreme Court would hold that the right to be free from conduct of this sort extended to every person and not just to those known to possess temperaments that were peculiarly fragile. Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 690, 691.

**C.A.8,** 1991. Com. (j) quot. in case quot. in sup. A landlord sued the city and several police officers for intentional infliction of emotional distress, inter alia, alleging that he suffered illness and mental anguish as a result of police action in a civil dispute over abandoned property that led to the plaintiff's wrongful arrest. The district court granted summary judgment for the defendants. Affirming in part, this court held that the plaintiff's claim failed to meet the requirement that the emotional distress be so severe that no reasonable person could be expected to endure it. Peterson v. City of Plymouth, Minn., 945 F.2d 1416, 1421.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 182 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.8,** 1987. Com. (d) cit. in sup. A blind black attorney sued a legal services organization for employment discrimination and intentional infliction of emotional distress after the attorney was discharged from his position for violating his employment contract. The district court found for the organization, stating that since there was no basis for other discrimination claims, there was no support for the claim of intentional infliction of emotional distress. This court affirmed in part, concluding that the conduct complained of was not sufficiently outrageous to state a claim for intentional infliction of emotional distress, but it reversed and remanded on plaintiff's claim of retaliatory discharge. Johnson v. Legal Services of Arkansas, Inc., 813 F.2d 893, 901.

**C.A.8,** 1987. Com. (d) cit. in sup. The scores of a teacher who did very well on a state-mandated test were mistakenly sent to someone else. The teacher sued the testing company for intentional infliction of emotional distress and invasion of privacy. The trial court granted the defendant's motion for summary judgment. Affirming, this court held that the defendant's conduct, albeit negligent, did not begin to meet the standard of extreme and outrageous conduct and that the simple disclosure of private information to one other person did not involve publicity of a highly objectionable kind. Wood v. National Computer Systems, Inc., 814 F.2d 544, 545.

**C.A.8,** 1986. Com. (d) quot. in part in case cit. in sup. After arson destroyed a home, the owner's insurer requested her to submit personal and business financial records as part of its investigation. She refused to submit her business records, and the insurer sought a declaratory judgment that she had breached the insurance policy. She counterclaimed for, among other things, emotional distress. The lower court ruled in favor of the insurer on all issues, and this court affirmed. The owner alleged that her distress was solely attributable to the insurer's failure to pay her claim. This statement, however, failed to raise a material issue of fact sufficient to preclude the award of summary judgment, since Missouri law required conduct so outrageous in character and extreme in degree as to exceed all possible bounds of decency. Safeco Ins. Co. of America v. Costello, 799 F.2d 412, 414.

**C.A.8,** 1982. Cit. in disc., com. (j) cit. in disc. and quot. in part in disc. A former air traffic controller sued the air controllers union to recover for damages allegedly caused by the outrageous conduct of the union's agents. The plaintiff alleged that he had been shunned by several of the controllers after a disagreement he had with the local over its approach to labor/management relations, and that another union member tried to cause a systems error to "get at" the plaintiff. The plaintiff also claimed that the union tortiously attempted to interfere with his employment relationship with the Federal Aviation Administration, and caused him to suffer great mental anguish. The lower court entered judgment for the plaintiff. This court vacated the lower court and remanded. The court admitted that Missouri recognized the tort of emotional distress, having the following elements: extreme and outrageous conduct, intent or recklessness, and severe emotional distress. It noted that while the facts underlying the outrageous conduct and intent were collaterally estopped due to their litigation and adjudication in an earlier administrative proceeding, the union was not estopped from denying liability for the resulting emotional distress, as this element was not an issue in the administrative proceeding. The court stated that it was a jury issue to determine whether severe

emotional distress existed; although proof of emotional distress could be inferred from extreme and outrageous conduct, this inference was simply evidence and did not establish the necessary proof of emotional distress as a matter of law. The lower court's failure to decide the liability issue, because it felt that it was fully adjudicated in the administrative proceeding, was error. The court asserted that the element of emotional distress must be proved for the purposes of liability as well as damages. The court remanded on the issue of all damages, asserting that the total damage award seemed overgenerous, and suggested that the award of damages be itemized. Anthan v. Professional Air Traffic Controllers, 672 F.2d 706, 709-711.

**C.A.8,** 1982. Cit. generally in ftn. A farmer brought an action for intentional infliction of emotional distress against the federal government under the Federal Tort Claims Act alleging that the local Agricultural Stabilization and Conservation Service Committee (ASCS) had denied him the right to participate in the United States Department of Agriculture's feed grain program and had demanded repayment for the funds he had received from the program for certain prior years which it now claimed the plaintiff was not entitled to. The lower court granted partial summary judgment for the federal government, finding that the plaintiff was collaterally estopped from asserting that the feed program regulations were violated because, in an earlier case in the Court of Claims, it had already been determined that ASCS officials had not violated the regulations. The lower court held, however, that ASCS actions could constitute intentional emotional distress apart from being a violation of the feed program regulations, and that these acts were not protected by the discretionary function exception to the Federal Tort Claims Act. This court vacated the lower court decision and remanded because it could not determine whether the last act of the continuing tortious activity complained of occurred within the statute of limitations for the Federal Tort Claims Act. The court also found that the discretionary function exception to the Federal Tort Claims Act did not bar the plaintiff's suit as the decision to drop him from the program was made at an operational level not a policy or planning level. Gross v. United States, 676 F.2d 295, 304, appeal after remand 723 F.2d 609 (8th Cir.1983).

**C.A.8,** 1981. Cit. in ftn. and subsec. (2) cit. and quot. in ftn. Action was brought against a religious foundation and its principals seeking to recover for alienation of the affections of the plaintiffs' son and for intentional infliction of emotional distress. The lower court granted that defendants' motion to dismiss and the plaintiffs appealed. This court stated that generally a parent has no right to recover for the alienation of a child's affection. The court also stated that the plaintiffs, in order to state a cause of action for intentional infliction of emotional distress, must show extreme and outrageous conduct, willfully or wantonly performed, which caused severe emotional distress. However, the court held that the plaintiffs' claims, even if they would otherwise be recognized, were barred by the applicable statute of limitations. The judgment of the lower court granting the defendants' motion to dismiss was affirmed. Orlando v. Alamo, 646 F.2d 1288, 1291.

**C.A.8,** 1976. Subsec. (1) quot. and fol. and coms. (d) and (h) quot. and fol. and com. (i) cit. in sup. A customer brought this action against a moving company, alleging that the company had inflicted emotional distress by repeatedly misrepresenting, for a period of over 100 days, the time when the customer's household goods would be delivered. The district court had entered summary

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 184 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

judgment dismissing the complaint. On appeal, the defendant contended, inter alia, that as a matter of law, his conduct was not sufficiently outrageous to impose liability. In rejecting this argument and remanding for further proceedings, this court found that, in the absence of any explanation by the defendant, a reasonable jury could infer that the repeated misrepresentations were knowing falsehoods. Additionally, the court observed that a jury could find the likelihood that the plaintiff would suffer emotional distress was substantially certain, and, therefore, the defendant intended this result. It might also be inferred that the defendant realized at an early time that the plaintiff was experiencing distress from being deprived of her belongings, and that the repeated false assurances were made in reckless disregard of the plaintiff's emotional state. Hanke v. Global Van Lines, Inc., 533 F.2d 396, 399, 400.

## C.A.9

**C.A.9,** 2016. Com. (j) cit. in case quot. in sup.; com. (f) quot. in sup. Student who had behavioral disabilities, and her parents, filed, inter alia, a claim for intentional infliction of emotional distress against school district and its employees, alleging that defendants failed to research and provide appropriate interventions and accommodations for student, attempted to restrain student, escorted student to an intervention room, and enlisted the assistance of a school security guard—an off-duty police officer—who ultimately restrained and arrested student. The district court granted summary judgment for defendants. This court affirmed in part, holding that there was no genuine issue of material fact as to whether defendants' conduct was extreme and outrageous. Citing Restatement Second of Torts § 46, Comments *f* and *j*, the court noted that the determinations of whether a defendant's conduct was outrageous and whether a plaintiff's emotional distress was severe were affected by the defendant's knowledge that the plaintiff was particularly susceptible to emotional distress. A.G. v. Paradise Valley Unified School Dist. No. 69, 815 F.3d 1195, 1209.

**C.A.9,** 2007. Com. (d) quot. in sup. Former employee brought various claims against former supervisor and employer, alleging sexual harassment by supervisor. The district court granted summary judgment for defendants. Reversing and remanding plaintiff's claim for intentional infliction of emotional distress against supervisor, this court held that a reasonable trier of fact could find that supervisor's actions, particularly in an employment context, rose to the level of extreme or outrageous conduct necessary to state such a claim under Arizona law, in light of plaintiff's allegations that supervisor repeatedly propositioned her both inside and outside of the office, and on one occasion followed her into a bathroom and waited for her to exit a toilet stall before grabbing her and sticking his tongue in her mouth. Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1059.

**C.A.9,** 2007. Cit. in sup., com. (d) quot. in case quot. in sup. Mother of suspect who was shot and killed by police officer brought a state-law claim for intentional infliction of emotional distress (IIED), as part of her civil-rights action under § 1983, against city, county, and police officer. The district court granted summary judgment for defendants. Affirming, this court held that police officer's behavior could not have been outrageous, because officer acted in an objectively

reasonable manner, and thus plaintiff's IIED claim failed. The court noted that, when fellow officers radioed that suspect was yelling threats at them and shooting at them, defendant officer, who had observed suspect's agitated behavior, saw him carrying a rifle, and knew that he had earlier that night shot at a car full of people, had probable cause to believe that suspect posed an immediate danger to those officers. Long v. City and County of Honolulu, 511 F.3d 901, 908.

**C.A.9,** 2004. Com. (h) quot. in case cit. in disc. Employee terminated for violating employer's harassment policy sued employer for religious discrimination, constitutional violations, wrongful discharge, and intentional infliction of emotional distress. The district court granted summary judgment for employer. Affirming, this court held, inter alia, that employee's intentional-infliction-of-emotional-distress claim failed because employer's actions in terminating plaintiff without pay, accusing plaintiff of having performed an "exorcism," and accusing her of proselytizing and harassing a gay subordinate could not be regarded as so "extreme and outrageous" as to permit recovery. Bodett v. CoxCom, Inc., 366 F.3d 736, 747.

**C.A.9,** 2003. Com. (j) quot. in case quot. in sup. After a range fire that started on railroad's right-of-way destroyed two families' mobile homes and personal property, the two families sued railroad for negligence and negligent infliction of emotional distress. Montana federal district court entered judgment on jury verdict for plaintiffs. This court affirmed, holding, inter alia, that one of the families presented sufficient evidence to prove their claim for negligent infliction of emotional distress, as district court correctly allowed jury to determine whether family suffered distress so severe that no reasonable person could be expected to endure it. During trial, the jury heard extensive testimony from the family members about their emotional health. Turner v. Burlington Northern Santa Fe R. Co., 338 F.3d 1058, 1062.

**C.A.9,** 2002. Com. (d) quot. in sup. (Erron. cit. as § 46(d).) Airline ground personnel who were fired after they were involved in an accident that resulted in damage to an airplane sued airline for violations of federal and state employment discrimination laws and for intentional infliction of emotional distress. Affirming the district court's grant of summary judgment for defendant, this court held, inter alia, that, even if defendant were liable for Title VII violations, its conduct in firing plaintiffs was not sufficiently extreme and outrageous to support claims for intentional infliction of emotional distress. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1068.

**C.A.9,** 2000. Com. (b) quot. in case quot. in disc. After insurer withdrew its defense of insured real-estate developers in a construction-defect suit and refused to pay the resulting default judgment, developers sued insurer for bad-faith refusal to defend, seeking, in part, consequential damages for emotional distress. Affirming in part the district court's entry of judgment on a jury verdict for plaintiffs, this court held, inter alia, that, since there was evidence that plaintiffs suffered substantial financial loss, they were entitled, under California law, to recover damages for their emotional distress incident to defendant's bad-faith denial of coverage. Pershing Park Villas v. United Pacific Ins., 219 F.3d 895, 903.

**C.A.9,** 1996. Com. (g) cit. in sup. Construction contractor's employee at electric utility's nuclear power plant was terminated after utility summarily barred him from its plant following its undercover investigation linking employee to conversations at the plant regarding an off-site drug transaction; employee sued utility for, inter alia, intentional infliction of emotional distress. On remand, the district court entered judgment on a jury verdict for plaintiff on his emotional distress claim and denied defendant's motion for judgment as a matter of law. Reversing in part, this court held that the district court erred in denying defendant's claim for judgment as a matter of law, since defendant did not assert in outrageous fashion or in bad faith its right to exclude plaintiff from its property but merely asked him to leave. Mathis v. Pacific Gas and Elec. Co., 75 F.3d 498, 505.

**C.A.9,** 1994. Cit. in sup. Plane owners who refused consent to warrantless seizure of logbooks were arrested and told that U.S. Customs seizure of plane included logbooks, which plaintiffs had removed. Although U.S. attorney advised Customs officers that his office would not prosecute, they continued bookings, telling plaintiffs that charges would be filed. Arrestees sued federal government for intentional infliction of emotional distress, inter alia. This court affirmed the district court's dismissal on ground of sovereign immunity to extent claim involved plane's seizure and prosecutorial decisions but reversed dismissal to extent claim involved arrests. Noting that Customs supervisor's admission of arresting plaintiffs because they "made us mad," along with plaintiffs' allegation that they were paraded handcuffed through airport lobby, created material fact issue whether Customs officers arrested plaintiffs intending to inflict emotional distress, the court held that, if plaintiffs could prove that intent, they could assert both false-arrest and emotional-distress claims. Gasho v. U.S., 39 F.3d 1420, 1434.

**C.A.9,** 1994. Quot. in sup., com. (e) cit. in sup. A female casino employee sued the casino for, among other claims, sexual harassment and intentional infliction of emotional distress, after her supervisor publicly humiliated her through crude sexually explicit remarks. The Nevada federal district court granted defendant summary judgment. Reversing and remanding, this court concluded, inter alia, that it was unprepared to hold as a matter of law that public humiliation of an employee by her employer, accomplished through rude, crude sexually explicit remarks and actions, could not constitute intentional infliction of emotional distress. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1466, cert. denied 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995).

**C.A.9,** 1993. Com. (d) quot. in part in disc. A former employee sued her employer and several individual coemployees, alleging sex and age discrimination. Affirming dismissal of the claims against the coemployees, this court held that liability did not extend to them. A claim for emotional distress damages from denial of unemployment benefits was time-barred under California law, but even if it were not, such a denial was a common business decision and was simply not outrageous conduct sufficient to support an emotional distress claim. Miller v. Maxwell's Intern., Inc., 991 F.2d 583, 586.

**C.A.9,** 1992. Com. (d) cit. in sup. A county employee sued the county and other employees for age and sex discrimination and intentional infliction of emotional distress. Affirming the district court's

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 187 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

dismissal, the court of appeals held that plaintiff's allegation of a co-worker's romantic involvement with a supervisor did not state a claim for "hostile work environment" sex discrimination, that the county's actions regarding plaintiff's overtime, job responsibility, job reclassification, and transfer were not due to age-based discrimination where the county had legitimate nondiscriminatory reasons for its actions, and that plaintiff had not alleged sufficiently extreme and outrageous conduct by defendants to support a claim for intentional infliction of emotional distress. Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 591.

**C.A.9,** 1992. Com. (d) cit. and quot. in disc., com. (g) cit. in disc. Foreign seamen discharged in foreign ports sued the shipowners for intentional infliction of emotional distress, inter alia, after the shipowners told them to lie to their union about their substandard wages and noted in their seafarers' books that the seamen were discharged for requesting repatriation upon filing a wages claim to arrest the vessel. Washington federal district court entered judgment for seamen and Oregon federal district court entered judgment for shipowners. Upon consolidation, this court held, in part, that a claim for intentional infliction of emotional distress could not lie where shipowners were legally entitled to record accurate statements as to the employees' performance and the reason for discharge. The court also found that the act of making the seamen lie to the union was not beyond all possible bounds of decency and utterly intolerable in a civilized society. Su v. M/V Southern Aster, 978 F.2d 462, 473, 474, cert. denied ___ U.S. ___, 113 S.Ct. 2331, 124 L.Ed.2d 244 (1993).

**C.A.9,** 1990. Com. (d) quot. in case quot. in disc. A boiler operator, who worked under a collective bargaining agreement (CBA), was transferred to a lower position and subsequently fired when his employer could no longer reasonably accommodate the employee's religious need to observe his sabbath. The employee sued the employer for, among other things, wrongful termination and intentional infliction of emotional distress. The district court granted the employer's motion for summary judgment holding that the claims were preempted by the statute of limitations of § 301 of the Labor Management Relations Act. This court affirmed, holding, inter alia, that § 301 preempted the plaintiff's claim for intentional infliction of emotional distress, because such a claim arose out of his discharge and the defendant's conduct leading up to it and would require the court to decide whether the discharge was justified under the terms of the CBA. The court would have to examine and interpret the terms of the CBA dealing with "just cause" discharge and loss of seniority rights to determine whether the defendant's behavior was extreme and outrageous. Cook v. Lindsay Olive Growers, 911 F.2d 233, 239.

**C.A.9,** 1990. Cit. in ftn. An army civilian employee who alleged that she was sexually harassed by her supervisor sued the government under the Federal Tort Claims Act for intentional infliction of emotional distress, inter alia. The district court granted the defendant's motion for summary judgment. Reversing and remanding, this court held that the plaintiff's claim was not excluded as a matter of law from the Federal Tort Claims Act, since the conduct on which the plaintiff's claim relied did not involve a threat of imminent battery, an essential element of assault, which was excluded from the Federal Tort Claims Act. Sheehan v. U.S., 896 F.2d 1168, 1171, opinion amended 917 F.2d 424 (9th Cir.1990).

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 188 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.9,** 1989. Com. (d) quot. in disc. and in sup. A deputy's report of alleged violations of departmental rules and state criminal laws involving three co-workers led to a department-wide investigation. The deputy requested to be transferred to ensure his own safety, but the request was not honored. He sued the county and the deputy who authorized the investigation, claiming, inter alia, that the defendants' response to his whistle-blowing activities constituted an intentional infliction of emotional distress. The district court awarded summary judgment to the defendants. Affirming, this court held in part that the plaintiff failed to prove that the defendants' actions were so extreme or outrageous as to cause the plaintiff severe emotional distress. The court stated that there was no evidence that the defendants acted to punish or retaliate against the plaintiff. In addition, a statement by a corrections officer that he wished he knew who had reported the violations because "his ass is grass" was a mere threat and was not made directly to the plaintiff. Thomas v. Douglas, 877 F.2d 1428, 1435.

**C.A.9,** 1985. Cit. in disc., com. (d) quot. in case quot. in disc. The plaintiffs brought a federal claim under § 1983 for use of excessive force during their arrests and pendent state claims for assault and battery and intentional infliction of emotional distress against a sheriff's department for alleged intentional violation of their constitutional rights while they were being taken to jail. The court of appeals affirmed a jury verdict for the plaintiffs, holding that a violation of the Fourth Amendment may support a § 1983 claim despite the availability of state causes of action. The court noted that in an action for intentional infliction of emotional distress, the defendant's conduct must have been extreme and outrageous in degree, and that there was ample evidence in the present case to go to the jury on this issue. Robins v. Harum, 773 F.2d 1004, 1010.

**C.A.9,** 1982. Cit. and quot. in sup. The plaintiff's barn was burned under circumstances indicating that the fire might have been set. The plaintiff told the fire marshall that he had had trouble with juveniles vandalizing his property. He also told the fire marshall and the defendant insurance company that the barn might have double coverage under policies he held with the defendant and another insurer. The defendant's adjuster did not look at the other policy, although offered, but reported the double coverage to the state police. The police suggested to the defendant that the plaintiff might be charged with arson and that a deposition would aid their investigation. The defendant's agent obtained a sworn statement from the plaintiff by assuring him that the information gathered would be used only to determine coverage. Thereafter, the defendant's attorney delivered a copy of the plaintiff's statement to the police. The police investigation terminated with the conclusion that there was insufficient evidence to charge the plaintiff with arson. The defendant knew this, but an agent of the defendant identified himself as a state policeman, questioned the plaintiff's neighbors concerning the fire, and implied that the plaintiff had set it. The defendant insurer then warned the plaintiff that if he pursued his claim, the defendant would have him charged with arson. After the plaintiff filed a claim, he was summoned before a grand jury; the grand jury refused to indict. The plaintiff eventually collected on the policy and sued the defendant for outrageous conduct, alleging severe emotional distress. The lower court awarded both general and punitive damages. The defendant argued on appeal, inter alia, that its conduct had not been outrageous. This court stated that Oregon recognized the tort of outrageous

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 189 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

conduct as defined by the Restatement. The court found that the evidence supported the conclusion that the defendant had not acted reasonably for an insurer investigating a claim. Affirmed. Green v. State Farm Fire And Cas. Co., 667 F.2d 22, 23-24.

**C.A.9,** 1972. Cit. and quot. in part but dist. Plaintiff sought to recover against an oil company for mental anguish when his car rolled into an intersection out of control after a service station attendant allegedly added something other than brake fluid to the braking system of plaintiff's car. The court held that plaintiff could not recover damages for mental anguish without bodily harm, or compensable damage flowing from emotional distress or contact between his car and another object, or without showing malice, intentional introduction of defective brake fluid, extreme and outrageous conduct, or conduct involving an unreasonable risk of causing distress. Wetzel v. Gulf Oil Corporation, 455 F.2d 857, 860, 861.

**C.A.9, Bkrtcy.App.**

**C.A.9, Bkrtcy.App.**2003. Cit. and quot. but dist., cit. in case quot. in disc., quot. in diss. op. Chapter 13 debtor sued creditor for willfully violating the automatic stay by obtaining a state judgment against it, asserting, in part, a claim for severe emotional distress. The bankruptcy court awarded emotional-distress damages and attorney's fees, but refused to award punitive damages. Vacating in part, this court remanded for a determination of whether debtor suffered a significant economic loss caused by the stay violation, and whether any loss he suffered caused him emotional injury. The dissent argued that emotional-distress damages could be awarded regardless of whether there was economic loss. In re Stinson, 295 B.R. 109, 121, 125.

**C.A. 10,**

**C.A.10,** 2016. Cit. in sup.; subsec. (1) cit. in case cit. in sup.; com. (d) quot. in case quot. in sup.; coms. (e) and (f) cit. in sup. Former employee brought claims sounding in, among other things, intentional infliction of emotional distress against former employer in connection with allegations that he was repeatedly sexually harassed by various supervisors and co-workers over the eight years of his employment. The district court granted summary judgment for employer. This court reversed as to employee's emotional-distress claim and remanded, holding that reasonable persons could differ as to whether the alleged conduct was extreme and outrageous under Restatement Second of Torts § 46. The court pointed to evidence that employee's direct and indirect supervisors abused their power over employee, that the sexual harassment took place over a considerable period of time, that employee was the victim of unwelcome and non-negligible physical contact, and that employee's tormentors knew that he suffered from PTSD but targeted him anyway. Hansen v. SkyWest Airlines, 844 F.3d 914, 926-928.

**C.A.10**

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 190 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.10,** 2007. Quot. in sup., cit. in case quot. in sup., com. (i) quot. in sup. Two former undercover police officers sued television station for, in part, intentional infliction of emotional distress, after it broadcast their identities and undercover status in the context of their suspected involvement in an incident of sexual assault for which they were later cleared. The district court granted defendant's motion to dismiss. Affirming, this court held, inter alia, that the mere broadcast of plaintiffs' identities and undercover status, as facts revealed in the course of accurate publication of newsworthy events, was not "so outrageous" as to be actionable under New Mexico law, even if defendant was aware that its actions could result in third parties making threats to plaintiffs. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1222, 1224.

**C.A.10,** 2007. Coms. (e) and (j) quot. in conc. and diss. op. Husband and wife brought federal civil-rights action against police officers alleging, among other things, use of excessive force, after officers physically separated wife from her telephone, escorted her from her home, and kept her in a locked patrol car for nearly an hour in connection with the arrest of husband. The trial court, inter alia, denied defendants' motions for summary judgment asserting qualified immunity. This court affirmed. A concurring and dissenting opinion noted that the only injury alleged by wife was a temporary sense of intimidation and argued that, as with cases asserting intentional infliction of emotional distress, excessive-force claims asserting only nonphysical injury should only be available where outrageous conduct caused severe emotional distress. Cortez v. McCauley, 478 F.3d 1108, 1148.

**C.A.10,** 2007. Cit. and adopted in case cit. in sup., com. (h) cit. and quot. in sup. and adopted in case cit. in sup., com. (d) cit. and quot. in ftn. and quot. in case quot. in sup. Former employee of oilfield equipment manufacturer brought Title VII claim alleging a racially hostile work environment against manufacturer, and an additional state-law claim for intentional infliction of emotional distress. The district court granted summary judgment for defendant. Affirming in part, reversing in part, and remanding, this court held that while there was a triable issue as to whether defendant created a racially hostile work environment under Title VII, the trial court did not err in concluding as a matter of law that plaintiff's supervisors' conduct, which included subjecting plaintiff to insults about his Mexican ancestry over a period of four years, was not sufficiently outrageous to sustain a claim for intentional infliction of emotional distress. Herrera v. Lufkin Industries, Inc., 474 F.3d 675, 686-688.

**C.A.10,** 2006. Quot. in case quot. in sup. As part of a wider sexual-harassment suit, former college student sued former professor for, in part, intentional infliction of emotional distress. After a jury found in favor of professor, the district court denied plaintiff's motions for judgment as a matter of law or for a new trial. Affirming, this court held, inter alia, that a reasonable jury could have concluded that defendant's alleged conduct, including the fondling of plaintiff's breasts, was not extreme and outrageous or beyond all possible bounds of decency. The court noted, among other things, that plaintiff admitted that she never objected to defendant's conduct, that she voluntarily went to his office on a number of occasions, that she gave him back massages and a Valentine's Day card, that she consented to a "sternum adjustment," and that she remained in his office after the adjustment. Escue v. Northern OK College, 450 F.3d 1146, 1158.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 191 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.10,** 2005. Cit. in case cit. in sup., cit. and quot. in ftn., coms. (d) and (j) quot. in case quot. in sup., com. (i) quot. in sup. After prison inmate committed suicide by hanging himself, his estate and family sued government under Federal Tort Claims Act for intentional infliction of emotional distress. District court entered judgment on jury verdict for plaintiffs. This court affirmed in part, reversed in part, and remanded, holding that, since district court did not make explicit findings as to severity of each plaintiff's emotional distress, remand was necessary. Plaintiffs proved elements of outrageousness and causation, in light of defendant's treatment of family, including initial nondisclosure of death's unusual circumstances and obstinacy as to authorization for autopsy. Estate of Trentadue ex rel. Aguilar v. U.S., 397 F.3d 840, 855, 856.

**C.A.10,** 2004. Com. (d) quot. in case quot. in sup. Terminated police officer sued city, police union, and district attorney, alleging constitutional violations and intentional infliction of emotional distress, inter alia. Plaintiff alleged that, after he refused to sign a union letter of no confidence against the police chief, his office was ransacked, he was no longer allowed to work flexible hours, and he did not receive requested backup assistance during an incident involving gang members. District court granted defendants summary judgment. This court affirmed, holding, inter alia, that police union's actions did not amount to intentional infliction of emotional distress, because none of the circumstance alleged by plaintiff remotely approached extreme conduct. Montgomery v. City of Ardmore, 365 F.3d 926, 942.

**C.A.10,** 2004. Cit. in case quot. in sup., com. (i) cit. in case quot. in sup. Supermarket employee sued employer for sexual harassment and retaliation, as well as store manager and another employee for extreme and outrageous conduct. The district court entered judgment in favor of employer and individual employees on the retaliation and conduct claims, but in favor of plaintiff on the sexual-harassment claim. This court reversed and remanded, holding, inter alia, that the conduct of the manager was so close to the bounds of decency that a jury should determine whether it constituted extreme and outrageous conduct designed to inflict severe emotional distress on plaintiff. Riske v. King Soopers, 366 F.3d 1085, 1089, 1090.

**C.A.10,** 2003. Cit. in case cit. in sup., com. (d) quot. in case quot. in sup. Parents of eight preschool children sued Head Start agency and others for constitutional violations and intentional infliction of emotional distress, inter alia, alleging that their children were subjected to intrusive physical examinations, including genital examinations and blood tests, on school premises without parental notice or consent. District court granted defendants summary judgment. This court affirmed in part, holding, inter alia, that plaintiffs' claim for intentional infliction of emotional distress failed, because defendants' actions did not rise to the requisite level of extreme outrageousness. Plaintiffs' own expert opined that the examinations did not go beyond the reasonable bounds of standard well-child examinations. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1218, cert. denied 540 U.S. 1179, 124 S.Ct. 1411, 158 L.Ed.2d 79 (2004).

**C.A.10,** 2001. Com. (e) cit. in case quot. in disc. Patient sued dentist and dental assistant for negligence and intentional infliction of emotional distress, after allegedly suffering injuries during

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 192 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

a dental procedure. The district court granted dental assistant judgment as a matter of law, but entered judgment on jury verdict in favor of patient against dentist. Affirming, this court held, inter alia, that dentist's conduct, which included losing consciousness as many as 10 to 15 times during plaintiff's medical procedure, satisfied the standard of extreme and outrageous conduct necessary for intentional infliction of emotional distress. Macsenti v. Becker, 237 F.3d 1223, 1242, cert. denied 533 U.S. 950, 121 S.Ct. 2593, 150 L.Ed.2d 752 (2001).

**C.A.10,** 2000. Cit. in case quot. in sup., subsec. (1) cit. in headnotes and quot. in sup., com. (j) cit. in headnote and quot. in case quot. in sup. After hoax victim whose business phone number was listed on an Internet bulletin board posting that announced the availability for sale of offensive T-shirts crudely referring to the Oklahoma City bombing received 80 angry, obscenity-laced phone calls, including death threats, he brought an action for, in part, intentional infliction of emotional distress against radio station whose talk-show host had urged listeners to call victim's phone number to express their opinions of the posting. The district court granted defendant summary judgment. Affirming in part, this court held, inter alia, that the emotional-distress claim failed because plaintiff failed to show that defendant behaved in an extreme and outrageous way toward him and that he suffered severe emotional distress. There was no evidence that the distress plaintiff suffered interfered with his ability to conduct his daily life affairs. Zeran v. Diamond Broadcasting, Inc., 203 F.3d 714, 720, 721.

**C.A.10,** 1999. Quot. in case cit. in disc. Delivery truck driver who was discharged for job abandonment after he failed to return to work following back surgery sued former employer for, in part, intentional infliction of emotional distress. The district court granted defendant summary judgment. This court affirmed, holding, inter alia, that there was no evidence that employer engaged in extreme and outrageous conduct. Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1111.

**C.A.10,** 1998. Cit. in headnote, subsec. (1) quot. in case cit. in disc., com. (d) quot. in case quot. in disc. Insured bean farmer sued insurer for, inter alia, negligent misrepresentation, abuse of process, and intentional infliction of emotional distress after defendant refused to adjust plaintiff's crop loss at the 999-pound-per-acre figure allegedly agreed upon by the parties. The district court entered summary judgment for defendant. Affirming, this court held, in part, that defendant did not intend to supply the figure at issue for the guidance of plaintiff in his business, nor, given his actual production, could plaintiff claim a payable loss under his policy with this figure; that defendant did not commit an abuse of process by bringing suit to collect premium payments from plaintiff, a Wyoming resident, in Iowa, since such a course of action was company policy; and that defendant's actions did not rise to the level necessary to support recovery under a theory of intentional infliction of emotional distress. Meyer v. Conlon, 162 F.3d 1264, 1266, 1275.

**C.A.10,** 1995. Cit. in case cit. in sup., com. (d) quot. in case quot. in sup. Insured homeowners sued their insurer for intentional infliction of emotional distress, alleging that insurer should be held liable for the conduct of several guards, hired to conduct surveillance of plaintiffs' property, who allegedly shot plaintiffs' pet dog. District court entered judgment on jury verdict for plaintiffs. This court reversed, holding that there was insufficient evidence for a reasonable jury to hold insurer

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 193 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

responsible for the guards' conduct under the doctrines of principal-agent liability. Noting that the alleged surveillance, by itself, could not be considered outrageous as a matter of law, the court stated that only by considering both the surveillance and the shooting of plaintiffs' dog could the alleged conduct be regarded as sufficiently outrageous to submit the tort claim to the jury. Clark v. Brien, 59 F.3d 1082, 1086, cert. denied 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

**C.A.10,** 1995. Cit. in headnote, quot. in case quot. in sup., com. (d) quot. in case quot. in sup., com. (j) quot. in sup. Store manager whose employment was terminated during the store's investigation of an alleged petty-cash shortfall sued the store for, inter alia, intentional infliction of emotional distress, arising from her confrontation with the store's employee conducting the investigation. Affirming in part the district court's grant of summary judgment for defendant, this court held, inter alia, that the investigator's behavior did not rise to the level of extreme and outrageous conduct necessary to sustain an action for intentional infliction of emotional distress, since plaintiff acknowledged that the meeting did not last long and that she felt free to interrupt the confrontation twice and since the investigator's questions, while loud and pointed, and his alleged physical conduct in touching her arm and pushing her back in her chair did not cross the bounds between what was merely objectionable and what was actionable. Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1550, 1558.

**C.A.10,** 1994. Cit. in case cit. in sup. An African-American electrician sued his former employer for employment discrimination and the tort of outrage. District court granted defendant summary judgment. Affirming, this court held, inter alia, that plaintiff failed to state a viable outrage claim because the conduct of plaintiff's co-workers was not so extreme and outrageous as to permit recovery. Although plaintiff was called a variety of rude or vulgar names, he was not alone in facing such insults; almost everyone in the shop was called such names and similarly badgered. Bolden v. PRC Inc., 43 F.3d 545, 554.

**C.A.10**, 1994. Subsec. (1) and com. (d) quot. in ftn. (Erron. cit. as com. (d) to § 49.) Residents who had lived across a road from a waferboard-manufacturing plant sued the plant, asserting negligence and common-law nuisance claims arising from noise and various substances that were atmospherically transported to their property. The district court entered judgment on a jury verdict awarding plaintiffs compensatory and punitive damages. Affirming, this court held, inter alia, that, under Colorado law, defendant was not entitled to dismissal of the punitive damages claim following dismissal of a claim for the tort of outrageous conduct, as the standard for awarding punitive damages was not the same as that for the tort of outrageous conduct. Orjias v. Stevenson, 31 F.3d 995, 1012, cert. denied 513 U.S. 1000, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994).

**C.A.10,** 1992. Cit. in disc., cit. in diss. op., quot. in ftn. to diss. op., subsecs. (1), (2), coms. (d), (e), (h), (i), (j), illus. 15, 16, and 1966 Appendix at 48 cit. in diss. op. Employee sued employer and co-worker for intentional or reckless infliction of emotional distress when co-worker used racial slurs against plaintiff while he was not present and plaintiff heard about the slurs through other workers. This court reversed and remanded the district court's finding for plaintiff, holding that because statements were not made directly to plaintiff, co-worker was not liable. The court

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 194 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

reasoned that there was little probability that plaintiff would hear of slurs because they were made in confidence; hence, conduct was not outrageous or reckless. A dissent argued that co-worker was reckless in making frequent slurs against plaintiff to other workers, increasing the probability that plaintiff would discover insults; moreover, common law did not support majority's requirement that plaintiff be present when slurs were made. Bouie v. Autozone, Inc., 959 F.2d 875, 878, 880-883.

**C.A.10,** 1992. Subsec. (1) quot. in case quot. in sup. At-will employee sued his former employer for intentional infliction of emotional distress, inter alia, after he was terminated without notice and was told by the employer not to seek other employment. Employee alleged discrimination on the basis of his handicap, multiple sclerosis. The district court granted employer summary judgment. This court reversed in part and remanded on other grounds but affirmed summary judgment for employer on the claim for emotional distress. It said that plaintiff had not provided evidence showing defendant's conduct to be extreme; moreover, plaintiff admitted in his testimony that the conduct was not outrageous. The court also noted that employer terminated plaintiff due to concerns for his safety in light of his deteriorating physical condition. Katzer v. Baldor Elec. Co., 969 F.2d 935, 939.

**C.A.10,** 1991. Subsec. (1) cit. in disc., com. (d) quot. in disc. and cit. in ftn., com. (h) cit. in disc., coms. (j) and (k) quot. in disc. An employee resigned from his job, alleging that his employer discriminated against him due to his Iranian national origin, by calling him derogatory names, compelling him to terminate his Iranian subordinates, and accusing him of criminal acts. The employee sued his former employer for several claims including federal civil rights violations and intentional infliction of emotional distress. After a bench trial, the Oklahoma federal district court ruled for the employer. Affirming, this court held, inter alia, that the employee's assertions of discrimination were legally inadequate to meet the narrow standard of extreme and outrageous conduct, and that the evidence as to the severity of his emotional distress was legally insufficient under Oklahoma law. The court reasoned that mere insults were not actionable under the intentional infliction of emotional distress tort, and that the distress of anxiety and a sick stomach was not of such a character that no reasonable person could be expected to endure it. Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387, 1389.

**C.A.10,** 1991. Com. (d) quot. in case quot. in sup. Alleging violation of the Colorado Auto Accident Reparations Act (CAARA), bad faith breach of contract, and intentional infliction of emotional distress, a passenger injured in an automobile accident sued the driver's insurance company when the insurance company failed to pay statutorily mandated personal injury protection benefits. The district court dismissed the bad faith claim, directed a verdict for the insurance company on the issue of intentional infliction of emotional distress, and entered judgment on a jury verdict for the plaintiff on her CAARA claims. Affirming in part and reversing and remanding in part, this court held, inter alia, that while the insurance company's refusal to make payments within the statutorily required 30 days and derogatory remarks made by an insurance agent concerning the plaintiff's gender and American Indian heritage were inconsiderate and unkind, they were not extreme and outrageous conduct sufficient to create a cause of action

for intentional infliction of emotional distress. Wilson v. State Farm Mut. Auto. Ins. Co., 934 F.2d 261, 266.

**C.A.10,** 1990. Com. (d) quot. in case quot. in disc. An employee was terminated by a newly appointed supervisor for alleged insubordination and poor communication skills. The employee sued his employer for violating the Age Discrimination in Employment Act, breach of employment contract, and intentional infliction of emotional distress. He also sued the supervisor for emotional distress damages and she counterclaimed, alleging emotional distress damages and prima facie tort. The district court granted summary judgment dismissing all of the claims. Affirming, this court held, inter alia: 1) the employee had not shown that the reasons for his dismissal were pretextual, from which a jury could infer age discrimination; 2) the employee was an at-will employee with no contractual rights; 3) the employee and the supervisor were involved in an ordinary employer-employee conflict incapable of supporting the emotional distress claims; and 4) the state of Oklahoma would not extend a prima facie tort action to private sex discrimination between co-workers. The court indicated that the parties' allegations of insubordination, yelling, cursing, criticizing, hostile reactions, and the hurt feelings naturally accompanying such conduct did not give rise to a cause for intentional infliction of emotional distress. Merrick v. Northern Natural Gas Co., 911 F.2d 426, 432.

**C.A.10,** 1989. Com. (b) quot. in case cit. in sup. An engineer was recruited by an Oklahoma company to work for an Italian corporation. In Italy the engineer was injured during a work-related car trip. He was unable to obtain workers' compensation benefits from his employer, consulted an attorney, and was fired shortly thereafter. He sued, inter alia, the recruiting company, its insurer, and the Italian corporation for breach of contract, intentional infliction of emotional distress, and wrongful discharge. The district court granted the defendants' motion for summary judgment on the emotional distress count. Affirming, this court said that the employer's conduct in handling the workers' compensation claim and in discharging the plaintiff while he was in the hospital did not, as a matter of law, constitute outrageous behavior, especially where the employer paid the plaintiff's medical expenses. Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1379.

**C.A.10,** 1988. Cit. in disc., com. (d) quot. in case quot. in disc., com. (e) cit. in ftn. Two former employees sued their former employer for age discrimination and for intentional infliction of emotional distress after their positions were eliminated. The trial court granted the employees' claim for the intentional infliction of emotional distress. This court reversed, holding that the trial court should have directed a verdict for the employer on the claim for emotional distress. The court reasoned that there was insufficient evidence for a jury to find that the employer had exceeded the requisite threshold of liability for the intentional infliction of emotional distress; the plaintiffs had alleged nothing more than age discrimination, the manner of discharge had not been particularly unfair or abusive, and outrageous conduct by the employer had not been established. Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 383, 384, cert. denied 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989).

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 196 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.10,** 1988. Subsec. (1) cit. in disc. The brother of a decedent sued the beneficiary of the decedent's will, the attorney who drafted the will, and a brokerage firm for, inter alia, intentional interference with inheritance and intentional infliction of emotional distress, based on allegedly fraudulent stock transfers. The trial court granted summary judgment to the attorney and the brokerage firm on all claims. Affirming, this court held, inter alia, that the plaintiff could not bring the claim for intentional interference with inheritance because he had no prospect of inheriting the transferred stock, and that neither the attorney's drafting the will nor the brokerage firm's transferring the stock pursuant to a letter apparently signed by the owner of the stock was conduct sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. McKibben v. Chubb, 840 F.2d 1525, 1532.

**C.A.10,** 1987. Com. (h) cit. in case quot. in disc. In an effort to repossess a computer pursuant to a state court order, certain members of a city police department made a warrantless search of the home and office of a married couple. The couple sued the individual members of the police department, alleging, inter alia, that the officers' illegal search amounted to outrageous conduct and therefore the couple was entitled to punitive damages. The trial court entered a judgment on a jury verdict that found the defendants liable for the outrageous conduct claim and awarded the plaintiffs punitive damages. Affirming, this court held that the evidence was sufficient to support the jury's finding and punitive damages award. The court stated that, where reasonable men may differ, it was for the jury to determine whether the defendant's conduct was sufficiently extreme and outrageous to result in liability. Specht v. Jensen, 832 F.2d 1516, 1525.

**C.A.10,** 1984. Cit. in disc., com. (d) cit. in disc. A stepson sued in a diversity action individuals who had brought a conservatorship action against his stepfather and a number of individuals who had managed his stepfather's financial affairs. The district court dismissed the action for failure to state a claim. This court affirmed. The court noted that, while the tort of intentional or reckless infliction of emotional distress is recognized in Colorado, the stepson had not alleged outrageous conduct by the defendants sufficient to support a claim for relief on that theory. Swanson v. Bixler, 750 F.2d 810, 814, 815.

**C.A.10,** 1983. Cit. and quot. in sup., com. (d) quot. in case cit. in sup., coms. (f), (i), and (j) cit. in sup., coms. (h) and (i) quot. in case quot. in sup., subsec. (2) cit. in disc., illus. 9-13, 15, and 16 cit. in sup. The plaintiff, an illiterate Korean woman, commenced this action as the result of transactions between her husband and an account executive of the defendant investment company. The transactions were related to an account with the defendant which was solely in the plaintiff's name; they resulted in a loss of $30,000 to the account. The plaintiff alleged, inter alia, that the defendant's actions in making unauthorized transfers in her account constituted an intentional infliction of emotional distress because the loss of her savings threw the plaintiff into a deep depression which rendered her temporarily infertile and caused her to become a religious fanatic. The trial court entered judgment awarding the plaintiff $1,030,000 as compensatory damages and $3,000,000 as punitive damages. On appeal, the court examined the evidence in the case: the account executive avoided consulting the plaintiff before making unauthorized transactions in her account, knowing that such transactions were directly contrary to her wishes; he convinced her

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 197 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

husband to misrepresent the facts to her and used the husband as a pawn, knowing that the plaintiff insisted on having the account in her name alone because of her husband's gullibility; the account executive continued to suggest high-risk investment decisions to the husband, knowing that the plaintiff was concerned with financial security; finally, even when the account showed a $30,000 loss, the executive persisted in trying to conduct other transactions with what remained of the plaintiff's savings. The court held that this evidence was sufficient to submit the case to the jury on a theory of intentional infliction of emotional distress. The court pointed out that although the plaintiff's reaction was somewhat extreme, it could not find as a matter of law that the evidence was wholly insufficient for the jury to find the defendant liable for the injury to the plaintiff. The judgment was affirmed, provided that the plaintiff accepted a reduction in the punitive damages award to $1,000,000. Malandris v. Merrill Lynch, Pierce, Fenner & Smith, 703 F.2d 1152, 1158, 1159, 1165, 1166, certiorari denied 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983).

**C.A.10,** 1982. Cit. in sup., com. (d), illus. 1 cit. in disc. The plaintiff was a 21-year-old man who joined a religious cult in Oklahoma. His father obtained a court order giving him temporary guardianship over the plaintiff, and hired professional deprogrammers to attempt to induce the plaintiff to leave the cult. The deprogrammers held the plaintiff in a motel room for a week where he alleged that he suffered various abuses. The plaintiff brought an action against the deprogrammers, alleging, inter alia, intentional infliction of emotional distress. The trial court directed a verdict for the defendants on that claim because the judge did not think that deprogramming per se was sufficient to constitute the outrageous conduct as required in the tort of intentional infliction of emotional distress. On appeal, this court affirmed in part, reversed in part, and remanded. The court held that under the facts of the case, the issue of whether the defendants' conduct had been significantly extreme and outrageous enough to result in liability should have been submitted to the jury. Taylor v. Gilmartin, 686 F.2d 1346, 1353, 1354, certiorari denied 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983), rehearing denied 463 U.S. 1249, 104 S.Ct. 37, 77 L.Ed.2d 1456 (1983).

**C.A.10,** 1979. Subsec. (1) cit. in disc. Plaintiff physician brought action against a former patient who had brought a medical malpractice suit against him, claiming negligence in prosecution, abuse of process, invasion of privacy, and wanton misconduct in filing suit. The underlying malpractice action had not been disposed of at the time plaintiff filed his suit. The trial court dismissed, ruling that there was no recognizable negligence tort which arose from prosecuting a lawsuit, that plaintiff failed to set forth a legal cause of action for abuse of process, and that the claim sounding in invasion of privacy was not cognizable under the law of Kansas. The claim alleging wanton behavior was also summarily dismissed, and plaintiff appealed dismissal of all four claims. In regard to the complaint for invasion of privacy, the court stated that, under Kansas law, such action may have elements in common with that for intentional infliction of emotional distress. The court noted, however, that, in the situation here, there was no conduct so outrageous in character or extreme in degree to satisfy the elements of that tort, and, therefore, the trial court properly dismissed the claim. Regarding the other claims, the court held that the rulings of the trial court were correct and, accordingly, affirmed the judgment. Tappen v. Ager, 599 F.2d 376, 381.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 198 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.10,** 1968. Subsec. (1) quot. in sup. The plaintiff members of the family of a passenger who was killed on an airplane of the defendant when the plane crashed not only successfully sued the defendant for the decedent's wrongful death, but also sought to recover for emotional distress inflicted upon them by the defendant's agents for (1) failing to identify the decedent as a passenger and repeatedly suggesting that she may have gone off with a man somewhere and missed the flight; (2) failing to inform them promptly that the decedent was aboard; and (3) retaining the decedent's body for 27 hours. The court affirmed a dismissal of the last two claims, but remanded a dismissal of the first claim because the record did not provide sufficient factual background to permit a determination as to whether the conduct of the defendant's agents was outrageous under the circumstances. Wood v. United Air Lines, Inc., 404 F.2d 162,165.

## C.A.11

**C.A.11,** 2021. Cit. in case cit. in sup.; com. (d) cit. in case cit. in sup. Passengers of a cruise liner brought a putative class action against cruise operator, alleging, inter alia, that defendant negligently inflicted severe emotional distress on plaintiffs when they canceled a voyage due to an approaching hurricane on the day the ship was to set sail, resulting in plaintiffs being forced to travel to the ship and endure the hurricane in order to avoid preemptively canceling the trip themselves and suffering financial losses. The district court rejected a magistrate judge's report and recommendation and dismissed plaintiffs' action sua sponte. This court reversed and remanded, holding that the district court erred in failing to consider whether it had maritime jurisdiction over the action. In considering whether federal law recognized a claim for negligent infliction of emotional distress in maritime actions, the court noted that federal maritime law recognized claims for intentional infliction of emotional distress under Restatement Second of Torts § 46. McIntosh v. Royal Caribbean Cruises Ltd., 5 F.4th 1309, 1315.

## C.A.11,

**C.A.11,** 2015. Com. (d) quot. in case cit. and quot. in sup. Arrestee brought a claim for, among other things, intentional infliction of emotional distress against officer who arrested him while he was wearing a towel wrapped around his waist, alleging that, although the towel fell off while he was walking from his apartment to the police car, officer refused to allow anyone to bring him clothes until after he reached the police station. The district court granted summary judgment for officer. Affirming, this court held that, even if officer's actions in forcing arrestee to be naked and refusing to allow him to put on clothing were extreme and outrageous, arrestee failed to show that he suffered severe emotional distress as a result of officer's actions, as required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. Moore v. Pederson, 806 F.3d 1036, 1053.

**C.A.11,** 2015. Coms. (d) and (e) quot. in case quot. in sup. Arrestee filed, inter alia, a claim for intentional infliction of emotional distress (IIED) against deputy sheriff who arrested plaintiff in response to a breach-of-the-peace call, alleging that he was wearing only a towel when he was

arrested, he dropped his towel during the walk from his apartment to the patrol car and was not permitted to retrieve it, and he was not provided with clothing until after he was taken to the police station and booked. The district court granted defendant's motion for summary judgment. This court affirmed, holding that defendant failed to state a claim for IIED. The court cited Restatement Second of Torts § 46, Comments *d* and *e*, for an explanation of the claim's outrageous-conduct element, but explained that it did not need to determine if the plaintiff made such as showing, because plaintiff failed to show that he suffered severe emotional distress as a result of defendant's actions. Moore v. Pederson, 801 F.3d 1325, 1335.

**C.A.11,** 2012. Cit. and quot. in sup., adopted in case cit. in sup., com. (d) quot. in sup. and cit. in ftn., coms. (e) and (f) cit. in ftn. and cit. in case cit. in ftn. Hispanic male customer brought a § 1981 claim and a state-law claim for intentional infliction of emotional distress (IIED) against store and its white female cashier, alleging that cashier refused to serve him based on his race and publicly humiliated him by turning him away from her register in a loud and rude tone of voice. The district court granted defendants' motion to dismiss. Affirming, this court held, inter alia, that, although reprehensible, cashier's alleged conduct—verbal abuse that did not involve any obscenities, racial epithets, or threats of violence—did not meet the extremely high standard required to state a claim for IIED under Florida law. Lopez v. Target Corp., 676 F.3d 1230, 1236, 1237.

## C.A.11

**C.A.11,** 2005. Quot. in case cit. in disc. Passenger sued airline for, in part, intentional infliction of emotional distress, alleging that a male airline employee made sexually explicit comments towards her when she was asked to remove batteries from a vibrating sex toy in her checked luggage, causing other male employees to laugh. The trial court dismissed this claim for failure to state a cause of action. Affirming, this court held that airline employee's alleged comments and gesture of licking his lips, while distasteful, were insufficient to support a claim for intentional infliction of emotional distress, which, under Florida law, required more than a showing of insults and indignities. Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1344.

**C.A.11,** 1996. Com. (d) quot. in case quot. in disc. After an employee of a pulp and paper plant told his supervisor of toxic chemical overexposure of employees, employee suffered continuous harassment, threats of termination, humiliation, supervisory indifference, and malicious discharge. Employee sued employer for, among other claims, intentional infliction of emotional distress. District court denied employer's motion for summary judgment on the emotional distress claim, stating that an employer's threats and retaliatory activities satisfied the requisite element of outrageousness supportive of a claim for intentional infliction of emotional distress. This court affirmed, holding that employee stated an emotional-distress claim. Harris v. Procter & Gamble Cellulose Co., 73 F.3d 321, 323.

**C.A.11,** 1994. Com. (j) quot. in case quot. in sup. After disgruntled investors sent principal of general partner of limited partnership in which investors owned interests a demand letter

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 200 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

threatening to file a lawsuit against principal implicating him in fraudulent practices unless he paid them $75,000, plus accrued interest, principal sued investors for libel and intentional infliction of emotional distress. Affirming in part the district court's grant of summary judgment for defendants, this court held, inter alia, that, as a matter of law, plaintiff failed to show that defendants' conduct rose to the level of outrageousness and egregiousness necessary to sustain a claim for intentional infliction of emotional distress. Hammer v. Slater, 20 F.3d 1137, 1144.

**C.A.11,** 1993. Subsec. (1) quot. in case quot. in sup. Former employees sued their employer alleging that they were discharged in violation of ERISA; one employee also alleged that his involuntary early retirement violated the Age Discrimination in Employment Act and constituted intentional infliction of emotional distress. The district court granted summary judgment to the employer on all claims. Affirming as to all claims except the ADEA claim, this court held, inter alia, that, under Georgia law, forcing an employee to retire early was not such extreme and outrageous conduct as would support a claim of intentional infliction of emotional distress. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229.

**C.A.11,** 1993. Com. (d) quot. in conc. and diss. op., coms. cit. generally in ftn. to conc. and diss. op. Black former telephone company employee brought suit for employment discrimination against her former employer and asserted a state law claim for intentional infliction of emotional distress. This court affirmed the district court's order directing a verdict for defendant on the state law claim. The concurring and dissenting opinion argued that the case should be remanded for retrial of the state law claim on the ground that disputed facts existed, requiring the jury to decide whether defendant's conduct was outrageous enough to rise to the level required by the tort. Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573, 1581, 1583, cert. denied ___ U.S. ___, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

**C.A.11,** 1991. Com. (d) quot. in case quot. in sup. and cit. generally in sup. A supervisor at a manufacturing plant was the subject of rumors alleging that he was a homosexual, was sexually promiscuous, used or sold drugs, and harassed or physically fondled female employees at the plant. The supervisor sued, among others, the manufacturer, alleging excessive publication of rumors by company representatives and failure of the manufacturer to take corrective action once company officials were made aware of the rumors. The district court entered an order of summary judgment for the manufacturer and dismissed the action. This court affirmed, holding, inter alia, that the reported omissions of the manufacturer fell far below the level of outrageous conduct necessary to maintain an action for intentional infliction of emotional distress, especially since the supervisor was never discharged or disciplined. The court stated that the alleged failure of the manufacturer to investigate the rumors in a complete and timely fashion constituted mere negligence at most. Martin v. Baer, 928 F.2d 1067, 1073, 1074.

**C.A.11,** 1990. Cit. in case cit. in disc., com. (d) quot. in case quot. in disc. Relatives of a serviceman shot down in Vietnam sued the United States for intentional infliction of emotional distress under the Federal Tort Claims Act after it allegedly falsely identified the man's remains, improperly issued an ultimatum about burial of the remains, and refused to return the man's

name to unaccounted-for status after rescinding his identification. The district court granted the plaintiffs' motion for partial summary judgment. This court reversed and remanded, holding that the government's conduct was neither intentional nor outrageous. The court found no evidence that the government's acts in identifying, classifying, or attempting to bury the remains were done with the knowledge that they would cause the plaintiffs severe distress. Hart v. U.S., 894 F.2d 1539, 1548, certiorari denied 498 U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990).

**C.A.11,** 1990. Coms. (d) and (e) quot. in cases quot. in disc. A landlord was arrested for continuing to lease a unit in a shopping center after becoming aware that the leased property was being used for prostitution. Continuing to lease the property with such knowledge violated a state statute. The charge against the landlord was eventually nolle prossed because the landlord agreed to testify in a felony case against the lessee and because the operation on the leased premises was being closed down. The landlord subsequently brought this action against the county sheriff and three sheriff's deputies who were present when he was arrested, alleging intentional infliction of emotional distress, inter alia. The district court denied the defendants' motions for directed verdict and for judgment n.o.v. Reversing, this court held that the district court erred in denying the defendants' motions, stating that the defendants did not act unreasonably in arresting the plaintiff for violating the statute and that a reasonable jury could not have found that the defendants' conduct was legally impermissible or was otherwise so extreme and indecent as to warrant tort damages under Florida law. Von Stein v. Brescher, 904 F.2d 572, 584.

**C.A.11,** 1986. Quot. in case quot. in disc. After two individuals were injured in a collision with a vehicle owned by a city, the injured individuals sued the city and its insurer for intentional infliction of emotional distress, alleging that the insurer had misrepresented the limits of its liability under the insured's policy. The trial court dismissed the plaintiffs' claim and entered judgment in favor of the defendants. Affirming, this court held that as a matter of law the facts alleged did not constitute intentional infliction of emotional distress. The court stated that the insurer could not be held liable for simply honoring its duty to defend its insured against claims that obviously exceeded policy limits. Davis v. Travelers Indem. Co. of America, 800 F.2d 1050, 1054.

**C.A.11,** 1982. Coms. (g) and (d) cit. in disc. The administratrix of an employee's estate brought an action against the decedent's employer for an alleged "tort of outrage" arising from the arbitrary reduction of the employee's monthly disability pay. The jury found for the plaintiff; the employer appealed from the trial court's denial of his motion for a judgment n.o.v. The appellate court reasoned that a "tort of outrage" existed when an individual's conduct went beyond all bounds of decency and resulted in severe emotional distress to another. The court affirmed the lower court's holding, reasoning that the defendant's behavior constituted the "extreme conduct" anticipated by the tort. Holmes v. Oxford Chemicals, Inc. Etc., 672 F.2d 854, 857.

**C.A.D.C.**

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 202 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**C.A.D.C.**2021. Subsec. (1) quot. in case quot. in sup.; com. (j) quot. in sup. United States citizen who was arrested by agents of the Islamic Republic of Iran and held hostage for 100 days sued Iran under the "state sponsors of terrorism" exception to the Foreign Sovereign Immunities Act, seeking to hold it liable for torture, hostage taking, assault, battery, intentional infliction of emotional distress, and false imprisonment. After Iran failed to appear or respond, this court granted plaintiff's motion for a default judgment, holding that plaintiff sufficiently proved theories of liability found in well-established principles of law in support of her claims under the Act. The court reasoned, in part, that plaintiff established that defendant's agents intentionally inflicted emotional distress upon her within the meaning of Restatement Second of Torts § 46. Saberi v. Government of Islamic Republic of Iran, 541 F.Supp.3d 67, 82.

**C.A.D.C.**2019. Cit. in case quot. in sup. (general cite); subsec. (2)(a) cit. in case cit. in sup. American victims of terrorist bombings of U.S. embassies and victims' family members brought a lawsuit under the Foreign Sovereign Immunities Act against the Republic of Sudan, alleging that defendant was liable for intentional infliction of emotional distress (IIED), because it materially supported the terrorist organizations responsible for the bombings. The district court entered judgment for plaintiffs. After certifying a question to state court, this court affirmed, holding that the state court's interpretation of Restatement Second of Torts § 46, which permitted family members of bombing victims to pursue IIED claims despite not being physically present at the bombings, did not violate the Act's non-discrimination principle that required foreign states to be held no more liable than a private individual would under like circumstances. The court explained that the state court's construction of § 46 relied on reasoning that applied equally to state actors and non-state actors, because it provided exceptions to the physical-presence requirement for claims against non-state actors. Owens v. Republic of Sudan, 924 F.3d 1256, 1258, 1259.

**C.A.D.C.**2017. Cit. and quot. in sup. and in cases cit. in sup.; caveat and com. (*l*) quot. in sup., cit. in cases cit. in sup. Victims of U.S. embassy bombings brought an action against Republic of Sudan and Islamic Republic of Iran, asserting jurisdiction under the terrorism exception to the Foreign Sovereign Immunities Act based on allegations that defendants provided material support to a terrorist organization, and alleging, inter alia, a claim for intentional infliction of emotional distress (IIED). The district court denied Sudan's motion to vacate a default judgment entered against it. This court affirmed in part and vacated in part, and certified to the D.C. Court of Appeals the question of whether the presence requirement set forth in Restatement Second of Torts § 46 would preclude recovery for an IIED claim arising from a terrorist attack where the claimant was not present at the scene. The court analyzed § 46's presence requirement, noting that D.C. courts had applied § 46 in limiting recovery to the immediate family of a victim physically injured or killed, and pointed out that § 46's Caveat and Comment *l* left open the possibility of a situation where presence was not required. Owens v. Republic of Sudan, 864 F.3d 751, 807, 810-812.

**C.A.D.C.**2015. Com. (d) cit. in sup., com. (k) quot. in sup. Veteran brought an action against the United States, seeking damages under the Federal Tort Claims Act for, inter alia, intentional infliction of emotional distress (IIED), alleging that the Department of Veterans Affairs (VA), through the doctrine of respondeat superior, was liable for the actions of, among others, VA

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 203 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

police officers, who used excessive force and injured plaintiff while attempting to remove him from a group-therapy session for veterans. The district court granted summary judgment for defendant. Reversing in part, this court held that questions of material fact remained as to whether plaintiff's arrest was effectuated with reasonable force, noting that a serious case of excessive force could constitute outrageous behavior such that it satisfied an IIED claim. The court reasoned that plaintiff's allegations that he endured multiple hospital visits for a fractured rib and other injuries, that he suffered substantial trauma, and that his existing post-traumatic stress disorder was aggravated as a result of the incident were potentially sufficient to establish severe emotional distress under the standard set out in Restatement Second of Torts § 46. Harris v. U.S. Department of Veterans Affairs, 776 F.3d 907, 916, 917.

**C.A.D.C.**2014. Com. (d) quot. in sup. Parties who opposed construction of an Islamic community center near the site of the September 11th terrorist attacks brought a claim for intentional infliction of emotional distress (IIED), inter alia, against a proponent of the center and proponent's attorney, alleging that statements made in proponent's motion to dismiss an underlying action brought against him by plaintiffs, and in attorney's affidavit in that action, were defamatory. This court granted defendants' special motion to dismiss, holding that plaintiffs failed to show that they were likely to succeed on the merits of their IIED claim. Quoting Restatement Second of Torts § 46, Comment *d*, the court explained that plaintiffs needed to show that defendants' conduct was extreme and outrageous, beyond the mere insults present in this case. Forras v. Rauf, 39 F.Supp.3d 45, 56.

**C.A.D.C.**2007. Adopted in cases quot. in sup., subsec. (2) quot. in sup. As part of their § 1983 action for false arrest and malicious prosecution, arrestee and his wife brought a common-law claim for intentional infliction of emotional distress against the District of Columbia and three police officers. After the jury returned a verdict finding the District liable but the officers not liable on the emotional-distress claim, the district court denied defendants' motion for judgment as a matter of law on that claim as to wife. Reversing with respect to wife's claim and remanding, this court held, inter alia, that wife could not recover under District of Columbia tort law because she was not physically present when the allegedly extreme and outrageous conduct—the filing of a false and misleading affidavit and possible evidence tampering—took place. Pitt v. District of Columbia, 491 F.3d 494, 507.

**C.A.D.C.**2004. Cit. in case cit. in disc. Adult children and siblings of former hostage of terrorist group that was an agent of Iran's Ministry of Information and Security brought suit for intentional infliction of emotional distress and loss of solatium against government of Iran under terrorist exception to Foreign Sovereign Immunities Act. The district court dismissed plaintiffs' claims, holding, in part, that a third-party claimant had to be present at the scene of victim's torment to state a claim for intentional infliction of emotional distress. Affirming and remanding, this court held that neither the terrorist exception, which waived a foreign state's immunity without creating a cause of action against it, nor the Flatow Amendment, which provided a private right of action against only officials, employees, and agents of a foreign state, nor the two considered in tandem,

created a private right of action against a foreign government. Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1029.

**C.A.D.C.**2003. Cit. and quot. in sup., subsec. (1) cit. and quot. in sup., subsecs. (2) and (2)(a) cit. in sup., subsec. (2)(b) cit. in disc., coms. (b) and (c) quot. in sup., com. (l) quot. in sup., caveat quot. in sup. Priest was held hostage by terrorist organization in Lebanon for 564 days and then suffered physically and emotionally for years. After his death, his estate, siblings, and nieces and nephews sued government of Iran for intentional infliction of emotional distress for providing support to terrorist organization. District court awarded damages to estate and siblings, but rejected claims of nieces and nephews. This court affirmed, holding that nieces and nephews could not recover, since they were not direct victims or immediate family members. Bettis v. Islamic Republic of Iran, 315 F.3d 325, 327, 331, 333-338.

**C.A.D.C.**2002. Com. (d) quot. in case quot. in disc. Former President's alleged mistress, whose attempt to publish "semiautobiographical" novel based on her relationship with President was allegedly stymied by President and his agents, sued President and agents for intentional infliction of emotional distress, inter alia, after President's attorney stated in the media that litigation against President by another purported mistress, as well as statements by witnesses in that case, including plaintiff, were scurrilous, salacious, a web of deceit and distortion, and "garbage." District court dismissed plaintiff's claims. This court affirmed dismissal of emotional-distress claim, holding, inter alia, that attorney's statements did not go beyond all possible bounds of decency. Furthermore, alleged threats by former Deputy White House Counsel did not amount to conduct utterly intolerable in a civilized community. Browning v. Clinton, 292 F.3d 235, 248.

**C.A.D.C.**1998. Quot. in case quot. in disc., com. (d) quot. in disc. and quot. in case quot. in disc. Automobile passenger was arrested when she refused police officer's order to remain in the car while he administered sobriety test to driver; she sued city and officer for, inter alia, violations of her Fourth Amendment rights and intentional infliction of emotional distress. The district court entered summary judgment for defendants. Affirming, this court held, in part, that it was reasonable for officer to order plaintiff to stay in the car in order to maintain control of the situation, and therefore he did not violate her Fourth Amendment rights, and that officer's alleged actions in threatening to arrest plaintiff, yelling at her, and detaining her for an unnecessarily long period of time were not sufficiently extreme and outrageous as to support a claim for intentional infliction of emotional distress. Rogala v. District of Columbia, 161 F.3d 44, 58.

**C.A.D.C.**1990. Quot. in case cit. in disc. An airline passenger who missed his appointment because the plane was delayed on the runway for three hours prior to takeoff sued the airline for intentional infliction of emotional distress, inter alia, after the pilot refused to grant his request to deplane. The district court granted the defendant's motion for summary judgment on the ground that the plaintiff failed to establish specific facts showing a genuine issue of fact to be tried. This court affirmed, holding that no reasonable juror would find that the pilot's refusal of the plaintiff's request constituted outrageous behavior or behavior that was so extreme as to go beyond all bounds of decency. Abourezk v. New York Airlines, Inc., 895 F.2d 1456, 1459.

**C.A.D.C.**1987. Com. (d) quot. in disc. A blind attorney who had been denied a seat in the emergency exit row of an airplane by the airline sued the airline under the Rehabilitation Act, the Federal Aviation Act, and the United States Constitution and alleged that the airline had committed the tort of outrage and breached its contract of transportation. The trial court granted summary judgment for the airline. Affirming, this court held that the trial court correctly concluded that the plaintiff failed to state a relievable claim under any of the asserted theories. The court stated that the trial court properly found that the plaintiff had not alleged facts sufficient to show that the airline's conduct was so atrocious or intolerable as to constitute a tort of outrage. Anderson v. USAir, Inc., 818 F.2d 49, 56.

**C.A.D.C.**1986. Com. (e) quot. in sup. The plaintiffs sued policemen, a police chief, and a municipality for intentional infliction of mental distress, among other constitutional and common law tort claims, alleging that the police officers deliberately made false reports of criminal activity on the part of the plaintiffs. The trial court denied the defendants' motion for a directed verdict on the claim for emotional distress. Although this court reversed the trial court's decisions on the other claims, it affirmed the denial of the directed verdict, holding that an abuse of a position of authority, particularly by a police officer could constitute outrageous conduct and that it was for a jury to gauge whether the police in this case had acted so egregiously, intentionally, or recklessly as to cause the suspects severe emotional distress. Carter v. District of Columbia, 795 F.2d 116, 139.

**C.A.D.C.**1983. Cit. in ftn. in sup. Certain prison inmates brought a class action against the District of Columbia and several of its officials and employees, alleging that the conditions of their confinement violated their constitutional rights, the common law duty of due care owed them, and the statutory duty to provide inmates with safekeeping, care, protection, and instruction. After a jury verdict awarded the inmates damages, this appeal was taken. The judgment was reversed and the cause remanded. The court first held that the trial court had abused its discretion in granting a protective order that had sharply curtailed the ability of the defendants' counsel to discuss with their clients information obtained during discovery. The court noted that the order clearly disadvantaged the defendants and held that alternative methods of protection, less intrusive on the attorney-client relation, could have been used in safeguarding the inmates. In response to another contention by the defendants, the court also held that the trial court had erred in working a charge to the jury on the question of damages. The court indicated that inmates alleging violations of the constitutional rights could be compensated only to the extent that their interests protected by the Constitution had been infringed, and went on to hold that the inmates were entitled to recovery for the infringement of such interests as peace of mind and future earning capacity as protected by the constitutional prohibition of cruel and unusual punishment. Accordingly, the court found that a trial court instruction that seemed to indicate that the jury might award damages on the intrinsic value of a constitutional right was improper. Doe v. District of Columbia, 697 F.2d 1115, 1124.

**Ct.Fed.Cl.**

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 206 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**Ct.Fed.Cl.**2012. Quot. in sup. Owner of property located in Tennessee sued the United States, alleging that defendant fraudulently misrepresented itself as the administrative division of the State of Tennessee in order to collect property taxes from plaintiff. Granting defendant's motion to dismiss, this court held, among other things, that it lacked subject-matter jurisdiction over plaintiff's claims alleging fraud and seeking compensation for emotional distress, because those claims sounded in tort and did not fall within the court's Tucker Act jurisdiction. Maxwell v. U.S., 104 Fed.Cl. 112, 118.

**Ct.Fed.Cl.**2002. Cit. and quot. in sup. In congressional-reference action arising from private bill to consider the amount, if any, of relief legally or equitably due from United States to former federal employee, employee based his entitlement to compensation on, in part, the Whistleblower Protection Act and the common-law theory of intentional infliction of emotional distress. Granting in part government's motion for summary judgment, the court held that employee's allegations that his supervisor yelled at him and became increasingly abusive and irascible failed to state a claim for intentional infliction of emotional distress. The court said that there was no evidence of motive on supervisor's part, and, moreover, supervisor's conduct in yelling at employee was not sufficiently outrageous to support the claim. Barlow v. U.S., 51 Fed.Cl. 380, 392, 394.

**M.D.Ala.**

**M.D.Ala.**2011. Com. (d) cit. in case quot. in sup. White male employee of an Alabama manufacturing plant sued employer's Korean parent corporation, alleging discrimination based on race and national origin, retaliation, and other claims. This court granted summary judgment for defendant on plaintiff's claim under Alabama law for intentional infliction of emotional distress, holding that the conduct alleged was not sufficiently outrageous to support liability. The court noted that plaintiff based the claim on defendant's alleged discrimination and retaliation against him, and that such claims did not fall within the three limited circumstances recognized by the Alabama Supreme Court for the tort of outrage: cases having to do with wrongful conduct in the context of family burial; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment. Short v. Mando American, 805 F.Supp.2d 1246, 1276, 1277.

**M.D.Ala.**2006. Com. (d) quot. in case quot. in sup. After university discovered a scoring error and took title to the crown of university beauty pageant away from entrant, entrant and parents sued university and administrators for, among other things, intentional infliction of emotional distress—the tort of "outrage" in Alabama. Granting defendants' motion to dismiss this claim, this court held, inter alia, that the alleged conduct did not rise to the level of outrage as defined under Alabama law. The court reasoned that university's decision to correct the error, even after plaintiffs had been assured by an administrator in unequivocal terms that no investigation would be launched, did not offend all bounds of decency and could not be considered intolerable in a civilized society. Sykes v. Payton, 441 F.Supp.2d 1220, 1222.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 207 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**M.D.Ala.**1998. Com. (d) quot. in case quot. in disc. A hotel housekeeper whose workers' compensation coverage was discontinued sued the hotel's insurer's claims management company for the tort of outrage, among other claims. This court granted defendant's motion for summary judgment on the outrage claim, holding, inter alia, that plaintiff failed to show: (1) that defendant intended to inflict emotional distress on plaintiff; (2) that plaintiff failed to establish that defendant knew or should have known that its actions would result in severe emotional distress to plaintiff; (3) that plaintiff failed to produce evidence of the extreme and outrageous nature of the conduct or the severity of her emotional distress; and (4) that plaintiff had not produced any evidence of her severe emotional distress. Wiggins v. Risk Enterprise Management Ltd., 14 F.Supp.2d 1279, 1284.

**M.D.Ala.**1996. Com. (d) cit. in disc. An insurer brought suit seeking a declaration that it had no contractual duty, under a policy insuring against negligent administration of an employee benefit program, either to defend or indemnify a store in a lawsuit brought by the store's former manager. The underlying lawsuit alleged outrageous conduct by the store through its intentional failure to timely report plaintiff's on-the-job injury to the claims adjuster, and through firing her under false pretexts. This court granted the insurer's request for a declaration that it had no duty to defend, holding, inter alia, that the policy explicitly excluded coverage for malicious or criminal acts or omissions, which conduct was but the departure point for an outrage claim. It noted that while an intentional-infliction-of-distress claim may be brought against an insurer who outrageously denies a clam, this obligation has no bearing on an insurer's duty to defend against such a claim under a policy limited on its terms to defense of negligence actions. Guaranty Nat. Ins. Co. v. Beeline Stores, Inc., 945 F.Supp. 1510, 1514.

**M.D.Ala.**1989. Quot. in disc. A husband and wife sued the contractor who built their home for, inter alia, breach of contract and the tort of outrage when, after completion of their home, numerous defects existed that the contractor refused to remedy. This court awarded the defendant summary judgment on these claims and stated that the defendant's failure to make repairs was not so extreme in degree, atrocious, or utterly intolerable as to subject him to liability based on outrage. Clark v. Jim Walter Homes, Inc., 719 F.Supp. 1037, 1046.

**M.D.Ala.**1988. Cit. in ftn., com. (i) cit. in ftn. A woman gave birth after doctors had assured her that her stomach pain was nothing more than a urinary-tract infection and a case of hemorrhoids. The woman provided details of the unexpected birth to a local newspaper. A national men's magazine reprinted the article, entitling it "Birth of a Hemorrhoid." The woman sued the magazine for, inter alia, defamation and intentional infliction of emotional harm. This court granted the defendant's motion for summary judgment, holding that the plaintiff could not recover on her defamation claim because the article was not materially false. The court also held that the plaintiff could not recover on the emotional distress claim because the republication of the story was not egregious behavior, the plaintiff did not suffer any severe emotional distress, and there was no evidence that the defendants knew, or should have known, that their conduct was likely to result in emotional distress to the plaintiff. Grimsley v. Guccione, 703 F.Supp. 903, 906, 907, 909.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 208 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**M.D.Ala.** 1981. Cit. in sup., com. (f) quot. in sup. and com. (g) quot. in part in sup. Erron. cit. as Torts. The plaintiff's employer, whose disability plan did not require the plaintiff to seek Social Security benefits and did not authorize a reduction of plaintiff's monthly disability check in anticipation of those benefits, reduced the plaintiff's check from $500 to $49.10, advising the plaintiff to seek the balance from the Social Security Administration. The plaintiff alleged that the employer committed the tort of outrage when it reduced the amount of the check, knowing that the plaintiff had a severe heart condition and permanent disability and was already distraught over his physical and financial condition. This proceeding was instituted on the employer's motion for a judgment n.o.v. or, in the alternative, for a new trial and on the plaintiff's motion for attorney's fees. The court stated that the Supreme Court of Alabama referred, with approval, to the Restatement of the Law of Torts, Section 46, to aid in determining when the facts warrant a finding of the tort of outrage. The court held that there was evidence that the jury could find that the defendant's deliberate and wrongful act of reducing the benefits of the plaintiff to $49 a month was callous and "utterly intolerable in a civilized society" and that the defendant had therefore committed the tort of outrage under the law of Alabama. The court found that the damages awarded were within the jury's discretion and were not excessive in light of the defendant's acts and the medical testimony as to the plaintiff's emotional suffering. The court also held that the attorney for the plaintiff was entitled to a fee of $4,500. Accordingly, the defendant's motion was denied and the plaintiff's motion was granted. Holmes v. Oxford Chemicals, Inc., 510 F.Supp. 915, 919, judgment affirmed 672 F.2d 854 (11th Cir.1982). See above case.


**N.D.Ala.**

**N.D.Ala.** 2016. Com. (d) cit. in case quot. in sup. Former employee brought civil-rights claims against former employer in connection with her termination, alleging sexual harassment, disparate treatment, retaliation, and the state law tort of outrage. This court granted summary judgment for employer on employee's outrage claim, holding that employee's allegations that her supervisor engaged in sexually suggestive touching and made inappropriate sexual comments to employee did not amount to the type of "particularly egregious" sexual harassment that would support a claim of outrage under Alabama law. The court reasoned, in part, that, under Restatement Second of Torts § 46, the law would not hold a defendant liable in tort for behavior that amounted to mere insults, indignities, threats, or annoyances. Dates v. Frank Norton, LLC, 190 F.Supp.3d 1037, 1075.

**N.D.Ala.** 2015. Com. (e) cit. in sup. Customer filed, inter alia, a claim for intentional infliction of emotional distress against electronics store, alleging that defendant's technical-support provider's employees viewed and retained nude photographs of plaintiff without her permission while servicing her external hard drives. This court denied in part defendant's motion for summary judgment, holding that there were genuine issues of material fact. The court explained that the alleged misconduct could be considered by a jury as sufficiently outrageous under Restatement Second of Torts § 46, Comment *e*, because plaintiff alleged that an employee abused the authority, access, or trust afforded to him by his position with defendant by viewing and downloading the photographs and showing them to at least two other employees. March v. Best Buy Stores, LP, 111 F.Supp.3d 1236, 1246.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 209 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**N.D.Ala.**2014. Com. (d) quot. in case quot. in sup. Pharmacist brought a state-law claim for intentional infliction of emotional distress (IIED), inter alia, against former employer and supervisor, claiming that supervisor engaged in harassing conduct by repeatedly questioning him about when he planned to retire and by reporting him to the Alabama Pharmacy Board for allegedly improperly refilling a prescription. Granting in part defendants' motion for summary judgment, this court held that the facts relied upon by plaintiff to show harassing behavior did not come anywhere close to the level of egregiousness necessary to support an IIED claim. The court cited Restatement Second of Torts § 46, Comment *d*, in noting that, for purposes of an IIED claim, a defendant's conduct had to be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. King v. CVS Caremark, Corp., 2 F.Supp.3d 1252, 1273.

**N.D.Ala.**2013. Com. (d) quot. in case quot. in sup. Terminated employee brought a state-law claim for outrage, inter alia, against former employer, seeking to hold defendant vicariously liable for a supervisor's alleged acts of inappropriately touching plaintiff on three separate occasions in such a way that plaintiff felt as though other employees thought that he was homosexual and were laughing at him as a result. Granting defendant's motion for summary judgment, this court held that plaintiff's complaint failed to reach the level of egregiousness required to state a claim for outrage under Alabama law. The court noted that, under Alabama law and Restatement Second of Torts § 46"mere insults, threats, annoyances, petty oppressions, or other trivialities" were insufficient to create liability for outrage. Burback v. BNSF Ry. Co., Inc., 963 F.Supp.2d 1255, 1267.

**N.D.Ala.**2013. Com. (d) cit. in case quot. in sup. African-American former employee of insurance agency sued agency and its principal, alleging, inter alia, a state-law claim for outrage. Granting summary judgment for defendants, this court held that, plaintiff's claim for outrage failed, because, while hitting employees and grabbing them by the arm, as plaintiff alleged that principal did in the instant case, was not acceptable conduct, that conduct and the other conduct alleged in this case, such as principal's racial statements, were. not sufficiently extreme and outrageous to support plaintiff's outrage claim. Foy v. Pat Donalson Agency, 946 F.Supp.2d 1250, 1276.

**N.D.Ala.**2013. Com. (d) cit. in case quot. in sup. Guardian and next friend of a 14-year-old female middle-school student who allegedly was raped in a boys' restroom by a 16-year-old male student at the school sued, among others, school teachers, asserting, inter alia, a claim for the tort of outrage. Granting defendants' motion for summary judgment, this court held, among other things, that, although it was negligent and perhaps wanton for defendants to send female student to meet with male student in order to catch him "in the act" of sexual harassment, defendants' conduct was not sufficiently extreme and outrageous to support plaintiff's outrage claim. The court noted that the tort of outrage was a limited remedy to be applied only in flagrantly egregious circumstances. Hill v. Madison County School Bd., 957 F.Supp.2d 1320, 1349.

**N.D.Ala.**1999. Com. (d) cit. in case cit. in disc. Participant in county food-stamp program brought, in part, a claim for the tort of outrage against state and county departments of human resources, county food-stamp office, and government employees. Granting defendants' motion to dismiss,

the court held, inter alia, that defendants' alleged conduct of withholding the homeless shelter deduction and failing to average plaintiff's income did not rise to the level of egregiousness necessary to state a claim of outrage under Alabama law. Sanders v. Jefferson County Dept. of Human Resources, 117 F.Supp.2d 1199, 1209.

**N.D.Ala.**1997. Cit. in case quot. in disc., com. (d) quot. in case quot. in disc. Employee brought state court wrongful-discharge action against railroad, his former employer, alleging that he was terminated solely because of his participation as a member of a jury that returned a large verdict against railroad. Plaintiff also asserted a claim for intentional infliction of emotional distress. Defendant removed the case to this court on the ground that plaintiff's action was preempted by the Railway Labor Act (RLA). Granting plaintiff's motion to remand, the court held that a determination of whether defendant acted outrageously when it discharged plaintiff did not require interpretation or consideration of his collective-bargaining agreement, and thus his action was not preempted by the RLA. Johnson v. Norfolk Southern Corp., 953 F.Supp. 364, 367.

**N.D.Ala.**1982. Com. (d) cit. in sup. An employee sought damages from her employer for emotional distress, alleging that her manager had threatened her with termination, charged her with malicious gossip, talked to her in an ugly way, and suspended her. The defendant moved for summary judgment. This court found that the plaintiff may have been subject to insults and indignities; however, insults, indignities and threats did not amount to a cause of action under Alabama law entitling the plaintiff to damages for emotional distress. Therefore, the court granted the defendant's motion for summary judgment. Cushing v. General Time Corp., 549 F.Supp. 768, 770.

**S.D.Ala.**

**S.D.Ala.**2020. Cit. in sup., cit. in cases cit. and quot. in sup.; subsec. (1) and com. (d) quot. in sup. Former captain of a ship that was involved in a collision sued former employers, alleging that, after he declined defendants' offer for a new contract and began working for a new employer, defendants made false, misleading, and defamatory statements to his new employer regarding his professional competency and his responsibility for the collision. This court granted defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress, holding that, even accepting plaintiff's allegations that defendants' statements were vindictive, they failed to describe behavior extreme and outrageous enough to support such a claim under Restatement Second of Torts § 46. Sangha v. Navig8 Ship Management PTE Ltd., 440 F.Supp.3d 1286, 1300, 1301.

**S.D.Ala.**1993. Quot. in ftn., subsec. (1) quot. in ftn. Former police officer sued mayor and police chief for retaliatory discharge in violation of First Amendment and the tort of outrage, alleging, in part, that defendants ordered a fellow police officer, who was subpoenaed by plaintiff to testify before county personnel board, not to appear at plaintiff's personnel board hearing. This court granted in part defendants' motion for summary judgment, holding, inter alia, that, as a matter of law, defendants' action of ordering police officer to ignore a subpoena to testify at plaintiff's

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 211 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

personnel board hearing was not conduct sufficiently extreme and outrageous as to constitute the tort of outrage. Angle v. Dow, 822 F.Supp. 1530, 1545.

## D.Ariz.

**D.Ariz.**2022. Com. (h) quot. in sup., cit. in case quot. in sup. Employees of hospital, which operated under a contract with the federal government, brought, among other things, an action against the United States under the Federal Tort Claims Act (FTCA) for intentional infliction of emotional distress (IIED), alleging that hospital failed to investigate the lies of information-technology specialist's about specialist's criminal history of "attempted surreptitious videotaping," and failed to promptly and fully investigate cameras found in hospital bathrooms. This court denied defendant's motion for summary judgment, holding that there were triable issues of fact that precluded summary judgment on plaintiffs' claim. Citing Restatement Second of Torts § 46, Comment *h,* the court noted that it was for the jury to decide whether hospital's conduct was sufficiently extreme and outrageous to result in liability. Anthony v. United States, 632 F.Supp.3d 1017, 1042.

**D.Ariz.**2022. Cit. in sup., com. (d) quot. in case quot. in sup. Individual who was arrested for misdemeanor assault before the charges against him were dropped for lack of cooperation from the victim sued city and police officers for, among other things, intentional infliction of emotional distress (IIED), alleging that officers, who were responding to a report of a "male vs. female" physical altercation at arrestee's apartment, repeatedly used stun guns against him, even after he was physically unable to move, stunning him a total of seven times. This court granted defendants' motion for summary judgment, holding that, under state law and Restatement Second of Torts § 46, defendants were not liable for IIED. The court explained that officers' conduct was objectively reasonable given that they were responding to a call of domestic abuse, officers heard children crying loudly in arrestee's apartment, and arrestee repeatedly failed to comply with officers' commands. Oakry v. Tempe, City of, 629 F.Supp.3d 974, 988.

**D.Ariz.**2022. Subsec. (1) and com. (b) quot. in disc., com. (j) quot. in case quot. in sup. Parents of students in a public school district, who formed a private social-media group to discuss issues related to district's policies, sued, among others, father of a member of district's school board, alleging that they suffered serious emotional distress when they discovered that father had collected voluminous sensitive and personal information about parents in an online account and shared that information with district and others. This court granted in part father's motion to dismiss, holding that parents failed to state a claim for intentional infliction of emotional distress under Arizona law. The court reasoned, in part, that, while one parent alleged that she vomited when she reviewed the information about her and other parents, that single instance was a "transient" emotional response to an upsetting situation and was insufficient to show severe emotional distress under Restatement Second of Torts § 46. Wray v. Greenburg, 646 F.Supp.3d 1084, 1108, 1109.

**D.Ariz.**2019. Cit. in case cit. in sup. (general cite); com. (h) cit. in sup. Passengers brought, inter alia, a claim for intentional infliction of emotional distress (IIED) against airline, alleging that defendant lost a funerary urn containing the ashes of plaintiffs' deceased daughter. This court granted in part defendant's motion for summary judgment, holding that the record indicated that plaintiffs were not sufficiently emotionally distressed to succeed on their IIED claim. The court explained that, according to Arizona caselaw, plaintiffs had to demonstrate that their extreme mental and emotional distress was accompanied by physical ailments, such as headaches, in order to succeed on an IIED claim as set forth in Restatement Second of Torts § 46. The court further explained that, under § 46, Comment *h*, it was for the court to determine as a matter of law whether a defendant's acts could be sufficiently extreme and outrageous to state a claim for relief. Pierre-Canel v. American Airlines, 375 F.Supp.3d 1044, 1055, 1056.

**D.Ariz.**2019. Com. (h) cit. in disc. Festival attendee brought a lawsuit against, among others, public university's governing body and university's law-enforcement officers, alleging that defendants committed intentional infliction of emotional distress (IIED) when they arrested him for violating a university policy that banned speech amplified by microphones during the festival. This court granted defendant's motion to dismiss, holding, inter alia, that defendants' conduct was not extreme and outrageous, as required for a successful IIED claim. The court explained that, under Restatement Second of Torts § 46, Comment *h*, it was entitled to decide whether defendants' alleged acts reasonably constituted extreme and outrageous conduct without making findings of fact. Spears v. Arizona Board of Regents, 372 F.Supp.3d 893, 921.

**D.Ariz.**2017. Com. (b) quot. in case quot. in sup. Following a physical altercation between patrons at a motocross park, plaintiff who was injured in the altercation brought a claim for intentional infliction of emotional distress against defendants who were also involved in the altercation. This court granted defendants' motion for summary judgment on plaintiff's claim, holding that plaintiff failed to proffer evidence upon which a jury reasonably could conclude that he experienced severe mental anguish as a result of defendants' actions. The court explained that, under Arizona law and Restatement Second of Torts § 46, a plaintiff had to show that a defendant engaged in extreme and outrageous conduct, that the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result, and that severe emotional distress occurred as a result of the defendant's conduct. Lewis v. Dirt Sports LLC, 259 F.Supp.3d 1039, 1047.

**D.Ariz.**2013. Subsec. (1) cit. in case quot. in sup. Former employee sued former employer that was self-insured for workers' compensation and subsidiary of employer that handled adjustment of employees' workers' compensation claims, alleging intentional infliction of emotional distress and other claims in connection with defendants' handling of her claim for a work-related injury to her right hand; among other things, plaintiff asserted that her supervisor falsely informed her physician that employer had surveillance video of employee pushing a shopping cart with both hands after the accident. Denying defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress, this court held that, if a jury found that supervisor lied to physician in an attempt to influence the care that physician was providing to employee, it

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 213 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

could also find that such conduct rose to the level of outrageousness necessary for such a claim. The court reasoned that Arizona courts had recognized the unique relationship between insured and insurer, and that a jury could find that an insurer's exploitation of that power relationship for purposes of financial gain was outrageous. Demetrulias v. Wal-Mart Stores Inc., 917 F.Supp.2d 993, 1012.

**D.Ariz.**2012. Com. (d) cit. in case quot. in sup. In consolidated cases, members of county board of supervisors, county court judges, and county staff members sued members of county sheriff's office and county attorney's office, asserting, among other things, claims for intentional infliction of emotional distress (IIED). This court denied defendants' motions to dismiss these claims, holding that the alleged retaliatory conduct of defendants, as officials vested with governmental authority, against plaintiffs, as well as their alleged targeted harassment of plaintiffs, including their filing of a federal civil Racketeer Influenced and Corrupt Organizations Act suit against plaintiffs, was sufficiently outrageous to state an IIED claim, and, further, plaintiffs sufficiently alleged that defendants acted against them with the intention of causing, or at least with reckless disregard of the risk of, emotional injury. Donahoe v. Arpaio, 869 F.Supp.2d 1020, 1061.

**D.Ariz.**2002. Com. (d) quot. in sup. After employee was fired for alleged substance abuse, she sued employer for intentional infliction of emotional distress, inter alia, alleging that employer required her to submit to drug screening, required her to give urine sample, and conducted interview that covered inappropriate subjects. This court dismissed in part, holding, inter alia, that the emotional-distress claim was preempted by § 301 of Labor Management Relations Act. The court stated that any claim for extreme and outrageous conduct related to enforcement of employer's substance-abuse policy must arise from terms of collective-bargaining agreement (CBA), and that without interpreting CBA's terms, the court could not determine if employer's conduct was extreme and outrageous in view of substance-abuse policy. Robinson v. Fred Meyers Stores, Inc., 252 F.Supp.2d 905, 915.

**D.Ariz.**1997. Com. (d) quot. in case quot. in sup. A taxpayer sued the government, alleging intentional and negligent infliction of emotional distress as a result of its harassment in attempting to collect unpaid tax assessments made against him. Granting defendant's motion for summary judgment, the court held, inter alia, that plaintiff failed, as a matter of law, to establish that defendant's agents committed any acts that were extreme and outrageous so as to state a claim for relief for intentional infliction of emotional distress. Rayes v. U.S., 967 F.Supp. 1162, 1165.

**D.Ariz.**1996. Cit. in headnotes, cit. in sup., com. (d) quot. in case quot. in sup. Medical laboratory, its owner, and owner's wife sued television network for, inter alia, public disclosure of private facts and intentional infliction of emotional distress after network secretly taped owner's admission that his employees were fatigued, then aired a news program in which its reporter stated that laboratory had misread pap smear slides. Network moved for summary judgment. Granting the motion, the court held that laboratory, as a corporation, could not maintain an action for invasion of privacy; wife's privacy action failed because her claim was merely derivative of her husband's; owner could not recover for invasion of privacy because the disclosed facts were matters of public record and

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 214 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

could not be considered highly offensive to a reasonable person; and the use of hidden cameras to record owner's comments was neither atrocious nor outrageous. Matter of Medical Laboratory Management Consultants, 931 F.Supp. 1487, 1489, 1493, 1494.

**D.Ariz.**1995. Cit. generally in disc., cit. generally in case quot. in sup., com. (d) quot. but dist., com. (h) cit. in case quot. in sup. Disabled airline passenger sued airlines, airport, and skycap service, alleging federal and state law causes of action, including intentional infliction of emotional distress. Plaintiff, who was 73 years old and suffered from severe arthritis of the knees, contended that defendants acted outrageously when a skycap pushed his wheelchair to a shuttle bus stop, then forced him out without providing handicapped facilities or handicapped access to the bus. Granting defendants' motion for summary judgment, the court held that they acted neither obnoxiously nor intolerably by failing to treat plaintiff as more incapacitated than he appeared to be. The evidence indicated that plaintiff was not forced from the wheelchair but stepped out of it without protest and, moreover, rejected fellow passengers' offers for a seat and boarded the bus without requesting assistance. Adiutori v. Sky Harbor Intern. Airport, 880 F.Supp. 696, 707, affirmed 103 F.3d 137 (9th Cir.1996).

**E.D.Ark.**

**E.D.Ark.**1995. Cit. in ftn., coms. (g)-(i) cit. in disc. Owner of a store located in front of a county detention facility was raped by an unsupervised "trusty" pretrial detainee, who had been directed by the county deputy sheriff to unload groceries from a police car behind the store. Store owner brought a § 1983 civil-rights claim, as well as pendent state-law tort claims, against the county, the deputy sheriff, and others. Granting in part defendants' motion to dismiss, the court held that plaintiff failed to state a claim against defendants under Arkansas' tort of outrage, since defendants' conduct in granting detainee trusty status and allowing him to leave the detention facility unsupervised was pursuant to county policy and thus did not constitute outrageous conduct; even if that conduct were sufficiently egregious to be actionable, defendants were not liable absent an allegation that they intended harm to befall plaintiff or that the attack was a substantially certain or highly probable consequence of the unsupervised release. Davis v. Fulton County, Ark., 884 F.Supp. 1245, 1262, 1264, affirmed 90 F.3d 1346 (8th Cir.1996).

**E.D.Ark.**1984. Cit. in disc., quot. in case cit. in sup., coms. (d) and (i) quot. in case quot. in sup., com. (f) and illus. 9-13 cit. in case quot. in disc., com. (h) quot. in disc. and cit. in case quot. in disc. Plaintiff sued her broker, alleging that she was defrauded into purchasing securities that were not suited to her needs, and as a result she suffered severe emotional distress. Defendant moved for partial summary judgment on the emotional distress claim, arguing, inter alia, that plaintiff had failed to adequately establish her claim. The court granted summary judgment, noting that the court was to determine whether conduct may reasonably be regarded as so outrageous as to permit recovery. Here plaintiff had not alleged conduct on the part of defendants that was so outrageous as to trigger liability, such as subterfuges, threats, exploitation, or speculative investment. LeCroy v. Dean Witter Reynolds, Inc., 585 F.Supp. 753, 762, 764-766.

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 215 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**W.D.Ark.**

**W.D.Ark.** 1995. Com. (d) quot. in case quot. in disc., com. (h) cit. in case quot. in disc. Employee who was accused of theft and was terminated after he admitted that he had given away property belonging to his employer without permission or authorization brought a claim for the tort of outrage against employer. Granting employer's motion for summary judgment, the court held, in part, that employer's actions did not rise to the level of extreme and outrageous conduct and employee failed to present sufficient evidence that he suffered emotional distress as a result of that conduct to establish a claim for the tort of outrage. Crenshaw v. Georgia-Pacific Corp., 915 F.Supp. 93, 97.

**W.D.Ark.** 1994. Cit. in headnotes, cit. and quot. in disc., cit. in case quot. in disc., subsecs. (1) and (2) cit. in disc., com. (d) quot. in sup., cit. in disc. and cit. in case quot. in disc., coms. (g) and (j) cit. in disc. and cit. in case quot. in disc., com. (l) cit. in disc. (erron. cit. as com. 1). Former member of bible study group sued group leader for intentional infliction of emotional distress, alleging that leader brainwashed him and caused the separation of plaintiff and his wife, also a group member. After the court entered judgment on a jury verdict for plaintiff, defendant moved for judgment as a matter of law. Granting the motion, the court held that the alleged brainwashing was nothing more than religious indoctrination and was insufficient to establish outrageousness, and that plaintiff could not recover under a theory of intentional infliction of emotional distress for the extreme conduct he alleged was directed at his now ex-wife, a third party. Poindexter v. Armstrong, 934 F.Supp. 1052, 1052-1057.

**W.D.Ark.** 1986. Coms. (d) and (j) cit. in sup. A teacher who received another teacher's score report on a competency examination and whose own score was sent to another sued the computer service that provided the scores for negligence, mental anguish, extreme emotional distress, and invasion of privacy. This court granted the service's motion for summary judgment, finding that the inadvertent switching of test scores fell far short of the wilful and wanton conduct necessary to support a claim for emotional distress, particularly when the plaintiff, instead of hiding in embarrassment, called other teachers and appeared on local television. The invasion of privacy claim failed because she never contended that the defendant had ever communicated the plaintiff's scores to anyone except the person who had inadvertently received them. Wood v. National Computer Systems, Inc., 643 F.Supp. 1093, 1097, judgment affirmed 814 F.2d 544 (8th Cir.1987). See above case.

**C.D.Cal.**

**C.D.Cal.** 2009. Com. (h) cit. in disc. Debtor sued debt collectors for, among other things, intentional infliction of emotional distress (IIED) allegedly caused by defendants' attempts to collect on plaintiff's debt. This court, concluding that the complaint failed to allege any facts showing how plaintiff suffered emotional distress, dismissed the IIED claim with leave to amend

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 216 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

to include allegations regarding the nature of plaintiff's distress. The court, however, rejected defendant's argument that plaintiff did not properly plead the elements of the claim, since plaintiff's complaint explicitly recited each of the four elements, and also rejected defendant's argument that the court should find, without benefit of a fuller record, that defendants' alleged conduct was not sufficiently "outrageous" as a matter of law. Robinson v. Managed Accounts Receivables Corp., 654 F.Supp.2d 1051, 1062.

**C.D.Cal.**2001. Com. (d) cit. in sup. Equal-opportunity-housing association and African-American building manager sued city and director of landlord association that practiced tenant screening, alleging that defendants engaged in unfair housing practices in violation of federal and state laws, and asserting a claim for intentional infliction of emotional distress. Denying defendant director's motion for summary judgment on plaintiff manager's emotional-distress claim, the court held, inter alia, that a genuine issue of material fact existed as to whether director's discriminatory remarks at a landlord-association meeting attended by manager transcended the bounds of behavior usually tolerated in a civilized society, and might be considered outrageous conduct. Inland Mediation Bd. v. City of Pomona, 158 F.Supp.2d 1120, 1157.

**C.D.Cal.**1999. Com. (d) quot. in disc. Attorney brought state-court suit against trustee of trust with which his client had a partnership relationship, alleging intentional infliction of emotional distress, among other claims. Upon removal, this court denied the attorney's motion to amend his complaint to add a trustee of another trust as a nondiverse defendant. Plaintiff alleged that the other trustee had sent him faxes advising him to contact his insurance company regarding claims that other trustee knew were not covered by insurance. The court held, inter alia, that other trustee's conduct was insufficient to support an emotional distress claim. Clinco v. Roberts, 41 F.Supp.2d 1080, 1084.

**C.D.Cal.**1997. Com. (d) cit. generally in headnote and quot. in disc. A former employee of a store brought a claim for intentional infliction of emotional distress under California law against the store manager, among others, alleging that defendant failed to investigate incidents of harassment against him by co-workers and told him that the incidents were "all in his head," and also alleging that he overheard defendant say to another employee, "I wish Danny would quit." Granting defendant's motion for summary judgment, the court held that plaintiff failed to establish a prima facie case for intentional infliction of emotional distress, since defendant's conduct in making the alleged offensive statements was not outrageous and there was no evidence that defendant intended to inflict emotional harm on plaintiff. Dove v. PNS Stores, Inc., 982 F.Supp. 1420, 1421, 1424.

**C.D.Cal.**1996. Com. (d) quot. in case quot. in sup. Applicant brought a claim for intentional infliction of emotional distress, as well as other causes of action, against insurer, alleging that insurer's denial of his application for life insurance was based solely and improperly on his wife's HIV-positive status. Granting in part defendant's motion to dismiss, the court held, inter alia, that plaintiff failed to state a claim for intentional infliction of emotional distress because the denial of insurance coverage did not rise to the requisite level of outrageous conduct. Kotev v. First Colony Life Ins. Co., 927 F.Supp. 1316, 1324.

**C.D.Cal.**1987. Cit. in disc., com. (h) cit. in ftn. An antipornography lecturer filed suit against a magazine, its publisher, and the publisher's corporation, asserting claims under the United States Constitution and state obscenity statutes and suing for intentional infliction of emotional injury, libel, invasion of privacy, and outrage. A Wyoming federal court dismissed the constitutional and statutory claims and granted the defendants' motion for change of venue. This court granted the defendants' motion for summary judgment on the remaining claims, holding that the plaintiff failed to state claims for libel and invasion of privacy, that the emotional injury and outrage claims were identical, and that since defamation was the gravamen of the action, a separate action for emotional injury was not sustainable. The court dismissed the invasion of privacy claim, which was based on the public disclosure of private facts, because that tort was not recognized under the applicable state law and no facts were disclosed. The court dismissed the outrage claim because the tort of outrage embodied the state's tort of intentional infliction of emotional distress. Dworkin v. Hustler Magazine, Inc., 668 F.Supp. 1408, 1420, 1421, judgment affirmed 867 F.2d 1188 (9th Cir.1989), cert. denied 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989).

**E.D.Cal.**

**E.D.Cal.**2015. Com. (d) cit. in case quot. in sup. Female arrestee brought a claim for intentional infliction of emotional distress (IIED), inter alia, in connection with her arrest and booking for possession of a controlled substance against, among others, male police officer who entered the strip-search area and began questioning her while she was still undressed. This court denied officer's motion to dismiss that claim, holding that arrestee pleaded specific facts that a reasonable trier of fact could find extreme and outrageous under Restatement Second of Torts § 46. The court pointed to arrestee's allegations that officer resumed questioning her while she was undressed in retaliation for her earlier resistance to answering his questions. Blanco v. County of Kings, 142 F.Supp.3d 986, 1102.

**E.D.Cal.**2010. Cit. in sup., com. (e) quot. in sup. City police officer who was range master for city's police-training shooting range sued county and county sheriff, asserting, inter alia, a claim for intentional infliction of emotional distress (IIED) in connection with sheriff's investigation of an accidental shooting of a county resident with a stray bullet from the training range. Granting summary judgment for defendants as to plaintiff's IIED claim, this court held that plaintiff's contention that defendants abused a relation or position of power over him by disclosing his personal information, including his home address, driver's license number, and telephone numbers, to the news media did not assert conduct that was sufficiently extreme and outrageous to support his IIED claim, in the absence of any evidence that a special relationship existed between plaintiff, as a witness in the investigation, and sheriff's office. Clark v. County of Tulare, 755 F.Supp.2d 1075, 1091.

**E.D.Cal.**2008. Com. (j) cit. in case cit. in sup. Insured homeowners sued insurer in connection with its alleged bad-faith response to their claims for a flooding incident involving contaminated water

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 218 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

that resulted in their being unable to remain in their home for almost a year. Denying summary judgment for insurer on insureds' claim for intentional infliction of emotional distress, this court held, inter alia, that, while plaintiffs had not pointed to any evidence of severe emotional distress, and the facts that they presented did not individually show extreme and outrageous conduct, whether the facts were sufficient collectively was better resolved at the close of insureds' evidence. The court noted that, under California law, the duration of the emotional distress was one of the factors to be considered in determining its severity. Hergenroeder v. Travelers Property Cas. Ins. Co., 249 F.R.D. 595, 621.

**E.D.Cal.Bkrtcy.Ct.**

**E.D.Cal.Bkrtcy.Ct.**2015. Cit. in sup., subsec. (1) quot. in ftn. Judgment creditor brought an adversary proceeding against Chapter 13 debtor who had uploaded a private video of her to a pornography website without her permission, seeking a determination that the debt represented by her judgment against him for invasion of privacy and intentional infliction of emotional distress was nondischargeable because it arose from his willful or malicious conduct. This court denied debtor's motion to dismiss, holding that the torts of intentional infliction of emotional distress and invasion of privacy constituted "personal injury to an individual," as required to except the debt from discharge. The court reasoned that the conduct required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46 constituted a personal injury under the Bankruptcy Code. In re Grossman, 538 B.R. 34, 43.

**E.D.Cal.Bkrtcy.Ct.**2011. Illus. 12 cit. in case cit. in sup. Chapter 7 debtor husband and wife filed a motion seeking damages and other relief against lender that held three deeds of trust on their home, alleging that, after they had already received a discharge in bankruptcy and surrendered the home to lender, lender violated the discharge by sending them 24 letters over a 10-month period in which it demanded that they continue to honor their obligations in connection with the home. Granting the motion in part, this court held that debtors were entitled to recover damages for emotional distress. The court reasoned, in part, that whether a defendant knew that a plaintiff had a special susceptibility to emotional distress was a factor that could be considered in determining whether the alleged conduct was outrageous, and pointed out that lender did not halt its communication with husband even after his psychiatrist sent a letter to lender asking it to do so. In re Nordlund, 494 B.R. 507, 524.

**N.D.Cal.**

**N.D.Cal.**2019. Com. (d) quot. in sup. Passenger brought, among other things, claims of intentional infliction of emotional distress (IIED) against airline and airline employee, alleging that he suffered severe emotional distress after defendants improperly removed him from a flight and subjected him to questioning by law-enforcement officers after another passenger reported overhearing him speaking in Arabic and using words such as "inshallah," "shahid," and "ISIS." This court granted in part defendants' motion for summary judgment, holding that defendants' conduct was

not extreme or outrageous enough to sustain an IIED claim. The court explained that defendants' conduct was discriminatory, distressing, and embarrassing, but discriminatory conduct alone was not sufficiently atrocious or utterly intolerable under Restatement Second of Torts § 46, Comment *d*, to sustain an IIED claim. Makhzoomi v. Southwest Airlines Co., 419 F.Supp.3d 1136, 1161.

**N.D.Cal.**2011. Subsec. (1) quot. in sup. Airline passenger sued airline for, inter alia, intentional infliction of emotional distress (IIED), alleging that flight attendant yelled at her in close proximity, resulting in saliva hitting her face, and punched her in the arm, causing her to scream and feel numb, because she impermissibly used the first class restroom. This court denied in part defendant's motion for judgment on the pleadings, holding that, at the pleadings stage, plaintiff only needed to allege facts that *could* support a claim of IIED, and she had done this by putting forth evidence of behavior that could be interpreted as extreme, and by alleging that she suffered extreme emotional distress as a result. Keum v. Virgin America Inc., 781 F.Supp.2d 944, 953.

**N.D.Cal.**1988. Com. (d) quot. in case quot. in disc. The former secretary of a federal district court judge sued the judge and a private association of judges for intentional infliction of emotional distress, inter alia, after she was discharged. The court dismissed the claim as to the private association and partially dismissed as to the judge, holding that the plaintiff did not allege sufficient facts to establish that the conduct of the defendants, in regard to their insistence that she perform work for the private association and that she not discuss or complain of that work, was extreme and outrageous. The court held, however, that the plaintiff's allegations against the judge of offensive touching, frequent demented tirades of obscenities, and threats of a bad recommendation did assert facts sufficient to allow a trier of fact to conclude that his conduct was extreme and outrageous. Garcia v. Williams, 704 F.Supp. 984, 1003.

**N.D.Cal.**1977. Cit. but dist. Plaintiff, a probationary tympanist for a symphony orchestra, who was denied tenure with the orchestra, brought a suit alleging that the orchestra players' committee vote denying her tenure violated the express requirement of a previous settlement agreement that provided for the holding of a second vote on plaintiff's tenure. (On a previous vote, plaintiff had been denied tenure.) Plaintiff further alleged that the second vote against her was an intentional wrongful act which caused her emotional distress and anguish. In granting summary judgment for the defendants, the court held, inter alia, that the simple vote of the committee, even if it occurred exactly as alleged in plaintiff's complaint did not amount to the kind of outrageous conduct beyond all bounds of decency that is required for the tort of intentional infliction of emotional distress. Jones v. Musicians Union of S.F. Local No. 6, Etc., 446 F.Supp. 391, 395.

**S.D.Cal.**

**S.D.Cal.**2010. Com. (d) quot. in sup. As part of his § 1983 action against his ex-wife's attorneys, city, city police officers, and others, arising from an alleged conspiracy to have him arrested in order to obtain incriminating child-custody evidence against him, former husband brought a claim for, inter alia, intentional infliction of emotional distress (IIED) against process server, alleging

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 220 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

that, while serving him with divorce papers, defendant angrily warned plaintiff, "you have no idea who you're fucking with." Granting defendant's motion to dismiss the IIED claim, this court held that the claim failed because plaintiff did not adequately allege that defendant's conduct was extreme or outrageous, or that he suffered severe emotional distress as a result of her conduct; while plaintiff urged the court to infer a threat of physical or other particular sorts of harm from defendant's language, defendant's threat could, at best, be described as cryptic or vague. Steel v. City of San Diego, 726 F.Supp.2d 1172, 1190.

**S.D.Cal.**2007. Cit. in disc. (general cite). Former employee of subcontractor that provided services at a nuclear electric generating station sued former employer over his termination. Granting in part defendant's motion to dismiss, this court held, inter alia, that plaintiff's claim for intentional infliction of emotional distress (IIED) was barred by the federal enclave doctrine, because the station was located on a military base that was within the exclusive territorial jurisdiction of the federal government. The court explained that California's recognition of this tort followed the amendment of the Restatement of Torts in 1947, and the government acquired the base no later than 1942; thus, because an IIED claim did not come within a reservation of jurisdiction by California and had not been adopted by Congress, it was inapplicable here. Stiefel v. Bechtel Corp., 497 F.Supp.2d 1138, 1149.

**S.D.Cal.**1999. Com. (d) cit. in disc. and quot. in case quot. in disc. Former employee sued former employer for, inter alia, intentional infliction of emotional distress, alleging that she suffered retaliation after complaining about a supervisor's behavior. After the jury returned a verdict for plaintiff, defendant moved for judgment as a matter of law and for a new trial. Entering judgment as a matter of law and conditionally granting the motion for a new trial, the court held, in part, that the conduct complained of constituted everyday management decisions and, while disagreeable to plaintiff, did not rise to the level of outrageousness necessary to support an action for intentional infliction of emotional distress. Helgeson v. American Intern. Group, Inc., 44 F.Supp.2d 1091, 1095.

**S.D.Cal.**1986. Com. (d) cit. in case quot. in disc. After an employer demoted an employee, the employee sued the employer and his immediate supervisors, alleging, inter alia, intentional infliction of emotional distress. The court denied the defendants' motion to dismiss the plaintiff's claim for intentional infliction of emotional distress, holding that dismissal of the claim was inappropriate at the present stage of the litigation. The court noted, however, that the plaintiff was required to satisfy a heavy burden to prove that he was entitled to recover under the emotional distress theory and that it appeared inherently improbable that he would be able to prove what he had alleged under this set of facts. Clement v. American Greetings Corp., 636 F.Supp. 1326, 1331.

### D.Colo.

**D.Colo.**2023. Com. (j) quot. in sup. and cit. in case cit. in sup. Former director at an electronic voting-systems company sued owner and host of a podcast for intentional infliction of emotional

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 221 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

distress, alleging that defendants repeatedly invited a guest onto the podcast who falsely alleged that plaintiff had fraudulently rigged a presidential election, despite knowing that people were harassing plaintiff based on the guest's accusations. This court denied defendants' special motion to dismiss under the state's anti-SLAPP statute, holding that plaintiff sufficiently alleged that he was likely to succeed on the merits of his claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court reasoned, in part, that plaintiff met his burden of showing that he experienced severe emotional distress by submitting evidence to show that he had endured credible fear for his own life and the lives of his family, in addition to suffering significant anxiety and depression. Coomer v. Make Your Life Epic LLC, 659 F.Supp.3d 1189, 1206.

**D.Colo.**2014. Com. (d) quot. in case quot. in sup. Owner of pornographic films sued individuals who allegedly infringed on plaintiff's copyrighted work by using the internet and a peer-to-peer file sharing protocol to reproduce, distribute, display, or perform plaintiff's protected films; defendant counterclaimed, claiming, among other things, outrageous conduct. This court granted plaintiff's motion to dismiss defendant's counterclaims, holding that plaintiff did not engage in outrageous conduct within the meaning of Restatement Second of Torts § 46 when it filed its copyright-infringement claim against defendant and offered to settle for an amount within the statutory-damages parameters. The court reasoned that the embarrassing nature of plaintiff's work was insufficient to give rise to an claim for outrageous conduct where, as here, there was a factual basis supporting plaintiff's allegations that the work was protected by copyright laws, and an infringement was traced to defendant's Internet Protocol (IP) address. Purzel Video GmbH v. Smoak, 11 F.Supp.3d 1020, 1029.

**D.Colo.**2014. Com. (d) quot. in case quot. in sup. Owner of pornographic films sued individuals who allegedly infringed on plaintiff's copyrighted work by using the internet and a peer-to-peer file sharing protocol to reproduce, distribute, display, or perform plaintiff's protected films; defendant counterclaimed, claiming, among other things, outrageous conduct. This court granted plaintiff's motion to dismiss defendant's counterclaims, holding that plaintiff did not engage in outrageous conduct within the meaning of Restatement Second of Torts § 46 when it filed its copyright-infringement claim against defendant and offered to settle for an amount within the statutory-damages parameters. The court reasoned that the embarrassing nature of plaintiff's work was insufficient to give rise to an claim for outrageous conduct where, as here, there was a factual basis supporting plaintiff's allegations that the work was protected by copyright laws, and an infringement was traced to defendant's Internet Protocol (IP) address. Purzel Video GmbH v. St. Pierre, 10 F.Supp.3d 1158, 1167.

**D.Colo.**2009. Com. (d) quot. in disc. Investors who were swindled in a Ponzi scheme by licensed securities broker sued broker's employer, a broker-dealer, as well as its alter ego, asserting, among other things, a claim for outrageous conduct. This court dismissed the claim, holding, inter alia, that, regardless of the egregiousness of broker's conduct, no reasonable person could find that the conduct of defendants rose to the extreme level of outrageousness required to sustain this tort; plaintiffs pointed to no cases finding outrageous conduct in a broker-dealer's failure to report or

stop misconduct leading to financial losses, and the court's own research revealed none. Dolin v. Contemporary Financial Solutions, Inc., 622 F.Supp.2d 1077, 1090.

**D.Colo.**2009. Adopted in case cit. in disc., com. (j) cit. and quot. in sup. Corporation and its shareholders brought a claim for intentional infliction of emotional distress (IIED), inter alia, against insurer, alleging that defendant knew that plaintiffs were suffering financially, and purposely chose to delay and deny insurance benefits to them on an insurance claim. Granting summary judgment for defendant on the IIED claim by corporation and husband/shareholder, but not on the claim by wife/shareholder, this court held that wife's reference in her deposition testimony to "unreal" physical and emotional stress, coupled with the allegations that defendant's adjuster threatened to delay payment of insurance benefits after a fire that effectively closed the business that provided wife's livelihood, was sufficient to permit a reasonable factfinder to conclude that the distress she suffered was severe. Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co., 641 F.Supp.2d 1167, 1179, 1180.

**D.Colo.**2009. Com. (b) cit. in disc. Borrower sued lender after defendant provided negative credit information regarding plaintiff's payment history to various credit-reporting agencies, thereby adversely affecting plaintiff's credit rating, despite having been correctly informed by plaintiff that the loan had been paid in full. This court denied defendant's motion to dismiss plaintiff's claim under Colorado law for outrageous conduct (intentional infliction of emotional distress), holding that the claim was not preempted by the federal Fair Credit Reporting Act; an outrageous-conduct claim was not a claim for "defamation, invasion of privacy, or negligence," nor was it necessarily "in the nature of" such a claim, since outrageous-conduct claims occupied a well-established niche in the common law, discrete from the claims specifically described in the statute. Llewellyn v. Shearson Financial Network, Inc., 622 F.Supp.2d 1062, 1069.

**D.Colo.**2009. Com. (d) quot. in case quot. in sup. State prisoner brought a pro se *Bivens* action against Immigration and Customs Enforcement (ICE) agent in his individual capacity, alleging, among other things, that defendant's lodgment of an immigration detainer against him was outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. Adopting the recommendations of the magistrate judge, this court granted summary judgment for defendant. The magistrate judge found that there were no facts alleged showing that defendant's conduct was extreme and outrageous, or that he acted recklessly with the intent of causing plaintiff severe emotional distress; defendant simply followed standard procedures after plaintiff lied to him about his nationality. Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe County Justice Center, 657 F.Supp.2d 1218, 1232.

**D.Colo.**2008. Com. (d) quot. in sup. Former employee brought employment-discrimination action against, among others, two former supervisors and a senior manager, alleging that defendants conspired to force his co-workers to create false documentation of his poor performance and then used it to discipline him, leaving him with no choice but to quit. Granting in part defendants' motion to dismiss plaintiff's claim for outrageous conduct, this court held, inter alia, that defendants' alleged conspiracy to build a case for his termination was not so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; while the alleged conduct was contemptible, conduct that could be illegal or that some might consider reprehensible was not necessarily actionable under Colorado law. Preston v. Atmel Corp., 560 F.Supp.2d 1035, 1039.

**D.Colo.**2007. Com. (d) cit. in case quot. in sup. As part of her sexual-harassment/wrongful-termination suit, former teacher's assistant at school brought claim for intentional infliction of emotional distress (IIED) against school counselor and supervisor, alleging that, after sharing certain personal information with counselor in confidence, counselor passed the information to principal, who then used the information to prey upon her emotions and start a sexual relationship, and that, after she ended the relationship with principal, supervisor retaliated against her. This court dismissed plaintiff's IIED claims against both defendants, holding that a breach of trust by a supposed confidant was a commonplace in society and not sufficiently outrageous conduct to support an IIED claim, and supervisor's alleged actions—withdrawing his good treatment of her after she ended the relationship with principal, restricting her movements in the school, and terminating her employment—were also not sufficiently outrageous. Silver v. Primero Reorganized School District No. 2, 619 F.Supp.2d 1074, 1078.

**D.Colo.**2006. Com. (d) cit. in case quot. in disc. After charges against her were dropped for lack of probable cause, woman who was arrested for interference with police authority sued three officers who arrested her, their supervisor, the chief of police, city attorney, deputy city attorney, and mayor for, in part, intentional infliction of emotional distress. This court, inter alia, adopted the magistrate's recommendation to grant summary judgment on this claim for supervisor, chief of police, and mayor on ground that there was no evidence that any of those defendants were involved in the alleged illegal search and seizures or the alleged use of excessive force against plaintiff, and for city attorney and deputy city attorney on ground that they were absolutely immune from liability for their prosecutorial acts. Barton v. City and County of Denver, 432 F.Supp.2d 1178, 1212, affirmed 2007 WL 3104909 (10th Cir.2007).

**D.Colo.**2000. Com. (d) quot. in case quot. in disc. Terminated police officer sued city, among others, for, inter alia, intentional infliction of emotional distress in connection with his discharge pursuant to defendant's policy on sexual harassment. Dismissing the complaint, the court held, in part, that neither the manner of discharge nor defendant's conduct was sufficiently egregious to allow plaintiff to recover under a theory of intentional infliction of emotional distress. Katz v. City of Aurora, 85 F.Supp.2d 1012, 1032, judgment affirmed 13 Fed.Appx. 837 (10th Cir.2001).

**D.Colo.**2000. Com. (d) quot. in disc. Former employee sued former employer for, inter alia, intentional infliction of emotional distress. After entry of summary judgment for defendant, defendant moved for sanctions and fees incurred in fighting the meritless action. Granting the motion in part and denying it in part, the court held, among other things, that plaintiff's mistaken belief as to whether the conduct complained of constituted outrageous behavior did not render her claim a frivolous one. Shackelford v. Courtesy Ford, Inc., 96 F.Supp.2d 1140, 1146.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 224 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Colo.**1999. Com. (d) quot. in case quot. in disc. Former district attorney's office employee sued the district attorney under [42 U.S.C. § 1983](#) for First Amendment retaliatory discharge, intentional infliction of emotional distress, and intentional interference with prospective business advantage. Plaintiff alleged that defendant fired him because plaintiff had refused to participate in a conspiracy to remove the city police chief and had expressed concerns to defendant about defendant's excessive drinking. This court accepted the magistrate's recommendation that defendant's motion for summary judgment be granted in part and denied in part. The court held, inter alia, that plaintiff's emotional-distress claim failed, because, although plaintiff's allegations supported an inference that his discharge was unfair, he failed to establish outrageous conduct. [Jandro v. Foster, 53 F.Supp.2d 1088, 1097](#).

**D.Colo.**1998. Cit. in disc., com. (f) cit. in sup. Judgment creditors who prevailed as plaintiffs in personal-injury action sued tortfeasor's insurer for, inter alia, breach of contract, willful breach of contract, and intentional infliction of emotional distress after insurer refused to satisfy the $3 million judgment entered against tortfeasor. Creditors also sought recovery under a theory of promissory estoppel. Insurer moved to dismiss. Granting the motion in part and denying it in part, this court held that creditors lacked standing to sue for bad-faith breach of an insurance contract, that creditors could sue to recover amounts not exceeding the limits of tortfeasor's insurance policy, that creditors' allegations that they detrimentally relied on insurer's promise to post an appeal bond in the underlying litigation survived the motion to dismiss, and that creditors had established that insurer engaged in a pattern of extreme and outrageous conduct. [Cassidy v. Millers Cas. Ins. Co. of Texas, 1 F.Supp.2d 1200, 1213](#).

**D.Colo.**1997. Cit. in headnotes, adopted in case quot. in disc., com. (d) cit. in case quot. in disc. Female former employee sued former employer for, inter alia, gender-based discrimination and discriminatory termination in violation of Title VII, violations of the Equal Pay Act, and the common law tort of intentional infliction of emotional distress. Defendant moved for summary judgment. Granting the motion, the court held, in part, that plaintiff could not sustain her Title VII or Equal Pay Act claims, and that the conduct complained of, namely, discharge from employment, did not constitute outrageous conduct sufficient to give rise to a cause of action for intentional infliction of emotional distress. [Noel v. Medtronic Electromedics, Inc., 973 F.Supp. 1206, 1208, 1216](#).

**D.Colo.**1997. Cit. in headnote, adopted in case quot. in disc. In employment-discrimination action, workers alleged, among other things, that employer committed the tort of intentional infliction of emotional distress. Defendant moved to dismiss. Granting the motion in part and denying it in part, the court held, inter alia, that, where the allegations forming the basis of their claim for intentional infliction of emotional distress were the same as those supporting their discrimination claim, plaintiffs had failed to state an independently cognizable claim for which relief could be granted. [Visor v. Sprint/United Management Co., 965 F.Supp. 31, 32, 33](#).

**D.Colo.**1996. Com. (d) cit. in sup. College professor who alleged that he was denied tenure in retaliation for his intervention on behalf of an applicant rejected for a teaching position brought

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 225 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

an action for, in part, intentional infliction of emotional distress against the college and college trustees and officials. Granting defendants' motion to dismiss, the court held, inter alia, that, especially in the context of this particular employment dispute, plaintiff failed to show that defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, so as to state a claim under Colorado law for intentional infliction of emotional distress. Thornton v. Kaplan, 937 F.Supp. 1441, 1458.

**D.Colo.**1995. Cit. in headnotes, adopted in case cit. in disc., com. (d) quot. in case quot. in disc. Former male employee who was dismissed for sexually harassing a female co-worker sued employer for, inter alia, intentional infliction of emotional distress. Plaintiff maintained that the harassment charges against him were bogus and defendant acted outrageously in fabricating them. Granting defendant's motion for summary judgment, the court held that where, as here, other employees corroborated defendant's conclusion that plaintiff created a hostile work environment for his co-worker and, at the time of his termination, plaintiff was on final written warning for sleeping on the job, defendant's decision to discharge him could not be considered atrocious or utterly intolerable to a civilized society. Bellairs v. Coors Brewing Co., 907 F.Supp. 1448, 1451, 1459, affirmed 107 F.3d 880 (10th Cir.1997).

**D.Colo.**1994. Cit. in sup. Sales representative who was fired after allegedly falsifying cigarette sales records sued her employer for civil-rights violations, fraud, and intentional infliction of emotional distress, among other claims. Plaintiff alleged that her supervisor misled her with respect to a "gratis," a free product entry on plaintiff's documentation records, that he lied about having spoken with a customer about the gratis, and that he misrepresented his conversation with one of the managers of plaintiff's allegedly falsified accounts, who had tried in vain to state his opinion to the supervisor that someone inside the company was out to get plaintiff. Granting in part and denying in part defendant's motion for summary judgment, this court held, inter alia, that plaintiff stated a cause of action for intentional infliction of emotional distress, citing the alleged lies, together with the fact that supervisor had been disciplined in the past for altering an audit of an employee in order to fire that employee. Davies v. Philip Morris, USA, 863 F.Supp. 1430, 1440.

**D.Colo.**1993. Cit. in headnote, subsec. (a) quot. in part in disc. Insured and her spouse sued insurer for benefits under an insurance policy and for bad faith and outrageous conduct. Dismissing spouse's claims, the court held, inter alia, that spouse's secondhand distress resulting from insurer's nonpayment of benefits to insured was not a sufficient basis for spouse's claims; moreover, insurer's implied promise of good faith applied only to insured, and spouse was neither a target nor a witness of any alleged outrageous conduct by insurer. Dean v. Allstate Ins. Co., 878 F.Supp. 1397, 1398, 1400.

**D.Colo.**1993. Cit. in case cit. in disc. Man convicted of murder and sexual assault of a mother and murder of her one-and-one-half-year-old daughter, who died of dehydration before mother's body was discovered, sued murdered woman's husband and two men husband had hired to kill his wife for negligence, negligent infliction of emotional distress, malicious prosecution, and intentional infliction of emotional distress, among other claims. Plaintiff spent nine years in prison before

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 226 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

hired killer confessed that he and other defendant had killed the woman at husband's direction. Noting that husband had participated in the investigation of the murders and had testified as a witness for the state at the trial in which plaintiff was convicted, the court denied husband's motion to dismiss, stating that there was a duty on the part of a knowingly guilty party not to actively facilitate an innocent man's conviction and imprisonment and a duty not to lie under oath, and that, without husband's actions, plaintiff would not have spent nine years behind bars. Purvis v. Hamwi, 828 F.Supp. 1479, 1483.

**D.Colo.**1991. Subsec. (1) quot. in case quot. in disc., com. (d) quot. in case quot. in sup. A woman who had a group insurance policy was diagnosed with lung cancer. The insurer terminated the group policy but continued to pay the woman's medical expenses, although it subsequently contended that it was not required to do so. The woman sued the insurer for a declaratory judgment that she was covered under the policy and for damages under several claims, including breach of contract, negligent misrepresentation, and outrageous conduct. Granting the insured's motion for summary judgment on her declaratory judgment claim and the insurer's motion for summary judgment on the various damages claims, this court held, inter alia, as a matter of law that the insurer's conduct in this case was not sufficiently outrageous to permit recovery under the outrageous conduct claim. Buell v. Security General Life Ins. Co., 779 F.Supp. 1573, 1578, affirmed in part, reversed in part 987 F.2d 1467 (10th Cir.1993).

**D.Colo.**1991. Quot. in case cit. in sup., com. (i) quot. in case quot. in disc. Individuals and businesses who owned land near a nuclear weapons plant sued the companies that formerly operated the plant, alleging that the plaintiffs incurred injury and damages caused by releases or threatened releases of hazardous substances. The court denied the defendants' motion to dismiss the plaintiffs' outrageous conduct claim, provided that the plaintiffs filed an adequate amended complaint within 20 days. The court found that the plaintiffs failed to plead that they suffered severe emotional distress and that the defendants intended to inflict severe emotional distress or acted recklessly in the deliberate disregard of the high probability that emotional distress would follow. Cook v. Rockwell Intern. Corp., 755 F.Supp. 1468, 1478, 1479.

**D.Colo.**1991. Quot. in case quot. in sup. A National Football League (NFL) referee sued the NFL for claims under the Age Discrimination in Employment Act and for outrageous conduct, alleging that he had been demoted because of his age. Denying the NFL's motion to dismiss, the court held, inter alia, that reasonable jurors could differ on whether the NFL's conduct was outrageous when the referee alleged that the NFL's demotion was an attempt to humiliate him during nationally televised football games and to justify firing him based on inadequate performance in a new position. Dreith v. National Football League, 777 F.Supp. 832, 838.

**D.Colo.**1991. Com. (d) quot. in case cit. in disc. A former employee who was discharged after she refused to sign a consent form disclosing any medications she was taking sued her employer for intentional infliction of emotional distress, inter alia. The court granted the defendant's motion for summary judgment, holding that the defendant's conduct was not outrageous, since neither the defendant's request that the plaintiff provide, prior to taking a drug test, a list of medications

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 227 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

prescribed by her physician nor the manner in which she was terminated was so extreme as to be beyond the bounds of decency and to be regarded as intolerable. Mares v. Conagra Poultry Co., Inc., 773 F.Supp. 248, 253, affirmed 971 F.2d 492 (10th Cir.1992).

**D.Colo.**1991. Subsec. (1) and com. (d) quot. in disc. A former employee sued her employer for outrageous conduct, inter alia, alleging that the defendant discriminated against her because of her sex by denying her promotions, pay, and benefits commensurate with those of her male coworkers and subjecting her to a sexist work environment. Granting in part the defendant's motion for summary judgment, the court held that the plaintiff's allegation that the defendant wrongfully obtained her bank statement did not support her claim for outrageous conduct, even though the action might have caused her to feel outraged and agitated. The court also stated that the pleadings contained no evidence that the defendant obtained the statement unlawfully, and, since the plaintiff's affidavit that the defendant gained access to her account and ordered a printout of her bank statement was not based on her personal knowledge, it did not create a material issue of fact. Robyn v. Phillips Petroleum Co., 774 F.Supp. 587, 591.

**D.Colo.**1991. Cit. in sup. On the way to a sales call, the insured was injured when he slipped and fell in a parking lot. He sought to recover for his injuries from the defendant, his automobile insurance carrier. The defendant initially started to pay benefits, but then denied coverage because it contended that the insured's employer's workers' compensation policy was primary. The insured and his wife sued the defendant for intentional infliction of emotional distress, inter alia, alleging that their large outstanding medical bills caused them mental and physical anxiety, including dizziness and stomach pains. The court granted defendant summary judgment and dismissed with prejudice. It held that plaintiffs failed to demonstrate as a matter of law that defendant's conduct met the minimum threshold of outrageousness needed to maintain an action for intentional infliction of emotional distress. Schultz v. Allstate Ins. Co., 764 F.Supp. 1404, 1411.

**D.Colo.**1991. Com. (d) quot. in case quot. in disc. The children of a man who died of a gunshot wound to the head and whose death was originally reported as a suicide but later found by a grand jury to have been a homicide sued the county coroner's office, the city police department, county and city officers, and their father's widow alleging, among other state and federal claims, defamation and outrageous conduct. Granting motions to dismiss in part and denying them in part, this court held, inter alia, that dismissal of the outrageous conduct claim would be inappropriate since the children had alleged conduct, such as initially refusing entry to the accident scene to the county coroner, failing to conduct an autopsy, and failing to conduct ballistics or trace metal detection tests, that in the context of all the trial evidence, a jury could deem outrageous. Stump v. Gates, 777 F.Supp. 808, 826.

**D.Colo.**1990. Com. (d) quot. in case quot. in disc. A sales employee who was terminated after refusing to sign a no-compete agreement sued the employer for outrageous conduct, inter alia. The court granted in part the defendant's motion for summary judgment, holding that the defendant's conduct, implementing its business judgment to include no-compete clauses, was not so outrageous in character or so extreme in degree as to go beyond all bounds of decency and be regarded as

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 228 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

atrocious and utterly intolerable in a civilized community; moreover, the manner of the discharge was not outrageous. Vaske v. Ducharme, McMillen & Associates, Inc., 757 F.Supp. 1158, 1164.

**D.Colo.**1989. Com. (d) quot. in case quot. in disc. A sheriff's lieutenant pursued and pulled over a speeding car. The driver's father became agitated and kept coming out of the car after repeatedly being told not to interfere with the officer's duty. Finally, the father was arrested and taken into custody. He sued the police officer under federal and state law, namely for civil rights violations, invasion of privacy, assault, false arrest and outrageous conduct. This court granted summary judgment in favor of the defendant, holding, inter alia, that the defendant was immune from liability for reasonable actions taken while he was working within the scope of his official duty and authority. The court also rejected the outrageous conduct claim. Noting that outrageous conduct is presumably the result of an aggregation of all the other torts alleged, the court concluded that there was no genuine issue of material fact that the officer went beyond the bounds of reasonable police procedure in making an arrest, or that the arrest or any of the associated acts were willful and wanton. Navratil v. Parker, 726 F.Supp. 800, 806-807.

**D.Colo.**1988. Com. (g) quot. and cit. in disc. After a woman brought a civil suit against a man who had been convicted of sexually assaulting her, during discovery the defendant's psychiatrist examined the plaintiff. When the defendant's lawyer and the defendant's insurer's lawyer used the testimony of the psychiatrist about the plaintiff to obtain a new trial for the defendant in the criminal proceedings, the plaintiff sued the defense attorneys for negligence, outrageous conduct regarding the misuse of discovery, and invasion of privacy. The court granted the defense attorneys' motions for summary judgment only as to the invasion of privacy claim because the information revealed by the attorneys was in the public record. The court concluded that there was an inference of abuse of the discovery process because the defense could not have obtained the psychiatric testimony in the criminal case. Rohda v. Franklin Life Ins. Co., 689 F.Supp. 1034, 1044.

**D.Colo.**1987. Quot. in case quot. in sup., com. (e) cit. in sup. A teacher who claimed that her strongly expressed support for an expansion of the school district's foreign language program evoked retaliatory actions against her sued the school district and district officials, asserting a federal claim for infringement of her First Amendment rights and pendent state law claims of assault and outrageous conduct. The court denied the defendants' motion for summary judgment, holding in part that fact issues existed as to whether the alleged demotion to substitute teacher and the alleged harassment and assault constituted outrageous conduct. The court stated that those allegations, if proven, might be adjudged to constitute extreme and outrageous conduct and that any of the defendants' permissible conduct might have become extreme and outrageous because they were in positions of authority over the plaintiff. Kirk v. Smith, 674 F.Supp. 803, 810-812.

**D.Colo.**1987. Com. (e) cit. in disc. (Erron. cit. as Contracts 2d.) An employee sued his employer for breach of employment contract and for emotional distress inflicted by the employer's outrageous conduct and abuse of its position of authority over the plaintiff, alleging that he was harassed, coerced into accepting a lateral transfer, and constructively discharged as a result of his participation in the prosecution of a race discrimination claim brought against the employer by a

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 229 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

former employee. This court granted in part and denied in part the defendant's motion for summary judgment, holding, inter alia, that the plaintiff failed to show that the defendant's conduct reached the level of egregiousness necessary to sustain a claim for outrageous conduct, and that the claim for liability based on abuse of a position of authority also failed, where the plaintiff had already established a claim and remedy for the conduct complained of under his breach of contract claim. Price v. Federal Exp. Corp., 660 F.Supp. 1388, 1397.

**D.Colo.**1987. Cit. in disc., com. (d) quot. in part in disc. A staff legal officer in the state court administrator's office was pressured into resigning by the state court administrator shortly after a confrontation between the two at a staff meeting. The state court administrator gave an unfavorable account of the former legal officer's job performance to the latter's prospective employer. The former legal officer sued the state court administrator under a federal civil rights statute and under state law for defamation and several other claims. The court granted summary judgment to the defendant on every claim except the defamation claim. The court held that fact issues existed as to whether the defendant's communication to the plaintiff's prospective employer was made maliciously or with reckless disregard as to its veracity. The court noted that if it was not, then the communication was a valid exercise of the defendant's qualified privilege. Steinberg v. Thomas, 659 F.Supp. 789, 795.

**D.Colo.**1987. Cit. in case quot. in sup., com. (d) cit. and quot. in sup., coms. (g) and (j) quot. in sup., cit. in case quot. in ftn. An airline pilot sued his former employer after he was abruptly discharged, alleging, inter alia, breach of an implied contract of employment, promissory estoppel, and intentional infliction of emotional distress. This court granted the employer's motion for summary judgment, holding, inter alia, that the employer's conduct was not sufficiently outrageous to impose liability for intentional infliction of emotional distress because the employer had the right to terminate the plaintiff without cause. Therrien v. United Air Lines, Inc., 670 F.Supp. 1517, 1523-1525.

**D.Colo.**1986. Coms. (f) and (h) cit. in sup. The plaintiff sued her insurer on a variety of theories, including outrageous conduct and negligence, for mishandling her daughter's group health insurance claim. After initially refusing payment, the insurer recanted. This court denied in part and granted in part the insurer's motion for summary judgment. It concluded that the plaintiff's reliance on trust law principles was misplaced; that the insurance company's conduct could, however, be considered outrageous, in view of the vulnerable mental condition of the plaintiff; and that her negligence claim was precluded by the state's unfair or deceptive practices act. Simmons v. Prudential Ins. Co. of America, 641 F.Supp. 675, 683, 684.

**D.Colo.**1984. Subsec. (1) cit. in disc. After the defendant private investigator accused the plaintiff priest of certain improper conduct, the priest and his religious order sued for outrageous conduct. When the defendant did not appear, the plaintiffs moved for a default judgment on this issue. The court determined that the defendant's conduct did not rise to a level of outrageousness that was actionable, basing its determination partly on the existence of other remedies for the plaintiffs. Bolduc v. Bailey, 586 F.Supp. 896, 902.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 230 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Colo.**1984. Cit. in sup., subsec. (1) quot. in ftn. in sup., com. (d) quot. in ftn. in sup. The plaintiff sued for negligent and intentional infliction of severe emotional distress and for defamation after the defendant directed derogatory comments at him and allegedly assaulted him with a soft drink bottle. This court granted the defendant's motion for summary judgment. The defendant's conduct may have been unsavory, said the court, but it was not so "outrageous in character, and so extreme in degree" to go beyond the bounds of human decency—the criteria for conduct that amounts to infliction of severe emotional distress. King v. Burris, 588 F.Supp. 1152, 1155-1157.

**D.Colo.**1983. Com. (d) quot. in case quot. in ftn. The plaintiff brought an age discrimination case against his former employer, and added claims for breach of contract and outrageous conduct. The defendant moved for summary judgment, which this court granted as to certain damages requested and as to the breach of contract claim, but denied as to the claim for outrageous conduct and for certain compensation requested. This court found that the issues relating to the outrageous conduct claim were factual, and were to be resolved by a jury according to the conscience of the community. Smith v. Montgomery Ward & Co., Inc., 567 F.Supp. 1331, 1335.

**D.Colo.**1982. Cit. in disc., com. (d) quot. in sup. An employee brought an action against the federal Department of Education and individual employees, alleging outrageous conduct, breach of contract, and other claims. Shortly after the plaintiff was hired as a collection agent for the Office of Student Financial Assistance, increased manual tasks were added to her duties. The plaintiff claimed that she informed her supervisor that the additional duties exacerbated her rheumatoid arthritis, but the supervisor rejected her requests for reasonable accommodations. The court dismissed the plaintiff's claim of outrageous conduct based on its finding that the defendants' acts were not "outrageous." The court concluded that the plaintiff was entitled to go to the jury with her other claims. Gelman v. Department of Educ., 544 F.Supp. 651, 653.

**D.Colo.**1982. Cit. in case quot. in sup., subsec. (2) cit. in sup. and cit. in case quot. in ftn. in sup., subsec. (2)(a) cit. and quot. in sup., com. (l) quot. but not fol. The plaintiffs brought an action against the employees of a county emergency service board, seeking damages for the death of their husband and father. The plaintiffs alleged that the defendants had received notice that the decedent required emergency ambulance service but failed to respond promptly, and that this delay proximately caused the death of the decedent. The plaintiffs alleged that the defendants caused the decedent and themselves intentional infliction of emotional distress. The plaintiffs also sought to charge the county and the emergency services board for the emotional harm caused under the doctrine of respondeat superior. This court granted the defendants' motion to dismiss in part and denied it in part. The court held that because the Colorado survival statute provided for the tort action of intentional infliction of emotional distress to survive the injured party, the plaintiffs could bring that action. But it stated that under Colorado law, the plaintiffs could not recover for their own emotional distress where they were not present at the scene of the alleged outrageous conduct. The court stated that although the Colorado supreme court had recently rejected the impact rule in cases seeking damages for the negligent infliction of emotional distress, allowing a plaintiff to recover if he was in danger of receiving bodily harm from the defendant's negligence, it had not

indicated a willingness to forego the requirement that a family member be present at the time of the alleged outrageous conduct to collect damages for intentional infliction of emotional distress. Healy v. Counts, 536 F.Supp. 600, 602, 603.

**D.Colo.**1982. Cit. in ftn. The plaintiff, whose criminal trial ended in a mistrial, brought a civil rights action against the federal district judge who presided at the trial, the federal prosecutors, various court officials, city police, and state district attorneys. The complaint alleged that the conduct of the defendants violated the plaintiff's constitutional rights. The plaintiff also sought to recover damages for false arrest, malicious prosecution, outrageous conduct, and defamation. This court dismissed the plaintiff's complaint against all defendants, finding, inter alia, that the federal defendants were immune from liability, that the plaintiff failed to plead sufficient facts for some claims, and that he failed to exhaust administrative remedies. The plaintiff's state law claims, including outrageous conduct, were best dealt with by the state courts, and with the dismissal of the plaintiff's federal claims, the court ceded jurisdiction over them. Martinez v. Winner, 548 F.Supp. 278, 336.

**D.Colo.**1982. Cit. and quot. in part in sup., com. (d) quot. in part in sup. The plaintiff alleged that he had been wrongfully fired from his employment with the defendant company and, alternatively, that the defendant had wrongfully refused to allow him to resign. The defendant moved to dismiss all of the plaintiff's claims, arguing that none of them stated a claim upon which relief could be granted. The plaintiff alleged, inter alia, that the defendant's conduct had been outrageous, and that it was intended to cause and did cause the plaintiff severe emotional distress. This court found that Colorado had adopted the Restatement (Second) of Torts, so that there was a cause of action in Colorado for the intentional or reckless infliction of emotional distress. This court stated that such claims will normally be cognizable only in cases where the defendant has engaged in a pattern of conduct which either intended to cause, or recklessly did cause, severe emotional distress. The court found that the plaintiff's allegations were insufficient to state a claim for extreme and outrageous conduct; therefore, these claims were dismissed, although other claims were found to be sufficient. Rawson v. Sears, Roebuck & Co., 530 F.Supp. 776, 779, 780.

**D.Colo.**1982. Cit. and quot. in disc. Com. (d) cit. in ftn. in disc. The plaintiff executed an order for service with the defendant, through an agent, whereby it was agreed that the defendant would move the plaintiff's household goods from Chicago to Seabrook, Maryland during a specified time period. Two weeks before shipment was to take place, the defendant notified the plaintiff that delivery could not be completed by the specified date. Plaintiff made alternate arrangements resulting in the goods arriving later than originally planned and forcing the plaintiff to begin work in a new job several days later than planned. The plaintiff brought suit for breach of contract and fraudulent misrepresentation, seeking compensatory and punitive damages. Reviewing the plaintiff's claim for damages for mental distress occasioned by the defendant's conduct, the court held, inter alia, that because the mental distress doctrine requires extreme conduct performed intentionally or recklessly, the defendant's advance notification to the plaintiff, which enabled alternate arrangements to be made, reflected favorably upon the defendant's consideration for the

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 232 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

plaintiff and removed the defendant from the ambit of the mental anguish doctrine. Rothenberg v. Aero Mayflower Transit Co., 495 F.Supp. 399, 407.

**D.Colo.**1977. Cit. in op. Plaintiff, football player brought an action against defendant player on an opposing team for negligence and reckless misconduct. During the course of a professional football game, defendant struck plaintiff in the back of the head out of frustration and anger due to the interception of a pass intended for him. The court held that the level of violence and the frequency of emotional outbursts in professional football games were such that plaintiff must have recognized and accepted the risk that he would be injured by such an act as that committed by defendant, and that even if defendant breached a duty which he owed to him, plaintiff could not recover because he must be held to have assumed the risk of such an occurrence. Hackbart v. Cincinnati Bengals, Inc., 435 F.Supp. 352, 356, judgment rev'd 601 F.2d 516 (9th Cir.), cert. denied 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979).

**D.Colo.Bkrtcy.Ct.**

**D.Colo.Bkrtcy.**1992. Com. (a) quot. in sup. Businessman contributed money as part of his partnership with a pet food business. Dispute existed as to whether the money was a loan or a capital infusion. Pet food company president and his wife were induced to sign guaranty notes and loan documents. They were not informed of the content of the documents that they signed, but relied on representations of businessman and his attorney. Later, businessman withdrew from the partnership, and pet food company filed for Chapter 11 bankruptcy protection. Businessman filed an adversary proceeding, seeking, inter alia, a declaratory judgment to enforce the notes and loan documents. This court held, in part, that businessman and his attorney were liable for extreme and outrageous conduct because they falsely represented their intentions and deliberately took advantage of couple's trust in them. Their conduct was reckless and with intent to cause severe harm, which was evidenced by damage to couple's marriage and social life. In re S & D Foods, Inc., 144 B.R. 121, 169.

**D.Conn.**

**D.Conn.**2020. Com. (d) quot. in sup. Father, who had obtained custody of his minor children in family court, brought, among other things, claims of intentional infliction of emotional distress (IIED) against unlicensed social worker, alleging that defendant published false statements on her website claiming that plaintiff had viciously abused his minor children and was an accused child abuser, and comparing him to other prominent child abusers despite knowing plaintiff's case history suggesting the contrary, which resulted in plaintiff suffering from headaches, weight loss, and sleeplessness. While denying defendant's motion for judgment on partial findings on other grounds, this court held that plaintiff's IIED claim failed because he did not demonstrate that he suffered from severe emotional distress. The court explained that, although defendant's conduct given the circumstances and her intent to "out" plaintiff as a child abuser on a public website was extreme and outrageous as defined by Restatement Second of Torts § 46, Comment *d*, plaintiff

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 233 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

failed to carry his burden of proof that he suffered severe emotional distress, because he did not seek medical treatment for his symptoms or testify as to their intensity and frequency. Powell v. Jones-Soderman, 433 F.Supp.3d 353, 377-378.

**D.Conn.**2015. Com. (d) quot. in case quot. in sup. Former employee sued former employer for age discrimination and intentional infliction of emotional distress, alleging that defendant overreacted to a single incident in which employee lost his temper in order to terminate his employment on the basis of his age. This court granted summary judgment for employer, holding that employer's conduct did not rise to the level of atrocity and intolerability required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court pointed out that, by his own account, employee was terminated after he became embroiled in a workplace dispute and used profanity, and nothing employee described was sufficiently outrageous that it would cause a reasonable juror to consider employer's conduct outrageous. Fetcho v. Hearst Connecticut Post, LLC, 103 F.Supp.3d 207, 220.

**D.Conn.**2014. Com. (d) quot. in case quot. in sup. Tenant, along with his conservator, filed a claim for, among other things, intentional infliction of emotional distress (IIED) against police officers, alleging that defendants mistakenly believed that the suspect of a violent crime was present and living in his apartment, battered down his door, searched him and the apartment, destroyed some of his possessions, and derided him when he asked to speak to his mother, causing him severe emotional distress. This court denied defendants' motion for summary judgment for the IIED claim. Quoting Restatement Second of Torts § 46, Comment *d*, the court pointed out that plaintiff needed to show that defendants' conduct was outrageous and extreme, and concluded that, after viewing the evidence in the light most favorable to plaintiffs, defendants acted with sufficiently extreme and outrageous conduct to support the IIED claim. Waller v. City of Middletown, 50 F.Supp.3d 171, 199.

**D.Conn.**2013. Com. (d) quot. in sup. Former employee brought, inter alia, a pendent state-law claim for intentional infliction of emotional distress (IIED) against former employer, alleging that his co-workers repeatedly made offensive comments and drawings based on his Romanian national origin and ethnicity over a period of several years, and that defendant failed to address his complaints of harassment. Granting summary judgment for defendant, this court, applying Restatement Second of Torts § 46, Comment *d*, held that plaintiff's IIED claim failed because, while this alleged behavior was shameful and reprehensible, it was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious. Kovaco v. Rockbestos-Surprenant Cable Corp., 979 F.Supp.2d 252, 262.

**D.Conn.**2011. Com. (d) quot. in sup. and in case quot. in sup., com. (e) quot. in ftn. After medical school terminated African American resident, resident sued school, hospital, and residency director and associate director, alleging intentional infliction of emotional distress (IIED), inter alia. Denying defendants' motion to dismiss as to IIED, this court held that it was at least more plausible than speculation that defendants' conduct could be viewed as an abuse of a hierarchical power relationship, rising to the level of extreme and outrageous conduct. The court pointed to evidence

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 234 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

that, among other things, plaintiff was in a subordinate relationship to the individual defendants, defendants assigned plaintiff high-risk patients that he could not properly treat and gave him failing grades for procedures he never performed, and defendants interfered with plaintiff's ability to be part of any other residency program. Craig v. Yale University School of Medicine, 838 F.Supp.2d 4, 10-12.

**D.Conn.**2009. Com. (d) cit. in case cit. in disc. Principal of public elementary school brought intentional-infliction-of-emotional-distress (IIED) and other claims against school superintendent, alleging that he threatened and intimidated her, publicly accused her of illegal activity in front of the teachers and staff of her school, and, after accessing her e-mail account without permission, read a communication that she had sent to her lawyer and forwarded it to his own e-mail account. This court denied defendant's motion for summary judgment on the IIED claim, holding that it was unwilling to find, as a matter of Connecticut law, that defendant's alleged conduct was not extreme or outrageous. The court noted, however, that, in order for plaintiff to prevail, the recitation of defendant's alleged conduct had to arouse the anger of the average representative of the community and cause him or her to exclaim, "Outrageous!" Brown-Criscuolo v. Wolfe, 601 F.Supp.2d 441, 454.

**D.Conn.**2009. Com. (d) quot. in sup. African-American teacher's aide at city's public middle school brought federal employment-discrimination claims and a state-law claim for intentional infliction of emotional distress (IIED) against white school principal, school system, and city, alleging, among other things, that principal subjected her to constant harassment targeted at her professional competence and socioeconomic status, publicly insulted her in highly personal ways, failed to act on her complaints that a white teacher was verbally abusing underperforming minority children in her presence, and took charge of supervising her personally in order to give her poor evaluations and instigate her transfer. Denying summary judgment for defendants on the IIED claim, this court held, inter alia, that, while some of principal's alleged conduct fell short of being actionable in isolation, a reasonable jury could find that principal's actions were outrageous in the larger context. Davis v. City of Hartford, 601 F.Supp.2d 488, 494.

**D.Conn.**2009. Coms. (d), (e), (f), and (h) quot. in sup. Administrator of estate of employee who committed suicide brought various claims against employer in connection with supervisor's handling of employee's requests for leave under the Family and Medical Leave Act. Denying summary judgment for defendant on plaintiff's claim for intentional infliction of emotional distress, this court held, inter alia, that a genuine issue of material fact remained as to whether defendant's conduct was extreme and outrageous, in light of evidence that supervisor was in a position of actual authority over employee, that supervisor had knowledge that employee was particularly susceptible to emotional distress, and that supervisor had, among other things, subjected employee to verbal abuse in front of co-workers. Delise v. Metro-North R. Co., 646 F.Supp.2d 288, 291.

**D.Conn.**2009. Com. (d) quot. in case quot. in ftn. City police department employee who was terminated for absenteeism arising from her alcoholism brought federal discrimination claims against city, as well as a claim for intentional infliction of emotional distress under Connecticut law.

This court dismissed the distress claim on statutory governmental immunity grounds, but noted that the claim would have failed in any event, since there was nothing in the record to demonstrate that the conduct of the chief of police, which plaintiff sought to impute to city, was atrocious and utterly intolerable in a civilized community. Nanos v. City of Stamford, 609 F.Supp.2d 260, 267.

**D.Conn.**2009. Com. (d) quot. in case quot. in sup. Bar patrons who were arrested after they were involved in an altercation with two allegedly intoxicated off-duty police officers in the bar's parking lot sued city and off-duty officers, as well as a police sergeant and the officers who arrested plaintiffs and investigated the incident, alleging intentional infliction of emotional distress, as part of their § 1983 action against defendants. This court granted in part and denied in part defendants' motion for partial summary judgment, holding that plaintiffs' emotional-distress claims, insofar as they were based on allegations of unreasonable force, denial of medical treatment, and false arrest/false imprisonment against various defendants, failed as a matter of law, but that genuine issues of material fact existed as to the emotional-distress claims based on unreasonable force against off-duty officers, and those based on malicious prosecution against various officers. Zainc v. City of Waterbury, 603 F.Supp.2d 368, 392.

**D.Conn.**2008. Com. (j) quot. in sup., cit. in case cit. in sup. Former employee of town sued town and former co-worker for racial discrimination, alleging, among other things, that co-worker made inappropriate and offensive remarks to her and others at their place of employment. Granting summary judgment for defendants, this court held, inter alia, that plaintiff's claim for intentional infliction of emotional distress against co-worker failed because plaintiff failed to show that co-worker's remarks caused her severe emotional distress under Connecticut law. The court pointed out that plaintiff admitted in a deposition that her emotional distress was caused not by co-worker, but rather by town's inadequate response, noting that plaintiff initially claimed that she was "okay with everything" and that she "wanted to let it go," after co-worker apologized for the remarks. Buster v. City of Wallingford, 557 F.Supp.2d 294, 302.

**D.Conn.**2008. Com. (d) quot. in sup. Mother of the only African-American student in his kindergarten and first-grade classes sued school superintendent, principal, her son's teachers, and others, alleging that her son was the target of racial slurs and racially motivated physical abuse by his classmates and that defendants did nothing to stop the discriminatory conduct. Denying defendants' motions for summary judgment as to plaintiff's claim for intentional infliction of emotional distress (IIED), this court held that, if the jury were to find that defendants knew about allegations of racial discrimination, and yet failed to respond to them adequately, the average member of the community would regard that conduct as extreme and outrageous, and thus could find the defendants liable for IIED. DiStiso v. Town of Wolcott, 539 F.Supp.2d 562, 569.

**D.Conn.**2008. Com. (d) quot. in case quot. in sup. Foreign national sued the United States under the Federal Tort Claims Act, alleging, among other things, that United States Immigration and Customs Enforcement agents arrested and detained him even though he was in a lawful immigration status, and then detained him for an additional 42 days after he agreed to voluntarily depart from the country. This court denied the government's motion to dismiss plaintiff's claim

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 236 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

for intentional infliction of emotional distress, holding, inter alia, that agents' conduct in arresting plaintiff and taking him into custody, alongside a general prison population, even though they knew or should have known that he had committed no immigration violation, could be deemed sufficiently outrageous to state a claim under Connecticut law, as could the additional detention. El Badrawi v. Department of Homeland Sec., 579 F.Supp.2d 249, 279.

**D.Conn.**2008. Com. (d) cit. in case quot. in sup. Former dispatcher for same-day package-delivery company brought disability-based discrimination claims against company, and an additional Connecticut-law claim for intentional infliction of emotional distress (IIED). This court, inter alia, granted summary judgment for defendant on the IIED claim, holding that while plaintiff's co-workers' alleged conduct in, among other things, ribbing plaintiff over bowel accidents caused by his multiple sclerosis, leaving a scatological children's book near his work station, and posting a caricature of him running in the Special Olympics with a cane could be viewed as unpleasant and insensitive, it was not sufficient to satisfy the claim's requirement of extreme and outrageous conduct as a matter of law. Murphy v. BeavEx, Inc., 544 F.Supp.2d 139, 155.

**D.Conn.**2008. Com. (d) cit. in case cit. in sup. Former state employee brought, as part of her § 1983 action, a claim for intentional infliction of emotional distress against two of her co-workers, alleging that defendants falsely accused her of violating employer's clock-in policy. Granting summary judgment for defendants, this court held that plaintiff failed to produce evidence creating a genuine issue of material fact as to whether defendants' conduct was sufficiently extreme and outrageous. The court explained that, in the context of the workplace, where an employer had an interest in having employees report improper conduct by fellow employees, the mere making of a false accusation, without more, did not constitute extreme and outrageous conduct; here, there was no evidence of anything more, such as, for example, fabrication of evidence to support a false accusation. Torres-Hicks v. Connecticut Housing Finance Authority, 575 F.Supp.2d 393, 407.

**D.Conn.**2007. Com. (d) quot. in case quot. in sup. Town employee brought, as part of her civil-rights action, a state-law claim for intentional infliction of emotional distress against town and co-workers. Granting summary judgment for defendants, this court held, inter alia, that plaintiff's emotional-distress claim failed because her allegations that her co-workers and supervisors had questioned her about her chronic medical condition and about her leave under the Family and Medical Leave Act, critiqued her work, treated her coldly and possibly rudely, ordered her to remove her father from her work area when he came to pick her up, and asked her to identify supervisors who had allowed her father to remain in the work area did not state the extreme and outrageous conduct necessary to support her claim. Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356, 376.

**D.Conn.**2007. Com. (d) quot. in sup. Terminated employee brought age-discrimination suit under state and federal statutes, and an additional claim for intentional infliction of emotional distress. Granting summary judgment for defendant on the emotional-distress claim, this court held that defendant's conduct was, at most, insulting, not extreme and outrageous, and thus plaintiff could not proceed with the claim under Connecticut law; while it was possible that plaintiff was

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 237 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

terminated because of his age, and employment discrimination was illegal, such discrimination did not per se give rise to a claim for intentional infliction of emotional distress. Koestner v. Derby Cellular Products, 518 F.Supp.2d 397, 403.

**D.Conn.**2006. Com. (d) quot. in case quot. in sup. As a part of a wider discriminatory-workplace action, former employee sued her former supervisor and a co-worker for intentional infliction of emotional distress, after she was arrested for breach of the peace based on these defendants' allegations. Denying in part defendants' motions for summary judgment, this court held, inter alia, that a fact issue existed as to whether defendants' alleged actions in calling the city police department and knowingly reporting false information to a police officer so as to give the impression that plaintiff was stalking or threatening them constituted the extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress. Crocco v. Advance Stores Co. Inc., 421 F.Supp.2d 485, 503.

**D.Conn.**2005. Com. (d) cit. in case quot. in disc. White worker formerly employed by city brought a civil-rights action against city, raising several causes of action related to discriminatory treatment he received, and his subsequent termination, following his involvement in an action alleging that city had engaged in discriminatory practices against minority employees. Granting summary judgment for city, this court held, inter alia, that worker's allegations did not, as a matter of law, meet the standard for outrageous conduct to support his claim for intentional infliction of emotional distress. Although there was evidence that worker had been disciplined by city, this evidence did not support the charge that city's employees, in disciplining him, acted in an extreme and outrageous manner. Bond v. City of Middletown, 389 F.Supp.2d 319, 342.

**D.Conn.**2005. Com. (d) quot. in case quot. in sup. African-American nurse's aide who was fired from a nursing home sued the home for, in part, intentional infliction of emotional distress, alleging that she was falsely accused of patient abuse twice, falsely disciplined, disciplined for behavior for which others were not disciplined, and was the subject of offensive remarks and a campaign to fire her or make her resign. This court granted defendant summary judgment, holding, inter alia, that defendant's conduct was not extreme and outrageous. While defendant's actions might have been offensive, insulting, and hurtful, no reasonable person could view them as atrocious and utterly intolerable. Jackson v. Health Resources of Rockville, Inc., 357 F.Supp.2d 507, 521.

**D.Conn.**2005. Com. (d) quot. in case quot. in disc. Former employees sued food manufacturer and their former supervisor for sexual harassment. Defendants moved for summary judgment on plaintiffs' claim for intentional infliction of emotional distress, and plaintiffs responded that it was a jury question whether defendants' conduct was extreme and outrageous to permit recovery. Granting in part defendants' motion for summary judgment, the court found that this claim failed as a matter of law, as no reasonable jury could conclude that manufacturer's inadequate response to plaintiffs' allegations of sexual harassment was extreme and outrageous, even if the allegations were true and even if manufacturer handled the allegations in a negligent manner. Presley v. Pepperidge Farm, Inc., 356 F.Supp.2d 109, 137.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 238 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Conn.**2004. Com. (d) cit. in case quot. in disc. Homeowners brought action for damages arising from allegedly unconstitutional entry and search of their home by police sergeant and officers. Granting in part defendants' summary-judgment motions, this court held, inter alia, that defendants' acts did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. The facts showed that multiple police officers acted without proper legal justification to enter and search home; however, they behaved politely and did not threaten or abuse homeowners, and there was no showing of any intent to cause emotional harm. Abdella v. O'Toole, 343 F.Supp.2d 129, 140.

**D.Conn.**2004. Com. (d) cit. in case quot. in disc. Deputy sheriff sued sheriff's department and his supervisors for age discrimination and intentional infliction of emotional distress, inter alia. Plaintiff alleged that defendants engaged in a pattern of discrimination against employees on the basis of age, and that his age motivated defendants to demote him from full-time status to part-time status. This court granted in part defendants' motion to dismiss, holding, inter alia, that defendants' conduct was not extreme and outrageous. The court stated that, although employment discrimination was illegal, it did not per se give rise to a claim for intentional infliction of emotional distress in this case. Allen v. Egan, 303 F.Supp.2d 71, 78.

**D.Conn.**2004. Com. (d) cit. in case quot. in disc. After an African-American firefighter was fired, he sued the town, the town manager, the fire chief, and the assistant fire chief for race discrimination, retaliation, and harassment, and intentional infliction of emotional distress, inter alia. Plaintiff alleged that defendants failed to maintain a work environment safe and free from harassment, retaliation, and discrimination, that the breach of this duty caused plaintiff's work-related stress disorder, and that defendants acted in reckless disregard of plaintiff's civil rights. This court granted defendants summary judgment, holding, inter alia, that defendants' conduct was not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. Diggs v. Town of Manchester, 303 F.Supp.2d 163, 185.

**D.Conn.**2004. Com. (d) quot. in sup. Terminated employee sued employer for Title VII discrimination, hostile work environment, and intentional infliction of emotional distress, inter alia, alleging that her supervisor told her that she did not speak proper English, that her co-workers often followed her around the office, that supervisor used profanity on at least one instance when speaking with her, that supervisor relocated her to a cubicle where there was more office traffic, and that a co-worker once searched her desk. This court granted defendant summary judgment, holding, inter alia, that none of defendant's actions were so egregious or oppressive as to rise to the level of extreme and outrageous conduct. Rose v. Panolam Industries International Inc., 301 F.Supp.2d 239, 247.

**D.Conn.**2004. Com. (d) quot. in disc., com. (h) cit. in disc. Resident brought action against two towns after they changed their common border, resulting in resident's property being switched from one town to the other. Resident alleged violations of due process, equal protection, takings clause, and intentional infliction of emotional distress. Granting towns' motion to dismiss all claims, this court found, inter alia, that resident's intentional-infliction-of-emotional-distress claim failed

because she could not show that the towns' actions constituted "extreme and outrageous" conduct that went beyond all grounds of decency or caused resident severe mental distress. Scott v. Town of Monroe, 306 F.Supp.2d 191, 199.

**D.Conn.**2003. Com. (h) cit. in sup., com. (d) quot. in sup. and cit. in ftn. Teacher sued city, state board, and various other school defendants following nonrenewal of his employment contract, alleging, among other things, intentional infliction of emotional distress. Granting defendants' motion to dismiss, this court held, inter alia, that defendants' actions in connection with decision not to renew teacher's employment contract, which included evaluations and recommendations, questions regarding teacher's qualifications, rude behavior, and hearing appeals, did not rise to level of extreme and outrageous conduct necessary to sustain claim for intentional infliction of emotional distress. Golnik v. Amato, 299 F.Supp.2d 8, 15.

**D.Conn.**2003. Com. (d) quot. in sup., com. (h) cit. in sup. Estranged lover sued former girlfriend, who was police officer, and another officer who had investigated plaintiff's complaints against girlfriend, alleging civil rights violations and intentional infliction of emotional distress, inter alia. This court denied in part girlfriend's motion for summary judgment, holding that there were fact issues as to whether girlfriend's conduct was sufficiently extreme and outrageous to support emotional-distress claim. Jury could determine that girlfriend physically threatened plaintiff with harm from herself and members of police department, that she used her department connections to stop the investigation into her conduct, that she lied under oath, and that she used her connections to attack plaintiff's credibility and character and to improperly influence a court. Stack v. Perez, 248 F.Supp.2d 106, 110.

**D.Conn.**2003. Com. (d) quot. in sup., com. (h) cit. in sup. Estranged lover sued former girlfriend, who was police officer, and another officer who had investigated plaintiff's complaints against girlfriend, alleging civil rights violations and intentional infliction of emotional distress, inter alia. District court granted defendants summary judgment. This court granted in part plaintiff's motion for reconsideration, holding that there were fact issues as to whether investigating officer's conduct was sufficiently extreme and outrageous to support emotional-distress claim. Although officer believed plaintiff told the truth, he contacted district court, FBI, and plaintiff's employer, advising them that plaintiff had set forth no truthful allegations against former girlfriend and that he would not recommend that girlfriend be disciplined. He also discouraged plaintiff from pursuing legitimate claim. Stack v. Jaffee, 248 F.Supp.2d 100, 104-105.

**D.Conn.**2002. Com. (d) quot. in case quot. in disc. A secretary in a town's building department sued town's personnel director and a town burgess for 42 U.S.C. § 1983 violations and intentional infliction of emotional distress. Personnel director had issued a disciplinary warning in retaliation for secretary's faxing to a state official an inquiry questioning whether the requirements listed in a town job posting were in accordance with state statute. This court granted in part defendants' motion for summary judgment, holding, inter alia, that while personnel director's conduct might have been unlawful, its unlawfulness did not automatically make it extreme and outrageous. While

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 240 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

director's warning might have been a sufficient predicate for First Amendment retaliation liability, it was not, in and of itself, extreme and outrageous. Aquavia v. Goggin, 208 F.Supp.2d 225, 237.

**D.Conn.**2002. Com. (d) quot. in case quot. in disc. Nurse at locked nursing facility in correctional center sued her supervisor for, in part, intentional infliction of emotional distress, after defendant physically prevented her from leaving the facility despite plaintiff's pleas that she be allowed to depart for medical reasons. Denying in part defendant's motion for summary judgment, this court held, inter alia, that genuine issues of material fact existed as to whether defendant's coercive exercise of power, during which plaintiff was deprived of her liberty and became extremely agitated, was sufficiently outrageous to state a cause of action for intentional infliction of emotional distress. Barstow v. Shea, 196 F.Supp.2d 141, 150.

**D.Conn.**2002. Cit. in sup., cit. in case cit. and quot. in sup., cit. in case cit. in ftn., com. (i) quot. in sup. Female employee sued former employer for Title VII sex and race discrimination, retaliation, intentional and negligent infliction of emotional distress, and negligent supervision. This court denied employer's motion for summary judgment as to sex-discrimination and negligent-supervision claims, but granted summary judgment to employer on the other claims. Plaintiff's claim of intentional infliction of emotional distress failed, because employer's alleged failure to investigate or warn others about plaintiff's co-worker's offensive conduct was not intentional or reckless. The court stated that the Connecticut Supreme Court did not intend to engraft a simple negligence standard onto this intentional tort. Brunson v. Bayer Corp., 237 F.Supp.2d 192, 207, 208.

**D.Conn.**2002. Com. (d) quot. in sup. and ftn., com. (h) cit. in sup. Insurance-company employee who was fired sued employer for intentional infliction of emotional distress, inter alia. This court granted defendant summary judgment on the claim, holding, inter alia, that defendant's conduct was not extreme or outrageous. Plaintiff failed to show that her termination was carried out in an unreasonable, humiliating, or embarrassing manner. She was not terminated in front of her co-workers, she was not yelled at or denigrated during the termination process, she was not forced to clean out her work area in front of co-workers, and she was not paraded to building's main entrance in front of others. Davis v. Liberty Mutual Ins. Co., 218 F.Supp.2d 256, 265.

**D.Conn.**2002. Com. (d) quot. in sup. Insured sued liability insurer for, in part, bad-faith tort, alleging that defendant failed to provide her with coverage and a defense in an underlying state-court action. Granting defendant's motion to dismiss, the court held, inter alia, that, to the extent that plaintiff's bad-faith claim implicitly contained a claim for intentional infliction of emotional distress, plaintiff failed to allege that any of the actions taken by defendant were done in a manner that was so egregious or oppressive as to rise to the level of extreme and outrageous conduct, and thus failed to state a claim for intentional infliction of emotional distress. Martin v. American Equity Ins. Co., 185 F.Supp.2d 162, 165.

**D.Conn.**2001. Com. (d) quot. in sup. Employee who claimed that he had been sexually harassed by a male supervisor brought, in part, a pendent common-law state claim for intentional infliction

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 241 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

of emotional distress against employer. Granting in part defendant's motion to dismiss, the court held, inter alia, that defendant's alleged negligent failure to prevent the sexual harassment did not rise to the level of intentional, extreme, and outrageous conduct that would support a claim for intentional infliction of emotional distress. Abate v. Circuit-Wise, Inc., 130 F.Supp.2d 341, 348.

**D.Conn.**2001. Coms. (d), (h), and (j) cit. in disc. Public school teacher sued board of education, board members, and certain school employees for, in part, intentional infliction of emotional distress, arising from defendants' response to her wearing to school a tee shirt with the words "JESUS 2000—J2K." Granting defendants' motion for summary judgment, this court held, inter alia, that defendants' requiring plaintiff to change or cover her tee shirt and vice principal's conduct in pounding on plaintiff's classroom door to get her attention and contacting the assistant superintendent before going to see plaintiff were not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. Downing v. West Haven Board of Ed., 162 F.Supp.2d 19, 33, 34.

**D.Conn.**2001. Com. (d) quot. in sup. and cit. in ftn. in sup., com. (h) cit. in disc. African-American employee who quit his job after he was accused of stealing and was demoted sued his former employer for, in part, intentional infliction of emotional distress. Granting defendant's motion for summary judgment, the court held, inter alia, that plaintiff's interview by defendant and his suspension and demotion did not exceed all bounds of decency, and were not sufficiently extreme and outrageous to support his claim for intentional infliction of emotional distress. Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129, 136, 137.

**D.Conn.**2001. Com. (d) quot. in sup. Surgeon brought action for, inter alia, intentional infliction of emotional distress against medical school and other physicians in connection with school's conduct in failing to reappoint him and allowing privatization of cardiothoracic surgery practice to the exclusion of plaintiff. Granting defendants summary judgment, this court held, inter alia, that school's actions did not rise to the level of extreme and outrageous conduct necessary to sustain claim for intentional infliction of emotional distress. Franco v. Yale University, 161 F.Supp.2d 133, 141.

**D.Conn.**2001. Com. (d) quot. in ftn. Prison counselor sued department of corrections for Title VII violations, equal protection and due process violations, and intentional infliction of emotional distress, among other claims, alleging that she was threatened and harassed for pursuing grievance procedures available to her in challenging poor job-performance evaluations. This court granted in part defendant's motion for judgment on the pleadings, holding, inter alia, that plaintiff failed to satisfy the "extreme and outrageous" standard required to prove a claim of intentional infliction of emotional distress. The average member of the community would not find plaintiff's supervisors' actions of entering plaintiff's office and locking the door to prevent her from leaving to be extreme and outrageous. Garris v. Department of Corrections, 170 F.Supp.2d 182, 189.

**D.Conn.**2001. Com. (d) quot. in ftn. Driver sued city police officer for intentional infliction of emotional distress, among other claims, alleging that the officer found her at fault in a 1996

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 242 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

accident in retaliation for her complaint against him to the department of motor vehicles in 1990. This court granted defendant summary judgment, holding, inter alia, that plaintiff failed to satisfy the requirement of extreme and outrageous conduct to sustain a claim of intentional infliction of emotional distress. The average member of the community would not find defendant's acts in investigating routine traffic accidents and attributing fault to one of the drivers to be extreme and outrageous. Menon v. Frinton, 170 F.Supp.2d 190, 198.

**D.Conn.**2001. Com. (d) quot. in case quot. in sup. Female employee sued employer after she was terminated, alleging age and gender discrimination and intentional infliction of emotional distress. Granting in part defendant's motion for summary judgment, this court held, inter alia, that the mere act of firing plaintiff did not satisfy the requirements of extreme and outrageous conduct necessary to support claim for intentional infliction of emotional distress. Pascal v. Storage Technology Corp., 152 F.Supp.2d 191, 214.

**D.Conn.**2001. Com. (d) quot. in sup. Employee sued employer for sexual harassment and intentional infliction of emotional distress, among other claims, alleging that her supervisor made sexual comments and performed highly offensive and unwelcome touchings, including his rubbing up against her, touching her shoulders and back, and pulling her bra strap. This court dismissed plaintiff's emotional-distress claim, holding, inter alia, that employer's conduct and/or inaction in failing to act sooner to prevent supervisor's harassment did not rise to the requisite level of extreme and outrageous conduct. Roberts v. Circuit-Wise, Inc., 142 F.Supp.2d 211, 218.

**D.Conn.**2001. Com. (d) quot. in disc. and cit. in ftn., com. (h) cit. in disc. Arrestee who was forcibly removed from his vehicle by police officers during an investigative traffic stop after he refused to exit the car and one of the officers drew her gun on him sued city and police officers for, in part, intentional infliction of emotional distress. Granting in part defendants' motion for summary judgment, the court held, inter alia, that defendants' actions did not constitute the extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Smith v. City of New Haven, 166 F.Supp.2d 636, 645.

**D.Conn.**2001. Com. (d) quot. in disc. and cit. in ftn., com. (h) cit. in disc. Former employee sued employer for, in part, intentional infliction of emotional distress. Granting defendant's motion to dismiss, the court held that defendant's alleged actions in intentionally assigning difficult and tedious work in a discriminatory manner, implying that plaintiff's work was "slow," and using plaintiff in order to remain eligible for state contracts under federal and state civil-rights laws did not constitute the extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Whitaker v. Haynes Const. Co., Inc., 167 F.Supp.2d 251, 254, 255.

**D.Conn.**2000. Com. (d) quot. in disc. Female municipal employee sued city for sex discrimination and retaliation in violation of Title VII, alleging that she was transferred to a less desirable position and even threatened with physical harm after she complained of a sexually hostile workplace. Plaintiff also asserted a state-law claim for intentional infliction of emotional distress. Granting in part and denying in part defendant's motion to dismiss, the court held, in part, that plaintiff's sex-

Case 2:25-cv-00220　Document 25-3　Filed on 10/28/25 in TXSD　Page 243 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

discrimination claim was untimely, that she could proceed on her claim for retaliation, and that the conduct complained of, though offensive, was not so egregious as to support recovery under a theory of intentional infliction of emotional distress. Ericson v. City of Meriden, 113 F.Supp.2d 276, 292, decision affirmed 55 Fed.Appx. 11 (2d Cir.2002).

**D.Conn.**2000. Com. (d) quot. in case quot. in disc. Educational consultant sued former employer for breach of contract and intentional infliction of emotional distress, among other claims, alleging that defendant severely harassed and mistreated him, unfairly placed him on a 60-day performance-improvement plan, and then constructively fired him. This court denied in part defendant's motion for summary judgment, holding, inter alia, that fact issues existed as to whether defendant's conduct was sufficiently extreme and outrageous to constitute intentional infliction of emotional distress. Grossman v. Computer Curriculum Corp., 131 F.Supp.2d 299, 310.

**D.Conn.**2000. Cit. generally in disc. Female former police officer sued town in which she was employed and male supervisor for, among other things, sexual harassment and intentional and negligent infliction of emotional distress. The district court granted defendant town summary judgment, holding, inter alia, that town's alleged refusal to protect plaintiff from male supervisor's sexual harassment was not sufficiently extreme or outrageous to support plaintiff's claim of intentional infliction of emotional distress. Miner v. Town of Cheshire, 126 F.Supp.2d 184, 195.

**D.Conn.**2000. Com. (d) cit. in disc. Chief legal counsel for the state department of environment protection sued her superiors for, inter alia, intentional infliction of emotional distress and 42 U.S.C. § 1983 violations, alleging that defendants retaliated against her for giving the department certain legal advice. This court denied in part defendants' motion to dismiss, holding, inter alia, that plaintiff failed to state a viable claim for intentional infliction of emotional distress because defendants' conduct was not extreme and outrageous. Rapkin v. Rocque, 97 F.Supp.2d 244, 246.

**D.Conn.**1999. Com. (d) quot. in sup. Former employee brought employment discrimination action against employer, asserting claims under federal law and a pendent state-law claim for, inter alia, intentional infliction of emotional distress. Granting in part defendant's motion for summary judgment, the court held that defendant's alleged negligent failure to prevent sexual harassment of plaintiff by her co-workers did not rise to the level of intentional, extreme, and outrageous conduct that would support a claim for intentional infliction of emotional distress. Dobrich v. General Dynamics Corp., Electric Boat Div., 40 F.Supp.2d 90, 104.

**D.Conn.**1999. Com. (d) quot. in sup. Scientific-affairs coordinator for drug company sued company for intentional infliction of emotional distress, among other claims. This court granted in part company's motion for summary judgment, holding, inter alia, that plaintiff's emotional-distress claim failed, because no rational factfinder could conclude that the alleged conduct of yelling at, reprimanding, and transferring plaintiff for work-related issues was extreme and outrageous conduct. Farricielli v. Bayer Corp., 116 F.Supp.2d 280, 286.

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 244 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Conn.**1999. Com. (d) quot. in disc. Female former employee sued co-workers and employer for, inter alia, "hostile work environment" sexual harassment, retaliation, and intentional infliction of emotional distress. Defendants moved for summary judgment. Granting the motion as to individual defendants and granting in part and denying in part employer's motion, the court held, among other things, that material factual issues existed as to whether offensive epithets used by plaintiff's supervisor could serve as a basis for her "hostile work environment" claim against employer, and that a reasonable juror could conclude that plaintiff was terminated in retaliation for complaining about supervisor's conduct; however, plaintiff had failed to establish that any action taken by employer was so outrageous as to support recovery under a theory of intentional infliction of emotional distress. Newtown v. Shell Oil Co., 52 F.Supp.2d 366, 375.

**D.Conn.**1999. Cit. generally in sup. Former employee who was injured during an assault in his office sued his former employer, among others, alleging, in part, that defendant's termination of his employment after he filed a worker's compensation claim constituted intentional infliction of emotional distress. Granting in part defendant's motion to dismiss, the court held, inter alia, that plaintiff's allegations that he was wrongfully terminated and falsely accused by defendant of "disagreeable conduct" did not state the extreme or outrageous conduct that was necessary to sustain a claim for intentional infliction of emotional distress. Venterina v. Cummings & Lockwood, 117 F.Supp.2d 114, 119.

**D.Conn.**1998. Com. (d) quot. in disc. Sixty-year-old former employee who believed that his position was eliminated because of his age sued former employer for violations of the Age Discrimination in Employment Act. Plaintiff also asserted common law claims for, inter alia, intentional infliction of emotional distress. Defendant moved for summary judgment. Granting the motion in part and denying it in part, the court held that, while plaintiff had established a prima facie case of age discrimination, he had failed to show that defendant's conduct was so extreme and outrageous as to rise to the level necessary to support a claim for intentional infliction of emotional distress. Rose v. James River Paper Co., 2 F.Supp.2d 245, 253.

**D.Conn.**1998. Com. (d) quot. in disc. An African-American radiology technician for a hospital sued the hospital for, among other claims, wrongful termination and intentional infliction of emotional distress. This court granted in part and denied in part defendant's motion for summary judgment, holding, inter alia, that, although defendant may not have applied the hospital's progressive discipline policies in an ideal manner, its behavior did not rise to the level of extreme and outrageous conduct. Plaintiff was an at-will employee who was terminated because her supervisors believed her performance violated hospital policies relating to patient care. Instances in which plaintiff's supervisor stated to her, "How could you, a black, single mother, go away on vacation?" and "How could you, a single mother, afford to send your children to private school?" constituted conduct that was merely insulting, reflected bad taste, or resulted in bad feelings. Thomas v. St. Francis Hosp. and Medical Center, 990 F.Supp. 81, 91, affirmed 198 F.3d 235 (2d Cir.1999).

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 245 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Conn.**1998. Com. (h) cit. in disc. A male nurse sued his employer for Title VII violations and intentional infliction of emotional distress, among other claims, alleging that he endured harassment and a delay in his promotion because of his gender and his homosexuality. This court granted defendant summary judgment, holding, inter alia, that plaintiff's allegations that defendant discriminated against him, disciplined him, denied him a promotion, and harassed him failed to allege extreme or outrageous conduct. White v. Martin, 23 F.Supp.2d 203, 208, affirmed 198 F.3d 235 (2d Cir.1999).

**D.Conn.**1997. Com. (d) quot. in case quot. in sup. City employee sued a city council member, among others, for violations of her civil rights under § 1983 and for intentional infliction of emotional distress under Connecticut common law, alleging that defendant's cruel and abusive treatment as her supervisor caused her to have a nervous breakdown. Granting in part defendant's motion for summary judgment, the court held, inter alia, that defendant's alleged conduct in ordering plaintiff to purchase illegal drugs and to stand guard while defendant ingested them, ordering plaintiff to perform personal errands and tasks for defendant's private employer, making repeated telephone calls to plaintiff at her home, threatening to terminate plaintiff's employment and replace her with an individual of another race, implementing discriminatory sick-time policies, monitoring work attendance, and repeatedly criticizing plaintiff in the presence of others was not sufficiently extreme and outrageous to sustain a claim for intentional infliction of emotional distress. DeLeon v. Little, 981 F.Supp. 728, 738.

**D.Conn.**1997. Com. (d) quot. in sup. An employee brought a state-law employment discrimination lawsuit against her employer and asserted, in part, a common law cause of action for intentional infliction of emotional distress. Granting defendant's motion for summary judgment, the court held, inter alia, that plaintiff's allegations that she received 25 cents per hour less than other security guards and that, when she brought this to the attention of defendant and began investigating, she was subjected to adverse employment conditions, including being transferred to two other locations, being disciplined, and being reprimanded, failed to assert conduct on the part of defendant that was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. Hill v. Pinkerton Sec. & Investigation Services, 977 F.Supp. 148, 160.

**D.Conn.**1997. Cit. in disc., com. (d) cit. in disc. In wrongful-discharge action, former employee sued former employer for, inter alia, negligent infliction of emotional distress. After the court entered judgment on a jury verdict for employee, employer renewed its motion for judgment as a matter of law. Denying the motion, the court, after providing a brief history of the torts of intentional and negligent infliction of emotional distress, held that to support a workplace claim for the latter, a worker was required to prove that the employer's conduct in the termination process was unreasonable, and that, in this case, the evidence was sufficient to support such a finding. Malik v. Carrier Corp., 986 F.Supp. 86, 90, affirmed in part, reversed in part 202 F.3d 97 (2d Cir.2000).

**D.Conn.**1996. Com. (d) quot. in case quot. in sup., com. (h) cit. in sup. Employee who allegedly was advised that he was being terminated for poor performance and then was escorted out of the building "like a criminal" sued his former employer for, inter alia, intentional infliction of

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 246 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

emotional distress. Granting defendant's motion for summary judgment, the court held, in part, that defendant's alleged conduct did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 552, affirmed 104 F.3d 355 (2d Cir.1996).

**D.Conn.**1996. Com. (d) quot. in disc. Former employee of town waste-water treatment plant who was allegedly terminated because of his age sued plant superintendent and first selectman, among others, for, inter alia, violations of 42 U.S.C. §§ 1983 and 1985, and for intentional infliction of emotional distress. Defendants moved to dismiss. Granting the motion in part and denying it in part, the court held that plaintiff was entitled to proceed with his § 1983 claim, and that plaintiff could pursue his claim for intentional infliction of emotional distress based on his bare allegations of defendants' extreme and outrageous conduct; however, plaintiff had failed to allege sufficient facts to state a claim of conspiracy under § 1985. Reed v. Town of Branford, 949 F.Supp. 87, 92.

**D.Conn.**1996. Com. (d) quot. in case quot. in sup. A white female police officer in a town's police department sued the town and a police lieutenant, alleging violations of her constitutional rights and asserting a state-law claim for intentional infliction of emotional distress. Dismissing the complaint, the court held, inter alia, that plaintiff failed to state a claim for intentional infliction of emotional distress because plaintiff's allegations that the lieutenant made derogatory comments about plaintiff's marriage to a black man, referred to plaintiff as "bitch," gave her an assignment babysitting a group of young children because it was considered unfitting for a male officer, and disciplined her more severely than a male officer did not describe conduct that met the "extreme and outrageous" standard necessary to assert such a claim under Connecticut law. Williams v. Perry, 960 F.Supp. 534, 541.

**D.Conn.**1995. Com. (i) cit. in disc. In civil rights action, individual sued municipality and municipal employees for, inter alia, unintentional infliction of emotional distress. Defendants moved to dismiss. Granting in part and denying in part the motion, the court held that plaintiff's emotional-distress claims were based on defendants' negligence and, therefore, barred by the qualified immunity that protected municipal employees from liability for negligent performance of discretionary acts. To the extent that plaintiff's complaint could be read as stating a claim for intentional, willful, wanton, or reckless infliction of emotional distress, it was merely duplicative of the other counts. Karbowicz v. Borough of Naugatuck, 921 F.Supp. 77, 77-78.

**D.Conn.**1994. Quot. in case cit. in disc. Female employee of telephone company brought Title VII sex-discrimination claim against employer and individual supervisors. Plaintiff also alleged various state law claims, including intentional infliction of emotional distress. Granting in part and denying in part defendants' motion to dismiss, the court dismissed one supervisor from the case and held that plaintiff's claim of intentional infliction of emotional distress against employer was barred by the exclusive provisions of the state workers' compensation statute, but she could proceed against the remaining supervisor. The court could not say that the behavior plaintiff described and complained of was not so outrageous as to be actionable. Gregory v. Southern New England Telephone Co., 896 F.Supp. 78, 85.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 247 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Conn.**1993. Com. (d) quot. in disc. A discharged teacher's assistant sued the school and its director of personnel, alleging wrongful discharge, breach of contract, and other state law claims. Granting in part defendants' motion for summary judgment, this court held, inter alia, that discharge of the plaintiff for writing an anonymous letter alleging an incident of child abuse at the school was not extreme and outrageous conduct sufficient to support a claim of intentional infliction of emotional distress, even if, as plaintiff alleged, defendants failed to conduct an adequate investigation before dismissing her and even if defendants knew or should have known that the dismissal was not justified. Ziobro v. Connecticut Institute for the Blind, 818 F.Supp. 497, 502.

**D.Conn.**1987. Subsec. (1) and com. (d) quot. in case quot. in disc. A senior executive whose employment was terminated with entitlement to three years' salary and benefits sued the company on contract and fraud claims, and for intentional infliction of emotional distress, alleging denial of reimbursement of his daughter's medical expenses under a basket plan additional coverage policy. This court granted summary judgment for the defendant, holding that the plaintiff had failed to prove the existence of the additional coverage, and the allegations, even if proved, did not approach the outrageous character required to maintain the claim for intentional infliction of emotional distress. Economu v. Borg-Warner Corp., 652 F.Supp. 1242, 1253, affirmed 829 F.2d 311 (2d Cir. 1987).

**D.Conn.**1987. Com. (d) quot. in disc. An employee sued his former employer for fraudulent representations and intentional infliction of emotional distress following his termination from his sales position. This court granted the defendant's motion to dismiss, holding, inter alia, that the plaintiff's allegations were insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress, where the claims were based for the most part on misrepresentations regarding the plaintiff's prospects and the company's past performance, which did not rise to the level of extreme and outrageous conduct necessary to support a claim on this tort. Kintner v. Nidec-Torin Corp., 662 F.Supp. 112, 114.

**D.Conn.**1986. Cit. in disc., com. (d) quot. in sup., com. (h) cit. in sup. The general manager of a company resigned when he was denied a leave of absence for medical reasons. When he later reapplied for his vacant position, the company refused to hire him. He sued the company for intentional infliction of emotional distress. The court granted the defendant's motion for summary judgment, stating that the defendant's conduct could not be reasonably regarded as so extreme and outrageous as to go beyond all possible bounds of decency. In addition, the court noted that the plaintiff had not sustained severe emotional distress. Reed v. Signode Corp., 652 F.Supp. 129, 136, 137.

**D.Conn.**1985. Subsec. (1) cit. in disc., coms. (d) and (h) cit. in disc. After the employment of a foreign national was terminated, he sued his former employer for intentional infliction of emotional distress, and his wife sued for loss of consortium. The defendant moved to dismiss a number of counts of the complaint, and this court granted the motion. It ruled that the plaintiff had failed to introduce facts from which a jury would be permitted to infer that the defendant's conduct had been

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 248 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

sufficiently extreme and outrageous to recover for intentional infliction of emotional distress. The court also ruled that the wife's claim for loss of consortium, allegedly the result of her husband's emotional strain and job-hunting trips outside this country, necessarily failed because Connecticut would not recognize such a claim in the absence of physical injury to the spouse. Collins v. Gulf Oil Corp., 605 F.Supp. 1519, 1521, 1522, 1524.


**D.Del.**

**D.Del.**2011. Cit. in sup. Former employee brought a state-law claim for, inter alia, intentional infliction of emotional distress (IIED) against employer, its subsidiary, and headhunter, alleging that his employment was terminated because he refused to provide pre-employment medical records, engaged in protected whistle-blowing activities, and was subjected to racial profiling and discrimination. This court granted headhunter's motion to dismiss the IIED claim, holding that plaintiff failed to allege facts indicating that defendants' conduct was extreme or outrageous, or that plaintiff suffered emotional distress so severe as to give rise to an actionable claim. Tani v. FPL/Next Era Energy, 811 F.Supp.2d 1004, 1024.

**D.Del.**2008. Quot. in sup. Supermarket deli worker brought federal civil-rights and Delaware common-law claims against supermarket, alleging discrimination and harassment. This court, inter alia, granted defendant's motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress, holding that plaintiff failed to escape the exclusivity provision of the Delaware Workers' Compensation Act by showing defendant's deliberate intent to bring about an injury to her. The court found no evidence that defendant intended to cause plaintiff emotional distress, concluding that, at worst, plaintiff showed only that defendant negligently failed to investigate her complaints of harassment and discrimination by her supervisors and co-workers. Nieves v. Acme Markets, Inc., 541 F.Supp.2d 600, 611.

**D.Del.**2006. Com. (d) quot. in case quot. in sup. State prisoner infected with the Hepatitis C Virus brought pro se civil-rights suit against state department of corrections officers and contract medical company's employees, including a claim for intentional infliction of emotional distress, alleging that defendants' failure to provide him with a medical evaluation by a liver specialist and a liver biopsy amounted to outrageous conduct that had caused him great emotional distress and anxiety. This court granted summary judgment for defendants, holding, inter alia, that, despite evidence from outside doctor that the biopsy was needed, defendants' conduct in denying the treatment was not sufficiently extreme and outrageous to support the distress claim, because it was in line with medical standards adopted by the department of corrections and medical company. Jordan v. Delaware, 433 F.Supp.2d 433, 444.

**D.Del.**1999. Subsec. (1) cit. in case quot. in disc., com. (d) quot. in case quot. in disc. and quot. in ftn., coms. (h) and (j) cit. in cases quot. in disc. Contract employee for state agency sued employees of another state agency, alleging, among other things, that defendants' actions caused her employment contract to be terminated. Entering partial summary judgment for defendants, the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 249 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

court held, inter alia, that a confrontation during which defendants grabbed plaintiff could not serve as a basis for recovery under a theory of negligent or intentional infliction of emotional distress, or false imprisonment. Lloyd v. Jefferson, 53 F.Supp.2d 643, 673, 674.

**D.Del.**1996. Subsec. (1) cit. in disc. Female former bank employees sued former supervisor for, inter alia, violations of Title VII, intentional infliction of emotional distress, tortious interference with contract, and tortious interference with another's performance of his own contract. Defendant moved to dismiss. Granting the motion in part and denying it in part, this court held that defendant could not be found individually liable under Title VII; that the exclusivity provision of the state Workers' Compensation Act barred the claim for intentional infliction of emotional distress; that defendant could be found to have tortiously interfered with plaintiffs' at-will employment agreements; and that material factual issues existed as to whether defendant was acting within the scope of his employment when he allegedly induced the contract breaches. Nelson v. Fleet Nat. Bank, 949 F.Supp. 254, 259.

**D.Del.**1993. Cit. in headnote, quot. in sup., com. (d) quot. in sup. A man suffered permanent injury to his foot after hospital personnel labelled him homosexual and transferred him to another hospital because of his perceived sexual orientation and HIV status. Man sued hospital and treating physician for intentional infliction of emotional distress and discrimination under the Rehabilitation Act. This court denied in part defendants' motions for summary judgment, holding, inter alia, that plaintiff stated cause of action for intentional infliction of emotional distress because jury could find that doctor's alleged refusal to render medical treatment to plaintiff for unacceptable discriminatory reasons based on hospital staff members' derogatory comments that plaintiff was homosexual was extreme and outrageous conduct, especially in light of the fact that doctor knew that his refusal to treat plaintiff could cause plaintiff serious permanent injury. Furthermore, hospital could be liable for emotional distress because jury could find extreme and outrageous defendant's actions in branding plaintiff a homosexual, thereby causing doctor's refusal to treat plaintiff, and in transferring plaintiff for inappropriate discriminatory reasons. Miller v. Spicer, 822 F.Supp. 158, 159, 168.

**D.Del.**1985. Subsec. (1) and com. (d) quot. in disc. Two injured employees who were entitled to disability benefits sued an insurance company for its failure to pay or its delay in making payments for compensable medical treatment, alleging wrongful termination of benefits without a hearing on the merits in violation of a state compensation statute, and intentional infliction of emotional distress suffered from loss of reputation and impaired credit ratings. The district court dismissed the statutory claim, holding that the nonpayment of bills in itself did not constitute a "termination of compensation" within the meaning of the statute. The court denied the insurance company's motion for summary judgment on the claim for intentional infliction of emotional distress, holding that there was insufficient evidence on the record to say that no reasonable fact finder could determine that the insurance company's intentional withholding of payments constituted extreme and outrageous conduct. Correa v. Pennsylvania Mfrs. Ass'n Ins. Co., 618 F.Supp. 915, 928.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 250 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Del.**1982. Com. (d) quot. in part in sup., subsec. (1) quot. in sup. The plaintiff brought an action alleging that her former employer had violated her constitutional rights and committed breach of contract and various state torts by constructively discharging her through forced resignation. On motion for summary judgment by the defendant, the court dismissed the constitutional claims, noting that they were based on the Fourteenth Amendment and ruling that the conduct of the defendant with respect to the plaintiff was not state action. The court also granted the defendant summary judgment on the breach of contract claim, indicating that the plaintiff's employment was at will and that the terms of her employment had not been altered by guarantees contained in an employee handbook published after her hiring. After holding that the libel, slander, and defamation claims were barred by the statute of limitations, the court also granted judgment to the defendant on the plaintiff's other state law claims. The court noted that the plaintiff's own admissions showed that the elements for intentional and/or negligent infliction of mental distress were lacking. The plaintiff's testimony demonstrated she had suffered neither emotional problems nor bodily or physical harm as a result of the defendant's actions, and the defendant's actions were insufficient, as a matter of law, to constitute the outrageous conduct on which liability for such claims was founded. Avallone v. Wilmington Medical Center, Inc., 553 F.Supp. 931, 938.


**D.D.C.**

**D.D.C.**2023. Cit. in sup. In an action arising from terrorist attacks in Iraq and Afghanistan, victims of the attacks and their family members filed claims under the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant provided material support and resources to the terrorists who were responsible for the attacks. Granting in part plaintiffs' motion for default judgment, the court held that plaintiffs sufficiently alleged a claim for solatium, which, under the Act, were indistinguishable from claims for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court reasoned, in part, that acts of terrorism were by definition extreme and outrageous conduct intended to cause emotional distress, and that the attacks at issue were directed at victims, and the Act exempted the requirement that family members be present at the time of the attack when the attackers were terrorists. Roth v. Islamic Republic of Iran, 651 F.Supp.3d 65, 94, 95.

**D.D.C.**2023. Subsec. (1) cit. in case quot. in sup. U.S. Navy sailors, who were injured in a terrorist bombing of a U.S. Navy ship, and their family members brought, among other things, a claim for intentional infliction of emotional distress (IIED) against Iran, alleging that defendant provided material support and resources to terrorist group responsible for the attack. This court granted plaintiffs' motion for default judgment, holding that defendant would be held liable for damages on plaintiffs' IIED claim under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act. The court noted that acts of terrorism by their very definition were extreme and outrageous conduct and intended to cause severe emotional distress, such that defendants were liable under Restatement Second of Torts § 46. Taitt v. Islamic Republic of Iran, 664 F.Supp.3d 63, 90.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 251 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2022. Subsec. (1) quot. in case quot. in sup., subsec. (2) cit. in case cit. in sup. Family of 16-year-old victim who was shot and killed by member of terrorist group filed wrongful-death and survival claims against the Syrian Arab Republic and Islamic Republic of Iran, seeking to hold defendants liable for materially supporting the group in carrying out the attack under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act. This court granted plaintiffs' motion for default judgment against defendants, holding, among other things, that plaintiffs established that defendants intentionally inflicted emotional distress, such that defendants would be held liable to plaintiffs for solatium damages. The court cited Restatement Second of Torts § 46 in reasoning that presence was not required in cases involving terrorism, because terrorism was sufficiently extreme and outrageous to demonstrate that it was intended to inflict severe motional harm on those not present at the site of the attack. Ben-Yishai v. Syrian Arab Republic, 642 F.Supp.3d 110, 129.

**D.D.C.**2022. Subsecs. (1) and (2) quot. in sup. Victims of terrorist attacks in Israel and victims' families, who were citizens of the United States and Israel, sued Iran and Syria, seeking compensatory and punitive damages under the terrorism exception to the Foreign Sovereign Immunities Act based on allegations that defendants provided material support and resources to the terrorists who carried out the attacks. This court granted in part plaintiffs' motion for a default judgment after defendants failed to respond or appear, holding that defendants were liable to all United States plaintiffs who were related to victims of the attacks for intentional infliction of emotional distress under Restatement Second of Torts § 46, regardless of whether they were present at the attacks. The court pointed to evidence that defendants supported the terrorists with the intent to cause harmful contact, that acts of terrorism were inherently extreme and outrageous, and that those plaintiffs suffered mental anguish hand trauma as a result of the attacks. Borochov v. Islamic Republic of Iran, 589 F.Supp.3d 15, 36, 37.

**D.D.C.**2022. Cit. in sup., subsec. (1) quot. in sup., subsec. (2) cit. and quot. in sup. Victims of terrorist attack in Israel and victims' family members filed claims for battery and loss of solatium against Iran under the terrorism exception to the Foreign Sovereign Immunities Act, alleging that Iran provided material support to the terrorists who committed the attack. This court granted in part plaintiffs' motion for a default judgment after defendant failed to respond, holding, among other things, that plaintiffs had established defendant's liability the federal private right of action for their solatium claims. The court noted that, under the Act, a claim for loss of solatium was indistinguishable from a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46; here, the court reasoned, plaintiffs sufficiently alleged that defendant provided material support to the terrorists with the understanding and intent that the terrorists would carry out attacks in Israel, and plaintiffs suffered severe emotional distress as a result. Mark v. Islamic Republic of Iran, 626 F.Supp.3d 16, 34.

**D.D.C.**2022. Subsec. (1) quot. in case quot. in sup., subsec. (2)(a) cit. in case cit. in sup. As part of a wider action, family of American servicemembers and a military contractor who were injured or killed in terrorist attacks while serving in Iraq sued the Islamic Republic of Iran under the terrorism exception of the Foreign Sovereign Immunity Act, seeking damages for loss of solation based

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 252 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

on allegations that defendant's support of the attacks caused plaintiffs extreme emotional distress. This court granted plaintiffs' motion for a default judgment, holding that plaintiffs stated a valid theory of recovery as to their claims for intentional infliction of emotional distress (IIED) under Restatement Second of Torts § 46. The court noted that IIED claims under the Act could be brought by immediate family members of victims of terrorist attacks even if the family members were not present at the site of the attack. Stearns v. Islamic Republic of Iran, 633 F.Supp.3d 284, 352, 353.

**D.D.C.**2021. Cit. in sup.; com. (d) cit. in sup. Convicted motorist brought, among other things, claims for intentional infliction of emotional distress (IIED) and use of excessive force against police officer and the District of Columbia, alleging that police officer, upon stopping plaintiff for his unregistered vehicle, attempted to stop plaintiff from fleeing while police officer was holding onto the engine hood by injuring him with a firearm. This court granted defendant's motion for summary judgment, holding that plaintiff's IIED claim failed as a matter of law, because police officer's conduct was not extreme or outrageous. Citing Restatement Second of Torts § 46, the court explained that police officer's conduct was not unreasonable under the circumstances for the purposes of the excessive-force claim, and plaintiff did not contest defendants' assertion that a finding of reasonableness precluded a finding of extreme and outrageous conduct. Bushrod v. District of Columbia, 521 F.Supp.3d 1, 30.

**D.D.C.**2021. Cit. in sup., cit. in case cit. in sup. (general cite). Family members of deceased terrorist-attack victims, among others, brought a claim for solatium under the terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant trained, funded, and supported the terrorist attack that killed decedents. This court granted plaintiffs' motion for default judgment, holding that plaintiffs sufficiently alleged a claim for intentional infliction of emotional distress (IIED). The court pointed out that a claim for solatium under the terrorism exception of the Act was indistinguishable from an IIED claim as set forth in Restatement Second of Torts § 46, and explained that terrorist acts were by their nature extreme and outrageous, the attack caused severe emotional distress in plaintiffs, defendant's conduct was directed at decedents, and plaintiffs were decedents' immediate family members. Selig v. Islamic Republic of Iran, 573 F.Supp.3d 40, 63.

**D.D.C.**2020. Quot. in case quot. in sup.; subsec. (1) quot. in case quot. in sup.; com. (*i*) and caveat cit. in case cit. in sup. Immediate family members and estates of deceased victims of bombings at the U.S. embassy in Lebanon filed an action under the terrorism exception to the Foreign Sovereign Immunities Act against Iran, alleging that defendant sponsored and supported the terrorist bombings, and seeking damages for intentional infliction of emotional distress (IIED). This court granted in part plaintiffs' motion for default judgment, holding, inter alia, that they established the basis of defendant's liability for injuries directly inflicted on decedents and injuries indirectly on family members. The court explained that it was self-evident that defendant's role in the bombings was intended to cause a high degree of emotional distress to both decedents and immediate family members, and noted that an act of terrorism, by its very definition, was an extreme and outrageous act that met the requirement for an IIED claim under Restatement Second of Torts § 46. Barry v. Islamic Republic of Iran, 437 F.Supp.3d 15, 44, 50, 51.

**D.D.C.** 2020. Com. (d) cit. in sup. Former patient filed claims for, among other things, intentional infliction of emotional distress against fertility clinic after it dismissed her as a patient. This court granted in part and denied in part clinic's motion for summary judgment, holding that, while patient could go forward on her claim for intentional infliction of emotional distress based on her allegations that clinic discriminated against her and retaliated against her, she could not proceed based on allegations that clinic's regional manager used "aggressive language" during a phone call in which she presented patient with the option of leaving the clinic's practice. The court reasoned that, while the regional manager's call was undoubtedly distressing, her tone and choice of language was not plausibly outrageous enough to have added to that distress in an actionable way under Restatement Second of Torts § 46. E.M. v. Shady Grove Reproductive Science Center P.C., 496 F.Supp.3d 338, 408.

**D.D.C.** 2020. Subsec. (1) and (2) quot. in case quot. in sup. Family of U.S. Marines service member who was stationed at the U.S. embassy in Lebanon brought claims of intentional infliction of emotional distress (IIED) under the terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant provided material support to the terrorists who perpetrated the bombing, and that the attack severely traumatized service member and substantially deteriorated plaintiffs' relationship with him. This court granted plaintiffs' motion for entry of default judgment, holding that plaintiffs provided satisfactory evidence for their IIED claim. The court observed that, under federal caselaw, plaintiffs did not need to show that they were present at the site of the attack to sustain their claim for IIED under Restatement Second of Torts § 46 so long as they were the immediate family members of service member, because terrorism by its nature was directed at both service member and his family. Ewan v. Islamic Republic of Iran, 466 F.Supp.3d 236, 245, 246.

**D.D.C.** 2020. Quot. in sup. U.S. citizens residing in Israel, among others, brought claims of intentional infliction of emotional distress (IIED) against Syria and Iran, asserting jurisdiction under the terrorism exception to the Foreign Sovereign Immunities Act, alleging that defendants provided material support to a terrorist group whose attack destroyed plaintiffs' home while plaintiffs were away. This court denied in part plaintiffs' motion for entry of default judgment, holding that plaintiffs failed to establish a waiver of sovereign immunity under the Act, because they failed to satisfactorily prove the elements of an IIED claim. The court explained that the emotional distress plaintiffs suffered when they witnessed the destruction of their home, without evidence that they also suffered any physical injury or were the direct targets of the attack, could not form the basis of an IIED claim under Restatement Second of Torts §§ 46 and 47. Force v. Islamic Republic of Iran, 464 F.Supp.3d 323, 362.

**D.D.C.** 2020. Quot. in sup.; subsec. (2)(a) cit. in case cit. in sup.; com. (d) quot. in case quot. in sup.; com. (*i*) quot. in sup. (erron. quot. as com. (d)). Brother of deceased U.S. Army service member brought a state-law claim for intentional infliction of emotional distress (IIED) under the terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, among others, alleging that defendant provided material support to terrorist groups who abducted,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 254 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

tortured, and murdered service member. This court granted plaintiff's motion for entry of default judgment, holding that plaintiff substantiated his IIED claim under Restatement Second of Torts § 46. The court explained that plaintiff satisfactorily established that he was the immediate family member of service member, that defendant's conduct was extreme, outrageous, and intentional, and that he suffered devastating emotional trauma from the loss of his brother; furthermore, plaintiff was not required to have been present for defendant's outrageous conduct against service member, because caselaw established that family members did not need to personally witness the tortious action to sustain an IIED claim under § 46. Fritz v. Islamic Republic of Iran, 466 F.Supp.3d 13, 17-19.

**D.D.C.**2020. Subsecs. (2)(a) and (2)(b) quot. in case quot. in sup. Family members of employee of the U.S. embassy in Kenya, who was injured in a terrorist bombing of the embassy, brought, among other things, a claim for intentional infliction of emotional distress (IIED) against the Republic of Iran and the Iranian Ministry of Information and Security, asserting jurisdiction under the terrorism exception to the Foreign Sovereign Immunities Act, and alleging that defendants provided material support to the terrorists that bombed the embassy, which resulted in plaintiffs suffering severe emotional damages. This court granted plaintiffs' motion for default judgment, holding that plaintiffs demonstrated that they were entitled to solatium damages caused by defendants' support of the terrorists. The court explained that, although plaintiffs were not the direct victims of the bombing, they had a valid IIED claim under Restatement Second of Torts § 46, because they established that the terrorist bombing was outrageous and extreme, they suffered severe emotional distress, and they were the immediate family members of the victim. Kinyua v. Republic of Sudan, 466 F.Supp.3d 1, 9.

**D.D.C.**2020. Subsecs. (1), (2)(a), and (2)(b) quot. in cases quot. in sup. In an action arising from the 1998 bombing of a U.S. Embassy in Kenya, U.S. nationals or employees of the U.S. government who were direct victims of the bombings, along with their immediate family members, filed claims under the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, among others, alleging that defendants provided material support to the terrorists that perpetrated the bombings. On remand, this court held that Iran was liable to victims' family members for solatium damages stemming from victims' injuries. The court noted that immediate family members of injured victims were not required to independently satisfy the "presence" requirement to recover for intentional infliction of emotional distress under Restatement Second of Torts § 46, because a terrorist attack, by its nature, was directed not only at the victims but also at the victims' families. Sheikh v. Republic of Sudan, 485 F.Supp.3d 255, 266.

**D.D.C.**2019. Quot. in sup., cit. in case cit. in sup.; subsecs. (1) and (2)(a) cit. in case cit. in sup. Former captive and his sister brought, among other things, claims for intentional infliction of emotional distress (IIED) under the terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant's threats against and torture of former captive for more than three years while he was detained in Iran caused plaintiffs severe emotional distress. This court entered a default judgment against defendant, holding that plaintiffs adequately alleged sufficient facts to support their IIED claim. The court explained that, under Restatement

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 255 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Second of Torts § 46, torture, threats, and keeping a person in inhumane conditions for more than three years constituted extreme and outrageous conduct, and that, under § 46, sister was entitled to bring an IIED claim, because defendant's conduct was directed at her immediate family. Abedini v. Government of Islamic Republic of Iran, 422 F.Supp.3d 118, 133, 135.

**D.D.C.**2019. Subsec. (1) quot. in sup., cit. in case cit. in sup. (general cite). Victims of a terrorist bombing of a U.S. embassy brought an action against the Islamic Republic of Iran, asserting jurisdiction under the terrorism exception to the Foreign Sovereign Immunities Act based on allegations that defendant sponsored the terrorist bombing, and alleging, inter alia, a claim of intentional infliction of emotional distress (IIED). This court granted in part plaintiffs' motion for default judgment, holding that plaintiffs articulated the elements of an IIED claim by establishing that defendant provided material support for the terrorists and caused plaintiffs' injuries and trauma. The court explained that acts of terrorism were by definition extreme and outrageous conduct as defined by Restatement Second of Torts § 46, because such acts were intended to cause the highest degree of emotional distress. Barry v. Islamic Republic of Iran, 410 F.Supp.3d 161, 176, 177.

**D.D.C.**2019. Cit. in sup.; subsec. (1) cit. in sup. Family of an American war journalist who was killed in Syria by an artillery attack launched by the Syrian military brought an action under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act against the Syrian Arab Republic. After defendant failed to plead or otherwise defend against the complaint, this court granted plaintiffs' motion for a default judgment against defendant, finding that plaintiffs had provided more than satisfactory evidence to demonstrate that journalist's death resulted from an extrajudicial killing committed by defendant. The court cited Restatement Second of Torts § 46 in noting that plaintiffs could recover under a theory of intentional infliction of emotional distress even though they were not personally present at the scene, because defendant intentionally carried out an attack that caused plaintiffs severe emotional distress. Colvin v. Syrian Arab Republic, 363 F.Supp.3d 141, 157.

**D.D.C.**2019. Subsec. (1) quot. in case quot. in sup.; subsec. (2)(a) and com. (j) quot. in sup.; caveat cit. in sup. United States servicemembers and others filed a private cause of action against the North Korean government in connection with allegations that defendant was liable as a state sponsor of terrorism for the actions of its agents, who kidnapped, imprisoned, and tortured servicemembers for almost a year. After defendant failed to respond or appear, this court granted plaintiffs' motion for a partial default judgment, holding that defendant was liable to plaintiffs under the terrorism exception to the Foreign Sovereign Immunities Act. The court reasoned, in part, that plaintiffs showed that defendant was liable for intentional infliction of emotional distress under Restatement Second of Torts § 46, given the uncontroverted evidence that defendant's actions were extreme and outrageous and were intended to cause—and did cause—extreme distress and terror in servicemembers, their estates, and their families. Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong, 414 F.Supp.3d 109, 128.

**D.D.C.**2019. Subsec. (1) quot. in case quot. in sup. Journalist, brother, and mother brought, among other things, claims for intentional infliction of emotional distress (IIED) under the terrorism

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 256 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

exception of the Foreign Sovereign Immunity Act against the Islamic Republic of Iran, alleging, inter alia, that plaintiffs suffered severe emotional distress when defendant took journalist hostage, threatened him, and tortured him for more than a year. This court granted plaintiffs' motion for default judgment, holding that plaintiffs sufficiently established the elements of their IIED claims. The court reasoned that journalist's detention and torture constituted extreme and outrageous conduct that inflicted severe emotional distress under Restatement Second of Torts § 46(1), and explained that brother and mother were entitled to bring an IIED claim for the torture inflicted upon journalist, because they were the immediate family members of the target of defendant's outrageous conduct. Rezaian v. Islamic Republic of Iran, 422 F.Supp.3d 164, 179.

**D.D.C.** 2019. Cit. in sup. (general cite). Estate and family of deceased Iraqi contractor brought claims under the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant formed, trained, funded, supplied, and directed the terrorist organization that kidnapped, tortured, and killed contractor. This court granted in part plaintiffs' motion for a default judgment, holding that certain plaintiffs stated claims for intentional infliction of emotional distress under the applicable District of Columbia law. The court noted that the District of Columbia had adopted the standard in Restatement Second of Torts § 46 for intentional infliction of emotional distress, and concluded that plaintiffs had satisfied all of the elements in § 46, because acts of terrorism were, by their very definition, extreme and outrageous, and five of the six plaintiffs had presented evidence that they suffered severe emotional distress due to the acts of terrorism directed at contractor. W.A. v. Islamic Republic of Iran, 427 F.Supp.3d 117, 140.

**D.D.C.** 2018. Subsec. (1) and com. (*l*) quot. in sup. In an action arising from the bombing of a residential complex in Saudi Arabia, surviving victims and their family members brought an action under the terrorism exception of the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and a branch of its armed forces, alleging that defendants provided material support to the terrorist organization that carried out the bombing. After defendants failed to appear, this court granted in part plaintiffs' motion for a default judgment, holding that defendants were liable to both surviving victims and their families for intentional infliction of emotional distress under Restatement Second of Torts § 46, because plaintiffs alleged that defendants engaged in extreme and outrageous conduct by providing material support to a known terrorist organization, and the organization's attack caused plaintiffs extreme emotional distress. The court noted that, although victims' family members were not present at the time of the attack, defendants' conduct was sufficiently outrageous and intended to inflict severe emotional harm on persons who were not present, such that family members were not required to have been present to recover for their emotional distress. Akins v. Islamic Republic of Iran, 332 F.Supp.3d 1, 36, 37.

**D.D.C.** 2018. Subsec. (1) quot. in disc.; subsec. (2)(a) cit. in case cit. in disc.; com. (*l*) quot. in disc. After United States citizen was killed in a terrorist attack in Jerusalem, decedent's parents and siblings filed a lawsuit under the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran, alleging that defendant had supported and caused the terrorist attack that resulted in decedent's death. This court granted plaintiffs' motion for default judgment, holding, inter alia, that the FSIA permitted plaintiffs to bring various tort claims against foreign governments. The

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 257 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

court cited Restatement Second of Torts § 46 in explaining that plaintiffs' claim for intentional infliction of emotional distress was meritorious because the extreme and outrageous nature of the terrorist attack waived the general requirement of their physical presence at the time of the wrongful act. Estate of Hirshfeld v. Islamic Republic of Iran, 330 F.Supp.3d 107, 141.

**D.D.C.**2018. Com. (d) quot. in case quot. in sup. Employee filed a breach-of-contract action against former employer, and, more than 11 years later, sought to add a claim for intentional infliction of emotional distress (IIED) based on allegations that defendant failed to maintain health insurance for plaintiff's family, threatened a public smear campaign against plaintiff, and misrepresented the grounds for plaintiff's departure from employment. This court denied plaintiff's motions for leave to amend the complaint and for reconsideration, holding that plaintiff's IIED claim did meet the plausibility standard for surviving a motion to dismiss, because it lacked specific allegations about defendant's allegedly extreme and outrageous behavior. The court quoted Restatement Second of Torts § 46, Comment *d*, in explaining that the proposed amended complaint lacked factual details to show that defendants conduct was sufficiently outrageous to support an IIED claim. Klayman v. Judicial Watch, Inc., 296 F.Supp.3d 208, 216.

**D.D.C.**2017. Cit. in case quot. in sup.; subsec. (1) quot. in sup.; com. (*l*) cit. in sup. Parents, grandparents, and estate of infant killed in a terrorist attack by Hamas brought an action under the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran and the Syrian Arab Republic, claiming that defendants provided material support to the terrorists and were liable under several tort theories, including wrongful death, assault, battery, and intentional infliction of emotional distress (IIED). This court granted plaintiffs' motion for default judgment, holding that plaintiffs demonstrated satisfactory evidence establishing the elements of the terrorism exception to the FSIA and that the attack was an extrajudicial killing for which defendants acted as state sponsors. Relying on Restatement Second of Torts § 46 in discussing the IIED claims, the court explained that parents were permitted to recover as members of infant's immediate family who were present at the attack and grandparents were permitted to recover, even though they were not physically present, because defendants' support of terrorism was sufficiently outrageous and specifically intended to inflict severe emotional harm on those not present. Braun v. Islamic Republic of Iran, 228 F.Supp.3d 64, 81.

**D.D.C.**2017. Com. (d) quot. in cases quot. in sup. Customer filed a pro se action against pharmacy and its chief executive officer, seeking to assert claims for negligence and intentional infliction of emotional distress in connection with various incidents in which a pharmacist gave her the incorrect medication or medical supplies and delayed her ability to receive the correct medication and supplies. Granting summary judgment for defendants, this court held, among other things, that plaintiff failed to allege facts that, if proven true, established conduct by defendants that was extreme and outrageous, as required to state a claim for intentional infliction of emotional distress. The court explained that, under District of Columbia law and Restatement Second of Torts § 46, the conduct alleged had to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. Carty v. CVS Pharmacy, LLC, 264 F.Supp.3d 190, 196.

**D.D.C.**2017. Subsec. (2)(a) cit. in disc.; com. (j) quot. in sup. U.S. citizen, her husband, and her five children injured in a Hamas bus attack in Israel brought an action under the terrorism exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, alleging that defendant had long-provided material support and resources to Hamas' terroristic activities. This court granted plaintiffs' motion for default judgment, holding that they demonstrated defendant's liability for their injuries under theories of battery, intentional infliction of emotional distress, and solatium. The court cited Restatement Second of Torts § 46 for various forms of demonstrating emotional distress, noting that liability was imposed only where the distress inflicted was so severe that no reasonable man could be expected to endure it, and pointed out that the extreme and outrageous character of a defendant's conduct was important evidence of the existence of emotional distress. Cohen v. Islamic Republic of Iran, 238 F.Supp.3d 71, 84, 85.

**D.D.C.**2017. Cit. in ftn. and cit. in case quot. in ftn. (general cite). Family of U.S. citizen who was kidnapped and murdered in Israel by members of a terrorist organization brought an action under the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and others, alleging that defendants assisted the organization and were therefore liable for, among other things, intentional infliction of emotional distress in connection with the kidnapping and murder. After a hearing, this court entered a default judgment against defendants in favor of plaintiffs. In making its decision, the court noted that the Act provided a private right of action against responsible foreign states to U.S. citizens who were victims of state-sponsored terrorism, and that federal courts looked to Restatement Second of Torts § 46 as the controlling substantive law in claims for intentional infliction of emotional distress arising under the Act. Fraenkel v. Islamic Republic of Iran, 248 F.Supp.3d 21, 34.

**D.D.C.**2017. Com. (d) quot. in sup. Individual who suffered from physical and mental impairments filed, inter alia, a claim for intentional infliction of emotional distress (IIED) against law firm that had represented clients in an action against plaintiff, alleging that defendant discriminated against him on the basis of his disability by ignoring his counsel's request that a computer or tablet be provided for his use during a deposition because of his disability and reliance on visual aids, and that defendant's failure to provide him with either of those items caused him stress and led him to seek help from a health-care facility. This court granted defendant's motion to dismiss, holding that, even if defendant was aware of plaintiff's particular susceptibility, its failure to provide him with a laptop or tablet was not the type of behavior required to support an IIED claim. The court quoted Restatement Second of Torts § 46, Comment *d*, in describing the type of outrageous and extreme behavior necessary to establish liability for an IIED claim. Jefferson v. Stinson Morrison Heckler LLP, 249 F.Supp.3d 76, 84.

**D.D.C.**2017. Coms. (d) and (f) quot. in case quot. in sup. Elderly couple brought, inter alia, an action against healthcare worker who was hired to provide services to plaintiffs in their home, alleging intentional infliction of emotional distress based on claims that defendant had robbed them. This court denied defendant's motion to dismiss plaintiffs' IIED claim, holding that the alleged conduct, if proven, was sufficient to rise to the level of extreme and outrageous conduct necessary to support an IIED claim. The court explained that, under Restatement Second of

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 259 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Torts § 46, Comment *d*, mere indignities or threats were not sufficiently outrageous and that the relationship between the parties was relevant especially where a defendant had knowledge that a victim was peculiarly susceptible, and reasoned that, here, plaintiffs' alleged that defendant was hired and given permission to enter the home in order to provide medical care to physically disabled plaintiffs and was not permitted to intrude into locked areas in order to steal plaintiffs' property. Mann v. Bahi, 242 F.Supp.3d 6, 10, 11.

**D.D.C.**2017. Com. (d) quot. in case quot. in sup. Former security officer for university police department brought claims for, among other things, intentional infliction of emotional distress against university in connection with its suspension and termination of his employment after he was charged with driving while impaired by alcohol. This court granted defendant's partial motion to dismiss, holding that plaintiff's allegations—that defendant suspended and terminated his employment, confiscated his security license and keys, and denied him access to its properties—fell short of the high standard required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. While defendant's actions might have been distressing to plaintiff, none of defendant's actions constituted extreme or outrageous conduct or rose above a normal employment decision, and the law did not impose a general duty of care to avoid causing mental distress. Nono v. George Washington University, 245 F.Supp.3d 141, 148.

**D.D.C.**2017. Com. (j) quot. in sup. Individual who was arrested after he got into an altercation with employees of a liquor store sued arresting officers, police department, and the District of Columbia, alleging that one officer used excessive force against him after he was restrained, by beating him such that he suffered a broken nose, a head contusion, and a subgaleal hematoma. This court denied in part defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress, holding that plaintiff presented sufficient evidence that he experienced severe emotional distress, as required to state a claim under Restatement Second of Torts § 46. The court pointed to plaintiff's deposition testimony that he experienced nightmares and flashbacks about the arrest, and that they continued for years after it occurred. Williams v. District of Columbia, 268 F.Supp.3d 178, 195.

**D.D.C.**2017. Com. (d) quot. in case quot. in sup. Ticket agent of Chinese descent who worked for a bus company in the District of Columbia brought, inter alia, a claim for intentional infliction of emotional distress (IIED) against the District of Columbia, alleging that she suffered emotional distress when, within a six-month period, she had four incidents with defendant's police department, including two arrests arising from disputes between plaintiff and bus patrons and "would-be robbers;" that the police department failed to send a Chinese-speaking officer or interpreter, used excessive force in handling her, and retaliated against her; and that she was afraid of being arrested again and was extremely anxious whenever she saw a police officer. This court denied defendant's motion to dismiss, holding that plaintiff sufficiently pleaded the elements of an IIED claim. The court quoted Restatement Second of Torts § 46, Comment *d*, in explaining the "extreme and outrageous conduct" element of an IIED claim, and concluded that, here, the police officer's conduct as alleged in the complaint was sufficiently extreme and outrageous to state an IIED claim. Xingru Lin v. District of Columbia, 268 F.Supp.3d 91, 103.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 260 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2016. Subsec. (2)(a) cit. case quot. in sup. Injured victim of a terrorist attack carried out by Hamas at his yeshiva in Gaza, and his family members, brought an action under the "state-sponsored terrorism" exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, alleging that defendants financially funded and provided tactical support and equipment to Hamas. This court granted plaintiffs' motion for default judgment due to defendants' failure to respond to the complaint, holding that plaintiffs established their claims for, among other things, intentional infliction of emotional distress (IIED). The court explained that defendants were liable for IIED if they acted consistent with the criteria set forth in Restatement Second of Torts § 46(2)(a), and that acts of terrorism were per se extreme and outrageous conduct. Bluth v. Islamic Republic of Iran, 203 F.Supp.3d 1, 21.

**D.D.C.**2016. Com. (d) quot. in case quot. in sup. Former graduate student, acting pro se, brought a claim for intentional infliction of emotional distress (IIED) against university in connection with allegations that, on two occasions, university denied her application for readmission to complete her doctorate degree in history based either on her credentials or her lack of progress and possible plagiarism. Granting university's motion to dismiss, this court held that student failed to state an IIED claim against university, because, while she might have experienced pain and suffering as a result of her inability to complete her graduate studies through university, it could not be said that university's decision to deny her readmission rose to the level of extreme or outrageous conduct required to state such a claim under Restatement Second of Torts § 46. Holloway v. Howard University, 206 F.Supp.3d 446, 453.

**D.D.C.**2016. Cit. in sup., cit. in case quot. in sup., adopted in case cit. in sup.; Caveat cit. and quot. in sup.; com. (*l*) cit. in sup. In consolidated actions, victims who were injured and estates and families of victims who were injured or killed in terrorist bombings sued, among others, the Republic of Sudan, alleging that defendant provided assistance to the terrorist organization that carried out the bombings. After conducting hearings, this court entered final judgments against defendant, and denied defendant's subsequent motion to vacate the judgments as to certain family-member plaintiffs, holding that it was not clear that District of Columbia law required those plaintiffs to have been present at the bombings in order to recover for intentional infliction of emotional distress (IIED). Although the District of Columbia had adopted the standard laid out in Restatement Second of Torts § 46, which suggested that presence was usually required for family members to recover on an IIED claim, § 46 also contained a Caveat on which courts in the district had relied in holding that terrorist attacks were a form of outrageous conduct to which the presence requirement did not apply. Owens v. Republic of Sudan, 174 F.Supp.3d 242, 287.

**D.D.C.**2016. Subsec. (1) quot. in sup. After a terrorist organization shot down an airplane and took survivors of the crash hostage, former hostages and family of hostage who was killed sued the Republic of Cuba, alleging that, under the terrorism exception to the Foreign Sovereign Immunity Act, defendant was liable for sponsoring the organization. This court granted plaintiffs' motion for a default judgment and awarded plaintiffs damages, holding that plaintiffs sufficiently alleged that

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 261 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

defendant provided the organization with the materials, training, and resources necessary to carry out torts against the hostages, including the tort of intentional infliction of emotional distress as set forth in Restatement Second of Torts § 46. The court pointed to evidence that the hostages were forcibly marched through the jungle, denied medical care, refused communication with their loved ones, kept in cages, chained to trees and one another, prevented from performing basic bodily functions and needs, mock executed, and regularly told they would be killed, and that the hostages suffered extreme emotional anguish as a result. Stansell v. Republic of Cuba, 217 F.Supp.3d 320, 343.

**D.D.C.**2016. Subsecs. (1) and (2) and com. (d) quot. in sup. Families and estates of two American victims of a terrorist attack in Jordan brought an action under the Foreign Sovereign Immunities Act (FSIA) against Syrian Arab Republic and Syrian Military Intelligence, alleging that defendants sponsored the attack and were therefore responsible for victims' deaths. After defendants failed to enter appearances or defend against plaintiffs' claims, this court granted plaintiffs' motion for a default judgment, finding that defendants were jointly and severally liable for victims' deaths, and awarded damages. The court reasoned, in part, that plaintiffs were entitled to recover damages for intentional infliction of emotional distress under Restatement Second of Torts § 46, because they were members of victims' immediate families and defendants' conduct was sufficiently outrageous and intended to inflict severe emotional harm upon persons who were not present. Thuneibat v. Syrian Arab Republic, 167 F.Supp.3d 22, 39.

**D.D.C.**2015. Subsec. (1) cit. in case quot. in sup. Kenyan, Tanzanian, and United States citizens who were injured or killed in suicide bombings of the United States embassies in Kenya and Tanzania, and their immediate family members, sued the Republic of Sudan, the Islamic Republic of Iran, and related entities, seeking to hold defendants responsible for their alleged roles in supporting, funding, and carrying out the attack. After granting summary judgment on liability against defendants, this court awarded plaintiffs damages, holding that, under the Foreign Sovereign Immunities Act, all plaintiffs who were injured in the bombings could recover for their pain and suffering as well as their economic losses, and their immediate family members—if U.S. nationals—could recover for solatium. The court cited Restatement Second of Torts § 46 in reasoning that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct and were thus compensable by analogy under the tort of intentional infliction of emotional distress. Amduso v. Republic of Sudan, 61 F.Supp.3d 42, 47.

**D.D.C.**2015. Com. (d) quot. in case quot. in sup. African American and Hispanic former employees of hotel sued owner of the hotel and past and present managers of the hotel, alleging racial discrimination in violation of federal and District of Columbia laws, and intentional and negligent infliction of emotional distress (IIED). Granting in part defendants' motion to dismiss, this court held that the allegations in plaintiffs' complaint, which consisted solely of run-of-the-mill discrimination claims, failed to approach the demanding standard required to state an IIED claim under Restatement Second of Torts § 46. While plaintiffs claimed that they were called "trash" on at least two occasions, that an offensive poster appeared in their workspace, that they were fired from their jobs, and that they were replaced by non-minorities, the court reasoned that courts had

repeatedly held that conduct more egregious than these "mere insults" and employment-related slights did not meet the exacting IIED bar. Asare v. LM-DC Hotel, LLC, 62 F.Supp.3d 30, 36.

**D.D.C.**2015. Subsecs. (1) and (2)(a) cit. in sup. Family of sailor who was killed during the terrorist bombing of a U.S. Navy ship in Yemen brought claims for intentional infliction of emotional distress (IIED) under the Foreign Sovereign Immunities Act against, among others, the states of Iran and Sudan, alleging that defendants provided material support and resources to the terrorists that carried out the attack. After plaintiffs obtained default judgments against the Iranian and Sudanese defendants, this court awarded plaintiffs damages, holding that plaintiffs established that defendants enabled the terrorists to perpetrate the attack, thereby causing sailor's death and plaintiffs' resulting mental anguish, bereavement, and grief. The court noted that, under Restatement Second of Torts § 46, a defendant was potentially liable for IIED to family members of injured persons if the defendant engaged in extreme and outrageous conduct that was directed at the persons and intentionally or recklessly caused severe emotional distress, but not necessarily bodily harm, to such persons' immediate family members. Flanagan v. Islamic Republic of Iran, 87 F.Supp.3d 93, 115.

**D.D.C.**2015. Com. (d) quot. in sup. and quot. in case quot. in sup. Black off-duty police officer brought a claim for intentional infliction of emotional distress against white on-duty police officer following an incident in which defendant raced his car to block plaintiff's path, forcefully handcuffed him, and detained him despite the fact that he had committed no crime, while threatening, berating, and insulting him and other officers who identified him as a police officer. This court denied defendant's motion for summary judgment, holding that genuine disputes of material facts existed as to whether defendant's actions were sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court noted that, under District of Columbia law, a police officer's abuse of a position of authority could be considered outrageous conduct, but that a police officer who abused a position of power was still not liable for mere insults, indignities, or annoyances that were not extreme or outrageous. Greene v. Shegan, 123 F.Supp.3d 88, 92.

**D.D.C.**2015. Subsec. (1) cit. in case quot. in sup. Kenyan citizens who were injured or killed in a suicide bombing of the United States embassy in Kenya sued the Republic of Sudan, the Islamic Republic of Iran, and related entities, seeking to hold defendants responsible for their roles in allegedly supporting, funding, and carrying out the attack. After granting summary judgment on liability against defendants, this court awarded plaintiffs damages, holding that foreign national U.S.-government-employee plaintiffs who were injured in the bombing were entitled to recover under the Foreign Sovereign Immunities Act for pain and suffering caused by the attack. The court cited Restatement Second of Torts § 46 in reasoning that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct and were thus compensable by analogy under the tort of intentional infliction of emotional distress. Onsongo v. Republic of Sudan, 60 F.Supp.3d 144, 148.

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 263 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2015. Subsec. (1) cit. in case quot. in sup. Kenyan, Tanzanian, and United States citizens who were injured or killed in suicide bombings of the United States embassies in Kenya and Tanzania sued the Republic of Sudan, the Islamic Republic of Iran, and related entities, seeking to hold defendants responsible for their roles in allegedly supporting, funding, and carrying out the attacks. After granting summary judgment on liability against defendants, this court awarded plaintiffs damages, holding that United States citizens and foreign national U.S.-government-employee plaintiffs who were injured in the bombing were entitled to recover under the Foreign Sovereign Immunities Act for pain and suffering caused by the attack. The court cited Restatement Second of Torts § 46 in reasoning that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct and were thus compensable by analogy under the tort of intentional infliction of emotional distress. Opati v. Republic of Sudan, 60 F.Supp.3d 68, 76.

**D.D.C.**2015. Subsec. (1) cit. and quot. in case cit. and quot. in sup.; subsec. (2)(a) cit. in case cit. in sup. Family members and administrators of estate of victim who was killed in a bombing in Jerusalem filed, inter alia, an intentional-infliction-of-emotional-distress (IIED) claim under the "terrorism exception" of the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran and its ministry of information and security, alleging that defendants supported and funded the bombing. This court granted in part plaintiffs' motion for default judgment as to liability and damages, holding that plaintiffs stated a valid theory of recovery for an IIED claim. Citing Restatement Second of Torts § 46, the court explained that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct and, because they were intended to inflict severe emotional harm on those not present at the site of the attack, plaintiffs did not need to be present at the time of the attack to recover. Roth v. Islamic Republic of Iran, 78 F.Supp.3d 379, 400.

**D.D.C.**2015. Cit. in sup. Motorist brought a claim for intentional infliction of emotional distress against the United States, following the dismissal of assault charges that were filed against him in connection with an incident in which he "intentionally almost struck" an officer with the U.S. Capital Police. Granting defendant's motion to dismiss, this court held that the allegations in plaintiff's complaint failed to mount the high bar of outrageousness that a plaintiff had to meet in order to state a claim for intentional infliction of emotional distress. The court noted that, under Restatement Second of Torts § 46, whether the conduct complained of was sufficiently outrageous to permit recovery for intentional infliction of emotional distress was a question of law that had to be decided by the court in the first instance. Smith v. United States, 121 F.Supp.3d 112, 124.

**D.D.C.**2015. Com. (d) quot. in case quot. in sup. Terminated employee brought claims sounding in, among other things, wrongful termination, race discrimination, retaliation, and intentional infliction of emotional distress (IIED) against former employer. This court granted defendant's motion for judgment as a matter of law on plaintiff's IIED claim, holding that plaintiff's conclusory allegations did not rise to the requisite level of outrageousness to state an IIED claim, and that plaintiff had adduced no evidence to support such a claim even after an extensive discovery period. The court noted that the District of Columbia followed Restatement Second of Torts § 46, which set a very high bar for satisfying the requisite level of outrageousness, which went well beyond

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 264 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

mere insults, indignities, or annoyances. [Sun v. District of Columbia Government, 133 F.Supp.3d 155, 175.](#)

**D.D.C.**2015. Com. (d) quot. in cases quot. in sup. Residential mortgage borrower brought claims for, among other things, intentional infliction of emotional distress against lender and others, alleging that defendants fraudulently attempted to foreclose or claimed the right to foreclose on his property without the right to do so. This court granted defendants' motion to dismiss, holding that plaintiffs failed to state a claim for intentional infliction of emotional distress. The court reasoned that defendants' conduct was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as required to state such a claim under Restatement Second of Torts § 46. [Taylor v. Wells Fargo Bank, N.A., 85 F.Supp.3d 63, 73.](#)

**D.D.C.**2015. Subsec. (1) cit. in case quot. in sup. Kenyan and Tanzanian citizens who were injured or killed in suicide bombings of the United States embassies in Kenya and Tanzania sued the Republic of Sudan, the Islamic Republic of Iran, and related entities, seeking to hold defendants responsible for their roles in allegedly supporting, funding, and carrying out the attacks. After granting summary judgment on liability against defendants, this court awarded plaintiffs damages, holding that foreign national U.S.-government-employee plaintiffs who were injured in the bombing were entitled to recover under the Foreign Sovereign Immunities Act for pain and suffering caused by the attack. The court cited Restatement Second of Torts § 46 in reasoning that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct and were thus compensable by analogy under the tort of intentional infliction of emotional distress. [Wamai v. Republic of Sudan, 60 F.Supp.3d 84, 89.](#)

**D.D.C.**2014. Subsec. (1) cit. in case quot. in sup. U.S. citizens injured in embassy bombings in Kenya, along with their family members, brought an action under the "terrorism exception" of the Foreign Sovereign Immunities Act (FSIA) against the Republic of Sudan and its ministry of the interior, and the Islamic Republic of Iran and its ministry of information and security, alleging that defendants supported, funded, and otherwise carried out the bombings. The district court entered judgment on liability in favor of plaintiffs and referred the claims to a special master for a determination of damages. This court adopted the special master's report, with modifications. Applying the general principles of tort law, the court held that plaintiffs were entitled to damages on their federal claims. Citing Restatement Second of Torts § 46, the court explained that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct, and therefore, were compensable by analogy under the tort of intentional infliction of emotional distress. [Khaliq v. Republic of Sudan, 33 F.Supp.3d 29, 32.](#)

**D.D.C.**2014. Com. (d) quot. in case quot. in sup. Employee brought an action against private university for, among other things, intentional infliction of emotional distress, alleging that she was mistreated, placed on administrative leave, and demoted after co-workers learned that she had signed a petition to place an amendment to ban gay marriage on the state ballot. Granting defendant's motion to dismiss, this court held that plaintiff failed to allege sufficient facts to support an IIED claim. Citing Restatement Second of Torts § 46, Comment *d*, the court explained that,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 265 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

generally, a successful IIED claim required conduct that was so outrageous and extreme as to go beyond all possible bounds of decency, but in the employment context, the conduct needed to be even more extreme and outrageous. McCaskill v. Gallaudet University, 36 F.Supp.3d 145, 160.

**D.D.C.**2014. Subsec. (1) cit. in case quot. in sup. Victims of embassy bombings in Tanzania, along with their families, brought an action under the "terrorism exception" of the Foreign Sovereign Immunities Act (FSIA) against the Republic of Sudan and its ministry of the interior, and the Islamic Republic of Iran and its ministry of information and security, alleging that defendants supported, funded, and otherwise carried out the bombings. The district court granted summary judgment on liability against defendants and referred the claims to a special master for a determination of damages. This court adopted the special master's report, with modifications. Applying the general principles of tort law, this court held that plaintiffs were entitled to damages on their federal claims. Citing Restatement Second of Torts § 46, the court explained that acts of terrorism, by their very definition, amounted to extreme and outrageous conduct, and therefore, were compensable by analogy under the tort of intentional infliction of emotional distress. Mwila v. Islamic Republic of Iran, 33 F.Supp.3d 36, 40.

**D.D.C.**2014. Com. (d) quot. in case quot. in sup. After taxicab driver was acquitted of criminal charges in connection with his arrest during a traffic stop, driver brought claims for, among other things, intentional infliction of emotional distress (IIED) against the District of Columbia, alleging that it was vicariously liable for the actions of the police officer who initiated the stop that resulted in his arrest, and who had previously issued him five traffic tickets on two other occasions, all of which were eventually dismissed. This court granted summary judgment for defendant, holding that no jury could reasonably find that the officer's actions—in making two traffic stops with no use of force, arrest, or other threatening behavior, and in making a third stop in which she did not interact improperly with plaintiff—were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, as required to state a claim for IIED under Restatement Second of Torts § 46. Singh v. District of Columbia, 55 F.Supp.3d 55, 65-66.

**D.D.C.**2014. Subsec. (1) quot. in case quot. in sup., subsec. (2)(a) cit. in case cit. in sup. Victims who were injured and estates of victims who were killed in a terrorist bombing of a U.S. Marine Corps barracks in Lebanon sued the Islamic Republic of Iran and the Iranian Ministry of Information and Security, seeking to hold defendants liable for the bombing under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act (FSIA). This court granted in part plaintiffs' motion for a default judgment, holding that all but one plaintiff had established a valid theory of recovery on their claims for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court noted that, while the "immediate family" requirement was strictly construed in FSIA cases, the "presence" requirement was not, because terrorism was sufficiently extreme and outrageous to demonstrate that it was intended to inflict severe emotional harm on even those not present at the site of the act. Worley v. Islamic Republic of Iran, 75 F.Supp.3d 311, 336.

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 266 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2013. Cit. in case cit. in sup. Arrestee, for herself and on behalf of her teenage daughters, brought, inter alia, a pendent state-law claim for intentional infliction of emotional distress (IIED) against police officers, alleging that defendants unlawfully entered her apartment without a warrant, and used excessive force in arresting her and the wrong daughter for assaulting another teenager. Granting defendants' motion for summary judgment as to this claim, this court held that plaintiffs' IIED claim failed because there was no evidence that defendants' conduct caused plaintiffs severe emotional distress. The court concluded that, while plaintiffs alleged that they suffered emotional and physical distress, and exhibited signs of depression, nervousness, lack of sleep, and loss of appetite, these facts provided no indication that their distress was "of so acute a nature that harmful physical consequences might be not unlikely to result." Garay v. Liriano, 943 F.Supp.2d 1, 23.

**D.D.C.**2013. Subsecs. (1), (2)(a), and (2)(b) quot. in case quot. in sup. Family of 14-year-old U.S. citizen who was killed in a suicide bombing in Israel sued the Islamic Republic of Iran under the state-sponsored terrorism provision of the Foreign Sovereign Immunities Act, alleging that defendant was responsible for the attack. Granting plaintiffs' motion for a default judgment, this court awarded, among other things, solatium damages, holding that plaintiffs had satisfied the causation requirement for such an award by showing that defendant was potentially liable to plaintiffs under a theory of intentional infliction of emotional distress. The court reasoned that plaintiffs were either the parents or siblings of the decedent, and, while none of the plaintiffs were present at or witnesses to the attack, acts of terrorism were by definition extreme and outrageous, and thus a plaintiff in an action involving terrorism did not have to be present at the place of the outrageous conduct in order to recover emotional-distress damages. Goldberg-Botvin v. Islamic Republic of Iran, 938 F.Supp.2d 1, 9, 10.

**D.D.C.**2013. Com. (d) quot. in case quot. in sup. Mother of 16-year-old daughter who was killed in a retaliatory drive-by shooting while attending a funeral service for a young homicide victim brought various claims against the District of Columbia, police chief, and other government agencies and officials, alleging, among other things, that defendants negligently failed to prevent daughter's death and failed to provide adequate police protection for African American youths in the District of Columbia in general. Granting in part defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress, this court held that, although the actions of the shooters—in indiscriminately opening fire on a crowd of teenagers with an assault rifle —constituted heinous acts that might form the basis of such a claim, the actions of defendants that allegedly contributed to daughter's death, while unsettling if true, did not themselves support a finding that defendants committed extreme and outrageous conduct. Jefferies v. District of Columbia, 917 F.Supp.2d 10, 41.

**D.D.C.**2013. Coms. (d) and (h) quot. in cases quot. in sup. Former employee of contractor that provided plumbing services to the District of Columbia Department of Corrections brought, inter alia, a state-law claim for intentional infliction of emotional distress (IIED) against contractor, alleging that defendant falsely accused him of turning off the heating system at the District of Columbia jail and then deprived him of his dignity and humiliated him by walking him off the

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 267 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

job site. Granting defendant's motion to dismiss this claim, this court held that, while the indignity and humiliation that plaintiff alleged that he suffered in being discharged was understandable, defendant's alleged actions were not sufficiently outrageous to state a claim for IIED under District of Columbia law, but rather represented the sort of employer—employee conflicts that were not actionable under this tort. Morris v. Carter Global Lee, Inc., 997 F.Supp.2d 27, 41.

**D.D.C.**2012. Subsec. (1) cit. in case quot. in sup., subsecs. (2)(a) and (2)(b) quot. in case quot. in sup., caveat quot. in case quot. in sup. Family and estate of a U.S. citizen who died in a terrorist bombing in Israel sued the Islamic Republic of Iran and the Iranian Ministry of Information and Security, seeking to hold defendants responsible for citizen's death under the state-sponsored terrorist exception of the Foreign Sovereign Immunities Act. After defendants failed to timely appear, answer, or otherwise move, this court entered judgment for plaintiffs, holding, among other things, that defendants were liable under the exception for intentional infliction of emotional distress as to each plaintiff. The court reasoned that plaintiffs had satisfied all of the elements of such a claim as set forth in the Restatement Second of Torts § 46; in addition, plaintiffs were members of citizen's immediate family and, while plaintiffs were not present and witnesses to the bombing, the presence requirement was relaxed in cases involving terrorism. Bodoff v. Islamic Republic of Iran, 907 F.Supp.2d 93, 103, 104.

**D.D.C.**2012. Cit. and quot. in sup., subsec. (2)(a) cit. in sup. After a default judgment on liability was entered in an action brought by servicemen and family members under the state-sponsored exception to the Foreign Sovereign Immunities Act (FSIA) against Iran and its intelligence service, arising from the 1983 terrorist bombing of the U.S. Marine barracks in Lebanon, the action was referred to a special master for consideration of plaintiffs' claims for damages. This court held, inter alia, that surviving servicemen's children born after the date of the bombing could not collect, under the FSIA's state-sponsored terrorism exception, awards for intentional infliction of emotional distress, or solatium; while the bombing's impact on servicemen and their families continued long after the attack, Restatement Second of Torts § 46, required that the bombing be "directed at" a third person, and the special master went too far in assuming that the attack was directed at unborn family members, a potentially unlimited class. Davis v. Islamic Republic of Iran, 882 F.Supp.2d 7, 14, 15.

**D.D.C.**2012. Cit. in case cit. in disc. In resolving whether judgment creditors could garnish United States bank accounts held by judgment debtor Islamic Republic of Iran, this court explained that it would look to, among other things, the Restatement First of Property to determine whether defendant had an ownership interest in the accounts sufficient for attachment and execution under the Terrorism Risk Insurance Act or the Foreign Sovereign Immunities Act (FSIA), which had preempted District of Columbia law. The court noted that it had previously applied the Restatement Second of Torts § 46 to claims for intentional infliction of emotional distress brought under the FSIA. Estate of Heiser v. Islamic Republic of Iran, 885 F.Supp.2d 429, 445.

**D.D.C.**2012. Com. (d) quot. in case quot. in sup. Former employee brought, inter alia, a state-law claim for intentional infliction of emotional distress (IIED) against former employer, among

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 268 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

others, alleging that defendant's vice president used a racial epithet when he ordered plaintiff out of his office. Granting summary judgment for defendant, this court held that defendant was not liable for IIED, because vice president's alleged comment, though offensive, was not the type of action that met the standard of extreme and outrageous conduct under District of Columbia law. Etoh v. Fannie Mae, 883 F.Supp.2d 17, 42.

**D.D.C.** 2012. Quot. in case quot. in sup., subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup. Serviceman injured in the 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon, brought suit, along with his family, against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, alleging that defendants created and supported the terrorist organization that carried out the attack. This court granted plaintiffs' motion for a default judgment, holding, inter alia, that defendants were liable under a theory of intentional infliction of emotional distress for the mental anguish and suffering that all of the plaintiffs endured as a result of the attack, even though plaintiff family members were not present and did not witness the bombing; the Beirut terrorist bombing qualified as an extreme and outrageous act sufficient to warrant recovery for non-present plaintiffs. Fain v. Islamic Republic of Iran, 856 F.Supp.2d 109, 123, 124.

**D.D.C.** 2012. Com. (d) quot. in case quot. in sup. African-American employees of the District of Columbia Fire and Emergency Medical Services brought racial-discrimination claims under federal law, as well as a state-law claim for intentional infliction of emotional distress (IIED), against the District of Columbia. Granting summary judgment for defendant on the IIED claim, this court held, inter alia, that plaintiffs' allegations that defendant falsely accused them of professional misconduct and transferred them, and that defendant's acts were racially motivated, did not state conduct that was sufficiently extreme and outrageous to constitute an IIED claim. Hamilton v. School District of Columbia, 852 F.Supp.2d 139, 153.

**D.D.C.** 2012. Cit. in case quot. in sup., subsec. (1) quot. in sup., subsecs. (1)-(2)(a) cit. in case cit. in sup. Former sailors who were injured in a terrorist attack on a Navy vessel, along with several of their spouses who, while not on the vessel during the attack, allegedly suffered emotional distress upon learning of the incident, sued the Republic of Sudan under the state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act, arguing that defendant was liable for their injuries by virtue of its support for the terrorist organization that perpetrated the bombing. This court entered a default judgment against defendant, holding, inter alia, that defendant was liable to plaintiff sailors for intentional infliction of emotional distress (IIED), because defendant's support of the bombing was both intentional and reckless and caused sailors emotional distress; further, defendant was liable to plaintiff spouses for IIED, because terrorism, which was unique among the types of tortious activities in its extreme methods and aims, fell within an exception to the tort's "presence" requirement, and spouses provided uncontroverted evidence that they suffered severe emotional and physical injuries as a result of the injuries sustained by their husbands. Harrison v. Republic of Sudan, 882 F.Supp.2d 23, 30, 46, 47.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 269 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2012. Com. (d) quot. in case quot. in sup. Estate of deceased group-home resident brought, inter alia, a pendent claim under District of Columbia law for intentional infliction of emotional distress (IIED) against the District of Columbia, group home, home's corporate officers, and doctor, alleging that defendants caused decedent emotional distress by subjecting him to severe neglect and substandard nursing and medical care. Granting summary judgment for group home, its officers, and the District of Columbia, this court held that it was unnecessary for it to reach the question of whether defendants' conduct was sufficiently outrageous to maintain their IIED claim, because plaintiff placed absolutely no facts in the record to support his claim that defendants' conduct—outrageous or not—caused decedent to suffer severe emotional distress. Harvey v. Mohammed, 841 F.Supp.2d 164, 184.

**D.D.C.**2012. Com. (d) quot. in case quot. in sup. Pedestrian brought, inter alia, a state-law claim for intentional infliction of emotional distress (IIED) as part of his federal civil-rights action against police officer and others, alleging that officer, who was conducting pedestrian traffic control during an outdoor festival, yelled at him and forcefully pushed him as he was walking in the street in an effort to get him to move onto the sidewalk. Granting in part defendants' motion for summary judgment, this court held that, even if a jury found that officer used physical force to remove pedestrian from the street, no reasonable jury could find that officer's conduct was sufficiently outrageous to support plaintiff's IIED claim; liability under the tort did not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Muhammad v. District of Columbia, 881 F.Supp.2d 115, 125.

**D.D.C.**2012. Quot. in case quot. in sup., subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup. After former general of the pre-Revolutionary Iranian government was assassinated while exiled in France, decedent's grandson sued the Islamic Republic of Iran and the Iranian Ministry of Information and Security under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, alleging that defendants were responsible for the assassination. This court granted plaintiff's motion for a default judgment following defendants' failure to appear or respond to the complaint, holding, among other things, that plaintiff could recover under a theory of intentional infliction of emotional distress even though he was not present at the assassination. The court reasoned that terrorism was unique among the types of tortious activities in both its extreme methods and aims, and that all acts of terrorism were by definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror. Oveissi v. Islamic Republic of Iran, 879 F.Supp.2d 44, 54.

**D.D.C.**2012. Cit. in sup., cit. in ftn. Son of United States citizen who was abducted, held, and tortured by Lebanese terrorists over the course of three years sued Islamic Republic of Iran and Iran's Ministry of Information and Security for their support of the terrorists. After defendants failed to appear or otherwise respond, this court granted in part plaintiff's motion for a default judgment, holding that defendants were liable for plaintiff's injuries under the Foreign Sovereign Immunities Act (FSIA), because defendants' acts would give rise to common-law tort liability for intentional infliction of emotional distress. The court concluded that the restriction set forth in Restatement Second of Torts § 46 that a plaintiff could not recover for intentional infliction of

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 270 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

emotional distress if not physically present to witness the harm done was inapplicable for purposes of the FSIA. Reed v. Islamic Republic of Iran, 845 F.Supp.2d 204, 212.

**D.D.C.**2012. Quot. in case quot. in sup., subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup. Estate of victim killed in a suicide bombing of a restaurant in Israel brought suit, along with his father, who was injured in the attack, and other family members, against the nations of Syria and Iran and certain of their ministries, pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, alleging that defendants supported the terrorist organization that carried out the attack. This court entered judgment for plaintiffs, holding, inter alia, that defendants were liable under a theory of intentional infliction of emotional distress for the mental anguish and suffering that decedent's father, mother, and sister endured as a result of the attack; the presence requirement did not apply to this case, because all acts of terrorism were by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror. Wultz v. Islamic Republic of Iran, 864 F.Supp.2d 24, 36, 37.

**D.D.C.**2012. Cit. in case cit. in sup., subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in case quot. in sup. Hostage and estate of hostage held in Turkey for 21 days by terrorists, along with members of both of their families, brought suit against the Syrian Arab Republic pursuant to the updated state-sponsored terrorism exception of the Foreign Sovereign Immunities Act (FSIA), alleging that the kidnapping was conducted with defendant's full knowledge and support. Granting plaintiffs' motion for a default judgment against defendant, this court held, inter alia, that it had jurisdiction over plaintiffs' claims that were based on the severe emotional distress of the family plaintiffs. The court concluded that the test for emotional distress claims under FSIA's state-sponsored terrorism exemption was satisfied, reasoning that a terrorist attack constituted extreme and outrageous conduct; by bankrolling and otherwise supporting a terrorist organization responsible for the kidnapping of hostages, defendant acted recklessly to cause severe emotional distress to their family members; each of the family-member plaintiffs suffered severe emotional distress as a result of the kidnapping; and all of them fell into the definition of "immediate family." Wyatt v. Syrian Arab Republic, 908 F.Supp.2d 216, 229.

**D.D.C.**2011. Cit. in sup., cit. in case cit. in sup. After two American citizens were injured and one was killed in execution-style shootings carried out by Palestinian terrorists during an airplane hijacking in 1985, injured citizens, decedent's estate, and family members brought suit under the state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act against the Syrian Arab Republic and its agents. Dismissing from the case plaintiff husband and son of one injured victim, this court held that those two plaintiffs did not have the necessary standing to bring a solatium claim. The court reasoned that the section of the Restatement Second of Torts most relevant to solatium claims was § 46, which did not extend causes of action beyond members of the victim's "immediate family" at the time of injury; here, plaintiff husband had not yet met victim at the time of the attack, and son was not yet born. Baker v. Socialist People's Libyan Arab Jamahirya, 775 F.Supp.2d 48, 74, 78.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 271 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2011. Com. (d) quot. in case quot. in sup. Hotel employee brought an action against employer for intentional infliction of emotional distress (IIED), inter alia, alleging that other hotel employees threatened and harassed him after he reported their suspicious behavior to authorities. Granting defendant's motion for summary judgment, this court held that, although a reasonable jury could find that plaintiff's assertions of employees' repeated and sustained threats of physical violence and death over a three year span were sufficiently extreme and outrageous to make out a claim for IIED, defendant could not be held vicariously liable for employees' behavior because employees were acting outside the scope of their employment. The court found no evidence that employees were motivated in any part by a desire to advance the interests of defendant when they threatened and harassed plaintiff; to the contrary, they appeared to have acted solely for the accomplishment of their independent, malicious, mischievous, and selfish purposes. Beyene v. Hilton Hotels Corp., 815 F.Supp.2d 235, 248, 249.

**D.D.C.**2011. Com. (d) quot. in case quot. in sup. African-American former employee brought racial discrimination and retaliation claims, as well as a pendent state-law claim for intentional infliction of emotional distress (IIED), against former employer and co-workers. Dismissing plaintiff's IIED claim, this court held that plaintiff's allegations that co-workers scrutinized her movements in order to determine whether her behavior or demeanor violated the terms of employer's written warning, which directed her to refrain from using a tone of voice or physical gestures that reasonably could be construed as intimidating to any employee, such that she arrived at work each day expecting to be fired, did not assert conduct rising to the level of outrageousness necessary to state an IIED claim. Brown v. Children's Nat. Medical Center, 773 F.Supp.2d 125, 137-138.

**D.D.C.**2011. Com. (d) quot. in cases quot. in sup. Arrestee sued the United States, asserting a claim for, inter alia, intentional infliction of emotional distress (IIED) based on the purported actions of a District of Columbia police officer during a vehicle stop, the alleged ongoing harassment of plaintiff by members of the federal government, and a statement allegedly made by a Secret Service agent threatening to have plaintiff deported. Granting defendant's motion to dismiss the claim, this court held that neither police officer's inquiry during the course of a vehicle stop about the custody status of plaintiff's children, whom officer knew had been the subject of a custody dispute, nor the investigation and questioning of plaintiff by Secret Service agents (including the associated threat about deportation) after his ex-wife apparently reported to authorities that plaintiff was going to kill the President were sufficiently outrageous to state an IIED claim. Olaniyi v. District of Columbia, 763 F.Supp.2d 70, 95.

**D.D.C.**2011. Subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup., caveat quot. in case quot. in sup. Family members of eight servicemen killed in the bombing of the U.S. Marine Corps barracks in Beirut, Lebanon, brought a claim for intentional infliction of emotional distress (IIED) against the Islamic Republic of Iran under the state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act (FSIA), alleging that defendant created and supported the terrorist organization that carried out the attack. This court entered an order finding defendant responsible for plaintiffs' mental anguish and suffering and thus liable under the FSIA's

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 272 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

state-sponsored terrorism exception; the requirements of a bystander IIED claim were met here, since plaintiffs were the immediate family of the victims, and the presence requirement could be foregone due to the nature of defendants' outrageous terrorist acts. Taylor v. Islamic Republic of Iran, 811 F.Supp.2d 1, 15, 16.

**D.D.C.**2011. Com. (d) quot. in sup., com. (i) cit. in sup. Arrestee sued the District of Columbia and arresting police officers, asserting a claim for, inter alia, intentional infliction of emotional distress (IIED) under District of Columbia law. This court denied one police officer's motion for summary judgment as to the IIED claim, holding that genuine issues of material fact existed as to whether police officer engaged in outrageous conduct or acted with the requisite intent or recklessness when she allegedly helped detain plaintiff for investigation of theft at the request of a fellow officer, and looked on while that fellow officer, who at the time was moonlighting as a security guard at a motel and had mistakenly stopped plaintiff for absconding from the motel without paying the bill, handcuffed plaintiff, removed cash from her pocket to pay the motel bill, gave her a receipt, and told her to "get out." Zhi Chen v. District of Columia, 808 F.Supp.2d 252, 261.

**D.D.C.**2010. Subsec. (1) cit. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup., caveat quot. in case quot. in sup. Family members of American military servicemen injured in the 1983 suicide bombing of the U.S. Marine barracks in Beirut, Lebanon, brought claims for intentional infliction of emotional distress (IIED), inter alia, against the Islamic Republic of Iran and its intelligence ministry under the state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act, alleging that, by creating and directing the terrorist organization that carried out the attack, defendants were legally responsible for the severe mental anguish and toll that the barracks bombing wreaked upon them. This court entered a default judgment against defendants, holding, inter alia, that defendants were liable to plaintiffs for IIED; because acts of terrorism were by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, immediate-family members, like plaintiffs here, did not have to be present at the scene of the terrorist bombing to recover for their severe emotional injuries suffered as a result of the attack. Anderson v. The Islamic Republic of Iran, 753 F.Supp.2d 68, 86.

**D.D.C.**2010. Com. (d) quot. in case quot. in sup. African American members and officers of the District of Columbia Fire and Emergency Medical Services Department brought an action for discrimination against the Department and the District of Columbia. This court denied without prejudice the District's motion to dismiss plaintiffs' pendent claim under District of Columbia law for intentional infliction of emotional distress (IIED), holding that, while it was questionable whether plaintiffs' factual allegations that the department's management falsely accused plaintiffs of lying and discharging their duties inappropriately and wrongly transferred them out of an elite unit were sufficient to support an IIED claim, the District had failed to discuss the IIED count in its memorandum. Hamilton v. District of Columbia, 720 F.Supp.2d 102, 114.

**D.D.C.**2010. Cit. in sup., com. (d) quot. in case quot. in sup. After mortgagee asserted that mortgagor had defaulted on his home-mortgage loan, mortgagor brought a claim for intentional infliction of emotional distress (IIED), inter alia, against mortgagee, mortgagee's successor by

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 273 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

merger, and successor's vice president. Dismissing the IIED claim, this court held that, while plaintiff's allegations that, among other things, defendants discriminated against him by virtue of his race and ethnicity, failed to credit his mortgage payments in a timely manner, and overcharged him for private mortgage-insurance premiums might describe poor business practices and a truly unpleasant experience for plaintiff, those acts did not rise to the level of atrocious or outrageous conduct, as required to state a claim for IIED under D.C. law. Ihebereme v. Capital One, N.A., 730 F.Supp.2d 40, 54.

**D.D.C.**2010. Com. (j) quot. in sup. Mother and four children who lived in an apartment owned and operated by the District of Columbia Housing Authority's public housing program sued authority, its executive director, and one of its employees, alleging that defendants wrongfully failed to provide them with a "heat controlled and rodent-free apartment." Denying, as to authority and employee, defendants' motion to dismiss plaintiffs' claim for intentional infliction of emotional distress under District of Columbia law, this court held that a reasonable juror could find that these defendants' conduct was outrageous and committed in reckless disregard of plaintiffs' welfare. The court cited plaintiffs' allegations that defendants were aware that one child had a special physical condition that required him to avoid excessive heat, that the apartment lacked a thermostat, that vermin ate the child's feeding tube and deprived him of essential nutrition, and that defendants failed to take action sooner despite the imminent nature of plaintiffs' requests. Morton v. District of Columbia Housing Authority, 720 F.Supp.2d 1, 10.

**D.D.C.**2010. Subsec. (1) quot. in sup., subsecs. (1)-(2)(a) cit. in sup., Caveat quot. in sup. and cit. in case quot. in sup. American military servicemen injured in the 1983 suicide bombing of the U.S. Marine barracks in Beirut, Lebanon, brought claims for intentional infliction of emotional distress (IIED), inter alia, against the Islamic Republic of Iran and the its intelligence agency, alleging that they suffered severe emotional and physical injuries from the blast; several family members of victims also brought IIED claims, alleging that extreme and outrageous conduct directed at third-person relatives caused them severe emotional distress. Entering judgment for plaintiffs, this court held that defendants were liable for IIED, because acts of terrorism were by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress. The court further held that one did not have to be present at the time of a terrorist attack upon a third person to recover for severe emotional injuries suffered as a result; thus, family members, although not present at the Beirut bombing, could recover for the emotional injuries they suffered as a result of that attack. Murphy v. Islamic Republic of Iran, 740 F.Supp.2d 51, 74, 75.

**D.D.C.**2010. Subsec. (1) cit. in case quot. in sup. Father of American military serviceman killed in the bombing of a U.S. military residence in Saudi Arabia sued the Islamic Republic of Iran and its agencies or instrumentalities under the new state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act (FSIA), seeking punitive damages that were denied him in his prior action against defendants under the old exception. Entering a default judgment against defendants, this court held that, although plaintiff in this case did little more than allege that his son died and that defendants were responsible for his death, plaintiff's prior action against defendants, in which defendants were found liable for intentional infliction of emotional distress under Missouri

law, provided an obvious theory of recovery here under the new exception to the FSIA; thus, defendants were also liable to plaintiff in this action on the theory that one who by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to another was subject to liability for such emotional distress. Rimkus v. Islamic Republic of Iran, 750 F.Supp.2d 163, 184.

**D.D.C.** 2010. Subsec. (1) quot. in case quot. in sup., subsecs. (2)(a)-(2)(b) quot. in sup. Three airmen, along with one airman's mother, brought suit under the state-sponsored-terrorism exception to the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran and others, alleging that defendants provided material support and assistance to the terrorist organization responsible for the bombing of the Khobar Towers U.S. military housing complex, in which 19 serviceman were killed and hundreds injured, including plaintiffs. This court found for plaintiffs and awarded damages, holding, among other things, that all four plaintiffs could rely on theories of intentional infliction of emotional distress to recover. The court reasoned that defendants, in working with terrorist organization to plan and execute the attack, sought to cause severe emotional distress to air force personnel living in the towers, and airmen plaintiffs were certainly afflicted with such distress; as to mother, while the tort generally required that a family member not herself injured be present in order to recover, FSIA courts had not strictly enforced this requirement in terrorism cases, which by their nature involved horrific and terrifying acts. Valencia v. Islamic Republic of Iran, 774 F.Supp.2d 1, 14.

**D.D.C.** 2010. Subsec. (1) quot. in sup., subsec. (2)(a) cit. in sup., caveat quot. in sup. In consolidated actions, survivors of a terrorist truck bombing and relatives and estates of victims killed in the bombing sued Islamic Republic of Iran and Iranian Ministry of Information and Security, alleging that defendants provided operational control over and financial and technical assistance to Iranian agents of the terrorist organization that constructed, deployed, and exploded the bomb. This court entered a default judgment against defendants and, after a nonjury trial, awarded plaintiffs damages, holding, among other things, that defendants were liable to survivors and their immediate family members for intentional infliction of emotional distress; acts of terrorism were by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, and plaintiffs' assertions that they did, in fact, suffer severe emotional injury from the blast were uncontroverted. Valore v. Islamic Republic of Iran, 700 F.Supp.2d 52, 77-79.

**D.D.C.** 2009. Coms. (d) and (j) quot. in disc., com. (i) cit. in disc. Detainee sued police officers and others, after an alleged incident in which officers, acting on a mistaken belief that she had failed to pay a $60 bill at a local inn, accosted her in the early morning hours, transported her against her will in a police car to the inn, searched her and removed $60 from her pocket, and then released her without any formal proceedings, all the while ignoring her pleas for help or for an interpreter. Denying in part defendants' motion to dismiss, this court held that plaintiff adequately stated a claim for intentional infliction of emotional distress, citing her allegations that, as a result of the incident, she had developed an abiding fear of police officers, she had become afraid to venture outside at night, and she had experienced emotional distress so severe that she had had difficulty at work. Chen v. District of Columbia, 256 F.R.D. 267, 272, 273.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 275 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2009. Cit. in case quot. in ftn. (general cite). Relatives and estates of two deceased United States citizens sued Syrian Arab Republic and others for acts that supported and facilitated the kidnapping, torture, and murder of decedents. This court denied defendants' motion to vacate a default judgment it had entered against defendant under the Foreign Sovereign Immunities Act (FSIA). The court noted that, under the FSIA, state law no longer controlled the nature of the liability and damages that could be sought when United States citizens who were victims of state-sponsored terrorism sued a responsible foreign state, because Congress had provided the "specific source of law" for recovery, and that federal courts looked to the Restatement Second of Torts, and not state law, to provide content to Congress's express intentions. The court cited a case accepting the Restatement Second of Torts as delineating the controlling substantive law for intentional infliction of emotional distress as a proxy for state common law. Gates v. Syrian Arab Republic, 646 F.Supp.2d 79, 82.

**D.D.C.**2009. Com. (d) quot. in disc. and sup. and quot. in ftn., com. (f) cit. in sup., com. (i) cit. in disc., com. (j) quot. in sup. and in ftn. Arrestee brought, inter alia, claim for intentional infliction of emotional distress (IIED) against city, asserting that she was unlawfully arrested and detained overnight for allegedly entering city's transit system without paying. This court granted judgment as a matter of law for city, holding that police officers' alleged actions in confining plaintiff for several hours in a cell at a hospital with a man dressed as a woman and taking no corrective action even after being informed of the situation; making inappropriate, lewd, and sexual remarks about her and to her; and transporting her in an "intentionally reckless" manner in the back of a police vehicle did not constitute sufficiently extreme and outrageous conduct to support her IIED claim as a matter of District of Columbia law. Halcomb v. Woods, 610 F.Supp.2d 77, 80, 81, 83-85.

**D.D.C.**2009. Cit. in disc. In 20 consolidated cases involving more than 1,000 individual plaintiffs, victims of terrorist attacks sued the Islamic Republic of Iran under the state-sponsor-of-terrorism-exception to the Foreign Sovereign Immunities Act, alleging that Iran provided material support to the terrorist organizations that perpetrated the attacks. After Congress repealed the exception to sovereign immunity under the Act and replaced that provision with a new statute that, among other things, made punitive damages available to plaintiffs in such actions, this court held, inter alia, that, in analyzing the new statute, it would rely on well-established principles of law, such as those found in the Restatement Second of Torts, like § 46, rather than on "federal common law." In re Islamic Republic of Iran Terrorism Litigation, 659 F.Supp.2d 31, 60, 61.

**D.D.C.**2008. Quot. in sup. Survivors of an Israeli citizen assassinated in New York City, together with two individuals wounded after the attack, sued the Islamic Republic of Iran and its Ministry of Information and Security under the terrorist exception to the Foreign Sovereign Immunities Act, alleging that defendants provided material support and assistance to the terrorist organization that carried out the bombing. This court entered a default judgment against defendants, holding, inter alia, that plaintiffs had standing to recover for intentional infliction of emotional distress under Restatement § 46(2); decedent's wife was present at the time of the assassination, and plaintiffs who were not present had standing by virtue of the fact that terrorist attacks were directed

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 276 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

both at victims and at victims' families. In addition, plaintiffs satisfied the elements of the claim, including suffering severe emotional distress proximately caused by defendants' actions. Acosta v. The Islamic Republic of Iran, 574 F.Supp.2d 15, 28.

**D.D.C.**2008. Cit. in case quot. in disc. Widow, along with other family members, brought claims for intentional infliction of emotional distress (IIED) under the state-sponsored terrorism exception of the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and its intelligence agency in connection with defendants' involvement in the assassination of her husband, the former Prime Minister of Iran. This court, after entering a default judgment against defendants, and holding a trial on damages, here found, inter alia, that defendants' assassination of decedent was an outrageous act that, as a terrorist attack, was intended to cause emotional distress to widow, and did cause such severe distress, as evidenced by widow's wearing of black ever since decedent's death in 1991 and by her intention not to remarry or have another relationship. Decedent's son's IIED claim failed, however, for lack of severe distress, because he testified that his father died when he was young and that he had no memory of his father; decedent's stepdaughter's claim also failed, because she was not a "direct victim" for purposes of the claim, having not been adopted by decedent when no legal barrier prevented him from doing so. Bakhtiar v. Islamic Republic of Iran, 571 F.Supp.2d 27, 36.

**D.D.C.**2008. Cit. in sup. Mother and siblings of an American victim of a suicide bombing in Israel brought a claim for intentional infliction of emotional distress (IIED) against the Islamic Republic of Iran and the Iranian Ministry of Information and Security under the terrorist exception to the Foreign Sovereign Immunities Act, alleging that defendants provided material support and assistance to the terrorist organization that carried out the bombing. This court entered a default judgment against defendants, holding, inter alia, that, under Ohio and Virginia law, defendants were liable for IIED on a theory of vicarious liability. The court reasoned that defendants' conduct was extreme and outrageous, plaintiffs suffered severe emotional distress as a result of decedent's tragic and untimely death, and defendants' actions proximately caused decedent's death and the subsequent emotional distress experienced by plaintiffs. Beer v. Islamic Republic of Iran, 574 F.Supp.2d 1, 12.

**D.D.C.**2008. Subsec. (d) quot. in sup. Apartment resident involved in altercation with her neighbor sued police officer and others, alleging that responding officer used excessive force to subdue and detain her without legal basis. Denying defendants' motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress, this court held that the determination of whether officer's conduct was extreme or outrageous belonged to a jury. The court noted that questions of fact remained as to whether officer had been informed by the crowd that plaintiff had a knife, whether he forced her to the ground after having been informed that it was neighbor, and not she, who had the knife, whether he threatened her with jail, and whether he threatened to have her children taken by child protective services. Cotton v. District of Columbia, 541 F.Supp.2d 195, 206.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 277 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2008. Com. (d) quot. in case quot. in sup. Terminated employee who was of Lebanese national origin and had pro-Zionist beliefs sued former employer, alleging that defendant's actions in failing to promote him and in terminating him were motivated by anti-Semitism and racism. Granting summary judgment for defendant on plaintiff's claim for intentional infliction of emotional distress, this court held, inter alia, that plaintiff failed to present any evidence in support of his allegations that defendant's actions were deceptive, atrocious, and uncivilized; the undisputed evidence showed that plaintiff was not qualified for and did not apply for the position that he believed he should have been promoted to, and that he was terminated for admittedly leaving his work site without permission and starting a fight with a co-worker. Elhusseini v. Compass Group USA, Inc., 578 F.Supp.2d 6, 23.

**D.D.C.**2008. Cit. in case cit. in sup. Four siblings of airline passenger killed in the mid-air Lockerbie terrorist bombing sued Libya and a high-ranking member of the Libyan External Security Organization who was convicted for his role in the bombing. This court, inter alia, denied member's motion to dismiss plaintiffs' claims for their own injuries, brought under the Flatow Amendment, including a claim for intentional infliction of emotional distress (IIED). The court held that, as the death of a loved one due to terrorism or airplane sabotage could cause mental suffering and anguish for several United States nationals—and not just the victim's legal representative—the Flatow Amendment necessarily contemplated actions by more than just a decedent's legal representative; claims under the Amendment for such suffering, i.e., solatium, followed Restatement Second of Torts § 46's articulation of IIED, which permitted recovery for all immediate family members meeting its criteria. Fisher v. Great Socialist People's Libyan Arab Jamahiriya, 541 F.Supp.2d 46, 55.

**D.D.C.**2008. Cit. in case cit. in ftn. (general cite). Relatives of United States civilian contractors who were beheaded by a terrorist group in Iraq sued the Syrian Arab Republic for damages under the Foreign Sovereign Immunities Act (FSIA) and state law, alleging that Syria provided material support and resources to the terrorist group. After Syria failed to appear, this court entered a default judgment in favor of plaintiffs under recent amendments to the FSIA, but dismissed plaintiffs' state-law claims, holding, inter alia, that, under the amendments, state law no longer controlled the nature of the liability and damages that could be sought when a foreign government was sued under the FSIA. The court additionally noted that federal courts looked to the Restatement Second of Torts, and not state law, to provide content to Congress's express intentions, citing as an example a case that accepted the Restatement as delineating the controlling substantive law for intentional infliction of emotional distress as a proxy for state common law. Gates v. Syrian Arab Republic, 580 F.Supp.2d 53, 66.

**D.D.C.**2008. Com. (d) cit. in case quot. in sup. Police officer brought civil-rights and other claims against police captain and District of Columbia after captain arrested officer for allegedly making threats against another officer while seeking medical attention due to stress caused by his interactions with other officer. This court granted summary judgment for defendants, holding, inter alia, that captain's decision to seek a warrant against plaintiff was not unreasonable or lacking in probable cause, and that captain's actions in arresting plaintiff on Christmas Day, detaining

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 278 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

him overnight, and subjecting him to a criminal trial did not approach the requisite standard of "outrageousness" necessary to state a claim for intentional infliction of emotional distress. Jackson v. District of Columbia, 541 F.Supp.2d 334, 344.

**D.D.C.**2008. Adopted in case cit. in sup. Parents and siblings of an American victim who was injured in a suicide bombing in Israel brought a claim for intentional infliction of emotional distress (IIED) under the terrorist exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and its intelligence agency, alleging that defendants provided material support and assistance to the terrorist organization that carried out the bombing. This court entered a default judgment against defendants, holding that no presence requirement was necessary for an IIED claim arising from a terrorist attack, and thus plaintiffs, who were not present at the attack, had standing to seek recovery. The court further held that defendants' actions proximately caused the severe emotional distress experienced by plaintiffs, who endured and would continue to endure a level of emotional distress that far surpassed the level of distress a reasonable person was expected to suffer. Kirschenbaum v. Islamic Republic of Iran, 572 F.Supp.2d 200, 211.

**D.D.C.**2008. Com. (d) quot. in case cit. in sup. Terminated 54-year-old female employee brought state and federal discrimination claims against employer, as well as a common-law claim for intentional infliction of emotional distress (IIED). Dismissing the IIED claim, this court held, inter alia, that plaintiff failed to plead facts sufficient to amount to extreme and outrageous conduct, or to support a reasonable inference of severe emotional distress; the sexist insults alleged and the differential treatment as a manager plaintiff perceived might have been actionable under other theories, but did not reach the high bar set by the common law for this tort. Marshall v. Honeywell Technology Solutions, Inc., 536 F.Supp.2d 59, 70.

**D.D.C.**2008. Com. (d) quot. in case quot. in disc. Terminated employee of federally and municipally funded nonprofit organization sued former employer, alleging retaliation, breach-of-contract, whistleblower, and intentional-infliction-of-emotional-distress (IIED) claims. This court granted summary judgment for defendant as to the IIED claim, holding that it was not enough for plaintiff to assert that an alleged manager had responded with "F—k you [plaintiff's name]" when approached about the negative effects that that manager's performance was having on the organization's mentally retarded clients. The court reasoned that such a retort was a "mere insult" between co-workers that exemplified intra-workplace mistreatment only, and, as a matter of law, was not the "truly outrageous" conduct required of an IIED claim. Martin v. Arc of Dist. of Columbia, 541 F.Supp.2d 77, 86.

**D.D.C.**2008. Cit. in sup., subsec. (2) cit. in sup. Former crewmembers of a United States vessel who were kidnapped, imprisoned, and tortured by North Korean agents, and widow of one such crewmember who was now deceased, sued North Korea pursuant to the "terrorism exception" of the Foreign Sovereign Immunities Act. This court entered a default against defendant based on its failure to answer or respond to the complaint and awarded damages to plaintiffs under the laws of California, Illinois, Virginia, and Pennsylvania. The court noted that, while Pennsylvania had not expressly recognized the tort of intentional infliction of emotional distress, asserted here by

plaintiffs, its courts had cited the Restatement Second of Torts § 46(2) for the minimum elements necessary to sustain such a cause of action. The court stated that all acts of terrorism were by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience. Massie v. Government of Democratic People's Republic of Korea, 592 F.Supp.2d 57, 76.

**D.D.C.**2008. Cit. in sup. Father of an American serviceman killed in a terrorist bombing of a U.S. military facility in Saudi Arabia brought a claim for intentional infliction of emotional distress (IIED) against the Islamic Republic of Iran and certain of its agencies under the terrorist exception to the Foreign Sovereign Immunities Act, alleging that defendants provided material support and assistance to the terrorist organization that carried out the bombing. This court entered a default judgment against defendants, holding, inter alia, that, under Missouri law, the elements of plaintiff's claim for IIED were met. The court reasoned that defendants' conduct was intentional, extreme, and outrageous, and was the proximate cause of plaintiff's emotional distress, and that plaintiff suffered—and would likely continue to suffer—severe emotional distress as a result of decedent's tragic and untimely death. Rimkus v. Islamic Republic of Iran, 575 F.Supp.2d 181, 197.

**D.D.C.**2008. Com. (d) quot. in sup. Mother and siblings of a U.S. citizen residing in Israel who was abducted and executed by a terrorist organization brought a claim for intentional infliction of emotional distress (IIED) under the terrorist exception to the Foreign Sovereign Immunities Act against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, alleging that defendants provided material support and assistance to the terrorist organization. This court entered a default judgment against defendants, holding that plaintiffs established the elements of their claim for IIED. The court reasoned that terrorists perpetrated acts that were deliberately outrageous, that a terrorist attack—by its nature—was directed not only at the victims but also at the victims' families, and that decedent's abduction and execution caused plaintiffs severe emotional distress. Wachsman ex rel. Wachsman v. Islamic Republic of Iran, 603 F.Supp.2d 148, 156-157.

**D.D.C.**2008. Com. (d) quot. in sup. Estate and relatives of United States citizen who was abducted and executed by terrorists while he was residing in Israel sued Islamic Republic of Iran and Iranian Ministry of Information and Security for allegedly providing training and support to the terrorists. Denying without prejudice plaintiffs' motion for a default judgment against defendants after defendants failed to appear, this court held, inter alia, that plaintiffs' claim for intentional infliction of emotional distress failed because, while plaintiffs sufficiently alleged that the terrorists engaged in extreme and outrageous acts that were intentional or reckless, their evidence of severe emotional distress was deficient and violated the court's directives. Wachsman ex rel. Wachsman v. Islamic Republic of Iran, 537 F.Supp.2d 85, 98.

**D.D.C.**2007. Cit. in sup. and disc., adopted in cases cit. in sup., cit. in cases cit. in sup. and cit. but dist., subsecs. (1) and (2) and com. (*l*) cit. in disc., subsec. (2)(a) quot. in disc. Children of Americans allegedly held as hostages and tortured by the former Iraqi regime in the 1990s sued Iraq for intentional infliction of emotional distress, seeking damages for the emotional distress they allegedly suffered during their fathers' captivity. Denying defendant's motion to dismiss, this

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 280 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

court held, inter alia, that, under the common law of plaintiffs' domiciles of Florida and Oklahoma, plaintiffs, as former hostages' close relatives, stated a cognizable claim for intentional infliction of emotional distress, even though they were not present when the alleged outrageous acts occurred. Beaty v. Republic of Iraq, 480 F.Supp.2d 60, 93-99.

**D.D.C.**2007. Cit. in sup., subsecs. (1) and (2) cit. in case cit. in sup., com. (*l*) cit. and quot. in sup. Parents, sister, and grandmother of American student who was killed in a terrorist attack in Jerusalem sued Islamic Republic of Iran and Iranian Ministry of Intelligence and Security for allegedly providing material support and assistance to the terrorist organization that orchestrated and carried out the attack. Granting a default judgment for plaintiffs, this court held, inter alia, that defendants were liable to parents and sister for intentional infliction of emotional distress. The court, however, dismissed grandmother's distress claim, reasoning that, under California law, standing for intentional infliction of emotional distress was limited to a victim's near relatives, or immediate family. Bennett v. Islamic Republic of Iran, 507 F.Supp.2d 117, 129.

**D.D.C.**2007. Com. (d) quot. in case quot. in sup., quot. in ftn. Arrestee who was taken into custody and held overnight for violating a restraining order of which he claimed he was unaware at the time of the arrest sued university police officer and officer's employer for, in part, intentional infliction of emotional distress. This court dismissed the claim, since plaintiff conceded that the arrest might not have caused him the kind of severe emotional distress required to make a case for emotional distress. The court noted that liability did not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, and recovery was not permitted merely because conduct caused mental distress. Black v. District of Columbia, 480 F.Supp.2d 136, 140.

**D.D.C.**2007. Com. (d) quot. in case quot. in sup. Pet owners whose pets were temporarily seized by the local humane society brought a common-law claim for intentional infliction of emotional distress, as part of their § 1983 action alleging the unconstitutionality of the District of Columbia's animal-protection statute, against humane society, its employees, and the District of Columbia. Granting in part defendants' motion to dismiss, this court held, inter alia, that the temporary seizure of an animal, which was conducted in a relatively benign manner, did not constitute the extreme and outrageous conduct necessary for an intentional-infliction-of-emotional-distress claim. Daskalea v. Washington Humane Society, 480 F.Supp.2d 16, 39.

**D.D.C.**2007. Cit. in case cit. in disc. Family members of victims of a terrorist bombing of an airplane over Lockerbie, Scotland, brought suit against, among others, Libyan head of airline security. Denying in part defendant's motion to dismiss, this court held, inter alia, that, even though plaintiffs were not decedents' legal representatives, they had standing under both the Anti-Terrorism Act and the Flatow Amendment to pursue claims against defendant for the injuries that they themselves suffered as a result of the bombing. The court noted that claims under the Flatow Amendment for solatium, i.e., mental suffering and anguish caused by the death of a loved one, followed the Restatement Second of Torts § 46 articulation of intentional infliction of emotional distress, which permitted recovery for all immediate family members meeting the criteria. Hurst v. Socialist People's Libyan Arab Jamahiriya, 474 F.Supp.2d 19, 31.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 281 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2007. Com. (d) quot. in cases quot. in disc.; com. (f) quot. in case quot. in sup. (cit. as § 46); com. (j) quot. in sup. Terminated university librarian sued his supervisor and university, alleging that after returning from a period of medical leave for depression and requesting certain accommodations for his disability, defendants took a series of illegal and retaliatory actions against him. This court, inter alia, denied supervisor's motion to dismiss plaintiff's claim for intentional infliction of emotional distress. The court held that, while plaintiff's allegations that supervisor harassed him with intimidating and inappropriate questions on his first day back, retroactively lowered his performance rating, and tried to get him to resign would not of themselves have constituted extreme and outrageous conduct, plaintiff also alleged, sufficiently to survive dismissal, that supervisor acted with full knowledge of plaintiff's fragile mental state and serious mental-health condition. Langer v. George Washington University, 498 F.Supp.2d 196, 200, 201.

**D.D.C.**2007. Subsec. (2)(a) quot. in sup. and applied in case cit. in sup., com. (*l*) cit. in sup. Grandson of former chief of Iranian armed forces under the Shah sued Islamic Republic of Iran and others, alleging that agents of the Republic carried out the murder of his grandfather on a Paris street. This court reluctantly dismissed plaintiff's complaint, holding, inter alia, that his claim for intentional infliction of emotional distress failed for lack of standing. The court explained that, under controlling California law, standing to bring a claim against a defendant resulting from the death of an individual was conferred on those who were entitled to inherit property of the deceased under California's probate code, and grandson, whose father was still alive, was not so entitled; similarly, under this court's common-law approach to this tort, a member of a victim's "immediate family" could recover for distress caused by a terrorist act at which he was not present, but not a grandchild. Oveissi v. Islamic Republic of Iran, 498 F.Supp.2d 268, 282, 283.

**D.D.C.**2007. Cit. in disc. and sup., adopted in case cit. in sup., caveat and com. (*l*) cit. in sup., subsecs. (1) and (2) cit. in disc. and sup. and in case cit. in sup. After this court found the Islamic Republic of Iran liable for damages arising from its involvement in the 1983 terrorist bombing of the United States Marine barracks in Beirut, Lebanon, that killed 241 American servicemen, it here assessed, among other things, the validity of 753 plaintiffs' consolidated claims for intentional infliction of emotional distress (IIED). The court held, inter alia, that those plaintiffs who were near relatives of victims and domiciled in states that did not require a plaintiff to be present when the tortfeasor's conduct was directed at a third party had standing to assert their IIED claims; additionally, those domiciled in states that had not addressed the issue of presence, as well as those domiciled in states that allowed plaintiffs to recover only when the conduct was "directed at" the third-party plaintiffs themselves, had standing, since terrorism, by its nature, was directed not only at the victims but at the victims' families. Peterson v. Islamic Republic of Iran, 515 F.Supp.2d 25, 41, 42, 45, 47.

**D.D.C.**2006. Com. (d) quot. in sup. Executive director of nonprofit chess organization brought various pro se federal civil-rights claims and an additional common-law claim for intentional infliction of emotional distress against numerous organizations and individuals involved in sponsoring student chess tournaments, several of whom allegedly devised a racially motivated

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 282 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

scheme to deny minority children the opportunity to win chess scholarships. This court granted defendants' motions to dismiss, holding, inter alia, that the retaliatory conduct alleged by plaintiff in support of his emotional-distress claim, including an assertion that certain of the defendants caused him to be falsely arrested, even if true, was not sufficiently outrageous and extreme to permit recovery under this tort. Bennett v. U.S. Chess Federation, 468 F.Supp.2d 79, 90.

**D.D.C.**2006. Com. (d) cit. in ftn. in sup. After he was arrested by a university police officer for violating a restraining order, arrestee sued officer, university, and the District of Columbia, alleging tortious conduct and constitutional violations arising out of the arrest. This court granted defendants' motion to dismiss, holding, inter alia, that plaintiff's claim for intentional infliction of emotion distress could not be sustained, because officer's alleged actions in holding plaintiff overnight and refusing to investigate plaintiff's claim that he was unaware of the restraining order was not conduct so outrageous and extreme that it went beyond all bounds of decency so as to be regarded as atrocious in a civilized community. Black v. District of Columbia, 466 F.Supp.2d 177, 180.

**D.D.C.**2006. Adopted in case cit. in disc., subsec. (1) and coms. (d) and (i) quot. in case quot. in disc. United States serviceman who was injured in a terrorist bombing while serving in Saudi Arabia brought action with his parents under the Foreign Sovereign Immunities Act against the Islamic Republic of Iran, an Iranian official, and an Iranian military entity, alleging that defendants were liable for damages from the attack. Entering a default judgment for plaintiffs, this court held, inter alia, that the elements of serviceman's claim for intentional infliction of emotional distress under Florida law were satisfied; defendants' conduct in providing material support and facilitation to the terrorist organization in order to bring about the bombing was intended to cause severe emotional distress, and was also an extreme and outrageous act beyond all bounds of civil decency. Blais v. Islamic Republic of Iran, 459 F.Supp.2d 40, 56.

**D.D.C.**2006. Cit. in sup., cit. in ftn., adopted in cases cit. in disc., subsec. (1) quot. in case quot. in sup., subsec. (2) cit. in disc., coms. (d) and (i) quot. in case quot. in disc., com. (*l*) cit. and quot. in sup. and in disc., caveat cit. in disc. and in ftn. Family members and estates of servicemen killed in a 1996 bombing on a United States military base in Saudi Arabia brought suit for, in part, intentional infliction of emotional distress against the Islamic Republic of Iran and various Iranian organizations, alleging that defendants were liable for damages due to their provision of material and support to the terrorist organization that allegedly orchestrated and carried out the bombing. Entering judgment for plaintiffs, this court held, inter alia, that, under the laws of the applicable states, there was sufficient evidence to support the conclusion that defendants' extreme and outrageous conduct intentionally caused severe emotional distress to plaintiffs. Estate of Heiser v. Islamic Republic of Iran, 466 F.Supp.2d 229, 272, 305, 319, 328, 329, 333, 341, 344-346, 349, 352, 354, 355.

**D.D.C.**2006. Com. (d) quot. in case cit. in sup. Husband, parents, and estate of United States citizen killed in a suicide bombing in Israel sued the Islamic Republic of Iran and its Ministry of Information and Security under the terrorism exception to the Foreign Sovereign Immunities

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 283 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Act for providing material assistance to the terrorist organization that orchestrated the bombing. Entering judgment for plaintiffs, this court held, inter alia, that each element of a claim for intentional infliction of emotional distress was satisfied. First, defendants provided material support to organization with the intent that it would carry out attacks that would cause severe emotional distress; second, material support of terrorism was extreme and outrageous and went beyond all bounds of decency; third, defendants' actions proximately caused the death and plaintiffs' subsequent emotional distress; and, fourth, the distress was so severe that no reasonable person would be expected to endure it. Greenbaum v. Islamic Republic of Iran, 451 F.Supp.2d 90, 104.

**D.D.C.**2006. Com. (d) quot. in sup. Homeowner who was arrested and detained for two days on felony assault charges for allegedly attempting to hit her neighbor with a copper pipe brought § 1983 civil-rights action and various civil-tort claims against city and several individual city police officers, after she was acquitted of the charges in a bench trial. Granting summary judgment for defendants, this court held, inter alia, that plaintiff's claim for intentional infliction of emotional distress failed because the arrest, incarceration, and initiating of criminal proceedings against plaintiff was not conduct that rose to the level of outrageousness as to be beyond all possible bounds of decency as required by this tort; additionally, plaintiff submitted little more than conclusory statements in support of her assertion that she suffered the required element of "severe emotional distress." Lyles v. Micenko, 468 F.Supp.2d 68, 75.

**D.D.C.**2006. Com. (i) quot. in case quot. in sup. Same-sex couple who were photographed at their wedding while kissing sued nonprofit organization and others for damages and an injunction to prevent further use of this image in an advertising campaign that challenged various public policy positions taken by a nonparty. This court, inter alia, dismissed plaintiffs' claim for intentional infliction of emotional distress, holding that the conduct alleged did not come close to demonstrating the outrageous conduct necessary to establish the claim. The court reasoned that plaintiffs simply alleged that defendants used plaintiffs' photograph, which was taken by a newspaper photographer in a public place, in an advertisement designed to expose third party's alleged views on the military and same-sex marriage. Raymen v. United Senior Ass'n, Inc., 409 F.Supp.2d 15, 26.

**D.D.C.**2005. Quot. in sup., com. (j) quot. in case quot. in disc. Following the filing of an amended complaint and supplemental brief by injured victims and family members of deceased victims of the1983 bombing of the American embassy in Beirut, Lebanon, against the Islamic Republic of Iran and its Ministry of Intelligence and Security for their alleged involvement in the bombing, this court entered judgment for plaintiffs and awarded them compensatory damages. Stating that plaintiffs' claims were governed by the laws of their separate domiciles, the court found, inter alia, that estate of deceased victim who had been domiciled in Florida stated a valid claim of intentional infliction of emotional distress under Florida law, and that claims of decedents' survivors under Virginia law would be treated as claims for compensatory damages under the wrongful-death statute and not as claims for intentional infliction of emotional distress. Dammarell v. Islamic Republic of Iran, 404 F.Supp.2d 261, 285, 297.

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 284 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2005. Com. (d) cit. in case quot. in disc. Former municipal employee brought several claims against municipality after he was suspended following an inquiry into his allegedly improper and illegal conduct as an alcoholic-beverage-regulation investigator. This court dismissed plaintiff's claim for intentional infliction of emotional distress, holding, inter alia, that his allegations of an investigation into his conduct and the possible public disclosure of information in his personnel file, even if true, did not describe behavior that was sufficiently extreme and outrageous to sustain such a claim. Evans v. District of Columbia, 391 F.Supp.2d 160, 170.

**D.D.C.**2005. Subsec. (1) adopted in case cit. in disc.; subsec. (2) cit. and quot. but not fol., cit. in ftn., and cit. in case cit. in disc. Estate and surviving family members of serviceman killed in the 1983 Marine barracks bombing in Beirut, Lebanon, sued the Islamic Republic of Iran, and others. While entering judgment for plaintiffs, this court held that, under the restrictive caselaw of Kentucky, plaintiffs could not recover damages for intentional infliction of emotional distress (IIED) under a solatium theory. The court reasoned that, because the conduct at issue was directed at a third person (decedent) and not plaintiffs, the only conceivable cause of action that plaintiffs could have had for IIED would have been under Restatement Second of Torts § 46(2), which had not been adopted by Kentucky courts, and, in any event, would have required plaintiffs to have observed the bombing. Holland v. Islamic Republic of Iran, 496 F.Supp.2d 1, 30.

**D.D.C.**2005. Com. (d) quot. in disc. Townhome resident brought suit for, in part, intentional infliction of emotional distress against her adjoining neighbors, alleging that defendants' initiation of a complaint with the police that led to plaintiff's arrest, incarceration, and subsequent criminal trial based on false allegations that plaintiff attempted to hit defendant wife with a copper pipe caused plaintiff severe emotional distress. Granting defendants' motion for summary judgment, this court held, inter alia, that plaintiff failed to establish that defendants' alleged conduct rose to the requisite level of outrageousness or that plaintiff suffered the necessary severe emotional distress to sustain her claim for intentional infliction of emotional distress. Lyles v. Micenko, 404 F.Supp.2d 182, 187.

**D.D.C.**2005. Subsec. (1) quot. in sup. Two American citizens, one presently residing in Texas and the other in California, sued a foreign sovereign that had been designated as a "state sponsor of terrorism," in part for intentional infliction of emotional distress during plaintiffs' detention there in 1980. Entering a default judgment in favor of plaintiffs, this court held, inter alia, that the law of both Texas and California recognized the tort of intentional infliction of emotional distress and controlled this case; because the foreign sovereign was not immune from suit under the Foreign Sovereign Immunities Act, and, by its extreme and outrageous conduct toward plaintiffs it had committed this tort, it was responsible for its misconduct. Price v. Socialist People's Libyan Arab Jamahiriya, 384 F.Supp.2d 120, 134.

**D.D.C.**2005. Com. (d) quot. in sup., quot. in ftn., and quot. in case quot. in sup.; com. (h) quot. in case quot. in sup. After government contractor's computer technician was killed in Colombia and delivery of his remains was delayed, his parents sued contractor for intentional infliction of

emotional distress, inter alia, alleging that defendant intentionally withheld information regarding the circumstances of technician's death. This court dismissed the case, holding that a delay of four business days in sending the remains was not outrageous. Also, defendant's withdrawal of information was not, as a matter of law, extreme or outrageous conduct, since there was no evidence that defendant withheld information from plaintiffs for any reason other than a clearly legitimate business reason—the desire to avoid violating its contractual duties. Ross v. Dyncorp., 362 F.Supp.2d 344, 358, 359, 362.

**D.D.C.**2005. Subsec. (2)(a) quot. in ftn. Widow of a United States Army Sergeant who was killed in the bombing of the United States Embassy in Lebanon in 1983 sued Islamic Republic of Iran, certain of its related organizations and officials, and a terrorist group, seeking compensatory and punitive damages for wrongful death, solatium, and intentional infliction of emotional distress. This court entered judgment for plaintiff, holding, inter alia, that plaintiff established considerable loss as a direct result of defendants' extreme and outrageous conduct. Sergeant's killing resulted in severe emotional trauma to plaintiff and her daughter, and defendants intentionally caused those injuries, in fact and proximately, by planning, supplying, and supporting embassy bombing in which sergeant was killed. Salazar v. Islamic Republic of Iran, 370 F.Supp.2d 105, 115.

**D.D.C.**2004. Cit. in case quot. in disc. Physician sued former employer and others for, inter alia, intentional infliction of emotional distress. This court granted in part defendants' motion to dismiss, holding that claim for intentional infliction of emotional distress failed because there was no extreme and outrageous conduct. At best, plaintiff could prove that defendants knew that he needed tail coverage to cover risk of injurious acts predating employment, intentionally or negligently failed to secure coverage or notify him that he had no such coverage, and then covered up those failures. Fraud, alone, was not enough to state claim for intentional infliction of emotional distress. Hayes v. Chartered Health Plan, 360 F.Supp.2d 84, 88.

**D.D.C.**2003. Cit. in sup., subsecs. (1) and (2) cit. in sup., subsec. (2)(a) quot. in sup., com. (l) quot. in sup. Former prisoners of war during 1991 Gulf War and their family members sued Iraq, Saddam Hussein, and Iraqi Intelligence Service under Foreign Sovereign Immunities Act, alleging personal injuries and intentional infliction of emotional distress. This court entered judgment for plaintiffs and awarded compensatory and punitive damages, holding that defendants were liable for injuries they intentionally caused when they assaulted and battered POWs and intentionally inflicted emotional distress on POWs and their families. Defendants engaged in outrageous conduct through physical and mental torture, denial of requests to notify families, the forced making of propaganda tapes by POWs, and refusal to permit inspection of prisoners' conditions. When defendants tortured POWs, they intended to and did cause emotional distress to POWs' immediate family members. Acree v. Republic of Iraq, 271 F.Supp.2d 179, 216, 217, vacated 370 F.3d 41 (D.C.Cir.2004).

**D.D.C.**2003. Subsec. (2)(a) cit. in case quot. in sup. Victims of September 11, 2001 terrorist attacks and their families sued nearly 200 entities or persons, alleging that defendants provided material support, aided and abetted, or conspired with terrorists who perpetrated attacks. Plaintiffs also stated claims for, inter alia, intentional infliction of emotional distress. This court denied in part

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 286 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

defendants' motion to dismiss, holding, inter alia, that since plaintiffs stated viable claims for aiding and abetting against Islamic foundation and its Oregon branch, plaintiffs also stated common-law claims for emotional distress. The court stated that terrorist attack on civilians was intended to cause emotional distress to victims' families, and it did not matter that family members were not physically present. Burnett v. Al Baraka Inv. and Development Corp., 274 F.Supp.2d 86, 108.

**D.D.C.**2003. Com. (d) quot. in case quot. in sup. Plaintiff, who was arrested for murder after he was falsely identified as man withdrawing money from same ATM used by victim on night of murder, but was released when it became apparent that time indicated by bank's camera was inaccurate, sued District of Columbia and police detective responsible for investigation and arrest for intentional infliction of emotional distress, inter alia. This court granted in part defendants' motion for summary judgment, holding, inter alia, that while detective might have been negligent in failing to double-check information before completing arrest and filling out detention affidavit, his failure to verify a fact did not equate to a reckless or deliberate lie about existence of that fact. Arrest supported by this sort of careless error was not sufficiently outrageous to support emotional-distress claim. Liser v. Smith, 254 F.Supp.2d 89, 106.

**D.D.C.**2003. Cit. in sup. Abductee who was kidnapped in Beirut and held for 65 days by members of Hizbollah, an Iranian-sponsored terrorist organization, brought suit under the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, asserting, in part, various common-law claims. Entering judgment for plaintiff, the court held that common-law claims could be asserted against state sponsors of terrorism under the FSIA, and that the evidence adduced at hearing clearly supported defendants' liability for, in part, battery, assault, false imprisonment, and intentional infliction of emotional distress. Regier v. Islamic Republic of Iran, 281 F.Supp.2d 87, 100.

**D.D.C.**2002. Quot. in sup. Family of Navy petty officer murdered during terrorist airline hijacking brought wrongful-death and survival action against Islamic Republic of Iran and Iranian intelligence service, seeking, in part, damages for loss of solatium. Entering judgment for plaintiffs, the court recognized a cause of action for loss of solatium under the federal common law by relying on the Restatement Second of Torts § 46, and held, inter alia, that plaintiffs were entitled to loss-of-solatium damages because they experienced grave emotional distress as a result of the terrorists' extreme and outrageous conduct. Stethem v. Islamic Republic of Iran, 201 F.Supp.2d 78, 89.

**D.D.C.**2002. Cit. and quot. in ftn. (Erron. cit. as § 3.) Longtime companion of CIA agent who was abducted in Lebanon and died in captivity brought suit under the Foreign Sovereign Immunities Act on behalf of decedent's estate, herself, and decedent's sister against the Islamic Republic of Iran for funding and directing terrorist acts against decedent, seeking, in part, damages for loss of solatium. Entering judgment for plaintiff, the court held, inter alia, that because defendant's conduct was patently outrageous and the emotional distress caused to plaintiff and decedent's sister was undeniable, plaintiff was entitled to damages for solatium. Surette v. Islamic Republic of Iran, 231 F.Supp.2d 260, 269, 270.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 287 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.D.C.**2002. Quot. in case quot. in disc. African-American employee who was a member of the Jehovah's Witness faith sued employer for intentional infliction of emotional distress, defamation, retaliation, and Title VII violations, alleging that she had been discriminated against and harassed by employer on the basis of her sex, race, and religion. This court dismissed the emotional-distress claim, holding, inter alia, that plaintiff's allegations that were not barred by the statute of limitations failed as a matter of law to support her emotional-distress claim. Employer's conduct of allowing a coemployee who had physically and verbally attacked plaintiff to return to work before her suspension expired, transferring plaintiff involuntarily to the day shift, and firing plaintiff was not outrageous. Thompson v. Jasas Corp., 212 F.Supp.2d 21, 27.

**D.D.C.**2001. Cit. and quot. in sup. Victim of kidnap and torture and his family brought suit under theory of respondeat superior against Islamic Republic of Iran and the Iranian Ministry of Information and Security, which funded and controlled fundamentalist group responsible for the kidnapping. The court entered default judgment in favor of plaintiffs, holding, inter alia, that plaintiff and his siblings had claim for intentional infliction of emotional distress, but his nieces and nephews did not. Jenco v. Islamic Republic of Iran, 154 F.Supp.2d 27, 35, judgment affirmed 315 F.3d 325 (C.A.D.C.2003). See above case.

**D.D.C.**2001. Quot. in sup. American university professor who was kidnapped in Lebanon and detained and tortured for six and one-half years sued the Islamic Republic of Iran, which financially supported and directed the terrorist organization that held plaintiff hostage. After defendant failed to respond, the district court entered a default judgment awarding plaintiff compensatory and punitive damages. Finding, inter alia, that plaintiff suffered severe emotional distress at the hands of his captors, and that the infliction of the distress was attributable to defendant, the court held defendant liable for intentional infliction of emotional distress. Sutherland v. Islamic Republic of Iran, 151 F.Supp.2d 27, 49, 50.

**D.D.C.**2001. Quot. in sup. After a United States Naval officer died in terrorist bomb explosion while on duty at the United States Embassy in Lebanon, the victim's family sued the Islamic Republic of Iran and an Iranian governmental agency for wrongful death. This court entered judgment for plaintiffs for compensatory and punitive damages, holding, inter alia, that the Foreign Sovereign Immunities Act entitled plaintiffs to monetary damages for solatium, or loss of the victim's society and companionship. The act of purposefully detonating a large explosive charge adjacent to an occupied building constituted extreme and outrageous conduct in any civilized society. Wagner v. Islamic Republic of Iran, 172 F.Supp.2d 128, 136.

**D.D.C.**2000. Cit. in case quot. in disc., cit. generally in case cit. in ftn. A source who was quoted in a magazine article sued the magazine, the magazine's owner, and the reporter for breach of contract and intentional infliction of emotional distress, among other claims, alleging that the reporter intentionally misrepresented himself, that he broke his promise of confidentiality, and that he falsely reported that the source had attempted to sell her story to a tabloid. This court granted defendants' motions to dismiss, holding, inter alia, that, although the reporter's conduct may have been contrary to journalistic standards and upsetting to sources like plaintiff, plaintiff had not pled

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 288 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

facts supporting the conclusion that the reporter's conduct was extreme and outrageous. Steele v. Isikoff, 130 F.Supp.2d 23, 36.

**D.D.C.**1997. Quot. in case quot. in disc. Former employees of the White House Travel Office sued aviation consulting and charter firm for intentional infliction of emotional distress and tortious interference with contract. Plaintiffs alleged that they were dismissed after defendant, in an attempt to win the Office's air-charter business, discredited plaintiffs by falsely accusing them of illegal activity and making these accusations known to top White House officials. Granting defendant's motion to dismiss, the court held that the alleged wrongdoing was not sufficiently extreme or outrageous as to give rise to a claim for intentional infliction of emotional distress; that there could be no liability for tortious interference with contract where plaintiffs were at-will employees; and that even a charge of intentional interference with prospective economic advantage would fail, as plaintiffs served at the pleasure of the President and the current administration. Dale v. Thomason, 962 F.Supp. 181, 184.

**D.D.C.**1997. Cit. in disc. A couple who had adopted a three-year-old Russian boy brought suit against the adoption agency and three of its employees for, in part, intentional infliction of emotional distress, after they discovered that the child suffered from one or more serious neurological and visual disorders that were irreversible. Granting defendants' motion for summary judgment, the court held, inter alia, that defendants were not liable for intentional infliction of emotional distress, since no motive was shown for defendants to have deliberately deceived plaintiffs as to the child's health, and no conduct was ascribed to them that in any respect resembled the "extreme or outrageous" conduct held necessary to prove the tort under District of Columbia law. Ferenc v. World Child, Inc., 977 F.Supp. 56, 60, affirmed 172 F.3d 919 (D.C.Cir.1998).

**D.D.C.**1997. Cit. in headnote, com. (h) cit. in disc. Widower whose wife, a longtime smoker, died from a stroke brought on by respiratory failure caused by emphysema sued cigarette manufacturer for, inter alia, intentional infliction of emotional distress, alleging that defendant deliberately manipulated the nicotine level in its cigarettes in order to profit from increased sales generated as a result of smokers' nicotine addiction. Plaintiff also sought recovery under a theory of strict products liability. Granting in part and denying in part defendant's motion to dismiss, the court held that, even if defendant's conduct was outrageous, plaintiff had failed to show that defendant acted with the intent to cause severe emotional distress to plaintiff and his late wife. However, the court could not say as a matter of law that cigarettes were not unreasonably dangerous, and questioned the precedential value of authority stating that cigarettes made with "good tobacco" were not inherently dangerous. Witherspoon v. Philip Morris Inc., 964 F.Supp. 455, 456, 462.

**D.D.C.**1997. Com. (d) quot. in case quot. in disc. Homeowners, their son, and daughter-in-law sued United States for violations of the Federal Tort Claims Act, alleging that agents of the U.S. Park Police committed the torts of negligence, negligent and intentional infliction of emotional distress, and trespass while executing a search warrant for plaintiffs' home. Entering judgment in part for plaintiffs, the court held that agents were negligent in conducting a second pat-down of daughter-in-law, damaging plaintiffs' personal property, and detaining son overnight on a weapons charge;

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 289 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

that plaintiffs' emotional trauma, which included recurrent nightmares and increased nervousness, was minimal and did not support a finding of negligent infliction of emotional distress; that the manner in which agents executed the search warrant was not so extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress; and that the existence of a valid search warrant was an absolute defense to an action for trespass. Wright v. U.S., 963 F.Supp. 7, 18.

**D.D.C.**1996. Quot. in case quot. in disc. In 1992, a college employee missed one month of work when she was unexpectedly hospitalized because of complications associated with her pregnancy. Two years later, after the employee told her supervisors that she was again expecting, she received a negative performance evaluation and she was fired. The supervisor had told her, "I need to know if you're going to be able to handle the stress of fall registration; if not, I need to get you out of here and get someone else in." The employee sued the college and the supervisor for negligent and intentional infliction of emotional distress. This court granted defendants' motion for summary judgment on the intentional-infliction-of-emotional-distress claim, holding, inter alia, that defendants' words and actions were distressful, but as a matter of law they did not rise to the requisite level of outrageousness and recklessness. Harvey v. Strayer College, Inc., 911 F.Supp. 24, 28.

**D.D.C.**1996. Com. (d) quot. in case quot. in sup. Client brought an action for, in part, intentional infliction of emotional distress against his former criminal defense trial attorney, alleging that certain of defendant's trial tactics caused plaintiff's conviction for drug distribution. Granting defendant's motion for summary judgment, the court held, inter alia, that plaintiff did not prove that the conduct complained of in this case, i.e., defendant's failure to adequately investigate identification evidence, adequately interview potential witnesses, make any pretrial motions, move for a mistrial, vigorously cross-examine, or zealously advocate, constituted extreme and outrageous behavior or that defendant intentionally inflicted emotional distress; therefore, plaintiff did not establish a prima facie case of intentional infliction of emotional distress under District of Columbia law. Williams v. Callaghan, 938 F.Supp. 46, 51.

**D.D.C.**1994. Com. (d) quot. generally in case quot. in disc. and cit. generally in headnote, com. (h) quot. in disc. An employee sued his former employer for intentional infliction of emotional distress, after he suffered severe injuries from an attempted suicide that occurred as a result of his supervisor's false accusation that he had stolen a carpet from the employer's president's residence. The court granted defendant's motion to dismiss, holding that the supervisor's conduct was not outrageous because his conduct in withdrawing his accusation when he learned it was false clearly showed the absence of malice. The court also held that the supervisor's failure to apologize once he discovered the truth was insufficient to support his emotional-distress claim. Chung v. Lee, 852 F.Supp. 43, 44, 45.

**D.D.C.**1994. Com. (d) quot. in part in sup. Terminated employee sued her former employer, asserting intentional infliction of emotional distress and other claims. Denying employer's motion to dismiss one claim but granting it for all others, including the emotional-distress claim, this court held, inter alia, that, under District of Columbia law, since the complaint alleged nothing more than

discharge from employment, employee had failed to allege sufficiently extreme and outrageous conduct to establish a claim for intentional infliction of emotional distress. Underwood v. Archer Management Services, Inc., 857 F.Supp. 96, 99.

**D.D.C.**1994. Com. (e) quot. in case quot. in sup. Former employee of the District of Columbia Department of Corrections sued the District of Columbia and her supervisor for sexual harassment and intentional infliction of emotional distress. The court entered judgment on a jury verdict awarding plaintiff damages. Denying defendants' posttrial motion for judgment as a matter of law on plaintiff's claim of intentional infliction of emotional distress, the court held that the record contained testimony of defendant supervisor's conduct that reasonable individuals could find outrageous, as well as evidence that plaintiff's trauma arose as a consequence of that conduct. Webb v. Hyman, 861 F.Supp. 1094, 1102.

**D.D.C.**1991. Quot. in case cit. in disc., com. (d) quot. in case quot. in disc. A divorced husband and his parents sued a magazine publisher, an editor, and a freelance writer for libel and intentional infliction of emotional distress based on the magazine's publication of an article concerning the plaintiff husband's highly publicized child visitation dispute. The court dismissed the claims of the plaintiff husband and his father but denied the defendants' motion for summary judgment on the claims made by the plaintiff husband's mother, on the ground that reasonable persons could differ as to whether the conduct of the publisher and editor supported her allegations. Foretich v. Advance Magazine Publishers, Inc., 765 F.Supp. 1099, 1104.

**D.D.C.**1991. Com. (d) quot. in disc. Dog owners were walking their unleashed dogs when one of the dogs was shot by a police officer who feared the dog was going to harm his police dog. The dog owners brought an action for damages against the United States, pursuant to the Federal Tort Claims Act, alleging assault and battery, false arrest, property loss, and negligent and intentional infliction of emotional distress. On the count of intentional infliction of emotional distress, the district court held in favor of the defendant. The court reasoned that the officer's conduct did not rise to the requisite level of outrageousness and atrocity to warrant recovery under this theory, and the plaintiff's distress resulted from what she perceived to be the senseless shooting of her pet, not from any disregard for her own safety. Kaiser v. U.S., 761 F.Supp. 150, 156.

**D.D.C.**1990. Quot. in case cit. in disc., com. (d) quot. in disc. A father who was involved in a bitter, highly publicized child custody dispute and his parents sued the publisher of a magazine, among others, for defamation and intentional infliction of emotional distress on the basis of certain statements made in the "Letters from Readers" page and an editorial comment thereon. Denying the defendant's motion to dismiss, the court held that the plaintiff stated a claim for intentional infliction of emotional distress as to one of the statements, relating to a childhood incident in which the plaintiff's mother handed him his dead infant sister's body "so he could arrange for the funeral." Foretich v. Glamour, 753 F.Supp. 955, 970.

**D.D.C.**1990. Quot. in case quot. in disc., com. (d) quot. in case quot. in sup. A temporary firefighter working at a hospital whose contract was not renewed after the hospital transferred from federal

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 291 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

government to District of Columbia control sued the District of Columbia for, inter alia, intentional infliction of emotional distress. The plaintiff contended that he did not know that his employment was temporary and was not told he could do something to retain his employment once he was notified of his impending termination. Granting the defendant's motion for summary judgment, the court refused to believe that the defendant lacked knowledge of his temporary status when all of his employment forms clearly stated the temporary nature of his appointment. Moreover, because it was undisputed that the plaintiff became aware of, and applied for, the position of firefighter before his termination date, the court held that, even if the defendant failed to personally inform the plaintiff that his employment was temporary and that he should apply for a firefighter vacancy, this would not rise to the level of conduct needed to establish a claim for intentional infliction of emotional distress. Russell v. District of Columbia, 747 F.Supp. 72, 80, 81.

**D.D.C.**1990. Com. (d) quot. generally in case quot. in disc. A female former police sergeant was arrested by officers of the United States Park Police and a local police department after she allegedly resisted an attempt to catch her by refusing to show a license and registration and almost hitting an officer with her car in trying to flee. The arrestee sued the arresting officer and the United States, alleging violations of the federal civil rights statute and the Federal Tort Claims Act, and also asserting common law tort claims for false arrest, false imprisonment, malicious prosecution and negligent and intentional infliction of emotional distress. This court granted summary judgment in favor of the defendants and held, inter alia, that the defendant officer's behavior was not sufficiently extreme or outrageous to warrant relief for intentional infliction of emotional distress. Moreover, the court stated that the degree of force used to arrest the plaintiff was reasonable in view of the plaintiff's attempts to resist. Stevens v. Stover, 727 F.Supp. 668, 672.

**D.D.C.**1989. Com. (d) quot. in case cit. in disc. An airline passenger who requested to be allowed off of an airplane when his New York City-bound flight was delayed on the runway for about three hours sued the airline for false imprisonment, intentional and negligent infliction of emotional distress, and punitive damages after the request was denied. The airline moved for summary judgment, and the passenger moved for partial summary judgment on his claim of false imprisonment. Denying the plaintiff's motion and granting the defendant airline's motion, this court held that, by buying his ticket, the passenger gave the pilot express consent to fly him to New York City, an agreement that did not guarantee arrival at his destination by a specific time or provide that the plaintiff could unilaterally determine that he should be deplaned. Additionally, the court held that the plaintiff's claim of intentional infliction of emotional distress was deficient because it did not establish that the defendant caused an emotional disturbance so acute in nature that harmful physical consequences would be likely to result. Abourezk v. New York Airline, Inc., 705 F.Supp. 656, 665, decision affirmed 895 F.2d 1456 (D.C.Cir.1990). See above case.

**D.D.C.**1989. Quot. in case quot. in sup. A former bank vice president sued the bank for intentional infliction of emotional distress, inter alia, alleging that she suffered severe emotional distress as a result of being fired by the defendant, witnessing the defendant's efforts to maintain that she was guilty of misconduct, and being a known diabetic. The court granted summary judgment to the defendant on this issue, stating that the plaintiff's allegations fell far short of the standard for

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 292 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

intentional infliction of emotional distress of unusually outrageous conduct and that the tort should not be successfully pursued by merely alleging unfair circumstances surrounding a termination of employment. Cunningham v. United Nat. Bank of Washington, 710 F.Supp. 861, 864.

**D.D.C.**1989. Com. (d) quot. in case quot. in disc. After a husband and wife learned that the real estate investment properties they had purchased from the defendant's investment association in a joint venture were worth less than what they had paid for them, they sued the defendant and the association, among others, on a theory of fraud, inter alia. The defendant counterclaimed on a theory of intentional infliction of emotional distress. The court dismissed the counterclaim, holding that the defendant failed to satisfy her burden of proof. The court rejected the defendant's testimony that the plaintiff husband tormented the defendant by wearing her late husband's clothes in her presence after she refused to sell the plaintiffs' investment properties. Weiss v. Lehman, 713 F.Supp. 489, 502, order amended and supplemented on rehearing 759 F.Supp. 1 (D.D.C.1989).

**D.D.C.**1988. Com. (d) quot. in case quot. in sup. A catering company sued the owner of a special events planning business to recover unpaid debts; the defendant counterclaimed, alleging intentional infliction of emotional distress caused by the plaintiff company's employees' abusive conduct during their collection efforts. This court granted the plaintiff's motion for summary judgment on the emotional distress claim, finding that the defendant had presented insufficient proof of outrageous conduct. The court concluded that the plaintiff's employees' allegedly rude and insulting behavior in response to the defendant's unpaid debt was not so extreme as to be regarded as atrocious, and that the defendant failed to demonstrate any causal connection between the conduct of the plaintiff's employees and the harm she allegedly suffered. Ridgewells Caterer, Inc. v. Nelson, 688 F.Supp. 760, 764.

**D.D.C.**1987. Com. (d) quot. in case cit. in disc. Apartment tenants sued the building owner and manager who allegedly contracted unskilled maintenance men, claiming that they suffered the intentional infliction of emotional distress as a result of a gas explosion and collapsed ceiling in their apartments. This court granted the defendants' motion for summary judgment, holding that the defendants' conduct would at most constitute negligence. The court stated that the use of unskilled workers could not as a matter of law be deemed so extreme in degree as to go beyond all possible bounds of decency. Longus v. First Columbia Management, Inc., 664 F.Supp. 13, 15.

**D.D.C.**1986. Cit. in case quot. in disc. Transcendental meditation students sued the founder of the transcendental meditation movement for intentional infliction of mental distress. This court granted the defendant's motion for summary judgment because the students failed to show that the defendant's acts were calculated to cause them emotional harm and an associated risk of physical injury, and because the students failed to cite any case law supporting their claim that a continuing injury can rise to the level of outrageousness necessary to constitute intentional infliction of emotional distress. Doe v. Yogi, 652 F.Supp. 203, 209.

**D.D.C.**1986. Quot. in case quot. in sup., com. (j) cit. in sup. An employee sued her former employer for intentional infliction of emotional distress arising out of an allegedly hostile work

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 293 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

environment. Holding for the defendant, this court reasoned that the plaintiff's stress was incident to her job responsibilities and did not result from extreme and outrageous conduct on the part of her former employer, and that stress alone was insufficient to meet the threshold requirement of severe emotional distress. Green v. American Broadcasting Companies, Inc., 647 F.Supp. 1359, 1362, 1363.

**D.D.C.**1986. Quot. in case quot. in sup., com. (d) quot. in case quot. in sup. A management-level accountant who had worked for his employer for over a decade was reassigned to a "temporary" position at a much reduced salary after the company suffered a severe financial crisis and reduced its staff. The accountant sued the company for age discrimination and other unlawful acts. This court granted defendant's motion for summary judgment, holding, inter alia, that the plaintiff's claim for intentional infliction of emotional distress failed because the defendant's alleged breach of confidentiality, dismissal without prior disciplinary procedures, and attempts to force the plaintiff's resignation, while perhaps insensitive and unfair, did not approach the level of extreme and outrageous conduct required for liability. Schoen v. Consumers United Group, Inc., 670 F.Supp. 367, 378-379.

**D.D.C.**1985. Coms. (d) and (h) quot. in sup. A blind man who was told to move to another seat because he was sitting next to the plane's emergency exit sued the airline for violating federal statutes, outrageous conduct, and breach of contract. Both sides moved for summary judgment. This court granted the defendant's motion because the airline's request was for safety purposes and based on a policy that did not discriminate against blind people. Since the conduct was in accord with the FAA's published policy designed to keep emergency exits as freely accessible as possible, the conduct did not go beyond all bounds of decency or permit recovery on the outrageous conduct claim. Finally, the court found that there was no breach of contract because the airline did not refuse to transport the passenger and did not guarantee the passenger's right to sit wherever he wished. Anderson v. USAir, Inc., 619 F.Supp. 1191, 1197, judgment affirmed, 818 F.2d 49 (D.C.Cir.1987). See above case.

**D.D.C.**1981. Com. (d) quot. in part and cit. in sup. The plaintiffs voluntarily accompanied two FBI agents to the Washington Field Office for questioning. The FBI had received a report that the plaintiffs had sought at two banks in Virginia to change currency that the bank tellers noticed to be part of a ransom paid in a kidnapping case then under investigation. During the course of the questioning, the plaintiffs gave the agents conflicting accounts concerning the source of the money they changed at the banks. Based on this inconsistency, the agents arrested the plaintiffs. After detaining them overnight, the plaintiffs were brought before the District of Columbia Superior Court, which asked to see the warrants for the plaintiffs' arrest. The agents explained that the warrants were issued in the Eastern District of Virginia and had not yet been received in Washington. The judge ordered the plaintiffs released from custody; however, as soon as the plaintiffs left the courthouse, federal marshalls arrested them, relying on the federal warrant issued in Virginia. The plaintiffs were detained for two days and a U.S. Magistrate found that they had been arrested on probable cause. The plaintiffs waived their right to a hearing in the District of Columbia so that they would be transferred to the Eastern District of Virginia. There the plaintiffs

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 294 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

testified before a grand jury investigating the kidnapping and all charges against them were dropped. The plaintiffs instituted an action against the United States and nine individuals and the District of Columbia for false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, defamation, and invasion of privacy. On motion of the defendants for summary judgment, the District Court held, inter alia, that the plaintiffs' claim that the defendants caused emotional distress was insufficient in the absence of alleged facts that would constitute the sort of conduct that is necessary to give rise to liability for intentional infliction of emotional distress. The court noted that conduct must be beyond the bounds of decency and regarded as atrocious and utterly intolerable in a civilized community. Therefore, since the court found that the plaintiffs' complaint did not state such occurrences that would give rise to a claim under this standard of extreme or outrageous conduct, the court granted the defendants' motion for summary judgment. Wilcox v. United States, 509 F.Supp. 381, 387.

**D.D.C.**1980. Cit. in sup. The plaintiff was the general counsel to a government agency and was reassigned by the chairman of the agency to another position. The plaintiff sued the chairman and the commissioners of the agency in their official capacities, seeking only the equitable relief of reinstatement to his former position. He did not seek money damages. The trial court held that the transfer of the plaintiff amounted to a termination which failed to comply with statutory procedures and ordered that the plaintiff be reinstated to the position of general counsel. The plaintiff then sued in this court, suing the chairman in his individual capacity for allegedly wrongful behavior in procuring the plaintiff's transfer. The plaintiff brought common law tort claims and constitutional tort claims. The court held that the plaintiff's causes of action were barred by res judicata, stating that simply because the plaintiff had sought only equitable relief in his previous suit and here sought only monetary relief was not a sufficient distinction to warrant the conclusion that the two cases involved separate causes of action. All of the plaintiff's claims arose from the same course of conduct and the plaintiff could have brought all of the claims in the same action. The doctrine of res judicata applies not only to all matters which were actually determined but to all matters which could have been determined. Therefore because there were no new facts or circumstances in this suit, the plaintiff must suffer the consequences of not bringing all of his claims for relief in one action. The court also rejected the plaintiff's claim that his suit here was not barred by res judicata because a different defendant was involved because the chairman here was sued in his individual and not in his official capacity. The general rule states that where a judgment is rendered against a person in a representative capacity and later is sued in his individual capacity, the rule of res judicata does not apply. The court, however, distinguished the rule from this case, stating that the rule applies where there is a danger of the sued party having to take inconsistent positions whereas, here, the barring of the plaintiff's suit did not run the risk of binding a party to any position inconsistent with his present one. Also, the rule applies where the party to be barred did not enjoy a realistic opportunity to litigate the question in the first action. Here, however, the plaintiff was free to raise the issues herein in his original complaint. The court stated, inter alia, that the plaintiff had not stated a prima facie case of intentional infliction of emotional distress because the tortfeasor's conduct had not been wanton, extremely outrageous or especially calculated to cause serious mental distress which was required for recovery. Shewmaker v. Minchew, 504 F.Supp. 156, 163.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 295 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**M.D.Fla.**

**M.D.Fla.**2023. Com. (d) quot. in case quot. in sup. Former employee who was raped by her former supervisor filed a claim for intentional infliction of emotional distress against former employer, alleging that employer threatened to fire her if she talked about the rape or filed a complaint with human resources, actually fired her after she sought psychological treatment and talked about her rape during the treatment, withheld her final paycheck after she refused to sign a settlement and confidentiality agreement, and badgered her to take down private social-media posts about her rape. This court granted employer's motion to dismiss employee's claim for intentional infliction of emotional distress, holding that employer's alleged conduct did not rise to the high level of outrageousness required to state such a claim under Florida law and Restatement Second of Torts § 46. Treminio v. Crowley Maritime Corporation, 649 F.Supp.3d 1223, 1242.

**M.D.Fla.**2019. Com. (e) cit. in sup., cit. in case quot. in sup.; com. (f) quot. in sup., cit. in case cit. in sup. Daughter, individually and as successor of father's estate, sued credit-reporting agency, alleging that it refused to correct father's credit report, which incorrectly showed that he was deceased and delinquent on a large mortgage, such that he was prevented from obtaining loans he needed to renovate his home to accommodate his and his wife's health needs and eventually from paying for his wife's funeral. This court granted agency's motion to dismiss, holding that daughter failed to state a claim for intentional infliction of emotional distress. The court reasoned, in part, that, even accepting daughter's allegations as true, agency's conduct was not objectively outrageous as a matter of law, as required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. Malverty v. Equifax Information Services, LLC, 407 F.Supp.3d 1257, 1263, 1264.

**M.D.Fla.**2017. Com. (d) quot. in case quot. in sup. Mortgage borrower filed, inter alia, an intentional-infliction-of-emotional-distress (IIED) claim against lender, alleging that, after defendant assigned its interest in the mortgage to an assignee, which accepted a deed in lieu of foreclosure from plaintiff and forgave plaintiff's debt, defendant continued to attempt to collect the forgiven debt from plaintiff. This court granted defendant's motion to dismiss plaintiff's IIED claim, holding that defendant's conduct was not outrageous as a matter of law. The court explained that, under Florida law and Restatement Second of Torts § 46, a defendant's conduct had to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society, in order to state an IIED claim. Owens-Benniefield v. Nationstar Mortgage LLC, 258 F.Supp.3d 1300, 1322.

**M.D.Fla.**2016. Com. (d) quot. in case quot. in sup. African American employee brought claims for, among other things, intentional infliction of emotional distress (IIED) against water-and-sewer district and its executive director, after defendants terminated his employment. This court granted defendants' motion to dismiss, holding that plaintiff's allegations—that defendants subjected him to a discriminatorily applied pay policy, issued unfounded discriminatory actions against him,

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 296 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

limited his job duties, and falsely accused him of watching pornography on his work computer and ordered him to seek treatment for doing so—failed to state such a claim under Florida law or Restatement Second of Torts § 46; while defendants' alleged conduct was clearly offensive, it did not rise to the level of extreme and outrageous conduct required to recover for IIED. Short v. Immokalee Water & Sewer District, 165 F.Supp.3d 1129, 1152.

**M.D.Fla.**2015. Com. (d) quot. in case quot. in sup. Minor filed, inter alia, a claim for intentional infliction of emotional distress (IIED) against county deputy sheriffs, after defendants responded to a call that described plaintiff as a "suspicious person" and a "slow kid" who lived in the caller's neighborhood, attempted a takedown procedure when plaintiff retreated from them, tasered and hit plaintiff with their flashlights and fists, and handcuffed and arrested plaintiff. This court granted defendants' motion to dismiss the claim against defendants in their official capacity, and denied defendants' motion to dismiss the claim against them in their individual capacities. The court cited Restatement Second of Torts § 46, Comment *d*, for the standard for determining whether defendants' conduct was sufficiently outrageous, and explained that county could not be liable for the willful and wanton acts of its employees but that the alleged facts were sufficient to state a plausible IIED claim against defendants in their individual capacities. C.P. by and through Perez v. Collier County, 145 F.Supp.3d 1085, 1096.

**M.D.Fla.**2011. Quot. in case quot. in sup., com. (j) quot. in sup. Arrestee brought § 1983 action against police officer and sheriff's department, alleging false arrest, warrantless entry into her home, and intentional infliction of emotional distress (IIED). Granting in part defendants' motion for summary judgment, this court held that plaintiff had not established her IIED claim, because she had not shown that officer's conduct was "beyond all possible bounds of decency" or that she suffered "severe distress." While being subject to false arrest was embarrassing, it was not sufficiently extreme and outrageous absent some other grievous conduct, and, while plaintiff pointed out that she was wearing only a towel at the time of arrest, the court noted that she was sitting outside wearing only a towel prior to officer's arrival. Frias v. Demings, 823 F.Supp.2d 1279, 1288, 1289.

**M.D.Fla.**2010. Com. (d) quot. in case quot. in sup. Insured brought, inter alia, a claim for intentional infliction of emotional distress (IIED) against insurer, alleging that defendant failed to pay him benefits under his homeowner's insurance policy. Granting defendant's motion to dismiss the IIED claim, this court held that, even accepting as true plaintiff's allegations that defendant delayed and denied plaintiff's insurance claim, and even if defendant's four offers over a three-year period to settle plaintiff's claim were either inadequate or designed to force plaintiff to discount the full value of his claim, defendant's conduct failed to qualify as outrageous for purposes of stating a claim for IIED. Delfrate v. Liberty Mutual Fire Ins. Co., 727 F.Supp.2d 1307, 1309.

**M.D.Fla.**2010. Com. (d) quot. in case quot. in sup. Guardian ad litem, on behalf of two minor children and a proposed class of children who were in the legal custody of the state department of children and families and who had been placed in foster care, sued department, corporation that operated the state foster care system pursuant to a contract with department, and others,

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 297 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

alleging intentional infliction of emotional distress and other claims. Granting without prejudice defendants' motion to dismiss, this court held, inter alia, that plaintiffs did not allege the requisite outrageous conduct to support a claim for intentional infliction of emotional distress under Florida law. The court noted that, while plaintiffs might, by amending, be able to plead a cause of action for outrage if they confined themselves to allegations that met the threshold for outrageousness, plaintiffs' allegations of various actions and inactions, including claims of negligence and inaction, mitigated against a determination that defendants' conduct was sufficiently outrageous to support such a cause of action. Smith v. Rainey, 747 F.Supp.2d 1327, 1342.

**M.D.Fla.**2009. Com. (d) adopted in case quot. in sup. Operator of dance hall sued county, county sheriff's office, and others for intentional infliction of emotional distress, inter alia, alleging that defendants pressured his landlord to evict the dance hall, harassed the hall's employees and patrons, repeatedly arrested him for violating certain ordinances, and conducted an aggressive late-night search of his home in connection with one of the arrests. Granting in part defendants' motion to dismiss, this court held that plaintiff's allegations concerning defendants' actions did not rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress under Florida law. Abusaid v. Hillsborough County Bd. of County Com'rs, 637 F.Supp.2d 1002, 1027.

**M.D.Fla.**2006. Cit. in case cit. in disc.; com. (d) quot. in cases quot. in disc. (cit. as § 46). Hispanic independent-contractor truck drivers brought suit for intentional infliction of emotional distress, among other claims, against owner of asphalt-production facility, alleging that they were subjected to harassment and racial slurs by facility's plant operator. Granting in part defendant's motion for summary judgment, this court held, inter alia, that plaintiffs' allegations that plant operator, who had no authority to fire or demote plaintiffs, repeatedly used racial slurs and delayed and inconvenienced plaintiffs while they delivered materials to the facility did not assert conduct that was sufficiently extreme and outrageous to establish a prima facie case of intentional infliction of emotional distress. Martinez v. Pavex Corp., 422 F.Supp.2d 1284, 1296.

**M.D.Fla.**2002. Com. (d) quot. in case quot. in disc. Former client sued law firm that had stopped representing him in a slip-and-fall case, alleging, in part, intentional infliction of emotional distress. Granting defendant's motion for judgment on the pleadings, the court held, inter alia, that defendant's withdrawal from plaintiff's underlying personal-injury case did not rise to the level of outrageous conduct necessary to support a claim for intentional infliction of emotional distress, where defendant had the right to withdraw pursuant to the retainer agreement, and three years remained until expiration of the statute of limitations. Jones v. Law Firm of Hill and Ponton, 223 F.Supp.2d 1284, 1288.

**M.D.Fla.**2002. Quot. in case quot. in sup., com. (d) quot. in sup. Cruise-ship passenger sued cruise line for damages stemming from sexual assault and battery committed by ship's head waiter. Denying in part cruise line's motion to dismiss, district court held that passenger's allegations sufficiently stated claim for negligent hiring and retention, and, since cruise line was vicariously

liable for intentional torts of employees, passenger's allegations stated claim for intentional infliction of emotional distress. Stires v. Carnival Corp., 243 F.Supp.2d 1313, 1319.

**M.D.Fla.**1999. Quot. in case quot. in disc. Employee sued employer for intentional infliction of emotional distress, among other claims. Plaintiff alleged that defendant store manager rubbed his penis and his hand across plaintiff's buttocks, that he tried to enter a locked room while plaintiff was breast-feeding her child and commented that he wanted plaintiff to "feed him," and that he told plaintiff that he would like to see plaintiff and a female co-worker together in a sexual act. This court granted in part employer's motion to dismiss, holding, inter alia, that, while defendant's alleged acts were offensive, they were not outrageous. Ball v. Heilig-Meyers Furniture Company, 35 F.Supp.2d 1371, 1376.

**M.D.Fla.**1998. Com. (d) quot. in case quot. generally in ftn. After being fired, a Hispanic employee sued her employer for, among other claims, intentional infliction of emotional distress. Plaintiff alleged that she heard that a supervisor had made a comment against ethnic people, saying he preferred the front desk to be manned by nonethnics. This comment, combined with a fight in the office of another supervisor, purportedly reduced plaintiff to tears. This court, among other dispositions, dismissed the emotional-distress claim, holding, inter alia, that the employer acted with propriety considering the at-will status of the relationship, and that the treatment by the supervisors was not so egregious as to entitle plaintiff to damages. Weld v. Southeastern Companies, Inc., 10 F.Supp.2d 1318, 1323.

**M.D.Fla.**1997. Quot. in case quot. in disc. An employee sued her employer and a coemployee, alleging sexual harassment, assault, battery, and intentional infliction of emotional distress. This court granted in part and denied in part defendants' motion to dismiss, holding, inter alia, that plaintiff failed to state a claim for intentional infliction of emotional distress. The court noted that within the context of employment discrimination, Florida courts have recognized claims for intentional infliction of emotional distress where the complaint alleges repeated and relentless physical and verbal abuse. Sparks v. Jay's A.C. & Refrigeration, Inc., 971 F.Supp. 1433, 1440-1441.

**M.D.Fla.**1996. Quot. in case quot. in sup. Former employee of airline sued airline for intentional infliction of emotional distress, inter alia, alleging that defendant created an extraordinarily hostile, sexually poisoned work atmosphere for plaintiff and that defendant purposely exposed plaintiff to vile acts of depravity, rather than take simple and cost-effective measures to stop the harassment. Granting in part defendant's motion to dismiss, the court held that, under Florida law, the male co-workers' conduct in using bad language in front of plaintiff and repeatedly placing pornographic photographs on her desk did not reach the level of outrageousness necessary to support a claim for intentional infliction of emotional distress in the employment context. Pucci v. USAir, 940 F.Supp. 305, 309.

**M.D.Fla.**1995. Quot. in case cit. in disc., com. (g) cit. in headnote and quot. in disc. Female dancers for a theme park's entertainment show who were spied upon and videotaped in various

stages of undress and while using the restroom sued the theme park for, among other claims, intentional infliction of emotional distress and invasion of privacy. This court granted in part and denied in part defendant's motion for summary judgment, holding, inter alia, that defendant failed to establish that the use of the female dancers as bait to catch the peeping tom was a permissible way of pursuing its legal rights of investigation. Defendant may have exceeded the bounds of propriety in using the dancers as bait in the sting operation without their prior knowledge or consent, particularly in consideration of the contractual agreement between several of the plaintiffs and defendant regarding a secure dressing environment. It also held that a fact issue existed as to whether defendant's conduct was extreme and outrageous. Liberti v. Walt Disney World Co., 912 F.Supp. 1494, 1505, 1506.

**N.D.Fla.**

**N.D.Fla.**1988. Cit. in disc. An American flyer was shot down during the Vietnam conflict. The United States government subsequently misidentified the remains of the flyer, persisted in that misidentification, and issued a letter to his wife stating that if she did not accept the remains and bury them, the government would do so. The government also continued to carry the flyer's name as "accounted for" even after the Armed Services Graves Registration Board rescinded the identification of the flyer. The flyer's wife sued the United States for intentional infliction of emotional distress. Granting the plaintiff's motion for summary judgment, the court held that the government's conduct was outrageous as a matter of law. Hart v. U.S., 681 F.Supp. 1518, 1522, judgment reversed 894 F.2d 1539 (11th Cir.1990). See above case.

**N.D.Fla.**1980. Quot. in sup. (Erron. cit. as Torts.) During a previous litigation where the plaintiffs attempted to recover under an insurance policy issued by the defendant, the plaintiffs became displeased with activities of the defendants and filed a suit alleging libel, slander, and intentional outrageous conduct resulting in emotional distress to the plaintiffs. After dismissing the libel and slander complaints, the court held that the complaint for emotional distress could not be sustained because, although the defendants' conduct may have been reprehensible, defendants' overtures were not directed to the plaintiffs or any member of their immediate family who was present at the time. Dyer v. Florida Farm Bureau Mut. Ins. Co., 496 F.Supp. 695, 697.

**S.D.Fla.**

**S.D.Fla.**2022. Com. (d) quot. in sup.; com. (e) quot. in ftn. and cit. in case quot. in sup.; com. (f) quot. in sup. Former employee who was physically and sexually assaulted by a patient while working as a medical assistant brought a claim for intentional infliction of emotional distress against former employer, alleging that it sent her back to work to finish her shift after the assault without giving her the chance to be examined by a doctor or report the assault to police, that it blamed her for the assault and made inappropriate verbal comments, and that it intentionally disseminated information about the attack to others. This court denied employer's motion to dismiss, holding that a lower standard of outrageousness was appropriate under Restatement

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 300 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

Second of Torts § 46, given employer's knowledge of employee's susceptibility to distress from the situation she had just experienced, and that its alleged conduct was sufficiently outrageous under that standard, because an average member of the community would consider it to be atrocious, and utterly intolerable in a civilized community. Cooper v. Empower U, Inc., 603 F.Supp.3d 1317, 1322, 1323.

**S.D.Fla.**2022. Cit. in case quot. in sup. Passenger who was onboard a cruise ship during an outbreak of an infectious pandemic disease, individually and on behalf of her husband who died of the disease, sued operator of the ship for, among other things, intentional infliction of emotional distress, alleging that it failed to screen passengers before allowing them to board, failed to enforce physical distance requirements, and misrepresented to passengers that everyone onboard remained healthy and happy when several guests had displayed symptoms consistent with the disease. This court granted in part operator's motion to dismiss, holding that passenger's allegations were insufficient to show that operator's actions were sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress under maritime law, which looked to the standards set forth in Restatement Second of Torts § 46. Dome v. Celebrity Cruises Inc., 595 F.Supp.3d 1212, 1225.

**S.D.Fla.**2022. Com. (d) cit. and quot. in case cit. and quot. in sup. Customer filed a claim for intentional infliction of emotional distress against provider of an internet-connected home-alarm system that included indoor and outdoor camera surveillance, after provider's technician added himself to her account as authorized user and repeatedly accessed her account without her permission. This court granted in part provider's motion for summary judgment, holding that customer failed to establish that provider engaged in outrageous and extreme conduct, as required for it to be liable for intentional infliction of emotional distress under Restatement Second of Torts § 46. The court pointed out that, while provider knew that its technicians had access to its customers' accounts, that access was limited to vetted employees who were instructed on the limitations of that access. Doty v. ADT, LLC, 594 F.Supp.3d 1319, 1338.

**S.D.Fla.**2020. Cit. and quot. in cases quot. in sup.; com. (d) quot. in case quot. in sup. Passengers of a cruise ship filed a class action against cruise line, seeking to recover damages after the ship experienced a contagious-disease outbreak in which at least 45 people became infected and at least two people died. This court granted in part cruise line's motion to dismiss, holding that passengers failed to state a claim for intentional infliction of emotional distress against cruise line under Florida law and Restatement Second of Torts § 46. The court reasoned that passengers' allegations that cruise line lied, concealed, and misrepresented to passengers that everybody on board the cruise ship was healthy when it knew that was false failed to rise to the level of outrageousness required to state such a claim. Kantrow v. Celebrity Cruises, Inc., 510 F.Supp.3d 1311, 1318, 1324, 1325.

**S.D.Fla.**2019. Cit. in sup. Wife and children of cruise-ship passenger filed a wrongful-death action against cruise-ship operator, alleging that passenger suffered a heart attack while the ship was in port and eventually died of cardiac arrest in the ship's medical center after defendant refused

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 301 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

to allow him to disembark. This court denied defendant's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress, holding, among other things, that plaintiffs' complaint adequately pleaded the extreme and outrageous conduct required to state such a claim under Florida law and Restatement Second of Torts § 46. The court pointed to plaintiffs' allegations that defendant refused to let passenger or plaintiffs off the ship while it was docked despite statements by the ship's physician that passenger needed to be flown to Miami to undergo possible heart surgery and that time was of the essence, and that the ship left the port with passenger and plaintiffs confined onboard against their will. Eisenman v. Carnival Corporation, 424 F.Supp.3d 1303, 1308.

**S.D.Fla.**2019. Com. (d) quot. in case quot. in sup. Tenant brought, inter alia, a claim for intentional infliction of emotional distress against landlord, alleging that defendant engaged in pervasive sexual harassment of plaintiff, including making unwanted sexual propositions, conducting physical trespasses and stalking-related behaviors, and threatening plaintiff that he would not allow her to renew her lease or recover her security deposit if she refused to be his girlfriend. This court granted in part defendant's motion to dismiss, holding that defendant's actions—which amounted to unwelcome sexual advances without making physical contact—did not constitute extreme and outrageous conduct as defined by Restatement Second of Torts § 46, Comment *d*. Noah v. Assor, 379 F.Supp.3d 1284, 1300.

**S.D.Fla.**2018. Com. (j) quot. in case quot. in sup. After being stopped for allegedly throwing bottles out of his car window by police, arrestee brought a lawsuit against county and detectives, alleging that detectives falsely arrested him and used excessive force when they slammed him onto the hood of his car, punched him, and cursed at him, despite his cooperation with them. This court granted defendants' motion to dismiss, holding, inter alia, that plaintiff failed to allege enough facts to sustain his claim of intentional infliction of emotional distress (IIED) against detectives. The court cited Restatement Second of Torts § 46, Comment *j*, in explaining that detectives' conduct did not rise to the level of severity required under Florida law to meet the elements of an IIED claim. Casado v. Miami-Dade County, 340 F.Supp.3d 1320, 1332.

**S.D.Fla.**2017. Cit. in case quot. in sup.; com. (d) quot. in case quot. in sup. Surviving spouse of cruise-ship passenger who fell overboard while intoxicated and presumably drowned brought a wrongful-death action under the Death on the High Seas Act against cruise-line operator, alleging, inter alia, a claim for intentional infliction of emotional distress (IIED) arising from defendant's negligence in over-serving alcohol to decedent and failing to timely detect and report her fall and initiate a prompt search-and-rescue attempt. This court denied defendant's motion to dismiss, holding, inter alia, that development of the record was necessary to determine whether defendant's conduct was sufficiently extreme and outrageous to support an IIED claim. The court explained that, in admiralty cases, courts relied on the standard set forth in Restatement Second of Torts § 46 for evaluating IIED claims. Broberg v. Carnival Corporation, 303 F.Supp.3d 1313, 1317.

**S.D.Fla.**2017. Cit. in sup., adopted in case cit. in sup.; com. (d) quot. in case quot. in sup. Former college student brought a claim for intentional infliction of emotional distress against instructor of his composition class, alleging that instructor asked him to read aloud to the class on multiple

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 302 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

occasions despite knowing that he suffered from a visual disability that prevented him from being able to do so, such that he was forced to disclose his disability to his classmates. This court granted instructor's motion to dismiss student's claim for intentional infliction of emotional distress, holding that the conduct alleged by student was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and thus did not rise to the level necessary to support such a claim under Florida law and Restatement Second of Torts § 46. Leach v. District Board of Trustees of Palm Beach, 244 F.Supp.3d 1334, 1337, 1338.

**S.D.Fla.**2016. Com. (d) quot. in case quot. in sup. Cruise-ship passenger sued ship's owner and its medical personnel for, among other things, intentional infliction of emotional distress, following an incident in which one of her children drowned and another one of her children nearly drowned in the ship's pool. This court granted in part defendants' motion to dismiss, holding that passenger's allegations—that owner failed to employ lifeguards while advertising itself as family friendly and kid friendly, that owner failed to keep lifesaving equipment on the pool deck, that owner failed to have staff stationed on the pool deck who were prepared for a medical-drowning emergency, and that the ship's medical personnel took a long time to arrive after the children were pulled from the pool—were not sufficient to show that defendants engaged in extreme and outrageous conduct within the meaning of Restatement Second of Torts § 46. Blair v. NCL (Bahamas) Ltd., 212 F.Supp.3d 1264, 1270.

**S.D.Fla.**2013. Illus. 1 quot. in sup. Mother of an intoxicated cruise-ship passenger who climbed over a railing, fell overboard, and presumably drowned sued operator of the cruise ship, alleging, among other things, intentional infliction of emotional distress based on the fact that the captain or someone in a similar uniform told her that her son had committed suicide. Granting defendant's motion to dismiss plaintiff's emotional-distress claim, this court held that her allegations were insufficient to state such a claim, because the alleged conduct was not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. The court reasoned that this was not a situation in which the captain, with no justification or factual predicate, decided to play a joke on plaintiff by falsely informing her of her son's death; the reality was that her son had in fact climbed a railing and fallen overboard, and there was no indication, nor any reason to infer, that the captain knew of plaintiff's religious faith and characterized her son's death as a suicide with the intention of causing her extra emotional suffering. Tello v. Royal Caribbean Cruises, Ltd., 939 F.Supp.2d 1269, 1278.

**S.D.Fla.**2012. Quot. in sup., adopted in case cit. in sup., com. (d) quot. in sup. Concert producer/ promoter and its president/majority shareholder brought contract and tort claims against performer, his record company, his booking agent, and agent's president, after defendants issued a press release canceling a series of 10 concerts that plaintiffs had agreed to produce and promote. Granting in part defendants' motion to dismiss, this court held that plaintiffs failed to state a claim for intentional infliction of emotional distress against booking agent's president; while president's alleged conduct in seeking additional bargaining leverage, threatening to breach the parties' contract, and encouraging third parties to disparage plaintiffs could be aptly described as unprofessional or irresponsible, it was not, as a matter of law, so atrocious or utterly intolerable

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 303 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

as to rise to the level of outrageousness required to state such a claim under Florida law. Five for Entertainment S.A. v. Rodriguez, 877 F.Supp.2d 1231, 1329.

**S.D.Fla.**2009. Com. (d) quot. and adopted in case quot. in sup. Same-sex partner and children of deceased female patient sued hospital, social worker, and physicians, alleging that defendants denied them certain visitation rights and refused to timely acknowledge partner's power of attorney or consult with her about patient's medical history, wishes, and treatment. Granting defendants' motion to dismiss, this court held, inter alia, that plaintiffs failed to allege conduct on defendants' part that was sufficiently outrageous to state a claim for intentional infliction of emotional distress; while defendants might not have allowed plaintiffs as much visitation as medically permitted or warranted, they did permit plaintiffs to see patient at certain times before she died, and defendants eventually accepted partner as patient's health-care surrogate and consulted with her as to patient's treatment. Langbehn v. Public Health Trust of Miami-Dade County, 661 F.Supp.2d 1326, 1344.

**S.D.Fla.**2009. Cit. in ftn., adopted in case cit. in ftn. Mother sued the Republic of Cuba and others in connection with the arrest, prolonged detention, and torture of her son in Cuba, alleging intentional infliction of emotional distress (IIED), inter alia. Entering a default judgment against defendant on the IIED claim, and awarding compensatory and punitive damages to plaintiff, this court held that plaintiff had stated a claim for IIED, and such a claim was authorized under the Foreign Sovereign Immunities Act. The court noted that some courts analyzed tort claims against foreign states by looking to the standards of federal common law, and courts that had applied federal common law looked to Restatement Second of Torts § 46, which was expressly adopted as the basis for an IIED claim in Florida. Saludes v. Republica De Cuba, 655 F.Supp.2d 1290, 1295.

**S.D.Fla.**2000. Cit. in disc. Blind former employee sued former employer for discrimination under the Americans with Disabilities Act and state law, claiming intentional infliction of emotional distress, and negligent hiring, supervision, and retention. Granting in part employer's motion to dismiss, this court held, inter alia, that employer's conduct was not sufficiently outrageous to support claim of intentional infliction of emotional distress. Gillis v. Sports Authority, Inc., 123 F.Supp.2d 611, 616.

**S.D.Fla.**1998. Com. (d) quot. in case quot. in sup. and cit. in headnotes. A parcel-service company's driver sued the company for intentional infliction of emotional distress, among other claims, alleging that he had been subject to racial epithets, racial violence, racially discriminatory actions, and retaliation for opposing race discrimination. Plaintiff alleged that defendant fabricated a reckless driving charge in an attempt to fire him; that defendant's business manager told a false story about plaintiff to another employee and referred to plaintiff as a "nigger" in Spanish; and that he was unjustifiably suspended and demoted. This court granted in part and denied in part defendant's motion to dismiss, holding, inter alia, that defendant's actions did not rise to the level of relentless physical and verbal harassment necessary to state an emotional-distress claim. Vamper v. United Parcel Service, Inc., 14 F.Supp.2d 1301, 1302, 1306.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 304 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**S.D.Fla.**1996. Cit. in sup. (Cit. as Restatement of Torts). Employee sued former employer and employer's president for, inter alia, intentional infliction of emotional distress. Plaintiff alleged that she was terminated when she complained about president's unwelcome sexual advances, which included hugging her and making sexually explicit jokes and suggestive comments. Defendants moved to dismiss. Granting in part and denying in part the motion, the court held that, while the conduct complained of was unacceptable, it did not rise to the level of outrageousness required to sustain a claim of intentional infliction of emotional distress. Blount v. Sterling Healthcare Group, Inc., 934 F.Supp. 1365, 1370.

**S.D.Fla.**1996. Cit. in headnotes, com. (d) quot. in case quot. in disc. A receptionist for a medical-services center sued the center, her supervisor, and a doctor at the center for, among other claims, intentional infliction of emotional distress in light of the doctor's repeated acts of sexual harassment targeted at the receptionist. This court granted in part and denied in part the doctor's motion to dismiss, holding, inter alia, that plaintiff stated a viable emotional-distress claim. Plaintiff alleged a pattern of persistent verbal and physical abuse that culminated in her constructive discharge, and, if established to be true, the doctor's conduct constituted outrageous behavior. Vernon v. Medical Management Associates of Margate, 912 F.Supp. 1549, 1551, 1557, 1559.

**S.D.Fla.**1995. Cit. in case quot. in sup. Employee sued employer for gender-based employment discrimination and intentional infliction of emotional distress. Granting in part defendant's motion for partial summary judgment, the court held, inter alia, that defendant's alleged failures to pay compensation and benefits, to promote plaintiff or post job openings, and to treat plaintiff in a professional manner did not constitute behavior that was so outrageous and extreme as to sustain plaintiff's intentional infliction of emotional distress claim. Henderson v. Hovnanian Enterprises, Inc., 884 F.Supp. 499, 503.

**S.D.Fla.**1994. Cit. in headnote, cit. generally in disc., com. (d) quot. in disc. Alleging that their harassing and discriminatory acts forced her to resign her position, a former cash register salesperson sued her former supervisors for, inter alia, intentional infliction of emotional distress. Denying defendants' motion for summary judgment on this count of plaintiff's complaint, the court held that, at this point in the proceedings, the record was insufficiently developed to ascertain whether defendants' conduct was so extreme and offensive as to support plaintiff's demand for relief. Albert v. National Cash Register Co., 874 F.Supp. 1328, 1328, 1331.

**S.D.Fla.**1993. Cit. in case cit. in sup., quot. in case quot. in sup. Employees sued their employer, asserting Title VII civil rights claims and Florida tort law claims, including one for intentional infliction of emotional distress. This court granted in part the defendants' motion to dismiss, holding, inter alia, that allegations regarding verbal harassment by a co-worker and improper transfer from one state to another did not assert an emotional distress claim under Florida law. Watson v. Bally Mfg. Corp., 844 F.Supp. 1533, 1536.

**S.D.Fla.**1992. Cit. in sup., subsec. (1) and com. (f) quot. in sup. A county employee sued the county commissioners, alleging intentional infliction of emotional distress. The court denied defendants'

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 305 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

motion for judgment on the pleadings, holding that employee stated a claim for emotional distress where she alleged that employee's supervisor knew of her mental handicap, harassed employee for absences caused by the handicap and for tardiness resulting from necessary treatment, and maliciously pestered employee with questions about the nature and extent of the handicap. Doe v. Board of County Com'rs of Palm Beach County, Fla., 815 F.Supp. 1448, 1450.

**S.D.Fla.**1991. Cit. in case cit. in disc., com. (d) quot. in case quot. in disc. Alleging intentional infliction of emotional distress, conspiracy, and loss of consortium, the occupants of a car illegally stopped by the police and their spouses sued the police officers in a civil rights action. This court denied the police officers' motion to dismiss, holding, inter alia, that the car occupants had alleged conduct sufficiently outrageous to support a claim for intentional infliction of emotional distress. The court stated that the acts the police officers were accused of, physically and sexually abusing an elderly deaf woman, forcing two of the other occupants to stand in an area infested with red ants while handcuffed and unable to protect themselves from the painful bites, and forcing three other occupants to sit in the patrol car with the windows closed and the heater running on a hot day constituted outrageous conduct by the officers. McCray v. Holt, 777 F.Supp. 945, 946, 947.

**S.D.Fla.**1986. Quot. in sup., coms. (d) and (h) quot. in sup. A group of airplane passengers sued the airline after the airplane suffered an engine failure and was forced to return to the airport. The passengers alleged breach of contract, negligence, and entire want of care under state law, and violation of the Warsaw convention under federal law. The court granted, in part, the airline's motion for judgment on the pleadings. The court held that the entire want of care claim could not withstand a motion to dismiss for failure to state a cause of action unless the airline were guilty of another recognized intentional tort. The court rejected the passengers' argument that the airline was guilty of intentional infliction of emotional distress, because there were no facts to support the claim that the airline had acted recklessly or intentionally. In re Eastern Airlines, Inc., Engine Failure, 629 F.Supp. 307, 311, 312, judgment reversed 872 F.2d 1462 (11th Cir.1989), cert. granted 496 U.S. 904, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990).

## M.D.Ga.

**M.D.Ga.**2012. Cit. in sup. (general cite). Home mortgage borrowers brought conversion and other claims against mortgage lender, seeking punitive damages and damages for emotional distress stemming from lender's failure to properly credit two mortgage payments to their account before eventually correcting the error a year and a half later. Denying in part lender's motion for summary judgment, this court held, among other things, that borrowers could potentially recover emotional-distress damages proximately caused by lender's intentional conversion of their money. The court explained that, under Georgia law, a plaintiff who sought emotional-distress damages without proof of a physical injury was not required to prove all of the elements of the separate tort of intentional infliction of emotional distress if the plaintiff could prove the essential elements of a well-recognized intentional tort and prove that the intentionally tortious conduct

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 306 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

proximately caused the emotional-distress damages. Blackburn v. BAC Home Loans Servicing, LP, 914 F.Supp.2d 1316, 1329.

**M.D.Ga.**1999. Coms. (d) and (j) quot. in case quot. in sup. Former employee who allegedly was forced to take maternity leave sued former employer for, in part, intentional infliction of emotional distress. Granting defendant's motion for summary judgment, the court held, inter alia, that alleged conduct of defendant's co-owner in forcing plaintiff, when she was eight and one-half months pregnant, to file papers while sitting on the floor, asking her what she would do if her baby were born black, and telling her that she was a liability to the company and was stealing from him when she went to the doctor did not rise to the requisite level of outrageousness and egregiousness to state a viable claim of intentional infliction of emotional distress; furthermore, plaintiff failed to show that she suffered severe emotional distress. Allen v. Commercial Pest Control, Inc., 78 F.Supp.2d 1371, 1380.

**M.D.Ga.**1991. Com. (d) cit. in case quot. in disc., com. (e) quot. in sup. A vehicle operated by the defendant insurance company's insured collided with the plaintiff's parked car. In the course of having his car repaired, the plaintiff twice contacted the insurance company's claims adjuster, who, on both occasions, allegedly used abusive language and called the plaintiff obscene and insulting names. After one such occasion, the plaintiff suffered a blackout and was hospitalized. The plaintiff sued the insurance company and the claims adjuster for intentional infliction of emotional distress, inter alia. The court denied the defendants' motion for summary judgment, holding that, given that the claims adjuster was in a position to affect the plaintiff's interests, a jury could find that the adjuster's conduct was sufficiently outrageous to support a cause of action for intentional infliction of emotional distress. Brown v. Manning, 764 F.Supp. 183, 187.

**N.D.Ga.**

**N.D.Ga.**2017. Com. (d) quot. in case quot. in sup. Insured owner of a home that was destroyed in a fire filed a pro se action against insurer and servicer of the mortgage on her home, alleging that defendants reduced the amount of coverage on her homeowner's insurance policy without her knowledge or consent. This court granted defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress, holding that defendants' alleged conduct in lowering or not increasing plaintiff's insurance coverage did not rise to the requisite level of outrageousness as a matter of law. The court explained that, under Restatement Second of Torts § 46, for a party's conduct to be considered outrageous, the conduct had to have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Griggs v. USAA Casualty Insurance Company, 263 F.Supp.3d 1375, 1381.

**N.D.Ga.**2009. Subsec. (1) quot. in case quot. in sup., com. (d) quot. in sup. Professor brought various claims against university and its officials in connection with their investigation of his alleged sexual harassment of a university employee. Granting defendant's motion for summary

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 307 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

judgment on plaintiff's claim for intentional infliction of emotional distress, this court held that, while plaintiff alleged that defendants' findings against him caused him intense feelings of embarrassment and humiliation, defendants' actions were not "extreme and outrageous" given the high bar set by Georgia case law, and that, even if defendants' actions could be considered extreme and outrageous, plaintiff failed to point to evidence supporting a crucial element of his claim, namely, that he suffered severe emotional distress as a result. Soloski v. Adams, 600 F.Supp.2d 1276, 1371.

**N.D.Ga.**2006. Com. (d) quot. in sup. Former employee sued former employer and co-workers for, in part, intentional infliction of emotional distress. This court adopted the magistrate's report and recommendation that defendants be granted summary judgment on grounds that plaintiff failed to demonstrate that defendants engaged in extreme or outrageous conduct; plaintiff's allegations that one of his co-workers verbally abused him on numerous occasions and physically threatened him on at least two occasions, and that another co-worker ratified that conduct by failing to intervene after he complained about the alleged conduct and harassment, were insufficient to create a disputed issue of fact as to whether defendants subjected him to conduct that exceeded all possible bounds of decency. Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1363.

**N.D.Ga.**2005. Subsec. (1) and com. (d) quot. in case quot. in sup. Former employee brought Title VII claims against former employer and its principal, alleging, among other things, sexual harassment by principal. This court, adopting the magistrate judge's report and recommendation, inter alia, granted defendants' motion for summary judgment as to plaintiff's pendent state-law claim for intentional infliction of emotional distress. The court held that plaintiff's allegations of unwanted attention, comments, and contact by principal did not rise to the requisite level of outrageousness and egregiousness to support a claim of intentional infliction of emotional distress under Georgia law, noting that defendants' actions must have been so terrifying as naturally to humiliate, embarrass, or frighten plaintiff. Kimsey v. Akstein, 408 F.Supp.2d 1281, 1306.

**N.D.Ga.**2005. Com. (d) quot. in disc. After being terminated for violating her employer's expense-reporting policies, employee sued employer, alleging various instances of age and gender-based discrimination and harassment. Granting defendant summary judgment, this court held, inter alia, that plaintiff failed to show that her supervisor's conduct in criticizing her work and rejecting her expense reports met the requisite level of outrageousness or engendered feelings of embarrassment, fright, or outrage so as to support plaintiff's state-law claim for intentional infliction of emotional distress. Additionally, plaintiff's testimony that she experienced anxiety, depression, and stress following her firing was insufficient as a matter of law to show that her emotional distress was severe, since she did not seek medical attention or counseling for any distress. Pierri v. Cingular Wireless, LLC, 397 F.Supp.2d 1364, 1381.

**N.D.Ga.**2005. Subsec. (1) and com. (d) quot. in case quot. in sup. Former employee brought Title VII claims against former employer and its principal, alleging, among other things, sexual harassment by principal. This court, adopting the magistrate judge's report and recommendation, inter alia, granted defendants' motion for summary judgment as to plaintiff's pendent state-law

claim for intentional infliction of emotional distress. The court held that plaintiff's allegations of unwanted attention, comments, and contact by principal did not rise to the requisite level of outrageousness and egregiousness to support a claim of intentional infliction of emotional distress under Georgia law, noting that defendants' actions must have been so terrifying as naturally to humiliate, embarrass, or frighten plaintiff. Smith v. Akstein, 408 F.Supp.2d 1309, 1335.

N.D.Ga.2002. Subsec. (1) quot. in case quot. in sup., com. (d) quot. in case quot. in sup. Former high school student sued school district, principal, and teacher, alleging that teacher committed sexual misconduct and asserting claims for, inter alia, intentional infliction of emotional distress. Parties cross-moved for summary judgment. Denying in part plaintiff's motion, this court held, inter alia, that, while teacher's conduct in inducing teenagers in participating in fake "experiments" for a "scholarship program" was clearly outrageous, issues of fact remained as to whether student established that he suffered severe emotional distress as a direct result. Hackett v. Fulton County School District, 238 F.Supp.2d 1330, 1371.

N.D.Ga.1998. Subsec. (1), com. (j) quot. in case quot. in disc. Paper-mill employee sued mill for intentional infliction of emotional distress and violations of the Americans with Disabilities Act (ADA), alleging that defendant refused to make certain employment opportunities available to him because of a heart condition. Defendant moved for summary judgment. Granting the motion in part and denying it in part, the court held that, in Georgia, disadvantageous employment actions could not form the basis of a claim for intentional infliction of emotional distress; however, because material factual issues existed as to whether plaintiff could be considered a qualified individual with a disability, summary judgment on the ADA claim was inappropriate. Wilson v. Georgia-Pacific Corp., 4 F.Supp.2d 1164, 1168.

N.D.Ga.1995. Subsec. (1) cit. in case quot. in disc. (Erron. cit. as § 461.) Inmates at a federal penitentiary sued several correctional officers for claims of excessive force, cruel and unusual punishment, failure to provide medical care, assault and battery, and intentional infliction of emotional distress. This court granted in part and denied in part defendants' motion for summary judgment, holding, inter alia, that plaintiffs failed to present any evidence to sustain a claim for intentional infliction of emotional distress, because they provided no evidence that they suffered emotional distress that rose to the requisite level of severity in that they failed to show that they were humiliated, embarrassed, frightened, or outraged by defendants' alleged conduct. Ruble v. King, 911 F.Supp. 1544, 1559.

N.D.Ga.1994. Subsec. (1) cit. in case quot. in disc. (Erron. cit. as § 461). A pregnant Nigerian immigrant who was refused medical treatment because she declined to consent to HIV testing sued the obstetrics and gynecological clinic for, among other claims, intentional infliction of emotional distress. This court, among other dispositions, denied plaintiff's motion for summary judgment on the emotional-distress claim, holding, inter alia, that plaintiff failed to point to any intentional or reckless conduct by any individual defendant that rose to the requisite level of outrageousness or egregiousness. Even if defendants' termination of treatment as a result of plaintiff's refusal to follow defendants' medical advice were deemed to violate Title VI or the Americans with Disabilities Act,

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 309 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

there was no indication that it was done out of any desire to humiliate, frighten or anger plaintiff. Atakpa v. Perimeter Ob-Gyn Associates, P.C., 912 F.Supp. 1566, 1577.

**N.D.Ga.**1994. Cit. in case quot. in sup. Former manager for janitorial-services provider sued employer for, inter alia, intentional infliction of emotional distress, alleging that she was fired because of her sex and her pregnancy. This court, among other orders, denied plaintiff's motion for summary judgment on her emotional-distress claim, holding that issues of fact existed as to this claim. It reasoned that plaintiff was pregnant, and therefore, arguably, in a particularly susceptible emotional and physical condition; that her division president occupied a position of control over her; that defendant intentionally eliminated her position, subjected her to discriminatory treatment and inferior working conditions, isolated her, and closed her out of meetings; and that she suffered severe emotional distress to the extent that her marriage was ruined, she needed intensive psychological counseling, and she was taking antidepressant medication. Shepherd v. ISS Intern. Service System, Inc., 873 F.Supp. 1550, 1558.

**N.D.Ga.**1987. Subsec. (1), com. (j) quot. in case quot. in disc. An employee sued her employer in federal court, asserting a federal claim of age discrimination and a pendent state claim for intentional infliction of emotional distress based on allegations that agents and representatives of the employer embarrassed and humiliated her for her failure to receive a promotion. This court granted in part and denied in part the employer's motion for summary judgment, holding that the evidence was insufficient to support a claim of intentional infliction of emotional distress. The court stated that the plaintiff failed to show that her alleged emotional distress was so extreme, severe, and outrageous as to support her claim. Gaston v. Southern Bell Tel. and Tel. Co., 674 F.Supp. 347, 353.

**S.D.Ga.**

**S.D.Ga.**2014. Com. (d) quot. in cases quot. in sup. (general cite). Parents and their daughter, who were passengers of airline, brought a claim for intentional infliction of emotional distress (IIED), inter alia, against airline, alleging that defendant's employee publicly attacked them in an airport by suggesting that they could not speak English, that he intentionally or recklessly failed communicate to parents that he had put daughter on standby for two days, and that he forced them to purchase a new ticket for daughter although she already had a valid ticket. Granting in part defendant's motion to dismiss, this court held that plaintiffs failed to state a plausible IIED claim, because defendant's actions were not "extreme and outrageous" under the standards set out in Restatement Second of Torts § 46 and Restatement Third of Torts: Liability for Physical and Emotional Harm § 46. The court explained that the complaint alleged mere insults and failures to perform under an existing contract, which were not sufficient to sustain an IIED claim. Benjamin v. American Airlines, Inc., 32 F.Supp.3d 1309, 1322.

**S.D.Ga.**1995. Com. (d) quot. in disc., com. (f) cit. in disc. Accident victim's husband brought suit for intentional infliction of emotional distress against insurer, arising from claims adjuster's

statement that plaintiff was a "liar." Granting defendant's motion for a directed verdict, the court held that adjuster's conduct was not tortious as a matter of law, in spite of the facts that plaintiff and adjuster had a "special relationship" by virtue of adjuster's power to damage plaintiff's interests and that adjuster had "special knowledge" of plaintiff's heart condition. The court said that the two factors had little weight and did not lead, ipso facto, to liability, since plaintiff and adjuster had no longstanding relationship of trust, the amount of money at issue was not large, and adjuster was clearly willing to repair plaintiff's truck. Price v. State Farm Mut. Auto. Ins. Co., 878 F.Supp. 1567, 1569, 1573.

**S.D.Ga.**1995. Cit. in headnote, com. (d) cit. but dist., com. (j) quot. in case quot. in disc. Job applicant who alleged she was rejected three times for the same position sued prospective employer for, inter alia, intentional infliction of emotional distress. Applicant maintained that she was discriminated against because she was prone to epileptic seizures. Employer moved for summary judgment. Granting the motion, the court held that the decision to withhold an offer of employment, even if withheld for improper reasons, was not the type of extreme, outrageous, or egregious conduct that could serve as the basis for a claim of intentional infliction of emotional distress. Moreover, the court did not believe that a reasonable person would suffer extreme emotional distress as a result of the encounters applicant described. Ward v. Papa's Pizza To Go, Inc., 907 F.Supp. 1535, 1536, 1540, 1541.

**S.D.Ga.**1994. Com. (j) quot. in case quot. in sup. An oil-company employee and her husband sued employer for civil-rights violations and intentional infliction of emotional distress arising from persistent sexual harassment by co-workers. This court granted in part and denied in part employer's motion for summary judgment, holding, inter alia, that plaintiff had no cause of action for emotional distress against employer because the alleged sexual harassment was not committed in furtherance of employer's business, as it occurred outside the scope of plaintiff's coemployees' jobs. The court, therefore, did not need to resolve whether plaintiffs' allegations, which included obscene language, sexual gestures, crank calls, and the presence of pornographic magazines, rose to the requisite level of severity. Mills v. Amoco Performance Products, Inc., 872 F.Supp. 975, 991.

### D.Hawaii

**D.Hawaii,** 2020. Cit. in case cit. in ftn. (general cite). In former employee's claim for conversion against employer's corporate parent and its officers, who allegedly used his credit-card information without authorization for business expenses, this court denied in part defendants' motion to dismiss, holding that plaintiff stated a claim for conversion under Restatement Second of Torts § 242. The court noted that the Hawaii Supreme Court frequently turned to the Restatement Second of Torts for guidance, citing by way of example a case in which it looked to Restatement Second of Torts § 46 in discussing intentional infliction of emotional distress. Jass v. CherryRoad Technologies, Inc., 472 F.Supp.3d 787, 796.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 311 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Hawaii,**

**D.Hawaii,** 2017. Coms. (e) and (g) quot. in case quot. in sup. Recipient of Medicare and Medicaid, who used a personal-mobility device due to his medical conditions, sued providers of benefits under plaintiff's Medicare and Medicaid plans, alleging that defendants committed the tort of bad faith by withholding approval of his request for a new personal-mobility device and intentionally inflicted emotional distress on him through their litigation tactics. This court granted summary judgment for defendants, holding that, while Restatement Second of Torts § 46 provided that a plaintiff could state a claim for intentional infliction of emotional distress based on an opposing party's litigation tactics in a prior lawsuit, plaintiff's allegations regarding defendants' conduct involved third parties and were not based on defendants' direct interactions with plaintiff; in addition, plaintiff's claim did not concern a previous lawsuit in which plaintiff was successful. Quinones v. UnitedHealth Group Incorporated, 250 F.Supp.3d 692, 707.

**D.Hawaii,** 2013. Adopted in case quot. in sup., com. (d) quot. in case quot. in sup. Terminated 59-year-old male employee sued former employer, alleging violations of state discrimination laws based on age and gender, and intentional infliction of emotional distress, after his position was eliminated and a younger female co-worker was selected for the newly created position that replaced his position. Granting summary judgment for employer on employee's claim for intentional infliction of emotional distress, this court held, among other things, that, even when viewed in the light most favorable to employee, the evidence did not demonstrate that employer's alleged conduct—in wrongly failing to select him for the newly created position based on discriminatory conduct—was outrageous or beyond all bounds of decency, as required to state such a claim. Hollister v. Mrs. Gooch's Natural Food Markets, Inc., 919 F.Supp.2d 1101, 1110, 1111.

**D.Hawaii**

**D.Hawaii,** 2010. Adopted in case quot. in sup., com. (d) quot. in sup., quot. in case quot. in sup. Former security guard/bellman at hotel brought discrimination action against hotel and others, as well as a claim for intentional infliction of emotional distress (IIED) in connection with hotel's handling of an alleged altercation with co-worker. Denying summary judgment for hotel on the IIED claim, this court held that plaintiff raised a genuine issue of material fact that hotel's conduct was outrageous, in light of his allegations that hotel's general manager, who, unlike plaintiff, was not Caucasian, responded to plaintiff's question of, "Why don't you like me?," by asking, "How many white people do you see on my staff?" The court noted that, while under Hawaii law, an IIED claim could not be sustained by threats, annoyances, petty oppressions, or other trivialities, sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct. Hughes v. Mayoral, 721 F.Supp.2d 947, 964, 965.

**D.Hawaii,** 2009. Adopted in case quot. in sup., com. (i) quot. in sup. Parents of child who was either stillborn or died shortly after birth sued hospital after it misplaced child's remains, which were never found. Denying summary judgment for hospital on plaintiffs' claim for intentional

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 312 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

inflition of emotional distress, this court held, inter alia, that a reasonable person could find that hospital's actions were reckless and outrageous; hospital delayed issuing birth and death certificates over six months after child's death even though it knew bodies could not be removed from the morgue without a death certificate and the morgue could not accommodate bodies for a long period of time, and hospital's own expert hypothesized that someone with access to the locked morgue might have "inadvertently" discarded the remains. Ritchie v. Wahiawa General Hosp., 597 F.Supp.2d 1100, 1110, 1112.

**D.Hawaii,** 2006. Com. (d) quot. in sup. Union member sued union employee for, among other things, allegedly filing a false police report accusing plaintiff of assaulting and robbing defendant at an illegal cockfight and repeating those accusations at a general union meeting. This court denied defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress, holding, inter alia, that a finder of fact could reasonably determine that defendant's actions constituted outrageous and reckless conduct. The court noted that where reasonable persons differed as to whether the acts alleged were sufficiently outrageous to form the basis for a claim of intentional infliction of emotional distress, the question should be left to a jury. Machado v. International Ass'n of Heat & Frost Insulators & Asbestos Workers, 454 F.Supp.2d 1056, 1063.

**D.Hawaii,** 2005. Com. (d) quot. in sup. Former employee sued employer, supervisor, and others for, inter alia, intentional infliction of emotional distress, alleging that he was terminated and otherwise retaliated against after he made an anonymous complaint about employer on employer's confidential compliance hotline. Denying employer's motion for summary judgment as to the claim for emotional distress, this court held that questions of material fact remained as to whether the acts were in retaliation for employee's protected activity, and that the alleged conduct, including supervisor's refusal to respond to employee's inquiries, her public scolding of employee, and her reassignment of projects in such a manner as to impact his pay and employment evaluation, when viewed in the light most favorable to employee, could be found to constitute outrageous behavior. Lopes v. Kapiolani Medical Center for Women & Children, 410 F.Supp.2d 939, 957.

**D.Hawaii,** 2005. Adopted in case quot. in sup. Special-education tutor brought civil-rights action against state education department and its officials, asserting various state and federal claims based on alleged racial and sexual discrimination. The court granted judgment on the pleadings for one official sued in her individual capacity judgment for intentional infliction of emotional distress, holding, as a matter of law, that official's implementation of a policy prohibiting male teachers from tutoring female students did not constitute objectively-outrageous conduct, since, inter alia, it applied to all teachers and did not single out plaintiff; additionally, plaintiff alleged, at most, embarrassment, not emotional distress, from receiving fewer tutoring assignments. Sherez v. State of Hawai'i Dept. of Educ., 396 F.Supp.2d 1138, 1148.

**D.Hawaii,** 2005. Com. (d) cit. in case quot. in sup. After employer hotel failed to accommodate his request for light duty, hotel bartender on workers' compensation leave sued employer for violating Americans with Disabilities Act, alleging negligent and intentional infliction of emotional distress because employer's agent told union president that plaintiff was not welcome to return to

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 313 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

employer's hotel. This court granted employer summary judgment, holding, inter alia, that plaintiff failed to state claim for intentional infliction of emotional distress, since agent's conduct was not outrageous or unreasonable. The court determined that telling a union representative who would ultimately relay to employee that employee was terminated—and even going so far as to tell representative that employee could not return to employer's premises—did not go beyond all bounds of decency. Soone v. Kyo-Ya Co., Ltd., 353 F.Supp.2d 1107, 1116-1117.

**D.Hawaii,** 2004. Cit. in sup., coms. (d) and (f) quot. in sup. Nonprofit corporation and three African-American representatives sued parks employee and city, which had issued permit that did not allow vending as money-raising activity at corporation event and failed to clean park in advance of event, alleging, in part, that employee's racial slurs and discriminatory acts constituted intentional infliction of emotional distress. Granting in part defendants' motion for summary judgment, this court held, inter alia, that plaintiffs did not produce evidence concerning emotional distress suffered as a result of employee's racial slurs and acts of discrimination. Epileptic Foundation v. City and County of Maui, 300 F.Supp.2d 1003, 1014, 1015.

**D.Hawaii,** 2004. Com. (d) quot. in sup. Employer fired employee who gave urine sample pursuant to employer's drug-testing policy after diagnostic laboratory erroneously reported that sample was inconsistent with human urine. Laboratory did not inform employer of its mistake for two years. Employee sued laboratory for intentional infliction of emotional distress. This court denied defendant's motion for summary judgment, holding that, regarding the emotional-distress claim, issues of material fact existed as to whether defendant's delay in disclosure rose to requisite level of outrageous conduct, since reasonable juror could find that defendant's failure to provide information about urine test to plaintiff in a timely manner, which resulted in the loss of his job for two years and caused his depression, was extreme and outrageous conduct. Nagata v. Quest Diagnostics Inc., 303 F.Supp.2d 1121, 1127.

**D.Hawaii,** 2001. Cit. in case cit. in sup., quot. in ftn. Worker whose employment was terminated after he suffered a back injury on the job sued former employer for, in part, intentional infliction of emotional distress. The court denied defendant's motion for summary judgment on plaintiff's claim to the extent that plaintiff sought to recover under general maritime law for intentional infliction of emotional distress relating to defendant's allegedly wrongful reduction of maintenance payments to plaintiff, stating that a genuine issue of material fact existed as to whether the reduction constituted extreme and outrageous conduct or unconscionable abuse. Fawkner v. Atlantis Submarines, Inc., 135 F.Supp.2d 1127, 1135, 1136.

**D.Hawaii,** 2001. Com, (h) cit. in case quot. in sup. Hawaii resident claiming to be daughter of deceased movie star sued New York magazine for libel per se, defamation, tortious infliction of emotional distress, tortious interference with contractual relations, unjust enrichment, and punitive damages in connection with magazine article. Granting magazine's motion for judgment on the pleadings, or in the alternative, summary judgment, this court held, inter alia, that plaintiff did not establish an intentional tort to sustain claim for intentional infliction of emotional distress. Miracle v. New Yorker Magazine, 190 F.Supp.2d 1192, 1202.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 314 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**D.Hawaii,** 2000. Com. (d) quot. in disc. Owner of a lumber business sued police department, police chief, police officers, and others for violations of 42 U.S.C. § 1983 and several state law torts, including intentional and negligent infliction of emotional distress. This court denied the summary-judgment motions of the police department and the county police officer on the emotional-distress claim, holding, inter alia, that fact issues existed as to whether defendants' actions of yelling at plaintiff, arresting him, dragging him across the floor, and tossing him into a police car because he protested the wrongful taking of various pieces of property were unreasonable, and whether officer should have recognized that his actions were likely to result in plaintiff's depression and suicidal thoughts. Pourny v. Maui Police Dept., County of Maui, 127 F.Supp.2d 1129, 1147.

**D.Hawaii,** 1999. Com. (d) quot. in case quot. in sup. African-American employee who claimed that he had suffered racial harassment, discrimination, and retaliation sued employer for, in part, intentional infliction of emotional distress. Denying in part defendant's motion for summary judgment, this court held, inter alia, that genuine issues of material fact existed as to whether defendant's failure to promote plaintiff to several positions, suspension of plaintiff, and alleged racial insults rose to the level of outrageous conduct necessary to maintain a claim for intentional infliction of emotional distress. Lesane v. Hawaiian Airlines, 75 F.Supp.2d 1113, 1121.

**D.Hawaii,** 1998. Com. (d) quot. in case quot. in sup. and cit. generally in headnote. Employee sued former employer for intentional infliction of emotional distress, among other claims, after his employment relationship was abruptly ended when he failed to provide medical certification for his illness. In violation of its employee manual, defendant failed to give two weeks' notice of termination, and it violated the law when it told the disability insurer that plaintiff had received unemployment and disability payments at the same time. This court denied in part defendant's motion for summary judgment, holding, inter alia, that fact issues existed as to whether a reasonable man could suffer severe distress under these circumstances. UEMA v. Nippon Exp. Hawai'i, Inc., 26 F.Supp.2d 1241, 1244, 1250.

**D.Hawaii,** 1996. Com. (d) quot. in case cit. in ftn. Former airline employee who alleged that he was discharged because of a psychological disability sued the airline and his former supervisor for intentional infliction of emotional distress, inter alia. Granting defendants' motion for summary judgment, the court held, in part, that plaintiff's claim against former supervisor individually for intentional infliction of emotional distress was barred by Hawaii's two-year statute of limitations. Alternatively, the court found that the allegations in plaintiff's affidavit concerning his alleged harassment at work raised no genuine issue of outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Ellison v. Northwest Airlines, Inc., 938 F.Supp. 1503, 1516.

**D.Hawaii,** 1995. Cit. in sup., com. (d) quot. in sup. An insured and his beneficiary sued a life insurer and its agent who sold him a universal life policy, alleging, among other things, that defendants marketed and sold the policy as part of a plan of deliberately and fraudulently selling such policies during a period of high interest rates. Plaintiffs alleged that defendants'

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 315 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

extrinsic representations induced them to switch from "whole" to "universal" life, that defendants later wrongfully failed to provide them with information, and that defendants' actions resulted in emotional distress to the beneficiary. This court dismissed in part, holding, inter alia, that defendants' conduct was not outrageous. Keiter v. Penn Mut. Ins. Co., 900 F.Supp. 1339, 1348.

**D.Hawaii,** 1995. Cit. in case quot. in disc., subsec. (1) quot. in ftn., com. (d) quot. in ftn. and cit. in case quot. in disc. Former crew member sued owner of cargo container ship for, inter alia, intentional infliction of emotional distress under the Jones Act, alleging that he collapsed due to stress and excessive abuse by his superior officer. Granting in part defendant's motion for partial summary judgment, the court held that, even assuming that plaintiff suffered severe emotional injury, he was not subjected to the unconscionable abuse or extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Yballa v. Sea-Land Services, Inc., 919 F.Supp. 1428, 1437.

**D.Hawaii,** 1994. Com. (d) quot. in part in case cit. in sup. Former employee sued former employer and former supervisor for intentional infliction of emotional distress, among other claims, contending that former supervisor interrupted her when she spoke, yelled at her, changed his instructions to her, told her she could quit if she was unhappy, gave her conflicting work instructions, and told her not to question his actions. The court granted defendants summary judgment, holding, inter alia, that former supervisor's comments, while distasteful, did not rise to level of outrageousness needed to maintain claim. Bragalone v. Kona Coast Resort Joint Venture, 866 F.Supp. 1285, 1294.

**D.Hawaii,** 1988. Cit. in disc., com. (h) quot. in case cit. in disc. An employee who alleged that a co-worker physically assaulted her by grabbing her breast and buttock was moved into a newly created position and then fired for poor job performance after less than two weeks. The employee sued her employer and coemployees, alleging, inter alia, intentional infliction of emotional distress arising out of her discharge. The court denied the defendants' motion for partial summary judgment, holding that the conduct of the defendant who physically assaulted the plaintiff was sufficiently outrageous to support a claim for emotional distress and that it was a question of fact as to whether the conduct of the other defendants in participating in, encouraging, or condoning those actions also rose to the required level of outrageousness. Lapinad v. Pacific Oldsmobile-GMC, Inc., 679 F.Supp. 991, 995, 996.

### D.Idaho

**D.Idaho,** 1988. Com. (j) quot. in sup. A man sued his insurer for intentional infliction of emotional distress, inter alia, alleging that the insurer, which failed to make timely payment of two monthly benefits on his disability insurance, knew or should have known that the delayed payments would cause him financial and emotional injury. The court granted the defendant's motion to dismiss, holding that as a legal certainty the claim did not exceed the jurisdictional amount of $10,000, since the plaintiff's affidavit in support of the jurisdictional amount did not reveal the severe emotional

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 316 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

distress required to warrant recovery of damages. Windsor v. Guarantee Trust Life Ins. Co., 684 F.Supp. 630, 632.

**D.Idaho Bkrtcy.Ct.**

**D.Idaho Bkrtcy.Ct.**2001. Com. (j) cit. in case quot. in sup. Chapter 13 debtor and trustee of his bankruptcy estate brought an adversary proceeding against company that purchased at a discounted present value debtor's annuity payments from a structured personal-injury settlement, claiming damages for, in part, intentional infliction of emotional distress. Entering judgment for plaintiffs on other grounds, the court held, inter alia, that, although defendant's pursuit of the transaction with debtor despite its knowledge of debtor's brain injury from a car accident, lack of employment, and living arrangements with his parents was extreme and outrageous, debtor and his family failed to show that they suffered the requisite level of severely disabling emotional distress to support their claim. In re Wiggins, 273 B.R. 839, 879.

**C.D.Ill.**

**C.D.Ill.**2010. Com. (j) quot. in case quot. in sup. Female first-grade students, through their parents, sued school administrators, among others, asserting a common-law claim for intentional infliction of emotional distress (IIED) as part of their suit for sexual harassment, sexual discrimination, and sexual abuse by a teacher in violation of state and federal statutes. Denying defendants' motion to dismiss the claim, this court held that plaintiffs sufficiently alleged behavior on administrators' part that rose to the level of extreme and outrageous conduct, when viewed as a whole and in light of plaintiffs' tender age when the abuse occurred; plaintiffs alleged that administrators knew that teacher was making extensive use of his work computer to view pornography on the Internet and was sequestering plaintiffs in a locked classroom at least weekly for over six months, and that administrators concealed their knowledge in order to protect themselves, knowing that doing so would allow teacher to continue his abuse. Doe 20 v. Board of Educ. of Community Unit School Dist. No. 5, 680 F.Supp.2d 957, 984.

**C.D.Ill.**2009. Com. (j) quot. in case quot. in sup. Minor students and their parents sued students' former first grade teacher, alleging that teacher sexually harassed students, sexually groomed them for the purpose of introducing sexual abuse, and/or sexually abused them. Denying defendant's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress, this court held, inter alia, that plaintiffs sufficiently pled the elements of such a claim under Illinois law; it was obvious from plaintiffs' allegations that defendant engaged in "truly extreme and outrageous conduct" and that he intended to inflict severe emotional distress on students, and the alleged conduct allowed a plausible inference that students had suffered severe emotional distress. Doe ex rel. Doe v. White, 627 F.Supp.2d 905, 912.

**C.D.Ill.**1997. Cit. in headnotes, com. (d) quot. in case quot. in disc. Individual who was arrested in connection with the beating of a gas station attendant sued arresting officers for, inter alia, false

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 317 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

arrest, false imprisonment, and intentional infliction of emotional distress. Arrestee's wife and sister, who were questioned over a four-day period, also asserted claims for false imprisonment and intentional infliction of emotional distress. Officers moved for judgment as a matter of law. Granting the motion, the court held, in part, that officers had probable cause to arrest arrestee; that defendants could not be found liable for false imprisonment where arrestee was held in jail over the weekend as the result of an agreement between his attorney and officers, and where wife and sister were free to terminate their questioning at any time; and that officers' conduct was not so outrageous and extreme as to go beyond all possible bounds of decency in a civilized society. Cornish v. Papis, 962 F.Supp. 1103, 1105, 1111.

**C.D.Ill.**1997. Com. (d) cit. in case quot. in disc. Employees of state Department of Children and Family Services sued state for, inter alia, intentional infliction of emotional distress in connection with the manner in which they were terminated. Granting defendants' motion for judgment as a matter of law, the court held, in part, that plaintiffs were unable to show that they suffered severe emotional distress as a result of the alleged wrongdoing. Ryan v. Ill. Dept. of Children & Family Services, 963 F.Supp. 1490, 1512, reversed 185 F.3d 751 (7th Cir.1999).

## N.D.Ill.

**N.D.Ill.**2023. Cit. in case cit. in sup.; com. (e) cit. in case cit. in sup.; com. (j) quot. in case quot. in sup. and quot. in case quot. in ftn. Battery suspect sued, among others, police officer who responded to an altercation between suspect's group of friends and owner and bouncers of nearby bar, alleging that officer's use of force when arriving on scene and false testimony at suspect's criminal trial for battery to cover up officer's misconduct caused suspect extreme emotional distress. This court denied officer's motion for summary judgment, holding that there was a genuine issue of material fact as to whether officer's conduct was extreme and outrageous under Restatement Second of Torts § 46. The court noted that § 46 identified police officers as an example of a person with authority over others and whose degree of power or authority could impact whether the at-issue conduct was deemed outrageous. Bedford v. Dewitt, 662 F.Supp.3d 856, 879-881, 887-888.

**N.D.Ill.**2021. Coms. (d) and (j) quot. in case quot. in sup. Pretrial detainees at a county juvenile detention center filed a class action against, among others, county, center's superintendent, and television network, alleging that superintendent's decision to allow network to film portions of a television show at the center caused detainees to experience increased confinement and interruptions to school and recreation. This court granted summary judgment for county and superintendent on detainees' claims for intentional infliction of emotional distress, holding that detainees failed to show that their harm was sufficiently severe to support such a claim under Restatement Second of Torts § 46. The court pointed out that detainees had not submitted evidence that they suffered any emotional distress beyond mere annoyance, frustration, or stress, which did not supply a basis for a claim for intentional infliction of emotional distress under Illinois law. T.S. v. Twentieth Century Fox Television, 548 F.Supp.3d 749, 783, 784.

**N.D.Ill.**2020. Com. (d) quot. in case quot. in sup.; com. (j) quot. in case cit. and quot. in sup. Former fiancée and her parents filed a claim for, among other things, intentional infliction of emotional distress against former fiancé and his parents in connection with allegations that defendants surreptitiously listened to and recorded a private conversation between fiancée and her parents and later disseminated the recorded conversation to others. This court granted defendants' motion to dismiss plaintiffs' emotional-distress claim, holding, among other things, that plaintiffs had not alleged sufficiently extreme and outrageous conduct, nor did their allegations plausibly suggest that defendants intended to cause distress so severe that no reasonable person could be expected to endure it, or were aware of a high probability that their actions would cause such distress, as required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. Gross v. Chapman, 475 F.Supp.3d 858, 864, 865.

**N.D.Ill.**2019. Coms. (d) and (j) quot. in case quot. in sup. Female city police officer, who had refused to date male state trooper, sued state trooper and his co-worker, alleging that co-worker, at state trooper's request, handcuffed her and locked her in the back of his cruiser for six hours, drove her around the city and at one point pretended to let her go, all while taunting her and showing her embarrassing videos of herself. This court denied defendants' motions to dismiss, holding that plaintiff stated a claim against them for intentional infliction of emotional distress under Illinois law and Restatement Second of Torts § 46. The court reasoned that plaintiff adequately pleaded that co-worker's conduct was extreme and outrageous, as evidenced in part by the fact that he disabled his dashboard camera, and that she suffered severe emotional distress requiring psychological treatment as a result of the ordeal. Molina v. Latronico, 430 F.Supp.3d 420, 441.

**N.D.Ill.**2017. Com. (d) cit. in case quot. in sup. Male student brought claims for, among other things, intentional infliction of emotional distress against college and female classmate, alleging that college wrongfully suspended him after classmate falsely accused him of sexually assaulting her while she was incapacitated by alcohol. This court granted college's motion to dismiss student's claim for intentional infliction of emotional distress, holding that, even if college's resolution of classmate's sexual-assault complaint against student was unfair or unreasonable, student did not allege conduct that constituted the type of extreme, targeted, and malicious conduct required for an intentional infliction of emotional distress claim under Restatement Second of Torts § 46. Doe v. Columbia College Chicago, 299 F.Supp.3d 939, 964.

**N.D.Ill.**2015. Com. (d) cit. in case quot. in sup. Former prisoner who was incarcerated for 20 years for a rape and battery before DNA evidence eliminated him as a source of the semen found on the victim brought claims for malicious prosecution and intentional infliction of emotional distress (IIED) against forensic serologist who failed to exclude him as a source of the semen found on the victim and against dentists who testified that he had left bite marks on the victim. This court granted in part defendants' motion for summary judgment, holding that prisoner failed to identify evidence sufficient to maintain his malicious-prosecution claim against serologist or dentists, and that he therefore could not maintain his IIED claim against them. The court noted that, under Illinois law, which followed Restatement Second of Torts § 46, the hurdle for an IIED claim was

even higher than for a malicious-prosecution claim, where, as here, the safe offending conduct formed the basis of both claims. Starks v. City of Waukegan, 123 F.Supp.3d 1036, 1063.

**N.D.Ill.**2014. Com. (d) quot. in case quot. in sup. Widow, as administrator of the estate of pretrial detainee who experienced a seizure and died while he was in custody at a county jail, sued correctional officers at the jail, alleging, among other things, intentional infliction of emotional distress (IIED). This court denied defendants' motion for summary judgment on the IIED claim, holding that there were questions of fact as to whether defendants knew that decedent was suffering seizures and ignored his suffering. The court explained that a reasonable jury could find that ignoring a patently severe medical condition such as a seizure was extreme and outrageous conduct under Restatement Second of Torts § 46, especially because defendants had complete authority over decedent during his incarceration. Awalt v. Marketti, 74 F.Supp.3d 909, 941-942.

**N.D.Ill.**2013. Com. (d) quot. in case quot. in sup. Arrestee brought, inter alia, a claim for intentional infliction of emotional distress against city police officers, after defendants arrested him for drug offenses without probable cause, transported him around town, and brought him to jail, where he stayed for eight months. Denying defendants' motion for summary judgment as to this claim, this court held that the evidence showed that defendants engaged in extreme and outrageous conduct, especially given that they were abusing their power if they did indeed engage in the alleged acts. The court further held that there was sufficient evidence that arrestee actually suffered severe emotional distress, because his alleged anxiety, depression, helplessness, frustration, impatience and sadness, together with physical symptoms such as panic attacks and "rushes" as a result of his distress, constituted a degree of distress that no reasonable person should be expected to withstand. Padilla v. City of Chicago, 932 F.Supp.2d 907, 930.

**N.D.Ill.**2011. Com. (d) quot. in case quot. in sup. Doctor brought claim for intentional infliction of emotional distress (IIED), inter alia, against medical center and former supervisor, alleging that defendants' course of conduct throughout his residency at medical center caused him extreme emotional distress. Granting defendants' motion to dismiss the IIED claim, this court held that plaintiff's allegations that he was, among other things, placed on academic probation without being accused of specific deficiencies and reprimanded undeservedly and hypercritically would, if proven, demonstrate that he was subjected to an unfair work environment, but would not be so extreme and outrageous as to exceed all bounds of human decency, as required to state a claim for IIED under Arizona law. Chi v. Loyola University Medical Center, 787 F.Supp.2d 797, 807.

**N.D.Ill.**2011. Com. (d) quot. in disc. Pregnant former airline employee sued airline for intentional infliction of emotional distress (IIED), inter alia, alleging that she suffered severe distress as a result of termination from her job, which she believed was motivated by gender discrimination, among other things. This court granted summary judgment for defendant on the IIED claim because, in order to prove IIED under the Restatement and Illinois law, a plaintiff had to show that a defendant's conduct was so extreme as to go beyond all possible bounds of decency, and plaintiff did not challenge summary judgment on this issue. Mashal v. Royal Jordanian Airlines, 837 F.Supp.2d 884, 891.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 320 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**N.D.Ill.**2011. Com. (j) quot. in sup. After condominium owner suffered a serious head injury and was prescribed an emotional support dog, condominium association, which had a no-pets policy, imposed limitations on where in the building owner could bring her dog; owner and her husband sued association and others for intentional infliction of emotional distress (IIED), inter alia, alleging that defendants repeatedly harassed and humiliated them, tracked their movements, imposed unreasonable demands and restrictions, and made them feel unsafe and unwelcome in their own home. Granting defendants' motion to dismiss the IIED claim, this court held that plaintiffs' allegations were insufficient because defendants' conduct was neither extreme nor outrageous. The court reasoned, among other things, that plaintiffs' allegations amounted to a dispute over whether defendants went far enough in accommodating a disability, an issue that would be decided in plaintiff's separate federal statutory failure-to-accommodate claim. Stevens v. Hollywood Towers and Condominium Ass'n, 836 F.Supp.2d 800, 812.

**N.D.Ill.**2009. Com. (d) quot. in case quot. in sup. Former employee sued former employer and supervisor, alleging, inter alia, that defendants wrongfully caused her to suffer "mental stress." Granting defendants' motion to dismiss, this court held that defendants' alleged conduct in terminating plaintiff in violation of the Age Discrimination in Employment Act, as well as "publicly scolding" her and "shouting venomously" at her, was not enough to constitute extreme and outrageous conduct so as to be actionable as intentional infliction of emotional distress. The court pointed out that the complaint was devoid of any factual material to support plaintiff's conclusory allegation that she "reasonably found the behavior to be more than petty or mere insults." Curran v. JP Morgan Chase, N.A., 633 F.Supp.2d 639, 643.

**N.D.Ill.**2004. Com. (d) quot. in ftn. and quot. in case quot. in ftn. Former county jail corrections officers sued fellow officers, supervisors, and county, alleging harassment and retaliation for plaintiffs' expressed willingness to disclose instances of excessive force used against inmates. Denying in part defendants' motion to dismiss, this court held, inter alia, that plaintiffs stated claim for intentional infliction of emotional distress where they alleged a death threat and deliberate acts, such as not providing backup when requested and not investigating a prisoner attack, all of which, in prison context, put officers in harm's way. Fairley v. Andrews, 300 F.Supp.2d 660, 667.

**N.D.Ill.**2004. Com. (d) quot. in case quot. in disc. City resident who allegedly was threatened by her sister brought federal and state-law claims against police officers and city after officers failed to investigate resident's allegations or arrest resident's sister. Granting officers' motion for summary judgment, the court held that, as to resident's intentional-infliction-of-emotional-distress claim, resident failed to allege any conduct by officers that was so extreme or outrageous as to go beyond all possible bounds of decency, nor did she identify any severe emotional distress suffered as a result of officers' unactionable laughter and inappropriate comments. Farrar v. Bracamondes, 332 F.Supp.2d 1126, 1131.

**N.D.Ill.**2003. Com. (d) quot. in sup. and quot. in case quot. in sup. Police officer for public railroad corporation sued corporation and supervisor, among others, for, in part, intentional

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 321 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

infliction of emotional distress, after he was exonerated of charges of robbery and possession of a controlled substance. Denying in part defendants' motion to dismiss, the court held, inter alia, that plaintiff's allegations that supervisor made false statements to city police officers, withheld exculpatory evidence, and testified falsely at plaintiff's criminal trial stated a claim for intentional infliction of emotional distress against supervisor and vicariously against corporation. Bergstrom v. McSweeney, 294 F.Supp.2d 961, 969.

**N.D.Ill.**2003. Com. (d) quot. in case quot. in disc. African-American plaintiff sued city and police officers for, in part, intentional infliction of emotional distress, after officers refused to investigate and arrest plaintiff's sister, who had threatened plaintiff with bodily harm, and laughed at a threatening voicemail message left by plaintiff's sister. Denying in part defendants' motion to dismiss, the court held, inter alia, that, although the facts that plaintiff alleged did not qualify as extreme or outrageous, as required to support a claim for intentional infliction of emotional distress, federal notice-pleading standards did not require her to allege all facts in support of her claim. Farrar v. City of Chicago, 291 F.Supp.2d 747, 754.

**N.D.Ill.**2002. Coms. (d) and (j) quot. in cases quot. in disc. Former employee sued former employer and its parent company, asserting federal-law claims for discrimination based on sex and disability, and state-law claims in tort and contract. Denying in part defendant's motion to dismiss, the court held, inter alia, that plaintiff's allegations that, despite numerous complaints, she was subjected to a repeated pattern of sexual harassment for almost six years sufficed to state a claim of intentional infliction of emotional distress in a notice-pleading regime. Arnold v. Janssen Pharmaceutica, Inc., 215 F.Supp.2d 951, 961.

**N.D.Ill.**2002. Com. (d) quot. in case quot. in sup., com. (e) cit. in sup. Female employees sued former employer and supervisor for intentional infliction of emotional distress, inter alia, alleging sexual harassment and hostile work environment. This court denied defendants' motion to dismiss the emotional-distress claim, holding, inter alia, that the misconduct alleged by plaintiffs might rise to the requisite level of outrageousness. Plaintiffs sufficiently alleged inappropriate and offensive sexual comments, unwelcome and unwanted sexual advances, and numerous occasions of harmful and offensive touching by their superior. Plaintiffs further alleged that employer knew of the sexual harassment and discrimination and, in response to complaints, retaliated by raising performance standards or directly discharging each plaintiff. Spahn v. International Quality & Productivity Center, 211 F.Supp.2d 1072, 1076.

**N.D.Ill.**2002. Com. (d) quot. in disc. Employee sued former employer and supervisor for, in part, intentional infliction of emotional distress, alleging that she was sexually harassed by supervisor, and that employer retaliated against her for complaining about sexual harassment by changing her working conditions and then firing her. This court granted in part employer's motion for summary judgment, holding, inter alia, that since plaintiff's only theory of recovery on emotional-distress claim sounded in retaliation, it was not independent of Illinois Human Rights Act, and was preempted. The court noted that although supervisor's assault was boorish, offensive, and inappropriate, and changes in plaintiff's work environment that followed were unpleasant, those

actions alone were not outrageous; however, a jury could have found that changes in work environment were retaliatory, and therefore extreme and outrageous. Thomas v. Habitat Co., 213 F.Supp.2d 887, 898.

**N.D.Ill.**2000. Com. (d) quot. in case quot. in disc. A man who was prosecuted for the murder of his wife and acquitted by a jury sued a police officer, the sheriff, and the county coroner for intentional infliction of emotional distress, among other claims. This court granted defendants summary judgment, holding, inter alia, that defendants' conduct did not rise to the level required for intentional infliction of emotional distress, because plaintiff did not allege that he was framed in the sense that evidence was planted, material perjury occurred, or exculpatory evidence was withheld from the prosecutors who ultimately made the decision to bring the case to the grand jury. Nugent v. Hayes, 88 F.Supp.2d 862, 869.

**N.D.Ill.**1999. Com. (d) quot. in case quot. in ftn. College athlete sued her former basketball coach, the university, and its board of trustees for sexual harassment and intentional infliction of emotional distress, among other claims. This court dismissed plaintiff's complaint, holding, inter alia, that plaintiff's emotional-distress claim was barred by the statute of limitations. The court noted that plaintiff's complaint did not include allegations of the kind of extreme and outrageous conduct that was required for this claim. Turner v. McQuarter, 79 F.Supp.2d 911, 918.

**N.D.Ill.**1998. Com. (j) quot. in case quot. in disc. A tenant who was evicted from her apartment sued the apartment owner and manager for, among other claims, intentional infliction of emotional distress, age discrimination, and sexual discrimination and harassment. This court granted defendants summary judgment, holding, inter alia, that defendants' conduct was not outrageous because, at the very most, plaintiff was subject to a few insults and the disfavor of building management. In addition, plaintiff failed to provide evidence of severe emotional distress. Despite plaintiff's claims of suffering anxiety, sleepless nights, nightmares, and a tarnished reputation, she did not provide evidence that she suffered distress so severe that no reasonable person could endure it. Cavalieri-Conway v. L. Butterman & Assoc., 992 F.Supp. 995, 1011, judgment affirmed 172 F.3d 52 (7th Cir.1999).

**N.D.Ill.**1997. Cit. in headnote, com. (d) cit. in case quot. in disc., com. (j) quot. in case quot. in disc. Individual who planned to write a book detailing his alleged drug use with nationally syndicated television talk-show host sued host for, inter alia, intentional infliction of emotional distress after defendant was quoted in tabloid newspaper as stating that plaintiff was a liar who could not be trusted or believed, and denying any prior relationship with him. Defendant moved to dismiss. Granting the motion, the court held, in part, that defendant's conduct was not sufficiently outrageous, nor was plaintiff's mental distress sufficiently severe, to give rise to an action for intentional infliction of emotional distress. Cook v. Winfrey, 975 F.Supp. 1045, 1048, 1054, 1055, affirmed in part, reversed in part 141 F.3d 322 (7th Cir.1998). See above case.

**N.D.Ill.**1996. Cit. in headnote, coms. (d) and (j) quot. in case quot. in disc. Former employee sued former supervisor and employer for, inter alia, intentional infliction of emotional distress,

after supervisor rated his performance as poor and placed him on a "performance action plan." Defendants moved to dismiss. Granting the motion, the court held that defendants' conduct was not so outrageous as to be considered intolerable or extreme, nor could plaintiff's alleged emotional distress be deemed unendurable. Lewis v. Cotton, 932 F.Supp. 1116, 1116, 1118.

**N.D.Ill.**1995. Com. (d) quot. in case quot. in sup., illus. 1 quot. in sup. A female employee and her child sued her employer and her supervisor for, among other claims, intentional infliction of emotional distress, alleging that the supervisor's harassment caused employee to suffer severe stress, mental anguish, sleeplessness, embarrassment, and humiliation, which proximately caused the premature birth of her son. This court, among other dispositions, granted defendants' motion to dismiss the child's emotional-distress claim, holding, inter alia, that a fetus could not have suffered emotional distress. However, the court refused to dismiss the mother's emotional-distress claim, holding that to subject an expectant mother to repeated harassment of the type alleged at the workplace, at home, and at the hospital immediately prior to labor—including chastising her for missing work when she had gone into premature labor—could indeed be extreme and outrageous conduct. Patterson v. Xerox Corp., 901 F.Supp. 274, 278, 279.

**N.D.Ill.**1995. Com. (d) cit. in case quot. in sup. Woman sued town and individual police officers for, inter alia, intentional infliction of emotional distress after officers conducted a warrantless search of her home, attempted to elicit a bribe from her, and provided false testimony in order to have her indicted and tried for intimidation. Defendants moved to dismiss on the ground that the allegations were insufficient. Granting in part and denying in part the motion, the court held that defendants abused their positions of power when they unsuccessfully demanded a bribe from plaintiff, then tapped her phone and fabricated testimony in order to secure the indictment, conduct the court believed would lead an average community member to become aroused and cry, "Outrageous!" Treece v. Village of Naperville, 903 F.Supp. 1251, 1260.

**N.D.Ill.**1994. Com. (d) quot. in case quot. in disc. Former employee sued her former employer, asserting civil rights and other claims, including intentional infliction of emotional distress, allegedly arising from her work environment. Granting in part employer's motion to dismiss, the court held, inter alia, that, under Illinois law, allegations that employee was discriminated against for taking pregnancy leaves, was exposed to a work atmosphere of offensive and tasteless humor of a sexual nature, was given demeaning work assignments, was sexually harassed and discriminated against in promotions and transfers, and was forced to endure retribution and harassment designed to prevent women from obtaining the status of partner in the company were insufficient to support an emotional distress claim. Piech v. Arthur Andersen & Co., S.C., 841 F.Supp. 825, 831.

**N.D.Ill.**1994. Com. (d) quot. in case quot. in sup. In employment-discrimination case, former employee asserted a pendent state tort claim against former employer for intentional infliction of emotional distress. Granting defendant's motion to dismiss, the court held, inter alia, that plaintiff did not state a claim for intentional infliction of emotional distress, since plaintiff's allegations of disparate treatment by her former supervisor, albeit unpleasant and humiliating, were not extreme enough to constitute outrageous conduct; moreover, plaintiff failed to allege that supervisor either

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 324 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

specifically intended to cause or knew that her oppressive behavior had a high probability of causing plaintiff emotional distress, and plaintiff failed to plead actionable emotional distress. Whitehead v. AM Intern., Inc., 860 F.Supp. 1280, 1291.

**N.D.Ill.** 1993. Com. (d) quot. in part in case quot. in sup. The former director of human services for a nonprofit library organization sued the organization for race and sex-based employment discrimination and also asserted a claim for intentional infliction of emotional distress. This court granted the organization partial summary judgment, holding, inter alia, that, under Illinois law, even if the plaintiff had been the subject of intentional racial discrimination, her allegations against the organization of inadequate notice to prepare for meetings, denial of secretarial support, failure to take action on anonymous racially insulting messages directed at her, and various personal affronts failed to show conduct so outrageous or extreme as to support an emotional distress claim. Gibson v. American Library Ass'n, 846 F.Supp. 1330, 1340.

**N.D.Ill.** 1993. Com. (g) quot. in case quot. in disc. Former employee sued former employers and several individual employees and officers for intentional infliction of emotional distress, among other claims, due to alleged sex discrimination and retaliatory discharge. In determining whether plaintiff's claim was preempted by § 301 of the National Labor Relations Act, the court said that the claim was preempted only if application of state law required interpreting a collective bargaining agreement. Denying in part defendants' joint motion for summary judgment, the court said that plaintiff was not alleging that defendants' "extreme and outrageous" conduct derived from their abuse of procedures established under the collective bargaining agreement, but that it stemmed from their alleged concoction of theft allegations against her for the purpose of firing her; therefore, the court found that the claim was not preempted by the Act. Pelech v. Klaff-Joss, LP, 828 F.Supp. 525, 532.

**N.D.Ill.** 1990. Com. (d) quot. in sup. and quot. in case quot. in sup. A female worker sued her former employer and a supervisor for sexual harassment, retaliatory discharge, and intentional infliction of emotional distress. This court denied the defendants' motion for summary judgment, holding, inter alia, that the supervisor's lewd remarks and comments, while vulgar and unprofessional, were not so outrageous and extreme as to give rise to intentional infliction of emotional distress, on their own, but that his alleged subsequent pattern of retaliatory conduct against the plaintiff for her complaint about his prior conduct was outrageous; therefore, facts were alleged that could support recovery for this tort. The court stated that it would be reasonable to find that the defendant's alleged retaliatory conduct of undermining the plaintiff's authority within the office and generally making it more difficult to do her job facilitated the plaintiff's termination by the company. Class v. New Jersey Life Ins. Co., 746 F.Supp. 776, 778.

**N.D.Ill.** 1988. Com. (d) quot. in case cit. in disc. A female employee brought a lawsuit alleging claims of intentional infliction of emotional distress against her supervisor and her employer, and a Title VII sexual discrimination count against her employer. She alleged that her supervisor had subjected her to a hostile and abusive work environment by repeatedly requesting and proposing sexual relations with her, using sexual innuendoes, subjecting her to unwelcome sexual advances,

Case 2:25-cv-00220   Document 25-3   Filed on 10/28/25 in TXSD   Page 325 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

and exposing himself to her. The defendants' motion to strike and dismiss the three counts was denied in part and granted in part by this court. The court, inter alia, did not dismiss the plaintiff's complaint on the pleadings as to the emotional distress count against the supervisor, reasoning that it could not conclude at that point of the lawsuit that the alleged course of sexual harassment was not extreme and outrageous. However, it dismissed the emotional distress count against the employer, determining that it was a respondeat superior claim preempted by the Illinois Workers' Compensation Act. Bailey v. Unocal Corp., 700 F.Supp. 396, 399.

**N.D.Ill.**1988. Coms. (d) and (j) quot. in case quot. in disc. Parents and their daughters sued the school district and four employees alleging a violation of their civil rights and intentional infliction of emotional distress after both girls were questioned and one was subjected to a physical examination during an investigation into possible child abuse. Denying in part the defendants' motion to dismiss, this court held, inter alia, that the nude physical examination of the younger child might constitute sufficiently outrageous conduct to give rise to a claim for emotional distress. Landstrom v. Illinois Dept. of Child. & Fam. Serv., 699 F.Supp. 1270, 1281, decision affirmed 892 F.2d 670 (7th Cir.1990).

**N.D.Ill.**1988. Com. (e) cit. in disc. Plaintiff sued several city and county police officers, the city, and the county alleging a violation of his civil rights and various tort claims, including intentional infliction of emotional distress, resulting from his arrest, detainment, and beating by the officers. The court granted in part and denied in part the defendants' motions to dismiss, holding, inter alia, that plaintiff had not pleaded all of the elements of intentional infliction of emotional distress under Illinois law. Although he pleaded intentional conduct that could be deemed extreme and outrageous, his bare allegation that he suffered "severe emotional distress" was insufficient to plead that element of the claim. Valliere v. Kaplan, 694 F.Supp. 517, 523.

**N.D.Ill.**1987. Com. (d) cit. in disc. The landlord of a low-income apartment building with mostly black tenants sued the city government for civil rights violations and intentional infliction of emotional distress. This court granted in part and denied in part the defendant's motion to dismiss, holding, inter alia, that evidence of the defendant's racially motivated conduct, which included threats, harassment, abuse of power, and ultimately, termination of the plaintiff's business, was sufficiently outrageous and extreme in degree to go beyond all bounds of decency and to support a claim for intentional infliction of emotional distress. Dale v. City of Chicago Heights, 672 F.Supp. 330, 333.

**N.D.Ill.**1987. Cit. in disc., com. (j) quot. in case cit. in disc. The maternal grandparents of a child who resided at their home in Illinois induced a family to adopt the child without obtaining the consent of the child's legal father. The father sued the maternal grandparents for intentional infliction of emotional distress. The court denied the defendant's motion to dismiss and held that the intensity and duration of the distress caused by the grandparents' behavior was sufficient to maintain an action for intentional infliction of emotional distress. The court said that, even though the plaintiff resided in Maryland, Illinois had the most significant relationship to the issues in

dispute; therefore, the court applied the law of Illinois to test the claims stated in the complaint. Kunz v. Deitch, 660 F.Supp. 679, 684.

**N.D.Ill.**1987. Com. (d) quot. in sup., com. (g) quot. in case quot. in disc. The beneficiaries of life insurance policies sued the life insurance companies for intentional infliction of mental distress after the companies refused to pay death benefits based on their finding that the insured committed suicide. The beneficiaries, the mother and sister of the insured, alleged that the insurance investigator called the insured impotent, psychotic, a liar, and mentally ill. This court granted the insurance companies' motion for summary judgment, reasoning that the defendants' conduct was not so outrageous in character, or so extreme in degree, as to go beyond all possible bounds of decency where the companies had a legitimate reason for pressing the plaintiffs about the circumstances surrounding the insured's death even though such conduct was certain to cause emotional distress. Zakarian v. Prudential Ins. Co. of America, 652 F.Supp. 1126, 1138.

**N.D.Ill.**1985. Com. (d) quot. in sup. Husband and wife insureds sued to recover medical expenses for which their health insurer failed to compensate them. Their complaint alleged, inter alia, that the insurer intentionally inflicted emotional distress upon them by causing an outrageous delay in settling the insurance claim. The district court granted the insurer's motion to dismiss three counts of the complaint, holding, inter alia, that Illinois case law interpreting an insurance statute barred the insureds from bringing an intentional infliction of emotional distress claim. The court noted that even in the absence of such precedent, the claim would not succeed because the insureds failed to show that the delay in settling the claim constituted such conduct as could be considered outrageous beyond decency. Langendorf v. Travelers State Ins. Co., 625 F.Supp. 1103, 1107.

**N.D.Ill.**1984. Com. (d) quot. in sup., com. (e) cit. in sup. A black employee resigned his position as a cook when his employer and owner of the restaurant said that the employee was a "nigger" and "not a human being." The employee subsequently brought a civil rights action against his former employer. The court denied the defendant's motion to dismiss, holding that whether the employee was confronted with an aggravated situation beyond ordinary discrimination and therefore acted reasonably in resigning his position before having sought legal redress was a question of fact. The court discussed in detail the impact of changing social conditions and the resulting judicial decisions affording relief for victims of ethnic slurs. Bailey v. Binyon, 583 F.Supp. 923, 931, 932.

**N.D.Ill.**1983. Com. (d) quot. in part in sup. and com. (j) cit. in disc. The employee of the defendant corporation brought this action to recover damages for intentional infliction of emotional distress. The court held that the employer's refusal to reinstate the plaintiff despite an arbitration award in his favor did not constitute extreme and outrageous conduct. The court also found that the employer's act of giving the plaintiff's name to the FBI as part of their investigation of the "Tylenol Murders" did not constitute extreme and outrageous conduct. Nor was it extreme and outrageous conduct to send the plaintiff a written notification of his termination, detailing the underlying reasons. Because the plaintiff's allegations were insufficient to state a claim under the law of Illinois, the defendant's motion for summary judgment was granted. Balark v. Ethicon, Inc., 575 F.Supp. 1227, 1231.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 327 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**N.D.Ill.**1983. Coms. (d), (f) and (j) quot. in part in case quot. in disc. A motion picture studio moved to dismiss a pro se complaint alleging the improper inclusion of ethnic jokes in a motion picture. Searching for a viable claim, the court considered, inter alia, whether an action would lie for intentional infliction of emotional distress. It concluded that the requisite outrageous conduct could not be imputed to the defendant and that the requisite severe distress had not been suffered by the plaintiff. Since no legal theory could be found to support the complaint, the defendant's motion was granted. Pawelek v. Paramount Studios Corp., 571 F.Supp. 1082, 1085.

**N.D.Ill.**1982. Com. (d) quot. in disc. The plaintiff sued the defendant to recover under a life insurance policy. In Count I the plaintiff alleged that the defendant unreasonably refused to pay the insurance proceeds, and in Count II she alleged breach of the duty of good faith and intentional infliction of emotional distress. This court granted the defendant's motion for partial summary judgment as to Count I, holding that the insured had no claim for vexatious and unreasonable refusal to pay the claim. The defendant acted in good faith when it rejected the plaintiff's claim because of the omission of medical information which the defendant viewed as a material misrepresentation. There was no indication that the defendant's agent knew of the specific medical condition which the defendant claimed constituted the misrepresentation; hence, the defendant was not estopped from refusing to pay the claim. The court granted the defendant's motion for summary judgment as to Count II, holding that a statute which provided for attorneys' fees and other costs preempted the field of extracontractual damages arising out of the defendant's alleged bad faith refusal to settle a claim. The plaintiff did not state a claim for intentional infliction of emotional distress, as the undisputed facts clearly demonstrated as a matter of law that the defendant's conduct fell far short of being so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. The plaintiff's allegation of malice or evil motive was not by itself sufficient to show the requisite degree of outrageousness. Smith v. Metropolitan Life Ins. Co., 550 F.Supp. 896, 901.

**N.D.Ill.**1980. Com. (e) cit. in sup. The plaintiff brought this action against his employer and the employer's health insurance company seeking compensatory and punitive damages based upon, inter alia, intentional infliction of emotional harm. The plaintiff had been covered by the insurer's medical policy during his employment. The plaintiff had become totally disabled while working and was eventually forced to stop working. The insurer incorrectly told the plaintiff that he was ineligible to continue receiving any more medical benefits because his employment had been terminated. The insurer also failed to investigate the merits of the plaintiff's claim that he had been terminated because of his total disability. The insurance company moved to dismiss the claim. The court cited the Restatement in holding that the insurance company's misrepresentation of the plaintiff's insurance coverage and failure to investigate the merits of the plaintiff's claim constituted precisely the type of abusive behavior that gives rise to the element of extreme and outrageous conduct necessary for a finding of intentional infliction of emotional harm. The court also found that the plaintiff suffered severe emotional harm which had been caused by the insurance company's conduct and that the conduct was reckless in nature. Thus, the court denied the dismissal of that claim. Strader v. Union Hall, Inc., 486 F.Supp. 159, 163.

**S.D.Ill.**

**S.D.Ill.**2015. Com. (d) quot. in cases quot. in sup. Registered nurse who formerly worked for hospital brought claims for violations of the Illinois Human Rights Act (IHRA) and intentional infliction of emotional distress (IIED) against hospital and former supervisor, alleging that supervisor sexually harassed her by sending her inappropriate text messages and by retaliating against her when she requested that such texts cease. This court granted in part defendants' motion to dismiss, holding that plaintiff's common-law IIED claim was preempted by the IHRA, because it was intricately linked to her sexual-harassment claims under the IHRA. The court noted that, under Illinois law, which followed Restatement Second of Torts § 46, an IIED claim required more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities; the defendant's conduct had to be such that the recitation of the facts to an average person in the community would arouse resentment against the actor and lead the person to exclaim "Outrageous!" Carwyle v. Anna Hospital Corporation, 102 F.Supp.3d 1024, 1035.

**S.D.Ill.**2006. Com. (e) cit. in sup., com. (j) quot. in case quot. in sup. Mother who refused to allow her children to attend certain school activities on the basis that they offended her religious beliefs brought civil-rights suit against school district and superintendent, after superintendent allegedly reported plaintiff to the state child-services department as an "unfit" parent, and told department staffers that her children were "in danger." This court denied superintendent's motion to dismiss plaintiff's additional state-law claim for intentional infliction of emotional distress, rejecting as unsupported superintendent's argument that plaintiff pled nothing more than insults and indignities, rather than the requisite extreme and outrageous conduct. The court observed that a key factor in the "extreme and outrageous" calculus was the degree of authority that a defendant held in relation to a plaintiff, noting that superintendent's position vis-à-vis child services and plaintiff bore consideration. Stanley v. Carrier Mills-Stonefront School Dist. No. 2, 459 F.Supp.2d 766, 779.

**S.D.Ill.**2005. Com. (d) quot. in case quot. in disc. After former restaurant employee who had been injured on the job and sought medical treatment asserted his rights under the Illinois Workers' Compensation Act, he sued employer and his supervisor for harassment, retaliatory discharge, and intentional infliction of emotional distress, alleging that supervisor's conduct was intended to subject plaintiff to work-related stress and pressure, and eventually his termination. This court dismissed the claims against the supervisor, holding, inter alia, that supervisor's conduct was not extreme and outrageous, since it was such workplace conduct that Illinois courts consistently found insufficient to support a claim for intentional infliction of emotional distress. Plaintiff also failed to allege that his distress was severe. Rosas v. BB Holdings Partnership, 362 F.Supp.2d 986, 991.

**N.D.Ind.**

**N.D.Ind.**2016. Com. (d) quot. in case quot. in sup. (general cite). Truck driver brought a claim for intentional infliction of emotional distress against trucking company and teacher of a driver-orientation program at company's facility, following an incident in which teacher allegedly pushed

him in the chest with enough force to cause him to move backwards. This court granted defendant's motion for partial summary judgment, holding that plaintiff failed to state a claim for intentional infliction of emotional distress. The court reasoned that teacher's alleged conduct was not extreme or outrageous, and that plaintiff failed to present sufficient evidence that the conduct caused him severe emotional distress, as required to state a claim for intentional infliction of emotional distress under Restatement Second of Torts § 46. Jimenez v. CRST Specialized Transportation Management, Inc., 213 F.Supp.3d 1058, 1064.

**N.D.Ind.**2013. Com. (d) cit. in sup., quot. and adopted in cases cit. and quot. in sup. Homeowners brought a claim for intentional infliction of emotional distress (IIED), inter alia, against, among others, bank that was the assignee of title to a property adjacent to homeowners' property, which the assignor had acquired through foreclosure, alleging that bank, despite knowing that it never had any interest in homeowners' property, ordered its agents to break into homeowners' property when they were out of town, remove their belongings, and otherwise ransack the home. Denying defendant's motion to dismiss, this court held that plaintiffs stated a claim for IIED, because the facts sufficiently alleged that defendant knew that severe emotional distress was certain, or substantially certain, to result from its conduct. The court pointed to evidence that, based on recorded property records, defendant knew that it had no legal interest in the property, but nevertheless ordered contractors to break into the house, change the locks, confiscate most of plaintiffs' personal property, trash the home, leave the door standing open such that debris and dead animals were later found inside, and list the home for sale with a realtor. Gordon v. Bank of New York Mellon Corp., 964 F.Supp.2d 937, 945-947.

**N.D.Ind.**2010. Quot. in case quot. in sup. University student brought various claims against newspaper in connection with its publication of an article, in print and on an interactive website, regarding criminal charges that were pending against him for falsely reporting that he had been assaulted. Granting defendant's motion for judgment on the pleadings as to plaintiff's claim for intentional infliction of emotional distress, this court held, among other things, that plaintiff neglected to demonstrate that publishing the article was comparable to other acts found to be extreme and outrageous by Indiana courts; moreover, inviting readers' comments about the article and publishing them on the website did not constitute the outrageous conduct element necessary for such a claim, because, even if the comments could be considered outrageous, defendant's actions in that regard were not. Collins v. Purdue University, 703 F.Supp.2d 862, 871.

**N.D.Ind.**2010. Cit. in case cit. in sup., com. (d) quot. and adopted in cases cit. in sup. Insured who claimed to have entered into a whole life insurance policy with insurer providing that she would no longer need to pay premiums if she became totally disabled brought various claims against insurer, alleging that, although she submitted proof of her total disability, insurer refused to waive her premiums. Granting insurer's motion to dismiss insured's claim for intentional infliction of emotional distress, this court held that insured failed to show that insurer's conduct in, among other things, contacting her and requesting additional medical proof of her disability exceeded all possible bounds of decency so as to satisfy the claim's element of extreme and outrageous conduct. Skinner v. Metropolitan Life Ins. Co., 829 F.Supp.2d 669, 684, 685.

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 330 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**N.D.Ind.**2006. Cit. in sup., com. (d) quot. in cases quot. in sup. (cit. as § 46), com. (i) cit. in case cit. in sup. Parent and high-school student sued school, school's principal, and teacher for, in part, intentional infliction of emotional distress, alleging that teacher engaged in improper Internet communications with student. Denying summary judgment for teacher and granting summary judgment for school and principal, this court held that a fact question existed as to whether teacher's conduct was extreme and outrageous, and that a reasonable factfinder could conclude that teacher's inappropriate communications caused student great distress, to the point where she left her school and talked of suicide; the court found, however, that the response of school and principal, including contacting law enforcement and reprimanding teacher, did not exceed all possible bounds of decency. Chivers v. Central Noble Community Schools, 423 F.Supp.2d 835, 857.

**N.D.Ind.**1997. Com. (d) quot. in case quot. in disc. Former grocery-store manager brought Title VII action against her former employer and supervisor, alleging that she was demoted to a cashier position because of her gender. Plaintiff also asserted a claim for intentional infliction of emotional distress. Defendants moved for summary judgment. Granting the motion in part and denying it in part, the court held that material factual issues existed as to whether defendants' demotion decision was motivated by gender bias; however, the claim for intentional infliction of emotional distress failed because the conduct complained of, which included withholding pertinent information from plaintiff and scheduling her workday in such a way as to prevent her from fulfilling her managerial duties, was not so extreme or outrageous as to be considered intolerable in civilized society. King v. Wiseway Super Center, Inc., 954 F.Supp. 1289, 1295.

**N.D.Ind.**1995. Cit. in headnote, quot. in case quot. in sup. Seventh-grade female students who were strip-searched by teacher and others after gym class in an effort to recover a sum of $4.50 that was missing sued the school board, principal, superintendent, and teachers, asserting claims based on violations of their constitutional rights, as well as state law claims. Granting in part defendants' motion for summary judgment, the court held, inter alia, that plaintiffs' claim for intentional infliction of emotional distress failed, because plaintiffs presented no evidence that defendants intended to cause emotional distress. Oliver by Hines v. McClung, 919 F.Supp. 1206, 1210, 1221.

**N.D.Ind.**1994. Quot. in case quot. in sup. High school teacher sued the school and others, asserting state and federal claims arising from various incidents occurring during the course of his employment, including a claim for intentional infliction of emotional distress. Granting summary judgment for defendants on the emotional-distress claim, the court held, inter alia, that, under Indiana law, the claim was barred by the Workers' Compensation Act, as plaintiff had been subjected to numerous incidents of alleged harassment that were, for the purpose of the Act, "by accident," and found that the alleged tortious conduct failed to satisfy the standard of extreme and outrageous conduct intended to cause severe emotional distress. Eggleston v. South Bend Community School Corp., 858 F.Supp. 841, 859.

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 331 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**N.D.Ind.**1993. Quot. and cit. in case quot. in sup. Female employee of poultry farm sued her co-workers, supervisors, and employer for sexual harassment, discrimination, and other civil rights claims and asserted pendent Indiana state law claims for intentional infliction of emotional distress and invasion of privacy. Denying defendants' motion to dismiss for, among other things, failure to state a claim under Indiana law, the court held, inter alia, that the allegation by plaintiff that she was the victim of sexual harassment and discrimination asserted under Indiana law extreme and outrageous conduct sufficient to support an emotional distress claim even without proof of a "host tort" in connection with the claim. Garus v. Rose Acre Farms, Inc., 839 F.Supp. 563, 569.

**S.D.Ind.**

**S.D.Ind.**2014. Com. (d) cit. and quot. in sup., coms. (e) and (f) cit. in case cit. in sup. Party attendee brought a state-law claim for intentional infliction of emotional distress (IIED), inter alia, against city police department and police detective who investigated her allegations that she was gang-raped at the party, alleging that detective inflicted emotional distress upon her when he insinuated that she had "asked for" the sexual assault, used expletives to refer to her parents in her presence, and failed to engage in a proper investigation. Granting defendants' motion to dismiss plaintiff's IIED claim, this court held that, while plaintiff successfully pled the element of "extreme and outrageous" conduct against detective, and adequately pled that his course of conduct caused her severe emotional distress, recovery against him and his employer was barred by law-enforcement immunity. The court noted that, in defining the type of extreme and outrageous conduct necessary to give rise to liability, Indiana courts had turned for guidance to Restatement Second of Torts § 46, Comment *d*. Snyder v. Smith, 7 F.Supp.3d 842, 872, 873.

**S.D.Ind.**2013. Com. (d) quot. in cases quot. in sup. Caucasian former employee of county public library, along with her African-American boyfriend, brought a pendent state-law claim for intentional infliction of emotional distress (IIED), inter alia, against library, employee's former supervisor, and library director in connection with allegations of discriminatory treatment by supervisor. This court granted defendants' motion to dismiss plaintiffs' IIED claim against library director, holding that, because plaintiffs failed to allege any discriminatory animus on the part of director, director's decision to terminate employee for failing to follow orders and for unprofessional conduct could not be deemed extreme and outrageous conduct under Indiana law, as required to state a claim for IIED. The court, however, denied defendants' motion to dismiss the IIED claim as to library, holding that library was potentially liable under a theory of respondeat superior, because supervisor's actions—in criticizing employee's job performance for the first time after she became aware of employee's intimate relationship with her boyfriend, disapproving of that relationship because "white women should not date African American men," and informing employee that boyfriend was no longer allowed to enter the library when employee was working —could rise to the level of extreme and outrageous conduct. Rihm v. Hancock County Public Library, 954 F.Supp.2d 840, 858.

Case 2:25-cv-00220 Document 25-3 Filed on 10/28/25 in TXSD Page 332 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

**S.D.Ind.**2009. Com. (d) quot. in case quot. in sup. As part of their suit alleging gender-based discrimination, male former employees of mental-health facility operated by state brought a pendent state-law claim for intentional infliction of emotional distress (IIED) against state and state's family and social services administration. Granting defendants' motion for summary judgment, this court held that defendants' alleged actions in prohibiting plaintiffs from wearing shorts to work, restricting them from playing cards while on duty, stopping them from using their own electronic appliances, like coffee makers, at work, and requiring them to respond to "Code Green" emergencies more frequently than other employees fell far short of the outrageous conduct required to support plaintiffs' IIED claim. Keller v. Indiana Family and Social Services Admin., 639 F.Supp.2d 928, 946.

**S.D.Ind.**2007. Adopted in case cit. in disc.; com. (d) quot. in sup. (cit. as § 46). Parents brought various claims individually and on behalf of their eighth-grade son and his sister against public-school corporation, alleging defendant's lack of response to bullying of the children by schoolmates over a two-year period. Granting defendant's motion for summary judgment on plaintiffs' claim of intentional infliction of emotional distress, this court found that there had been no evidence presented to support a reasonable inference that defendant or its employees intended to inflict emotional distress upon the children; additionally, the court held that, regardless of how negligent defendant's alleged conduct might have been, none of it rose to the level required under Indiana law of being atrocious and utterly intolerable in a civilized society. Seiwert v. Spencer-Owen Community School Corp., 497 F.Supp.2d 942, 957.

**S.D.Ind.**2006. Subsec. (1) and com. (d) quot. in part in cases quot. in sup. (general cites). Former employee sued employer, claiming, in addition to his federal discrimination claims, that employer committed the tort of intentional infliction of emotional distress under Indiana law when it unlawfully terminated his employment within days of his wife's suicide attempt. Granting summary judgment for defendant, this court held that there was no evidence that the termination caused plaintiff the requisite severe emotional distress contemplated by this theory of liability or that defendant intended to inflict severe emotional distress on plaintiff, and the court declined to find outrageous and extreme an employer's decision to terminate its business relationship with an employee it believed did not meet its standards. Tracy v. Financial Ins. Management Corp., 458 F.Supp.2d 734, 747.

**S.D.Ind.**2000. Quot. in case quot. in disc. Former sixth-grade students who had been subjected to a strip-search by their teacher sued the teacher and the superintendent and trustees of the county school corporation for, in part, intentional infliction of emotional distress. Granting in part defendants' motion for summary judgment, the court held, inter alia, that the claim failed because plaintiffs produced no evidence that defendant teacher intended to inflict emotional distress upon them. Higginbottom ex rel. Davis v. Keithley, 103 F.Supp.2d 1075, 1089.

**S.D.Ind.**1999. Quot. in case quot. in disc. Participant at public meeting of county master plan steering committee sued committee cochairs for violations of 42 U.S.C. § 1983, alleging that defendants violated her rights under the First Amendment when they dissolved the meeting as

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 333 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

she was speaking. Plaintiff also asserted a state-law claim for intentional infliction of emotional distress. Granting in part and denying in part defendants' motions to dismiss, the court held, inter alia, that plaintiff's allegation of an abridgement of her right to free speech survived the motions to dismiss; however, plaintiff had failed to establish that defendants acted in an extreme and outrageous manner, or that they intended to cause her severe emotional distress. Thompson v. Huntington, 69 F.Supp.2d 1071, 1077.

**S.D.Ind.**1996. Quot. in case quot. in sup. Female former employees sued their former employer and former supervisor for sexual harassment in violation of Title VII and brought state-law claims against them for invasion of privacy and intentional infliction of emotional distress. Denying defendant supervisor's motion for summary judgment on plaintiffs' claim for intentional infliction of emotional distress, the court held, inter alia, that a reasonable trier of fact could conclude that defendant's conduct in persistently commenting on plaintiffs' physical appearance and on how their physical appearance impacted on their sex lives was outrageous. Van Jelgerhuis v. Mercury Finance Co., 940 F.Supp. 1344, 1369.

**S.D.Ind.**1992. Cit. in case cit. in disc. An emotionally handicapped student and his legal guardians sued various school corporations and their employees and officials for, among other claims, intentional infliction of emotional distress, after defendants allegedly improperly attempted, via administrative and criminal proceedings, to remove the student from his guardians and force him from the school system in retaliation for plaintiffs' lawful attempts to force defendants to provide a proper education. Entering summary judgment for defendants, this court held, inter alia, that although Indiana law recognized a claim for intentional infliction of emotional distress, plaintiffs' allegations either did not support such a claim or supported a claim barred by the Indiana Tort Claims Act. The court stated that defendants' acts, allegedly constituting malicious prosecution and abuse of process, could not constitute the requisite intentional wrongdoing for a viable claim since defendants were immune from all tort liability arising from those kinds of acts under the Tort Claims Act. Norris by Norris v. Board of Educ., 797 F.Supp. 1452, 1461.

**S.D.Ind.**1982. Cit. in disc. The plaintiff was discharged from his employment by the defendant. The plaintiff brought an action to recover, among other things, for wrongful discharge and intentional infliction of emotional distress. The defendant moved to dismiss each of the claims for failure to state a claim upon which relief could be granted. The court denied the motion to dismiss on the wrongful discharge claim because the plaintiff's claim was an exception to the employment at will doctrine, as the plaintiff alleged that he was discharged for refusing to continue his participation in an anticompetitive scheme. With respect to the claim of intentional infliction of mental distress, the court concluded that if the plaintiff was the victim of retaliatory discharge resulting in emotional distress, he should include that element in his measure of damages for wrongful discharge. Accordingly, the court concluded that the emotional distress claim was surplusage and it was dismissed. Perry v. Hartz Mountain Corp., 537 F.Supp. 1387, 1390.

**N.D.Iowa,**

**N.D.Iowa,** 2021. Cit. in case quot. in ftn.; com. (e) quot. in case quot. in sup. Brazilian students filed claims for, among other things, intentional infliction of emotional distress against public community college, alleging that it misrepresented that students, as participants in its J-1 visa program, would complete internships related to their field of study and that they would work no more than 32 hours per week. This court granted without prejudice college's motion to dismiss students' emotional-distress claim, holding that students' allegations in support of that claim were nothing more than a formulaic recitation of the elements of such a claim. In making its decision, the court noted that, while Iowa courts referred to the tort as "intentional infliction of emotional distress," neither Restatement Second of Torts § 46 nor Iowa case law required proof of an intentional act; a reckless disregard of the probability of causing emotional distress was sufficient. Bucco v. Western Iowa Tech Community College, 555 F.Supp.3d 628, 661, 662.

**N.D.Iowa,** 2016. Com. (d) quot. in cases cit. and quot. in sup. Former employee sued former employer and other unknown defendants for, among other things, intentional infliction of emotional distress (IIED) in connection with his termination, alleging that an unknown defendant, with the intention of having employee fired, falsely reported to employer that employee made a racial slur at work. This court granted employer's motion for partial summary judgment, holding that employer could not be said to have engaged in a course of conduct exceeding all bounds of decency, as required to state such a claim under Iowa law and Restatement Second of Torts § 46. The court pointed out that, although employee initially claimed that the report was false, he later admitted to having used the racial slur at work. Newkirk v. GKN Armstrong Wheels, Inc., 168 F.Supp.3d 1174, 1199.

**N.D.Iowa**

**N.D.Iowa,** 2010. Com. (d) quot. in case quot. in sup. While divorce proceedings were pending, husband brought a pro se complaint asserting, inter alia, a claim for intentional infliction of emotional distress (IIED) against wife and others, alleging that defendants conspired to slander, libel, and defame him for the purpose of wrongfully denying him custody of his son, severely limiting his visitation with his son, and/or driving him from town. Denying defendants' motion to dismiss, this court held that plaintiff's allegations of defendants' outrageous conduct—e.g., that they sent out to 300 patrons of wife's dance school e-mails accusing plaintiff of being an abusive husband, and made a false report to the state agency of child protective services that husband had sexually abused son—were sufficient to support his IIED claim. McFarland v. McFarland, 684 F.Supp.2d 1073, 1090.

**N.D.Iowa,** 2002. Com. (d) quot. in case quot. in sup., com. (f) quot. in case quot. in sup. Former employee sued employer and supervisors, alleging race discrimination, retaliation, assault, and intentional infliction of emotional distress. Granting in part defendants' motions for summary judgment, this court held, inter alia, that alleged "strip search" by employer to determine if

Case 2:25-cv-00220    Document 25-3    Filed on 10/28/25 in TXSD    Page 335 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

employee was wearing recording device did not rise to level of outrageousness sufficient to support claim for intentional infliction of emotional distress. Weems v. Federated Mutual Ins. Co., 220 F.Supp.2d 979, 996.

**N.D.Iowa,** 1999. Coms. (d) and (f) quot. in disc., com. (f) quot. in disc. A parishioner sued a priest and other church officials, alleging sexual abuse, tortious infliction of emotional distress, and assault and battery, among other claims, after the priest allegedly fondled and kissed her. This court granted in part and denied in part defendants' motion to dismiss, holding, inter alia, that plaintiff did not state a viable claim for tortious infliction of severe emotional distress, because an unsolicited kiss from a purportedly celibate priest did not constitute outrageous conduct. Doe v. Hartz, 52 F.Supp.2d 1027, 1069.

**N.D.Iowa,** 1996. Com. (d) quot. in case quot. in disc. A high school sophomore told her parents the names and addresses of high school students who attended a party at her parents' farmhouse and caused over $1,500 in damage to the property. During the next three years, the school's students launched a host of verbal and physical assaults against the student, many of which took on a sexual nature. The student and her parents sued the school district, the principal, and the superintendent, alleging, among other claims, intentional infliction of emotional distress arising from defendants' inaction as to the peer sexual harassment. This court granted defendants partial summary judgment, holding, inter alia, that defendants' inaction in failing to protect the student from the harassment of her peers did not rise to the requisite level of outrageousness. Burrow By and Through Burrow v. Postville Comm., 929 F.Supp. 1193, 1210.

**N.D.Iowa,** 1995. Cit. in headnotes, cit. generally in disc., com. (d) quot. in case cit. in disc., quot. in case quot. in sup., com. (f) quot. in case quot. in sup. Employee who injured his back at work and who claimed he was discharged in retaliation for his intention to seek workers' compensation benefits sued his former employer for, inter alia, intentional infliction of emotional distress. Denying defendant's motion for summary judgment on the ground that its conduct was not outrageous, the court held that defendant's requirement that plaintiff submit to repeated medical examinations by a doctor of defendant's choice while it prepared not to pay the bills was sufficiently extreme that an average member of the community, upon learning of it, would exclaim, "Outrageous!" The court believed that a factfinder could find such behavior to be mean-spirited and petty in that it was likely to inflict financial hardship while simultaneously terminating plaintiff's employment and denying him workers' compensation benefits. Reedy v. White Consol. Industries, Inc., 890 F.Supp. 1417, 1421, 1441, 1441-1442, 1442.

**N.D.Iowa,** 1994. Cit. in headnotes, com. (d) quot. in cases cit. and quot. in disc., coms. (f) and (j) quot. in cases cit. in disc. Former assistant director of juvenile detention center sued center and its supervisor, alleging sexual harassment, wrongful discharge, and intentional infliction of emotional distress. Granting defendants' motion for summary judgment, the court held, inter alia, that, although plaintiff could make a sufficient showing of the elements for recovery on the tort of intentional infliction of emotional distress, plaintiff's claim was preempted by the Iowa Civil Rights Act (Act), because her allegations of outrageous conduct for the common law tort were

Case 2:25-cv-00220     Document 25-3     Filed on 10/28/25 in TXSD     Page 336 of 336

§ 46 Outrageous Conduct Causing Severe Emotional Distress, Restatement (Second) of...

cognizable as sexual discrimination, for which the exclusive remedy was found in the Act. Chester v. N.W. Iowa Youth Emergency Serv. Center, 869 F.Supp. 700, 701, 709-711.

**N.D.Iowa,** 1994. Coms. (d), (f), and (j) cit. generally in headnotes and quot. in cases cit. and quot. in sup. Former marketing executive for a television station sued the station following his discharge, asserting a pendent state law claim for intentional infliction of emotional distress, inter alia. Granting defendant's motion for summary judgment, the court held, in part, that, even if plaintiff's claim was not preempted by the Iowa Civil Rights Act, plaintiff failed to allege any sufficiently outrageous conduct to support his claim; at most, his allegations were that he was demoted abruptly, his position was assumed by the associate who had recommended his demotion, and he was fired after failing to meet new performance guidelines. The court also concluded that plaintiff's evidence of emotional distress was insufficient as a matter of law, since he merely asserted that it was the most trying time of his life, he could not sleep, his wife had blood-pressure problems, and he was emotionally stressed. O'Bryan v. KTIV Television, 868 F.Supp. 1146, 1148, 1164, 1165, affirmed in part, reversed in part 64 F.3d 1188 (8th Cir.1995).

**N.D.Iowa,** 1994. Com. (d) quot. in cases cit. in sup., coms. (f) and (j) quot. in part in cases quot. in sup. Former bank officer sued bank and chairman of its board of directors for intentional infliction of emotional distress, among other claims, after he was terminated following on-site audit by federal examiners that resulted in bank's reduced rating. The court granted defendants summary judgment, holding, inter alia, that, whether or not the court agreed with defendants' business decision to fire plaintiff, allocating to him a good share of blame for bank's problems, such basis for discharging at-will employee in responsible position was not outrageous; moreover, the court held that plaintiff's high blood pressure and anxiety and the destruction of his career and reputation were not severe enough to support the claim. Rouse v. Farmers State Bank of Jewell, Iowa, 866 F.Supp. 1191, 1216-1218.

**N.D.Iowa,** 1994. Coms. (d) and (f) cit. in headnotes and quot. in cases quot. in sup. Rehabilitation technician formerly employed at substance-abuse treatment and rehabilitation center brought constructive discharge, race discrimination, and pendent state-law claims against the center, managerial personnel, and the center's corporate parent. Granting defendants' motion for summary judgment, the court held, inter alia, that defendants' investigation of the accusations of plaintiff's cocaine use and their suggestion that plaintiff apply for another position at the center did not amount to the outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Thomas v. St. Luke's Health Systems, Inc., 869 F.Supp. 1413, 1419, 1440, affirmed 61 F.3d 908 (8th Cir.1995).

**N.D.Iowa,** 1994. Coms. (d) and (f) quot. in case quot. in sup. After being fired, female deli manager sued former employer for, among other claims, sexual discrimination, wrongful discharge, and intentional infliction of emotional distress. This court granted in part and denied in part defendant's motion for summary judgment, holding, in part, that defendant's alleged conduct was sufficiently outrageous to support an emotional distress claim. The court stated that if plaintiff could prove that she was terminated because she sought insurance benefits she believed had been promised her