UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-220 |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT CHRISTOPHER COOPRIDER'S COUNTERCLAIMS**

## TABLE OF CONTENTS

Table of contents ............................................................................................. i

Table of authorities ........................................................................................ ii

    I. Cooprider has failed to state a claim for malicious prosecution ..................... 1

    II. Cooprider has failed to state a claim for intentional infliction of emotional distress ................................................................................. 1

        A. Cooprider's answer fails to identify the conduct of Ms. Davis that qualifies as "extreme and outrageous" ..................................................... 2

        B. Cooprider has not properly alleged that Ms. Davis's actions inflicted "emotional distress" upon him ............................................................ 4

        C. Cooprider has not properly alleged that the emotional distress that Ms. Davis inflicted was "severe" ............................................................ 4

        D. The act of filing a lawsuit does not qualify as "extreme and outrageous" conduct, even if the person filing the lawsuit knows that it is groundless ................................................................................. 5

    III. Cooprider has failed to plead a claim for fraud with the particularity required by Rule 9(b) ............................................................................... 6

    IV. There is no cause of action or tort for "malice" under Texas law ................. 9

    V. Cooprider's remaining counterclaims are requested remedies rather than causes of action ............................................................................... 9

    VI. The Court should dismiss with leave to amend only if it dismisses a counterclaim solely for failure to plead sufficient factual detail .................... 10

Conclusion ................................................................................................. 10

Certificate of service ................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
  297 S.W.3d 768 (Tex. 2009) ................................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Beecy v. Pucciarelli*, 387 Mass. 589, 441 N.E.2d 1035 (1982) ...............................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................2, 7

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ....................7

*Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*,
  589 U.S. 327 (2020) .............................................................................................3

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................................7

*Homesavers Council of Greenfield Gardens, Inc. v. Sanchez*,
  70 Mass. App. Ct. 453, 874 N.E.2d 497 (2007) ...................................................5

*Ladd v. Polidoro*, 424 Mass. 196, 675 N.E.2d 382 (1997) .....................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .............................................................................................2

*Medford Co-Operative Bank v. Skerry*,
  2004 Mass. App. Div. 120, 2004 WL 1853343 (2004) ........................................5

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997) .............................1

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..............................................3, 8

*Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) ..............................................................................9

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996) .................................1

*Tuchman v. DSC Communications Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ................................................................................9

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) ................................................................................8

*Walch v. Adjutant General's Dep't of Texas*,
  533 F.3d 289 (5th Cir. 2008) ................................................................................8

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................4

Fed. R. Civ. P. 9(b) ....................................................................................................6

## I. Cooprider Has Failed To State A Claim For Malicious Prosecution

Cooprider cannot sue Ms. Davis for malicious civil prosecution because her civil lawsuit against Cooprider has not terminated in his favor,[1] and Cooprider does not deny or contest any of this in his brief. *See* Response, ECF No. 25, at 2–5. Instead, Cooprider tries to salvage his counterclaim by accusing Ms. Davis of malicious *criminal* prosecution. *See id.* But Cooprider has not alleged (and cannot allege) the elements of this tort.

A litigant who asserts a claim for malicious criminal prosecution claim must allege (and eventually prove) each of the following elements:

> (1) the commencement of a criminal prosecution against the plaintiff;
> (2) causation (initiation or procurement) of the action by the defendant;
> (3) termination of the prosecution in the plaintiff's favor;
> (4) the plaintiff's innocence;
> (5) the absence of probable cause for the proceedings;
> (6) malice in filing the charge; and
> (7) damage to the plaintiff.

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). Cooprider has not alleged that anyone has commenced a criminal prosecution against him—and he cannot make such an allegation because he has not been prosecuted. Cooprider alleges only that he has been subjected to a criminal *investigation*. *See* Answer, ECF No. 7, at p. 89. But an investigation is not a prosecution, and the tort of malicious criminal prosecution requires the commencement of a criminal *prosecution* (not a mere investigation) against the claimant. The Court should dismiss the malicious-prosecution counterclaim out of hand.

## II. Cooprider Has Failed To State A Claim For Intentional Infliction Of Emotional Distress

Cooprider's IIED counterclaim should be dismissed for four separate and independent reasons: (1) Cooprider's answer fails to identify the conduct of Ms. Davis that qualifies as "extreme and outrageous"; (2) Cooprider's answer fails to properly allege that Ms. Davis's actions inflicted "emotional distress" upon him; (3) Cooprider has not properly alleged that

---

1. *See Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

the emotional distress that Ms. Davis inflicted was "severe"; and (4) The act of filing a meritless or bad-faith lawsuit does not qualify as "extreme and outrageous" conduct. Cooprider has not refuted any of this.

