UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Liana Davis, | * | |
|           Plaintiff, | * | |
| | * | |
| v. | * | Case No. 2:25-cv-220 |
| | * | |
| Christopher Cooprider, et al. |    * | |
|           Defendants. | * | |

## STATUS REPORT AND SUPPLEMENT TO MOTION TO COMPEL

Defendant Cooprider submits his Status Report and Supplement to his Motion to Compel filed on March 27, 2026.

1.      Before and during this litigation Plaintiff Liana Davis ("Davis") has engaged in destruction of evidence, blackmail, and manipulation of evidence.  Her actions are serious and show a pattern of disregard of the Court processes and her overwhelming self-interest.

2.      On March 21, 2025, Davis deleted all the text message dated prior to March 21, 2025 between Christoper Cooprider ("Cooprider") and herself from Cooprider's phone. She did this in order to conceal her drinking, affair and pregnancy from the family court in Corpus Christi, Texas where her divorce was filed.  Exhibit 7-24 filed with the Answer on September 3, 2025, is a transcript of the conversation between Davis and Cooprider in real time as she was destroying evidence:

> Liana (10:51) Okay. (10:52) Where am I? (10:54) Delete me. (10:55) Delete it. (10:55) Delete the whole thing, the whole thread.
> Liana (10:58) Swipe. (11:01) I don't exist. (11:02) Delete it. (11:03) Delete the whole thing.
> Liana (14:45) January 14. (14:47) Okay. (14:48) Keep going. (14:49) We're gonna take it back to the ninth.
> Chris (14:51) Of January?
> Liana (14:52) Yeah. (14:53) I think that's where I first sent you anything compromising.

1

Liana  (21:50) You wiped your phone clean. (21:51) Do you have another phone on you? (21:53) I I know that, Chris, I know this sounds bizarre. (21:56) Like, this is I'm trying to save my liking. (21:58) I'm trying to save everything, like, control.
Liana (22:01) Just I'm trying to stop the bleed. (22:02) Like, stop the bleed.

Liana (32:22) Like, nothing. (32:25) You're about to fuck that up. (32:28) You're wonderful. (32:29) I like you a lot. (32:32) I had to wipe you out wipe myself out of your phone.

Liana (32:34) I'm gonna wipe you out of all my devices. (32:36) I have you like, evidence of you in at least two devices because, again, what, like, those screen oh my god. (32:42) Put it in the head. (32:43) The screenshots I sent you, this is round one. (32:45) They're gonna dig deeper.

Liana (36:35) I don't know. (36:35) See, this is where, like, I'm limited by my knowledge of the legal system because I don't know if they make you, like, call Verizon and get that stuff because anyone could delete anything. (36:47) Right? (36:47) Yeah. (36:47) Might make me do that.
Liana (36:49) Right? (36:49) So even if I even if I delete it, it's not gone. (36:54) I mean, nothing's ever gone. (36:55) It can be retrieved. (36:57) So I'm shitting myself a little over that.

The full Audio Recording of Destruction of Evidence was lodged with the

Court on September 3, 2025 as Exhibit 7-23 and is embedded here.



CR000001 Exhibit A
Destruction of Evide

3.      On January 23, 2025 Davis audio recorded having sex with Christoper Cooprider

without his knowledge or permission.  Exhibit 7-25 to the Answer.  She later attempted to

blackmail Cooprider by threatening to post the audio recording on Facebook.  This audio

recording has not been produced by Davis in discovery.

2

I woke up to realize that I accidentally audio recording the whole thing last night. 🙀 I. Am. Screaming. 😂 I'm gonna delete this later but not before listening to it out of curiosity. 😆

4.      Davis has avoided providing communications with the witnesses listed in RFP 2 and other requests.  Only after being given a Court ordered deadline -- which she believed did not actually require her to produce the documents, merely extract them -- on March 25, 2026 at 3:00 pm, Davis provided a spreadsheet of her text messages. The imbedded images and videos were stripped from the spreadsheet.  Counsel for Plaintiff requested the complete text messages with images.

