UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-00220 |

### PLAINTIFF'S STATUS REPORT

Plaintiff Liana Davis has fully complied with Request for Production No. 2 and she has produced every responsive document sought by Christopher Cooprider. There is nothing for the Court to compel now that Ms. Davis has produced all of her text messages with Christopher Cooprider[1] and Jackie Samuelson, and every one of her responsive text messages with Yvonne Yakopovich. *See* Pl.'s Resp. to Mot. to Compel, ECF No. 42.

Mr. Cooprider's status report of April 7, 2026, does not identify any shortcomings or deficiencies in the text messages that were produced between Ms. Davis and Mr. Cooprider or between Ms. Davis and Ms. Samuelson. So Mr. Cooprider's requests for those text messages have been resolved.

Mr. Cooprider complains that Ms. Davis produced text messages between herself and Ms. Yakopovich only between April 1, 2025, and April 7, 2025. *See* Cooprider's

---

1. Ms. Davis's attorney redacted approximately nine racy photos in the text messages that Ms. Davis sent to Mr. Cooprider, but Mr. Cooprider's attorneys are not asking the Court to compel production of those redacted photos in the status report that they filed on April 7, 2026. And those pictures are not discoverable in any event because they have no relevance to any party's claim or defense. *See* Fed. R. Civ. P. 26(b)(1); Mitchell Declaration ¶ 14 (attached as Exhibit 1).

Status Report, ECF No. 47, at 5 ("It is believed that the communications between Ms. Yakopovich and Davis extend beyond the limited search and texts provided."). But none of the other text messages between Ms. Davis and Ms. Yakopovich are discoverable or responsive because they have nothing to do with Mr. Cooprider or Ms. Davis's pregnancies. *See* Davis Declaration ¶ 6 ("I have produced all responsive text messages between myself and Yvonne Yakopovich that are in my possession, custody, or control. The only text messages that I exchanged with Ms. Yakopovich that discussed Mr. Cooprider or my pregnancies took place between April 1, 2025, and April 7, 2025.").[2] So Ms. Davis has fully complied with Request for Production No. 2 with respect to her text messages with Ms. Yakopovich, and she has produced all of her responsive communications with everyone else mentioned in RFP No. 2. *See* Davis Decl. ¶ 7 ("I have produced all other responsive communications requested by Mr. Cooprider's attorneys in Request for Production No. 2.").

Despite Ms. Davis's complete and indisputable compliance with Request for Production No. 2, Mr. Cooprider's attorneys are continuing to press their motion to compel and insist on going forward with the in-person hearing that this Court has scheduled for April 14, 2026. *See* Cooprider Status Report, ECF No. 47; Mitchell Declaration ¶ 8. But now they are moving the goalposts by asking the Court to "appoint a forensics expert to create a mirror image of Davis's cell phone," which they did not request in the motion to compel that they filed on March 27, 2026. *See* Cooprider Status Report, ECF No. 47, at 8. This request is improper for many reasons.

---

2.    Cooprider's Request for Production No. 2 demanded communications "concerning YOU, YOUR pregnancy(ies), the termination thereof—whether real or suspected, and/or CHRIS COOPRIDER." See Cooprider Status Report, ECF No. 47 at 6. But Ms. Davis objected to the production of all communications concerning herself as overbroad, and Mr. Cooprider has not asked this Court to overrule that objection. The only communications that Ms. Davis must produce are communications concerning her pregnancies or Mr. Cooprider.

First. Mr. Cooprider's attorneys have never served a discovery request for Ms. Davis's cell phone, nor have they served a request for production that asks Ms. Davis to provide her cell phone to a mutually agreeable forensics expert. *See* Mitchell Declaration ¶ 13. A party cannot move to compel discovery that it has never requested from an opposing litigant.

Second. Mr. Cooprider's attorneys did not confer with Ms. Davis's counsel before asking this Court to compel Ms. Davis to surrender her cell phone to a forensics expert. *See* Fed. R. Civ. P. 37(a)(1) ("The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); Mitchell Declaration ¶ 6. They have styled their filing as a "supplement" to their motion to compel, but they are requesting new relief that they never asked for in the original motion. *See* Mot. to Compel, ECF No. 38 (no request to compel Ms. Davis to turn over her cell phone to a forensics expert to create a mirror image). So Mr. Cooprider's attorneys were obligated to confer in good faith with Ms. Davis's counsel before making this request under Rule 37. They did not do so, nor did they provide the certificate of conferral required by Rule 37(a)(1).

