# EXHIBIT A

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Incident Information

| Date/Time Reported | Date/Time Occurred From | Date/Time Found | Officer | |
|---|---|---|---|---|
| 04/06/2025  02:17 | 04/05/2025  21:35 | 04/06/2025  00:01 | (18065) EVERAGE, I | |
| **Incident Location** | | | **Supervising Officer** | |
| 6329 Oso Pkwy, Corpus Christi, TX 78414 | | | | |

## Charges

| 1 | **Charge Type** State | **Description** ASSAULT, PREGNANT PERSON | | | | **Statute** PC22.01 (3F) | **UCR** 13B | ☐ Att ☑ Com |
|---|---|---|---|---|---|---|---|---|
| **Alcohol, Drugs or Computers Used** ☐ Alcohol  ☐ Drugs  ☐ Computers | | **Location Type** RESIDENCE/HOME | | **Premises Entered** | **Forced Entry** ☐ Yes ☑ No | **Weapons** 1. Other | | |
| **Entry** | | **Exit** | | **Criminal Activity** OPERATING/PROMOTING/ASSISTING | | **2.** | | |
| | | | | | | **3.** | | |
| **Bias Motivation** | | **Bias Target** | | **Bias Circumstances** | | **Hate Group** | | |

## Victims

| **Seq. #** 1 | **Type** INDIVIDUAL | **Injuries** None | | **Residency Status** Resident | **Ethnicity** Non-Hispanic | | |
|---|---|---|---|---|---|---|---|
| **Name(Last, First, M)** DAVIS, LIANA | | | **Race** W | **Sex** F | **DOB** ▉▉▉ | **Age** 37 | |
| **Address** 6329 OSO PKWY, CORPUS CHRISTI, TX 78414 | | | | | **Home Phone** (412) 295-7136 | | |
| **Employer Name/Address** | | | | | **Business Phone** | | |
| **Victim of Crimes** 1 | **Cell Phone** | | **Drivers License** ▉▉▉ | | **SSN** | | |

**Reporting Officer:**   (18065) EVERAGE, I

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Offenders

| Seq. # | Type | Name(Last, First, M) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | INDIVIDUAL | COOPRIDER, CHRISTOPHER | | | | | | Non-Hispanic |

| AKA | | | Race | Sex | DOB | Age | Height | Weight |
|---|---|---|---|---|---|---|---|---|
| | | | W | M | 03/26/1991 | 34 | | |

**Address**
6325 OSO PKWY, CORPUS CHRISTI, TX 78414

**Home Phone**
(720) 840-8617

**Employer Name/Address**
US MILITARY

**Business Phone**

**Scars, Marks, Tatoos or other distinguishing features**

**Cell Phone**
(412) 295-7136

**Physical Characteristics**

Suspect Details

## Property

| Seq. # | Description | | Serial Number | Make/Model |
|---|---|---|---|---|
| 1 | ABORTION MEDICATION | | | |

| Owner | | License / State | Color |
|---|---|---|---|
| DAVIS, LIANA | | | |

| Status | Status Officer | Quantity | Units of Measure | Value |
|---|---|---|---|---|
| EVIDENCE | (18065) EVERAGE, ISAAC C | 3.00 | | |

| Gun Type | Caliber | Finish | Grip | Gun Stock |
|---|---|---|---|---|
| | | | | |

| Condition | Gun Test    Test Type | Sight Test    Sight Type |
|---|---|---|
| | ☐ Yes ☑ No | ☐ Yes ☑ No |

**Property Notes**          **Property ID**    2148747

**Reporting Officer:**   (18065) EVERAGE, I

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

| Related Name Relationships | | | | |
|---|---|---|---|---|
| DAVIS, LIANA | is | BOYFRIEND/GIRLFRIEND | to | COOPRIDER, CHRISTOPHER |

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Narrative

On 04-06-2025 at 2:17am I, Officer I. Everage #18065 while working off duty at 7101 S Padre Island Dr the Bay Area Hospital was informed a patient wanted to report a Assault.

I made contact with (VI) Liana Davis who stated to me she thinks she was assaulted by the father of her unborn baby (OF) Christopher Cooprider.

Liana and Christopher are next door neighbors who started becoming intimate around December of 2024.

Christopher is a pilot in training at the Navy base here in Coprus Christi.

January of this year Liana discovered Christopher had a girlfriend and that he was cheating on with her.

Around mid February Liana found out she was pregnant with Christophers baby with a due date of Nov 15.

March 5th Liana and Christopher had a big argument and the two stopped seeing each other in person but would text every day talking.

