UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-220 |

**PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER**

On May 12, 2026, plaintiff Liana Davis voluntarily provided her iPhone to forensics expert George Vasiliou so that Mr. Vasiliou could make a mirror image of the device. Ms. Davis provided her phone to Mr. Vasiliou because the Court had recommended at the hearing of April 15, 2026, that Ms. Davis provide her iPhone to a neutral forensics expert who could serve as custodian of her data while this litigation progressed. The Court recommended that Ms. Davis provide her iPhone for this purpose because Mr. Cooprider's attorneys have been falsely accusing Ms. Davis of spoliating evidence. The Court has never found that Ms. Davis spoliated evidence, but the Court nonetheless recommended that Ms. Davis provide her iPhone for mirror imaging to eliminate any possibility of accidental or intentional evidence loss.

Mr. Vasiliou promised Ms. Davis that he would not provide the contents of her iPhone to Mr. Cooprider's attorneys. And Ms. Davis's attorney attempted to memorialize this promise by entering into a stipulated agreement with Mr. Cooprider's lawyers that would compel Mr. Vasiliou to "secure and securely hold the data, and to refrain from examining or perusing the data, until further direction or order from the Court." Exhibit 5. The lawyers were unable to agree on the language of a stipulation,

but this Court entered an order on May 14, 2026, that forbids Mr. Vasiliou "to examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court." ECF No. 66-1 (¶ 9). The Court's order also instructs Mr. Vasiliou to "secure and securely hold the data evidence as a custodian for the duration of the case," which precludes him from sharing the data of Ms. Davis's iPhone with Mr. Cooprider's attorneys. *Id.* (¶ 8).

In violation of this Court's order, Mr. Vasiliou prepared a "forensic examination report" of Ms. Davis's iPhone and provided it to Mr. Cooprider's legal team.[1] Mr. Vasiliou's report contains content from the Notes app on Ms. Davis's iPhone, which he is not permitted to search or share absent an order of the Court or a stipulation of the parties. ECF No. 66-1 (¶ 9). It is not yet known whether Mr. Vasiliou prepared this report at the instruction of Mr. Cooprider's attorneys or whether he did this on his own initiative. We also do not know the extent to which Mr. Vasiliou has provided other data on Ms. Davis's iPhone to Mr. Cooprider's legal team, as Mr. Vasiliou is refusing to respond to repeated e-mails from Ms. Davis's attorney requesting this information. *See* Exhibits 20–22.

Ms. Davis respectfully asks that the Court issue an immediate order prohibiting Mr. Vasiliou and Mr. Cooprider's attorneys from accessing, searching, or using any data obtained from the forensic image of Ms. Davis's iPhone until further order of this Court. Ms. Davis also requests that the Court schedule a hearing and order Mr. Vasiliou and Ms. Klein to appear and explain why they accessed the contents of Ms. Davis's iPhone in violation of the Court's order.

## BACKGROUND

For the last two months, Mr. Cooprider's attorneys have falsely accused Ms. Davis of destroying evidence in this case. The Court has never found that Ms. Davis has

---

1.    A copy of this report will be filed separately as a sealed exhibit.

spoliated evidence, and Ms. Davis has faithfully complied with her preservation obligations since retaining Mr. Mitchell as her attorney in May 2025. But Mr. Cooprider's attorneys have incessantly hurled baseless accusation of evidence spoliation as part of their attempt to smear Ms. Davis's character, both in their correspondence with Mr. Mitchell and in their filings with this Court.

Although the Court has never found that Ms. Davis spoliated evidence, it has sought to resolve the parties' dispute over these accusations by suggesting that Ms. Davis provide her iPhone to a neutral third-party forensics expert, who would secure and hold the data until the conclusion of the lawsuit and eliminate any possible basis for Mr. Cooprider's attorneys to accuse Ms. Davis of spoliation going forward. The Court first proposed this idea at the hearing of March 11, 2026, where it "suggest[ed] the parties agree on a third-party vendor who can pick up the phone and have it back to the plaintiff the same day." ECF No. 35. The Court again recommended that Ms. Davis provide her iPhone for mirror imaging at the hearing of April 15, 2026, and Mr. Mitchell indicated that Ms. Davis would do so as long as appropriate precautions were put in place to secure her data and prevent Mr. Cooprider's attorneys from accessing the contents of her iPhone absent authorization of this Court. Mr. Mitchell was willing to persuade Ms. Davis's to voluntarily produce her iPhone for these purposes, even though Mr. Cooprider's attorneys had never served a discovery request for Ms. Davis's iPhone, because the Court had made clear at the hearing of April 15, 2026, that the forensics expert would merely preserve the data on Ms. Davis's iPhone and would not provide that data to Mr. Cooprider's lawyers absent an order of the Court.

The parties also agreed that Mr. Cooprider would produce his computers and cell phones to the same forensics expert because Mr. Mitchell had served requests for production for those devices. Mr. Cooprider's lawyers were willing to provide their

client's devices to a third-party forensics expert for mirror imaging to obviate the need for a motion to compel.

