UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-220 |

### Plaintiff's Motion To Require Production Of Communications And Documents Related To The Unauthorized Access Of Ms. Davis's iPhone

On May 28, 2026, plaintiff Liana Davis was deposed by Mr. Cooprider's attorneys. During the deposition, Mr. Cooprider's attorneys revealed that they and forensics expert George Vasiliou had accessed and analyzed data and information on Ms. Davis's iPhone in violation of this Court's order of May 14, 2026, which forbade Mr. Vasiliou "to examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court." ECF No. 66-1 (¶ 9). The Court's order of May 14, 2026, also instructed Mr. Vasiliou to "secure and securely hold the data evidence as a custodian for the duration of the case," which precluded him from sharing data on Ms. Davis's iPhone with Mr. Cooprider's attorneys. *Id.* (¶ 8).

On June 2, 2026, Ms. Davis filed an emergency motion to stop Mr. Vasiliou and Mr. Cooprider's attorneys from snooping through the contents of her iPhone. *See* Motion for Protective Order, ECF No. 70. The Court held a hearing later that day and told Mr. Cooprider's lawyers that its order of May 14, 2026, was "clear" and that

Mr. Vasiliou and Mr. Cooprider's legal team had violated the order by accessing the contents of Ms. Davis's iPhone.

Since the moment that Ms. Davis learned that that Mr. Vasiliou and Mr. Cooprider's legal team had accessed the contents of her iPhone in violation of this Court's order of May 14, 2026, her attorney has made repeated requests that they turn over their communications and documents pertaining to their access of the contents and data on Ms. Davis's iPhone. Ms. Davis needs these communications and documents so that she can determine the extent of their unauthorized access and seek appropriate remedies from the Court.

But neither Mr. Vasiliou nor Mr. Cooprider's lawyers will even acknowledge these requests from Mr. Mitchell, let alone respond to them. They have maintained their code of silence even after Mr. Mitchell warned that he would seek relief from the Court if they did not produce the requested communications and documents. Ms. Davis therefore respectfully asks the Court to order Mr. Vasiliou and Mr. Cooprider's attorneys to produce all communications about Ms. Davis's iPhone or other devices, as well as all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices. The Court should also order them to disclose to Mr. Mitchell all material from Ms. Davis's iPhone or other devices that they have viewed, searched, accessed, or obtained.

I.   **MR. VASILIOU AND MS. KLEIN EXAMINE AND ACCESS DATA ON MS. DAVIS'S IPHONE IN VIOLATION OF THE COURT'S ORDER OF MAY 14, 2026**

Ms. Davis's deposition was held on May 28, 2026, approximately two weeks after she provided her iPhone to Mr. Vasiliou on May 12, 2026. Near the end of the deposition, Ms. Klein produced a document labeled Exhibit 40 and showed it to Ms.

Davis and Mr. Mitchell. A copy of Exhibit 40 has been filed under seal as ECF No. 72.

Exhibit 40 is a "forensic examination report" of Ms. Davis's iPhone produced by Mr. Vasiliou on May 16, 2026. Mr. Vasilioiu prepared and provided this report to Mr. Cooprider's legal team without notifying Ms. Davis's counsel or the Court. The report includes content from the Notes app on Ms. Davis's iPhone, including verbatim quotes of notes that Ms. Davis had written and kept on that app. But neither Mr. Vasiliou nor Ms. Klein was permitted to examine or access these data from Ms. Davis's iPhone absent an order of the court or a stipulation of the parties. ECF No. 66-1, ¶¶ 8–9. Mr. Vasiliou's preparation of this report, along with his decision to share the contents of Ms. Davis's iPhone with Mr. Cooprider's attorneys while leaving the Court and Ms. Davis's counsel in the dark, was an egregious breach of the Court's order and invasion of Ms. Davis's privacy. Mr. Vasiliou's actions enabled Cooprider's lawyers to access nondiscoverable materials on Ms. Davis's iPhone, as well as data for which they had never served a discovery request. It may also have enabled Cooprider's attorneys to view privileged material and communications.

