UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Liana Davis, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 2:25-cv-220 |
| | * | |
| Christopher Cooprider, et al. | * | |
| Defendants. | * | |

**RESPONSE TO PLAINTIFF'S MOTION TO REQUIRE PRODUCTION OF COMMUNICATIONS AND DOCUMENTS RELATED TO THE UNAUTHORIZED ACCESS OF PLAINTIFF'S IPHONE**

Defendant Christopher Cooprider ("COOPRIDER") responds to Plaintiff's Motion To Require Production of Communications and Documents related to the Unauthorized Access of Plaintiff's IPhone.

I.    Introduction

Plaintiff filed a mislabeled Motion to Compel without citing any authority demanding a Court Order compelling and ordering:

1).    Defense Counsel to produce all of their communications relating to Ms. Plaintiff's iPhone or other devices or any data on those devices;

2)    Mr. Vasiliou and Defense Counsel to disclose to Mr. Mitchell all material from Ms. Plaintiff's iPhone or other devices that they have viewed, searched, accessed, or obtained, and to produce all documents, data, content, analyses, reports, or records that they have possessed or prepared that relate in any way to the information on Plaintiff's iPhone or other devices, and

1

3)      An award of attorneys' fees for the time that Plaintiff's lawyers spent on this motion solely based upon the Texas Lawyer's Creed.

As set forth below, Plaintiff's counsel did not serve any discovery requests for any documents.  He simply made informal, overbroad and differing demands and filed the motion.   Unfortunately, Plaintiff's counsel has omitted material communications actually providing the Artifacts to him and which only included his one-sided emails that he characterizes as "threats."  He was not ignored; he was provided with the Artifacts.

Plaintiff was also provided with direct responses  to his questions and heard the explanations to the Court of what happened.  Plaintiff did not see fit to look at or read the Artifacts that were provided to him in May or prior to the filing of the Motion.

Plaintiff obstructed further progress in the appointment of the successor court appointed expert, Array, LLC using the misinterpretation of the order as an excuse. Mr. Mitchell has ignored the requests of Array, to finalize a contract for payment; he would not provide his address or otherwise communicate about the new contract.  He refused to pay for any portion of the past due amounts charged by Array to obtain a mirror images of Plaintiff's computer.  He avoided negotiations on any terms about how to access Plaintiff's iCloud holding 53 GB of text data.  He has served baseless objections to the ESI Discovery requests that must now be resolved by the Court. There is work to be done, and Plaintiff has used the misreading of the Court's May 14, 2026 Order not to do the work.

More importantly, when the facts and logical case progression are considered, Plaintiff has suffered no prejudice at all.  With or without the misreading of the order, the Artifacts would be discovered and used as evidence in the case.  Defendant agrees that the Vasiliou extractions should be provided to Mr. Mitchell so that he can review them.  Mr. Mitchell should then provide his responses and privilege log, if any, promptly.  This  resolves issue No. 2 and complies with the May 14, 2026 Order  In the alternative, Array, LLC.  should be immediately appointed as the successor Court appointed expert, the contract and payment should be finalized so that Array, LLC will perform the Defendants ESI extraction for a second time.  Either way or both ways, the results will be the same.  The same disclosed Exhibit 40 and other Artifacts will be extracted.  And these represent a tiny fraction of the extraction that has been and may be again performed on Plaintiff's first cell phone, her second phone, burner phones, computers and iCloud.

II.   <u>What happened caused no harm or prejudice.  Had the May 14, 2026 Order been followed, the outcome would be the same.</u>

Four Artifacts extracted from Plaintiff's IPhone and a limited number of questions at Plaintiff's deposition concerning child abuse are at issue here based upon Defendant's misreading of the Court's May 14, 2026 Order.  The four non-privileged, relevant Artifacts would have been eventually produced in this case, and two should have been  produced in discovery already (Plaintiff falsely denied they existed in response discovery.)  The child abuse questions are obvious.  Plaintiff has not shown that the discovery outcome and production of  these very limited materials would have been any different had a stipulation or second order been obtained.

