UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-220 |

**NONPARTY MARY ANNA ZIARKO'S MOTION TO QUASH SUBPOENA**

On July 3, 2026, Mr. Cooprider's attorneys subpoenaed Mary Anna Ziarko to testify at a deposition. *See* Exhibit 4. The subpoena ordered Ms. Ziarko to bring to the deposition:

> All text messages, email messages, and voice mails between you & Liana Davis from January 1, 2025 to the present that concern Liana Davis's pregnancies in 2025 and 2026, Christopher Cooprider, the events of April 5–6, 2025, Marshall Bowling, Jeffrey Sparks, abortion medication, & this lawsuit.

*Id*. Ms. Ziarko is plaintiff Liana Davis's 78-year-old mother who is disabled and in frail health. *See* Ziarko Decl. ¶¶ 4–11 (attached as Exhibit 1). She cannot drive and lives only on Social Security and a small pension. *See id*. ¶ 12. Ms. Davis has kept her pregnancy with Cooprider, the murder, and the lawsuit secret from her mother because she fears that informing her mother of these facts would devastate her and jeopardize her health given her mother's history of stroke and high blood pressure. *See* Davis Decl. ¶ 8; Davis Dep. Tr., ECF No. 86, at 62:8–63:24.

Mr. Cooprider's attorneys know this, as Ms. Davis testified to these facts at her deposition. *See id*. Ms. Davis's attorney also reiterated these facts to Mr. Cooprider's

legal team in an e-mail sent on June 14, 2026, and he warned them that he would move to quash if they subpoenaed Ms. Ziarko. *See* E-mail from Jonathan F. Mitchell of June 14, 2026 (attached as Exhibit 5); Mitchell Decl. ¶ 5 (attached as Exhibit 3) (authenticating the e-mail). Mr. Cooprider's attorneys issued the subpoena anyway.

The Court should quash the subpoena to testify because it subjects Ms. Ziarko to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring courts to quash or modify a subpoena that "subjects a person to undue burden"). The subpoena to testify unduly burdens Ms. Ziarko for many reasons. First, Ms. Ziarko has no knowledge of Ms. Davis's pregnancy with Mr. Cooprider or the alleged murder of her granddaughter apart from this lawsuit, so a deposition of Ms. Ziarko will not reveal information relevant to any party's claim or defense. Second, Ms. Davis has intentionally concealed the murder and her pregnancy with Cooprider from her elderly mother because she fears that disclosing this information would traumatize and potentially harm Ms. Ziarko given her advanced age and frail health. Third, none of the facts regarding Ms. Ziarko's role on the morning of April 6, 2025, are in dispute. Mr. Cooprider does not deny that Ms. Davis purchased an Uber for Ms. Ziarko to come to her house shortly after Cooprider abandoned her after midnight on April 6, 2025. Nor does Mr. Cooprider deny that Ms. Ziarko stayed at Ms. Davis's house while Ms. Davis was taken to the emergency room. Fourth, Ms. Ziarko is disabled and cannot drive. She lives on social security and requiring her to pay for transportation from her apartment to downtown Corpus Christi for a deposition will impose financial hardship.

The subpoena's demands for Ms. Ziarko's "text messages, email messages, and voice mails" with Ms. Davis should also be quashed as unduly burdensome. Mr. Cooprider's attorneys can obtain the sought-after text messages and email messages from Ms. Davis's devices, which have already been turned over for forensics imaging. There is no need for Mr. Cooprider's attorneys to harass an elderly, sick, and disabled woman for data that is easily obtainable from Ms. Davis's iPhone and computer.

## BACKGROUND

During Ms. Davis's deposition of May 28, 2026, Ms. Klein repeatedly questioned Ms. Davis about her communications with her mother, Mary Anna Ziarko. *See* Davis Dep. Tr., ECF No. 86, at 62:8–63:24. In response to these questions, Ms. Davis insisted that her elderly mother knew nothing of her pregnancy with Mr. Cooprider, the murder of her granddaughter, or the wrongful-death lawsuit that Ms. Davis has filed against Mr. Cooprider. Ms. Davis also explained that she intentionally concealed this information to protect her mother from trauma that could jeopardize her already frail health:

> Q. Have you turned over all of your communications with Anna Ziarko?
>
> A. I'm assuming that's supposed to say my mother, her name is Mary Anna Ziarko, and there are absolutely no relevant communications with her. She is largely unaware of what took place and what's currently taking place, to my knowledge.
>
> Q. When did you let your mom know that you were pregnant in the spring of 2025?
>
> MR. MITCHELL: Objection, form.
>
> A. My mother is not aware, to my knowledge, that I was ever pregnant in the spring of 2025.
>
> Q. When you asked your mom to come over on the night of April 5th and 6th, did you tell her that you were miscarrying?
>
> A. No, I did not, only that I needed to go to the hospital and I needed her to come quickly. . . .
>
> Q. Did you ever tell her why you had to go to the hospital?
>
> A. No. She is not aware. To my knowledge, she does not know what happened. I know this might be a surprise. My mother is not aware that I was pregnant, she doesn't know about the murder, she doesn't know about my federal civil suit. She only knows about my divorce and custody case.

