UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |
|---|---|
| **Liana Davis**, <br><br> Plaintiff, <br><br> v. <br><br> **Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**, <br><br> Defendants. | Case No. 2:25-cv-220 |

## NONPARTY AMY AMOROSO'S MOTION TO QUASH SUBPOENA

On July 8, 2026, Mr. Cooprider's attorneys subpoenaed Amy Amoroso to testify at a deposition. *See* Exhibit 3. The subpoena orders Ms. Amoroso to bring to the deposition:

> All text messages, emails, and voice mails between you & Liana Davis from January 1, 2025 to the present that concern Liana Davis's pregnancies in 2025 and 2026, Christopher Cooprider, the events of April 3, 2025 and April 5–6, 2025, Marshall Bowling, Jeffrey Sparks, abortion drugs, criminal prosecutions of Cooprider, Jonathan Mitchell & this lawsuit.

*Id.* Ms. Amoroso is plaintiff Liana Davis's half-sister who lives in Georgia and has not seen Ms. Davis for over three years. She knows nothing about whether Ms. Davis's pregnancy loss resulted from a poisoning or a natural miscarriage. And all the sought-after communications between Ms. Davis and Ms. Amoroso can be obtained from Ms. Davis's devices, which have been turned over to Array LLC for forensics imaging. The Court should quash the subpoena to testify because it subjects Ms. Amoroso to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

### THE SUBPOENA SUBJECTS MS. AMOROSO TO UNDUE BURDEN

Ms. Amoroso is Ms. Davis's half-sister through her father. *See* Amoroso Decl. ¶ 4 (attached as Exhibit 1). They did not grow up together and never met until both were adults. *See id*. Ms. Amoroso lives in Georgia and has not seen Ms. Davis in over three years. *See id*. ¶ 5. Ms. Amoroso has no knowledge relevant to whether Mr. Cooprider poisoned Ms. Davis with misoprostol and murdered her unborn child. *See id*. ¶ 6. Whatever benefits that Mr. Cooprider's attorneys hope to realize from this subpoena do not justify the severe burdens that the subpoena imposes on Ms. Amoroso.

I.    THE SUBPOENA IMPOSES EXTREME BURDENS ON MS. AMOROSO, WHO MUST SPEND HOURS EVERY DAY CARING FOR HER FIANCÉ WHILE HE RECOVERS FROM A SERIOUS INJURY IN ADDITION TO HER WORK AND FAMILY RESPONSIBILITIES

Ms. Amoroso is currently caring for her fiancé who recently suffered an accident at work in which he lost part of his foot, broke his ankle on both sides, and fractured his foot in multiple places. *See* Amoroso Decl. ¶ 13. She spends five hours per day administering antibiotics to her fiancé through a picc line (a home IV). *See id*. ¶ 14. He was hospitalized for three weeks and is now at home receiving antibiotics. *See id*. ¶ 13. Ms. Amoroso must rise at 5:30 A.M. each day to prepare the antibiotics for her fiancé and then administer the first infusion at 6:00 A.M. *See id*. ¶ 14. The infusion process lasts for more than an hour and she must stay in the house with him during that first infusion, which ends at approximately 7:15 A.M. *See id*. Ms. Amoroso also must administer two more infusions each day. *See id*. The second infusion runs from 2:00 P.M. – 3:15 P.M. *See id*. The third infusion runs from 10:00 P.M. – 11:15 P.M. *See id*.

In addition to the thrice-a-day infusions, which consume approximately five hours of Ms. Amoroso time each day, she must also drive and accompany her fiancé to three or four medical appointments each week. *See id*. ¶ 15. Every week they must visit: (1)

The infectious-disease specialists, who examine the wound, study his labs, and determine whether any changes need to be made to his antibiotics; (2) The orthopedic surgeon, who will determine whether and to what extent he can put weight on the injured foot and how the fractures are healing; (3) The wound-care specialists, who must ensure that the wound is healing properly and that Ms. Amoroso and her fiancé are cleaning it properly, as well determine what treatments it needs to continue healing; (4) The infusion center, which changes the dressing for his picc line each week. *See id*. Each of these weekly medical appointments requires a half-hour drive each way, as well as the appointment itself (which typically lasts for 30 minutes), plus time spent in the waiting room. *See id*. On average, each of these four weekly medical appointments takes two hours apiece of Ms. Amoroso's time. Ms. Amoroso must also help her fiancé when he takes a shower because he can't put weight on his injured foot. *See id*. ¶ 16.

