IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LIANA DAVIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:25-CV-220 |
| | § | |
| CHRISTOPHER COOPRIDER, AID | § | |
| ACCESS GMBH & REBECCA GOMPERTS, | § | |
| | § | |
| *Defendants*. | § | |

# DEFENDANT CHRISTOPHER COOPRIDER'S RESPONSE TO NON-PARTY MARY ANNA ZIARKO'S MOTION TO QUASH SUBPOENA

Defendant Christopher Cooprider files this Response to Non-Party Mary Anna Ziarko's Motion to Quash Subpoena [Dkt. 109], and in support thereof, will respectfully show the following:

## I. SUMMARY

Contrary to the Motion to Quash, Ms. Ziarko is an important fact witness to this case with unique, relevant knowledge that Mr. Cooprider should be able to discover through the normal deposition process. According to Plaintiff's own complaint and testimony, Ms. Ziarko, Plaintiff Liana Davis's mother, was one of the first people contacted by Ms. Davis via texts and phone calls following the alleged events of April 5-6, 2025, Ms. Ziarko was the first person other than Ms. Davis or Mr. Cooprider to physically enter Ms. Davis's residence the early morning of April 6 and one of the first to see Ms. Davis and observe her physical condition prior to Ms. Davis's trip to the emergency room. Beyond these critical first-hand eye-witness accounts, Ms. Ziarko clearly has further general knowledge of Ms. Davis's activities and condition in the months preceding and following April 5-6, 2025. Finally, Ms. Davis's ex-husband Devin Davis has provided testimony

and supporting video evidence that clearly demonstrate Ms. Ziarko is physically capable and trusted by both Liana and Devin Davis to care for their young children by herself even to this day. Any purported health or financial concerns may be adequately addressed through allowed witness fees and reasonable accommodations.

## II. <u>ARGUMENTS AND AUTHORITIES</u>

The motion to quash is, understandably as will be seen, bereft of on any legal authorities beyond a fleeting reference to Federal Rule of Civil Procedure 45(d)(3)(A)(iv), arguing that Cooprider's deposition subpoena to Ms. Ziarko subjects her to an "undue burden." Notably, under key Fifth Circuit precedent, the moving party has the burden of proof to "demonstrate that compliance with the subpoena would be unreasonable and oppressive," and whether a burden is undue "must be determined according to the facts of the case, such as the party's need for the [information] and the nature and importance of the litigation." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Additionally, complete quashing of a subpoena is disfavored, and "modification of a subpoena is preferable to quashing it outright." *See id.* With respect to Ms. Ziarko's health and financial objections, these concerns at most go to the conditions of the requested deposition such as location, format, duration, and travel costs, but not to whether it should occur at all. Complete preclusion of a deposition is an "extraordinary" remedy reserved for a specific documented showing that testifying would endanger the witness's health. *See Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 136-37 (S.D. Tex. 2012). Here, Ms. Ziarko has not provided the requisite showing and certainly has not met her heavy burden to demonstrate that compliance with the subpoena would be unreasonable and oppressive compared to the relevance of Ms. Ziarko's anticipated testimony to this case.

**A. The motion's claim that Ziarko has no relevant knowledge is, frankly, absurd.**

One of the primary arguments that Ms. Ziarko's motion[1] makes is that she purportedly has no knowledge of Ms. Davis's pregnancy with Mr. Cooprider or the "alleged murder" and thus her deposition "would not reveal any information relevant to any party's claim or defense." [Dkt. 109 at 2]. This assertion is wholly belied even within the motion itself, which admits for example: (1) Ms. Davis texted and called Ms. Ziarko shortly after midnight the morning of April 6, 2025, (2) Ms. Davis arranged and paid for Ms. Ziarko to take an Uber to Ms. Davis's house to stay and watch the children while Ms. Davis went to the emergency room, and (3) Ms. Ziarko was therefore the first person other than Ms. Davis or Mr. Cooprider to see Ms. Davis's residence after the alleged events of the evening of April 5-6, 2025 and one of the first to see Ms. Davis. This means that Ms. Ziarko is a potentially critical eye-witness to numerous important items related to the residence and Ms. Davis during the key relevant time period, including hot chocolate mugs, medication, medication packaging, Ms. Davis's physical condition, blood stains, or bloody towels/cloths, etc.—all of which have been given import in Ms. Davis's allegations and testimony in this case.

There are many salient, open questions that Ms. Ziarko would be able to shed light upon. Just a few for example could include: (1) what did Ms. Davis say to Ziarko during their calls/texts; (2) what explanation for going to the emergency room did she provide, if any; (3) what was Ms. Davis's apparent physical condition when Ms. Ziarko first arrived; (4) does Ms. Ziarko remember seeing any hot chocolate, mugs, medications, medication packaging, bloody towels, or other potentially relevant evidence in the Davis residence described by Ms. Davis at various times;

[1] The motion is titled and presented as brought on behalf of Ms. Ziarko herself, but it confusingly includes several arguments attesting to information purportedly concealed by Ms. Davis from Ms. Ziarko—so it is unclear whether the motion or portions of it are instead being brought on behalf of Ms. Davis.

(5) how/when did the idea of taking an Uber instead of being picked up by Mr. Cooprider first arise; (6) did Ms. Davis really send Ms. Ziarko money in advance to pay for an Uber ride and how much through what service[2]; (7) if Ms. Ziarko ordered the Uber, when did Ms. Davis ask Ms. Ziarko for the copy of the Uber receipt she attached to her Complaint and what reason did she give for needing it.

