IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LIANA DAVIS,<br><br>*Plaintiff*,<br><br>V.<br><br>CHRISTOPHER COOPRIDER, AID ACCESS GMBH & REBECCA GOMPERTS,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:25-CV-220 |

**DEFENDANT CHRISTOPHER COOPRIDER'S RESPONSE TO NON-PARTY AMY AMOROSO'S MOTION TO QUASH SUBPOENA**

Defendant Christopher Cooprider files this Response to Non-Party Amy Amoroso's Motion to Quash Subpoena [Dkt. 110], and in support thereof, will respectfully show the following:

## I. SUMMARY

Mr. Cooprider and his counsel are sympathetic to Ms. Amoroso's scheduling concerns related to her fiancé's injury and medical care, her child-care responsibilities, recent wedding, and part-time job; and, of course, are willing to help mitigate those concerns through reasonable accommodations as to the timing, location, and format of her subpoenaed deposition. However, despite the protestations otherwise by Ms. Amoroso and Ms. Davis contained in the motion to quash, Mr. Cooprider has good reason to believe that Ms. Amoroso may indeed possess relevant information discoverable and important to this case. In the days just prior to the events of April 5-6, 2025 in which Ms. Davis alleges that Mr. Cooprider intentionally poisoned her to cause a miscarriage, Ms. Davis texted Mr. Cooprider saying that she was cramping, scared of miscarrying in public, was concerned about being on her feet in the heat for 4 hours at a carnival, and crucially

that her "sister thinks I need to take the kids and go to the ER" and that her sister said her kids would "much prefer a baby bro/sis over a carnival. Priorities." These messages alone suggest that Ms. Davis's sister, Ms. Amoroso, had some level of knowledge of Ms. Davis's pregnancy in April 2025, as well as concerns that she may have been miscarrying—prior to the events of April 5-6, 2025. Mr. Cooprider is entitled to explore Ms. Amoroso's memory and any available records related to Ms. Amoroso's salient conversations, text messages, etc. with her sister Ms. Davis regarding these topics. Further, to the extent Ms. Amoroso claims that she has consciously deleted previous text messages with Ms. Davis—Mr. Cooprider is entitled to explore when and why such messages may have been deleted. Finally, and notably, Ms. Amoroso was initially willing and cooperative to provide her deposition testimony when communicating with Mr. Cooprider's attorneys in response to the subpoena, prior to the instant motion being filed on her behalf by Ms. Davis's attorney—belying the current claims of extreme/undue burden.

## II. ARGUMENTS AND AUTHORITIES

The motion to quash is, understandably as will be seen, bereft of on any legal authorities beyond a fleeting reference to Federal Rule of Civil Procedure 45(d)(3)(A)(iv), arguing that Cooprider's deposition subpoena to Ms. Amoroso subjects her to an "undue burden." Notably, under key Fifth Circuit precedent, the moving party has the burden of proof to "demonstrate that compliance with the subpoena would be unreasonable and oppressive," and whether a burden is undue "must be determined according to the facts of the case, such as the party's need for the [information] and the nature and importance of the litigation." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Additionally, complete quashing of a subpoena is disfavored, and "modification of a subpoena is preferable to quashing it outright." *See id.* With respect to Ms. Amoroso's asserted busy schedule due to her fiancé's medical needs, recent

wedding, and child-care responsibilities, these concerns at most go to the conditions of the requested deposition such as location, format, and duration, but not to whether it should occur at all. Ms. Amoroso has simply not met the burden to demonstrate that compliance with the subpoena would be unreasonable and oppressive compared to the potential relevance of Ms. Amoroso's anticipated testimony to this case.

**A. Despite the motion's conclusory proclamations of lack of knowledge, available evidence indicates Ms. Amoroso very well may possess relevant information—even if unbeknownst to her.**

