UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br>Plaintiff,<br>v.<br>**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,<br>Defendants. | Case No. 2:25-cv-220 |

## PLAINTIFF'S MOTION FOR PRE-MOTION CONFERENCE

Plaintiff Liana Davis respectfully moves for a pre-motion conference, at which she will ask the Court for permission to file a motion to compel discovery on each of the following three issues.

First. Mr. Cooprider has made numerous and extensive subject-matter waivers of the attorney-client privilege by disclosing his communications with his attorneys to Ilse Fragoso and Jackie Samuelson. *See* pp. 2–5, *infra*. Ms. Davis therefore wishes to compel Mr. Cooprider to produce responsive documents and communications that were previously withheld on the grounds of attorney-client privilege and attorney work-product privilege. She also wants to compel Mr. Cooprider's attorneys to produce a privilege log for any documents and communications that they continue to withhold despite Mr. Cooprider's waivers of privilege.

Second. Mr. Cooprider has failed to produce many of the attachments in his WhatsApp chat with Jackie Samuelson. *See* pp. 7–8, *infra*. Ms. Davis wishes to compel production of those attachments.

Third. Mr. Cooprider's WhatsApp chat with Ilse Fragoso was heavily redacted. *See* Exhibit 3. Ms. Davis wishes to compel Mr. Cooprider to turn over the unredacted

WhatsApp chat for in camera inspection to ensure that no responsive communications were redacted.

## I. Mr. Cooprider Cannot Maintain His Previous Categorical Assertions Of Attorney-Client Privilege In Light Of His Extensive Subject-Matter Waivers

Mr. Cooprider asserted attorney-client privilege and work-product privilege in response to many of our previous requests for production. Those assertions of privilege appear in nearly all of their responses to RFP Nos. 1–40, and we have attached their previous responses and objections to this e-mail as Exhibits 1 and 2.

But we have discovered that Mr. Cooprider has made numerous subject-matter waivers of the attorney-client privilege by disclosing his communications with his lawyers to third parties. Mr. Cooprider waived the attorney-client privilege through each of the following acts:

1. On September 23, 2025, Mr. Cooprider sent the following message to Ilse Fragoso over WhatsApp: "My lawyers say that everyone knows i didn't do what the crazy lady said. And we will win that. But there are other problems that will be difficult to defend." CR004892 (attached as Exhibit 3).

2. On September 23, 2025, Mr. Cooprider sent the following message to Ilse Fragoso over WhatsApp: "my lawyers also told me that there will be good days and bad days as we go through this." CR004892 (attached as Exhibit 3).

3. On April 9, 2025, Mr. Cooprider disclosed the following communication from one of his attorneys to Jackie Samuelson, who is not one of his lawyers: "Chris, on August 2nd, I will have been doing this for 33 years.. Pretty much all your life. You hired us to work for you. Please let us do that. I'll call you when i need something. i know this is tough. the not knowing. Just remember you can't control what she has said, or what she is saying now. This is the hard part. sit still. find something else to occupy your mind" CR001799b (attached as Exhibit 4).

4. On April 15, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "So my lawyer met with the investigator today and said it went pretty good but he asked me to send him basically like my whole text conversation with Liana for like Saturday and the days leading up to it." CR001818b; *see also* Mitchell Decl. ¶ 7 (attached as Exhibit 16).

5. On April 25, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "My attorney was saying that he talked to the investigator and basically all they're waiting on to wrap up the investigation right now is the toxicology report. . . . But I asked him, like, I don't there's going to be anything on the report that helps her. If anything, the toxicology report is only going to be bad for Liana because it's going to show that she had alcohol in her system . . ." CR001826a; *see also* Mitchell Decl. ¶ 8 (attached as Exhibit 16).

