UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br><br>Plaintiff,<br><br>v.<br><br>**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,<br><br>Defendants. | Case No. 2:25-cv-220 |

## PLAINTIFF LIANA DAVIS'S FIRST SET OF WRITTEN DISCOVERY TO DEFENDANT CHRISTOPHER COOPRIDER

To: Defendant Christopher Cooprider, through his attorney of record Mikal C. Watts, 811 Barton Springs #725, Austin, Texas 78704, sent by e-mail to mikal@wattsllp.com

Plaintiff Liana Davis is serving her first set of written discovery upon defendant Christopher Cooprider ("Cooprider"). This first set of written discovery includes requests for production and requests for admission.

### I. Instructions For Requests For Production

Please take notice that plaintiff Liana Davis is serving requests for production upon defendant Christopher Cooprider. Cooprider is required to respond to each request for production in compliance with Rule 34 of the federal rules of civil procedure, and must produce for inspection or copying the requested documents and tangible things that are within his possession, custody, or control. Cooprider must produce the requested documents and tangible things on or before October 17, 2025, by: (1) creating electronic reproductions of the responsive documents and tangible things and electronically producing them to Ms. Davis's counsel at the following email address (jonathan@mitchell.law), or (2) producing such responsive documents and

tangible items at the offices of Mitchell Law PLLC, located at 111 Congress Avenue, Suite 400, Austin, Texas, 78701.

Cooprider is required to supplement his responses consistent with Rule 26(e) of the federal rules of civil procedure. Cooprider must produce his responses in accordance with the following instructions:

1. Cooprider must produce for inspection and copying of all responsive documents in his possession, custody, or control, wherever located, including all documents in the possession, custody, or control of Cooprider's officers, directors, principals, partners, employees, agents, representatives, consultants, attorneys, accountants, investigators, and representatives.

2. Any non-identical copy of a document, including copies with notes, highlighting, comments, or marginalia of any nature, and drafts, must be identified and produced as a separate document.

3. If there are no documents responsive to a category in this inspection demand, please state so in writing.

4. For each document that Cooprider declines to make available for inspection and copying on the grounds of privilege or the attorney work-product rule, provide the following information:

a. State the date on which the document was created;

b. State the title of the document;

c. Briefly describe the nature and contents of the document;

d. Identify each person or entity that received a copy of the document or to whom the document or its contents were disclosed;

e. Identify the privilege or rule that Cooprider contends protects the document from disclosure; and

f. Identify each fact on which Cooprider bases his contention that the privilege or rule identified in its response applies.

5. If any material is redacted from a document, indicate that in the response to the inspection demand and state the basis for each redaction.

6. Please produce the original of each document and all its copies, if any copy is other than identical to the original, in the order called for in the categories listed below.

7. If, for any reason, any of the documents, objects, or tangible things to be produced pursuant to these inspection demands has been destroyed, lost, or otherwise disposed of, state for each category the following information:

a. A description of the document, object, or tangible thing to be produced. If the destroyed, lost, or otherwise disposed of item is a document, identify the document by date, drafter, recipient, and subject matter.

b. The date the document, object or tangible thing was lost, destroyed, or disposed of.

c. All persons who have knowledge of the loss, destruction, or disposal.

d. If the loss, destruction, or disposal related to an object or tangible thing, identify all documents that relate or refer to the loss, destruction, or disposal.

8. Produce documents in their native format where applicable.

9. If a document is responsive to a request for production and is in Cooprider's control, but not in Cooprider's possession or custody, identify all persons with possession or custody.

10. Unless otherwise stated below, the relevant time period for these requests for production is November 1, 2024, through the present.

## II. Instructions For Requests For Admission

Please take notice that plaintiff Liana Davis is serving requests for admission upon defendant Christopher Cooprider. The Texas Rules of Civil Procedure require Cooprider to serve his responses upon Ms. Davis's attorney within thirty (30) days after the service of these requests. *See* Fed. R. Civ. P. 36(a).

If you deny any request for admission, your denial must fairly respond to the substance of the matter. Any qualified denial must must specify the part admitted and qualify or deny the rest. You may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. In answering these requests for admission, please ensure that your responses comply with Rule 36 of the federal rules of civil procedure.

