UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br><br>Plaintiff,<br><br>v.<br><br>**Christopher Cooprider**; **Aid Access GmbH**; **Aid Access B.V.**; **Access and More B.V.**; **Rebecca Gomperts**,<br><br>Defendants. | Case No. 2:25-cv-220 |

## PLAINTIFF'S MOTION TO COMPEL

Defendant Christopher Cooprider asserted attorney-client privilege and attorney work-product privilege in response to many of Liana Davis's requests for production of documents and tangible things. Mr. Cooprider's assertions of privilege appear in nearly all of his responses to RFPs Nos. 1–40. We have attached Ms. Davis's requests for production as Exhibits 1–2, and Mr. Cooprider's responses and objections as Exhibits 3–4.[1]

But Mr. Cooprider has waived the attorney-client privilege by voluntarily disclosing contents of his confidential attorney-client communications to Ilse Fragoso and Jackie Samuelson. *See* pp. 2–6, *infra*; *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, IRS*, 768 F.2d 719, 721 (5th Cir. 1985) ("[T]he disclosure of an

1. Ms. Davis served 38 requests for production in her first set of written discovery requests. *See* Exhibit 1. She served two additional requests for production in her second set of written discovery requests, but she numbered those additional RFPs as Nos. 1 and 2 rather than Nos. 39 and 40. *See* Exhibit 2. To avoid confusion, we will refer to those additional requests for production as RFPs Nos. 39 and 40 and respectfully ask the Court to do the same.

otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests.").[2] Each of these disclosures waives the attorney-client privilege with respect to the subject matter of the disclosed communication. *See Industrial Clearinghouse, Inc. v. Browning Manufacturing Division of Emerson Electric Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992) (holding that when a client reveals confidential attorney-client communications, "the client waives the privilege as to the subject matter of the disclosed communications"). The Court should overrule Mr. Cooprider's assertions of attorney-client privilege in part and compel Mr. Cooprider to produce responsive attorney-client communications related to the subject matter of his disclosures.[3]

## I. Mr. Cooprider Waived The Attorney-Client Privilege By Disclosing The Contents Of His Attorney-Client Communications To Ilse Fragoso And Jackie Samuelson

Mr. Cooprider waived the attorney-client privilege on no fewer than 15 occasions by disclosing the following attorney-client communications to third parties:

1. On September 23, 2025, Mr. Cooprider sent the following message to Ilse Fragoso over WhatsApp: "My lawyers say that everyone knows i didn't do what the crazy lady said. And we will win that. But there are other problems that will be difficult to defend." CR004892 (attached as Exhibit 5).

---

2. *See also Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 251 F.R.D. 238, 244 (E.D. Tex. 2008) ("[A] party waives attorney-client privilege when it voluntarily discloses the privileged communications to a third-party."); *In re XL Specialty Insurance Co.*, 373 S.W.3d 46, 49–50 (Tex. 2012) ("[T]he privilege is waived if the lawyer or client voluntarily discloses privileged communications to a third party. *See* Tex. R. Evid. 511(1).").

3. Ms. Davis is not contending that Mr. Cooprider waived the attorney-client privilege in its entirety, nor is she contending that Mr. Cooprider waived the attorney work-product privilege. She is asking the Court to order only the production of responsive attorney-client communications relating to the subject-matter of Mr. Cooprider's disclosures.

2. On September 23, 2025, Mr. Cooprider sent the following message to Ilse Fragoso over WhatsApp: "my lawyers also told me that there will be good days and bad days as we go through this." CR004892 (attached as Exhibit 5).

3. On April 9, 2025, Mr. Cooprider disclosed the following communication from one of his attorneys to Jackie Samuelson, who is not one of his lawyers: "Chris, on August 2nd, I will have been doing this for 33 years.. Pretty much all your life. You hired us to work for you. Please let us do that. I'll call you when i need something. i know this is tough. the not knowing. Just remember you can't control what she has said, or what she is saying now. This is the hard part. sit still. find something else to occupy your mind" CR001799b (attached as Exhibit 6).

