UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**Liana Davis**,

Plaintiff,

v.

**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,

Defendants.

Case No. 2:25-cv-220

## PLAINTIFF LIANA DAVIS'S DESIGNATION OF REBUTTAL EXPERT WITNESS

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), plaintiff Liana Davis respectfully submits this disclosure of rebuttal expert witness testimony.

Ms. Davis intends to introduce expert evidence at trial intended solely to contradict or rebut evidence on the same subject matter identified by Mr. Cooprider in his expert disclosures.

## I. DISCLOSURE OF RETAINED REBUTTAL EXPERT

Ms. Davis discloses the following retained expert witness who may be called at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence:

### A. Name, Address, and Fields of Expertise

- Name: Dr. William R. Lile, Jr., D.O., FACOG
- Address: 6847 North 9th Avenue, Suite # 157, Pensacola, Florida 32504
- Field: obstetrics and gynecology, mifepristone and misoprostol

### B. Qualifications and Prior Testimony

Dr. Lile's professional background, education, and specific qualifications are detailed in his curriculum vitae, which is attached to the rebuttal report as Exhibit A.

- Publications: Dr. Lile's publications within the past 10 years consist of a training curriculum book that he produced in 2024, which is available at https://perma.cc/DQ33-8ECE.
- Prior Testimony: Dr. Lile has not testified as an expert at trial or by deposition in any other case during the previous four years.

### C. Compensation

Dr. Lile is being compensated at a rate of $1,000 per hour for file review, analysis, and report preparation, and $1,000 per hour for deposition or trial testimony. Dr. Lile's compensation is not dependent upon or tied to the outcome of this litigation.

### D. Summary of Subject Matter and Rebuttal Opinions

Dr. Lile will present testimony to contradict, rebut, and critique the methodologies, reasoning, and conclusions offered by Mr. Cooprider's designated experts, Stacey L. Hail, MD, FACMT, and Roberta L. Krueger, M.D. Specifically, and without limitation, Dr. Lile is expected to testify to the following:

1. Dr. Hail's opinion that Ms. Davis "experienced early pregnancy failure" is baseless because: (a) Dr. Hail's is not an OB-GYN and has no expertise in whether or the extent to which infection, chlamydia, advanced maternal age, or low progesterone cause or contribute to miscarriages; (b) Dr. Hail's report contains no analysis of these supposed "risk factors" or any attempt to quantify the risk that each of these factors presented to Ms. Davis's pregnancy, nor does it contain citations of any relevant medical literature to support an opinion that Ms. Davis's pregnancy loss was caused by factors other than the ingestion of misoprostol; (c) Peer-reviewed medical literature shows that a *Chlamydia trachomatis* infection during pregnancy—even if untreated—poses very little direct

risk to the life of the unborn child; (d) Dr. Hail's claim that Ms. Davis was "diagnosed with Salmonella typhi" is an outright falsehood, as Ms. Davis claims to have tested positive only for *antibodies for* salmonella typhi; (e) the vast majority of pregnancies carried by 37-year-old women are successful; (f) Dr. Hail has no basis for opining that Ms. Davis had "low progesterone" during her pregnancy when she conducted analysis of the progesterone measurements that appear in Ms. Davis's medical records; (g) Dr. Hail is wrong to treat the mere fact that Ms. Davis was prescribed 200 mg of oral progesterone nightly as a sign of an unhealthy, doomed, or failing pregnancy; and (h) it is implausible to assert that Ms. Davis's pregnancy loss resulted from a natural miscarriage rather than an induced abortion because a natural miscarriage is almost always preceded by symptoms such as vaginal bleeding and lower abdominal or back pain, and Ms. Davis reports that she did not experience any of these natural-miscarriage symptoms in the days preceding April 6, 2026.

2. Dr. Hail's opinion that Ms. Davis "was not poisoned by misoprostol" is baseless because: (a) Her opinion that Ms. Davis's "clinical presentation is inconsistent with acute misoprostol toxicity" is meaningless because "acute misoprostol toxicity" occurs when someone ingests or absorbs a dose *far* beyond the standard therapeutic range, typically in the range of 3–8 mg (the normal treatment dosage is 200–800 mcg, or .2–.8 mg); (b) Dr. Hail has no basis for assuming that Ms. Davis "did not ingest mifepristone" because Mr. Cooprider ordered *two* packages of abortion pills from Aid Access; (c) Dr. Hail has no basis for opining that the "reported timeline is inconsistent" with misprostol ingestion because when misoprostol is administered orally and swallowed, its effects may begin within approximately 8 to 10 minutes and uterine contraction strength may reach a maximum within approximately 20 to 30 minutes; (d) Dr. Hail's claim that "[w]hen misoprostol is used alone, the time to onset

