UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Liana Davis,<br><br>Plaintiff,<br><br>v.<br><br>Christopher Cooprider,<br>Aid Access GmbH,<br>Aid Access B.V.,<br>Access and More B.V., &<br>Rebecca Gomperts,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:25-cv-220 |

**DEFENDANT CHRISTOPHER COOPRIDER'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Christopher Cooprider ("Cooprider") moves under Federal Rule of Civil Procedure 56 for summary judgment on Plaintiff Liana Davis's wrongful-death claim—the only claim she asserts against him—and, in the alternative, for partial summary judgment on each separate theory pleaded within that claim, showing the Court as follows:

## I. Introduction

1. Liana Davis asserts a single claim against Christopher Cooprider: wrongful death under the Texas Wrongful Death Act, premised on her allegation that Cooprider secretly dissolved abortion pills into her hot chocolate on April 5, 2025, causing the loss of her pregnancy. Her only other claim—the HB 7 qui tam injunction in Claim for Relief No. 2—is pleaded solely against the Aid Access defendants, not Cooprider. Summary judgment on the wrongful-death claim therefore disposes of every claim against Cooprider.

2. The wrongful-death claim fails because Davis cannot prove the one element that is the statutory core of every wrongful-death action: that a wrongful act of Cooprider caused the death. That failure is established three independent ways, each sufficient on its own. First, medical causation of a drug-induced pregnancy loss is a question beyond common knowledge that requires expert testimony, and Davis designated no affirmative medical-causation expert by the Court's August 17, 2026 deadline—or at all. Second, the only qualified medical opinions in the record, those of Dr. Roberta L. Krueger and Dr. Stacey L. Hail, affirmatively establish that the pregnancy was already failing and nonviable before the alleged exposure and that no misoprostol poisoning occurred. Third, Davis has no admissible evidence that she ever ingested abortion medication or that Cooprider placed any in her drink; by her own sworn testimony she did not see him do so, cannot say which drink (if any) contained medication, and agrees it is possible he gave her nothing.

3. This is not a battle of experts, because Davis has no causation expert at all. Her belated, rebuttal-only designation of Dr. William Lile—served October 26, 2026, more than two months after her affirmative expert deadline and "intended solely to contradict or rebut" Cooprider's experts—does not change that. A rebuttal expert cannot be used to establish an element on which the designating party bears the burden of proof; Davis still has no timely, competent, affirmative opinion that any drug exposure caused this loss. Her deposition confirms the point: she admits she did not see Cooprider place anything in either drink, did not see him crush or dissolve any medication, cannot identify which drink allegedly contained medication, and concedes that "no one can say with 100 percent certainty" because there was no testing of the drinks or alleged substance. (*See* Ex. 3, Davis Dep. at 176:14–20; 184:10–25; 185:2–8; 202:9–23; 205:9–19; 206:5–20; 207:2–19.) At most she offers a lay inference from timing, suspicion, and accusation. Rule 56 requires admissible evidence, not speculation.

4. In the alternative, even if any fact issue remained on ingestion and causation, each discrete statutory and criminal theory Davis stacks within her wrongful-death claim fails as a matter of law—because the conduct it targets did not cause the death, because the statute protects a different class against a different harm, or because the criminal statute creates no civil liability. Cooprider is entitled to partial summary judgment eliminating each such theory.

## II. Exhibits

5. Defendant relies on the following exhibits in support of this Motion:

**Exhibit 1:** Expert Report of Dr. Roberta L. Krueger. (Krueger Report)

**Exhibit 2:** Expert Report of Dr. Stacey L. Hail. (Hail Report)

**Exhibit 3:** Excerpts from May 28, 2026 Deposition of Liana Davis. (Davis Dep.)

**Exhibit 4:** Declaration of Craig Dupen.

## III. Statement of Undisputed Material Facts

6. Davis brings suit under the Texas Wrongful Death Act, alleging that Cooprider "murdered Liana Davis's unborn child by secretly dissolving abortion pills into a hot beverage that he had prepared" and that "Baby Joy died at eight weeks LMP." (First Am. Compl. [Dkt. 123] at 1 & ¶ 72.) The claim thus depends on an alleged surreptitious administration of abortion-inducing drugs on April 5, 2025, and a resulting fetal demise.

7. Davis alleges that on the night of April 5, 2025, Cooprider prepared hot chocolate, laced it with abortion pills while she stepped outside, and that within approximately 30 minutes she began hemorrhaging and cramping; she then presented to the Corpus Christi Medical Center Bay Area emergency room in the early hours of April 6, 2025, where she was told the pregnancy was not viable. (*Id.* at ¶¶ 51–54, 72.)

