UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br>Plaintiff,<br>v.<br>**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,<br>Defendants. | Case No. 2:25-cv-220 |

# PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORT OF ROBERTA L. KRUEGER, M.D.

Defendant Christopher Cooprider intends to offer Roberta L. Krueger, M.D., to opine that Liana Davis's pregnancy was intrinsically unhealthy and nonviable before April 6, 2025, and that the misoprostol (or Cytotec) and mifepristone that Ms. Davis alleges that she ingested did not cause her pregnancy loss. Dr. Krueger's opinions do not satisfy Federal Rule of Evidence 702 and should be excluded.

Dr. Krueger's report does not cite a single medical study, clinical guideline, treatise, or other authority. It identifies no methodology beyond Dr. Krueger's own say-so. It announces quantitative medical thresholds—such as expected HCG doubling rates, a progesterone cut-off for a "healthy" pregnancy, age-based miscarriage percentages, and a purported "chromosomal anomaly" rate for first-trimester pregnancy losses—without any stated source. And Dr. Krueger's theory that the misoprostol became "degraded" and ineffective before the alleged poisoning rests on factual assumptions that are nowhere to be found in the record: Dr. Krueger assumes improper

storage and exposure to heat in Mr. Cooprider's truck, while simultaneously acknowledging that there is "no evidence" of how the drugs were actually stored. *See* Krueger Report at 4.

Rule 702 requires Mr. Cooprider to demonstrate, by a preponderance of the evidence, that Dr. Krueger's opinions are based on sufficient facts or data, are the product of reliable principles and methods, and reflect a reliable application of those principles and methods to the facts of the case. Mr. Cooprider cannot carry that burden. Dr. Krueger's opinions are precisely the kind of unsupported, say-so testimony that Rule 702 commits to the Court's gatekeeping. The Court should exclude Dr. Krueger's report and preclude her from offering causation opinions at trial.

## BACKGROUND

Ms. Davis alleges that Mr. Cooprider murdered her unborn child by surreptitiously mixing misoprostol into one or more cups of hot chocolate that he had prepared for her on the night of April 5, 2025. Mr. Cooprider has retained Dr. Krueger, a board-certified obstetrician-gynecologist, to opine on "the causation of pregnancy loss in relation to the patient's medical history and other factors that may have contributed to the loss." Krueger Report at 1 (attached as Exhibit 1).

Dr. Krueger opines, "to a reasonable degree of medical probability," that Ms. Davis "had an unhealthy pregnancy which resulted in a first trimester loss," that the pregnancy "was nonviable before the patient came to the emergency department," and that "the first trimester loss did not occur as a result of alleged medication ingestion." Krueger Report at 2, 5. Dr. Krueger grounds the first conclusion on a slow rise in HCG, a low progesterone level, Ms. Davis's age, and a subchorionic hematoma. *See id.* at 3. In support, Dr. Krueger asserts medical benchmarks—that HCG "usually" doubles every 48–72 hours, that a progesterone "greater than 25 mg/ml suggests a healthy intrauterine pregnancy," and that miscarriage risk runs "from roughly

20% at age 35 to 40% at age 40," with 60% of first-trimester losses caused by fetal chromosomal anomaly—without citing any study, guideline, or any other source. *See id.*

Dr. Krueger grounds her medication opinion on a "degradation" theory: that misoprostol "is quickly degraded with humidity, air, or a temperature greater than 77 degrees F," and that Mr. Cooprider's misoprostol tablets were therefore rendered ineffective and incapable of inducing an abortion. *See* Krueger Report at 4. She acknowledges, however, that "[t]here is no evidence" concerning whether the misoprostol was stored properly, and "no mention of this in the police report or in L. Davis's testimony." *Id.* Dr. Krueger then assumes that the drugs that were allegedly mixed into Ms. Davis's drink were obtained in February, "stored in [Mr. Cooprider's] truck for an undetermined amount of time," and exposed to "the heat and humidity in Corpus Christi," and that, if placed in hot chocolate "greater than 77 degrees," the heat "would have quickly rendered the medication ineffective." *Id.* Dr. Krueger separately reasons that because Ms. Davis did not report diarrhea or a fever over 100.4 degrees, "[t]his suggests that she did not ingest a high dose of Cytotec," again without citation. *See id.* Dr. Krueger states that her opinions are "based on my training, education, and background" and "my review of the medical records supplied." *Id.* at 5. She identifies no other basis for any of the opinions in her report.

