UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **Liana Davis**,<br><br>Plaintiff,<br><br>v.<br><br>**Christopher Cooprider**; **Aid Access GmbH**; **Rebecca Gomperts**,<br><br>Defendants. | Case No. 2:25-cv-220 |

## PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORT OF STACEY L. HAIL, M.D.

Defendant Christopher Cooprider intends to offer Stacey L. Hail, M.D., a medical toxicologist, to opine that Liana Davis's clinical presentation was "inconsistent with acute misoprostol toxicity" and that, "[m]ore likely than not," Ms. Davis "was not poisoned by misoprostol" on April 5–6, 2025. *See* Hail Report at 7–8 (attached as Exhibit 1). The Court should exclude those opinions under Federal Rule of Evidence 702.

Dr. Hail purports to apply a "differential diagnosis"[1] methodology and a "literature review,"[2] but the reliability of expert testimony depends on how these methods are applied, not on whether a methodology is stated. Dr. Hail's opinions fail at the application stage in four related ways. First, Dr. Hail's conclusion that no poisoning occurred outruns her own data: she concedes that misoprostol "is rapidly metabolized"[3] and that "no practical test exists to determine if an exposure to misoprostol

1. Hail Report at 2.
2. Hail Report at 3.
3. Hail Report at 7.

occurred,"[4] yet she somehow converts that evidentiary void into an affirmative opinion that Ms. Davis was never exposed to misoprostol. Second, the overdose literature that Dr. Hail invokes considers extremely high ingestions of misoprostol ranging from 2.4 to 12 milligrams—well in excess of the 0.8 milligrams needed to induce a miscarriage, and significantly in excess of the 2 milligrams contained in the ten misoprostol tablets that were missing and unaccounted for. Third, Dr. Hail bases material steps on disputed and unverified facts, including the contents of text messages and a Salmonella diagnosis that she admits is "not available in the provided medical records." Hail Report at 5. Fourth, Dr. Hail's symptom-timeline and tablet-dissolution reasoning rests on assumptions that she did not test.

Rule 702, as amended on December 1, 2023, requires the proponent of expert testimony to demonstrate, by a preponderance of the evidence, that the proffered opinions are based on sufficient facts or data, are the product of reliable principles and methods, and reflect a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702(b)–(d). Because Dr. Hail's opinion does not satisfy these requirements of Rule 702(b)–(d), the Court should exclude her report and preclude her from offering causation or exposure opinions at trial.

## BACKGROUND

Ms. Davis alleges that Mr. Cooprider murdered her unborn child by surreptitiously mixing misoprostol into one or more cups of hot chocolate that he had prepared for her on the night of April 5, 2025. Mr. Cooprider has retained Dr. Hail, who is board certified in emergency medicine and medical toxicology, "to render an opinion regarding the possibility of intentional poisoning with misoprostol." Hail Report at 2. Dr. Hail states that she used "the method of 'differential diagnosis' to rule in or rule out certain disease processes," and that, where "direct laboratory testing for a

4. Hail Report at 7.

substance is not feasible, assessment relies upon analysis of the overall clinical presentation and known pharmacologic effects." *Id.* Dr. Hail describes a PubMed literature search and cites published reports of misoprostol toxicity. *See id.* at 3.

Dr. Hail concludes that Ms. Davis's "clinical presentation is inconsistent with acute misoprostol toxicity" and that, "[m]ore likely than not, LD was not poisoned by misoprostol on or around 4/5–6/2025 as she was not manifesting ANY of the objective signs or symptoms associated with a misoprostol overdose." Hail Report at 8. Dr. Hail notes that the emergency-department findings revealed no fever, tachycardia, hypotension, altered mental status, or gastrointestinal symptoms. *See id.* at 8.

