**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| LIANA DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00220 |
| | § | |
| CHRISTOPHER COOPRIDER, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT CHRISTOPHER COOPRIDER'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S REBUTTAL EXPERT, WILLIAM R. LILE, JR., D.O.**

Defendant Christopher Cooprider files this motion under Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c)(1) and Federal Rule of Evidence 702, and would respectfully show the following:

## SUMMARY OF THE MOTION

Plaintiff designated no expert by her August 17, 2026 deadline. (D.E. 29 ¶ 3.) The Court then held her to a rebuttal expert "intended solely to contradict or rebut evidence on the same subject matter" as Defendant's experts. (D.E. 142 at 21; D.E. 146 at 1.) Plaintiff's rebuttal expert, Dr. William R. Lile, Jr., exceeds that limit. In ten paragraphs of his report he states what caused, and what did not cause, Plaintiff's pregnancy loss. In three of them he attributes the loss to misoprostol "dissolved in the drinks that Mr. Cooprider prepared for her." (D.E. 147-1 ¶¶ 30, 43, 52.) Those are the affirmative causation opinions Plaintiff

was required to disclose by August 17. They are not rebuttal, and Rule 37(c)(1) bars their use.

Independently, two sets of Dr. Lile's opinions fail Rule 702. His dismissal of the subchorionic hemorrhage rests on four sources: one cannot be located as cited, two reach the opposite conclusion, and one studies only outcomes after twenty weeks. His timeline opinion rests on a thirty-minute interval that his own Exhibit B contradicts, and on onset figures that appear in neither source he cites for them.

## I. BACKGROUND

### A. Plaintiff's expert deadline passed without a designation.

The Scheduling Order provides: "DESIGNATION OF EXPERTS BY PLAINTIFFS must take place on or before August 17, 2026." (D.E. 29 ¶ 3.) Written reports under Rule 26(a)(2)(B) were "due at the time of designation of each expert." (*Id.*) Plaintiff designated no expert and served no report by that date. The only expert designation Plaintiff has filed in this case is her October 26, 2026 rebuttal designation. (D.E. 147.) Discovery closed October 15, 2026. (D.E. 29 ¶ 5.)

### B. Defendant designated experts, and the Court limited Plaintiff to rebuttal.

Defendant designated Stacey L. Hail, M.D., FACMT, and Roberta L. Krueger, M.D., on September 17, 2026. (D.E. 136.) The Court ruled that Rule 26's default deadline governed and that Plaintiff could designate an expert "intended solely to contradict or rebut evidence on the same subject matter" as Drs. Hail and Krueger. (D.E. 142 at 21.) The Court later extended that deadline to October 26, 2026, and cautioned Plaintiff's counsel "that no

further extensions will be granted absent good cause." (D.E. 146 at 1.) Defendant advised the Court at that time that "Plaintiff's belated efforts to designate 'rebuttal' experts are quite clearly an attempt to backdoor in affirmative expert opinions necessary for Plaintiff's case." (D.E. 145 at 2.)

## C. The Lile designation and report.

Plaintiff designated Dr. Lile on October 26, 2026, representing that his testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by Mr. Cooprider in his expert disclosures." (D.E. 147 at 1.) In forming his opinions Dr. Lile purportedly reviewed the complaint, Plaintiff's medical records, the defense reports, and the parties' text messages, and he states that he has "spoken with and interviewed Ms. Davis." (D.E. 147-1 ¶ 6.) His report then states the following opinions on causation:

¶ 13 Chlamydia "more likely than not played no role in the pregnancy loss."

¶ 17 Plaintiff's age, "more likely than not, did not cause or contribute to her pregnancy loss."

¶ 23 The loss "was caused by the ingestion of misoprostrol [sic] and was not the result of a natural miscarriage."

¶ 30 The loss "was more likely than not caused by swallowing misoprostol that had been dissolved in the drinks that Mr. Cooprider prepared for her on the night of April 5, 2025."

¶ 34 The loss "was more likely than not caused by ingesting misoprostol shortly before she started bleeding."

¶ 38 The hCG declines "were more likely than not caused by an induced abortion that occurred shortly before midnight on April 5, 2025, rather than a natural miscarriage."