### A. Cooprider's Answer Fails To Identify The Conduct Of Ms. Davis That Qualifies As "Extreme And Outrageous"

A litigant who alleges a claim for intentional infliction of emotional distress must identify the "extreme and outrageous" conduct that triggers liability. Cooprider's pleading does not flag the conduct of Ms. Davis that supposedly qualifies as "extreme and outrageous" under the tort of IIED. A bald assertion that "the conduct of Counter-Defendant DAVIS was extreme and outrageous"[2] will not suffice, even when that assertion is preceded by a litany of acts supposedly committed by Ms. Davis. Cooprider's pleading must identify *which* of those acts qualify as the "extreme and outrageous" conduct that he is suing over, so that Ms. Davis will have "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

Cooprider's brief attempts to rectify this pleading deficiency by asserting that the "extreme and outrageous" acts involved "mendacious conduct by DAVIS knowingly designed to lure [Cooprider] in so that she could frame him for murder." Response, ECF No. 25, at 8; *see also id.* (citing the paragraphs of Cooprider's answer that describe this conduct). But this fails to salvage the IIED counterclaim for two reasons. First, the pleading itself must identify the "extreme and outrageous" conduct that Ms. Davis supposedly committed; Cooprider is not permitted to hide the ball in his pleading and wait to identify the "extreme and outrageous" conduct in his brief responding to a motion to dismiss. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("[A]ny . . . element of a cause of action . . . must be adequately alleged at the pleading stage in order for the case to proceed."); *Comcast Corp. v. National Ass'n of African-American Owned Media*, 589 U.S.

---

2. Answer, ECF No. 7, at p. 91.

327, 340–41 (2020) ("[A] complaint [cannot] survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim.").

Second, Cooprider's allegations that Ms. Davis "lure[d] him in" to her house "so that she could frame him for murder" fail the plausibility standard of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See* Mot. to Dismiss, ECF No. 22, at 7–9. Cooprider's pleading admits the authenticity of the text messages in Exhibit 32 of the complaint, which show that Cooprider initiated the idea of a "trust building night" and invited himself to Davis's house to watch Reacher and share some "warm relaxing tea." *See id*. at 7–8; Answer, ECF No. 7, at p. 81 ("Defendant COOPRIDER . . . admits that the texts referenced in Exhibit 32 were exchanged."). Cooprider claims that these text messages are "extraneous" to his pleading and cannot be considered on a motion to dismiss,[3] but that is wrong because Cooprider's pleading expressly concedes the authenticity of these texts. *See id*. That concession appears in Cooprider's pleading and must be assumed true when resolving the motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) (holding that on a motion to dismiss, "we must accept as true all of the factual allegations contained in" the opposing party's pleading).

The "framing" accusation is doubly implausible because Ms. Davis could not have known in advance that she would begin hemorrhaging shortly before midnight on April 5, 2025, so she could not have "framed" Cooprider by inviting him to her house with foreknowledge that she would suddenly start hemorrhaging while Cooprider was in her home. *See* Mot. to Dismiss, ECF No. 22, at 9. Cooprider digs himself into an even deeper hole by pointing out that his pleading alleges that Ms. Davis had already miscarried before the fateful night of April 5, 2025. *See* Response, ECF No. 25, at 22 ("COOPRIDER alleges that DAVIS miscarried earlier—certainly by the day before the alleged fetal murder"); Answer, ECF No. 7, at p. 91 (accusing Ms. Davis of "[h]aving already miscarried on April 4, 2025"). Yet if Ms.

---

3. *See* Response, ECF No. 25, at 18–21.

Davis had already miscarried on April 4, 2025, as Cooprider alleges, then she would not be able to "frame" Cooprider for a subsequent murder if she had already lost her baby before Cooprider arrived at her house on April 5, 2025. And in all events, a woman who has miscarried or is in the process or miscarrying cannot control or determine in advance when she will start bleeding or hemorrhaging, so Cooprider fails to plausibly allege that Ms. Davis set out to "frame" him by inviting him to her house and ensuring that she would be hemorrhaging shortly after they consumed their drinks.