5.      Counsel for Plaintiff learned through produced text message that Davis has been using and app on her phone called "Decipher" since November 2024  This is the app that is required by the Texas Family law Courts to preserve and lift complete text messages for Court purposes.   Text from Davis to Samuelson November 4, 2024:

**11/4/2024 9:24 PM**
iPhone (14122957136)

So last week my paralegal had told me to use an app called Decipher to provide the entire thread of texts between me and Devin starting in July. Now that I'm sitting down to do it, I don't see any such app on the App Store. It doesn't appear to be an app at all. Have you heard of Decipher? Of course I emailed my lawyer and paralegal to ask, and they have yet to get back to me. My last few emails to my lawyer have gone answered over the past week, and every

3

**11/5/2024 10:02 PM**
iPhone (14122957136)

> I'm so sorry to hear that! I'm trying to figure out the text downloading program that the lawyer sent me with minimal direction.

6.      Davis used Decipher to produce the texts to and from witness Jackie Samuelson on March 25, 2026.  The Decipher header was cut off the production, but the format is that of Decipher.

7.      On the minute the Motion to Compel was due (3:00 PM), Plaintiff's counsel provided the complete text messages.

8.      On ***March 27, 2026*** (two days post Court deadline) after realizing that Davis had used Decipher and likely knew how to obtain complete texts with images, counsel for Plaintiff was provided with this information and this link

https://deciphertools.com/decipher-textmessage.html

9.      Decipher is easy to use, and Davis could have used this tool at any time in the past six months with ease and very limited time involvement. According to Davis, she only started to use the Decipher on March 25, 2026, the day of the Court ordered deadline.

10.      Notably, in her motion, she tells the Court "I have been reluctant to produce all of my text messages with Mr. Cooprider and with Ms. Samuelson because some of the non-responsive texts contain material that I would rather not disclose unless required to."

11.      On Friday, March 27, 2026 Davis admitted through counsel that she destroyed her text messages with Yvonne Yokopovich.  This case involves a malicious prosecution

4

claim, and the communications with Ms. Yokopovich are relevant.  Ms. Yokopovich communicated with Davis throughout the pregnancy at issue and she and her husband urged Davis to threaten Cooprider with paternity, child support and premeditated murder.  Ms. Yokopovich communicated with Davis during the time frame of the miscarriage until April 7, 2025.  Ms. Yokopovich and her husband conducted investigations into Cooprider's flight schedules and incorrectly determined that he did not have a flight -- when he did.  Mr. and Ms. Yokopovich's erroneous investigation was turned over to the police.

12.    Davis reported Cooprider to Corpus Christi Police for murder charges on April 5, 2025.  The date that Davis initiated criminal proceedings is the date that triggered a duty to retain all evidence.

13.    Sometime during the night of March 30, 2026 Davis "found" through a search for a very limited selection of text messages with Yvonne Yokopovich for the dates April 1, 2025 to April 7, 2025.  She claimed that "she just discovered" that Decipher can retrieve deleted messages.

14.    At ***3:14 am of March 30, 2026***, a limited number of texts from April 1, 2025 – April 7, 2025 between Yokopovich and Davis were produced.  It is believed that the communications between Ms. Yokopovich and Davis extend beyond the limited search and texts provided.   When this discrepancy was pointed out to Davis, she was offended.  No further texts have been produced.

15.    Jackie Samuelson, Davis's neighbor was interviewed by Corpus Christi police who noted:  "The witness was very concerned and feels the victim's claims are false.  She wanted to mention to me as well that the victim has asked to lie under oath for her

and has made the offender delete text." Law enforcement has documented that Davis

asked Samuelson to lie. Consistent with this in Exhibit 24 Davis states:

Liana (54:05) Jackie and I are meeting tomorrow, and I'm gonna drill her on what we are and are not going to say because she has this isn't hyped up. (54:12) She has literally been contacted, like, by the amicus attorney. (54:15) It it played a very small factor in custody decisions that were made because there was a morning, fun fact, where I had to flee to her house in the dark because Devin was going off on me. (54:29) And even though the kids were here asleep, I had to make a an agonizing decision. (54:34) Okay.

16.     Given Davis's pattern and practice of destroying evidence and bullying witnesses

to lie, all of her responses to requests for production are circumspect, and Davis cannot

be trusted to produce electronically stored evidence responsive to discovery.