Third. Mr. Cooprider's efforts to smear Ms. Davis are false and unsupported by evidence. Ms. Davis has never destroyed or spoliated evidence on Mr. Cooprider's phone. *See* Davis Declaration ¶ 8 ("I have never destroyed or spoliated evidence on Christopher Cooprider's phone."). And Mr. Cooprider's attorneys have failed to present any evidence of that Ms. Davis tampered with Cooprider's phone They have not submitted an affidavit or declaration from Cooprider or anyone else with personal knowledge of the situation. And the transcript that Mr. Cooprider's attorneys pasted into their brief is unauthenticated, as is the audio recording that they claim to have lodged with the Court. This does not pass for evidence in federal court.

What's more, the supposed deletions from Mr. Cooprider's phone took place on March 21, 2025, before the alleged murder and before there was any prospect of wrongful-death litigation between Ms. Davis and Mr. Cooprider. So that is not basis for accusing Ms. Davis of misconduct or spoliating evidence in this litigation. Nor is it a reason to demand that Ms. Davis produce *her* phone to a forensics expert when counsel is complaining about deleted messages on Mr. Cooprider's phone.

Ms. Davis has never "blackmailed" Cooprider by threatening to post an intimate audio recording on Facebook, and Mr. Cooprider's attorneys have no evidence to support this claim. *See* Davis Declaration ¶ 9 ("I have never 'blackmailed' Cooprider by threatening to post intimate audio recordings of him on Facebook."). Mr. Cooprider's attorneys have not even attempted to produce evidence of blackmail. They have merely pasted into their brief a screenshot of an unauthenticated message that describes an alleged "audio recording" but makes no threats. *See* Cooprider Status Report, ECF No. 47, at 3. The screenshot does not even indicate that the message was sent by Ms. Davis or sent to Mr. Cooprider, and Ms. Davis denies ever sending this message to Cooprider. *See* Davis Declaration ¶ 9 ("I did not send to Mr. Cooprider the message that appears on page 3 of the status report that Mr. Cooprider's attorneys filed on April 7, 2026.").

Fourth. Ms. Davis has already explained why it took her months to produce the text messages that she exchanged with Jackie Samuelson and Christopher Cooprider. *See* Davis Declaration, ECF No. 42-2, at ¶¶ 5–11. She had "exchanged thousands of text messages with these individuals," and many of those text messages were non-responsive and irrelevant to the case. *See id.* at ¶ 5. Ms. Davis had hoped to find time to sort "the responsive text messages from the non-responsive text messages" rather than dump all of the texts that she had ever exchanged with Ms. Samuelson or Mr. Cooprider. *Id.* at ¶ 5; *see also id.* ¶ 6 ("I have been reluctant to produce all of my text

messages with Mr. Cooprider and with Ms. Samuelson because some of the non-responsive texts contain material that I would rather not disclose unless required to."). But when the Court set a deadline for production, Ms. Davis realized that she would not have time to sort through the thousands of text messages and took the path of least resistance by handing over all of her texts with Ms. Samuelson and Mr. Cooprider. *See id.* at ¶¶ 8–12. Opposing counsel's accusations of bad faith are baseless, and they do nothing to support their motion to compel because Ms. Davis produced all of these texts before they filed their motion on March 27, 2026. *See* Cooprider's Status Report, ECF No. 47, at 4.

Fifth. Ms. Davis has not "destroyed" any of her text messages with Yvonne Yakopovich, as all of those previously deleted texts have been recovered with Decipher. *See* Davis Declaration ¶ 11 (attached as Exhibit 2) ("I did not 'destroy' my text messages with Yvonne Yakopovich, because all of those previously deleted texts have been recovered with Decipher. Nothing has been 'destroyed.'"). Ms. Davis has produced all text messages that she exchanged with Ms. Yakopovich between April 1, 2025, and April 7, 2025, and those are the only responsive and relevant text messages that she has ever exchanged with Ms. Yakopovich. *See* Davis Declaration ¶ 12 (attached as Exhibit 2) ("I have produced all text messages that I exchanged with Ms. Yakopovich between April 1, 2025, and April 7, 2025, and those are the only responsive and relevant text messages that I have ever exchanged with Ms. Yakopovich."). So there is no further discovery for this Court to compel with respect to the text messages between Ms. Davis and Ms. Yakopovich. Mr. Cooprider's attorneys do not claim that Ms. Davis is withholding responsive or relevant text messages, and they have no right to discover text messages unless those messages are both "relevant to any party's claim or defense" and "proportional to the needs of the case."