On March 21st, 2025 Christopher attended Liana`s OB appointment in regards to the baby but other then that the two did not have contact in person.

Liana stated that the last couple of days Christopher appeared to be alot more friendly and involved acting.

On 04-05-2025 at 9:35pm Christopher came over to her home to hang out insisting on bringing hot chocolate to help her calm down because thats what he drinks to calm down.

Liana stated Christopher made hot chocolate alone in the kitchen while she was doing other things around the house.

When Liana was finishing her hot chocolate she realized Christopher had added alcohol to the drink.

Christopher admitted to adding alcohol to the drink and stated to her he assumed thats what she wanted.

Liana brushed off Christopher adding alcohol to the drink since it was such a small amount and it was nothing to really worry about.

Christopher became tired first and went to bed around midnight.

While Liana was getting ready for bed she was inserting pregnancy medication into her vagina and she discovered blood on her fingers fearing she was having a miscarriage.

Liana began to freak out but stated that Christopher appeared to be calm and not concerned about this issue.

Liana stated Christopher went down stairs and upstairs twice while she was trying to figure out a plan to go to the hospital because she needed someone to watch her other children.

The plan was to have Christopher go pick up her mom that was 8 minutes away and bring her back to watch the kids so

**Reporting Officer:** (18065) EVERAGE, I

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Narrative

Christopher could take her to the hospital.

Christopher left the above listed address and Liana did not hear from him for 32 minutes prompting Liana to reach out asking where he was.

Christopher told her he was having trouble finding her mom.

At 12:59am Christopher texted her that he had to fly tommorow and couldnt deal with what was going on and stopped replying to her.

When Liana stated when she came down stairs Christopher had taken all the items that he brought over washed their two hot chocolate mugs and left a pill bottle with three pills inside on the coffee table along with a open box of an abortion medication.

The box was of Mifepristone 200mg single dose with a empty pill wrapper inside. The pill bottle contained 3 pills. A search through drugs.com showed two pills to be Misoprostol 200mg for abortion and one pill of Mifepristone 200mg.

Liana produced photos dated February 19 2025 of a pill bottle full of Misoprostol and a box of single dose Mifepristone that Christopher ordered online because he wanted Liana to get rid of the baby.

Liana stated she believes she was having a miscarriage because Christopher used alcohol to cover the flavor of the abortion medication he put in her hot chocolate that she drank an hour prior to her bleeding.

It is unknown how many pills Christopher ordered online or if he did actually put medication in her drink.

Liana stated it is just very suspicous to her that all of a sudden he wants to come over and have a drink with her.

Pill bottle of 3 pills tagged as evidence along with the empty medication box.

## Continuation

**Reporting Officer:**   (18065) EVERAGE, I

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Information

| Supplement Date | Supplement Type | Supplement Officer |
|---|---|---|
| 04/10/2025 16:15:16 | DETECTIVE | (6744) MANZANO, M |
| **Contact Name** | | **Supervising Officer** |
| | | |

**Supplementing Officer:**   (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

I, Detective M. Manzano 6744 was assigned this report. I reviewed the report, and the following day made contact with the victim on 4-10-25 in the morning around 830am. CID command staff was aware and updated. The victim spoke to me at length via a recorded phone call as can be heard. She sounded coherent and articulated well with the info she provided.

The victim DAVIS, LIANA explained to me that she believed but did not witness, listed offender COOPRIDER, CHRISTOPHER put an abortion medication in her drink- hot cocoa. She gave the name of the medication(s) "Misoprostol" and "Mifepristone". She advised this was done without her consent and also never gave consent for the order of the medicaiton to be placed. She told me the offender ordered the medication on his own on-line and in his name. She believes he may have pretended to be her to obtain the medication, but should be noted the medication was in his name. She told me she was bleeding from her vaginal area and noticed this when trying to insert medication for her pregnancy. She said the bleeding concerned her and felt she was having a miscarriage. She stated the medication the offender used was untraceable and there was no test for detection as she was told by medical professionals. She advised she was now just waiting for the baby to pass through from her.

I asked her if we could meet or when she could come down to the station to provide a video statement for the case. She advised this was currently not possible and would be at least 2 weeks before being able to do so and cannot commit to an interview. She advised she was bleeding heavily and in a medical crisis and felt like she was in danger also possibly could need surgery. We began to speak over the phone since she could not come in as I needed information to start the investigation. I explained to her if needed down the road we could meet for a formal statement in person. The victim was open with information and told me the offender became her neighbor about 1 year ago. She advised she is currently going through a divorce as stated her husband left her and the children. She advised her husband had issues and she was in a bad marriage. She stated they were currently going through a custody battle as well.