## I.    THE PARTIES FAIL TO REACH AGREEMENT ON A STIPULATION

On April 27, 2026, Beth Klein, an attorney for Mr. Cooprider, e-mailed Mr. Mitchell and wrote:

> Good morning Jonathan,
>
> We have asked George Vasiliou to do the joint extractions and hold the evidence until further Court orders. He needs the make and model of both Parties' phones to make sure that he has the correct software to complete the process. He wants to make sure that he shows up on May 1 with the right tools. He is copied on this communication if you have any questions. Please let us know the make and model of Liana Davis's phone. I think that she may have several phones since there are different device labels in her texts, but they use the same number.
>
> He charges $250 an hour for exam and $125 an hour for travel plus expenses. He has had larger iPhones go for over 17 hours so he has offered to cut it off the billing at 1500$ per phone if it goes over 6 hours.

Exhibit 3. In this e-mail, Ms. Klein represents that Mr. Vasiliou will "hold the evidence until further Court orders." *Id*. Ms. Klein also requests production of only Ms. Davis's iPhone and not Ms. Davis's computer or other electronic devices, which Mr. Cooprider's lawyers never mentioned in their previous court filings or at the hearing of April 15, 2026.

On May 4, 2026, at 5:57 P.M., Mr. Mitchell drafted and circulated a proposed stipulation and proposed court order to memorialize the parties' agreement. He e-mailed Ms. Klein on May 4, 2026, and wrote:

> Beth:
>
> Attached is a draft stipulation and proposed order. Please let me know if you have any comments or proposed edits.

I have not yet shown this to my client. I want to wait until I have your edits before asking her to approve.

Exhibit 4. The proposed stipulation that Mr. Mitchell drafted and sent to Ms. Klein read as follows:

The parties agree and stipulate as follows:

1. Defendant Christopher Cooprider will produce any and all cell phones and computers that he used between November 1, 2024, and the present, to George Vasiliou.

2. Plaintiff Liana Davis will produce any and all cell phones that she used between November 1, 2024, and the present, to George Vasiliou.

3. Mr. Vasiliou will extract and preserve the data on these devices.

4. Mr. Vasiliou will be under a court order to secure and securely hold the data, and to refrain from examining or perusing the data, until further direction or order from the Court.

5. Mr. Vasiliou will be under a court order to destroy the extracted data at the conclusion of this litigation.

6. A proposed order is attached to this stipulation.

Exhibit 5. The proposed order of the Court that Mr. Mitchell drafted and circulated to Ms. Klein said:

It is ORDERED that:

1. Defendant Christopher Cooprider will produce any and all cell phones and computers that he used between November 1, 2024, and the present, to George Vasiliou.

2. Plaintiff Liana Davis will produce any and all cell phones that she used between November 1, 2024, and the present, to George Vasiliou.

3. Mr. Vasiliou shall extract and preserve the data on these devices.

4. Mr. Vasiliou shall secure and securely hold the data, and refrain from examining or perusing the data, until further direction or order from this Court.

5. Mr. Vasiliou shall destroy the extracted data at the conclusion of this litigation.

Exhibit 6. In response to Mr. Mitchell's e-mail of May 4, 2026, Ms. Klein wrote back and said: "Everyone has left for the day. I will get back to you tomorrow." Exhibit 7.

Ms. Klein, however, did not respond to Mr. Mitchell's draft stipulation until May 9, 2026, when she e-mailed Mr. Mitchell and wrote:

> George can be in CC on Tuesday, May 12.
>
> He is going to tell me the name of his hotel, and it will be close to where Davis lives. Both parties will drop off and pick up devices and difference times to avoid problems.

Exhibit 8. Ms. Klein attached to this e-mail a revised copy of the stipulation that Mr. Mitchell had circulated on May 4, 2026. Ms. Klein did not track her edits in redline, but she added to the draft stipulation a requirement that Ms. Davis surrender not only her iPhone but also her computer—even though Mr. Cooprider's attorneys had never served a discovery request for Ms. Davis's computer and never requested its production at any hearing before this Court, and even though the Court had never proposed or suggested that Ms. Davis surrender her computer for imaging at any of the hearings. The draft stipulation, as altered by Ms. Klein, says, in relevant part:

> 2.  Liana Davis will produce any and all cell phones, *tablets and personal computers* that she used between November 1, 2024, and the present, to George Vasiliou on Tuesday, May 12, 2026 at 8:30 am.

Exhibit 9 (emphasis added). Mr. Mitchell was unwilling to agree to a stipulation that requires Ms. Davis to surrender her computer, and he regarded Ms. Klein's last-minute demand for Ms. Davis computer as a dishonorable bait-and-switch tactic and an improper means to obtain discovery. Ms. Davis was equally unwilling to authorize her attorney to agree to Ms. Klein's proposed stipulation, and she was unable to fathom how Ms. Klein could now be demanding production of her computer only three days before Mr. Vasiliou's scheduled visit to Corpus Christi when no discovery request had been served for the computer and no one had previously mentioned the computer in any court filing or hearing.