Ms. Klein asked many other questions during Ms. Davis's deposition indicating that she has accessed and reviewed other materials on Ms. Davis's iPhone beyond the data described in Exhibit 40. *See* pp. 13–16, *infra*. But neither Ms. Davis nor her attorneys know the full extent to which Mr. Vasiliou and Mr. Cooprider's attorneys have improperly accessed and obtained information on Ms. Davis's iPhone, because they are refusing to cooperate with Mr. Mitchell's repeated inquiries into this matter.

II. **COOPRIDER'S LAWYERS REFUSE TO RESPOND TO MR. MITCHELL'S REPEATED E-MAILS REQUESTING THAT THEY TURN OVER THE COMMUNICATIONS AND DOCUMENTS SHOWING THE EXTENT OF THEIR UNAUTHORIZED ACCESS TO MS. DAVIS'S IPHONE**

As soon as Ms. Davis's deposition ended, Mr. Mitchell e-mailed Mr. Cooprider's attorneys at 5:25 P.M. central time and wrote:

Counsel:

The Court's order of May 14, 2026 (ECF No. 67) prohibits Mr. Vasiliou from providing or allowing you to access data extracted from Ms. Davis's devices absent a court order or stipulation of the parties.

It says that the provision of these devices "shall be . . . subject to the process described in the proposed stipulation provided by Defendant Cooprider, (D.E. 66-1)."

That proposed stipulation, which is incorporated into the Court's order of May 14, 2026, says: "Mr. Vasiliou . . . will secure and securely hold the data evidence as a custodian for the duration of the case."

It also says: "Mr. Vasiliou will not examine or search the data evidence until he is provided with either a stipulation signed by both parties or an order of the Court."

No reasonable lawyer could believe that this order allows them to request or obtain a "forensic examination report" from Mr. Vasiliou that includes verbatim copies of the entries on Ms. Davis's "notes" app.

The document that you presented as Exhibit 40 at Ms. Davis's deposition earlier today was obtained in violation of the Court's order of May 14, 2026, and we will take immediate steps to remedy this situation.

We are making the following requests:

(1) Please immediately agree to treat any data or materials that you have obtained from Ms. Davis's iPhone or other devices, as well as any data or materials from Ms. Davis's devices that Mr. Vasiliou has shared with you, as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40. Please also agree not to file any of these data or materials with the Court unless the filing is under seal.

If you are unwilling to agree to this temporary measure, please let us know immediately.

(2) Please let us know whether you have already shared any parts of the notes in Exhibit 40, or any other data or materials on Ms. Davis's iPhone or devices, with any person other than the attorneys in this case.

(3) Please tell us the extent to which you have access to the content in Ms. Davis's "notes" app. Some of Ms. Davis's notes contain privileged information. Has Mr. Vasiliou sent you all of Ms. Davis's notes or just some of them? If not all of them, then why Mr. Vasilou did send you only some of the notes and how were those notes chosen?

(4) Please explain to us, as part of the meet-and-confer process, how you obtained the content in Exhibit 40 and how Mr. Vasiliou could have prepared or sent you that document without violating the Court's order of May 14, 2026. If you think that we are misinterpreting the Court's order of May 14, 2026, please tell us and explain how you could have lawfully obtained this information.

We intend to file a Rule 37 motion and ask the Court to prohibit you from using or relying in any way on the content that appears in Exhibit 40 or any other content that you obtained from Ms. Davis's iPhone or other devices absent a court order or stipulation the parties. We may seek additional remedies if needed. This e-mail is our attempt to satisfy our meet-and-confer obligations under Rule 37.

Thank you for considering this.

Exhibit 1. Mr. Cooprider's attorneys have never answered or responded to questions (2) and (3) in Mr. Mitchell's e-mail of May 28, 2026. They have never told Mr. Mitchell whether they have shared Exhibit 40 or any other data or materials from Ms. Davis's iPhone or devices with individuals other than the attorneys in this case. And they have never explained the extent to which they have accessed the content in Ms. Davis's "notes" app.