On May  14, 2026 pursuant to FRCP 29(b) COOPRIDER filed his FRCP 29(B) Motion for Shortened Time to Response to ESI Discovery, to Compel Production of Plaintiff's Devices and Access to Her iCloud.  ("MOTION"). The specific relief requested was that Plaintiff immediately produce all of her I-phone, all phones used between 1/1/2025 and the present and all computers you have used between 1/1/2025 and the present and iCloud remote storage ("DEVICES") for preservation imaging, and that the Expert be ordered to ***immediately extract*** the ESI from the mirror image of Plaintiff's phone.  That same day, the Court granted COOPRIDER'S Motion. The Court stated, "The devices and access shall be provided as defined in the ESI requests."  The Court's Order and ESI Request was provided to the Expert who immediately began to extract the ESI from the mirror image of Plaintiff's phone as set forth as the relief in the Motion.

On May 28, 2026 ***both Plaintiff and Defendant***  believed that immediate extraction pursuant to the Defendant's ESI request was to occur.  Mr. Mitchell's email dated May 28 to Mr. Vasiliou shows that ***Plaintiff believed that the extraction had been ordered***.  Plaintiff knew and expected that Mr. Vasiliou was conducting the extraction; this was not random rummaging round as recently characterized.

On   May   28,   2026,   at   2:50&#8239;PM,   Jonathan   Mitchell jonathan@mitchell.law wrote:

George:

Thank you for all of your work on my client's devices.  I have a question about the attached forensic examination report. It appears that you prepared and sent this report to Ms. Klein, and it contains several

verbatim excerpts from my client's "Notes" app that you extracted from her iPhone. Ms. Klein introduced this document as an exhibit at my client's deposition earlier today.

*My understanding was that you would not be producing any of the data from my client's devices absent a court order or stipulation of the parties, and that you would secure the data and serve as custodian of the data until a court order or stipulation authorized disclosure of the data.*

Perhaps I misunderstood the arrangement, but could you please explain why you disclosed these notes to Ms. Klein? Is it your understanding that I am also authorized to obtain some or all of the data that you extracted from Mr. Cooprider's devices? Both my client and I thought that counsel would be unable to access the contents of any of these devices absent a stipulation or order of the court. It is also not clear to me why those particular notes were shared with Ms. Klein and not others.

Thank you considering this, *and my apologies if there was a misunderstanding on my part about how the data would be shared with opposing counsel post-extraction.*

-Jonathan

As of May 28, 2026, the only concern was about the misunderstanding between the parties was whether the May 14, 2026 Court order required a Stipulation or another Court Order for production of documents to the Defense. Defendant believed that the Court had reviewed the ESI request and saw the time parameters and counsel exclusions and had approved it for immediate discovery as requested in the MOTION. Even Mr. Mitchell calls the issue a misunderstanding; far different that the recast characterization in the MOTION.

Attached to the MOTION was a draft of a stipulation (D.E. 66-1) that Plaintiff would not sign providing the time for turnover of her devices to Mr. Vasiliou. He had been waiting in Corpus Christi for several days and had returned to Dallas on May 14, 2026. He was not provided with Plaintiff's computers, and no one can access

Plaintiff's iCloud where 53 GB of text data resides, other than Plaintiff.  Plaintiff and Mr. Mitchell both know that the iCloud text data cannot be and has not been accessed. The newly discovered second phone has not been turned over to any expert.   There may be another burner phone as well.