Q. Why are you keeping her in the dark?

MR. MITCHELL: Objection, form.

A. She's 78 years old with a history of stroke. She has high blood pressure. I am her only child, really her only immediate family. I have deep concerns for her health and how that would affect her at her age.

Davis Dep. Tr., ECF No. 86, at 62:8–24, 63:11–24; *see also id*. at 64:23–25 ("[S]he knows nothing of the pregnancy, Cooprider, the murder, none of it.").

On June 14, 2026, Ms. Klein e-mailed Mr. Mitchell and told him that she intended to subpoena Ms. Ziarko and force her to sit for a deposition. Later that day, Mr. Mitchell e-mailed Ms. Klein and warned her not to subpoena Ms. Ziarko given her lack of knowledge of anything relevant to the case, her advanced age, and her many illnesses. Mr. Mitchell wrote:

Counsel:

If you issue subpoenas to depose either Ms. Amoroso or Ms. Ziarko, then we will move to quash the subpoenas and seek protective orders. Neither of these individuals has information or knowledge relevant to the case, and your efforts to depose family members of Ms. Davis who have no knowledge of Cooprider's actions is an act of harassment.

Ms. Davis testified that her mother knows nothing about her pregnancy with Cooprider or the alleged murder, and Ms. Davis concealed the pregnancy and the death of her unborn child from her elderly mother because "[s]he's 78 years old with a history of stroke. She has high blood pressure. I am her only child, really her only immediate family. I have deep concerns for her ·health and how that would affect her at her age." Davis Dep. 63:21–24.

Your insistence on deposing a frail, 78-year-old woman who has no knowledge of this lawsuit or what happened to her daughter is nothing short of cruelty. The deposition will reveal devastating information about her murdered granddaughter that Ms. Davis has kept from her mother for the sake of her health and well-being. Please reconsider your decision to seek this deposition.

E-mail from Jonathan F. Mitchell (June 14, 2026) (attached as Exhibit 5). Despite Mr. Mitchell's plea, Ms. Klein went ahead and issued a subpoena to Ms. Ziarko on July 3, 2026.

## THE SUBPOENA SUBJECTS MS. ZIARKO TO UNDUE BURDEN

The Court should quash the subpoena because it will impose severe burdens on Ms. Ziarko that cannot be justified when Ms. Ziarko lacks knowledge of any relevant facts and when the sought-after documents and communications can be easily obtained from Ms. Davis.

### I.   Ms. Ziarko Is A Frail, Elderly Woman In Exceedingly Poor Health And Dire Financial Straits

Ms. Ziarko is 78 years old and will turn 79 on August 11, 2026. *See* Ziarko Decl. ¶ 4 (attached as Exhibit 1). She is disabled and unable to drive. *See id.* at ¶ 5. Ms. Ziarko has collected Social Security Disability benefits. Ms. Ziarko first became disabled when she suffered a pelvic separation while giving birth to Ms. Davis in 1988, which left her unable to drive. She can walk only with a cane and very slowly on account of a stroke that occurred in 2011. *See id.*

Ms. Ziarko suffers from fibromyalgia, a painful and chronic nerve condition that causes widespread musculoskeletal pain, fatigue, sleep disturbances, and cognitive difficulties. *See id.* at ¶ 6. In addition to her fibromyalgia, Ms. Ziarko suffers from severe arthritis. *See id.* at ¶ 7. She lives in constant pain every day of her life. *See id.*

More recently, Ms. Ziarko has been afflicted with a stomach infection as well as severe anemia, which required her to undergo a blood transfusion earlier this year because her iron was critically low. *See id.* at ¶ 8. This has left Ms. Ziarko in an exceedingly weakened state. *See id.* Ms. Ziarko also has a history of strokes and high-blood-pressure issues that could lead to another stroke. *See id.* at ¶ 9. She is no condition to withstand a deposition that could last for as long as seven hours. *See id.* at ¶ 10. It is difficult for Ms. Ziarko to sit for anything and recently she wasn't even

feeling well enough to attend a birthday party at Ms. Davis's home. *See id*. at ¶ 11. Ms. Davis is seriously concerned that her mother could die from being subjected to the stress and strain of a deposition conducted by Mr. Cooprider's attorneys, as well as the trauma of learning that she had a previously unknown granddaughter who was murdered in the womb. See Davis Decl. ¶ 9.