In addition to caring for her severely injured fiancé, Ms. Amoroso has two small children that she cares for and for which she has approximately 90% custody. *See id*. ¶ 17. Ms. Amoroso is also getting married to her fiancé on August 1, 2026. *See id*. ¶ 18. She is in the midst of preparing for her wedding and has family coming into town this week for it. *See id*. Ms. Amoroso also holds a part-time job in addition to her current family responsibilities. *See id*. ¶ 19.

Forcing Ms. Amoroso to sit for a deposition under these circumstances imposes extreme burdens. *See id*. ¶ 20. She would have to find and train another person to administer infusions to her fiancé and transport and accompany him to his medical appointments. *See id*. ¶ 20. She would also need to find someone to care for her children, as her fiancé is currently disabled while he recovers from her injury and her ex-husband works full time. *See id*. ¶ 21.

II.   **The Burdens That The Subpoena Imposed On Ms. Amoroso Cannot Be Justified Given Her Lack Of Knowledge Or Involvement In The Case**

The burdens of the subpoena cannot be justified given Ms. Amoroso's peripheral involvement in Ms. Davis's life and her lack of relevant knowledge about the alleged murder. Although Ms. Amoroso is Ms. Davis's half-sister by blood, they did not grow up together and never even met until each of them became adults. *See* Amoroso Decl. ¶ 4. Ms. Amoroso lives in Georgia and has not seen Ms. Davis in over three years. *See id.* ¶ 5. She has no knowledge relevant to whether Ms. Davis's pregnancy loss was the result of poisoning by Mr. Cooprider. *See id.* ¶ 6.

Mr. Cooprider's attorneys wish to question Ms. Amoroso about conversations or communications that she might have had with Ms. Davis on April 3, 2025, or April 4, 2025, when Ms. Davis attended a carnival shortly before the alleged murder of her unborn child. *See* Exhibit 3. But Ms. Amoroso has no recollection of any conversations or communications that she might have had with Ms. Davis on April 3, 2025, or April 4, 2025. *See id.* ¶ 7. And she has little recollection of any other conversations or communications that she might have had with Ms. Davis about the pregnancy with Mr. Cooprider. *See id.* ¶ 8. A deposition of Ms. Amoroso would be a bootless exercise, and it would not yield any testimony relevant to Ms. Davis's claims or Mr. Cooprider's defenses.

The demand that Ms. Amoroso produce "text messages" and "email messages" between herself and Ms. Davis also imposes an undue burden because Mr. Cooprider's attorneys can obtain all of the requested text messages and e-mails from Ms. Davis's devices, which she has already turned over to Array LLC for forensics imaging.

Ms. Amoroso has no text messages that she has sent to received from Liana Davis because she deletes the text messages on her iPhone once a week (with the exceptions of her text messages with her fiancé). *See id.* ¶ 9. She also has no e-mails that she has sent to or received from Liana Davis within her possession, custody, or control. *See*

*id.* ¶ 10. Ms. Amoroso has only two voicemails from Ms. Davis that postdate January 1, 2025. *See id.* ¶ 11. The first of these e-mails was sent on February 2, 2026, and the full text of that voicemail reads as follows:

> Hey, it's me. Um, I'm on my way to work and I'll be teaching and then I do have that court hearing today. It was not canceled, so it's totally frivolous, and I have no idea what they could be possibly asking for at this point, but it will be the 1st time I've ever taken the stand at court, and only the 2nd hearing I've ever attended period, so feel free to uh call back in the next 10 minutes, otherwise I'm gonna be totally busy until it's over. I'm sorry um, but yeah, I'm scared. I've no clue how today's gonna wind up. Okay, bye.

Amoroso Decl. ¶ 11; *see also* Exhibit 2. The second of these e-mails was sent on March 16, 2026, and the full text of that voicemail says:

> Hey, it's me. I'm on my way home right now and I have big news. Um, I'm like in shock right now. It's actually good news but uh yeah. Not the voicemail variety. I definitely want to tell you so call me back when you can. Okay bye.

Amoroso Decl. ¶ 12; *see also* Exhibit 2. The "big news" that Ms. Davis refers to in this voicemail is that she had recently learned that she was pregnant with twins. *See* Amoroso Decl. ¶ 12.

There is no need to depose Ms. Amoroso, and Mr. Cooprider's lawyers are harassing Ms. Davis by dragging her family members into a case in which they have no involvement. The Court should quash the subpoena.

## CONCLUSION

Ms. Amoroso's motion to quash the subpoena should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: July 26, 2026

*Counsel for Movant Amy Amoroso*

## CERTIFICATE OF SERVICE

I certify that on July 26, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Movant Amy Amoroso*