Ms. Davis claims that she has intentionally hid her pregnancy with Mr. Cooprider, the loss of the pregnancy, and the fact and allegations of this lawsuit from her mother, and that therefore her mother must not know of any of these things. But Mr. Cooprider does not have to take Ms. Davis's word for that and is entitled to test even those assertions through Ms. Ziarko's own sworn testimony. Regardless, even if Ms. Ziarko does not have knowledge about those particular topics, she at minimum inarguably possesses relevant knowledge regarding the night/morning of April 5-6 and important issues such as, but not limited to, those enumerated above.

**B. Ms. Ziarko's alleged health and financial concerns are insufficient, seemingly overstated, and could easily be alleviated with reasonable accommodations.**

The Motion to Quash claims that Ms. Ziarko is a frail, elderly woman in exceedingly poor health who is disabled, with a variety of medical conditions and ailments and a history of strokes, whom Plaintiff Liana Davis allegedly fears could die from the strain of a deposition. However, Ms. Davis and her ex-husband Devin Davis have repeatedly trusted Ms. Ziarko to care for their three children ages 5-9 alone without help, as recently as June and July 2026. *See* Exhibit 1, Declaration of Devin Davis at 1-2. Indeed, video evidence from Mr. Davis clearly shows Ms. Ziarko caring for one of Ms. Davis's new then 12-day old infants without issue. *See id.* Mr. Devin Davis's sworn testimony

[2] Plaintiff's Original Complaint asserts that Ms. Davis sent Ms. Ziarko $50 through PayPal to pay for an Uber ride. [Dkt. 1 at ¶ 59.] The Complaint attaches as an Exhibit a redacted receipt for an Uber ride costing $13.45, but it is unclear who ordered it. *Id.* Ms. Ziarko's motion asserts that Ms. Davis sent her $25 through Venmo to pay for an Uber ride. [Dkt. 109 at 6.]

is that he has known Ms. Ziarko for 15 years, she is not the invalid asserted in the motion to quash, and if he believed that she was physically unable, unhealthy, and/or on the verge of having strokes as asserted in the supporting declarations he would not routinely agree to entrust his three children to her care.

Beyond the testimony and supporting documentary and video evidence provided by Mr. Devin Davis, Ms. Ziarko's motion and arguments simply do not meet the high standard required to quash a deposition based on health concerns. The Southern District of Texas case of *Campos v. Webb Cnty. Tex.* reviews numerous examples where potential deponents with purportedly substantial mental/physical health concerns, even supported by affidavits from physicians and medical professionals were still required to sit for depositions, noting that a party seeking to prevent or delay a deposition on medical grounds must make a "specific and documented factual showing that the deposition will be dangerous to the deponent's health." 288 F.R.D. 134, 136-37 (S.D. Tex. 2012). Here, Ms. Ziarko and Ms. Davis's own conclusory, speculative, and self-serving statements are simply insufficient—particularly in light of the countervailing evidence provided by Mr. Devin Davis.

Finally, Mr. Cooprider is of course willing to provide reasonable accommodations for the deposition, which could include the deposition being taken at a convenient location or remotely, breaks as needed, tendering applicable witness/mileage fees, etc. Given the availability of these workable alternatives, the motion's requested relief of entirely preventing/quashing the deposition altogether is demonstrably unwarranted.

**C. The document request for texts, emails, and voice messages is justified.**

The motion to quash argues that the deposition subpoena's accompanying document request for texts, emails, and voice messages between Liana Davis and Mary Anna Ziarko regarding

specifically relevant topics to this lawsuit is unduly burdensome because the same information is available from Ms. Davis's devices that have already been produced to the appointed electronic forensics vendor. This is clearly not necessarily accurate. Ms. Davis testified at her deposition that she did not know if she still had the texts with Ms. Ziarko from April 5-6, 2025 because they did not seem to be responsive, and when asked if she deleted them she responded "not necessarily." *See* L. Davis Depo. Trans. [Dkt. 86] at 62:8-65:11.

In any event, Mr. Cooprider is not required to rely solely on Ms. Davis's own production of such potentially relevant communications, and Ms. Ziarko's motion contains no reasoning or basis to protest the document request outside of Ms. Davis's own claims that (1) the texts/emails can be obtained from Ms. Davis's own devices and (2) she has never left any voice messages about any of the requested relevant topics. This is not a sufficient basis to object to the perfectly valid document request accompanying the deposition subpoena.

## III. PRAYER

WHEREFORE, Defendant Christopher Cooprider respectfully requests this Court deny Non-Party Mary Anna Ziarko's Motion to Quash Subpoena [Dkt. 109] and permit Cooprider to re-notice the requested deposition and serve a revised subpoena on Ms. Ziarko's apparent counsel, Mr. Jonathan Mitchell. Defendant also requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Craig Dupen*

BETH KLEIN, P.C.
Beth Klein
Colorado Bar No. 17477
S.D. Tex. Bar No. 3934133
350 Market Street, Suite 310
Basalt, Colorado 81621

Email beth@bethklein.com
Phone 303-448-8884

- **AND –**

WATTS LAW FIRM, LLP
Mikal C. Watts
Texas State Bar No. 20981820
Federal Bar ID: #12419
Mikal@wattsllp.com
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501

- **AND –**

THOMPSON, COE, COUSINS & IRONS, L.L.P.
Barry A. Moscowitz
Federal Bar No. 31054
State Bar No. 24004830
bmoscowitz@thompsoncoe.com
Craig Dupen
Federal Bar No. 1144807
State Bar No. 24065177
cdupen@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: (214) 871-8200
Fax: (214) 871-8209

Victoria L. Jimenez
Federal Bar No. 2522937
State Bar No. 24060021
vjimenez@thompsoncoe.com
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Fax: (713) 403-8299

**ATTORNEYS FOR DEFENDANT CHRISTOPHER COOPRIDER**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

By: /s/ *Craig Dupen*
Craig Dupen