One of the primary arguments that Ms. Amoroso's motion makes is the conclusory statement that she has no "knowledge relevant to whether Mr. Cooprider poisoned Ms. Davis with misoprostol and murdered her unborn child." [Dkt. 110 at 2.] Respectfully, it is neither the witness's nor Plaintiff Liana Davis's purview to determine unilaterally whether Ms. Amoroso's potential testimony is relevant or not. One key question in this case is of course whether Ms. Davis's pregnancy was lost, as she alleges, the night of April 5-6, 2025 through intentional actions of Mr. Cooprider or whether, instead, Ms. Davis suffered a natural miscarriage prior to or on that night. Mr. Cooprider is aware and has produced in this case copies of text messages from Ms. Davis from April 4, 2025 wherein Ms. Davis says she was cramping, scared of miscarrying in public, and concerned about being on her feet in the heat for 4 hours at a carnival with her three children. *See* Exhibit 2, Excerpts of Texts between Davis and Cooprider. Ms. Davis then texted Mr. Cooprider that her "sister thinks I need to take the kids and go to the ER" and that her sister said her kids would "much prefer a baby bro/sis over a carnival. Priorities." These messages alone suggest that Ms. Amoroso had some level of knowledge of Ms. Davis's pregnancy in April 2025, as well as concerns that she may have been miscarrying—prior to the events of April 5-6, 2025.

Ms. Amoroso's motion and supporting declaration further assert that she no longer has any text messages with Ms. Davis from the April 2025 time period because she apparently deletes all text messages once a week. If so, Mr. Cooprider should be allowed to inquire as to the reason for these deletions, when they began, whether any potential backup copies could be accessible through cloud-based systems, etc. if for no other reason than to explore potential spoliation of evidence claims.

**B. Ms. Amoroso's alleged scheduling concerns are insufficient and could easily be alleviated with reasonable accommodations.**

The Motion to Quash claims that Ms. Amoroso is effectively simply too busy to appear for a deposition in this case. However, in her initial responsive communications to Mr. Cooprider's counsel after receipt of the subpoena, Ms. Amoroso indicated that she would like to do the deposition remotely if possible and that sooner rather than later was better for her schedule given the then-upcoming wedding, but that she was "happy to give testimony to the best of my memories." *See generally* Exhibits 3, 4, Emails Between Beth Klein and Amy Amoroso. As already indicated, Mr. Cooprider's counsel are willing to cooperate with the witness on reasonable accommodations for scheduling, location, and format for this deposition—which is not anticipated to take long. Additionally, many of Ms. Amoroso's cited scheduling concerns, such as her wedding of August 1, are presumably no longer at issue. In any event, however, given the clear potential relevance of Ms. Amoroso's knowledge and testimony, the logistical and scheduling concerns raised in her motion simply do not meet the high standard required to completely prevent/quash the subpoenaed deposition.

**C. The document request for texts, emails, and voice messages is justified.**

The motion to quash argues that the deposition subpoena's accompanying document request for texts, emails, and voice messages between Liana Davis and Amy Amoroso regarding specifically relevant topics to this lawsuit is unduly burdensome because the same information is available from

Ms. Davis's devices that have already been produced to the appointed electronic forensics vendor. This is not necessarily accurate, and in any event, Mr. Cooprider is not required to rely solely on Ms. Davis's own production of such potentially relevant communications. This is not a sufficient basis to object to the perfectly valid document request accompanying the deposition subpoena.

## III. PRAYER

WHEREFORE, Defendant Christopher Cooprider respectfully requests this Court deny Non-Party Amy Amoroso's Motion to Quash Subpoena [Dkt. 110] and permit Cooprider to re-notice the requested deposition and serve a revised subpoena on Ms. Amoroso's apparent counsel, Mr. Jonathan Mitchell. Defendant also requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Craig Dupen*

BETH KLEIN, P.C.
Beth Klein
Colorado Bar No. 17477
S.D. Tex. Bar No. 3934133
350 Market Street, Suite 310
Basalt, Colorado 81621
Email beth@bethklein.com
Phone 303-448-8884

**- AND –**

WATTS LAW FIRM, LLP
Mikal C. Watts
Texas State Bar No. 20981820
Federal Bar ID: #12419
Mikal@wattsllp.com
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501

**- AND –**

THOMPSON, COE, COUSINS & IRONS, L.L.P.
Barry A. Moscowitz
Federal Bar No. 31054
State Bar No. 24004830
bmoscowitz@thompsoncoe.com
Craig Dupen
Federal Bar No. 1144807
State Bar No. 24065177
cdupen@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: (214) 871-8200
Fax: (214) 871-8209

Victoria L. Jimenez
Federal Bar No. 2522937
State Bar No. 24060021
vjimenez@thompsoncoe.com
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Fax: (713) 403-8299

**ATTORNEYS FOR DEFENDANT CHRISTOPHER COOPRIDER**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

By: /s/ *Craig Dupen*
Craig Dupen