6. On May 15 or 16, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "I thought about doing that, and I even asked my lawyer, like, hey, like, I'm thinking about doing this, like, do I have your permission to do this? Or could you ask for me? And he was basically saying, like, uh, it doesn't really like, like don't bother doing that. If anything, you, like, trying to pressure or, like, ask about those things, just kinda it doesn't look good on me. Which, I'm like, all right, I guess I can kinda see that. What I'm doing instead if, um, I have a friend who, I guess, runs a law firm here. Um, and so, I'm reaching out to him and ask him if he knows any of the prosecutors at the DAs office, which I'm sure he does, and I'm going to ask if he can do me a favor and ask one of those prosecutors to look at my case." CR001848b; *see also* Mitchell Decl. ¶ 9 (attached as Exhibit 16).

7. On May 28, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "It was fine. I mean, uh, my lawyer's basically, like, uh yeah this crazy lady won't just leave you alone, will she? It's like, yeah, she's really just is obsessed. Um, but he was saying that he, uh, looked the guy up, the

lawyer, and was saying from what he's heard is that the guy's obviously very passionate about this subject, and was a part of that very strict abortion bill in Texas, which is one of the most strict in the country, um, and basically he was saying that he thinks the target of the suit is the company, not me. Um, but he was talking with some of his colleagues, and he was saying that he doesn't really see an angle where I'm liable or did anything illegal, or the company, because they are FDA-regulated and cleared through the FDA, so it's not like they sent illegal drugs through the mail or anything. So, yeah, he's kinda struggling to wrap his mind around why this person even took the case. Um, but I reminded him how Liana has a history of lying on legal documents and to legal officials. And he agreed with me, saying that probably she lied to the lawyers or just told her own very biased side of things, and so that's why they think that they could possibly win. He just doesn't know enough info regarding things. And also, um, they're trying, they would like to keep it, uh, I guess, on the state level instead of than the federal level, because I guess that makes it, for some legal reason, it makes it easier for this lawyer to go after the company as long as there is a local defendant, me, in the case. But, I don't know how all this works. I think he's saying that, like, that if it gets dropped or if there's no case to be had against me, then that makes it significantly more difficult for them to go after the company. Sorry that's a lot of information but that's what he told me." CR001866a; *see also* Mitchell Decl. ¶ 10 (attached as Exhibit 16).

8. On May 28 or 29, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "My lawyer, I mean, he said it's impossible to know what the, Liana's new lawyer is gonna do. But he's, he's a little bit concerned that, um, this guy's just going to pursue things civilly, uh, regardless of trying to win the case because he's going to basically use me as a vehicle to go after the companies." CR001867a; *see also* Mitchell Decl. ¶ 11 (attached as Exhibit 16).

9. On or about May 28 or 29, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "But, he said there's also a chance that he sees the evidence, or how the charges get dropped criminally, and there's a lack of evidence, so he could see that they drop the case civilly also." CR001867b; *see also* Mitchell Decl. ¶ 12 (attached as Exhibit 16).

10. On April 30, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "Hey my lawyer was saying that sex with a married person is still against the ucmj." CR001829.

11. On May 8, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "my lawyer has said multiple times that it's very clear she was mentally unstable." CR001838.

12. On May 28, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "My lawyer also said, that somehow if abortion pills do come up in the drug test, there is noo way to prove i gave them to her." CR001866.

13. On August 12, 2025, Cooprider sent the following messages to Jackie Samuelson through WhatsApp: "I'll hear more from my new lawyer tomorrow . . . . She has some bigg plans." CR001890.

14. On August 16, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "This lawyer hasn't officially agreed to represent me yet. But we do have a signed attorney-client privilege letter. I'm sending this lawyer alllll of the info from my side of the story." CR001894.

15. On August 26, 2025, Cooprider sent a message to Jackie Samuelson through WhatsApp informing her that his lawyer was "suggesting" that he look for on-base housing. CR001899.

Mr. Cooprider's lawyers are aware of these waivers of the attorney-client privilege, as Ms. Davis served discovery requests last week for documents and communications

related to the subject matter of each of the waivers. *See* Mitchell Decl. ¶ 13 (attached as Exhibit 16).