If any request for admission is withheld by reasons of a claim of privilege, or because it relates to any document being withheld by reason of a claim of privilege, please furnish a privilege log within seven (7) days of service of these requests identifying each such document for which privilege is claimed, together with the following information with respect to each document or admission: (a) author; (b) recipient; (c) sender; (d) indicated or blind copies; (e) date; (f) general subject matter; (g) basis on which the privilege is claimed; and (h) the request for production to which such document relates.

Cooprider is required to supplement his responses consistent with Rule 26(e) of the federal rules of civil procedure.

## III. Definitions For Written Discovery

The following definitions apply to each of these discovery requests:

- The terms "**Cooprider**," "**you**," and "**your**" refer to defendant Christopher Cooprider, and any agent or person acting or purporting to act for or on his behalf, whether authorized to do so or not.

- The term "**abortion**" includes any act of act of using, prescribing, administering, procuring, or selling any instrument, medicine, drug, or any other substance, device, or means with the purpose to terminate the pregnancy of a woman, with knowledge that the termination by any of those means will with reasonable likelihood cause the death of a living human being in the womb.

- The terms "**abortion-inducing drug**" and "**abortion-inducing drugs**" include mifepristone, misoprostol, and any drug or medication that is used to terminate the life of an unborn child.

- The terms "**communication**" and "**communicate**" refer to any method used to transmit or exchange information, concepts, or ideas (whether verbal or nonverbal) including oral, written, typed, or electronic transmittal of any type of information or data, by the use of words, silence, numbers, symbols, images, or depictions, from one person or entity to another person or entity.

- The term "**document**" refers to the act of noting, recording, or preserving any type of information, data, or communication, without regard to the method used to note, record, or preserve such information, data, or communication. The term includes any e-mail or text message.

- The term "**drug-induced abortion**" includes any abortion performed with mifepristone, misoprostol, or any other drug or medication that is intended to terminate the life of an unborn child.

- The term "**entity**" means any legal entity inquired about (other than a natural person) including a partnership, professional association, joint venture, corporation, governmental agency, or other form of legal entity.

- The term "**human being**" includes any individual member of the species homo sapiens at any stage of development beginning at fertilization.

- The terms "**identify**" and "**identity**," when used in connection with a natural person, require disclosure of that person's full name, present or last known address, present or last known telephone number, and present or last known e-mail address. When used in connection with a legal entity, the terms require disclosure of its legal name, its address, and telephone number.

- The terms "**implement**" and "**implementation**" refer to any method, process, or action used to put a decision or plan into effect or achieve a goal or obligation.

- The term "**information**" refers to and includes documents, records, communications, facts, ideas, data, observations, opinions, photographs, slides, video recordings, audio recordings, and tangible and intangible items and evidence of any kind or sort.

- The terms "**killing**" and "**murder**" include abortion, as well as any act that intentionally terminates the life of a human zygote, embryo, fetus, or unborn child.

- The terms "**person**" and "**persons**" mean any legal entity inquired about, whether a natural person, partnership, sole proprietorship, professional association, joint venture, corporation, governmental agency, or other form of legal entity.

- The term "**record**" means letters, words, sounds, or numbers, or the equivalent of letters, words, sounds, or numbers, that have been written, recorded, documented, or received by:

  (A) handwriting;
  (B) typewriting;
  (C) printing;
  (D) photostat;
  (E) photograph;
  (F) magnetic impulse;
  (G) mechanical or electronic recording;
  (H) digitized optical image; or
  (I) another form of data compilation.

- The term "**record**" also includes any communication, including an e-mail or text-message communication.

- The term "**reproduction**" means an accurate and complete counterpart of an original document or record produced by:

  (A) production from the same impression or the same matrix as the original;
  (B) photograph, including an enlargement or miniature;
  (C) mechanical or electronic re-recording;
  (D) chemical reproduction;

(E) digitized optical image; or
(F) another technique that accurately reproduces the original.

- The term "**third party**" means any person, persons, or entity other than the plaintiffs or the attorneys of record for the plaintiffs.

- The term "**unborn child**" includes an individual organism of the species homo sapiens in any stage of gestation from fertilization until live birth.

- The terms "**woman**" and "**women**" include any person whose biological sex is female, including any person with XX chromosomes and any person with a uterus, regardless of any gender identity that the person attempts to assert or claim.

- The terms "**and**" and "**or**," when used in these definitions and in the discovery requests, include the conjunction "and/or."