4. On April 15, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "So my lawyer met with the investigator today and said it went pretty good but he asked me to send him basically like my whole text conversation with Liana for like Saturday and the days leading up to it." CR001818b; *see also* Mitchell Decl. ¶ 7 (attached as Exhibit 9).[4]

5. On April 25, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "My attorney was saying that he talked to the investigator and basically all they're waiting on to wrap up the investigation right now is the toxicology report. . . . But I asked him, like, I don't there's going to be anything on the report that helps her. If anything, the toxicology report is only going to be bad for Liana because it's going to show that she had alcohol in her system . . ." CR001826a; *see also* Mitchell Decl. ¶ 8 (attached as Exhibit 9).

6. On May 15 or 16, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "I thought about doing that, and I even asked my lawyer, like, hey, like, I'm thinking about doing this, like, do I have

4. All of the relevant audio statements that Mr. Cooprider transmitted to Ms. Samuelson have been e-mailed to the Court. See Mitchell Decl. ¶¶ 9–14.

your permission to do this? Or could you ask for me? And he was basically saying, like, uh, it doesn't really like, like don't bother doing that. If anything, you, like, trying to pressure or, like, ask about those things, just kinda it doesn't look good on me. Which, I'm like, all right, I guess I can kinda see that. What I'm doing instead if, um, I have a friend who, I guess, runs a law firm here. Um, and so, I'm reaching out to him and ask him if he knows any of the prosecutors at the DAs office, which I'm sure he does, and I'm going to ask if he can do me a favor and ask one of those prosecutors to look at my case." CR001848b; *see also* Mitchell Decl. ¶ 9 (attached as Exhibit 9).

7. On May 28, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "It was fine. I mean, uh, my lawyer's basically, like, uh yeah this crazy lady won't just leave you alone, will she? It's like, yeah, she's really just is obsessed. Um, but he was saying that he, uh, looked the guy up, the lawyer, and was saying from what he's heard is that the guy's obviously very passionate about this subject, and was a part of that very strict abortion bill in Texas, which is one of the most strict in the country, um, and basically he was saying that he thinks the target of the suit is the company, not me. Um, but he was talking with some of his colleagues, and he was saying that he doesn't really see an angle where I'm liable or did anything illegal, or the company, because they are FDA-regulated and cleared through the FDA, so it's not like they sent illegal drugs through the mail or anything. So, yeah, he's kinda struggling to wrap his mind around why this person even took the case. Um, but I reminded him how Liana has a history of lying on legal documents and to legal officials. And he agreed with me, saying that probably she lied to the lawyers or just told her own very biased side of things, and so that's why they think that they could possibly win. He just doesn't know enough info regarding things. And also, um, they're trying, they would like to keep it, uh, I guess, on the state level instead of than the federal level, because I guess that makes it, for some legal reason, it makes it easier for this lawyer to go after the company as long as there is a local

defendant, me, in the case. But, I don't know how all this works. I think he's saying that, like, that if it gets dropped or if there's no case to be had against me, then that makes it significantly more difficult for them to go after the company. Sorry that's a lot of information but that's what he told me." CR001866a; *see also* Mitchell Decl. ¶ 10 (attached as Exhibit 9).

8. On May 28 or 29, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "My lawyer, I mean, he said it's impossible to know what the, Liana's new lawyer is gonna do. But he's, he's a little bit concerned that, um, this guy's just going to pursue things civilly, uh, regardless of trying to win the case because he's going to basically use me as a vehicle to go after the companies." CR001867a; *see also* Mitchell Decl. ¶ 11 (attached as Exhibit 9).

9. On or about May 28 or 29, 2025, Cooprider transmitted the following audio statement to Jackie Samuelson through WhatsApp: "But, he said there's also a chance that he sees the evidence, or how the charges get dropped criminally, and there's a lack of evidence, so he could see that they drop the case civilly also." CR001867b; *see also* Mitchell Decl. ¶ 12 (attached as Exhibit 9).

10. On April 30, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "Hey my lawyer was saying that sex with a married person is still against the ucmj." CR001829 (attached as Exhibit 7).

11. On May 8, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "my lawyer has said multiple times that it's very clear she was mentally unstable." CR001838 (attached as Exhibit 7).

12. On May 28, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "My lawyer also said, that somehow if abortion pills do come up in the drug test, there is noo way to prove i gave them to her." CR001866 (attached as Exhibit 7).

13. On August 12, 2025, Cooprider sent the following messages to Jackie Samuelson through WhatsApp: "I'll hear more from my new lawyer tomorrow . . . . She has some bigg plans." CR001890 (attached as Exhibit 7).