of bleeding varies by several hours, with one study demonstrating that 90% of patients start bleeding after 3–6 hours" relies on a study in which the participants took misoprostol sublingually, vaginally, or buccally, and a patient who takes misoprostol orally and swallows it will have a faster reaction to the drug; (e) the "side effects" of the "therapeutic" use of misoprostol that Dr. Hail describes, such as nausea, vomiting, diarrhea, headache, and fever, are far from universal and occur in fewer than half of patients who use the drug; (f) Dr. Hail has no basis for opining that "it seems unfeasible that 10 tablets of misoprostol could be rapidly dissolved and ingested unnoticed by the consumer," as misoprostol tablets are very soluble in water and can dissolve easily if crushed and stirred.

3. Dr. Krueger's opinion that ms. davis had "an unhealthy pregnancy" is baseless because: (a) a fetal heart rate that is clocked at 98 beats per minute in an early intrauterine pregnancy measuring 5 weeks and 6 days does not show or even suggest that Ms. Davis had an "unhealthy pregnancy" that ended with a natural miscarriage; (b) Dr. Krueger is mistaken to describe Ms. Davis's hCG levels as a "sign of a failing pregnancy," as it is very reassuring to have a beta quantitative of 17,250 on March 24, 2025, rise to 30,068 on April 6, 2025, and the sudden drops in the Ms. Davis's hCG levels after April 6, 2025, were more likely than not caused by an induced abortion that occurred shortly before midnight on April 5, 2025, rather than a natural miscarriage that began days before; (c) Dr. Krueger entirely ignores the fact that Ms. Davis's progesterone jumped from 13.9 mg/ML on March 24, 2025, to 31.9 ng/mL only two days later, on March 26, 2025, which debunks her claim that Ms. Davis suffered from "low progesterone" or that this supposedly "low" progesterone caused or contributed to her pregnancy loss; (d) Dr. Krueger is wrong to treat the mere fact that Ms. Davis was prescribed 200 mg of oral progesterone nightly

as a sign of an unhealthy, doomed, or failing pregnancy, as prescriptions for supplemental progesterone are quite common and are used as preventive measures to improve live birth rates; (e) Dr. Krueger has no basis for opining that Ms. Davis's pregnancy loss was attributable to her age, as the vast majority of pregnancies carried by 37-year-old women are successful.

4. Dr. Krueger's opinion that Ms. Davis's pregnancy loss could not have been caused by drinking misoprostol in the hot chocolate that Mr. Cooprider Had prepared is baseless because: (a) when misoprostol is administered orally and swallowed, its effects may begin within approximately 8 to 10 minutes and uterine contraction strength may reach a maximum within approximately 20 to 30 minutes; (b) there is no evidence and no reason to believe that the misoprostol that Cooprider ordered from Aid Access was exposed to humidity, air, or temperatures that exceed 77°F before they were allegedly dissolved into the hot chocolate, and even when misoprostol is exposed to standard environmental conditions (such as 25°C and 60% relative humidity), only 10% of the active dosage is lost within seven days; (c) Ms. Davis drank the hot chocolate very shortly after Mr. Cooprider prepared it, and exposure to high heat does not render misoprostol entirely useless but merely causes its active ingredient to become less effective over time; (d) most patients do not experience diarrhea or fever after taking misoprostol, so the absence of these symptoms does not undermine or discredit, Ms. Davis's claim that her pregnancy loss was caused by misoprostol ingestion.

The complete statement of Dr. Lile's rebuttal opinions, along with the specific facts, data, and exhibits considered in forming them, are set forth in the written rebuttal Expert Report signed by the witness and attached as Exhibit 1 to this document.

## II. RESERVATION OF RIGHTS

1. Ms. Davis reserves the right to elicit expert opinions from Dr. Lile at trial to respond to any new matter, testimony, or cross-examination raised by Mr. Cooprider during depositions or at trial.
2. Ms. Davis reserves the right to supplement or amend this disclosure or the attached report as allowed under Fed. R. Civ. P. 26(e) if additional information, data, or documents are produced or become available through ongoing discovery.
3. Ms. Davis reserves the right to call any expert witness disclosed by any other party to this action.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: October 26, 2026

*Counsel for Plaintiff Liana Davis*

## CERTIFICATE OF SERVICE

I certify that on October 26, 2026, I served this document through CM/ECF upon:

Mikal C. Watts
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

Beth Klein
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

Barry Moscowitz
Victoria Jimenez
Oliver Hamby
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff Liana Davis*