8. Davis's wrongful-death claim stacks numerous statutory and criminal predicates against Cooprider: that he, as a non-physician, knowingly "provided" abortion-inducing drugs and did so without the required protocol or informed consent (Tex. Health & Safety Code §§ 171.063(a)(1)–(2), 171.0631); that he "performed an abortion" without a medical license, without informed consent or an ultrasound, and outside a licensed facility (*Id.* at §§ 171.003, 171.011; ch. 245); that he violated the federal Comstock Act (18 U.S.C. §§ 1461–1462); that he violated Tex. Rev. Civ. Stat. arts. 4512.1–4512.6 and Tex. Health & Safety Code § 170A.002; and that he committed murder and felony murder (Tex. Penal Code § 19.02(b)(1)–(3)). (First Am. Compl. [Dkt. 123] at ¶¶ 77–89.)

9. The abortion pills were allegedly ordered on February 6, 2025, and delivered on February 11, 2025. Cooprider allegedly began bringing the pills to Davis's house on February 18, 2025, sometimes leaving them behind and sometimes taking them back, and Davis repeatedly refused to take them. (*Id.* at ¶¶ 23–25.) The only administration Davis alleges is the April 5, 2025 hot chocolate. (*Id.* at ¶¶ 52, 74.)

10. Davis's only other claim, the HB 7 qui tam injunction pleaded in Claim for Relief No. 2, is asserted solely against the Aid Access defendants and seeks no relief against Cooprider. (*Id.* at ¶¶ 90–94 & Demand for Relief.)

11. Davis did not timely designate any retained or non-retained expert to opine on teratogenicity, pharmacology, toxicology, obstetrics and gynecology, general causation, or specific medical causation. She therefore has no expert opinion that she ingested mifepristone or misoprostol, that either drug was present in the beverage, that the alleged dose was pharmacologically active, or that any alleged exposure caused this pregnancy loss.

12. The Court's Scheduling Order set August 17, 2026 as the deadline for Davis's designation of experts, with written Rule 26(a)(2)(B) reports due at the time of designation. (Scheduling Order [Dkt. 29] at ¶ 3.) Davis did not designate any affirmative medical-causation expert by that deadline and did not move to extend it before it expired.

13. On October 26, 2026—more than two months after her affirmative-expert deadline—Davis served a "Designation of Rebuttal Expert Witness" under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), disclosing Dr. William R. Lile, Jr., D.O., and an accompanying report. (Dkt. 147; Dkt. 147-1.) By its own terms, the designation discloses testimony "intended solely to contradict or rebut evidence on the same subject matter identified by" Cooprider's experts, and states that Dr. Lile "will present testimony to contradict, rebut, and critique the methodologies, reasoning, and conclusions" of Drs. Hail and Krueger. (Dkt. 147 at 1–2.) Davis has never designated Dr. Lile—or anyone—as an affirmative expert in her case-in-chief on causation. Notwithstanding its rebuttal label, Dr. Lile's report attempts to advance affirmative opinions that Davis's "pregnancy loss, more likely than not, was caused by swallowing misoprostol that had been dissolved in the drinks that Mr. Cooprider prepared." (Dkt. 147-1 ¶¶ 23, 34, 43, 52.) The absence of a timely, affirmative causation expert is therefore not a curable technical defect; on this record it is a failure of proof on an essential element.

14. Plaintiff's deposition testimony also confirms that the case will not turn on competing expert interpretations of the same causation record. Only two fact witnesses—Plaintiff and Defendant—were present for the events inside the home on April 5–6, 2025. Plaintiff admitted she was not watching Defendant prepare either drink the entire time; she did not see his hands on her cup or spoon; she did not see him crush, dissolve, or place any medication in a drink; she did not find pill residue on the TV tray or kitchen counter; she had no photograph of the alleged

medication as found that night; the drinks were not tested; and she could not say whether the alleged medication was in the first drink, the second drink, both, or neither. (Davis Dep. 128:16–129:1; 160:13–19; 176:14–20; 184:10–25; 185:2–18; 206:5–20; 207:2–19). Her testimony further confirms that she detected no unusual taste (other than alleged Disaronno), no chunks, and no bitter taste, and experienced no vomiting, no diarrhea, no fever, no incoherence, and no poison-control treatment. (Davis Dep. 160:13–161:4; 178:7–179:25; 180:1–9; 181:15–182:23). Those admissions leave Plaintiff with speculation, not admissible fact testimony that she ingested any abortion medication.