## ARGUMENT

### I. Legal Standard

Federal Rule of Evidence 702 permits expert opinion testimony only "if the proponent demonstrates to the court that it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court serves as a "gatekeeper," making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Williams v. BP Exploration & Production, Inc.*, 143 F.4th 593, 597–98 (5th Cir. 2025) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). That gatekeeping function applies to all expert testimony, scientific and experience-based alike, and the proponent bears the burden of establishing Rule 702's admissibility standards by a preponderance of the evidence. *See* Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 was recently amended on December 1, 2023, and the Advisory Committee explained that many courts had wrongly treated "the sufficiency of an expert's basis, and the application of the expert's methodology," as "questions of weight and not admissibility." Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also id.* ("These rulings are an incorrect application of Rules 702 and 104(a)."). Rule 702(d) was also amended to emphasize that "each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*

The Southern District of Texas has applied the amended Rule 702 to exclude a "weight-not-admissibility" argument as "exactly the kind of error" the amendment targets, holding that proponents of expert testimony must establish reliable application under Rule 702(d) and may not rest on an opinion that "ignored virtually all facts and data available." *Finite Utility Consulting, LLC v. Tawa Inc.*, No. CV H-23-432, 2025 WL 1544044, *3 (S.D. Tex. May 29, 2025)). The reliability inquiry "applies to all aspects of an expert's testimony: the methodology, the facts underlying the

expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted)); *see also id.* ("The expert's testimony must be reliable at each and every step or else it is inadmissible.").

The trial court's gatekeeping function "requires more than simply taking the expert's word for it." Fed. R. Evid. 702 advisory committee note to 2000 amendment. As the Seventh Circuit has explained:

> [E]xperts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.

*Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000); *see also Mid-State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## II. Dr. Krueger's Opinions Are Inadmissible Ipse Dixit

Dr. Krueger's opinions are grounded in nothing but her ipse dixit and should be excluded on that basis. *See Joiner*, 522 U.S. at 146; *Lang*, 217 F.3d at 924; *Mid-State Fertilizer*, 877 F.2d at 1339. Her report cites no study, guideline, treatise, or peer-reviewed source to support any of her assertions. It supplies no error rate, no generally accepted methodology, and no explanation of how she generated the specific quantitative thresholds on which her conclusions depend. *See* Krueger Report at 3–5. That is insufficient under Rule 702, and the Court should exclude Dr. Krueger's report

and testimony in its role as gatekeeper. Gatekeeping "requires more than simply taking the expert's word for it,"[1] and "[t]alking off the cuff—deploying neither data nor analysis—is not an acceptable methodology."[2]

Dr. Krueger's approach is no different from the expert report in *Williams v. BP Exploration & Production, Inc.*, 143 F.4th 593 (5th Cir. 2025), where the plaintiff's medical expert "purportedly used a differential etiology approach" but "after three sentences, and with zero analysis," simply "concluded" that the plaintiff's condition "must be due to his oil spill cleanup work. *See id.* at 600.[3] Dr. Krueger's opinions suffer from the same deficiencies. Dr. Krueger offers a mere conclusion that Ms. Davis's pregnancy loss was caused by intrinsic factors rather than the ingestion of misoprostol, and announces these conclusions without any analytical bridge from data to opinion. Courts in this district correctly exclude these types of "unsupported, self-contradicted, or assumptive," expert opinions, as an opinion resting only on an expert's assurances is not "validated by an independent and objective source beyond the expert's assurances." *Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 889, 890 (S.D. Tex. 2022); *see id.* at 889 ("Expert opinions that are unsupported, self-contradicted, or assumptive are to be excluded."); *id.* at 890 ("To test reliability, the Court assesses