Several features of Dr. Hail's analysis undermine its reliability. Dr. Hail acknowledges, for example, that "[b]lood testing for the presence of misoprostol is not feasible because the drug is rapidly metabolized" and that "no practical test exists to determine if an exposure to misoprostol occurred." Hail Report at 7. And the overdose case reports that Dr. Hail cites involve ingestions of misoprostol ranging from 2.4 to 12 milligrams. *See id.* at 4. Yet Ms. Davis is not alleging that Mr. Cooprider put such extreme quantities of misoprostol in her drink, as each of Mr. Cooprider's misoprostol tablets contained only 0.2 milligrams of the drug. *See id.* at 7. Dr. Hail also relies on text messages from Ms. Davis to assess medication compliance and other conduct, as well as a supposed "Salmonella typhi" diagnosis that Dr. Hail concedes "is not available in the provided medical records." *Id.* at 5. Dr. Hail opines that it "seems unfeasible that 10 tablets of misoprostol could be rapidly dissolved and ingested unnoticed." *Id.* at 7. And Dr. Hail asserts that misoprostol-bleeding onset "could take up to 3–6 hours" when misoprostol is ingested as a solo agent, while simultaneously acknowledging that "symptom onset varies" in these situations. *See id.*

## ARGUMENT

### I. Legal Standard

Federal Rule of Evidence 702 permits expert opinion testimony only "if the proponent demonstrates to the court that it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court serves as a "gatekeeper," making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Williams v. BP Exploration & Production, Inc.*, 143 F.4th 593, 597–598 (5th Cir. 2025) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). That gatekeeping function applies to all expert testimony, scientific and experience-based alike, and the proponent bears the burden of establishing Rule 702's admissibility standards by a preponderance of the evidence. *See* Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 was recently amended on December 1, 2023, and the Advisory Committee explained that many courts had wrongly treated "the sufficiency of an expert's basis, and the application of the expert's methodology," as "questions of weight and not admissibility." Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also id.* ("These rulings are an incorrect application of Rules 702 and 104(a)."). Rule 702(d) was also amended to emphasize that "each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*

The Southern District of Texas has applied the amended Rule 702 to exclude a "weight-not-admissibility" argument as "exactly the kind of error" the amendment targets, holding that proponents of expert testimony must establish reliable application under Rule 702(d) and may not rest on an opinion that "ignored virtually all facts and data available." *Finite Utility Consulting, LLC v. Tawa Inc.*, No. CV H-23-432, 2025 WL 1544044, *3 (S.D. Tex. May 29, 2025)). The reliability inquiry "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted)); *see also id.* ("The expert's testimony must be reliable at each and every step or else it is inadmissible.").

The trial court's gatekeeping function "requires more than simply taking the expert's word for it." Fed. R. Evid. 702 advisory committee note to 2000 amendment. As the Seventh Circuit has explained:

> [E]xperts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.

*Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000); *see also Mid–State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## II. Dr. Hail Is Not Qualified To Opine On Whether Ms. Davis's Pregnancy Loss Was Caused By "Other Risk Factors" That She Mentions In Her Report

In the conclusion section of her expert report, Dr. Hail writes:

> LD experienced early pregnancy failure between 03/15/2025 and 04/06/2025. There are other risk factors for pregnancy loss including infection (e.g., chlamydia), advanced maternal age and low progesterone.

Hail Report at 8. Dr. Hail's opinion that Ms. Davis "experienced early pregnancy failure between 03/15/2025 and 04/06/2025" is meaningless, as both sides agree that Ms. Davis suffered an early pregnancy loss "between" March 15, 2025, and April 6, 2025, and they are disputing only the cause of that pregnancy loss. To the extent that Dr. Hail opines or suggests that Ms. Davis's pregnancy loss was caused by "other risk factors" that she mentions in her report ("infection (e.g., chlamydia), advanced maternal age and low progesterone"),[5] Dr. Hail's opinions fail the requirements of Rule 702(a), which allow experts to opine on a disputed factual question only when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Dr. Hail is board certified in emergency medicine and medical toxicology. She is not an OB-GYN and has no expertise in whether or what extent infection, chlamydia, advanced maternal age, or low progesterone causes or contributes to a pregnant woman's miscarriage. The Court should exclude any opinion that Dr. Hail might offer on the "other risk factors" cited in her report under Rule 702(a).