¶ 43 The loss, "more likely than not, was caused by swallowing misoprostol that had been dissolved in the drinks that Mr. Cooprider prepared for her."

¶ 44 The crown-rump-length difference "more likely than not had no effect and did not cause or contribute to Ms. Davis's pregnancy loss."

¶ 45 The subchorionic hemorrhage "more likely than not played no role in Ms. Davis's pregnancy loss and did not cause or contribute to it."

¶ 52 Same as ¶ 43.

The designation repeats the same conclusions: that "it is implausible to assert that Ms. Davis's pregnancy loss resulted from a natural miscarriage rather than an induced abortion" (D.E. 147 ¶ 1(h)), and that the hCG declines "were more likely than not caused by an induced abortion that occurred shortly before midnight on April 5, 2025, rather than a natural miscarriage that began days before" (*id.* ¶ 3(b)).

## II. LEGAL STANDARDS

A rebuttal expert may offer evidence "intended solely to contradict or rebut evidence on the same subject matter" identified by the opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii); D.E. 142 at 21. "Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief." *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 555 (5th Cir. 1979). When a plaintiff makes its prima facie case, "it also must offer evidence on any other issue of potential importance to the outcome in its case in chief." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764–65 (5th Cir. 1991). And a party's rebuttal disclosures cannot be used as "an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In deciding whether to exclude an untimely designated expert, the Fifth Circuit considers "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

Expert testimony is admissible only "if the proponent demonstrates to the court that it is more likely than not that," among other things, "the testimony is based on sufficient facts or data" and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d). The Court acts as gatekeeper for all expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The proponent "must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). "[T]he expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). Nothing requires a court "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III. ARGUMENT

### A. Dr. Lile's causation opinions are not rebuttal and must be excluded.

#### 1. The opinions attempt to supply an affirmative case Plaintiff did not timely designate.

Plaintiff bears the burden of proving that alleged ingestion of misoprostol and/or mifepristone caused her pregnancy loss. Drs. Hail and Krueger explain why the medical record does not support Plaintiff's account. A rebuttal witness may counter that explanation by arguing that the defense experts reasoned poorly, overlooked data, or reached conclusions the record does not support. Some of Dr. Lile's report attempts to do exactly that, and this motion does not seek to strike those aspects.

However, Dr. Lile does not stop there. He offers his own conclusion on the element Plaintiff must prove: that the loss "was caused by the ingestion of misoprostrol [sic]" (¶ 23), that it was "more likely than not caused by swallowing misoprostol that had been dissolved in the drinks that Mr. Cooprider prepared for her" (D.E. 147-1 at ¶¶ 30, 43, 52), and that each competing cause "more likely than not" played no role (¶¶ 13, 17, 44, 45). That is case-in-chief testimony. Rebuttal meets "new facts brought out in [the] opponent's case in chief," *Morgan*, 606 F.2d at 555; it is not a second opportunity to present the case-in-chief. The Court allowed an expert "solely" to contradict or rebut. (D.E. 142 at 21.) An opinion that does the work Plaintiff's August 17 designation was required to do is not "solely" rebuttal.

Paragraphs 30, 43, and 52 make the point plainly. Who prepared the drinks, and what was in them, are disputed facts for the jury. They are not a medical subject matter.

Dr. Lile's statement that misoprostol was "dissolved in the drinks that Mr. Cooprider prepared" adopts Plaintiff's account of liability, which he took in part from interviewing her (¶ 6) and from "the text messages" (¶ 28). Rebutting a medical opinion does not license an expert to vouch for the plaintiff's version of the liability facts.

**2. Rule 37(c)(1) bars the opinions, and each *Hamburger* factor confirms it.**

Opinions outside the scope of rebuttal are affirmative disclosures, and Plaintiff's affirmative disclosures were due August 17, 2026. (D.E. 29 ¶ 3.) Rule 37(c)(1) therefore bars their use "on a motion, at a hearing, or at a trial" unless the failure was substantially justified or harmless. It was neither.