### B. Cooprider Has Not Properly Alleged That Ms. Davis's Actions Inflicted "Emotional Distress" Upon Him

Cooprider's pleading fails to allege facts showing how Ms. Davis's conduct—even if "extreme and outrageous"—caused him to suffer "emotional distress." The bald assertion that appears on page 91 of his pleading will not suffice. *See* Answer, ECF No. 7, at 91 ("[T]he outrageous conduct caused the Counter-Plaintiff COOPRIDER emotional distress."). His brief does nothing to fix this problem, instead discussing irrelevant matters such as the "temporal proximity" between the accusation of murder and the time at which Ms. Davis consumed the tainted drink. *See* Response, ECF No. 25, at 9–11. Rule 8 requires Cooprider to *show* and not merely assert that he suffered emotional distress, and no "showing" to this effect has been made—either in Cooprider's pleading or in his brief opposing dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim *showing* that the pleader is entitled to relief" (emphasis added)).

### C. Cooprider Has Not Properly Alleged That The Emotional Distress That Ms. Davis Inflicted Was "Severe"

Cooprider's pleading likewise fails to allege facts showing that he suffered "severe" emotional distress, content to rely on nothing more than an unexplained conclusion. *See* Answer, ECF No. 7, at 92 ("[T]he emotional distress suffered by Counter-Plaintiff COOPRIDER was severe."). Cooprider tries to talk his way out of this problem by claiming that he need not plead the amount of damages sought, which is odd because Cooprider's pleading *does*

specify the amount of compensatory damages demanded. *See id.* at ¶ 6 ("COOPRIDER brings countersuit against Plaintiff/Counter-Defendant DAVIS for $100 million in actual damages and $1 billion in exemplary damages.").

But that is non-responsive in any event. Ms. Davis is not contending that Cooprider must calculate or specify an amount of damages. Her claim is only that Rule 8(a)(2), as construed in *Twombly* and *Iqbal*, requires a "showing," *i.e.*, something more than a mere conclusion, that establishes that Cooprider's emotional distress was "severe." Neither Cooprider's pleading nor his brief makes this required "showing," as there is no allegation or any description touching on the severity of the emotional distress that he supposedly suffered.

> D.  The Act Of Filing A Lawsuit Does Not Qualify As "Extreme And Outrageous" Conduct, Even If The Person Filing The Lawsuit Knows That It Is Groundless

Cooprider acknowledges that *Beecy v. Pucciarelli*, 387 Mass. 589, 596, 441 N.E.2d 1035, 1040 (1982), holds that the filing of a lawsuit that a person knows to be groundless does not qualify as "extreme and outrageous" conduct. Cooprider correctly observes that *Beecy* is not binding on this Court, but he presents no argument that *Beecy* was wrongly decided, nor does he cite any authority from any court to support the idea that the filing of a lawsuit that one knows to be meritless constitutes "extreme and outrageous" conduct or triggers liability for intentional infliction of emotional distress. Cooprider falsely asserts that *Ladd v. Polidoro*, 424 Mass. 196, 199, 675 N.E.2d 382, 385 (1997), curtailed the scope of *Beecy*'s holding with respect to IIED. *Ladd* involved a claim for abuse of process rather than IIED, and its discussion of *Beecy* pertains only to *Beecy*'s analysis of the abuse-of-process tort. *See id.* at 385 ("[I]t cannot be doubted that our *Beecy* opinion proclaimed that an ulterior motive is an element *of the tort of abuse of process* in all instances." (emphasis added)). The same is true of *Medford Co-Operative Bank v. Skerry*, 2004 Mass. App. Div. 120, 2004 WL 1853343, *4 (2004). And the opinion in *Homesavers Council of Greenfield Gardens, Inc. v. Sanchez*, 70 Mass. App. Ct. 453, 874 N.E.2d 497 (2007), is no use to Cooprider because

the landlord in that case threatened to evict a tenant even though he knew that the tenant's section 8 subsidy had been wrongfully terminated—and that the tenant was suffering from depression that made her particularly susceptible to emotional distress. *See id.* at 499–500. Cooprider does not allege analogous conduct on the part of Ms. Davis.

Cooprider also claims that his IIED claim relies on more than Ms. Davis's filing of this lawsuit, but he does not plausibly identify the conduct of Ms. Davis that could qualify as "extreme and outrageous." See pp. 2–4, *supra*. His assertion that Ms. Davis "framed" him for murder is not only implausible but fanciful, as Cooprider concedes the authenticity of the text messages showing that *he* and not Ms. Davis initiated the idea of the "trust building night" that was held on April 5, 2025, and Ms. Davis had no ability to control or pre-determine when her hemorrhaging would begin.