17.     RPD No 2. Requests:

2. ALL COMMUNICATIONS between YOU and the following individuals between November 1, 2024 and the present:
(a) Ami Amoroso;
(b) CHRIS COOPRIDER;
(c) Devan Davis;
(d) Melisa Madrigal;
(e) Your present or past boyfriend named "Marshall";
(f) Casey Pyle;
(g) Jackie Samuelson;
(h) Kyle Yakopovich;
(i) Yvonne Yakopovich; and
(j) Anna Ziarko;
concerning YOU, YOUR pregnancy(ies), the termination thereof – whether real or suspected, and/or CHRIS COOPRIDER.

18.     Davis has delayed these proceedings for six months claiming sickness, work

load, and issues in her divorce case. Even her attorney was unable to secure timely

cooperation. He called her "*__every day__*" for months to get her to provide the responses.

Defense counsel gave Davis grace and provided contacts for tech support. All this

while, Davis knew exactly how to produce the requested text messages. She simply

does not want to comply with her obligations.

6

19.     Given Davis's flagrant self-interest and pattern of destruction of evidence, Cooprider requests that the Court appoint a forensic computer specialist to create a mirror image of her cell phone and computer so that the evidence can be preserved and specific searches approved by the Court can be executed.  Cooprider suggests the following providers:

a.     https://www.lawandforensics.com/digital-forensics-services/

b.     https://computerforensicsresources.com/computer-forensic-houston-tx/

c.     https://tecinquiries.com/about

d.     https://www.expertinstitute.com/experts/george-w-vasiliou-cco-ccpa-492674/

20.     Davis's pattern of defiance and spoliation justifies this drastic discovery order. In determining whether a motion to compel a forensic exam of a party's phone should be granted, the court will evaluate whether the exam "will reveal information that is relevant to the claims and defenses in the case and whether such an examination is proportional to the needs of the case given the cell phone owner's compelling privacy interest in the contents of his or her cell phone." The otherwise expansive scope of discoverable evidence is tempered by the party's privacy interest in the device. Pable v. Chicago Transit Authority, No. 19, 2021 WL 4789023, *2 (N.D. Ill. April 2, 2021). For that reason, "the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate." Id.     See also, Liederbach v. NYU Langone Hospitals, No. 24-CV-00742 (S.D.N.Y. July 16, 2025) ("forensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature." Such examinations may be permitted only if "there is reason to believe that a litigant has tampered with the device

or hidden relevant materials" or engaged in other improper conduct.) Tingle v. Hebert, No. CV 15-626-JWD-EWD, 2018 WL 1726667 at *5 (M.D. La. Apr. 10, 2018) ("Further, the utility of the examination must be clearly defined and specified: '[M]ere skepticism that an opposing party has not produced all relevant information' and 'a mere desire to check that the opposition has been forthright in its discovery responses' do not suffice to 'warrant drastic discovery measures like an exhaustive computer forensic examination.'")  See also "*Be Smart: Mobile Devices and Forensic Imaging*" a summary of relevant cases attached as Exhibit A for the Court's convenience.

21.     Cooprider has shown good cause and provided ample evidence that Davis has withheld, destroyed, or tampered with evidence and that a less intrusive method such as manual production of text messages has proven insufficient.  Unreliable production, spoliation, witness tampering and failed prior discovery are all before the Court.

FOR these reasons, Cooprider respectfully requests that the Court appoint a forensics expert to create a mirror image of Davis's cell phone so that future proper and limited searches can be effectuated and this case move forward.  Cooprider further respectfully requests that the Court enter orders to compel discovery, to remedy the evidence destroyed, and to award fees and costs as this Court deems appropriate.

April 7, 2026                                     Respectfully submitted,

BETH KLEIN, PC
By:     */s/ Beth A. Klein*
          Beth A. Klein
BETH KLEIN, P.C.
Colorado Bar No. 17477
S.D. Tex. I.D. No. 3934133
beth@bethklein.com
350 Market Street, Suite 310
Basalt, Colorado 81621
Telephone: (303) 448-8884

8

WATTS LAW FIRM LLP
Texas State Bar No. 20981820
Federal Bar ID # 12419
mikal@wattsllp.com
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501
ATTORNEY-IN-CHARGE

ATTORNEYS FOR
CHRISTOPHER COOPRIDER

## CERTIFICATE OF SERVICE

I certify that on April 7, 2026 I SERVED the foregoing via ECF on all counsel of record.

*/s/ Beth A. Klein*
Beth A. Klein