Sixth. Mr. Cooprider's claim that Ms. Davis was "offended" when they pointed out a supposed "discrepancy" in the production of her text messages with Ms. Yakopovich is false and irrelevant. *See* Cooprider's Status Report, ECF No. 47, at 5 ("When this discrepancy was pointed out to Davis, she was offended."). Mr. Cooprider's attorneys have never communicated with Ms. Davis, and they are not permitted to communicate with her consistent with ethical rules. *See* Davis Declaration ¶ 13 (attached as Exhibit 2) ("I have never communicated with Mr. Cooprider's attorneys"); Mitchell Declaration ¶ 11 (attached as Exhibit 1) ("I have never given Mr. Cooprider's lawyers permission to communicate with Ms. Davis"). Mr. Mitchell has never disclosed the content of his privileged communications with Ms. Davis to Mr. Cooprider's attorneys, so they have no basis of knowing how Ms. Davis reacted to information that Mr. Mitchell might have provided to her. *See id.* at ¶ 12 ("I have never disclosed the content of my privileged communications with Ms. Davis to Mr. Cooprider's attorneys."). Ms. Davis was not "offended" by Mr. Cooprider's attorneys' reaction to her document production,[3] and even if she were that is irrelevant to whether the Court should enter an order compelling discovery.

Seventh. The supposed quote from the Corpus Christi police about Jackie Samuelson's accusation is unauthenticated, unsupported by evidence, and triple hearsay. *See* Cooprider's Status Report, ECF No. 47, at 5–6 (Cooprider's lawyers describing an out-of-court statement from the Corpus Christi police, which in turn describes an out-of-court statement from Jackie Samuelson).

Finally. Mr. Cooprider's attorneys are not cooperating with our efforts to resolve these discovery issues without the Court's involvement. The Court's e-mail of March

---

3.    *See* Davis Declaration ¶ 13 (attached as Exhibit 2) ("I was not 'offended' by their reaction to my document production, and I never expressed sentiments of offense to them or to anyone else.").

30, 2026, instructed the parties to "continue to engage to resolve this dispute." Exhibit 3. Shortly after receiving that e-mail, Mr. Mitchell e-mailed Mr. Cooprider's attorneys and asked them to explain what documents (if any) they were seeking to compel now that Ms. Davis has produced all of her text messages with Mr. Cooprider and Ms. Samuelson, and all of her responsive text messages with Ms. Yakopovich. He wrote:

> Counsel:
>
> As you have seen in the response that I filed earlier today, our position is that Ms. Davis has fully produced the text messages that you have requested and that your motion to compel is therefore moot.
>
> If you disagree with that, please tell us immediately what Ms. Davis has failed to produce in response to your discovery requests.

Exhibit 4. When Mr. Cooprider's attorneys failed to respond, Mr. Mitchell sent a follow-up e-mail on April 1, 2026:

> Counsel:
>
> I'm following up on our e-mail of March 30, which you have not responded to. The Court instructed us to "continue to engage to resolve this dispute."
>
> This is now the third time that I have asked you to identify what documents Ms. Davis has failed to produce in response to your discovery requests. You have ignored each of our previous requests, even though Ms. Klein accused us of providing "incomplete" discovery responses in the e-mail that she sent at 10:39 a.m. central time on March 30, 2026. You cannot accuse us of providing "incomplete" discovery responses and then hide the ball by refusing to tell us what you regard as "incomplete" in the documents that we produced.
>
> If you do not respond to this e-mail by 6:00 p.m. central time on April 2, 2026, then I will file a notice with the court attaching our unanswered e-mails and informing the court that you are refusing to cooperate or answer our e-mails.

Exhibit 5. In response to this e-mail, Ms. Klein wrote:

Jonathan,

I advised you on several occasions that my schedule and personal responsibilities are intense at this time. Telling the Court that we are "refusing" to cooperate 72 hours after your production is inaccurate. We are currently reviewing the 3000 plus text messages and other evidence that you finally provided at 3:12 am Monday morning.