She went on to tell me that the offender seemed like a nice guy and is a Marine Pilot who is supposed to be headed out to North Carolina for work as he was receiving his Pilot Wings. She advised however due to her reaching out to his superiors he is no longer doing so and he now has a legal hold and not allowed to leave. She continued to explain that they had encounters days before Christmas and recalled 2 times only in December of 2024 where they had sexual encounters behind locked doors of her residence. She went on to say they began speaking to each other in the fall of 2024 as he would help with manly duties around the house to include putting up Christmas lights. She described his as soft spoken and portrays himself as a nice guy.

The victim told me she had considered an abortion with him but changed her mind, she went on to say she has an audio recording for proof of the incident. (she was asked to send to me and did). It should be made known the recording was less than 30 seconds and was not clear evidence of the alleged crime. The recording and timing of it was peculiar to me. On the recording you can hear both a males voice and female, a popping noise and a very brief stir in a mug. It should be noted the victim said she was with the offender most of the time he was making hot cocoa until she walked a way to call for the dog. Her voice can be heard walking away and returning within seconds. The popping noise occurred when she was with him in the kitchen and after. (Victim- told me she used phone to record him and did so because he does it to her). Later that day when we spoke again the victim told me she only recorded him at that moment and maybe lasted 1 hr until she turned it off to use the restroom.

She told me she has seen the pills before and stated he put alcohol in her cocoa "amaretto". She explained the offender came to the residence to make her the cocoa to help calm her down. She stated she did not ask for the alcohol and did

**Supplementing Officer:** (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

without her knowing but didn`t think much of it. She found it odd that he had a mix match hot cocoa packets in the box to which I advised was not unusual. She told she never saw him with the medication. She went on to say after she drank the cocoa the offender was going to stay the night but no sex was to be had. He was going to sleep in her bed she states as he would do. She advised about 30 mins after the drink and the offender going to the bed she went to insert the prescribed medication given to her by her OBGYN and was at that time noticed the bleeding.

The victim said she told the offender to pick up her mother and bring her to the house to watch the 3 other children she has. He was then to take her to the Hospital. She advised he left and never returned and after 40 mins of "ghosting her" he text her "are you ok? She asked where he was and what happened to which she said he told her he could not find her mother and did not have time for this as he had to fly in the morning. It should be noted she advised me she saw what she believed to be the offenders truck down the road as she walked to a neighbors and stated it looked like it was just sitting there idling. She advised the neighbor took her to the Hospital. While at the hospital she was advised the baby was not detected was deemed as deceased/miscarriage.

During our conversation she made me aware that the offender may have text messages that make it appear she has already been taking the medication for the abortion. She also mentioned there may have been 2 pregnancies, but she could not confirm. She said in January of 2025 she took a home test but was not clear, and then again in February of 2025 she felt was snow for sure as she took 4 home test. She provide me the name ███████████████ as her OBGYN. (should be noted she refused to call her OBGYN for me, as can be heard on recording)

The victim advised me that she has a Child Amicus and gave the name Judge Melissa Madragal. She told me she has not had contact with her for 5 months and was not helping her. She told me this information asking if I would speak to the Amicus to prevent any home visit from her as one was being requested. I advised her nobody has called me but if I would speak to her. She again advised she did not want this home visit to happen. This information made me curious and concerned me.

On the same day 4/10/25 I contacted the Nueces County Medical Examiners Office and spoke with Dr. Kannann the head forensic pathologist. I was advised that there was no test to be done and no samples were to be taken to their office. The Doctor advised the fetus would be to small and not enough weight for any testing. The Doctor also advised no ruling as to the cause of death could be given and no death certificate could even be issued at this time as they would need from the Hospital "Products of conception" meaning evidence such as the fetus, embryos, tissue etc to have proof of life. The information was relayed to Command staff for CCPD.