On May 10, 2026, one day after Ms. Klein circulated her revisions to the draft stipulation, she e-mailed Mr. Mitchell again and threatened to file an "emergency" motion and ask the Court to adopt her revised stipulation as a court order if Mr. Mitchell would not assent to its terms:

> Mr. Vasiliou will be in Corpus Cristi starting on Monday. My client will bring his devices to Mr. Vasiliou on Monday. Ms. Davis must bring her devices on Tuesday, May 12, 2026.
>
> The updated Stip is attached with the addresses. The Stip is bilateral and addresses all concerns raised.
>
> I have been emailing, texting and calling to get this resolved. If I don't hear from you tonight, I will file this as an emergency motion Monday AM and ask that my version be made a Court order.

Exhibit 10. The draft stipulation that Ms. Klein attached to her e-mail of May 10, 2026, was identical to the draft stipulation that she circulated on May 9, 2026, and includes the demand for Ms. Davis's computer in addition to her iPhone. *See* Exhibit 11. On May 11, 2026, Ms. Klein again threatened to file an emergency motion with the Court. *See* Exhibit 12. At 1:50 P.M., Mr. Mitchell e-mailed back and wrote:

> Beth:
>
> I explained in the text that I sent you at 8:03 p.m. MT last night that I am scheduled to talk with Ms. Davis this afternoon about this. I will let you know the status as soon as our discussion concludes.

Exhibit 13. Later that day, at 5:23 P.M. central time, Ms. Klein e-mailed Mr. Mitchell an "updated" version of the revised stipulation, which continued to demand that Ms. Davis turn over her computer as well as her iPhone. *See* Exhibits 14–15.

Ms. Davis was understandably reluctant to turn over her iPhone in the absence of a stipulation or court order protecting her data, and neither she nor Mr. Mitchell was willing to agree to Ms. Klein's last-minute demand for Ms. Davis's computer in the revised draft stipulation. Mr. Mitchell therefore arranged a three-way call with

himself, Ms. Davis, and George Vasiliou on the evening of May 11, 2026, to provide his client with assurances that Mr. Vasiliou would protect her iPhone data and would not turn it over to Mr. Cooprider's legal team. During that call, Mr. Vasiliou promised Ms. Davis that he would protect the integrity of her iPhone data, and that he would not be examining the contents of her phone or providing it to Cooprider's lawyers unless the Court ordered him to do so. Based on these assurances, Ms. Davis agreed to voluntarily produce her phone to Mr. Vasiliou despite the absence of a court order or stipulated agreement, and Mr. Vasiliou imaged Ms. Davis's iPhone on May 12, 2026. Ms. Davis would not, however, produce her computer to Mr. Vasiliou, because Cooprider's attorneys had never mentioned a desire to obtain Ms. Davis's computer in any court filing or discovery request or in any hearing before the Court. Their sudden demand for Ms. Davis's computer on May 9, 2026, after their repeated representations that they were seeking an image only of Ms. Davis's iPhone, was nothing more than an attempt to move the goalposts three days before Mr. Vasiliou's arrival in Corpus Christi, in the hopes of inducing a conflict that would allow Ms. Klein to run to the Court with an "emergency" motion.

## II.    Ms. Klein Files An Emergency Motion With The Court After Mr. Vasiliou Completes His Imaging Of Ms. Davis's iPhone

Despite Ms. Davis's voluntary production of her iPhone, and despite Mr. Vasiliou's imaging of the iPhone on May 12, 2026, Ms. Klein e-mailed Mr. Mitchell at 9:14 A.M. central time on May 13, 2026, and wrote:

> We are filing our Motion for sanctions, to compel, for immediate esi inspection and limited response time later today. As we have discussed you will probably oppose.

> I am so sorry that you could not sign off on any draft stip and that Davis's computers were not preserved. Please tell your client not to alter the computers or phones—not that she hasn't been aware of that since May 2025 when you were retained.

I honestly wish we didn't have to do this.

Exhibit 16. Ms. Klein did not tell Mr. Mitchell what she was seeking to "compel" or what "immediate esi inspection" she was seeking, and she made no attempt to confer with Mr. Mitchell beyond this e-mail.

Later that day, at 2:54 P.M. central time, Ms. Klein served a litany of ESI requests for production on Mr. Mitchell. *See* Exhibit 17 (e-mail serving discovery); Exhibit 18 (ESI requests for production). These ESI requests seek the production of Ms. Davis's "devices" for purposes of "retrieval," "extraction," or "analysis" of data and communications. *See id*. But many of the communications and data that the ESI requests seek to retrieve, extract, or analyze are not discoverable under Rule 26(b)(1) because they have no relevance to any party's claim or defense. Many others are non-discoverable because their compelled production would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). And privileged material is certain to be encountered given the breadth of material that the ESI requests seek to retrieve or extract.

Under the rules of civil procedure, Mr. Mitchell had 30 days to review and assert his objections to the ESI discovery requests that Ms. Klein served on May 13, 2026. *See* Fed. R. Civ. P. 34(b)(2). But Ms. Klein filed her "emergency" motion on at 6:22 A.M. on May 14, 2026, which demanded that the Court immediately order Ms. Davis to comply with the ESI discovery requests that Ms. Klein had served on Mr. Mitchell less than 24 hours earlier, without allowing Mr. Mitchell any opportunity to object to the ESI requests for production. See ECF No. 66.