On May 29, 2026, Mr. Mitchell e-mailed Ms. Klein and requested that she turn over all "requests" that she sent to Mr. Vasiliou for data, as well as any other "analysis" that Mr. Vasiliou provided regarding the contents of Ms. Davis's iPhone:

> [P]lease send me a copy of the "request" that you sent to Mr. Vasiliou, as well as any other requests that you have sent to him for data from my client's iPhone. Please also send us any other "analysis" that Mr. Vasiliou has provided to you regarding my client's iPhone or other devices.

Exhibit 2. Ms. Klein has never acknowledged or responded to these requests in Mr. Mitchell's e-mail. Neither has anyone else on Mr. Cooprider's legal team who was cc'd on the e-mail.

On May 29, 2026, at 5:21 P.M. central time, Mr. Mitchell made a third effort to obtain the requested communications and documents and e-mailed the following to Mr. Cooprider's legal team:

> I have repeatedly asked you for answers to each the following questions. Please provide "yes" or "no" answers to each by 9:00 P.M. central time tonight so I can know whether I need to seek emergency relief from the Court:
>
> (1) Will you agree to treat any data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?
>
> Yes / No
>
> (2) Will you agree [not] to file with the Court any data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices unless the filing is under seal until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?
>
> Yes / No
>
> (3) Have already shared any parts of the notes in Exhibit 40, or any other data or materials that Mr. Vasiliou has extracted from Ms. Davis's iPhone or other devices, with any person other than the attorneys in this case?
>
> Yes / No
>
> (4) Will you forward to us all of your communications with Mr. Vasiliou about Ms. Davis's iPhone or other devices, as well as all of the data, reports or analysis that Mr. Vasiliou has provided to you regarding Ms. Davis's iPhone or other devices?

Yes / No

(5) Will you agree to treat the deposition transcript and video as "Highly Confidential—Attorneys' Eyes Only" until the Court resolves whether you lawfully obtained the notes that appear in Exhibit 40?

Yes / No

Exhibit 3. Mr. Cooprider's attorneys have not responded to this e-mail, nor have they answered the yes-or-no questions propounded in this e-mail. And they have not forwarded the communications and documents that Mr. Mitchell (once again) requested in question (4).

On June 2, 2026, at 6:28 P.M. central time, Mr. Mitchell sent an e-mail to Mr. Vasiliou and Cooprider's lawyers instructing them to preserve all communications and documents relevant to the data that they improperly accessed from Ms. Davis's iPhone:

> Counsel:
>
> I am instructing you to preserve all communications between you and Mr. Vasiliou about Ms. Davis's iPhone or other devices, as well as all documents, data, content, analyses, reports, or records that you or Mr. Vasiliou have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices.
>
> We intend to uncover the full extent of the information that you obtained from my client's iPhone in violation of the Court's order.
>
> Please confirm that you will preserve these documents and communications, and please confirm that you have instructed Mr. Vasiliou to do the same.
>
> If you have already destroyed or spoliated any of the documents or communications described in this e-mail, please let us know immediately.

Exhibit 4. Neither Mr. Vasiliou nor Mr. Cooprider's lawyers have acknowledged or responded to Mr. Mitchell's e-mail of June 2, 2026, even though Mr. Mitchell asked them to confirm that they would preserve the relevant documents and communications.

On June 6, 2026, at 1:53 A.M. central time, Mr. Mitchell made his fourth request for the communications and documents relevant to the data that Mr. Vasiliou and Cooprider lawyers accessed and obtained from Ms. Davis's iPhone. In an e-mail to Cooprider's legal team, he wrote:

> George Vasiliou had no business looking at the material on Ms. Davis's phone and he violated the Court's order by doing so. Neither you nor he may do anything with the material that you uncovered from Ms. Davis's phone other than turn it over to me so that I can find out the extent to which you have violated my client's privacy and the Court's order of May 14, 2026.
>
> I have previously instructed you and Mr. Vasiliou to turn over to me all data that was accessed, obtained, or examined on Ms. Davis's iPhone in violation of the Court's order, as well as all communications between Mr. Vasiliou and the members of Cooprider's legal team regarding Ms. Davis's iPhone.
>
> If you do not produce these data and communications by close of business on June 8, 2026, then I will seek a court order compelling you to produce them.