The May 14, 2026 Order provided that Plaintiff had to turn over her devices by May 15, 2026 at 3:00 pm to Mr. Vasiliou, but he could not return to Corpus Christi. Mr. Mitchell took the position that finding a new expert or  to meet the deadline was solely COOPRIDER'S problem.  Plaintiff refused to take or courier her computer to the Mr. Vasiliou who was waiting at the Dallas offices of Thompson Coe working on the extraction that every lawyer expected to occur.  Array, LLC. a forensics company was frantically located, and the company immediately cleared conflicts and was substituted for Mr. Vasiliou to comply with the Order.  Days later in  violation of the deadline, Plaintiff mailed her computer to Array.  Plaintiff did not produce her phone that she used to record COOPRIDER on April 5, 2026 or any burner phone.

D.E. 66-1 also contained the language "subject to the process described in the proposed stipulation provided by Defendant Cooprider, (D.E. 66-1). The purpose of this Order is to allow for merits discovery as well as discovery regarding spoliation of evidence."  COOPRIDER read this as being  consistent with the  fact that he had already obtained a Court order for immediate extraction of the phone data and that the Court  wanted merits discovery and discovery of spoliation of evidence to proceed. The Court intended that another order issue.   COOPRIDER has apologized for his error.

Mr. Vasiliou performed the extraction with the searches in the ESI request to Plaintiff. He used the time frame from January 2025 through the current date, the keyword search list, and the exclusion list. His work terminated at the end of Plaintiff's deposition. He has held the extractions and the mirror images of Plaintiff's phone and COOPRIDER'S phone and two computers. He would like to have an order directing him to whom to send the extractions and the mirror imaging data.

With the exception of four artifacts which were provided to COOPRIDER who provided them to Plaintiff on May 27 and 31, 2026 and imminent child abuse information, nothing has been provided to the Defense.

The four artifacts include 1) the forensic report Exhibit 40, 2) a pregnancy conception calculation document, 3) a menstruation tracking document (which Plaintiff denied existed and has not produced)[1] and 4) a screen shot showing that Plaintiff changed the name of Ami Amoroso in her contracts to the letter "A" and wiped her texts off her phone up to the moment in time she turned her cell phone over to the forensics expert.

By June 14, 2026 Mr. Mitchell had not reviewed all four artifacts disclosed to him two weeks before as he continued to demand them. Indeed, Mr. Mitchell did not review the documents provided to him before he filed this motion. At the same time,

---

[1] REQUEST FOR PRODUCTION NO. 25: Produce all DOCUMENTS reflecting YOUR documentation of YOUR menstrual cycle.

RESPONSE: Plaintiff did not start using an app to document her menstrual cycle until October 2025. Plaintiff therefore objects to this request because her menstrual cycle from October 2025 onward is not "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

he claims he was ignored when he was not.  He was promptly provided with explanations and documents.

Had COOPRIDER proceeded with the May 14, 2026 Order and obtained a second court order, the ultimate results  would be exactly the same.  The  ESI search results to be conducted by Array, LLC will  result in the same evidence productions - and more and probably far worse evidence for Plaintiff - when the computer, second phone, and  iCloud are searched.  Exhibit 40 is not privileged and is relevant.  The pregnancy and menstruation tracking memos should  have been produced long ago and their existence was denied under oath.  Evidence of text message destruction and manipulation of evidence will come out again with additional evidence when Plaintiff fully  complies  with the production of her devices and iCloud.

 In sum, there has been no prejudice to Plaintiff through the misreading of the May 14, 2026 Order.

III.    <u>Plaintiff produced her phone for mirror imaging to NCIS and was required to produce the image in discovery anyway.</u>

In March 2026, Plaintiff produced her phone to NCIS for mirror imaging. She waived all of her rights to privacy and privilege with the disclosure of this data to a third party.

Plaintiff was requested to provide all communications with NCIS in RFP No. 5 served in September 2025.

> 5. ALL COMMUNICATIONS between YOU and the following individuals or entities between November 1, 2024 and the present:
> (a) Corpus Christi Police Department;
> (b) Nueces County District Attorney's Office;
> (c) Texas Attorney General's Office;

(d) Naval Criminal Investigative Service;
(e) Marine Judge Advocates within the United States Marine Corps;
(f) United States Attorney's Office for the Southern District of Texas; and
(g) United States Department of Justice;

concerning YOU, YOUR pregnancy(ies), the termination thereof – whether real or suspected, and/or CHRIS COOPRIDER.