Ms. Ziarko is also in exceedingly difficult financial straits. Her only sources of income are Social Security and a small pension. And because she cannot drive, she must budget for transportation to choose which doctor's appointments she can afford to travel to. *See* Ziarko Decl. ¶ 12. On the night of the murder, Ms. Davis had to send Ms. Ziarko $25.00 through Venmo before Ms. Ziarko could order an Uber because Ms. Ziarko could not afford to pay for an Uber with her own money. Forcing Ms. Ziarko to arrange and pay for travel to and from the deposition will impose financial hardship. *See id*.

## II.   THE SOUGHT-AFTER DEPOSITION UNDULY BURDENS MS. ZIARKO BECAUSE SHE HAS NO KNOWLEDGE OF ANY RELEVANT AND DISPUTED FACT AND DISCLOSING THE DEATH OF HER CURRENTLY UNKNOWN GRANDDAUGHTER WILL TRAUMATIZE MS. ZIARKO AND JEOPARDIZED HER HEALTH

Forcing Ms. Ziarko to sit for a deposition will unduly burden her because she has no knowledge or awareness of any fact relevant to whether Mr. Cooprider murdered Ms. Davis's unborn child with abortion pills. Ms. Davis concealed the pregnancy and the alleged murder from Ms. Ziarko on account of her age and frail health, and Ms. Ziarko has no knowledge of Mr. Cooprider or whether he poisoned Ms. Davis with misoprostol. *See* Davis Decl. ¶¶ 8, 10. Ms. Ziarko was not even aware of this lawsuit until she was served with the subpoena from Mr. Cooprider's attorneys. See Ziarko Decl. ¶ 13.

Ms. Ziarko's only involvement in this case comes from the fact that Ms. Davis called her in desperation on 12:10 A.M. on April 6, 2026, and asked her to come to

her house to stay with her children while Ms. Davis went to the emergency room. *See* Complaint, ECF No. 1, at ¶ 54. But Mr. Cooprider is not disputing that Ms. Ziarko came to Ms. Davis's house to look after her children on the morning of April 6, 2026. Nor is Cooprider denying that Ms. Davis purchased an Uber for Ms. Ziarko when Cooprider failed to show up at Ms. Ziarko's house. Ms. Ziarko has no knowledge of any relevant and disputed fact that could justify subjecting her a deposition, especially in her current condition.

### III.  THE DEMANDS FOR DOCUMENTS AND COMMUNICATIONS UNDULY BURDEN MS. ZIARKO BECAUSE THE SOUGHT-AFTER DOCUMENTS AND COMMUNICATIONS CAN BE OBTAINED FROM MS. DAVIS'S DEVICES

The subpoena also demands that Ms. Ziarko produce "text messages, email messages, and voice mails between you & Liana Davis." Exhibit 4. This imposes an undue burden on Ms. Ziarko because Mr. Cooprider's attorneys can obtain all of the requested text messages and e-mails from Ms. Davis's devices, which she has already turned over to Array LLC for forensics imaging. *See* Davis Decl. ¶ 11.  In addition, Ms. Davis has never left any voicemails with Ms. Ziarko that "concern Liana Davis's pregnancies in 2025 and 2026, Christopher Cooprider, the events of April 5–6, 2025, Marshall Bowling, Jeffrey Sparks, abortion medication, & this lawsuit." *See* Davis Decl. ¶ 12. Ms. Davis rarely leaves voicemails with her mother because Ms. Ziarko almost always answers the phone when Ms. Davis calls, and Ms. Davis has never left her mother any voicemails pertaining to any of the topics listed in Mr. Cooprider's subpoena. *See id*. These demands are nothing short of harassment, and they should be quashed alongside the unwarranted deposition demand.

* * *

Mr. Cooprider's attorneys know full well that Ms. Ziarko is elderly, disabled, and in exceedingly frail health, and that Ms. Davis has never communicated with her

mother about Mr. Cooprider, her pregnancy with Mr. Cooprider, or the alleged murder that occurred in April 2025. Their insistence on deposing Ms. Ziarko with full knowledge of these facts is abusive and cruel. The Court should quash the subpoena.

## CONCLUSION

Ms. Ziarko's motion to quash the subpoena should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: July 25, 2026                    *Counsel for Nonparty Mary Anna Ziarko*

## CERTIFICATE OF SERVICE

I certify that on July 25, 2026, I served this document through CM/ECF upon:

Mikal C. Watts
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

Beth Klein
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

Barry Moscowitz
Victoria Jimenez
Oliver Hamby
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Nonparty Mary Anna Ziarko*