On August 29, 2026, Mr. Mitchell e-mailed Mr. Cooprider's lawyers to inform them that their previous assertions of attorney-client privilege and work-product privilege can no longer be sustained in light of Mr. Cooprider's waivers, and asked them to begin producing attorney-client communications and attorney work product that falls within the scope of the waivers. *See* Exhibit 6. Mr. Mitchell also asked Mr. Cooprider's lawyers to produce a privilege log to record any attorney-client communications and attorney work product that they are continuing to withhold on the ground of privilege. *See id*. Mr. Mitchell also invited Mr. Cooprider's lawyers to meet and confer if they disagreed with his assertions of waiver, or they were unwilling to produce the requested documents or communications or produce the requested privilege log. *See id*.

Ms. Klein e-mailed back and said: "We will consider your demands, analyze them and respon[d] in 14 days. Your artificial deadline is rejected." Exhibit 7. Mr. Mitchell responded to Ms. Klein's e-mail and explained that he cannot wait for 14 days for them to respond to the meet-and-confer request. *See* Exhibits 8 and 9. The discovery deadline is set for October 15, 2026, and Mr. Cooprider's deposition is set for October 5. Ms. Davis cannot wait 14 days for Mr. Cooprider's lawyers to respond to the meet-and-confer invitation, as the discovery deadline is fast approaching and the Court needs sufficient time to order briefing and rule on a motion to compel if a motion needs to be filed.

Ms. Klein has not responded further to Mr. Mitchell's e-mails, nor has she proposed an extension of the discovery deadline to accommodate our efforts to take discovery in response to Mr. Cooprider's waivers of the attorney-client privilege. *See* Mitchell Decl. ¶ 15 (attached as Exhibit 16).

Ms. Davis's counsel have done all that they reasonably can to meet and confer with Mr. Cooprider's legal team about these matters, and we respectfully ask the Court to set a discovery hearing and allow us to file a motion to compel production of all previously withheld documents and communications that fall within the scope of Mr. Cooprider's subject-matter waivers of the attorney-client privilege. Ms. Davis will also ask the Court instruct Mr. Cooprider's attorneys to produce a privilege log for all responsive documents and communications that they are continuing to withhold in the teeth of these waivers.

If possible, Ms. Davis asks that the Court consider these issues at the hearing scheduled for September 10, 2026.

## II. Mr. Cooprider's Lawyers Have Failed To Produce All Of The Missing Attachments In Mr. Cooprider's WhatsApp Chat With Jackie Samuelson

There are still many missing attachments from the <media omitted> in Cooprider's WhatsApp chat with Jackie Samuelson, which is attached to this motion as Exhibit 5. Although Mr. Cooprider's attorneys have produced a significant number of these <media omitted> attachments, everything from pages CR001868 onward is still missing. *See* Mitchell Decl. ¶ 16 (attached as Exhibit 16). It is crucial that Ms. Davis obtain these files because many of the previous attachments revealed waivers of the attorney-client privilege and other information relevant to the parties' claims and defenses. *See id.* at ¶ 17.

Mr. Mitchell e-mailed Mr. Cooprider's lawyers about this on August 26, 2026, but did not receive a response. *See* Exhibit 11; Mitchell Decl. ¶ 18 (attached as Exhibit 16). I e-mailed again on August 29, 2026, but Ms. Klein wrote back and said that she would not respond until 14 days had elapsed. *See* Exhibit 7 and 12; Mitchell Decl. ¶ 19 (attached as Exhibit 16). But Ms. Davis cannot wait 14 days for Ms. Klein to meet and confer when discovery closes on October 15, 2026 and Mr. Cooprider's

deposition is scheduled for October 5, 2026. Mitchell Decl. ¶ 20 (attached as Exhibit 16).

## III. The Court Should Order Mr. Cooprider's Lawyers To Turn Over Their Client's Unredacted Communications With Ilse Fragoso For In-Camera Inspection

On April 16, 2026, Ms. Davis served a discovery request for Mr. Cooprider's communications with Ilse Fragoso that "mention, describe, or pertain or relate to Liana Davis, this lawsuit, the topic of abortion or abortion-inducing drugs, any pregnancy or pregnancies that Liana Davis had between November of 2024 through May of 2025, and/or any termination of a pregnancy that Liana Davis had between November of 2024 through May of 2025." Exhibit 13 (RFP No. 41).