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: September 17, 2025

*Counsel for Plaintiff Liana Davis*

## CERTIFICATE OF SERVICE

I certify that on September 17, 2025, plaintiff Liana Davis's first set of written discovery to defendant Christopher Cooprider (including requests for production and requests for admission) was served by e-mail upon:

Mikal C. Watts
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

Beth Klein
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff Liana Davis*

## REQUESTS FOR PRODUCTION

**Request for Production No. 1**: A copy of any and all documents that mention, describe, or pertain or relate to your efforts to obtain abortion-inducing drugs, including but not limited to any receipts relating to your purchases of abortion-inducing drugs.

**RESPONSE**:

**Request for Production No. 2**: A copy of any and all documents that mention, describe, or pertain or relate any of the abortion-inducing drugs that you obtained in 2025, including but not limited to any receipts relating to your purchases of abortion-inducing drugs.

**RESPONSE**:

**Request for Production No. 3**: A copy of any and all documents that mention, describe, or pertain or relate to your flight schedule on April 6, 2025.

**RESPONSE**:

**Request for Production No. 4**: A copy of any and all documents describing or mentioning the vehicle identification number (VIN) of any motor vehicles that you have owned, possessed or driven since January 1, 2025, including the silver Toyota Tacoma that you drove during 2025.

**RESPONSE**:

**Request for Production No. 5**: A copy of any and all documents that mention, describe, or pertain or relate to any purchases that you made between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025, including any receipts or any credit-card or debit-card or bank statements pertaining or relating to such purchases

**RESPONSE**:

**Request for Production No. 6**: A copy of any and all text messages and/or e-mails that you sent or received between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025.

**RESPONSE**:

**Request for Production No. 7**: A copy of any and all documents that mention, describe, or pertain or relate to any phone calls that you made between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025, as well as any phone calls that were made or attempted by individuals trying to call you between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025, including records of these calls that appear on your cell phone.

**RESPONSE**:

**Request for Production No. 8**: A copy of any and all documents that mention, describe, or pertain or relate to your whereabouts between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025, as well as any phone calls that were made or attempted by individuals trying to call you between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025, including records of these calls that appear on your cell phone.

**RESPONSE**:

**Request for Production No. 9**: A copy of any and all documents that mention, describe, or pertain or relate to your sleep schedule between 12:01 A.M. central time on April 6, 2025, and 11:59 A.M. central time on April 6, 2025, including but not limited to any records of your sleep stored in any type of app or device including a fitbit or Apple watch.

**RESPONSE**:

**Request for Production No. 10**: A copy of any and all documents that mention, describe, or pertain or relate to any pregnancy or pregnancies that Liana Davis had or allegedly had after November of 2024.

**RESPONSE**:

**Request for Production No. 11**: A copy of any and all documents that mention, describe, or pertain or relate to any termination or alleged termination of a pregnancy that Liana Davis had or allegedly had after November of 2024.

**RESPONSE**:

**Request for Production No. 12**: A copy of any and all documents that mention, describe, or pertain or relate to your efforts to persuade Liana Davis to terminate any pregnancy that she had or allegedly had after November of 2024.

**RESPONSE**:

**Request for Production No. 13**: A copy of any and all documents that mention, describe, or pertain or relate to your desire for Liana Davis to terminate any pregnancy that she had or allegedly had after November of 2024.

**RESPONSE**:

**Request for Production No. 14**: Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to your efforts to obtain abortion-inducing drugs. This includes communications with your attorneys, and if you wish to assert privilege over those communications please produce a privilege log as described in the instructions.

**RESPONSE**:

**Request for Production No. 15**: Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to the abortion-inducing drugs that you obtained in 2025. This includes communications with your attorneys, and if you wish to assert privilege over those communications please produce a privilege log as described in the instructions.

**RESPONSE**:

**Request for Production No. 16**: Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to your flight schedule on April 6, 2025. This includes communications with your attorneys, and if you wish to assert privilege over those communications please produce a privilege log as described in the instructions.

**RESPONSE**:

**Request for Production No. 17**: Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to your whereabouts between 12:01 A.M. central time on April 6, 2025, and 2:00 A.M. central time on April 6, 2025. This includes communications with your attorneys, and if you wish to assert privilege over those communications please produce a privilege log as described in the instructions.