14. On August 16, 2025, Cooprider sent the following message to Jackie Samuelson through WhatsApp: "This lawyer hasn't officially agreed to represent me yet. But we do have a signed attorney-client privilege letter. I'm sending this lawyer alllll of the info from my side of the story." CR001894 (attached as Exhibit 7).

15. On August 26, 2025, Cooprider sent a message to Jackie Samuelson through WhatsApp informing her that his lawyer was "suggesting" that he look for on-base housing. CR001899 (attached as Exhibit 7).

## II. Mr. Cooprider's Arguments Against Waiver Are Meritless

Mr. Cooprider does not deny that these disclosures were made. But he denies that his disclosures waived the attorney-client privilege. *See* Def.'s Br., ECF No. 132, at 1–7. None of his arguments hold water.

Cooprider first asserts that these disclosures "merely acknowledged that he consulted an attorney on a subject." *See id.* at 1. But one needs only to read the disclosures to see that Cooprider revealed the *content* of his attorney-client communications, and not merely the *fact* that he spoke to his lawyers about a topic. In every one of the 15 disclosures, Cooprider is divulging either what he told his attorneys or what his attorneys told him.

Cooprider's claim that he merely "stated in general terms that he relied on counsel's advice without disclosing the substance of that advice" is equally bogus. *See id.* at 2. All of the 15 disclosures proclaim the substance of what Cooprider told his lawyers or the substance of what his lawyers told him.

Cooprider also argues that the substance of what he revealed isn't detailed enough to constitute a waiver of attorney-client privilege. *See id.* at 2 (claiming that Cooprider

"disclosed at most a legal conclusion without disclosing the underlying confidential communication," or that he "discussed only underlying facts that were also communicated to counsel, or that he "disclosed only the general nature of legal services provided, without revealing the substance of the communications."); *id.* at 5 ("The vast majority of Plaintiff's cited excerpts are high-level paraphrases or conclusory statements about counsel's general views . . . , not verbatim disclosure of confidential legal advice or the content of attorney-client communications sufficient to work a subject-matter waiver."). But waiver is triggered whenever a lawyer or litigant reveals the contents of confidential attorney-client communications. There is no requirement that a disclosure recite the privileged communication "verbatim,"[5] and it does not matter whether the formerly privileged communication involved "legal conclusions,"[6] "underlying facts,"[7] or "general advice."[8] Cooprider cites no authorities to support this stance, because no such authorities exist. *Any* voluntary disclosure of attorney-client communications waives the privilege, and Cooprider must produce responsive attorney-client communications that pertain to the subject matter of each disclosed communication.

Cooprider's claim that his disclosures to Ilse Fragoso and Jackie Samuelson were "not intentional" is equally untenable. *See* Def.'s Br., ECF No. 132, at 6 ("Any disclosure was not intentional"). The texts and audio that he sent them through WhatsApp were voluntary and intentional disclosures of his communications with attorneys, and Cooprider knowingly and purposefully wanted to share the content of those attorney-client communications with Fragoso or Samuelson.

5. Def.'s Br., ECF No. 132, at 5.
6. Def.'s Br., ECF No. 132, at 2.
7. Def.'s Br., ECF No. 132, at 2.
8. Def.'s Br., ECF No. 132, at 5.

## III. Ms. Davis Is Entitled To Discover Responsive Attorney-Client Communications Related To The Subject-Matter Of The Disclosed Attorney-Client Communications

When a litigant or lawyer divulges confidential attorney-client communications to a third party, he waives the privilege to the extent of the subject matter of the disclosed communication. *See Industrial Clearinghouse*, 953 F.2d at 1007 (holding that when a client reveals confidential attorney-client communications, "the client waives the privilege as to the subject matter of the disclosed communications"); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) ("[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole."); *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981) (same). The Court should therefore overrule in part Mr. Cooprider's assertions of attorney-client privilege. And it should compel Mr. Cooprider to produce all responsive and non-privileged documents and communications, including but not limited to attorney-client communications mention, pertain, or relate to any or all of the following:

1. Any of the "problems that will be difficult to defend" that Mr. Cooprider or one or more of Mr. Cooprider's past or current lawyers have identified, stated, described, or conceived of. *See* CR004892 (attached as Exhibit 5).

2. Any of the reasons that Mr. Cooprider or one or more of Mr. Cooprider's past or current lawyers have or had for claiming or believing that "everyone knows i didn't do what the crazy lady said." *See* CR004892 (attached as Exhibit 5).