15. Dr. Roberta L. Krueger is board certified in obstetrics and gynecology and has 39 years of clinical experience. (Krueger Report, Exhibit 1, at 1). After reviewing Plaintiff's medical records, she concluded to a reasonable degree of medical probability that the pregnancy was unhealthy and resulted in a first-trimester loss unrelated to the alleged ingestion. (*Id.* at 2–5). The objective indicators included a fetal heart rate of 98 beats per minute at approximately five weeks and six days, abnormally slow serial hCG increases, low progesterone, growth lag on the April 6 ultrasound, advanced maternal age, and a subchorionic hematoma. (*Id.* at 1–3). Dr. Krueger opines that the pregnancy was nonviable before Plaintiff reached the emergency department and that the loss occurred sometime after the March 21 ultrasound but before the April 6 visit. (*Id.* at 5).

16. Dr. Krueger further explains that mifepristone blocks progesterone and ordinarily takes 24 to 48 hours to produce cramping and bleeding, making Plaintiff's claimed onset within 30 minutes—and fetal demise within at most four hours—medically implausible. (*Id.* at 4). She also explains that misoprostol degrades with exposure to humidity, air, or temperatures above 77 degrees Fahrenheit; thus, tablets allegedly stored outside sealed foil packaging or placed in hot

chocolate would be materially degraded or ineffective. (*Id.*) The absence of fever and diarrhea further weighs against ingestion of a high dose. (*Id.*)

17. Dr. Stacey L. Hail is double board certified in emergency medicine and medical toxicology. (Hail Report, Exhibit 2, at 1). Using differential diagnosis and a literature review addressing misoprostol pharmacology, toxicity, overdose, side effects, and poisoning, she compared the alleged exposure with Plaintiff's clinical presentation. (*Id.* at 2–4, 7–8). Dr. Hail concluded to a reasonable degree of medical probability that Plaintiff's reported symptom onset was inconsistent with misoprostol used alone and that Plaintiff displayed none of the objective signs associated with the alleged 2 mg overdose. (*Id.* at 7–8). Plaintiff was afebrile and had normal heart rate, blood pressure, oxygen saturation, mental status, electrolytes, anion gap, creatinine, and coagulation testing; she had no nausea, vomiting, diarrhea, objective abdominal tenderness, hemorrhage, respiratory distress, hypotension, tachycardia, hypoxia, renal impairment, or coagulopathy. (*Id.* at 6, 8). Dr. Hail therefore concludes that, more likely than not, Plaintiff was not poisoned by misoprostol on April 5–6, 2025. (*Id.* at 8).

## IV. Summary Judgment Standard

18. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant identifies an absence of evidence supporting an essential element on which the nonmovant bears the burden at trial, the nonmovant must designate specific, admissible evidence showing a genuine issue for trial; conclusory assertions, speculation, and a mere scintilla of evidence do not suffice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## V. ARGUMENT & AUTHORITIES

### A. Plaintiff Bears the Burden to Prove Medical Causation With Competent Evidence.

19. Plaintiff must prove that Defendant's alleged conduct was a cause-in-fact of the fetal demise. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) (Medical causation must be proven and tied to the specific injury.). Causation is an essential element of the wrongful-death claim because the Act permits recovery only when the decedent's injury would have entitled the decedent to maintain an action had death not ensued. TEX. CIV. PRAC. & REM. CODE § 71.003(a). At summary judgment, Plaintiff must produce admissible evidence from which a reasonable jury could find that the alleged drug exposure more likely than not caused the miscarriage. *Young v. Mem'l Hermann Hosp. Sys.*, 573 F.3d 233, 235-36 (5th Cir. 2009) (applying Texas law and affirming summary judgment where proof did not show causation was more likely than not); *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).

### B. Medical Causation Here Is Beyond Common Knowledge and Requires Expert Testimony.

20. Whether alleged exposure to mifepristone or misoprostol under the circumstances pleaded caused this particular miscarriage is a complex medical question outside ordinary lay knowledge. Texas law requires expert testimony when the causal link is not within common experience, and that requirement is especially forceful in pharmaceutical and chemical-exposure cases. *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010); *Guevara v. Ferrer*, 247 S.W.3d 662, 665–67 (Tex. 2007); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 713–15 (Tex. 1997). Applying Texas law, the Fifth Circuit likewise requires reliable expert proof for chronic or medically complex exposure injuries beyond lay understanding. *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 761–64 (5th Cir. 2024); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 469–70 (5th Cir. 2012). Without such proof, Plaintiff cannot reach a jury on causation.