1. Fed. R. Evid. 702 advisory committee note to 2000 amendment.
2. *Lang*, 217 F.3d at 924.
3. *See also Williams*, 143 F.4th at 600 ("While Dr. Freeman purportedly used a differential etiology approach to evaluate plausible causes for Williams' condition, Dr. Freeman's report never evaluated the plausible causes that he himself identified: (1) the 'fungal hypothesis,' (2) the 'superantigen hypothesis,' (3) the 'biofilm hypothesis,' and (4) the 'microbiome hypothesis'—each of which emphasize key environmental factors—(5) the 'eicosanoid hypothesis,' and (6) the 'immune barrier hypothesis.' The differential etiology approach requires 'determining the possible causes for the patient's symptoms and then eliminating each of these possible causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.' But Dr. Freeman's report did not do so. After three sentences, and with zero analysis, the report concluded that Williams' chronic pansinusitis must be due to his oil spill cleanup work." (footnote omitted)).

the intellectual rigor of the proposed expert testimony,[85] which must be validated by an independent and objective source beyond the expert's assurances"); *see also Mid–State Fertilizer*, 877 F.2d at 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

## III. Dr. Krueger's Opinions Are Not Based On Sufficient Facts Or Data

Rule 702(b) independently requires Dr. Krueger's opinions to be "based on sufficient facts or data." Fed. R. Evid. 702(b). An expert's opinions cannot depend on "[u]nsubstantiated factual assertions" or "altered facts and speculation designed to bolster [the proponent's] position." *Nucor*, 578 F. Supp. 3d at 889 (citations and internal quotation marks omitted); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts . . . is in all instances mandatory").

Dr. Krueger's degradation theory violates the requirements of Rule 702(b). Dr. Krueger assumes that all of the misoprostol in Mr. Cooprider's possession had been improperly stored, kept in a truck, and exposed to Corpus Christi's heat and humidity—while simultaneously acknowledging that "[t]here is no evidence" concerning whether the misoprostol was stored properly and no "mention of this in the police report or in L. Davis's testimony." Kruger Report at 4. An opinion that rests on assumed facts such as these is unreliable as a matter of law. *See Nucor*, 578 F. Supp. 3d at 897 ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation." (quoting *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). Because Dr. Krueger's degradation and dosage inferences rest on assumed rather than established facts, they are inadmissible under Rule 702(b). *See Williams*, 143 F.4th at 601; *Finite Utility Consulting, LLC v. Tawa Inc.*, No. CV H-23-432, 2025 WL 1544044, *2–3 (S.D. Tex. May 29, 2025)). And Dr. Krueger cites no facts at all to support her

claim that the heat of the hot chocolate "would have quickly rendered the medication ineffective." Krueger Report at 4.

Dr. Kruger's attempt to blame Ms. Davis's pregnancy loss on "low progesterone" also violates the requirements on Rule 702(b). Dr. Krueger claims to have reviewed Ms. Davis's medical records and notes that her progesterone measured at 13.9 mg/ML on March 24, 2025. *See* Krueger Report at 3. But Dr. Krueger entirely ignores the fact that Ms. Davis's progesterone jumped to 31.9 ng/mL only two days later, on March 26, 2025. *See* DavisMedicalRecords0019 (attached as Exhibit 2). Dr. Krueger's refusal to acknowledge this increase in Ms. Davis's progesterone on March 26, 2025, means that Dr. Krueger's opinion that Ms. Davis suffered from "low progesterone" is not based on sufficient facts or data.

Dr. Krueger also has no factual basis for citing Ms. Davis's "advanced maternal age" as a factor that (in Dr. Krueger's opinion) caused or contributed to her pregnancy loss. *See* Krueger Report at 3. Dr. Krueger cites no empirical evidence or peer-reviewed medical literature involving the risks of miscarriage in a 37-year-old woman. Nor does Dr. Krueger attempt to explain why she believes that Ms. Davis's "advanced maternal age" caused or contributed to the loss of her unborn child. And Dr. Krueger did not cite, analyze, or consider anything in Ms. Davis's medical records that would indicate that her pregnancy was in trouble on account of her age.