## III. Dr. Hail's Opinions Are Inadmissible Ipse Dixit

Dr. Hail's ultimate opinion—that Ms. Davis "was not poisoned by misoprostol"[6]—is connected to her data only by her ipse dixit. That Dr. Hail names a methodology does not make her conclusion reliable; the reliability inquiry "applies to

5. Hail Report at 8.
6. Hail Report at 8.

all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted)); *see also id.* ("The expert's testimony must be reliable at each and every step or else it is inadmissible."). A court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Hail concedes that misoprostol "is rapidly metabolized," that "no practical test exists to determine if an exposure to misoprostol occurred," and that determining exposure therefore "requires an assessment of the overall clinical picture." Hail Report at 7. From that acknowledged inability to confirm or exclude exposure by testing, Dr. Hail nonetheless draws the conclusion that no poisoning occurred. Dr. Hail relies on the absence of objective overdose signs, but that does not bridge the analytical gap between "exposure cannot be tested for" and "exposure did not occur"—particularly for an exposure of no more than two milligrams of misoprostol that Dr. Hail's own literature does not address. An opinion that purports to bridge this gap on the expert's say-so is inadmissible ipse dixit. *See* Fed. R. Evid. 702; *General Electric*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Dr. Hail's report also engages in impermissible ipse dixit when it opines that Ms. Davis's pregnancy loss was caused by "other risk factors" such as "infection (e.g., chlamydia), advanced maternal age and low progesterone." Hail Report at 8. Dr. Hail's report contains no analysis of these supposed "risk factors" or any attempt to quantify the risk that each of these factors presented to Ms. Davis's pregnancy. Nor does it contain citations of relevant medical literature to support an opinion that Ms. Davis's pregnancy loss was caused by factors other than the ingestion of misoprostol.

## IV. Dr. Hail's Opinions Are Not Based On Sufficient Facts Or Data

Rule 702(b) requires Dr. Hail's opinions to be "based on sufficient facts or data." Fed. R. Evid. 702(b). An expert's opinions cannot depend on "[u]nsubstantiated factual assertions" or "altered facts and speculation designed to bolster [the proponent's] position." *Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 889 (S.D. Tex. 2022) (citations and internal quotation marks omitted); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts . . . is in all instances mandatory").

Dr. Hail's opinions rest on several facts that are unverified or outside the record. Dr. Hail relies on text messages from Ms. Davis to assess medication compliance and other conduct, and Dr. Hail invokes a "Salmonella typhi" diagnosis that she admits "is not available in the provided medical records." Hail Report at 5. An opinion that depends on facts that the expert concedes are not in the record cannot satisfy Rule 702(b), as "[e]xpert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Nucor*, 578 F. Supp. 3d at 897. The Fifth Circuit has affirmed exclusion under Rule 702(b) when a causation expert's opinion rested on unsupported or mistaken factual assumptions. *See Williams v. BP Exploration & Production, Inc.*, 143 F.4th 593, 601 (5th Cir. 2025).

More importantly, Dr. Hail's claim that Ms. Davis was "diagnosed with Salmonella typhi during"[7] her pregnancy is an outright falsehood. The text message that Dr. Hail relies on to support this claim says only that Ms. Davis tested positive for the *antibodies for* Salmonella typhi, not the bacterium itself:

> The one thing I tested positive for on the febrile panel was for *antibodies for* salmonella typhi, the bacteria that causes typhoid fever. 🥧 However, the treatment for that is a azithromycin, which I just had two rounds of.