Plaintiff has offered no explanation for failing to designate a causation expert by August 17. The only explanation she has offered concerned the rebuttal deadline, which turned on counsel's stated "impression" about the Scheduling Order. (D.E. 145 at 2 (quoting D.E. 143 at 4).) That explanation does not reach her affirmative deadline at all.

Causation testimony is undoubtedly important to Plaintiff. That is the reason it had to be designated on time. The importance of proposed testimony cannot "singularly override the enforcement of local rules and scheduling orders." *Hamburger*, 361 F.3d at 883 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990)). In *Hamburger* the Fifth Circuit affirmed exclusion of an untimely designated expert whose testimony went to causation, because the defendant "did not have reason to know that Hamburger intended to call her to give expert testimony about causation." *Id.* at 883-84.

Defendant prepared its expert case on the record as it stood after August 17: a plaintiff with no causation expert. Dr. Lile's affirmative opinions arrived on October 26,

after discovery closed on October 15 (D.E. 29 ¶ 5) and three weeks before the deadline for this motion. Defendant has had no opportunity to depose him.

Trial is set for March 29, 2027. (D.E. 29 ¶ 1.) The deadline for dispositive and *Daubert* motions was November 16, 2026.[1] (*Id.* ¶ 6.) A continuance would reward the default, require new expert discovery after the close of discovery, and delay a case in which the Court has already declined to extend deadlines further absent good cause. (D.E. 146 at 1.)

Because the causation opinions are excluded under Rule 37(c)(1), Plaintiff may not use them either at trial or to oppose summary judgment. Fed. R. Civ. P. 37(c)(1).

### B. Alternatively, Rule 702 bars Dr. Lile's subchorionic-hemorrhage opinion and his timeline opinions.

#### 1. Paragraph 45: every source cited fails to support the opinion.

Dr. Lile dismisses the subchorionic hemorrhage documented on Plaintiff's emergency-department sonogram on the following basis:

> "[T]his type of bleeding is quite common, as 14% to 22% of all early intrauterine pregnancies experience a first trimester bleed (Stovall & Ling, 1990; Everett, 1997), and the vast majority of first trimester pregnancies with a subchorionic bleed continue with a healthy normal pregnancy (Naert et al., 2019; Lou et al., 2024)."

(D.E. 147-1 ¶ 45.) Upon actual review, none of these four cited sources supports that opinion.

[1] This motion is being filed two days later on November 18, 2026 by agreement of the parties and the Court's order granting a brief extension (D.E. 156).

First, let us examine the reference to "Stovall & Ling, 1990." Dr. Lile cites "The impact of new technology on the diagnosis of ectopic pregnancy," *Clinical Obstetrics and Gynecology*, 33(4), 779–790, doi 10.1097/00003081-199012000-00015. (D.E. 147-1 at 17 n.14.) No such article appears in that issue. The publisher's table of contents for Volume 33, Issue 4 (December 1990) lists thirty items, none by Stovall or Ling and none concerning ectopic pregnancy. (Ex. 1-B.) The pages Dr. Lile cites, 779 through 790, fall within "Erythema Nodosum, Estrogens, and Pregnancy" (pp. 777–781) and "Melanoma in Pregnancy" (pp. 782–791). (Ex. 1-B.) The DOI[2] Dr. Lile supplies resolves on the publisher's site to a one-page item at page 813, "Review Questions: Skin Diseases in Pregnancy," a set of nine review questions on skin conditions in pregnancy. (Ex. 1-A.) Even on its own terms, the title Dr. Lile gives concerns the diagnosis of ectopic pregnancy, not the incidence of bleeding in intrauterine pregnancies.

Next, let's look at Dr. Lile's reliance on "Everett, 1997." Dr. Lile cites Everett for the frequency of early bleeding, as support for the proposition that bleeding is benign. (D.E. 147-1 at 17 n.14.) Yet, the cited Everett study actually concludes: "Bleeding occurred in one fifth of recognised pregnancies before the 20th week and over half of these miscarried." C. Everett, *Incidence and outcome of bleeding before the 20th week of pregnancy: prospective study from general practice*, 315 BMJ 32, 32 (1997) (Ex. 2).