### III. Cooprider Has Failed To Plead A Claim For Fraud With The Particularity Required By Rule 9(b)

A litigant alleging fraud must plead that claim with particularity. *See* Fed. R. Civ. P. 9(b). Cooprider's allegations fall short of the detailed factual pleading required by Rule 9(b), and they flunk *Twombly*'s "plausibility" standard in any event.

Cooprider alleges two separate theories of fraud. The first accuses Ms. Davis of claiming that she was pregnant on February 3, 2025, which was several weeks before she actually became pregnant with Cooprider's child. But Cooprider's pleading does not explain how he "suffered injury"[4] by acting in reliance on that alleged misrepresentation—and it does not do so with the particularity required by Rule 9(b). *See* Answer, ECF No. 7, at ¶ 13. Ms. Davis eventually became pregnant later that month, so Cooprider still would have purchased abortion pills and pressured Ms. Davis to take them even if Ms. Davis had never told Cooprider that she was pregnant in early February. The pleading does not state *any* facts (let alone particular facts) explaining how Cooprider was injured by this supposed misrepresentation—and Cooprider's brief fails to point to any such facts in his pleading. All that

---

4.  *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Cooprider's pleading offers on this point is a conclusory and unexplained assertion that "Defendant COOPRIDER was injured as a result." *See* Answer, ECF No. 7, at ¶ 13(f). The Court should dismiss the first claim of fraud for failing to properly allege injury resulting from the alleged misrepresentation.[5]

Cooprider's second theory of fraud accuses Ms. Davis of luring Cooprider into her home on the false pretense that they would have a "night of trust," when (according to Cooprider) she actually intended to frame him for murder. *See* Answer, ECF No. 7, at ¶ 14. But Cooprider cannot maintain this claim when his pleading admits the authenticity of the text messages in Exhibit 32, which show that Cooprider initiated the idea of a "trust building night" and asked if he could come over to Davis's home for that "trust building" session. This concession appears in Cooprider's pleading, so it must be assumed true and cannot be ignored when resolving Ms. Davis's motion to dismiss. *Compare* Answer, ECF No. 7, at p. 81 ("Defendant COOPRIDER . . . admits that the texts referenced in Exhibit 32 were exchanged."), *with* Response, ECF No. 25, at 19–21 (attempting to characterize the text messages as "extraneous" to Cooprider's pleading). Cooprider attempts to exclude consideration of Exhibit 32 by citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000), but *Collins* does not help Cooprider because the disputed exhibits in that case were attached to the motion to dismiss rather than the pleadings—and *Collins* reaffirms that both pleadings *and their exhibits* are proper to consider when resolving a motion to dismiss. *See id*. at 498

---

5.  Cooprider falsely claims that he can rely on "general factual allegations of injury" when pleading fraud, and he even tries to invoke the repudiated no-set-of-facts test from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *But see Twombly*, 550 U.S. 544, 562–63 ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement."). *See* Response, ECF No. 25, at 18. But Rule 9(b) requires the elements of fraud to be pleaded with particularity, and Cooprider cannot evade this requirement by invoking the notice-pleading standards of a bygone era.

("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, *including attachments thereto*." (emphasis added)). Here, the text messages in Exhibit 32 were not only attached to the pleadings but were conceded to be authentic by Cooprider in his very own pleading. *See* Answer, ECF No. 7, at p. 81 ("Defendant COOPRIDER . . . admits that the texts referenced in Exhibit 32 were exchanged."). So they are entirely proper to consider, and this Court must assume the truth of Cooprider's factual concession regarding the authenticity of the text messages. *See Swierkiewicz*, 534 U.S. at 508 n.1 (holding that on a motion to dismiss, "we must accept as true all of the factual allegations contained in" the opposing party's pleading); *Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008) ("[D]ocuments may be considered even under a Rule 12(b)(6) analysis . . . [when] [n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss.").