We will be able to discuss the issues with respect to RFP 2 on Monday, April 6. This gives the Defense five business days—a reasonable time to review and respond. Plaintiff will then have seven business days before the hearing to act. Your client had six months to provide this evidence. She responded only after the Court ordered her to do so. It is our position that Davis is not reliable to provide responses to discovery. She deleted incriminating evidence in her divorce case and this one.

The texts between Yvonne and Davis are obviously mid-conversation. There is a malicious prosecution claim against Ms. Davis. Please produce all responsive texts.

Please be prepared to discuss the following on the 6th:

1. Why the audio recordings taken by Ms. Davis on April 5 are not unbroken and continuous.
2. Your client's proposal for the protective order for the blacked-out photos? I offered an attorney's eyes-only agreement on March 26.

Thank you.

Exhibit 6. The next day, Ms. Klein e-mailed Mr. Mitchell again and asked to confer on April 7 rather than April 6:

I have been reminded that folks are taking April 6 off for family and observances.

Let me know what time on April 7 you would like to deal with the problems at hand

Exhibit 7. This led Mr. Mitchell to believe that Mr. Cooprider's lawyers intended to confer with him on Tuesday, April 7, about the issues mentioned in Ms. Klein's earlier e-mail, and that the parties would confer before Mr. Cooprider's attorneys filed any documents with the Court. *See* Mitchell Declaration ¶ 5 (attached as Exhibit 1).

On April 7, 2026, at 12:01 P.M. mountain time, Mr. Mitchell e-mailed Ms. Klein and wrote:

> Beth:
>
> Is now a good time to discuss the discovery issues?

Exhibit 8. Ms. Klein did not respond to this e-mail. Instead, she filed her status report with the Court at 1:28 P.M. central time without ever conferring with Mr. Mitchell. *See* Cooprider Status Report, ECF No. 47. Mr. Mitchell immediately e-mailed Ms. Klein and asked her to reconsider her decision to file the status report before conferring.

> Beth:
>
> We were supposed to confer on April 6 or 7 about these discovery disputes. Filing this document unilaterally and without conferring with us is discourteous and violates Rule 37(a)(1), which requires parties to confer in good faith before asking a court to compel discovery.
>
> Please withdraw this filing so we can confer as required by Rule 37(a)(1) about the issues you raise. Also please let us know what times you are available today to confer.

Exhibit 9. Ms. Klein wrote back and said:

> Jonathan,
>
> The pleading is a Status Report with respect to a Motion to Compel invited by the Court in Doc. 36. This is our position, and we are advising the Court of our position. The Motion to Compel was filed on *March 27, 2026.* Claiming that there has been no conferral for this Motion after months of negotiations, a hearing, a filed motion is specious.
>
> If you wish to agree to the relief to have mirror images made, please select one of the experts and prepare a stipulation to replace the Status Report and Supplement. If you have a proposed Protective Order for the lewd images that Davis created and redacted, please forward a draft.

Exhibit 10. Mr. Mitchell responded and reminded Ms. Klein that Rule 37(a)(1) required her to confer in good faith with opposing counsel before asking the Court to compel Ms. Davis to hand over her cell phone to a forensics expert:

Beth:

The document that you filed today is asking the court to "appoint a forensics expert to create a mirror image of Davis's cell phone." It also asks the Court to "enter orders to compel discovery," although you do not say what discovery you are asking the Court to compel.

You are requesting additional remedies from the Court that you did not ask for in the motion to compel that you filed on March 27, 2026. You are obligated to confer with us in good faith under Rule 37(a)(1) before requesting those remedies from the Court.

You have never served a discovery request for Ms. Davis's phone, nor have you asked us to turn over Ms. Davis's phone to a forensics expert. You cannot ask the Court to compel discovery that you have never sought from us.

Even apart from Rule 37, it is beyond discourteous for you to file this status report without conferring with us. The judge's instructions, as conveyed in Ms. Clancy's e-mail of March 30, 2026, clearly envisioned that we would confer and attempt to resolve our disagreements before notifying the Court of our respective positions.

Your e-mails of April 2 and April 3 led me to believe that you intended to confer with us on April 7, and I e-mailed you this morning to arrange a time to confer. To unilaterally file a document such as this when you indicated that you intended to confer with us on April 7 does not exhibit respect or courtesy to opposing counsel.