The baby/fetus was said to be 8 weeks or less and may be smaller then 1 inch in size. The victim said this the same but advised me she is expecting something the size of a lemon. She advised she has been passing "stuff" for days and unsure if anything still even inside of her. She stated every time she urinates this occurs and looks like clots. When instructed that the evidence needs to be collected she denied and stated Police, etc were not allowed at her home due to her children being around. I explained the importance of this to her and was shocked with the response. I gave options to which were all declined. She advised she did not have the time to do this and demeaned I call and make arrangements to find out where she needs to go exactly. I did so to accommodate her and help the situation and when instructed again she again gave me a hard time and stated as can be heard on recording she was not wanting to do this and stating she wouldn`t be. She at one point advised me she possibly could go next week if she had time as she has to take her children a carnival and to see the Easter bunny. I explained to her that Pathology advised me the cells would die and disappear quickly and fresh samples were needed as it was also evidence. Again, I was given the run around with the information and it did not come across as it being important to her. I explained to her that any normal prudent person would not see it this way and advised her that her assistance was needed. I advised her I could not force her to

**Supplementing Officer:**  (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

do so. I even mentioned there was concern for her safety do to this miscarriage and was instructed to admit herself to the Hospital and so they could collect the BIO. She again told me no and would not do this and began to explain that she has complained on the Hospital before. Please hear the recorded call for details.

The victim also told me of a time in which she wanted to put the medication in the offender`s truck one late night. The neighbor caught her outside and she asked the neighbor to see if his truck was unlocked. The neighbor told her NO and that she should not be getting into his truck. The victim said she laughed it off and said she was kidding to the neighbor and couldn`t recall what she did with the meds. She also advised me that she has had the medication for weeks but was not consecutive. She said she kept them hidden from the kids and the offender at times would take them with him as well.

We also discussed any witness such as the neighbor she spoke to for help. She gave me the names Jackie Samuelson and Romy Satery. She explained Romy would not have as much information as Jakie would have as they used to be best friends but now no longer speak. She asked why I needed the information, and I explained that they were aware of the events.
She began to warn me that Jackie has blocked her on all social media and no longer speaks with her. She told me she wanted to warn me that Jackie may be taking the offender`s side and against her in the matters. The victim feels this witness may make her sound bad and does not trust her any longer. Please hear the audio and see e-mails sent ref. this from the victim. (email was dated 4/11/25)

It should be noted just month prior in September of 2024 the listed victim was reported as being the suspect/offender in which her soon to be ex-husband (Devin) during their marriage told officers that while on the way to work at Carroll High School, he could feel his self being tired and feeling groggy. He would then go to the school nurse, where she stated to him that his pupils were extremely small. Medics were called and he was transported to Spohn South Hospital for treatment. Devin`s results did come back with drugs in his system. He stated he does not take medication or drugs. Devin believes that the pills that were "missing" were put in his coke earlier that morning before work. That case was closed by the assigned investigator due to lack of evidence.

I received an E-mail from the listed victim at 1255am on 4/11/25 in reference to her child Amicus visiting with the listed offender and her concerns on the matter. The victim was upset the amicus met with the offender and the witness mentioned above. (see email)

On 4/11/25 I contacted the victim who provided me the phone number for the Amicus- M. Madrigal. I contacted the Amicus at around 847am on the same day, who advised me she did meet with the listed offender and the next door neighbor (mentioned above) and that there were recorded statements. She explained to me that she received a call from the children`s father and soon to be ex-husband to the victim. He was concerned about his children and a phone call he received in which he learned the victim had gotten pregnant and some concerns with the children. The Amicus learned the call made to him was from the listed offender. She then scheduled to meet with the offender at his residence to see what was occurring for the safety of the children. The Amicus told me she was under the impression that the victim became pregnant on Jan 18th. She also informed me the victim may be suffering from mental illness. She went on to say when she arrived at the offenders home his vehicle was not seen. She called him to ask if he was there at which time the offender told her he was and he had to park his truck inside the garage or hide it around the street to prevent the victim from knowing when he is home. The Amicus stated the offender explained if she sees his vehicle she will go to his home and harass him or bang on the door. According to the Amicus the offender was open with her and explained they had a sexual relationship to which she claimed to be pregnant. He told her he ordered medication on-line so that they could prevent the pregnancy. He explained that she agreed to take the medication as long as he would agree

**Supplementing Officer:** (6744) MANZANO, M

## Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

to delete all their prior text messages related to their relation/affair so it would not affect her child custody hearing. He went on to tell the Amicus that she had taken one of the pills In front of him and pretended to take another, but he could not confirm. He also stated he found ovulation pills in which he felt something else was going on. He continued to mention that he has a video of her acting crazy and banging on his door stating she would call the Police on him. The Amicus also advised he had calls from the victim in access over 23 calls one day and 53 call another day.

He told the Amicus that she called him over and to make her drinks, (asked him to bring alcohol) however he told her there would be no sex. He agreed to go but found it odd he was told to use the garage. This was odd to him because he has always been told to only use the back door to avoid being seen on her Video surveillance and her husband seeing. He advised he used the garage and fixed a car seat for her. He then made her a drink and because he did not trust her he eventually left. He told the Amicus he fears the victim and the Amicus advised he did seemed concerned.
The amicus also advised the victim would take photos of him and his property without knowing.