The emergency motion that Ms. Klein filed with the Court on May 14, 2026, is rife with outright falsehoods and unsupported smears on Ms. Davis. To provide just a few examples:

1. Ms. Klein's motion claims that on April 28, 2026, "[a] status report indicating that that Liana Davis was uncooperative was filed with the Court." ECF No. 66, at p. 2.

The status report that Ms. Klein is referring to was e-mailed to Ms. Arlene Clancy on April 28, 2026, and it is attached to this motion as Exhibit 19. It and does not in any way indicate that Ms. Davis was "uncooperative."

2. Ms. Klein's motion claims that between May 4, 2026, and May 11, 2026, "DAVIS will not cooperate with producing her phone or other devices claiming that there is not a written Court Order." ECF No. 66, at 2.

That statement is highly misleading. Ms. Davis's reluctance to turn over her iPhone before May 12, 2026, stemmed from the lack of a written court order or stipulated agreement to protect the integrity of her iPhone data. Ms. Davis was not demanding a court order instructing her to turn over her iPhone, because she allowed her attorney to propose a stipulation to Ms. Klein on May 4, 2026, that would require Ms. Davis to turn over her iPhone to Mr. Vasiliou.

3. Ms. Klein's motion claims that on May 11–12, 2026, "DAVIS continues delay tactics and refuses to produce her computer. Next DAVIS demands that a phone be purchased for her to use while her I-phone is copied despite the fact that she has a phone available at her home with her live in boyfriend. DAVIS insists that the Expert go to her house to pick up her phone and deliver it to her. DAVIS demands that the Expert return the phone in in the middle of the night if it is complete. Davis refuses to produce her computer against recommendation of her attorney."

Every sentence in this passage is false. Ms. Davis never "demanded" a replacement phone; Mr. Vasiliou generously offered to provide Ms. Davis with a replacement while he imaged her iPhone. Ms. Davis does not have a "live-in" boyfriend, nor is Ms. Davis's boyfriend's phone available to Ms. Davis. Ms. Davis did not "insist" that Mr. Vasiliou drive to her house to pick up and drop of her iPhone; Mr. Vasiliou offered to do so. Ms. Davis never "demanded" that Mr. Vasiliou return her phone in the middle of the night. Nor did Ms. Davis go against the advice of her attorney when refusing to provide her computer, and Ms. Klein has no way of knowing hos Mr. Mitchell advised his client.

4. Ms. Klein's motion claims that on May 12, 2026, "In checking to make sure all data was copied; Expert notes that 54 GB of I Messages TEXT message data is on DAVIS's iCloud and DAVIS's not on iPhone and cannot be accessed. Expert notes that that unusually

large chunks of data have been moved and becomes concerned about the preservation of the evidence." ECF No. 66, at 2.

This statement is unsupported by affidavit or declaration, or any other type of evidence. It is the baldest hearsay, and Ms. Klein failed to produce a simple affidavit or declaration from Mr. Vasiliou to substantiate this claim.

5. Ms. Klein's motion claims that: "Critical texts between DAVIS and Ami Amoroso, her sister on April 3, 2025, two days before the event at issue, when DAVIS was experiencing severe front and back cramping indicative of a miscarriage and urged to go to the ER are claimed to be 'gone.'" ECF No. 66, at 6.

This supposed quotation is unsupported by any citation. No text messages on Ms. Davis's phone are "gone" because all of them can be recovered with Decipher, and Ms. Davis has successfully used Decipher to recover text messages that had been deleted before this litigation began. Neither Ms. Davis nor Mr. Mitchell has ever claimed that any text messages on Ms. Davis's iPhone are "gone."

There is more that can be said about the false and unsupported statements that Ms. Klein has made in her court filings throughout this litigation, but these errors are too numerous to be chalked up as innocent mistakes or good-faith misunderstandings of the facts.

## III. The Court Quickly Grants Ms. Klein's Emergency Motion But Prohibits Mr. Vasiliou Or Mr. Cooprider's Lawyers From Examining Or Searching The Data On Ms. Davis' iPhone Absent a Court Order Or Stipulation Of The Parties

At 2:39 P.M. central time on May 14, 2026, the Court granted Ms. Klein's emergency motion and issued the following order:

Before the Court is Defendant Christopher Cooprider's emergency discovery motion. (D.E. 66). After review, the Court GRANTS the motion. (D.E. 66). The Court ORDERS Plaintiff to produce and/or provide access to her phone, computer(s), iCloud account, and any other personal device or account that may contain text messages or emails (e.g., an iPad, any external hard drives containing backups) no later than May 15, 2026, at 3 p.m. CST. The devices and access shall be

> provided as defined in the ESI requests, and subject to the process described in the proposed stipulation provided by Defendant Cooprider, (D.E. 66-1). The purpose of this Order is to allow for merits discovery as well as discovery regarding spoliation of evidence. The Court ORDERS the Parties to file a joint status report on or before May 18, 2026, updating the Court regarding the status of compliance with this Order. The Court will then determine whether a hearing is necessary.