Exhibit 5. Cooprider's lawyers, true to form, again refused to acknowledge or respond to this request.

After the deadline of June 8, 2026, came and went, Mr. Mitchell made a fifth attempt to request the relevant communications and documents from Cooprider's attorneys in the hopes of avoiding the need to seek court involvement. In an e-mail sent to Cooprider's lawyers on June 11, 2026, at 5:52 P.M., Mr. Mitchell wrote:

> Counsel:

You have not responded to my e-mail of June 2, 2026. Please confirm that you will preserve all of the documents and communications described in the e-mail, and please confirm that you have instructed Mr. Vasiliou to preserve them as well.

Please respond to this e-mail by 5:00 p.m. central time on Friday, June 12, 2026.

Exhibit 6. Cooprider's lawyers have not acknowledged or responded to this e-mail.

Later that day, at 6:07 P.M. central time, Mr. Mitchell wrote to Mr. Vasiliou and Mr. Cooprider's lawyers:

Dear Counsel and Mr. Vasiliou:

Since I learned at Ms. Davis's deposition of May 28, 2026, that you accessed data on my client's iPhone in violation of the Court's order of May 14, 2026, I have sent repeated e-mails instructing you to turn over all communications between Mr. Vasiliou and Mr. Cooprider's lawyers relating to Ms. Davis's iPhone or other devices or any data on those devices. I have also instructed you to produce all documents, data, content, analyses, reports, or records that you have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices.

I need these documents and communications to uncover and assess the extent to which you have accessed data on my client's iPhone in violation of the Court's order, and to determine the remedies that we will pursue.

You have not acknowledged or responded to any of these demands. Please inform me by 5:00 p.m. central time on Friday, June 12, 2026, whether you intend to produce the requested documents and communications. If you do not respond by that time, I will seek a court order compelling you to produce these documents and communications.

Exhibit 7. Neither Mr. Vasiliou nor Cooprider's lawyers have acknowledged or responded to this e-mail.

III.    Mr. Vasiliou Refuses To Respond To Mr. Mitchell's E-Mails Requesting The Communications And Documents Showing The Extent Of His Unauthorized Access To Ms. Davis's iPhone

George Vasiliou has similarly refused to acknowledge or respond to Mr. Mitchell's requests for the communications and documents showing the extent of his unauthorized access to Ms. Davis's iPhone.

As soon as Ms. Davis's deposition ended, Mr. Mitchell returned to his hotel and promptly e-mailed Mr. Vasiliou. His first e-mail to Mr. Vasiliou was sent at 4:50 P.M. central time on May 28, 2026, and it reads as follows:

> George:
>
> Thank you for all of your work on my client's devices.
>
> I have a question about the attached forensic examination report. It appears that you prepared and sent this report to Ms. Klein, and it contains several verbatim excerpts from my client's "Notes" app that you extracted from her iPhone. Ms. Klein introduced this document as an exhibit at my client's deposition earlier today.
>
> My understanding was that you would not be producing any of the data from my client's devices absent a court order or stipulation of the parties, and that you would secure the data and serve as custodian of the data until a court order or stipulation authorized disclosure of the data.
>
> Perhaps I misunderstood the arrangement, but could you please explain why you disclosed these notes to Ms. Klein? Is it your understanding that I am also authorized to obtain some or all of the data that you extracted from Mr. Cooprider's devices? Both my client and I thought that counsel would be unable to access the contents of any of these devices absent a stipulation or order of the court. It is also not clear to me why those particular notes were shared with Ms. Klein and not others.
>
> Thank you considering this, and my apologies if there was a misunderstanding on my part about how the data would be shared with opposing counsel post-extraction.

Exhibit 8. Mr. Mitchell attached a copy of Exhibit 40 from Ms. Davis's deposition to the e-mail that he sent to Mr. Vasiliou. Mr. Vasiliou has not responded to Mr. Mitchell e-mail of May 28, 2026.