Plaintiff should have provided a copy of the mirror image of her phone she gave to NCIS to COOPRIDER in response to discovery, but did not. The NCIS mirror image was essentially requested in discovery in September 2025 and will have to be produced. But the fact is that this evidence would have come out no matter what, and Plaintiff has failed to prove any harm or prejudice caused by the misreading of the order.

IV.    Plaintiff's list of depositions questions relate to the Artifacts, child abuse concerns already disclosed and general foundation questions.

Plaintiff seems to be under the impression that the sole source of evidence is limited to that which Plaintiff provides. The reality is that there are a shocking number witnesses who have come forward to independently provide damning evidence against Plaintiff. Beginning at Page 13 of the Motion, Plaintiff lists questioning in the Plaintiff's deposition. These areas of questioning are primarily related to the 4 Artifacts and the child abuse concerns. Other questions are foundation and general background questions.

Devin Plaintiff, Plaintiff's ex-husband, himself provided the threatening text message that Plaintiff denied  she ever sent. (Page 77 Plaintiff depo, Item n)  But she did in fact send this text to her ex-husband.

9



Jeffrey "Jeff" Sparks curiously a forensics expert who has been one of the men dating and financially supporting Plaintiff until early June 2026 when he learned that the twins Plaintiff is carrying he was led to believe were his -- were fathered by a different man.   He has provided information about other phones and matters of concern including his fundraising for this case.   Once he was disclosed as a witness for the Defendant Plaintiff contacted Mr. Sparks and told him to shut up and quit talking to the Defense lawyers.

General spoliation and foundation questions about the location of data and

manipulation of data would have been asked regardless of any ESI order due to Plaintiff's sophistication with deleting evidence to mislead the Family Law Court and mindset to evade production.

How Plaintiff uses notes to organize and process her thoughts are pattern and practice questions.   In the secret audio recordings made by Plaintiff on April 5, 2025 she talks at length about her extensive use of notes.   Plaintiff provided her notes on how she was processing her obsession with the Defendant.   That was disclosed in the initial disclosures called "obsession files."   Bates 832 -840, excerpt:





Questions concerning Marshall Bowling a potential father of her two most recent pregnancies and twins (not Mr. Sparks) and who lives at her house are not unusual. The Cooprider house is next door to the Plaintiff house. Mr. Bowling lives with Plaintiff, and his car is parked in front of the house all of the time. It is incredible that Plaintiff denied that Bowling lives in her house when it is obvious that he does. Additionally, Mr. Bowling picked a fight with Dan Cooprider, Chris Cooprider's father because he was installing security cameras that Mr. Bowling believed looked into his bedroom. See Exhibit A. And as indicated to the Court there

12

was a concern raised about child abuse which Plaintiff denied.

Questions about Plaintiff's use of AI AND GOOGLE searches are basic questions to determine how Plaintiff understands pregnancy, fertility, and miscarriage and to understand how she has faked pregnancies, manipulated timelines and invented different versions of events. The AI analysis of the 2025 pregnancy *was produced by the Plaintiff* and bate stamped Plaintiff 4607

**3/21/2025 12:35 PM**
iPhone



**3/21/2025 12:35 PM**
iPhone)

t My sister sent me this. According to The Internet, it's not
uncommon for the heart rate to be in the 90s this early. Idkhe

Questions about menstruation tracking and how Plaintiff has tracked her cycles and pregnancies are central to the case. These were requested in discovery, and Plaintiff lied that she didn't track them. See Footnote 1. Plaintiff has bragged that she keeps track of her cycle to Jackie Samuelson. This is a standard question to pin Plaintiff down on the facts and to determine whether she is lying about the existence of evidence requested in discovery.