These documents had previously been requested on September 17, 2025, when Ms. Davis served a discovery request for "Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to Liana Davis, any pregnancy or pregnancies that she had between November of 2024 through May of 2025, and/or any termination of a pregnancy that Liana Davis had or allegedly had between November of 2024 through May of 2025." Exhibit 14 (RFP No. 18). But Cooprider never produced his responsive communications with Ms. Fragoso in response to RFP No. 18, and he did not produce any of his communications with Ms. Fragoso until after Ms. Davis served RFP No. 41 on April 16, 2026.

In response to RFP No. 41, Cooprider produced a trove of heavily redacted e-mails. *See* Exhibit 3. Ms. Davis reasonably believes that responsive text messages are being withheld or concealed in the redactions.

1. On CR004509, Cooprider is apologizing to Fragoso on April 7, 2025, less than 48 hours after the alleged murder of Ms. Davis's unborn child. He says: "I am

soo sorry this happened." "I feel like the worst bf to ever exist." "I'm the worst person." and "I never ever wanted to do something like this to you baby." It appears that he is apologizing for cheating on Fragoso with Ms. Davis, but Cooprider redacted the preceding text messages where he explained what he apologizing for.

2. On CR004511, Cooprider says to Fragoso on April 7, 2025, "Baby i told you about this lady a long time ago." Cooprider has failed to produce the communications from "a long time ago" where he told Fragoso about Ms. Davis.

3. On CR004821–004822, Fragoso says to Cooprider on August 13, 2025: "It's crazy to think that another woman was carrying your child, thinking that in the future I would be the only one to have your child inside me, I thought there was no way you could be in a situation like that, I got into this relationship thinking that you couldn't, under any circumstances, see another woman. . . I wanted to be the only one, I never wanted to imagine you in this life with anyone else and you made me feel like there was no human way anyone could take my place even for a second. . . I'm confuse because I love you, and I want to give you other chance, the last chance. . . but it hurts like hell to think that can exist those situations again." Cooprider has redacted the previous text messages and failed to produce any communications where he admits to Fragoso that he impregnated Ms. Davis.

4. On CR004823, Cooprider includes a solitary text from Cooprider that says "Hate when they say she was my gf." but he redacted everything else around it. It's hard to believe that none of the preceding or following text messages "mention, describe, or pertain or relate to Liana Davis."

5. We know that Cooprider sent a text message on August 15, 2025, that said: "Babe, there's something I need to tell you. I saw the news story, and it's all lies. This woman and I had a fling in October—before I even met you. It was a terrible mistake, and I ended things as soon as I met you. She couldn't handle it and started threatening to destroy my life. I had no idea she was pregnant, and I swear on everything I didn't

do what she's accusing me of. The miscarriage happened months ago, but she's dragging it up now to make it look like I cheated on you. She's desperate to ruin us. I'm so sorry you're caught in this mess, and I'll do whatever it takes to fix it." Cooprider produced this previous text in discovery when it was sent to Alex Simak, either by accident or as a draft for Simak to review, even though it was intended for Ilse Fragoso, and it appears at CR001003 (attached as Exhibit 15). Cooprider did not produce the version of this text message that he sent to its intended recipient, Ilse Fragoso, even though it is responsive to RFP No. 41.

Ms. Davis respectfully asks the Court to examine the unredacted text messages in camera to ensure that no responsive communications are being withheld. Ms. Davis also asks the Court to order production of the text message sent to Ms. Fragoso that appears in CR0010003 and any surrounding communications relevant to that text.

## CONCLUSION

Ms. Davis's motion for a pre-motion conference should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: September 3, 2026

*Counsel for Plaintiff Liana Davis*

## CERTIFICATE OF SERVICE

I certify that on September 3, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff Liana Davis*