**RESPONSE**:

**Request for Production No. 18**: Any and all communications you have had with any person, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to Liana Davis, any pregnancy or pregnancies that she had between November of 2024 through May of 2025, and/or any termination of a pregnancy that Liana Davis had or allegedly had between November of 2024 through May of 2025. This includes communications with your attorneys, and if you wish to assert privilege over those communications please produce a privilege log as described in the instructions.

**RESPONSE**:

**Request for Production No. 19**: Any and all communications you have had with any of the following individuals, whether it be by letter, memo, document, text, email, social media, or any other method of communication, that mention, describe, or pertain or relate to Liana Davis, any pregnancy or pregnancies that she had between November of 2024 through May of 2025, and/or any termination of a pregnancy that Liana Davis had between November of 2024 through May of 2025:

(a) Daniel Cooprider (father of defendant Christopher Cooprider);
(b) Devin Paul Davis;
(c) Jacqulyn Samuelson;
(d) The person that you to described to Ms. Davis as your "girlfriend" who resides in Mexico City;
(e) Any person serving in the United States military in any capacity, including your commanding officers, flight instructors, schedulers, or administrators; and/or
(f) Alexander Simak.

**Request for Production No. 20**: Any and all documents and/or communications showing that Liana Davis initiated or proposed the idea of holding the "night of trust" that occurred on April 5, 2025, as you allege in paragraphs 14 and 71 of your answer.

**RESPONSE**:

**Request for Production No. 21**: Any and all documents and/or communications showing that Liana Davis knew that she was not pregnant on February 3, 2025, as you allege in paragraphs 13 and 24 of your answer.

**RESPONSE**:

**Request for Production No. 22**: Any and all documents and/or communications showing that Liana Davis knowingly lied about her pregnancy status to Cooprider, as you allege in paragraphs 13 and 24 of your answer.

**RESPONSE**:

**Request for Production No. 23**: Any and all documents and/or communications showing that Liana Davis poisoned Devin Paul Davis, as you allege in paragraph 16 of your answer.

**RESPONSE**:

**Request for Production No. 24**: Any and all documents and/or communications showing that Liana Davis drank alcohol in the presence of her children, as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Production No. 25**: Any and all documents and/or communications showing that Liana Davis has ever been "drunk" while taking care of her children, as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Production No. 26**: Any and all documents and/or communications showing that Liana Davis has been "late to pick up her kids every day from school," as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Production No. 27**: Any and all documents and/or communications showing that Liana Davis has taken Vyvanse, as you allege in paragraph 19 of your answer.

**RESPONSE**:

**Request for Production No. 28**: Any and all documents and/or communications showing that Liana Davis asked you to order abortion-inducing drugs, as you allege in paragraph 27 of your answer.

**RESPONSE**:

**Request for Production No. 29**: Any and all documents and/or communications showing that Liana Davis "suggested to others that she wanted COOPRIDER to order the pills," as you allege in paragraph 29 of your answer.

**RESPONSE**:

**Request for Production No. 30**: Any and all documents and/or communications showing that "on February 21, 2025, DAVIS faked taking the first of the three pills, and on February 23, 2025, DAVIS faked taking the two other pills," as you allege in paragraph 34 of your answer.

**RESPONSE**:

**Request for Production No. 31**: Any and all documents and/or communications showing that "on February 21, 2025, DAVIS faked taking the first of the three pills, and on February 23, 2025, DAVIS faked taking the two other pills," as you allege in paragraph 34 of your answer.

**RESPONSE**:

**Request for Production No. 32**: Any and all documents and/or communications showing that Liana Davis "took abortion pills" on or shortly before March 5, 2025, as you told the Corpus Christi police.

**RESPONSE**:

**Request for Production No. 33**: Any and all documents and/or communications showing that Liana Davis deleted material from your phone, as you allege in paragraph 74 of your answer.

**RESPONSE**:

**Request for Production No. 34**: Any and all documents and/or communications showing that Liana Davis "prepared" hot chocolate "together" with you on the night of April 5, 2025, as you allege in paragraph 75 of your answer.

**RESPONSE**:

**Request for Production No. 35**: Any and all documents and/or communications showing that Liana Davis "put alcohol in her [hot chocolate] drink" on the night of April 5, 2025, as you allege in paragraph 76 of your answer.

**RESPONSE**:

**Request for Production No. 36**: Any and all documents and/or communications that mention, describe, or pertain or relate to the time that you went to sleep after leaving Liana Davis's house at approximately 12:12 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Production No. 37**: Any and all documents and/or communications showing that Liana Davis "consented" to taking abortion pills, as you claim in the text message that you sent to Ms. Davis on April 7, 2025, at approximately 10:36 A.M. central time.