3. Any of the reasons that Mr. Cooprider or one or more of Mr. Cooprider's past or current lawyers have or had for claiming or believing that Mr. Cooprider "will win that." *See* CR004892 (attached as Exhibit 5).

4. Any of the reasons that Mr. Cooprider or one or more of Mr. Cooprider's past or current lawyers have or had for claiming or believing that "there will be good days and bad days as we go through this." *See* CR004892 (attached as Exhibit 5).

5. Mr. Cooprider's communications with any of his attorneys that led to one of Mr. Cooprider's attorneys sending him the message that Mr. Cooprider disclosed at CR001799b (attached as Exhibit 6).

6. Mr. Cooprider's lawyers' communications with any of the investigators of the alleged murder. *See* CR001818b; Mitchell Decl. ¶ 9 (attached as Exhibit 9).

7. Mr. Cooprider's lawyers' assessments of the investigation. *See* CR001818b; Mitchell Decl. ¶ 9 (attached as Exhibit 9).

8. Mr. Cooprider's communications with any of his attorneys about the text messages that he exchanged with Liana Davis. *See* CR001818b; Mitchell Decl. ¶ 9 (attached as Exhibit 9).

9. Mr. Cooprider's lawyers' assessments of any of the text messages that Mr. Cooprider exchanged with Liana Davis. *See* CR001818b; Mitchell Decl. ¶ 9 (attached as Exhibit 9).

10. The investigation of the alleged murder. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

11. The toxicology report. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

12. Mr. Cooprider's lawyers' assessments of the toxicology report. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

13. The alcohol that Liana Davis allegedly consumed on the night of April 5, 2025. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

14. The identity of the individual who put alcohol into Ms. Davis's drink on the night of April 5, 2025. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

15. Mr. Cooprider's lawyers' assessment of Ms. Davis's alleged alcohol consumption on the night of April 5, 2025. *See* CR001826a; Mitchell Decl. ¶ 10 (attached as Exhibit 9).

16. The conversation between Mr. Cooprider and his attorney that he describes in the audio file sent to Jackie Samuelson at CR001848b. *See* Mitchell Decl. ¶ 11 (attached as Exhibit 9).

17. Mr. Cooprider's communications with the lawyer "friend" that he refers to in the audio file sent to Jackie Samuelson at CR001848b. *See* Mitchell Decl. ¶ 11 (attached as Exhibit 9).

18. Any communications that Mr. Cooprider's lawyers (or his lawyer "friend") had with anyone at the Nueces County district attorney's office. *See* CR001848b; Mitchell Decl. ¶ 11 (attached as Exhibit 9).

19. Mr. Cooprider's lawyers' assessments of any of the criminal investigations into Mr. Cooprider. *See* CR001848b; Mitchell Decl. ¶ 11 (attached as Exhibit 9).

20. The conversation between Mr. Cooprider and his lawyer that he describes in the audio file sent to Jackie Samuelson at CR001866a. *See* Mitchell Decl. ¶ 10 (attached as Exhibit 9).

21. Mr. Cooprider's lawyers' assessments of the legal claims brought against Mr. Cooprider. *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

22. Any of Mr. Cooprider's lawyers' assessments of Liana Davis's truthfulness. *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

23. Any of Mr. Cooprider's lawyers' claims or beliefs that Liana Davis is "crazy" or mentally unstable in any way. *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

24. Any of Mr. Cooprider's lawyers' assessments of Mr. Mitchell's motives for representing Liana Davis. *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

25. Any of Mr. Cooprider's lawyers' assessments of Mr. Mitchell's strategy in this litigation. *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

26. Any of Mr. Cooprider's lawyers' reasons for wanting to keep this case at the "state level" instead of the "federal level." *See* CR001866a; Mitchell Decl. ¶ 12 (attached as Exhibit 9).

27. The conversation between Mr. Cooprider and his lawyer that he describes in the audio file sent to Jackie Samuelson at CR001867a. *See* Mitchell Decl. ¶ 13 (attached as Exhibit 9).

28. Any of Mr. Cooprider's lawyers' reasons for believing that Mr. Mitchell is "going to pursue things civilly, uh, regardless of trying to win the case because he's going to basically use me as a vehicle to go after the companies." *See* CR001867a; Mitchell Decl. ¶ 13 (attached as Exhibit 9).