21. Plaintiff must establish both general causation—that the medication is capable of causing the type of injury alleged—and specific causation—that the alleged exposure caused this miscarriage. *Havner*, 953 S.W.2d at 714-15; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351-52 (5th Cir. 2007). Sequence matters: a differential diagnosis or differential etiology addresses specific causation only and is not admissible unless reliable general-causation evidence first "rules in" the substance as capable of causing the injury. *Johnson*, 685 F.3d at 468–69; *Knight*, 482 F.3d at 351. The pleadings identify no expert proof satisfying either requirement.

### C. Lay Opinions, Temporal Proximity, and Speculation Are Inadmissible and Insufficient as a Matter of Law.

22. Plaintiff's own testimony demonstrates why this is not a jury question based on ordinary experience. She did not see Defendant put anything in either drink, did not see his hands on her cup or spoon, did not see him crush any medication, did not inspect or preserve residue, and cannot identify whether any alleged medication was in the first drink, the second drink, both, or neither. (Davis Dep. 176:14–20; 184:10–25; 185:2–18; 206:5–20; 207:2–19). She admitted that it was "possible" Defendant gave her "nothing," and that no one can say with 100 percent certainty because she did not see it occur and there was no testing. (Davis Dep. 158:13–159:3; 183:22–184:7; 205:9–19). Those admissions are dispositive at summary judgment because temporal association and suspicion are not legally sufficient proof of medical causation. *Newsome*, 123 F.4th at 763–64; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278–79 (5th Cir. 1998) (en banc); *Guevara*, 247 S.W.3d at 668. Nor may a factfinder infer causation merely because one event preceded another; that is the *post hoc ergo propter hoc* fallacy. *Jelinek*, 328 S.W.3d at 533. Plaintiff's lay inference is therefore inadmissible speculation, not competent evidence creating a genuine dispute.

**D. The Record Lacks Any Admissible Expert Opinion Supporting Causation; Thus, There Is a Failure of Proof of an Essential Element.**

23. Plaintiff designated no expert supporting medical causation by the Court-ordered deadline. That omission is dispositive. Plaintiff always knew a medical expert was essential: her claim depends on whether any abortion medication was ingested, whether the amount was pharmacologically capable of causing fetal demise, whether the timing and symptoms fit that exposure, and whether other recognized explanations were more likely. Yet she did not designate a retained or non-retained expert, did not move to extend the deadline before it expired, and has not identified facts establishing excusable neglect. She therefore lacks admissible evidence that any drug was ingested, that any alleged dose was sufficient, or that the alleged exposure—as opposed to the pregnancy's documented abnormalities and other recognized risk factors—caused this loss. That failure is dispositive under *Celotex*, 477 U.S. at 322–23. The Fifth Circuit repeatedly affirms summary judgment when required causation opinions are absent or excluded. *Ruffin v. BP Expl. & Prod., Inc.*, 176 F.4th 855, 860–61 (5th Cir. 2026); *Newsome*, 123 F.4th at 765–66; *Johnson*, 685 F.3d at 469–70; *McNabney v. Lab'y Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) (per curiam). The failure is especially stark because Drs. Krueger and Hail supply affirmative, case-specific opinions negating causation, further highlighting Plaintiff's un-met need for affirmative expert opinions supporting causation.

24. Treating-provider records or lay testimony do not cure that failure. Rule 26(a)(2)(A)'s designation requirement applies to all testifying experts, including treating physicians, and a party's failure to timely designate justifies exclusion of the witness's expert testimony. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882–83 (5th Cir. 2004). A witness not disclosed as required by Rule 26(a)(2) "is not allowed to use that information or witness . . . on a motion," Fed. R. Civ. P. 37(c)(1), unless the failure was substantially justified or

harmless—a question the Fifth Circuit resolves by weighing (1) the explanation for the failure, (2) the importance of the testimony, (3) prejudice to the opposing party, and (4) the availability of a continuance to cure it. *Hamburger*, 361 F.3d at 883; *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Davis's medical records do not supply the missing opinion: records that do not address causation neither alert the defense nor substitute for a disclosed causation opinion. *Hamburger*, 361 F.3d at 883; *Bordenave v. Delta Air Lines, Inc.*, 2020 WL 377017, at *3-5 (M.D. La. Jan. 23, 2020) (undisclosed treating physicians are "fact witnesses only" and cannot create a causation fact issue). And a treating physician's status does not excuse the need for a reliable methodology and a causation opinion stated to a reasonable degree of medical probability. *Havner*, 953 S.W.2d at 712–14.