Dr. Krueger also lacked any factual basis for opining that an embryo with a heartbeat of 98 beats per minute at 5 weeks at 6 days is unlikely to survive. *See* Krueger Report at 2–3. Dr. Krueger cites no empirical evidence or medical literature to support this opinion, and her observation that an "average heart rate at this gestational age is 100–120 bpm"[4] does nothing to show that the embryonic heartbeat caused or contributed to Ms. Davis's pregnancy loss. Dr. Krueger's speculative assertion that a

4. Krueger Report at 3.

"subchorionic hemorrhage" "may have contributed"[5] to Ms. Davis's pregnancy loss is also ungrounded in any facts, as Dr. Krueger cites no empirical evidence or peer-reviewed medical research to support this claim.

Finally, Dr. Krueger has no factual basis to support her bald assertion that it would be "unlikely" for Ms. Davis's consumption of the allegedly tainted drink to lead to pregnancy loss "within 30 minutes . . . or even 4 hours later." Kruger Report at 4. Dr. Krueger cites no empirical evidence, no peer-reviewed medical literature, and nothing but her own say-so. Dr. Krueger has no factual basis for opining that the reported timeline is inconsistent with Ms. Davis's claim that her pregnancy loss was caused by drinking a beverage laced with misoprostol shortly before the bleeding began.

## IV. Dr. Krueger's Opinions Are Not The Product Of Reliable Principles Or Methods

Rule 702(c) requires Dr. Krueger's opinions to be "the product of reliable principles and methods." Fed. R. Evid. 702(c). Yet Dr. Krueger's report identifies no such principles or methods. It does not provide a differential diagnosis, a recognized diagnostic protocol, or any analytic process; it instead says that Dr. Krueger's opinions rest on her "training, education, and background" and her "review of the medical records of supplied to me regarding this matter." Krueger Report at 5.

The reliability requirement, however, "applies to all aspects of an expert's testimony," and an expert opinion "must be reliable at each and every step or else it is inadmissible." *Nucor*, 578 F. Supp. 3d at 890. When an expert offers quantitative benchmarks—such as the purported HCG doubling intervals, progesterone thresholds, and age-specific loss rates that appear in Dr. Krueger's report[6]—with no source and no stated methodology for deriving or applying them, the opinion cannot be

5. Krueger Report at 3.
6. *See* Krueger Report at 3.

deemed "the product of reliable principles and methods" under Rule 702(c). *See id.* at 890 ("[E]xpert testimony . . . must be validated by an independent and objective source beyond the expert's assurances.").

## V. Dr. Krueger Did Not Reliably Apply Any Principles Or Methods To The Facts

Finally, Rule 702(d) requires that Dr. Krueger's opinions "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Even if one were to assume for the sake of argument that Dr. Kruger applied "principles" and "methods" to the facts of this case, her application of those "principles" and "methods" would not qualify as "reliable" under Rule 702(d). Dr. Krueger infers that Ms. Davis "did not ingest a high dose of [misoprostol]" from the absence of diarrhea and fever, without citing any source linking those symptoms to the specific exposure alleged. *See* Krueger Report at 4. Dr. Krueger converts an acknowledged evidentiary void surrounding the storage of the misoprostol into an affirmative conclusion that the drugs had been rendered "useless." *Id.* Those leaps represent the type of "analytical gap" that Rule 702(d) forbids, and they mirror the unreliable application that the Fifth Circuit found disqualifying in *Williams*. *See Williams*, 143 F.4th at 600 ("Dr. Freeman did not reliably apply the differential etiology approach and cannot meet Rule 702(d)'s requirement for expert witnesses."); *see also Finite Utility Consulting, LLC v. Tawa Inc.*, No. CV H-23-432, 2025 WL 1544044, *3 (S.D. Tex. May 29, 2025)).

## CONCLUSION

The Court should exclude the expert report of Roberta L. Krueger, M.D., and preclude Dr. Krueger from offering opinion testimony at trial.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: November 16, 2026

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 16, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*