7. Hail Report at 5.

Davis004901 (attached as Exhibit 2) (emphasis added). A positive test for Salmonella typhi *antibodies* does not indicate an active typhoid fever infection; it merely shows that the patient's immune system has encountered the bacteria or a related trigger. This could be the sign of a remote or past infection, previous exposure to the bacteria, or a past typhoid vaccination, meaning that the patient has immunity rather than an active illness. Ms. Davis was never "diagnosed with Salmonella typhi" during her pregnancy, and Dr. Hail's factual assertion to the contrary is false. *See* Davis Decl. ¶ 6 (attached as Exhibit 3) ("I tested positive for the *antibodies for* Salmonella typhi, not the bacterium itself, which simply means that at some point in my 37 years, I could have been exposed to typhoid (not even contracted it). Dr. Hail's claim that I was 'diagnosed with Salmonella typhi' during my pregnancy is false. I was never 'diagnosed with Salmonella typhi' during my pregnancy.").

It is also false for Dr. Hail to assert that Ms. Davis "alleges she was poisoned with ten tablets of 200mcg misoprostol, or 2mg." Hail Report at 7. Ms. Davis does not know the precise number of misoprostol tablets that Mr. Cooprider mixed into her drink on the night of April 5, 2025, and Ms. Davis has not alleged or asserted that all 10 of the unaccounted-for misoprostol tablets were used in the alleged poisoning. *See* Davis Decl. ¶ 7 (attached as Exhibit 3) ("I do not know and I do not purport to know the exact number of misoprostol tablets that Mr. Cooprider mixed into my drink on the night of April 5, 2025"). It is of course possible that Mr. Cooprider used all ten of the missing misoprostol tablets when preparing Ms. Davis's hot chocolate on April 5, 2025, but it is also possible that Mr. Cooprider used only some and not all of those missing pills. *See id.* Dr. Hail has no factual basis for assuming that Mr. Cooprider either mixed either all 10 of the missing pills into Ms. Davis's drink or none of them.

Dr. Hail also has no factual basis for opining that Ms. Davis had "low progesterone" during her pregnancy. *See* Hail Report at 8. Dr. Hail does not base this assessment on anything that appears in Ms. Davis's medical records, but on a text message

that Ms. Davis sent to Mr. Cooprider and the brute fact that Ms. Davis had been "prescribed progesterone 200mg by mouth nightly." *Id.* Dr. Hail does not analyze the progesterone measurements that appear in Ms. Davis's medical records, and Dr. Hail is not qualified to opine on the sufficiency of Ms. Davis's progesterone levels because Dr. Hail is not an OB/GYN.

Finally, Dr. Hail has no factual basis for citing Ms. Davis's "advanced maternal age" as a factor that (in Dr. Hail's opinion) caused or contributed to her pregnancy loss. Dr. Hail cites no empirical evidence or peer-reviewed medical literature involving the risks of miscarriage in a 37-year-old woman. Nor does Dr. Hail attempt to explain why she believes that Ms. Davis's "advanced maternal age" caused or contributed to the loss of her unborn child. And Dr. Hail did not cite, analyze, or consider anything in Ms. Davis's medical records that would indicate that her pregnancy was in trouble on account of her age.

## V. Dr. Hail's Differential Diagnosis Is Not The Product Of Reliable Principles Or Methods As Performed

A differential diagnosis can yield reliable testimony, but "the results of a differential diagnosis are far from reliable *per se*." *Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 401–02 (5th Cir. 2016) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012)). A reliable differential diagnosis requires both eliminating alternative causes and affirmatively "ruling in" the suspected cause with a scientific basis; "merely 'ruling out' other possible explanations is not enough to establish reliability." *Sims*, 839 F.3d at 401–02. Dr. Hail, however, devotes her report to ruling misoprostol toxicity out, while offering no reasoned "ruling in" or "ruling out" of the alternative causes that she gestures toward—the chlamydia infection, Ms. Davis's advanced maternal age, and Ms. Davis's supposedly low progesterone. Instead, Dr. Hail merely lists these as more likely causes without any analysis and without tying any of these poten-

tial causes to Ms. Davis's pregnancy loss. *See* Hail Report at 8. When the record reflects no reliable basis for an expert's comparative causal judgment, the Fifth Circuit has upheld exclusion. *See Sims*, 839 F.3d at 403–04 ("Because the record does not reflect any reliable facts or data 'ruling in' McCort's downward displacement theory, the district court did not abuse its discretion in excluding it.").