Dr. Lile also relies on "Naert et al., 2019." Dr. Lile's own citation gives the title: "Association between first-trimester subchorionic hematomas and adverse pregnancy

---

[2] "Digital Object Identifier", *see https://www.doi.org/*.

outcomes after 20 weeks of gestation." (D.E. 147-1 at 17 n.14.) A study of outcomes after twenty weeks says nothing about whether a pregnancy at eight weeks will continue. Plaintiff presented to the emergency department reportedly "at 8 weeks." (D.E. 147-1 at 67 (DavisMedicalRecords0040).)

Finally in his paragraph 45, Dr. Lile also cites "Lou et al., (2024)." Dr. Lile's own citation again gives the title: "Association between first-trimester subchorionic hematoma and pregnancy loss before 20 weeks of gestation." (D.E. 147-1 at 17 n.14.) The study concludes that a first-trimester subchorionic hematoma is associated with an increased risk of miscarriage before 20 weeks, with an adjusted odds ratio of 1.94 (95% CI 1.19–3.15). Y. Lou et al., 14 Sci. Rep. 30034 (2024) (Ex. 3).

Dr. Lile's conclusion that the hemorrhage "more likely than not played no role" therefore rests on a citation that cannot be located as given, a study limited to later pregnancy, and two studies whose conclusions are the opposite of his. An opinion is reliable only if it is reliable "at each and every step." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). This one is connected to its sources only by Dr. Lile's say-so. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). It fails Rule 702(b) and (d).

**2. Paragraphs 28–30, 34, and 47–48: the timeline opinions rest on a premise contradicted by Dr. Lile's own exhibit and on figures absent from his sources.**

Dr. Lile's causation conclusion depends on timing: Plaintiff "began bleeding shortly after consuming the allegedly tainted beverages." (D.E. 147-1 ¶¶ 30, 43(b), 52(b).) That conclusion rests on two premises, and neither survives Rule 702.

Dr. Lile states that, "[a]ccording to the text messages," Plaintiff discovered bleeding "approximately 30 minutes after she finished drinking the second cup of hot chocolate." (*Id.* ¶ 28.) He identifies no message by Bates number. The emergency-department record he attached as his Exhibit B records Plaintiff's own history that she "took [the hot chocolate] around 1030pm and then began having abdominal cramping and vaginal bleeding roughly 4 hours later." (D.E. 147-1 at 67 (DavisMedicalRecords0040).) Dr. Lile quotes Dr. Krueger's reference to "the doctor's impression" of four hours (*id.* ¶ 47) but never addresses the medical record that contains it. An expert who adopts the version of the facts that fits his conclusion, and ignores the contrary medical record he himself relies on, has not reliably applied any method to the facts of the case. Fed. R. Evid. 702(b), (d).

Dr. Lile states that swallowed misoprostol's "effects may begin within approximately 8 to 10 minutes and uterine contraction strength may reach a maximum within approximately 20 to 30 minutes," and that "peak plasma concentrations can occur within 12 to 14 minutes, falling comfortably within the 8–10 minute absorption window." (D.E. 147-1 ¶¶ 28, 47.) He cites two sources: the StatPearls chapter by Krugh and a 2002 study by Tang. (*Id.* at 10 n.7, 19 n.16.) Neither contains an eight-to-ten-minute onset, a twenty-to-thirty-minute contraction peak, or an "absorption window."

Krugh reports that peak plasma concentration occurs "within 12 ± 3 minutes" and that "[t]he onset of action (inhibition of gastric acid secretion) is approximately 30 minutes after oral administration." M. Krugh et al., *Misoprostol*, StatPearls (updated Dec. 11, 2024) (Ex. 4). That onset figure is three times Dr. Lile's, and it describes an effect on the stomach, not the uterus. Tang measured blood levels only. It found that time to peak concentration

was similar for the sublingual route (26.0 ± 11.5 minutes) and the oral route (27.5 ± 14.8 minutes), and that the sublingual route produced roughly twice the peak concentration (574.8 versus 287.6 pg/mL). O.S. Tang et al., *Pharmacokinetics of different routes of administration of misoprostol*, 17 Hum. Reprod. 332 (2002) (Ex. 5). That finding contradicts Dr. Lile's opinion that a patient who swallows misoprostol "will have a faster reaction to the drug" than the sublingual patients in the study Dr. Hail cites. (D.E. 147-1 ¶ 29.) His own figures are internally inconsistent: twelve to fourteen minutes does not fall "comfortably within" eight to ten.