The Court should also dismiss Cooprider's second theory of fraud because he failed to plead this claim with particularity. Nothing in Cooprider's pleading describes or explains how Ms. Davis misrepresented the "night of trust" or what she said to him, or when, where, and how she uttered the allegedly fraudulent statements. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Cooprider lists all the allegations that he supposedly pleaded with particularity on pages 15 and 16 of his brief, but neither his pleading nor his list explains *what* fraudulent statements Ms. Davis made about the so-called "night of trust," *when* she uttered the allegedly fraudulent statements, or *where* or *how* those statements were communicated to Cooprider. That is insufficient under the law of the Fifth Circuit, which holds that:

> Rule 9(b) requires the plaintiff to allege *the particulars of time, place, and contents of the false representations*, as well as the identity of the person making the misrepresentation and what that person obtained thereby.

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (emphasis added) (citation and internal quotation marks omitted); *see also Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)).

Cooprider's second theory of fraud is also implausible under *Twombly* and *Iqbal* because Ms. Davis had no way of ensuring that she would begin hemorrhaging after she and Cooprider consumed their drinks. Cooprider's claim that Ms. Davis had already miscarried and lost her baby on April 4, 2025, aggravates rather than mitigates this problem. *See* pp. 3–4, *supra*.

### IV. There Is No Cause Of Action Or Tort For "Malice" Under Texas Law

Cooprider appears to agree that Texas law does not recognize a tort or cause of action for "malice." *See* Response, ECF No. 25, at 23. But he claims that Texas law requires him to prove "malice" to obtain exemplary damages. *See id.* (citing Tex. Civ. Prac. & Rem. Code § 41.003). True enough, but that goes to the remedy that Cooprider will seek if he prevails on his other claims; it does not establish a freestanding claim on which relief may be granted. The Court should dismiss the counterclaim for "malice" under Rule 12(b)(6). A dismissal of this counterclaim will not preclude Cooprider from seeking to establish malice at trial; it will merely recognize that an allegation of "malice" does not state a claim on which relief may be granted.

### V. Cooprider's Remaining Counterclaims Are Requested Remedies Rather Than Causes Of Action

The same goes for the remaining "counterclaims" listed in Cooprider's responsive pleading, including "punitive damages," "exceptions to Texas' limitations on exemplary damages," and "amount of damages sought." *See* Answer, ECF No. 7, pp. 92–94. Cooprider himself

acknowledges that these are "requested remedies." Response, ECF No. 25, at 24. So they should not be pleaded as freestanding "counterclaims." The Court should dismiss these so-called counterclaims under Rule 12(b)(6), while preserving Cooprider's ability to pursue these remedies if he ultimately prevails on any of his other counterclaims.

## VI. The Court Should Dismiss With Leave To Amend Only If It Dismisses A Counterclaim Solely For Failure To Plead Sufficient Factual Detail

When a Court dismisses a claim (or a counterclaim) for failure to allege sufficient factual details, it should ordinarily afford the litigant one opportunity to replead. So if the Court dismisses Cooprider's fraud or IIED counterclaims on this ground, it should dismiss those counterclaims without prejudice and with leave to amend.

Cooprider's malicious-prosecution counterclaim, however, should be dismissed with prejudice because Cooprider has pleaded himself out of court. He has conceded that Ms. Davis's civil lawsuit has not yet been resolved in his favor, and he has further alleged that the criminal investigations have terminated without the commencement of any criminal prosecution against him. *See* Answer, ECF No. 7, at ¶ 97 ("Officer Michael Manzano interviewed DAVIS's neighbors and others, reviewed the evidence available, and declined to act on her allegations."). The counterclaims for "malice," "punitive damages," "exceptions to Texas' limitations on exemplary damages," and "amount of damages sought" should also be dismissed with prejudice because these are non-existent causes of action—although the Court should make clear that a with-prejudice dismissal of these counterclaims will not in any way foreclose Cooprider from seeking his desired remedies at trial.

## CONCLUSION

The Court should dismiss each of Cooprider's counterclaims.

                                                                 Respectfully submitted.

                                                                 */s/ Jonathan F. Mitchell*
                                                                 Jonathan F. Mitchell
                                                                   *Attorney-in-Charge*
                                                                Texas Bar No. 24075463
                                                                S.D. Tex. Bar No. 1133287
                                                                Mitchell Law PLLC
                                                                111 Congress Avenue, Suite 400
                                                                Austin, Texas 78701
                                                                (512) 686-3940 (phone)
                                                                (512) 686-3941 (fax)
                                                                jonathan@mitchell.law

Dated: November 11, 2025                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

  I certify that on November 11, 2025, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

*Counsel for Defendant Christopher Cooprider*

               /s/ Jonathan F. Mitchell
              JONATHAN F. MITCHELL
              *Counsel for Plaintiff*