Please reconsider your stance and withdraw the document that you filed at 12:29 p.m. mountain time. If you do not withdraw the document, then I will file a motion to strike.

Also please let me know when you are available to confer today.

Exhibit 11. Ms. Klein wrote back and said:

> Given Davis's continuous material destruction of evidence, we believe that preserving the data for all Parties for a later examination is the best remedy. We are not going to play "catch me if you can" games anymore. This is a preservation request. It's a very fair resolution, and it ensures that evidence will be available for court supervised examination at another time.

> If you disagree, then oppose the Motion. Your communications do not address the seriousness of your clients conduct and the threat to a fair resolution she has created.

Exhibit 12. Mr. Mitchell again asked Ms. Klein to confer:

> When would you like to confer? I thought we were supposed to confer on April 7.

Exhibit 13. Ms. Klein responded:

> We are conferring with all counsels' eyes on.

Exhibit 14. Mr. Mitchell made another last-ditch effort to set up a meet-and-confer session:

> We should confer over phone or Zoom. That is clearly what the Court expects from us and what Rule 37(a)(1) requires.

> What times are you available to confer?

Exhibit 15. Ms. Klein wrote back and told Mr. Mitchell to call her cell before 6:00 P.M. mountain time to "verbally confer." Exhibit 16.

The conferral was cordial and respectful but Ms. Klein insisted that the motion to compel needed to be resolved by the Court at an in-person hearing despite Ms. Davis's production of the responsive text messages. *See* Mitchell Declaration ¶ 8 (attached as Exhibit 1). Near the end of the call, Mr. Mitchell told Ms. Klein that he regarded her stance as an attempt to force an exhausted pregnant woman and an overworked single mom of three into an unnecessary in-person court hearing, even though Ms. Davis has already produced every conceivable responsive communication in response to RFP No. 2. *See id*. at ¶ 9. After the call ended, Ms. Klein e-mailed Mr.

Mitchell and offered to excuse Ms. Davis from attending the hearing in person if she would make "her phone available so that the mirror image can be made":

> You expressed concern that Davis doesn't want to appear because she is pregnant and tired. I conferred with Mikal. Our position is that we really don't need her to attend the hearing. We just need to have her phone available so that the mirror image can be made.
>
> I hope this helps.

Exhibit 17.

Ms. Davis's counsel regards the continued pursuit of this motion to compel and Mr. Cooprider's attorneys' insistence on an in-person hearing as an act of harassment. It is undisputed that Ms. Davis has produced:

- All of her text messages with Jackie Samuelson;

- All of her text messages with Christopher Cooprider, with the exception of approximately nine irrelevant photos that her attorney redacted before production; and

- All of her responsive text messages with Yvonne Yakopovich.

Ms. Davis has declared under penalty of perjury that she has produced all responsive communications sought in Request for Production No. 2, and Mr. Cooprider's attorneys do not deny this. Nor have they produced any evidence or reason to believe that Ms. Davis is withholding responsive documents in her possession, custody, or control. Their last-ditch request for an order compelling Ms. Davis to provide her phone to a forensics expert is procedurally improper, and their attacks on Ms. Davis's character are ipse dixits unsupported by evidence.

There is no need for an in-person court hearing that requires Ms. Davis's attendance when she has fully complied with Mr. Cooprider's discovery requests and when Mr. Cooprider's attorneys are not accusing her of withholding responsive documents. Mr. Cooprider's insistence on barreling ahead with a court hearing on this bootless

motion to compel—and to continue insisting on a hearing after Ms. Davis has produced all of the responsive text messages—is unreasonable and vexatious.

Ms. Davis respectfully asks the Court to move any hearing on Cooprider's motion to compel to Zoom or, in the alternative, to excuse Ms. Davis from in-person attendance if the Court decides to proceed with an in-person hearing at the federal courthouse in Corpus Christi. The motion to compel is moot and Ms. Davis has produced every responsive document that Mr. Cooprider has asked for. There is no reason to drag Ms. Davis or her attorney into an in-person hearing in Corpus Christi to accommodate the obstinance of Mr. Cooprider's counsel.

## CONCLUSION

The motion to compel should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
   *Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: April 9, 2026

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 9, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

*Counsel for Defendant Christopher Cooprider*

      /s/ Jonathan F. Mitchell
      JONATHAN F. MITCHELL
      *Counsel for Plaintiff*