The Amicus also spoke to the neighbor and former friend of the victim- Jackie. The Amicus was told by Jackie that the victim is "off the deep end". And they discussed with the Amicus that they have been asked to lie for her in court. She also explained that the victim was trying to get the offender to go over and was acting strange. Jackie went on to tell the Amicus that she felt like the victim was trying to get the offender in trouble or setting him up. She told the Amicus she too had text messages from the victim that were long and odd. It should be noted Jackie was the one who took the victim to the Hospital on the day in question. (Victim advised Jackie has not checked on her since and was upset that Jackie told the offender she reported him to Police, etc)

The Amicus advised me she also learned that the victim was said to have let her children be taken and cared for by a stranger who did some housework for her. This was said to have been done because she wanted time alone with the offender. There was information that the children were bathed by the stranger which now raised concerns of any potential criminal acts being done to the children. That will be a separate incident and handled by child crimes unit if an outcry is made per CID command staff. The Amicus advised there was serious concerns for the children and advised an emergency removal order was going to be filed.

On 4/11/25 I spoke to the victims OBGYN-███████████████The victim advised me she had instructed the Doctor to cooperate with the investigation. The Doctor was willing to speak to me and confirmed she was the treating Physician for the victims pregnancy. The Doctor had concerns about the victims mental health but advised the victim was tested as positive for pregnancy.
She advised me she was aware of the situation and had already explained to the victim that there was no way to prove a cause of death or any test for detection. She went on to explain to me this may have indeed been a normal miscarriage and that the victim already had an unhealthy pregnancy. The Doctor explained to me the victims ████████████
██████████████████████ She also advised the patient told her she had not been taking her prescribed medication for days which were important and also could have caused a miscarriage. She then explained the baby possibly even potentially may have already been deceased before going to the hospital, which could be why no detection was made she advised. The Doctor also stated there was no known test to run on blood for the medication. The Doctor told me the pregnancy was 7 weeks 3 days and no way to say when the baby may have passed. The Doctor also advised me the medication said to be used takes time within 48hrs to start the process but is also done in steps. She advised it would be unusual and not heard of to occur within 30 mins of taking or to include 4 hrs. (The Doctor was under the impression the victim said symptoms started 4 hrs after ingestion. I was told by the victim in 30 mins, same was said by NCIS). The Doctor also advised there would be no major bleeding at that point at the start of symptoms but only spotting and possibly stomach cramps. She stated she will send me the medical records from her office and the Hospital with the victims permission. The Doctor advised she will reach out to the victim/patient for consent.

**Supplementing Officer:**  (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

On 4/14/25 I was able to speak with witness Jacqulyn Samuelson and obtained and audio statement from her. She advised me she was at one time close friend to the victim. However, she cut her off of all social media and stopped contact due to her concerns of mental illness and the things going on between the victim and the offender. She advised me she did not trust the victim and believed the accusations are false. She also stated the victim has a "unhealthy Obsession" for the offender. The witness was involved on the day of the incident because the victim went to her residence even though they haven`t spoken for a good amount of time period. The victim showed up asking if she could taker her to the Hospital. When asked why, the victim was holding her stomach and said I`m sure you know why. The victim told the witness, that her mother was on the way to watch the kids. The witness advised the victim left and about 10 mins later she came back and they went to the Hospital. The witness said this was on April 5th or 6th as it was around 1230am going into that day. On the way to the Hospital the witness said it was an awkward drive and she the witness remained quiet. She told me she didn`t trust the victim and feared any false accusations from her as she knows the victim makes multiple false accusations on people. Due to this the witness advised she recorded the conversation on the way to the Hospital. She described the victim as acting suspicious. She explained that the victim told her she thinks CHRIS/offender drugged her and put something in her hot chocolate. When they got to the Hospital the witness said the victim immediate began telling anyone who would listen that she was DRUGGED. This included security guards, registration people, nurses, etc. The witness advised me she has seen photos of the medications in question and advised the victim sent them to her before. She also advised the victim had photos of the offenders driver`s license and social security card as she has shown her and showed the Officer on scene, which she described as "weird". The victim told her she has this because CHRIS does it to her to. The witness said both like to record each other and photo and blame both for their actions. The witness told me while the victim was telling the officer on scene what occurred the things she was saying were BOLD FACE LIES and even stepped out of the room with the Officer to tell this. She again spoke of the "unhealthy obsession" the victim has for the offender and that when she learned he had a girlfriend to include the offender telling her that he did NOT want a child with her this upset her. The witness stated that the offender told her the victim took abortion pills in February in front of him and the next day the victim walked to his house and while at the front door through another one in her mouth. The witness also recalled a conversation she had with the victim in which the victim claimed different weeks of being pregnant, which the witness found odd. The witness believed the victim may have had 2 abortions recently. She also recalled seeing that the victim called the offender 53 times in a row and has banged on his door. She advised me the offender has had to call the Police on her before. The witness again began to talk about her concerns for the victims mental health. She then began to tell me about how the offender told her he was going to go to the victims house. She advised him not to go in her home out of fear that she is likely to make something up or an accusation. She even recalled specifically telling him like she could say you "spiked her drink". The witness told me it was the victim who invited the offender on the day in question. She mentioned that the victim text the offender that she will drink "hard cocoa" and they agreed to the alcohol. The witness also told me that the victim and offender both had a weird thing about recording each other. She also explained that the victim had told her on the day of the reported incident that she feels the offender crushed up 10 pills and spiked her drink. The victim had concerns about the said miscarriage and wanted to advise me that the victim had already told her the baby had a low heart beat back in March and that she had not been taking her prescribed medication for a week. She also told me the victim has had an abortion before as she shared with the witness this occurred when she was in college. She also confirmed the incident on her own in reference to being asked to break into the offender truck. The witness went on to tell me that both are equally damming and the offender can be a jack ass at times. She also mentioned that she feels this was a desperate plea from the victim in which she advised the victim asked her "do you think Chris wont be leaving now". The witness was very concerned and feels the victims claims are false. She wanted to mention to me as well that the victim has asked to lie under oath for her and has made the offender delete text. Before ending the contact she advised she will be sending me via e-mail potential evidence such as text, screen shot photos and an audio recording of her and the victim. (hear audio statement for full details)