ECF No. 67. This order required Ms. Davis to "produce and/or provide access to her phone, computer(s), iCloud account, and any other personal device or account that may contain text messages or emails." *Id*. But the Court's order also adopted and incorporated the proposed stipulation that Ms. Klein had drafted and circulated to Mr. Mitchell on May 11, 2026, and which Ms. Klein had attached to her emergency motion of May 14, 2026. *See id*. ("The devices and access shall be provided as defined in the ESI requests, and subject to the process described in the proposed stipulation provided by Defendant Cooprider, (D.E. 66-1).").

The proposed stipulation, which is now part of the Court's order of May 14, 2026, prohibits Mr. Vasiliou and Mr. Cooprider's legal team from searching or accessing the data on Ms. Davis's phone without a court order or a stipulation of the parties. Paragraph 8 of the proposed stipulation states:

> Mr. Vasiliou . . . will secure and securely hold the data evidence as a custodian for the duration of the case.

ECF No. 66-1, ¶ 8. And paragraph 9 of the proposed stipulation states:

> Mr. Vasiliou will not examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court.

ECF No. 66-1, ¶ 9. The Court's order therefore compels Mr. Vasiliou to "secure" the data and keep it from Mr. Cooprider's legal team, and it prevents Mr. Vasiliou from examining or searching the data on Ms. Davis's iPhone or other devices absent a court order or stipulation of the parties.

## IV.    MR. VASILIOU AND MS. KLEIN EXAMINE AND ACCESS THE DATA ON MS. DAVIS'S IPHONE IN VIOLATION OF THE COURT'S ORDER

Ms. Davis's deposition was held on May 28, 2026, approximately two weeks after she provided her iPhone to Mr. Vasiliou on May 12, 2026. Near the end of the deposition, Ms. Klein produced a document labeled Exhibit 40 and showed it to Ms. Davis and Mr. Mitchell.[2]

Exhibit 40 is a "forensic examination report" of Ms. Davis's iPhone produced by Mr. Vasiliou on May 16, 2026, which he prepared and provided to Mr. Cooprider's legal team without notifying Ms. Davis's counsel or the Court. This report contains content from the Notes app on Ms. Davis's iPhone, including verbatim quotes of notes that Ms. Davis had written and kept on that app. But neither Mr. Vasiliou nor Ms. Klein is permitted to examine or access these data from Ms. Davis's iPhone absent an order of the court or a stipulation of the parties. ECF No. 66-1, ¶¶ 8–9. Mr. Vasiliou's preparation of this report violated the Court's order of May 14, 2026. And Mr. Vasiliou's decision to share this report with Mr. Cooprider's attorneys while leaving the Court and Ms. Davis's counsel in the dark is an egregious breach not only of the Court's order but also the promises that Mr. Vasiliou made to persuade Ms. Davis to turn over her iPhone to him on May 12, 2026.

When Ms. Klein began questioning Ms. Davis about Exhibit 40 during the deposition, Mr. Mitchell objected and demanded to know how Ms. Klein had obtained this material from Ms. Davis's iPhone. Mr. Mitchell also reminded Mr. Cooprider's attorneys that they were not permitted to access data from Ms. Davis's iPhone absent an order of the Court or a stipulation of the parties. The discussion among the attorneys became heated, and Mr. Mitchell told Mr. Cooprider's attorneys that would seek a protective order to stop them from accessing the data on Ms. Davis's phone. Ms.

---

2.    A copy of Exhibit 40 will be filed separately and under seal.

Klein then began reading into the deposition record the notes from Ms. Davis's iPhone that appear in Mr. Vasiliou's report. After Mr. Klein finished reading these notes into the record, she adjourned the deposition.

## V.     MR. VASILIOU REFUSES TO ANSWER MR. MITCHELL'S E-MAILS ABOUT THE EXTENT TO WHICH HE HAS SHARED DATA FROM MS. DAVIS'S IPHONE WITH MR. COOPRIDER'S LEGAL TEAM

As soon as the deposition ended, Mr. Mitchell returned to his hotel and promptly e-mailed Mr. Vasiliou. His first e-mail to Mr. Vasiliou was sent at 4:50 P.M. central time on May 28, 2026, and it reads as follows:

George:

Thank you for all of your work on my client's devices.

I have a question about the attached forensic examination report. It appears that you prepared and sent this report to Ms. Klein, and it contains several verbatim excerpts from my client's "Notes" app that you extracted from her iPhone. Ms. Klein introduced this document as an exhibit at my client's deposition earlier today.

My understanding was that you would not be producing any of the data from my client's devices absent a court order or stipulation of the parties, and that you would secure the data and serve as custodian of the data until a court order or stipulation authorized disclosure of the data.

Perhaps I misunderstood the arrangement, but could you please explain why you disclosed these notes to Ms. Klein? Is it your understanding that I am also authorized to obtain some or all of the data that you extracted from Mr. Cooprider's devices? Both my client and I thought that counsel would be unable to access the contents of any of these devices absent a stipulation or order of the court. It is also not clear to me why those particular notes were shared with Ms. Klein and not others.

Thank you considering this, and my apologies if there was a misunderstanding on my part about how the data would be shared with opposing counsel post-extraction.

Exhibit 20. Mr. Mitchell attached a copy of Exhibit 40 to the e-mail that he sent to Mr. Vasiliou. Mr. Vasiliou has not responded to Mr. Mitchell e-mail.