On May 29, 2026, at 9:58 P.M. central time, Mr. Mitchell e-mailed Mr. Vasiliou again and asked him to send copies of anything regarding Ms. Davis's iPhone that he has shared with Mr. Cooprider's legal team:

> Hi George:
>
> I'm following up on the e-mail below. Please answer because I have to make sure that the sensitive and privileged data on my client's iPhone are protected. I have a responsibility to my client to ensure this.
>
> Also, could you please forward to me all reports, searches, analyses, or other documents regarding the data on my client's phone that you have provided to Ms. Klein or other members of Mr. Cooprider's legal team?
>
> Thank you for considering this. I hope you are enjoying your time in Portugal.

Exhibit 9. Mr. Vasiliou has not responded to this e-mail either. But Mr. Vasiliou has read and received Mr. Mitchell's e-mails, even though he is refusing to respond to them, because Mr. Vasiliou forwarded Mr. Mitchell's e-mail of May 28, 2026, to Beth Klein, which appears in an e-mail that Ms. Klein sent to Mr. Mitchell on May 30, 2026. *See* Exhibit 10.

On May 30, 2026, Mr. Mitchell e-mailed Mr. Vasiliou for a third time and wrote:

> George:
>
> You have not responded to the either of the e-mails that I sent to you on May 28, 2026, and May 29, 2026. I know that you have read at least the e-mail of May 28 because you forwarded it to Ms. Klein, and Ms. Klein informed me of that in the e-mail that she sent to me this morning.
>
> I strongly recommend that you respond to these e-mails. As you can see from my e-mail to Ms. Klein from earlier today, I believe that you

and Ms. Klein violated Judge Morales's order of May 14, 2026, by accessing and sharing the contents of my client's iPhone. We will be seeking relief from the Court to stop you from conducting searches of Ms. Davis's devices and providing data from her devices to Ms. Klein or anyone else.

I will be including our correspondence as an exhibit to this soon-to-be-filed motion. It will not look good if you are ignoring my e-mails and leaving Ms. Davis and me in the dark about the extent to which you have shared the contents of my client's iPhone with the opposing lawyers.

Please respond to the e-mails by 8:00 p.m. Portugal time on Sunday, May 31, 2026. We will be filing our motion with the Court shortly thereafter.

Exhibit 11. Mr. Vasiliou did not respond to Mr. Mitchell, despite the warning that Mr. Mitchell intended to seek relief from the Court. Instead, Mr. Vasiliou forwarded Mr. Mitchell's e-mail of May 30, 2026, to Beth Klein, which Ms. Klein then forwarded to Mr. Mitchell in an e-mail sent on May 31, 2026. *See* Exhibit 11.

On June 2, 2026, at 6:28 P.M. central time, Mr. Mitchell cc'd Mr. Vasiliou on the duty-to-preserve e-mail that he sent to Cooprider's attorneys. *See* Exhibit 4. Mr. Vasiliou has not acknowledged or responded to this e-mail, even though the e-mail instructed him (as well as Cooprider's lawyers) to preserve the relevant communications and documents.

Mr. Mitchell also cc'd Mr. Vasiliou on his e-mail of June 11, 2026, which instructs Cooprider's attorneys (and Mr. Vasiliou) to turn over all communications relating to Ms. Davis's iPhone or other devices or any data on those devices, as well as all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices. *See* Exhibit 7. Mr. Vasiliou has not acknowledged or responded to this e-mail either.

## ARGUMENT

The Court should order Mr. Vasiliou and Mr. Cooprider's attorneys to produce all of their communications relating to Ms. Davis's iPhone or other devices or any data on those devices. It should also order them to produce all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices. The Court has already found that Mr. Vasiliou and Mr. Cooprider's legal team violated its order of May 14, 2026, by accessing and obtaining data and information on Ms. Davis's iPhone. And the questions asked at Ms. Davis's deposition indicate that Cooprider's lawyers accessed information on Ms. Davis's phone that went far beyond the material described in Exhibit 40. Ms. Davis is entitled to know the extent to which Mr. Cooprider's attorneys have accessed and viewed material on her iPhone and other devices so that she can seek appropriate remedies from this Court.