No one, other than Plaintiff can access her iCloud account. Information was provided to the Court showing that Plaintiff has 53 GB of text data on the cloud; it has been in pleadings. No one can access that data, except for Plaintiff, and both Plaintiff and Mr. Mitchell have slow-walked cooperation with the security process. Mr. Mitchell is aware that the two step security protocol in which he has actively participated does not work to access the data.

Questions about whether Plaintiff text messages with her mother, Mary Anna Ziarko, (who was present in the Plaintiffs house the night of April 5, 2025 and who apparently has no clue that Plaintiff was pregnant or miscarried that night) - establish spoliation are not grounds for an investigation. No text messages with Mary Anne Ziarko have been provided to COOPRIDER.

Plaintiff provided text messages with Yvonne Yakovich indicating that she *stalks* COOPRIDER on line (Exhibit B). For example, "at 215:4–8, Ms. Klein asks a leading question about a communication between Plaintiff and Yvonne Yakopovich that we did not produce in discovery." The texts about scrubbing toilets *were in fact*

produced in discovery at Bates Stamp 5288 by Plaintiff and her attorney.

> Yvonne
> His Command will still have him reporting to work every day and they will probably give him remedial tasks like scrubbing toilets to pass him time
> **4/7/2025 8:58 PM (Read 4/7/2025 8:58 PM)**

> **4/7/2025 8:58 PM**
> □□ to " HAHAHA that's exactly what I said to my sister on the phone! She said they would be having him do bitch work, and I was like are they going to make him scrub the potty? "
> **4/7/2025 8:58 PM**
> Yvonne

All of the extractions can be produced to Mitchell for his review. This will encompass the universe of data seen by Mr. Vasiliou, which is far larger than that provided to the Defense and will resolve his concerns while moving this case forward.

Mr. Vasiliou would like an Order directing him to whom to send the data. Mr. Vasiliou ceased all work, he has held his extraction including the artifacts provided to COOPRIDER and the mass of materials not provided to COOPRIDER, and he will provide the images in his possession to Array when Array is appointed by the Court in this case. He will not make any moves without an order to ensure that the Court's intention is followed.

V.     <u>Plaintiff's Continued Obstruction</u>

Plaintiff has used the misunderstanding of the Order as an impediment to the appointment of Array, LLC and the ESI discovery process. Array billed for the extraction of Plaintiff's computer and the postage for its return. Plaintiff has

15

refused to pay for any part of the bill. Array needs a new contract signed making the Mitchell Law Firm and Thompson Coe financially responsible for future work. Mr. Mitchell has ignored Array in finalizing the contract. He would not even provide a billing address. Without a contract in place and a Court appointment of Array, LLC, this case cannot move forward.

Plaintiff has raised frivolous objections to the ESI Request that must now be resolved by the Court. (Exhibit C) COOPRIDER requests that the Court conduct a discovery hearing and rule on Plaintiff's objections to the ESI so this case can get back on track and ready for trial. Mitchell should be given a deadline to review the data once received from Vasiliou and again from Array, LLC.

Plaintiff has not provided her 2nd phone to Array, LLC, and there is no assurances that this device is secure in the hands of Plaintiff. There may be a burner phone as well.

Plaintiff has not been willing to discuss protocols to access Plaintiff's iCloud.

All of these items must be resolved.

VI.   What should happen now?

The following orders should be considered:

1.    The Appointment of Array, LLC as the Court Appointed Forensics Expert.

2.    Array, LLC requires a contract in place with Thompson Coe and Mitchell Law. The parties should finalize and sign this contract.

3.    Payment of Plaintiff's share for the Array, LLC bill for extraction of

Plaintiff's computer and postage to return the computer.

4.     An Order to Mr. Vasiliou to produce a copy of the entire extraction to Mr. Mitchell and an Order with a deadline for Mr. Mitchell to conduct his review and provide objections.

5.     An Order to Mr. Vasiliou to produce the mirror images of Plaintiff's phone, and Defendant's phone and computers to Array, LLC, once appointed by the Court.