**RESPONSE**:

**Request for Production No. 38**: Any and all documents and/or communications showing that Liana Davis "drank alcohol heavily while pregnant," as you allege in paragraph 127 of your answer.

**RESPONSE**:

## REQUESTS FOR ADMISSION

**Request for Admission No. 1**: You are a citizen of Arizona.

**RESPONSE**:

**Request for Admission No. 2**: You are the biological father of the unborn child that Liana Davis conceived in early 2025.

**RESPONSE**:

**Request for Admission No. 3**: You wanted Liana Davis to abort the unborn child that she conceived in early 2025.

**RESPONSE**:

**Request for Admission No. 4**: You asked Liana Davis to abort the unborn child that she conceived in early 2025.

**RESPONSE**:

**Request for Admission No. 5**: You ordered abortion-inducing drugs in February of 2025.

**RESPONSE**:

**Request for Admission No. 6**: You ordered abortion-inducing drugs from Aid Access in February of 2025.

**RESPONSE**:

**Request for Admission No. 7**: You ordered abortion-inducing drugs from Aid Access in February of 2025 after you saw and used a link to Aid Access's website that appeared on a website called Plan C Pills (https://www.plancpills.org).

**RESPONSE**:

**Request for Admission No. 8**: You ordered abortion-inducing drugs in February of 2025 with the intent of giving them to Liana Davis.

**RESPONSE**:

**Request for Admission No. 9**: You ordered abortion-inducing drugs in February of 2025 for the purpose of terminating Liana Davis's pregnancy.

**RESPONSE**:

**Request for Admission No. 10**: You intended for the abortion-inducing drugs that you ordered in February of 2025 to be used to terminate Liana Davis's pregnancy.

**RESPONSE**:

**Request for Admission No. 11**: The abortion-inducing drugs that you ordered in February of 2025 arrived at your house on or about February 11, 2025.

**RESPONSE**:

**Request for Admission No. 12**: You sent a text message to Liana Davis on February 11, 2025, at 7:52 A.M. central time, that said "The pills just got here."

**RESPONSE**:

**Request for Admission No. 13**: After you texted Liana Davis on February 11, 2025, at 7:52 A.M. central time, to inform her that "The pills just got here," Ms. Davis responded to your text with a thumbs-down emoji.

**RESPONSE**:

**Request for Admission No. 14**: You showed Liana Davis the receipt for your purchase of the abortion-inducing drugs.

**RESPONSE**:

**Request for Admission No. 15**: The receipt for your purchase of the abortion-inducing drugs indicates that you purchased the drugs from Aid Access.

**RESPONSE**:

**Request for Admission No. 16**: On or about February 18, 2025, you brought some or all of the abortion-inducing drugs that you had purchased to Liana Davis's house.

**RESPONSE**:

**Request for Admission No. 17**: On or about February 18, 2025, you asked Liana Davis to terminate her pregnancy with some or all of the abortion-inducing drugs that you had purchased.

**RESPONSE**:

**Request for Admission No. 18**: The mifepristone and misoprostol that you ordered were prescribed to "Chris Cooprider."

**RESPONSE**:

**Request for Admission No. 19**: The mifepristone pill that you ordered was in a blister pack when it arrived at your house.

**RESPONSE**:

**Request for Admission No. 20**: You removed the mifepristone pill from its blister pack.

**RESPONSE**:

**Request for Admission No. 21**: You accompanied Liana Davis to her ultrasound appointment on March 21, 2025.

**RESPONSE**:

**Request for Admission No. 22**: You communicated with Devin Paul Davis.

**RESPONSE**:

**Request for Admission No. 23**: By April 5, 2025, you knew that you would be unable to persuade Liana Davis to terminate her pregnancy.

**RESPONSE**:

**Request for Admission No. 24**: You made no attempts to persuade Liana Davis to terminate her pregnancy on April 5, 2025.

**RESPONSE**:

**Request for Admission No. 25**: You made no attempts to persuade Liana Davis to terminate her pregnancy on April 4, 2025.

**RESPONSE**:

**Request for Admission No. 26**: You made no attempts to persuade Liana Davis to terminate her pregnancy on April 3, 2025.