29. The conversation between Mr. Cooprider and his lawyer that he describes in the audio file sent to Jackie Samuelson at CR001867b. *See* Mitchell Decl. ¶ 14 (attached as Exhibit 9).

30. Any of Mr. Cooprider's lawyers' reasons for believing that Ms. Davis could "drop the case civilly." *See* CR001867b; Mitchell Decl. ¶ 14 (attached as Exhibit 9).

31. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to their claims or beliefs that "sex with a married person is still against the ucmj." CR001829 (attached as Exhibit 7).

32. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to his potential exposure to prosecution under the Uniform Code of Military Justice. *See* CR001829 (attached as Exhibit 7).

33. Mr. Cooprider's lawyers' assessments of his potential exposure to prosecution under the Uniform Code of Military Justice. *See* CR001829 (attached as Exhibit 7).

34. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to their claims or beliefs that Liana Davis "was mentally unstable." CR001838 (attached as Exhibit 7).

35. Any of Mr. Cooprider's lawyers' claims or beliefs that Liana Davis "was mentally unstable." CR001838 (attached as Exhibit 7).

36. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to their claims or beliefs that "there is noo way to prove" that Mr. Cooprider "gave" abortion-inducing drugs to Liana Davis or mixed them into the hot chocolate that she consumed on the evening of April 5, 2025. *See* CR001866 (attached as Exhibit 7).

37. Mr. Cooprider's lawyers' assessments of the evidence involving whether Mr. Cooprider "gave" abortion abortion-inducing drugs to Liana Davis or mixed them into the hot chocolate that she consumed on the evening of April 5, 2025. *See* CR001866 (attached as Exhibit 7).

38. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to the "bigg plans" that Mr. Cooprider refers to in the message sent to Jackie Samuelson on August 12, 2025. *See* CR001890 (attached as Exhibit 7).

39. Any or all of the "bigg plans" that Mr. Cooprider refers to in the message sent to Jackie Samuelson on August 12, 2025. *See* CR001890 (attached as Exhibit 7).

40. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to any of the "info from my side of the story" that Mr. Cooprider refers to in the message sent to Jackie Samuelson on August 16, 2025. *See* CR001894 (attached as Exhibit 7).

41. Any or all of the "info from my side of the story" that Mr. Cooprider sent or provided to any of his lawyers. *See* CR001894 (attached as Exhibit 7).

42. Any of Mr. Cooprider's lawyers' assessments of any of the "info from my side of the story" that Mr. Cooprider sent or provided to any of his lawyers. *See* CR001894 (attached as Exhibit 7).

43. Mr. Cooprider's communications with any of his lawyers that mention, pertain, or relate in any way to on-base housing or their reasons for "suggesting" that Mr. Cooprider seek on-base housing. *See* CR001899 (attached as Exhibit 7).

## IV. The Court Should Order Mr. Cooprider's Attorneys To Produce A Detailed Privilege Log For Any Responsive Documents Or Communications That They Continue To Withhold On The Ground Of Attorney-Client Privilege

Ms. Davis's requests for production instructed Mr. Cooprider to produce a privilege log for each document withheld on the ground on the attorney-client privilege, and instructed Cooprider's attorney to include the following information in their privilege log:

a. The date on which the document was created;
b. The title of the document;
c. The nature and contents of the document;
d. Each person or entity that received a copy of the document or to whom the document or its contents were disclosed;
e. The privilege or rule that Cooprider contends protects the document from disclosure; and
f. Each fact on which Cooprider bases his contention that the privilege or rule identified in its response applies.

Exhibits 1 and 2, at p. 2. Mr. Cooprider's attorneys have failed to comply with these instructions. Their privilege log contains only the following entry:

| | | |
|---|---|---|
| PRIVILEGE LOG | CR001713 - 1774 | Attorney Client Privilege Communications and Work Product After Attorney Retention |

Exhibit 8. This also fails to comply with the rules of civil procedure, which require privilege logs to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The Court should instruct Mr. Cooprider to produce a document-specific privilege log that allows Ms. Davis and the Court to assess whether the withheld documents are outside the scope of Mr. Cooprider's waiver.

## CONCLUSION

The motion to compel should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: September 12, 2026

*Counsel for Plaintiff Liana Davis*

## CERTIFICATE OF SERVICE

I certify that on September 12, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff Liana Davis*