25. Davis's October 26, 2026 rebuttal designation also does not rescue her claim. A rebuttal expert disclosed under Rule 26(a)(2)(D)(ii) may offer testimony "intended solely to contradict or rebut evidence on the same subject matter" identified by the opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). Rebuttal evidence "may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief," and "is not to be used as a continuation of the case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)). A witness "whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness.'" *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 333 n.2 (5th Cir. 1981) (quoting *Morgan v. Com. Union Assurance Co.*, 606 F.2d 554, 556 (5th Cir. 1979)). A party therefore "may not offer a rebuttal expert to supplement a gap in the evidence that a party has proffered to establish their prima facie case." *See, e.g., Beck v. Johnson*, No. 3:24CV536-TKW-HTC, 2025 WL 5274401, at *4 (N.D. Fla. Sept. 29, 2025).

26. Medical causation is Davis's affirmative burden, and her designation of Dr. Lile is, by its own terms, "intended solely to contradict or rebut" Cooprider's experts. (Dkt. 147 at 1.) It cannot substitute for the affirmative causation opinion she was required to designate by August 17, 2026. That Dr. Lile disagrees with Drs. Hail and Krueger does not transform his affirmative causation opinions into proper rebuttal: "disagreeing with a defense expert, alone, does not render a plaintiff's expert one sounding in rebuttal," and courts "consistently strike rebuttal experts who speak directly to a plaintiff's prima facie case." *Beck*, 2025 WL 5274401, at *5. Nor may Davis cure a missed affirmative deadline by relabeling her expert as "rebuttal"; a "wait and see" approach would let her reverse the order of proof and render the Court's staggered disclosure deadlines superfluous. *Id.* at *4–5; *Marmo*, 457 F.3d at 759–60.

27. To the extent Dr. Lile's report offers affirmative causation opinions—that the loss "more likely than not[] was caused by swallowing misoprostol" (Dkt. 147-1 ¶¶ 23, 34, 43, 52)—those opinions are untimely and should be excluded or confined to rebuttal under Rule 37(c)(1) unless Davis shows the omission was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Fifth Circuit weighs four factors: the explanation for the failure, the importance of the testimony, prejudice to the opposing party, and the availability of a continuance to cure it. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996). Davis offers no explanation for failing to designate an affirmative causation expert; Cooprider built this Motion on the documented absence of such proof and would be prejudiced by a late reversal of the order of proof; and the importance of expert testimony "cannot singularly override the enforcement" of the Court's scheduling order. *Geiserman*, 893 F.2d at 791–92.

28. Confined to its proper function, Dr. Lile's rebuttal does not raise a genuine issue on an element Davis must affirmatively prove. Where a plaintiff who bears the burden on causation designates only a rebuttal expert, that "evidence does not save" the claim because it "is not admissible in Plaintiff's case-in-chief," and summary judgment follows for want of affirmative causation proof. *Maraj v. Massachusetts*, 953 F. Supp. 2d 325, 334–35 (D. Mass. 2013). Davis "cannot attempt to create a fact issue with evidence of facts that cannot be proven" in her case-in-chief at trial. *Geiserman*, 893 F.2d at 793.

**E. Daubert/Rule 702 Gatekeeping Confirms Exclusion of Any Unsupported Causation Opinions.**

29. Any causation opinion Plaintiff proffers must satisfy Federal Rule of Evidence 702. The Court must determine that the witness is qualified, that the opinion rests on sufficient facts or data and reliable principles and methods, and that those principles and methods were reliably applied to the facts. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). In this context, the methodology must bridge the analytical gap between the scientific material and the proposed conclusion, reliably account for alternative causes, and fit the medication, exposure, timing, and injury actually alleged. *Knight*, 482 F.3d at 354–55; *Moore*, 151 F.3d at 276–79.

30. Opinions based solely on temporal proximity, speculation, or the expert's *ipse dixit* are inadmissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Black v. Food Lion, Inc.*, 171 F.3d 308, 313–14 (5th Cir. 1999). An expert's testimony must be reliable "at each and every step," including the methodology, underlying facts, and link between those facts and the conclusion. *Knight*, 482 F.3d at 355. Once unsupported causation testimony is excluded, the resulting failure of proof on an essential element requires summary judgment. *Ruffin*, 176 F.4th at 864–65; *Johnson*, 685 F.3d at 469–70.

### 1. The Defense Experts Affirmatively Negate Specific Causation, and Dr. Lile's Rebuttal Cannot Create a Genuine Fact Issue.