An expert's method must also be "validated by an independent and objective source beyond the expert's assurances." *Nucor*, 578 F. Supp. 3d at 890. Dr. Hail's dissolution opinion—which asserts that it "seems unfeasible that 10 tablets of misoprostol could be rapidly dissolved and ingested unnoticed"—is presented without any testing, modeling, or data, and so is not the product of a reliable method as applied. *See* Hail Report at 7.

## VI. Dr. Hail Did Not Reliably Apply Her Methodology To The Facts

Rule 702(d) requires Dr. Hail's opinions to "reflect[ ] a reliable application of the principles and methods to the facts of the case"[8] and "stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology."[9] Dr. Hail's application of her methodology fail these requirements. Her toxicity analysis draws on overdose case reports involving victims who ingested 2.4 to 12 milligrams of misoprostol—far more than the amount that Ms. Davis was allegedly exposed to. *See* Hail Report at 4, 7. Extrapolating from higher-dose toxicity reports to conclude that a lower alleged dose should have produced similar effects is precisely the kind of unsupported "leap" that must be "reasonable and scientifically valid" to be admissible. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 460–461 (5th Cir. 2012) (citation and internal quotation marks omitted).

8. Fed. R. Evid. 702(d).
9. Fed. R. Evid. 702 advisory committee note to 2023 amendment.

Likewise, Dr. Hail's claim that bleeding beginning within 30 minutes is "inconsistent" with solo-misoprostol onset of "up to 3–6 hours" is undercut by her own acknowledgment that onset "varies." Hail Report at 7; *see also id.* ("When misoprostol is ingested as a solo agent, symptom onset varies, with some studies suggesting it could take up to 3–6 hours before vaginal bleeding begins."); *id.* at 4 ("When misoprostol is used alone, the time to onset of bleeding varies by several hours, with one study demonstrating that 90% of patients start bleeding after 3–6 hours." (citing Jayaweera, R. et al. *Medication Abortion Safety and Effectiveness With Misoprostol Alone.* JAMA Network Open; 2023; 6:10)). More importantly, the participants in the study that Dr. Hail cites took misoprostol sublingually, vaginally, or buccally, as misoprostol is supposed to be administered. Ms. Davis alleges that she took misoprostol orally and swallowed it, which would cause her to have a faster reaction to the drug. Because the link between Dr. Hail's data and her conclusion is not a reliable application of her stated method, her opinions fail the requirements of Rule 702(d). *See Williams*, 143 F.4th at 600; *Finite Utility Consulting, LLC v. Tawa Inc.*, No. CV H-23-432, 2025 WL 1544044, *3 (S.D. Tex. May 29, 2025)).

## CONCLUSION

The Court should exclude the expert report of Stacey L. Hail, M.D., and preclude Dr. Hail from offering opinion testimony at trial.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: November 16, 2026

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 16, 2026, I served this document through CM/ECF upon:

MIKAL C. WATTS
Watts Law Firm LLP
811 Barton Springs #725
Austin, Texas 78704
(512) 479-0500 (phone)
(512) 479-0501 (fax)
mikal@wattsllp.com

BETH KLEIN
Beth Klein, P.C.
350 Market Street, Suite 310
Basalt, Colorado 81621
(303) 448-8884 (phone)
beth@bethklein.com

BARRY MOSCOWITZ
VICTORIA JIMENEZ
OLIVER HAMBY
Thompson Coe LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 (phone)
(214) 871-8209 (fax)
bmoscowitz@thompsoncoe.com
vjimenez@thompsoncoe.com
ohamby@thompsoncoe.com

*Counsel for Defendant Christopher Cooprider*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*