The timeline opinions are connected to the cited literature only by Dr. Lile's assertion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). They fail Rule 702(b) and (d), and the causation conclusions built on them (¶¶ 30, 34, 43, 52) fall with them.

## IV. RELIEF REQUESTED

Defendant asks the Court to enter the following relief:

1. Exclude, under Rules 26(a)(2)(D)(ii) and 37(c)(1), every opinion by Dr. Lile that Plaintiff's pregnancy loss was, or was not, caused by any factor, including the opinions stated in D.E. 147-1 ¶¶ 13, 17, 23, 30, 34, 38, 43, 44, 45, and 52, and in D.E. 147 ¶¶ 1(h) and 3(b), for all purposes, including summary judgment and trial.

2. Independently, exclude under Rule 702 Dr. Lile's subchorionic-hemorrhage opinion (D.E. 147-1 ¶ 45) and his timeline and onset opinions (D.E. 147-1 ¶¶ 28–30, 34, 47–48; D.E. 147 ¶¶ 2(c), 2(d), 4(a)).

3. In the alternative, limit Dr. Lile to testimony offered after Drs. Hail and Krueger testify, confined to criticism of their opinions, without any opinion on the cause of Plaintiff's pregnancy loss.

## V. CONCLUSION

Plaintiff missed her deadline to designate an expert on causation. The Court gave her a rebuttal witness, not a second deadline. Defendant asks the Court to grant this motion and enter the relief requested above, and for such other relief to which Defendant is entitled.

Respectfully submitted,

*/s/ Craig Dupen*______
Barry A. Moscowitz
Texas State Bar No. 24004830
Federal Bar ID No. 31054
bmoscowitz@thompsoncoe.com
Craig Dupen
Federal Bar No. 1144807
State Bar No. 24065177
cdupen@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: (214) 871-8200
Fax: (214) 871-8209

Victoria L. Jimenez
Federal Bar No. 2522937
State Bar No. 24060021
vjimenez@thompsoncoe.com
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Fax: (713) 403-8299

**AND –**

Beth Klein
Colorado Bar No. 17477
S.D. Tex. Bar No. 3934133
Beth Klein, P.C.
350 Market Street, Suite 310

Basalt, Colorado 81621
Email beth@bethklein.com
Phone 303-448-8884

**AND –**

Mikel C. Watts
Texas State Bar No. 20981820
Federal Bar ID: #12419
Mikel@wattsllp.com
WATTS LAW FIRM, LLP
811 Barton Springs #725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0501

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2026, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*/s/ Craig Dupen*____
Craig Dupen

## INDEX OF EXHIBITS

Ex. 1-A Publisher's page (Ovid / Wolters Kluwer) to which doi 10.1097/00003081-199012000-00015 resolves: "Review Questions: Skin Diseases in Pregnancy," 33 Clin. Obstet. & Gynecol. 813 (Dec. 1990), with the publisher's preview of page 813.

Ex. 1-B Publisher's table of contents, Clinical Obstetrics and Gynecology, Vol. 33, Issue 4 (Dec. 1990) (all thirty items).

Ex. 2 C. Everett, Incidence and outcome of bleeding before the 20th week of pregnancy: prospective study from general practice, 315 BMJ 32–34 (1997).

| | |
|---|---|
| Ex. 3 | Y. Lou et al., Association between first-trimester subchorionic hematoma and pregnancy loss before 20 weeks of gestation in singleton pregnancies, 14 Sci. Rep. 30034 (2024). |
| Ex. 4 | M. Krugh, P. Patel & C.V. Maani, Misoprostol, StatPearls (last updated Dec. 11, 2024). |
| Ex. 5 | O.S. Tang et al., Pharmacokinetics of different routes of administration of misoprostol, 17 Hum. Reprod. 332–336 (2002) (PubMed abstract, PMID 11821273). |