**Supplementing Officer:** (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

I was able to speak with the listed offender by phone and gave him an opportunity to meet with me and provide a statement for the case. The offender was eager to but advised he had legal counsel and would discuss with them first. The offender did mention that the allegations were not true and that she was just angry with him. He found the victims behavior suspicious even on the day in question. The offender told me that he was always told to use the back door to the residence but on the day of the allegation he was told to use the garage. He continued to talk and explained to me she wanted him to come over to her residence and bring alcohol. He said he advised her no sex would occur and only helped her with a car seat and made her a drink. The offender also told me that he has to park around the corner so that the victim will not known when he is home as he states she goes over and harass him. He did state that he ordered the medicaiton on line and in his name. He told me that he did so and provided the medications to the victim as they discussed going through with the process. He went on to tell me that he had seen the victim take one of the pills some time back and pretended to take another one but he could not verify if she did. He confirmed that they had an agreement in which if he was to delete all text in reference to their affair to avoid her soon to be ex-husband from finding out she would take the pills. He advised she has had the medications at her residence. The offender also had mentioned to me that the victim asked him to lie in court for her. He went on to say the allegations were not true and he was in the process of receiving his military pilot wings and to be sent off. I advised him to have his attorney contact me.

I spoke with the offenders legal rep (Ozzy) who is with the Gould law firm. I was advised they will be sending me evidence to review and will talk it over in reference to meeting and providing a statement. However at this time they will not be bringing their client to do so. They advised this is a case of a jealous and upset ex lover and evidence they have will show that. It was also advised to me that they feel the listed victim is suffering from mental illness. They requested the investigation be expedited so that their client can be released from military hold and complete his winging ceremony. They would not let him meet with me for a statement but did agree to have him type on out for me, which they did later provide.

The investigation continued, evidence supplied from both parties was reviewed. The case was staffed periodically with the NCDAO- Chief of intake.

On 5/15/25 I met with NCDAO head DA- J. Granberry. The case was staffed for 2 hrs as we discussed the situation and reviewed the evidence. The decision was made that no case/charge would be pursued and would be deemed unfounded by the NCDAO and CCPD.

NOTES:

4/10/25 Victim declined any offers for meetings, hospital record release, needed phone calls, assisting in the investigation, etc -recorded phone conversations of this

Advised me she learned on 4-6-25 the baby was a girl and that her OBGYN said the Fetus was collapsed

Nothing in UDE, Officer was working off duty job

**Supplementing Officer:**   (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

Evidence was tagged at Bluff Station and not at main station, nothing in locker room at Main

As of 4/11/25 NVID retrieved the items and tagged into main station evidence (see their supplemental report)

Audio recording and timing was of concern (also question as to why the victim immediately felt she was administered the medication)

OBGYN advised patient did show to be pregnant but could have been millions of reasons a miscarriage could have occurred. Advised patients Progesterone levels were low at around 14 should be at 20 range and was already deemed an unhealthy pregnancy.