On May 29, 2026, at 9:58 P.M. central time, Mr. Mitchell e-mailed Mr. Vasiliou again and asked him to send copies of anything regarding Ms. Davis's iPhone that he has shared with Mr. Cooprider's legal team:

> Hi George:
>
> I'm following up on the e-mail below. Please answer because I have to make sure that the sensitive and privileged data on my client's iPhone are protected. I have a responsibility to my client to ensure this.
>
> Also, could you please forward to me all reports, searches, analyses, or other documents regarding the data on my client's phone that you have provided to Ms. Klein or other members of Mr. Cooprider's legal team?
>
> Thank you for considering this. I hope you are enjoying your time in Portugal.

Exhibit 21. Mr. Vasiliou has not responded to this e-mail either. But Mr. Vasiliou has read and received Mr. Mitchell's e-mails, even though he is refusing to respond to them, because Mr. Vasiliou forwarded Mr. Mitchell's e-mail of May 28, 2026, to Beth Klein, which appears in an e-mail that Ms. Klein sent to Mr. Mitchell on May 30, 2026. *See* Exhibit 30.

On May 30, 2026, Mr. Mitchell e-mailed Mr. Vasiliou for a third time and wrote:

> George:
>
> You have not responded to the either of the e-mails that I sent to you on May 28, 2026, and May 29, 2026. I know that you have read at least the e-mail of May 28 because you forwarded it to Ms. Klein, and Ms. Klein informed me of that in the e-mail that she sent to me this morning.
>
> I strongly recommend that you respond to these e-mails. As you can see from my e-mail to Ms. Klein from earlier today, I believe that you and Ms. Klein violated Judge Morales's order of May 14, 2026, by ac-

cessing and sharing the contents of my client's iPhone. We will be seeking relief from the Court to stop you from conducting searches of Ms. Davis's devices and providing data from her devices to Ms. Klein or anyone else.

I will be including our correspondence as an exhibit to this soon-to-be-filed motion. It will not look good if you are ignoring my e-mails and leaving Ms. Davis and me in the dark about the extent to which you have shared the contents of my client's iPhone with the opposing lawyers.

Please respond to the e-mails by 8:00 p.m. Portugal time on Sunday, May 31, 2026. We will be filing our motion with the Court shortly thereafter.

Exhibit 22. Mr. Vasiliou still has not responded to Mr. Mitchell, despite the warning in Mr. Mitchell's most recent e-mail that he intended to seek relief from the Court. Instead, Mr. Vasiliou forwarded Mr. Mitchell's e-mail of May 30, 2026, to Beth Klein, which Ms. Klein then forwarded to Mr. Mitchell in an e-mail sent on May 31, 2026. *See* Exhibit 23.

## VI.    Ms. Klein Insists That The Court's Order Of May 14, 2026, Allows Her To Directly Access The Contents Of Ms. Davis's iPhone Through Mr. Vasiliou

As soon as Ms. Davis's deposition ended, Mr. Mitchell began the meet-and-confer process with Ms. Klein. Upon returning to his hotel room, he e-mailed Ms. Klein at 5:25 p.m. central time and wrote:

Counsel:

The Court's order of May 14, 2026 (ECF No. 67) prohibits Mr. Vasiliou from providing or allowing you to access data extracted from Ms. Davis's devices absent a court order or stipulation of the parties.

It says that the provision of these devices "shall be . . . subject to the process described in the proposed stipulation provided by Defendant Cooprider, (D.E. 66-1)."

That proposed stipulation, which is incorporated into the Court's order of May 14, 2026, says: "Mr. Vasiliou . . . will secure and securely hold the data evidence as a custodian for the duration of the case."

It also says: "Mr. Vasiliou will not examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court."

No reasonable lawyer could believe that this order allows them to request or obtain a "forensic examination report" from Mr. Vasiliou that includes verbatim copies of the entries on Ms. Davis's "notes" app.

The document that you presented as Exhibit 40 at Ms. Davis's deposition earlier today was obtained in violation of the Court's order of May 14, 2026, and we will take immediate steps to remedy this situation.

We are making the following requests:

(1) Please immediately agree to treat any data or materials that you have obtained from Ms. Davis's iPhone or other devices, as well as any data or materials from Ms. Davis's devices that Mr. Vasiliou has shared with you, as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40. Please also agree not to file any of these data or materials with the Court unless the filing is under seal.

If you are unwilling to agree to this temporary measure, please let us know immediately.

(2) Please let us know whether you have already shared any parts of the notes in Exhibit 40, or any other data or materials on Ms. Davis's iPhone or devices, with any person other than the attorneys in this case.

(3) Please tell us the extent to which you have access to the content in Ms. Davis's "notes" app. Some of Ms. Davis's notes contain privileged information. Has Mr. Vasiliou sent you all of Ms. Davis's notes or just some of them? If not all of them, then why Mr. Vasilou did send you only some of the notes and how were those notes chosen?

(4) Please explain to us, as part of the meet-and-confer process, how you obtained the content in Exhibit 40 and how Mr. Vasiliou could have prepared or sent you that document without violating the Court's order of May 14, 2026. If you think that we are misinterpreting the

Court's order of May 14, 2026, please tell us and explain how you could have lawfully obtained this information.