I.   **Ms. Klein Asked Numerous Questions At Ms. Davis's Deposition Based On Information That Cooprider's Lawyers Illegally Obtained From Ms. Davis's iPhone**

There were numerous questions asked at Ms. Davis's deposition showing that Cooprider's lawyers extensively accessed the contents of Ms. Davis's iPhone in violation of this Court's order. We are submitting the deposition transcript as a sealed exhibit so the Court can see for itself the types of questions that were asked. Because we are filing the deposition transcript under seal and will soon file a motion to seal the transcript, we will describe those questions in very abstract terms and cite the relevant page and line numbers.

- At 24:21–25:10, Ms. Klein asks about the dates and times on Ms. Davis's electronic devices.

- At 25:11–27:5, Ms. Klein asks extensive and leading questions about the "notes" on Ms. Davis's Notes app, including notes that are not mentioned or quoted in Exhibit 40.

- At 27:3–28:10, Ms. Klein asks leading questions about Marshall Bowling based on information taken from notes on Ms. Davis's iPhone.

- At 28:11–29:12, Ms. Klein asks additional questions about the "notes" on Ms. Davis's Notes app, including notes that are not mentioned or quoted in Exhibit 40.

- At 28:11–29:12, Ms. Klein asks additional questions about the "notes" on Ms. Davis's Notes app, including notes that are not mentioned or quoted in Exhibit 40.

- At 34:3–35:3, Ms. Klein asks leading questions about Ms. Davis's use of AI and communications with her half-sister Ami Amoroso.

- At 35:24–36:20, Ms. Klein asks leading questions about Ms. Davis's efforts to track her menstrual cycle.

- At 39:16–40:9, Ms. Klein asks questions about Marshall Bowling based on information taken from Ms. Davis's iPhone.

- At 40:10–21, Ms. Klein asks a question about Ms. Davis's google searches.

- At 41:10–15, Ms. Klein asks about a "note" on Ms. Davis's Notes app that is not mentioned or quoted in Exhibit 40.

- At 41:16–42:4, Ms. Klein asks questions about Marshall Bowling based on information taken from Ms. Davis's iPhone.

- At 46:7–48:6, Ms. Klein asks questions about Ms. Davis's soon-to-be-ex-husband based on information taken from some of the "notes" on Ms. Davis's Notes app that are not mentioned or quoted in Exhibit 40.

- At 55:15–56:25, Ms. Klein asks questions about Ms. Davis's text messages with her half-sister Ami Amoroso that explicitly acknowledge that Mr. Cooprider's lawyers have accessed and examined the text messages on the mirror image of Ms. Davis's iPhone prepared by George Vasiliou.

- At 57:1–15, Ms. Klein asks questions indicating that she has been snooping through the "contacts" on Ms. Davis's iPhone.

- At 59:9–13, Ms. Klein asks a leading question indicating that she has accessed Ms. Davis's iCloud account.

- At 64:11–65:11, Ms. Klein asks leading questions indicating that she has accessed Ms. Davis's text messages with her mother, Mary Anna Ziarko.

- At 77:23–79:10, Ms. Klein asks leading questions indicating that she has accessed Ms. Davis's text messages with her soon-to-be-ex-husband, Devin Paul Davis.

- At 84:5–6, Ms. Klein asks a leading question about a "note" on Ms. Davis's Notes app that is not mentioned or quoted in Exhibit 40.

- At 124:16–125:22, Ms. Klein asks leading questions indicating that she has viewed communications and documents on Ms. Davis's iPhone or other devices that we did not produce in discovery.

- At 203:21–204:21, Ms. Klein asks leading questions indicating that she is familiar with Ms. Davis's internet-search history, which we did not produce in discovery.

- At 215:4–8, Ms. Klein asks a leading question about a communication between Ms. Davis and Yvonne Yakopovich that we did not produce in discovery.

- At 230:4–231:14, Ms. Klein asks about a "note that has been ·extracted from your cell phone" and later admits that "[t]his came right off your phone."