6.     Orders resolving Plaintiff's ESI Objections.

7.     An Order to Plaintiff to turn over all of her DEVICES as ordered on May 14, 2026 to Array, LLC.

8.     A Certification by Plaintiff that she has provided all DEVICES.

9.     An Order to Plaintiff to cooperate in the downloading of the 53 GB of text data on her iCloud, including being physically present with an investigator for the two step process under supervision.

10.     An order to Array, LLC to conduct the ESI extractions on Plaintiff's DEVICES including the two known phones, any burner phones, her computer, and her iCloud.

11.     General communication and destruction Orders.

A form of order addressing these issues is attached as Exhibit D.

These Orders would provide the Vasiliou extractions to Mr. Mitchell for his investigation and his review contemplated by the May 14, 2026 order.  It puts the contracts and orders in place to permit this case to move forward on merits

17

discovery.

VII.   Plaintiff failed to serve any discovery requests and provided no authority in his Motion to Compel without a pending discovery request.

There is no authority for an order compelling the production of documents without a proper request for production. Mr. Mitchell has cited no authority to the contrary. Plaintiff has not followed any protocol or order of this Court or the Federal Rules concerning Motions to Compel. No discovery rule was cited. No local rule was followed.

His first request demands all communications concerning Plaintiff's phone. "Defense Counsel to produce all of their communications relating to Ms. Plaintiff's iPhone or other devices or any data on those devices." The issues of Mr. Plaintiff's phone and her delayed and botched production despite multiple hearings since January 2026.

His second request is resolved with the May production of the Artifacts and the production of the extraction performed by Mr. Vasiliou.

No fees for a premature, unauthorized Motion to Compel based upon informal email demands – rather than requests for production of documents - are authorized by the Federal Rules.

VIII.   Conclusion.

Plaintiff's counsel has jumped the procedural gun and filed a Motion to Compel without any pending request for production. He has demanded different documents over time and currently demands privileged communications and all privileged and work product communications going back to September 2025. None

of this is permitted by the Federal Rules.  And no authority has been provided to support his document demands.

The Defense again apologizes for misreading the Court's order, and the Defense believes that the suggestions to move forward provided here will get this case back on track and ready for trial.  There has been no prejudice to the Plaintiff, and Plaintiff has failed to show any.  In the end, whether the Vasiliou extraction is reviewed by Mitchell, whether Array, LLC does another extraction which is reviewed by Mitchell, when Plaintiff produces her mirror image provided to NCIS, the outcome of the discovery production will be exactly the same.  Plaintiff did not show malice or any intent to affront the court or willful disobedience at all.  What is true is that both parties expected the extraction to proceed immediately, and the disclosure to the Defense was limited as stated.

The points for relief are set forth in the proposed order.

WHEREFORE, for the foregoing reasons, Defendant requests that the Court deny the relief requested by the Plaintiff and fashion remedies outlined in the proposed order.

19

Respectfully submitted,
WATTS LAW FIRM LLP

By: /s/ *Mikal C. Watts*
Mikal C. Watts
WATTS LAW FIRM LLP
Texas State Bar No. 20981820
Federal Bar ID # 12419
mikal@wattsllp.com
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501
ATTORNEY-IN-CHARGE FOR CHRISTOPHER COOPRIDER


Beth A. Klein
BETH KLEIN, P.C.
Colorado Bar No. 17477
S.D. Tex. I.D. No. 3934133
beth@bethklein.com
350 Market Street, Suite 310
Basalt, Colorado 81621
Telephone: (303) 448-8884

Barry A. Moscowitz
Texas State Bar No. 24004830
Federal Bar ID No. 31054
bmoscowitz@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

## CERTIFICATE OF SERVICE

I certify that on July 1, 2026 I SERVED the foregoing via ECF on all counsel of record.

*/s/ Beth A. Klein*
Beth A. Klein