**RESPONSE**:

**Request for Admission No. 27**: You made no attempts to persuade Liana Davis to terminate her pregnancy on April 2, 2025.

**RESPONSE**:

**Request for Admission No. 28**: When you arrived at Liana Davis's house on the evening of April 5, 2025, your silver truck was parked in your garage.

**RESPONSE**:

**Request for Admission No. 29**: When you arrived at Liana Davis's house on the evening of April 5, 2025, your silver truck was parked in your driveway.

**RESPONSE**:

**Request for Admission No. 30**: When you arrived at Liana Davis's house on the evening of April 5, 2025, your silver truck was parked on the street on which you and Ms. Davis lived.

**RESPONSE**:

**Request for Admission No. 31**: When you arrived at Liana Davis's house on the evening of April 5, 2025, you brought some or all of the abortion-inducing drugs that you had purchased from Aid Access.

**RESPONSE**:

**Request for Admission No. 32**: Alcohol was mixed into the hot chocolate that Liana Davis drank on the evening of April 5, 2025.

**RESPONSE**:

**Request for Admission No. 33**: At or shortly before 12:12 A.M. on April 6, 2025, you promised Liana Davis that you would drive to her mother's residence and return to Ms. Davis's house with her mother.

**RESPONSE**:

**Request for Admission No. 34**: You were aware that Liana Davis's mother was unable to drive when you told Ms. Davis that you would drive to her mother's residence shortly after midnight on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 35**: You left Liana Davis's house at approximately 12:12 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 36**: Liana Davis sent you a text message at approximately 12:12 A.M. on April 6, 2025, with the address for her mother's residence.

**RESPONSE**:

**Request for Admission No. 37**: The text message that Liana Davis sent you at approximately 12:12 A.M. on April 6, 2025, contained the address "7122 Premont Drive Apt F102."

**RESPONSE**:

**Request for Admission No. 38**: You were aware that Liana Davis was bleeding when you left her house at approximately 12:12 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 39**: You were aware that Liana Davis was in need of medical care when you left her house at approximately 12:12 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 40**: You were aware that Liana Davis was in danger of losing her pregnancy when you left her house at approximately 12:12 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 41**: You never picked up Liana Davis's mother on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 42**: You never drove to Liana Davis's mother's residence on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 43**: You never drove to the Foxfire Condominiums on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 44**: You never drove on Premont Street between 12:12 A.M. central time and 1:00 A.M. central time on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 45**: You never drove anywhere between 12:12 A.M. central time and 1:00 A.M. central time on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 46**: Liana Davis called your cell-phone number five times after you left her house on April 6, 2026, at approximately each of the following times: 12:21 A.M., at 12:22 A.M., at 12:26 A.M., at 12:39 A.M., and at 12:45 A.M.

**RESPONSE**:

**Request for Admission No. 47**: You did not answer or return any of the phone calls that Liana Davis made to you on April 6, 2026.

**RESPONSE**:

**Request for Admission No. 48**: Liana Davis sent you a series of text messages on April 6, 2025, which appear in Exhibit 36 of the complaint (ECF No. 1).

**RESPONSE**:

**Request for Admission No. 49**: You did not respond to any of the text messages that Liana Davis sent to you in Exhibit 36 of the complaint until 12:44 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 50**: At approximately 1:01 A.M. on April 6, 2025, Liana Davis sent you a text message that said: "Where did you go? You aren't home. Did you even go out to find my mom?"

**RESPONSE**:

**Request for Admission No. 51**: You never responded to the text message that Liana Davis sent to you at approximately 1:01 A.M. on April 6, 2025, which said: "Where did you go? You aren't home. Did you even go out to find my mom?"

**RESPONSE**:

**Request for Admission No. 52**: At approximately 1:24 A.M. on April 6, 2025, Liana Davis sent you a text message that said: "I am at the hospital in the ER."

**RESPONSE**:

**Request for Admission No. 53**: You never responded to the text message that Liana Davis sent to you at approximately 1:24 A.M. on April 6, 2025, which said: "I am at the hospital in the ER."

**RESPONSE**:

**Request for Admission No. 54**: You never returned to Liana Davis's house on April 6, 2025, after you left her house at approximately 12:12 A.M. that day.