31. Dr. Krueger's obstetrical analysis identifies objective evidence that the pregnancy was failing before the alleged exposure. The March 21 fetal heart rate was below the expected range; hCG rose abnormally slowly rather than doubling every 48 to 72 hours; progesterone remained low; the embryo measured behind expected gestational age on April 6; and the ultrasound documented a subchorionic hematoma. (Krueger Report, Exhibit 1, at 1–3.) Plaintiff was also 37 years old, an independent risk factor for first-trimester loss. *Id.* at 3. Based on those combined findings, Dr. Krueger concludes to a reasonable degree of medical probability that the pregnancy was unhealthy, became nonviable before the emergency-department presentation, and was not lost because of mifepristone or misoprostol. *Id.* at 2–5. Her analysis addresses the very requirement Plaintiff cannot satisfy: a reliable, case-specific explanation of what more likely than not caused this loss. *See Havner*, 953 S.W.2d at 720; *Jelinek*, 328 S.W.3d at 536.

32. Dr. Hail reaches the same bottom line through toxicology. She explains that when misoprostol is used without mifepristone, bleeding generally begins several hours after ingestion, not within the 30 minutes Plaintiff alleges; the single mifepristone tablet was reportedly recovered after the incident. (Hail Report, Exhibit 2, at 4, 6–7.) She also finds it unfeasible that ten tablets would rapidly and inconspicuously dissolve in one drink because the tablets require sustained buccal or sublingual contact to dissolve and their starch excipient is unlikely to dissolve completely in water. *Id.* at 7. Most important, the alleged 2 mg dose was 2.5 times the standard initial dose, yet Plaintiff exhibited none of the expected subjective or objective manifestations of overdose. *Id.* at 7–8. On that record, Dr. Hail concludes that Plaintiff's presentation was inconsistent with acute misoprostol toxicity and that, more likely than not, no misoprostol poisoning occurred. *Id.* at 8.

33. These opinions are complementary and mutually reinforcing: the obstetrical evidence shows a failing pregnancy before the alleged event, while the toxicological evidence shows no clinical presentation consistent with the alleged overdose. (Krueger Report, Exhibit 1 at 2–5; Hail Report, Exhibit 2 at 7–8.) Plaintiff cannot answer that proof with her own account of timing, the existence of medication packaging, or the fact of pregnancy loss. Those circumstances do not establish pharmacologically effective exposure or specific causation, and they do not permit a lay jury to choose among complex medical explanations without qualified expert guidance. *Newsome*, 123 F.4th at 761–64; *Johnson*, 685 F.3d at 468–70; *Moore*, 151 F.3d at 278–79.

34. Even if the Court were to consider Dr. Lile's rebuttal report as affirmative proof—which for the reasons above it should not—it would not create a genuine issue on specific causation. Dr. Lile concedes there is no test that can confirm misoprostol exposure, and his causation opinion rests on exactly the inputs Texas and Fifth Circuit law hold legally insufficient: temporal proximity between the drinks and the onset of bleeding, the absence of other explanations drawn from Davis's own self-report, and express assumptions that misoprostol (and perhaps an "unaccounted" mifepristone tablet) was placed in the drink and swallowed. (Dkt. 147-1 ¶¶ 26–28, 30, 43, 52.) Temporal proximity "raises suspicion" of causation but is "no more than a scintilla" and "in legal effect, is no evidence." *Guevara*, 247 S.W.3d at 667–68; *Newsome*, 123 F.4th at 763–64. An opinion that assumes the very facts in dispute—that Davis ingested a pharmacologically effective dose—does not establish them, and an expert may not bridge that analytical gap by *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Knight*, 482 F.3d at 354–55. Because Dr. Lile's opinion neither rules in general causation through a reliable methodology nor reliably excludes the documented abnormalities the defense experts identified, it would not permit a reasonable jury to find that the alleged exposure more likely than not caused the loss.

#### 2. Independently, There Is No Evidence That Davis Ingested Abortion Medication or That Cooprider Placed Any in Her Drink.

35. Even apart from the absence of expert causation evidence, Davis cannot prove two antecedent facts her claim requires: that she ingested abortion medication, and that Cooprider placed it in her drink. Only two people were present—Davis and Cooprider—and Davis has testified that she has no knowledge of either fact. She did not see Cooprider put anything in either cup; she did not see his hands on her cup or spoon; she did not see him crush, dissolve, or place any medication; she found no residue; the drinks were never tested; and she cannot say whether any medication was in the first drink, the second, both, or neither. (Davis Dep. 128:16–129:1; 160:13–161:3; 176:14–20; 184:8–25; 185:2–18; 205:9–19; 206:5–20; 207:2–19.) She agreed it is "possible" Cooprider gave her "nothing." (Id. 183:23–185:8.)

36. Opportunity and suspicion are not evidence of the two historical facts on which the claim depends. A plaintiff cannot reach a jury on cause in fact through "mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). And the sequence of events—pills in the house, a drink, and a pregnancy loss—does not establish that medication was placed in the drink and swallowed, any more than temporal proximity establishes medical causation. *See Guevara v. Ferrer*, 247 S.W.3d 662, 667–68 (Tex. 2007) (temporal proximity "raises suspicion," but suspicion "is no more than a scintilla and, in legal effect, is no evidence"). Because Davis would bear the burden on both facts at trial, the absence of admissible proof entitles Cooprider to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### F. In the Alternative, Each Separate Theory Pleaded Within the Wrongful-Death Claim Fails as a Matter of Law.

37. Rule 56(a) authorizes summary judgment on "part of each claim." Fed. R. Civ. P. 56(a). Even if any fact issue survived on ingestion and causation, each of the discrete statutory and

criminal theories Davis includes within her wrongful-death claim (First Am. Compl. [Dkt. 123] ¶¶ 77–89) fail as a matter of law and should be eliminated before trial.

38. *Providing the pills before April 5 did not cause the death.* Davis pleads that Cooprider "provided" abortion-inducing drugs in violation of Tex. Health & Safety Code §§ 171.063(a)(1)–(2) and 171.0631 by obtaining the pills in February and bringing or leaving them at her house. (First Am. Compl. ¶¶ 23–25, 78–80.) But the Wrongful Death Act imposes liability only for a wrongful act that "caus[es] an individual's death." Tex. Civ. Prac. & Rem. Code § 71.002(b). Conduct that "did no more than furnish a condition which made the injury possible" is not a cause in fact as a matter of law. *Doe*, 907 S.W.2d at 477; *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004) ("merely creating the condition that makes harm possible falls short as a matter of law of satisfying the substantial factor test"). Davis alleges she refused the pills and never took them; pills furnished in February but never ingested caused nothing. The "provision" theory therefore rises or falls with the disputed April 5 ingestion, on which there is no evidence.

39. *The informed-consent, ultrasound, licensing, and facility predicates fail because they protect a different class against a different harm and did not cause the death.* Davis invokes Tex. Health & Safety Code §§ 171.003, 171.011, 171.0631, and chapter 245, which require a licensed physician, informed consent, a mandatory ultrasound, and a licensed facility. (First Am. Compl. ¶¶ 80–83.) A criminal or regulatory statute supplies a civil standard of conduct only where the plaintiff belongs to the class the statute was meant to protect and suffered the type of harm it was designed to prevent, and only where imposing tort liability is otherwise appropriate. *Perry v. S.N.*, 973 S.W.2d 301, 304–09 (Tex. 1998). The informed-consent requirement, by its text, bars performing an abortion "without the voluntary and informed consent of the woman on whom the

abortion is to be performed." Tex. Health & Safety Code § 171.011. These provisions protect the pregnant woman's decision-making; they are not designed to protect an unborn child from physical harm—the injury this claim asserts. In all events, the absence of an ultrasound, a license, or a licensed facility did not cause the fetal demise; any harm Davis alleges flowed from the claimed drug exposure, not from a credentialing or paperwork deficiency, so these predicates fail for want of cause in fact. *IHS Cedars*, 143 S.W.3d at 799–800; *Doe*, 907 S.W.2d at 477.

40. *The federal Comstock Act supplies no civil liability.* Davis pleads that Cooprider violated 18 U.S.C. §§ 1461–1462. (First Am. Compl. ¶ 84.) Those are federal criminal statutes, and federal criminal statutes do not create a private civil cause of action or a tort standard of care absent congressional intent that is absent here. *See Eng. v. United States*, 2024 WL 1895091, at *2 (S.D. Tex. Apr. 30, 2024) (collecting *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634 (5th Cir. 1974), and *Bell v. Health-Mor, Inc.*, 549 F.2d 342 (5th Cir. 1977)); *Perry*, 973 S.W.2d at 304–05. The Comstock predicate also targets the February mailing, which did not cause an April 6 death for the same reason the pre-April 5 "provision" theory fails, discussed above.

41. *The murder and felony-murder theories are not civil liability standards.* Davis pleads murder and felony murder under Tex. Penal Code § 19.02(b)(1)–(3). (First Am. Compl. [Dkt. 123] ¶¶ 87–88.) A penal homicide statute is not automatically a civil standard of conduct; the Court must independently decide, under *Perry*, whether it is "fair, workable, and wise" to adopt it, and the five *Perry* factors foreclose doing so here. *Perry*, 973 S.W.2d at 304–09. Felony murder in particular "plainly dispenses with a culpable mental state," *Lomax v. State*, 233 S.W.3d 302, 304–05 (Tex. Crim. App. 2007)—a criminal strict-liability concept ill-suited to tort. And the only predicate felony Davis identifies for felony murder is the "shipment and delivery" of the pills (First

Am. Compl. [Dkt. 123] ¶ 88), conduct complete in February and, as pleaded, performed by Aid Access rather than Cooprider; it was not an act "in the course of and in furtherance of" anything done on April 5. *See* Tex. Penal Code § 19.02(b)(3); *Lomax*, 233 S.W.3d at 305. The remaining murder theories require proof that Cooprider's act caused the death, which fails for the reasons in Parts V above.

42. *The delay-in-care theory fails for want of a duty and of causation.* To the extent Davis contends Cooprider caused the death by promising to fetch her mother and drive her to the emergency room and then failing to do so (First Am. Compl. [Dkt. 123] ¶¶ 55–68), Texas recognizes no general duty to come to the aid of another in distress. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Even assuming a duty, Davis cannot prove to a reasonable medical probability that earlier arrival would have prevented the loss; Texas does not recognize recovery for a lost chance of a better outcome. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400, 405–06 (Tex. 1993). Davis's own account is that the doctors "were unable to save her baby" (First Am. Compl. [Dkt. 123] ¶ 72), not that timely arrival would have, and her experts have offered nothing on the point.

43. *Exemplary damages fail with liability.* Davis seeks punitive damages. (First Am. Compl. [Dkt. 123] ¶ 95(a).) Exemplary damages require clear and convincing evidence of fraud, malice, or gross negligence, Tex. Civ. Prac. & Rem. Code § 41.003(a), may be awarded only if actual damages are awarded, § 41.004(a), and in a wrongful-death action are available only where the death was caused by the defendant's willful act or gross negligence, § 71.009. With no evidence that Cooprider caused the death, there is no predicate for exemplary damages.

## VI. Conclusion & Prayer

Davis cannot carry her burden on the element that is the statutory heart of her wrongful-death claim—that a wrongful act of Cooprider caused the death. She has no affirmative causation expert at all, though she knew one was essential and allowed the August 17, 2026 deadline to pass; her belated, rebuttal-only designation of Dr. Lile cannot supply the affirmative proof her case-in-chief requires; her deposition supplies no admissible substitute, because she did not see Cooprider put anything in either drink, cannot identify what, if anything, she ingested, and concedes no one can know with certainty because there was no testing; and the only qualified medical opinions in the record affirmatively negate causation, with Dr. Krueger concluding that the pregnancy was unhealthy and nonviable before the emergency-department presentation and not lost because of mifepristone or misoprostol, and Dr. Hail concluding that Davis's timing and clinical presentation were inconsistent with misoprostol toxicity and that, more likely than not, no poisoning occurred. Each of those grounds independently defeats the claim, and the wrongful-death claim is the only claim Davis asserts against Cooprider. In the alternative, each separate theory pleaded within that claim fails as a matter of law.

For these reasons, Cooprider respectfully requests that the Court grant summary judgment in his favor on Davis's wrongful-death claim, order that Davis take nothing on her claims against him, and dismiss those claims with prejudice; or, in the alternative, grant partial summary judgment on each theory identified in Part V above; and grant Cooprider all other relief to which he is entitled.

Respectfully submitted,

*/s/ Craig Dupen*______
Barry A. Moscowitz
Texas State Bar No. 24004830
Federal Bar ID No. 31054
bmoscowitz@thompsoncoe.com
Craig Dupen
Federal Bar No. 1144807
State Bar No. 24065177
cdupen@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: (214) 871-8200
Fax: (214) 871-8209

Victoria L. Jimenez
Federal Bar No. 2522937
State Bar No. 24060021
vjimenez@thompsoncoe.com
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Fax: (713) 403-8299
**AND –**

Beth Klein
Colorado Bar No. 17477
S.D. Tex. Bar No. 3934133
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
Email beth@bethklein.com
Phone 303-448-8884
**AND –**

Mikel C. Watts
Texas State Bar No. 20981820
Federal Bar ID: #12419
Mikel@wattsllp.com
WATTS LAW FIRM, LLP
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/ *Craig Dupen*_____
Craig Dupen