NCIS Brian Whitman visited with me 4/11/25 at main station to offer any assistance needed and to staff the incident (should be made known Whitman advised he was also told and under the belief the victim stated it was 30 mins after drinking the HOT COCOA that the began to bleed)

Called both listed witnesses no contact was made

Number for Jackie did not work was given a different number form the victim via email to try

***SHOULD BE NOTED AUDIO RECORDER TIME AND DATES ARE OFF***

The victim emailed and advised she was served with removal paper work for her children from the child Amicus.

4/14/25 I inquired with the victim if any samples had been taken, she advised she did take to ER on Thursday/Friday night. She also advised she will complete a medical records release with the Doctor on 4/15/25.

4/14/25 Spoke with witness/Neighbor/former friend of the victim Jacqulyn Samuelson

4/14/25 Jacqulyn sent me emails with text messages, screen shot photos and audio recording.

4/15/25 Jacqulyn contacted me with concerns in which she learned from the child Amicus, that the listed victim made the claim she was having an affair with the offender and now conspiring against her. Jacqulyn wanted to make it known that this was false information and that she was very upset with the allegation

4/15/25 Spoke with the offenders legal rep (Ozzy) who is with the Gould law firm. I was advised they will be sending me evidence to review and will talk it over in reference to meeting and providing a statement. However at this time they will not be bringing their client to do so. They advised this is a case of a jealous and upset ex lover and evidence they have will show that. It was also advised to me that they feel the listed victim is suffering from mental illness.

4/15/25 Victim advised me she met with OBGYN and signed medical release from her and for the Hospital

4/24/25 I received a call from the listed offender who was inquiring about the case and the status.

4/25/25 Checked statues with NCDAO ref how to proceed with this case. I was advised no decision has been made. I called the NCDAO made a request to meet with the DA.

**Supplementing Officer:**  (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Notes

As of 5/7/25 I have not heard back

5/13/25 Called DA Granberry, left voicemail

5/13/25 Meeting set for Thursday 5/15/25 at 2pm with the NCDAO

5/15/25 Met with NCDAO DA J. Granberry, case was staffed and the decision was made that no case would be pursued and would be deemed unfounded

CID Supervision was updated.

Victim was notified

Offender was notified

NCIS was notified

**Supplementing Officer:**   (6744) MANZANO, M

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

## Supplement Information

| Supplement Date | Supplement Type | Supplement Officer |
|---|---|---|
| 04/11/2025 13:31:49 | PROPERTY / EVIDENCE | (14279) FOUGHT, A |
| **Contact Name** | | **Supervising Officer** |
| | | |

## Property

| Seq. # **1** | **Description** ABORTION MEDICATION | | **Serial Number** | **Make/Model** |
|---|---|---|---|---|
| **Owner** DAVIS, LIANA | | | **License / State** | **Color** |
| **Status** EVIDENCE | **Status Officer** (18065) EVERAGE, ISAAC C | | **Quantity** 0.78 | **Units of Measure** GM | **Value** |
| **Gun Type** | **Caliber** | **Finish** | **Grip** | **Gun Stock** |
| **Condition** | **Gun Test** ☐ Yes ☑ No | **Test Type** | **Sight Test** ☐ Yes ☑ No | **Sight Type** |
| **Property Notes** | | | **Property ID** 2148747 | |

| Seq. # **1** | **Description** **Voided/Replaced by: (14279) FOUGHT, ALLISON** ABORTION MEDICATION | | **Serial Number** | **Make/Model** |
|---|---|---|---|---|
| **Owner** DAVIS, LIANA | | | **License / State** | **Color** |
| **Status** EVIDENCE | **Status Officer** (18065) EVERAGE, ISAAC C | | **Quantity** 3.00 | **Units of Measure** | **Value** |
| **Gun Type** | **Caliber** | **Finish** | **Grip** | **Gun Stock** |
| **Condition** | **Gun Test** ☐ Yes ☑ No | **Test Type** | **Sight Test** ☐ Yes ☑ No | **Sight Type** |
| **Property Notes** | | | **Property ID** 2148747 | |

**VOIDED**

**Supplementing Officer:**   (14279) FOUGHT, A

# Incident/Investigation Report

**Agency:** CCPD          **Case Number:** 2504060017          **Date:** 01/14/2026 16:24:26

# Incident/Investigation Report

**Agency:** CCPD        **Case Number:** 2504060017        **Date:** 01/14/2026 16:24:26

## Supplement Notes

NARCOTICS EVIDENCE REPORT: 2504060017
ON 04/11/2025, CCPD ALLISON FOUGHT #14279 RECEIVED THE DRUG EVIDENCE IN THIS CASE FROM THE LOCKED NARCOTICS DROP BOX LOCATED AT THE FLOUR BLUFF SUB-POLICE STATION AND STORED IN THE PROPERTY ROOM NARCOTICS VAULT.
ON 04/11/2025 THE EVIDENCE PACKAGE WAS PROCESSED BY CCPD A. FOUGHT #14279 AND IS DESCRIBED AND MARKED AS FOLLOWS:

SUSPECT: COOPRIDER, CHRISTOPHER JORDAN                D.O.B.: 03/26/1991
EVIDENCE PROPERTY ID NUMBER: 2148747
THE EVIDENCE WAS SEALED IN A PLASTIC BAG HOLDING:
2 WHITE ROUND SCORED PILLS 10 07 AND 1 YELLOW ROUND PILL S
THE SUSPECTED SUBSTANCES WERE IDENTIFIED USING THE DRUGS.COM ONLINE REFERENCE AND THE 2014/2015 EDITION OF THE DRUG IDENTIFICATION BIBLE AS:  Misoprostol 200 mcg AND Mifepristone 200 mg
AVAILABILITY:  (X) RX ONLY-CSA SCHEDULE:  () CONTROLLED SUBSTANCE, PENALTY GROUP ()
NOTE:  NOT CONTROLLED DRUGS
THE SUSPECTED SUBSTANCE HAD AN APPROXIMATE NET WEIGHT OF 0.78 GRAMS.

NOTE:  BAG HAD TO BE OPENED FOR NET WEIGHT TO BE OBTAINED YES (X) NO ()

THE PROCESSED EVIDENCE WAS THEN RELEASED ON 04/11/2025 TO THE PROPERTY ROOM NARCOTICS VAULT.

**Supplementing Officer:**  (14279) FOUGHT, A

## REDACTION INFORMATION

The enclosed responsive documents have been redacted per the Texas Public Information Act, please note one or more of the following may apply:

**__911 phone number and/or address redactions:**
CCPD has a previous AG determination issued in Open Records Letter No. 2011-16393, which authorizes the department to withhold without seeking a ruling of the originating telephone number and address of a 911 caller provided by a service provider in accordance with chapter 772 of the Health and Safety Code.

**_X_Date of Birth:**
CCPD has a previous AG determination issued in Open Records Letter No. 2016-00831, that ruling authorizes the department to withhold the dates of birth of public citizens under section 552.101 of the Government Code in conjunction with Common-law privacy.

**_X_License plate numbers/driver's license, etc.:**
Government code section 552.130 excepts from disclosure motor vehicle operator or driver's license or permits and motor vehicle title or registration.   See Form 130 at the bottom of the page for appeal instructions.

**___Fingerprints/Biometric Identifiers.:**
Section 560.003 of the Government Code provides, "[a] biometric identifier in the possessions of a governmental body is exempt from disclosure under [the Act]".

In addition:
**_X_Expedited Processing**: you selected the option to **not** submit to the Attorney General's Office, so one or more of the following items were redacted or reports that contain: Common Law Privacy (Medical/Mental), Undercover Officers, Informers Privilege, Personal Email Address, Pending Investigation, Criminal History or Criminal Procedure Code Art. 67.051(a), 552.1085 Sensitive crime scene photos.

 **__ Crash Report**: The crash reports are redacted per Texas Transportation Code 550.065 (f)(2).

---

FORM 130:

<u>How to appeal the withholding of information under</u>
<u>Gov't Code sections 552.130 or 552.136</u>
If you wish to appeal the withholding of the information under these sections,
you must send the following to the Attorney General:

1)   A signed written statement indication your wish to appeal the withholding of information:
2)   The name of the governmental body that withheld information from you;
3)   The date you made your original request for information; and
4)   A copy of your original request for information, or if you are unable to provide a copy, a description of your original request for information.

You may also submit written comments stating why you think the information should
be released to you, but you are not required to do so.

Send your appeal by mail or fax to the Attorney General at:

Open Records Division
Post Office Box 12548
Austin, TX 78711-2548
Fax:  512-463-2092

Within forty-five business days after receiving all of the above-listed items necessary
to file your appeal, the Attorney General will issue a written ruling on the matter.
Your will receive a copy of this ruling in the mail.