We intend to file a Rule 37 motion and ask the Court to prohibit you from using or relying in any way on the content that appears in Exhibit 40 or any other content that you obtained from Ms. Davis's iPhone or other devices absent a court order or stipulation the parties. We may seek additional remedies if needed. This e-mail is our attempt to satisfy our meet-and-confer obligations under Rule 37.

Thank you for considering this.

Exhibit 24. On May 29, 2026, Ms. Klein responded to Mr. Mitchell's e-mail and wrote:

I'm traveling today and have reached out to all counsel to discuss your concerns. We will be formulating our response as we are able to confer on our side.

Please specifically identity what you believe is privileged in exhibit 40 that was disclosed and proved. As a marked exhibit prior to the depo.

Exhibit 25. Shortly after receiving this e-mail, Mr. Mitchell responded and said:

Beth:

I did not say that the material in Exhibit 40 is privileged.

The problem with Exhibit 40 is that it shows that you obtained access to the "notes" on Ms. Davis's iPhone in violation of the Court's order of May 14, 2026, which incorporates the proposed stipulation in ECF No. 66-1.

We did not produce those notes in discovery and you never served a discovery request for them. Nor did you request those notes from any third party in any of the subpoenas that you noticed in this case. Exhibit 40 shows that you obtained them from Mr. Vasiliou.

Please immediately tell us whether you will agree to temporarily treat any data or materials that you have obtained from Ms. Davis's iPhone or other devices, as well as any data or materials from Ms. Davis's devices that Mr. Vasiliou has shared with you, as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained these data and materials.

We have not shared or provided the link with others and will not do so until the Court resolves this. Please let us know if you will agree to do the same.

Exhibit 26. Ms. Klein responded to this e-mail by claiming that this Court's order of May 14, 2026, allows Mr. Vasiliou to obtain and provide to Mr. Cooprider's legal team any and all of the data or contents from Ms. Davis's iPhone that are described or mentioned in the ESI request for production that Ms. Klein served on May 13, 2026:

> If you would please read Defendant's motion it requests in paragraph 8:
>
> Plaintiff requests that DAVIS be ordered to immediately produce all DEVICES and access to her iCloud as defined in the ESI requests. **Plaintiff further requests that the forensic expert be immediately permitted to conduct the ESI searches on the limited data extracted from DAVIS's iPhone and analyze the movement of chunks of data.**
>
> The ESI was attached to the Motion. The Court granted the motion and ordered that the forensic expert could immediately conduct the ESI search on the limited data extracted from DAVIS'S IPhone and analyze the movement of chunks of data. The Court says that the purpose of allowing this is to deal with spoliation and merits discovery.

Exhibit 27 (emphasis in original). Mr. Mitchell then responded to Ms. Klein's e-mail and wrote:

> Beth:
>
> Thank you for explaining your position. I think this enough to satisfy our meet-and-confer obligations under the rules. If you disagree and think we need to continue conferring, please let me know. But I am satisfied that I understand your position and why you acted as you did.
>
> You are misrepresenting my client's deposition testimony, but the transcript will speak for itself.

I am asking you for the third time whether you will agree to treat the data that you obtained from my client's phone as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves our dispute. Please answer this question with a "yes" or a "no" so I can know whether I need to seek emergency relief from the Court.

Also, please send me a copy of the "request" that you sent to Mr. Vasiliou, as well as any other requests that you have sent to him for data from my client's iPhone. Please also send us any other "analysis" that Mr. Vasiliou has provided to you regarding my client's iPhone or other devices.

Finally, please promise that you will cc: me (and Tal) on all of your future correspondence with Mr. Vasiliou about this case.

Exhibit 28. When Ms. Klein did not provide answers questions or requests that Mr. Mitchell propounded in this e-mail, Mr. Mitchell made one last effort to obtain the requested information and e-mailed Ms. Klein as follows:

Beth:

I have repeatedly asked you for answers to each the following questions. Please provide "yes" or "no" answers to each by 9:00 P.M. central time tonight so I can know whether I need to seek emergency relief from the Court:

(1) Will you agree to treat any data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?

Yes / No

(2) Will you agree to file with the Court any data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices unless the filing is under seal until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?

Yes / No

(3) Have already shared any parts of the notes in Exhibit 40, or any other data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices, with any person other than the attorneys in this case?

Yes / No

(4) Will you forward to us all of your communications with Mr. Vasiliou about Ms. Davis's iPhone or other devices, as well as all of the data, reports or analysis that Mr. Vasiliou has provided to you regarding Ms. Davis's iPhone or other devices?

Yes / No

(5) Will you agree to treat the deposition transcript and video as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?

Yes / No

Exhibit 29. Ms. Klein still would not answer Mr. Mitchell's questions, but she sent another e-mail on May 30, 2026, that reiterated her stance that the Court's order of May 14, 2026, allows her to access the contents of Ms. Davis's cell phone through Mr. Vasiliou, without any opportunity for Mr. Mitchell to review or object to Mr. Vasiliou's productions of the requested data:

> I sought and received the ESI order which incorporates the processes I provided in the stipulation. This is now the governing order of the case.
>
> The Defense has followed the ESI order and all provisions. You seem to believe that the ESI is supposed to be held in limbo under some informal agreement that is now superseded by court order. You told your client that you were "double crossed." You accused me of engaging in "illegal" activities and have personally threatened me. You told Ms. Davis that I had invaded her privacy and looked all attorney client notes. You never told her about the Order of the court or how the ESI process works.

Exhibit 30. Mr. Mitchell responded to this e-mail and wrote:

Beth:

Judge Morales will decide what his order means and whether you violated it. You have explained to us why you believe Judge Morales's order allowed you to access the contents of my client's iPhone. We do not believe that any reasonable lawyer could interpret the order that way, so we will be seeking appropriate relief from the Court.

We have done more than enough to satisfy our meet-and-confer obligations with respect to our soon-to-be-filed motion. We will include your correspondence in our motion and inform the Court of your position, and you are of course welcome to explain to Judge Morales why you believe his order allowed you to access the contents of Ms. Davis's iPhone.

Exhibit 31.

## ARGUMENT

Ms. Klein and Mr. Vasiliou violated the Court's order of May 14, 2026, when they accessed the contents of Ms. Davis's iPhone without a court order or stipulation of the parties. And they intend to continue accessing the data on Ms. Davis's phone unless this Court takes action to stop them. The Court should immediately order Mr. Vasiliou and the members of Mr. Cooprider's legal team to refrain from accessing, examining, searching, sharing, or using any of the data on Ms. Davis's iPhone. And it should order Ms. Klein and Mr. Vasiliou to appear for a hearing to explain why they obtained data from Ms. Davis's iPhone in violation of the Court's order.

## I.   Ms. Klein's Interpretation Of The Court's Order Is Untenable

The Court's order of May 14, 2024, requires Mr. Vasiliou to "secure and securely hold the data evidence as a custodian for the duration of the case." ECF No. 66-1, ¶ 8. It also states that "Mr. Vasiliou will not examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court." ECF No. 66-1, ¶ 9. Mr. Vasiliou and Ms. Klein were therefore required to obtain a court order or stipulation of the parties before accessing the data on Ms.

Davis's iPhone, and they are violating the Court's order by obtaining and examining Ms. Davis's iPhone data without the necessary authorization.

Ms. Klein claims that the Court's order of May 14, 2026, allows her to access any of the data or content on Ms. Davis's iPhone that are mentioned or referred to in the ESI requests for production. Ms. Klein also contends that the Court's order allows Mr. Vasiliou to rummage through Ms. Davis's phone and produce material directly to Mr. Cooprider's lawyers without allowing Mr. Mitchell an opportunity to review Mr. Vasiliou's productions for responsiveness, relevance, or privilege. No reasonable lawyer could interpret this Court's order in that fashion. The order requires Ms. Davis to "produce and/or provide access to" her cell phones and computers, and it states that the "devices and access shall be provided as defined in the ESI requests." ECF No. 67. That does not remotely suggest that Mr. Cooprider's lawyers will be allowed to access the content on Ms. Davis's devices, or that Mr. Vasiliou will be authorized to provide them with that content. The Court's order simply requires Ms. Davis to turn over her devices so that the data can be copied and stored; it is not ruling on the discovery that Mr. Cooprider's lawyers are entitled to collect from Ms. Davis's devices. There is also nothing in the emergency motion that Ms. Klein filed on May 13, 2026, that asks the Court to allow Mr. Cooprider's attorneys to obtain any of the data on Ms. Davis's iPhone, nor does it ask the Court to instruct or authorize Mr. Vasiliou to turn over that data to Ms. Klein or anyone else.

## II.    THE COURT SHOULD TAKE IMMEDIATE ACTION TO STOP MR. VASILIOU AND MR. COOPRIDER'S LAWYERS FROM ACCESSING DATA ON MS. DAVIS'S DEVICES UNTIL A HEARING CAN BE HELD

Ms. Klein has made clear that she intends to continue accessing and obtaining data from Ms. Davis's iPhone and other devices, and Mr. Vasiliou refuses to respond to any of Mr. Mitchell's e-mails. Ms. Davis therefore respectfully asks the Court to enter an immediate order that prohibits Mr. Vasiliou, Ms. Klein, and the remaining

members of Mr. Cooprider's legal team from accessing, examining, searching, sharing, or using any of the data on Ms. Davis's iPhone until a hearing can be held. Ms. Davis also asks the Court to order Mr. Vasiliou and Ms. Klein to appear for a hearing to determine why they accessed Ms. Davis's iPhone data in violation of the Court's order. Ms. Davis reserves her right to pursue additional remedies, which may include an order prohibiting Mr. Cooprider's attorneys from using or relying on the evidence that they obtained from Ms. Davis's iPhone; an order removing Mr. Vasiliou as custodian of the data and replacing him with a court-appointed forensics expert; or an order dismissing Cooprider's counterclaims against Ms. Davis or compelling Cooprider to pay the attorneys' fees incurred in the preparation of this motion. A proposed order is attached to this motion as Exhibit 1.

## CONCLUSION

The Court should grant the emergency motion and schedule this matter for hearing.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
  *Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: June 2, 2026                    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 2, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

*Counsel for Defendant Christopher Cooprider*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*