- At 232:4–234:2, Ms. Klein appears to be asserting that she had a right to review all of the notes on Ms. Davis's iPhone.

- At 235:2–236:25, Ms. Klein claims that she has a right to demand from George Vasiliou any material on Ms. Davis's iPhone or other devices that is mentioned in the ESI discovery requests that Mr. Cooprider's lawyers served on May 13, 2026.

The transcript indicates that Cooprider's attorneys have accessed and reviewed far more material than what appears in Exhibit 40. It appears that they have obtained and

examined all of the notes on Ms. Davis's Notes app. And it appears they have reviewed the text messages and contacts on Ms. Davis's iPhone. It is even possible that Cooprider's lawyers have obtained most or all of the material listed in the ESI discovery requests that they served on May 13, 2026, as Ms. Klein asserts at the end of the deposition that she had a right to order Mr. Vasiliou to produce all of those sought-after materials, and she took a similar position before this Court at the hearing of June 2, 2026.

Ms. Davis and the Court are entitled to know the extent to which Mr. Vasiliou and Mr. Cooprider's legal team accessed material on Ms. Davis's iPhone and other devices in violation of the Court's order of May 14, 2026. The Court should order George Vasiliou and each of Cooprider's lawyers to immediately produce all of their communications relating to Ms. Davis's iPhone or other devices or any data on those devices. It should also order them to produce all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other devices.

## II.   THE COURT SHOULD ORDER COOPRIDER'S LAWYERS TO PAY THE ATTORNEYS' FEES INCURRED IN PREPARING AND ARGUING THIS MOTION

It is inexcusable that Mr. Vasiliou and Mr. Cooprider's lawyers have refused to produce these communications and documents in response to Mr. Mitchell's repeated requests. They do not have an attorney-client relationship and there is no conceivable claim of privilege that could apply. Yet they somehow think that they are entitled to keep Ms. Davis and the Court in the dark about the extent of their unauthorized access to Ms. Davis's iPhone and other devices. The Court has already found that Mr. Vasiliou and Mr. Cooprider's attorneys have violated its order by accessing material from Ms. Davis's iPhone. So they must candidly admit the extent of their violations and allow Ms. Davis to seek appropriate remedies for their misconduct.

It is even worse that Cooprider's lawyers will not deign to acknowledge or respond to the *five* separate e-mails that Mr. Mitchell sent requesting the relevant communications and documents. *See* pp. 3–9, *supra*. No matter how much acrimony may exist between the actual litigants, the attorneys who represent them are obligated to maintain decorum and professionalism at all times. The Texas Lawyers' Creed requires attorneys to be "courteous, civil, and prompt in oral and written communications" with opposing counsel. *See* Texas Lawyer's Creed III.1, available at https://perma.cc/7K95-FRJ5. Ignoring five separate e-mail requests for sought-after communications and documents is not "courteous," "civil," or "prompt." If Cooprider's lawyers have no intention of producing the requested communications and documents, then they should have replied with an e-mail candidly explaining their stance and citing authorities supporting their position. Giving the silent treatment to opposing counsel is beneath the standards of professionalism required of licensed attorneys.

Ms. Davis should not have had to enlist the Court's help to obtain these communications and documents from Mr. Vasiliou and Mr. Cooprider's attorneys. The Court should order production of these sought-after materials and instruct Cooprider's attorneys to pay the attorneys' fees incurred in preparing and arguing this motion.

## CONCLUSION

The Court should order Mr. Vasiliou and Mr. Cooprider's attorneys to produce all of their communications relating to Ms. Davis's iPhone or other devices or any data on those devices. The Court should also order Mr. Vasiliou and Mr. Cooprider's attorneys to disclose to Mr. Mitchell all material from Ms. Davis's iPhone or other devices that they have viewed, searched, accessed, or obtained, and to produce all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Ms. Davis's iPhone or other

devices. The Court should also order Cooprider's attorneys to pay attorneys' fees for the time that Ms. Davis's lawyers spent preparing and arguing this motion.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
  *Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: June 13, 2026                  *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 13, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Plaintiff*