**RESPONSE**:

**Request for Admission No. 55**: You never returned to your house on April 6, 2025, after you left Liana Davis's house at approximately 12:12 A.M. that day, until after 1:00 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 56**: You never returned to your house on April 6, 2025, after you left Liana Davis's house at approximately 12:12 A.M. that day, until after 1:30 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 57**: You never returned to your house on April 6, 2025, after you left Liana Davis's house at approximately 12:12 A.M. that day, until after 2:00 A.M. on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 58**: You did not have any flights scheduled for April 6, 2025.

**RESPONSE**:

**Request for Admission No. 59**: You did not have any flights on April 6, 2025.

**RESPONSE**:

**Request for Admission No. 60**: You have no evidence that Liana Davis initiated or proposed the idea of holding the "night of trust" that occurred on April 5, 2025, as you allege in paragraphs 14 and 71 of your answer.

**RESPONSE**:

**Request for Admission No. 61**: You have no evidence that Liana Davis knew that she was not pregnant on February 3, 2025, as you allege in paragraphs 13 and 24 of your answer.

**RESPONSE**:

**Request for Admission No. 62**: You have no evidence that Liana Davis knowingly lied about her pregnancy status to Cooprider, as you allege in paragraphs 13 and 24 of your answer.

**RESPONSE**:

**Request for Admission No. 63**: You have no evidence that Liana Davis poisoned Devin Paul Davis, as you allege in paragraph 16 of your answer.

**RESPONSE**:

**Request for Admission No. 64**: You have no evidence that Liana Davis has ever drunk alcohol in the presence of her children, as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Admission No. 65**: You have no evidence that Liana Davis has ever been "drunk" while taking care of her children, as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Admission No. 66**: You have no evidence that Liana Davis has ever been "late to pick up her kids . . . from school," as you allege in paragraph 18 of your answer.

**RESPONSE**:

**Request for Admission No. 67**: You have no evidence that Liana Davis has ever taken Vyvanse, as you allege in paragraph 19 of your answer.

**RESPONSE**:

**Request for Admission No. 68**: You have no evidence that Liana Davis asked you to order abortion-inducing drugs, as you allege in paragraph 27 of your answer.

**RESPONSE**:

**Request for Admission No. 69**: You have no evidence that Liana Davis "suggested to others that she wanted COOPRIDER to order the pills," as you allege in paragraph 29 of your answer.

**RESPONSE**:

**Request for Admission No. 70**: You have no evidence that "on February 21, 2025, DAVIS faked taking the first of the three pills, and on February 23, 2025, DAVIS faked taking the two other pills," as you allege in paragraph 34 of your answer.

**RESPONSE**:

**Request for Admission No. 71**: On March 5, 2025, you told the Corpus Christi police that Liana Davis "took abortion pills."

**RESPONSE**:

**Request for Admission No. 72**: You have no evidence that Liana Davis "took abortion pills" on or shortly before March 5, 2025, as you told the Corpus Christi police.

**RESPONSE**:

**Request for Admission No. 73**: You have no evidence that Liana Davis deleted material from your phone, as you allege in paragraph 74 of your answer.

**RESPONSE**:

**Request for Admission No. 74**: You have no evidence that Liana Davis "prepared" hot chocolate "together" with you on the night of April 5, 2025, as you allege in paragraph 75 of your answer.

**RESPONSE**:

**Request for Admission No. 75**: While the hot chocolate was being prepared in the kitchen on the night of April 5, 2025, there were at least some moments when Liana Davis was not present in the kitchen while you were preparing the hot chocolate.

**RESPONSE**:

**Request for Admission No. 76**: You have no evidence that Liana Davis "put alcohol in her [hot chocolate]" on the night of April 5, 2025, as you allege in paragraph 76 of your answer.

**RESPONSE**:

**Request for Admission No. 77**: On April 7, 2025, at approximately 10:36 A.M. central time, Liana Davis sent you a text message and asked, "How many pills did you give me, Chris? Was it all 10?"

**RESPONSE**:

**Request for Admission No. 78**: On April 7, 2025, at approximately 10:36 A.M. central time, you texted Ms. Davis and said: "You consented multiple times."

**RESPONSE**:

**Request for Admission No. 79**: You have no evidence that Liana Davis ever "consented" to taking abortion pills.

**RESPONSE**:

**Request for Admission No. 80**: You have no evidence that Liana Davis "drank alcohol heavily while pregnant," as you allege in paragraph 127 of your answer.

**RESPONSE**: